Panteha Abdollahi, Esq. (State Bar No. 230002)
pabdollahi@tocounsel.com
Bradley Dugan, Esq. (State Bar No. 271870)
bdugan@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq. (Georgia State Bar No. 054682)
(*Admitted Pro Hac Vice*)
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>            Plaintiff,<br><br>      vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>            Defendant. | Case No.:  8:19-cv-1984 JVS (KESx)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF SHERMAN ACT AND CARTWRIGHT ACT**<br><br><u>**JURY TRIAL DEMANDED**</u><br><br>Trial Date:        None Set |

Pursuant to Fed. R. Civ. Proc. 15(a)(1), Plaintiff Innovative Health LLC hereby files its First Amended Complaint against Defendant Biosense Webster, Inc. for monopolizing and restraining trade in the nationwide markets for the sale of high-density mapping catheters and ultrasound catheters for use with the CARTO 3 cardiac mapping system for electrophysiology studies in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 16720 of the Cartwright Act, Cal. Bus. & Prof. Code § 16720.  Plaintiff alleges the following upon personal knowledge as to its own acts and information and belief and investigation by counsel as to all other allegations.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Innovative Health LLC is an Arizona limited liability company with its principal address at 1435 North Hayden Road, Suite 100, Scottsdale, AZ 85257.  Innovative Health reprocesses and sells catheters for use with cardiac mapping systems in electrophysiology labs at hospitals throughout the United States.

2.      Defendant Biosense Webster, Inc. is a California corporation with its principal place of business at 33 Technology Drive, Irvine, CA 92618.  Biosense Webster resides in Orange County in the Southern Division of the Central District of California.  Biosense Webster is an inhabitant of the Central District of California and may be found there.  Biosense Webster manufactures and sells cardiac mapping systems and catheters for use with cardiac mapping systems to hospitals in Orange County in the Southern Division of the Central District of California and elsewhere.

3.      Defendant is subject to the personal jurisdiction of this Court.

4.      This action is brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 26.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. §§ 15 and 22.  The Defendant has been engaged in

interstate commerce during all relevant times of the complaint. The Court is vested with pendent jurisdiction over the associated state law claims.

5.      Venue is proper under 15 U.S.C. §§ 15 and 22 and 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2).  Defendant resides in this District and is transacting and carrying on business in this District.

## ELECTROPHYSIOLOGY STUDIES

6.      Electrophysiology studies test the electrical activity of the heart to diagnose abnormal heart rhythms (arrhythmias).  With this information, the physician (electrophysiologist) can plan a course of care that could include prescribing medications, implanting a device (pacemaker or defibrillator), or performing a cardiac ablation procedure.  An ablation procedure destroys a section of cardiac tissue to block electrical conduction that was occurring through the ablated tissue with the goal of restoring an acceptable electrical pathway.  During the study, the physician will insert a series of electrically sensitive catheters into a blood vessel that leads to the heart.  The assortment of catheters varies by procedure. The ultrasound catheters visualize anatomical structures and blood flow in the heart. The high-density mapping catheters provide extremely rapid and highly accurate mapping of the heart's electrical activity to show where to ablate, i.e., destroy, the tissue.  Since electrophysiology studies can lead to more invasive procedures on an emergency basis, the studies are typically done at a hospital with a full array of cardiac care, including open-heart surgery.

7.      Biosense Webster sells the CARTO 3 cardiac mapping system throughout the United States for use in electrophysiology studies.  Biosense Webster describes itself as the "global leader" in cardiac mapping systems.  It was the first to offer a 3D cardiac mapping system and the first to offer a therapeutic ablation catheter for treatment of atrial fibrillation.  The FDA originally cleared the CARTO 3 for sale in the United States on October 13, 2009.  Biosense Webster has more than 50% of the cardiac mapping systems installed in the United States.  The

CARTO 3 system is used in hundreds of thousands of electrophysiology studies each year.  Biosense Webster also sells ultrasound catheters (SOUNDSTAR and ACUNAV) and high-density mapping catheters (PENTARAY and LASSO) for use with the CARTO 3 system.  The FDA has cleared Biosense Webster to sell these catheters for single use by the hospital.  The FDA has also cleared Innovative Health to reprocess and sell the same catheters to hospitals one to three additional times for single use before disposal.

## RELEVANT MARKETS: CATHETERS

8.      There are relevant markets or submarkets for the sale of high-density mapping catheters and ultrasound catheters for use with the CARTO 3 cardiac mapping system in the United States.  There is a relevant product market for high-density mapping catheters for use with the CARTO 3 cardiac mapping system.  There are no practical substitutes for high-density mapping catheters to provide rapid high-resolution mapping of electrical activity in the heart to identify points of ablation in electrophysiology studies.  They are unique.  Other diagnostic catheters are not comparable in speed or accuracy for mapping an entire chamber of the heart.  Biosense Webster sells more than 10 times as many high-density mapping catheters as any of its other diagnostic catheters.  Biosense Webster sells high-density mapping catheters at nearly double the price of its other diagnostic catheters.  They have an average sales price of more than $1,000.  The high-density mapping catheter must connect directly with the cardiac mapping system.  Biosense Webster designed the CARTO 3 cardiac mapping system to connect only with PENTARAY and LASSO high-density mapping catheters designed and originally manufactured by Biosense Webster.  The PENTARAY and LASSO are generally not compatible with other cardiac mapping systems.

9.      The new and reprocessed PENTARAY high-density mapping catheters are physically identical and cleared by the FDA with the exact same indications for use.  The new and reprocessed LASSO high-density mapping catheters are

4

physically identical and cleared by the FDA with the same exact indications for use. Biosense Webster itself sells new and reprocessed LASSO catheters. There are not distinct customers for new or reprocessed high-density mapping catheters. Many customers purchase both new and reprocessed high-density mapping catheters for use with the CARTO 3 system. Innovative Health has the ability to take significant amounts of PENTARAY and LASSO business from Biosense Webster.

10. The relevant geographic market for high-density mapping catheters for use with the CARTO 3 system is the United States. The catheters are Class II medical devices, which must be cleared for manufacturing or reprocessing by the FDA for sale and use in the United States. Therefore, U.S. hospitals are limited to high-density mapping catheters cleared by the FDA. The FDA has cleared Innovative Health to reprocess and sell the single-use PENTARAY and LASSO high-density mapping catheters in the United States for an additional use. Biosense Webster and Innovative Health compete in the sale of PENTARAY and LASSO high-density mapping catheters to hospitals throughout the United States. The nationwide market for high-density mapping catheters for use with the CARTO 3 system is more than $150 million in annual sales.

11. There is a relevant product market for ultrasound catheters (and may be a relevant product submarket for 3D navigational ultrasound catheters) for use with the CARTO 3 cardiac mapping system. There are no practical substitutes for ultrasound catheters to visualize cardiac structure and blood flow in the heart for use during electrophysiology studies without exposing the patient and medical staff to radiation. They are unique. They have an average sales price of more than $2,000. The CARTO 3 cardiac mapping system only connects with SOUNDSTAR eco 3D navigational ultrasound catheters designed and originally manufactured by Biosense Webster. The SOUNDSTAR is not compatible with any other cardiac mapping system. In lieu of the SOUNDSTAR, the physician can only use a non-navigational ultrasound catheter that connects separately to an ultrasound system. Biosense

5

Webster has the exclusive rights to sell the ACUNAV non-navigational ultrasound catheter for use in electrophysiology studies. The ACUNAV is only compatible with ultrasound systems from General Electric or Siemens.

12.     Abbott sells the ViewFlex non-navigational ultrasound catheter, which is only compatible with an Abbott or Philips ultrasound system. Those systems operate very differently than the General Electric and Siemens ultrasound systems – with different device controls and screen views. In addition, the ViewFlex catheter has a very different steering mechanism than the ACUNAV. The ViewFlex does not have tension release for automatically returning the catheter tip to the neutral position. Therefore, the physician must take a more active role in steering the catheter to direct the device and prevent puncture. Many physicians will not readily switch from the SOUNDSTAR or ACUNAV to the ViewFlex because of those differences in the catheter and the system. For the sake of patient safety, physicians will not needlessly introduce variation into their practice. Moreover, they do not want to undertake the additional investment in time to learn how to operate a different catheter and system. In addition, most CARTO 3 users do not have an Abbott or Philips ultrasound system to switch from the SOUNDSTAR or the ACUNAV ultrasound catheter to the ViewFlex. In order to switch to the ViewFlex, they would need to incur a capital cost of more than $50,000.

13.     The new and reprocessed SOUNDSTAR ultrasound catheters are physically identical and cleared by the FDA with the exact same indications for use. The new and reprocessed ACUNAV ultrasound catheters are physically identical and cleared by the FDA with the exact same indications for use. Biosense Webster itself sells new and reprocessed SOUNDSTAR and ACUNAV catheters. There are not distinct customers for new or reprocessed ultrasound catheters. Many customers purchase both new and reprocessed ultrasound catheters for use with the CARTO 3 system. Innovative Health has the ability to take significant amounts of SOUNDSTAR and ACUNAV business.

14.     The relevant geographic market for ultrasound catheters for use with the CARTO 3 system is the United States.  The catheters are Class II medical devices, which must be cleared for manufacturing or reprocessing by the FDA for sale and use in the United States.  Therefore, U.S. hospitals are limited to ultrasound catheters cleared by the FDA.  The FDA has cleared Innovative Health to reprocess and sell the single-use SOUNDSTAR, ACUNAV, and ViewFlex ultrasound catheters for an additional use in the United States.  Biosense Webster and Innovative Health compete in the sale of ultrasound catheters for use with the CARTO 3 system to hospitals throughout the United States.  The nationwide market for ultrasound catheters for use with the CARTO 3 system is more than $250 million in annual sales.

**RELEVANT MARKET: CLINICAL SUPPORT**

15.     The cardiac mapping system software must be operated by a technician during a cardiac mapping procedure conducted by a physician on a CARTO 3 system (known as clinical support or case coverage).  Historically, the system manufacturers had simply provided initial training for hospital staff to provide its own case coverage.  Biosense Webster initiated a program more than ten years ago to provide clinical account specialists free of charge to provide case coverage.  Since Biosense Webster started the program, nearly all hospitals have switched their CARTO 3 clinical support to Biosense Webster.  The clinical account specialists provide more than clinical support.  Biosense Webster employs them to drive sales for Biosense Webster.  A large portion of their compensation from Biosense Webster – as much as 30% to 40% – is based on their sales to the hospital of Biosense Webster catheters for use on the CARTO 3 system.  The high-density mapping catheters and ultrasound catheters are roughly 50% of those sales.

16.     There is a relevant product market for CARTO 3 clinical support. CARTO 3 clinical support requires specialized training and experience operating the CARTO 3 system software.  There are no practical substitutes for that training and

experience.  The CARTO 3 cardiac mapping system has particular characteristics. None of the manufacturers offer clinical support, or training for clinical support, on each other's cardiac mapping systems.  Very few hospitals handle their own case coverage.  Biosense Webster has been the sole supplier to hospitals in the market for CARTO 3 clinical support.

17.    There are relevant geographic markets or submarkets for CARTO 3 clinical support based on the geographic pods organized by Biosense Webster to provide CARTO 3 clinical support in the United States.  Again, Biosense Webster has been the sole supplier to hospitals in the market for CARTO 3 clinical support. Biosense Webster has organized its staff of hundreds of clinical account specialists into geographic pods – where one or more clinical account specialists will service the cluster of labs in that pod or territory. Those pods are the current pattern of commerce in CARTO 3 clinical support.

## SEPARATE MARKETS

18.    The catheter markets are separate from clinical support.  The prices of catheters are set independently of the price for clinical support.  Biosense Webster will sell catheters of all kinds without clinical support.  Hospitals purchase catheters of all kinds – ultrasound catheters, mapping catheters, diagnostic catheters, and ablation catheters – separately from the clinical support.  Customers want to purchase the catheters separately from the clinical support because they can bargain on prices with the various manufacturers and reprocessors of catheters.  The hospitals do not contractually agree to purchase the catheters and clinical support together as a single product.  Hospitals can purchase catheters from reprocessors when the cardiac mapping system manufacturer does not insist on tying the purchase of new catheters to clinical support: hospitals regularly purchase other diagnostic catheters (in contrast with the high-density mapping catheters) from manufacturers and reprocessors other than Biosense Webster for use with the CARTO 3 system.  In fact, Biosense Webster provides CARTO 3 clinical support on tens of thousands of

8

cases – totaling more than 20% of CARTO 3 procedures – involving at least one diagnostic catheter reprocessed by third parties.  There is even greater customer demand for the much larger savings offered on high-density mapping catheters and ultrasound catheters for use with the CARTO 3 system but for the case coverage policy at Biosense Webster.

19.    The CARTO 3 clinical support is separate from the cardiac mapping system market.  The CARTO 3 clinical support is not provided as part of the contract for the purchase of the CARTO 3 system.  Biosense Webster voluntarily provides the clinical account specialists at will to hospitals after the purchase of the CARTO 3 system.  The CARTO 3 system is priced independently of the decision by the hospital to begin or continue to use the free clinical support.

20.    The catheter markets are separate from the cardiac mapping system market.  The catheters are purchased as needed after the purchase of the cardiac mapping system.  Customers want to purchase the catheters separately from the system because they can bargain with the various manufacturers and reprocessors of catheters on the prices throughout the lifecycle of the mapping system.  As part of the purchase of the CARTO 3 system, hospitals do not contractually agree to only use high-density mapping catheters or ultrasound catheters purchased from Biosense Webster.  Hospitals purchase different brands of catheters when the cardiac mapping system manufacturer does not insist on closing their cardiac mapping system to other brands of catheters.  For example, hospitals regularly purchase various brands of reprocessed non-navigational diagnostic catheters from Innovative Health or other reprocessors for use with the CARTO 3 system.  Innovative Health alone has a market share of more than 10% for some of those catheters.  Overall, one out of five CARTO 3 procedures involves one or more diagnostic catheters reprocessed by a third party.

21.    In addition, the prices of catheters are set independently of the price of the cardiac mapping system.  The original manufacturers regularly change the prices

of the catheters to existing owners of a cardiac mapping system.  For instance, Biosense Webster typically gives only thirty days' notice for changes on catheter prices.  Of course, the reprocessors set prices of catheters independently of the price for the cardiac system as well.

22.    Moreover, Biosense Webster is shielded from competition on the initial price or the lifecycle price because the physician often makes the decision which cardiac mapping system to buy while the hospital bears the cost.  Biosense Webster funds onsite clinical account specialists, training centers and teaching fellowships at hospitals and offers research grants and consulting contracts to physicians to create loyalty with the physicians making the decision on which cardiac mapping system is purchased at a hospital.  Since electrophysiology studies are typically scheduled in advance, the physician has practical leverage with the hospital in choosing a cardiac mapping system because he or she can move his or her patients to a competing hospital on short notice.

23.    Furthermore, customers are unable to calculate lifecycle costs at the time of purchase because they do not have reliable information for projecting the costs over the lifecycle for the different brands of cardiac mapping system.  The lifecycle of the cardiac mapping system is 5 to 10 years.  The prices of catheters change regularly over the lifecycle of the system.  The manufacturers regularly introduce new models of catheters with new prices every 2 to 4 years throughout the lifecycle of the cardiac mapping system.  Reprocessors may or may not introduce price competition on existing or new models of catheters by seeking and receiving clearance from the FDA.  Annual service contracts vary widely in price from year to year.  The system service can cost as much as $60,000 for a year.  The system service can cost as little as zero for a full year of service as part of a promotion of other products.  The manufacturers will also upgrade the system software and add hardware modules at significant cost to the owner of the system.  Software updates alone can cost $20,000 to $60,000.  In addition, the manufacturers do not notify the

10

customers at the time of purchase that some catheters are proprietary.  The manufacturers also change specific catheters from open to proprietary, which can affect the price for that catheter.  Finally, some hospitals are not in a position to forecast demand because they are acquiring a cardiac mapping system for the first time at that location.

24.    Biosense Webster has more than 50% of the roughly 3,000 cardiac mapping systems installed in the United States.  Consequently, most physicians have acquired their training and experience on the CARTO 3 system.  The physicians drive the decision on which system that they will use in the lab on their patients.  They are responsible for the diagnosis and treatment of the patient.  Even in a large lab with multiple brands of cardiac mapping systems, very few physicians will readily switch systems because of familiarity with the existing brand – the system, the catheters, and the technician.  For the sake of patient safety, physicians will not needlessly introduce variation into their practice.  Moreover, most physicians have no cost incentive.  Their compensation is usually the same regardless of the expense to the hospital of acquiring and operating the system, and switching would involve a significant investment of time in learning the new system.  There is evidence that physicians are not switching from the CARTO 3 system: Biosense Webster has maintained a steady market share since the introduction of the CARTO 3 in 2009.  Even in the very unlikely event that a CARTO 3 physician wanted to change to a different system, most existing CARTO 3 labs do not have a cardiac mapping system from a second manufacturer.  To the extent that some larger CARTO 3 labs may also have invested in a cardiac mapping system from an alternative manufacturer, the system is already going to be in regular use by other physicians.

25.    Furthermore, existing customers face significant costs in acquiring a new cardiac mapping system.  Cardiac mapping systems have an average sales price of roughly $400,000 to $500,000.  Hospitals do not budget for such a significant

purchase with the expectation of switching brands in the short or medium run. Again, cardiac mapping systems are purchased for a lifecycle of 5 to 10 years. Again, switching would also require an investment of significant training for physicians and staff on the new cardiac mapping system. The hospital would have to undertake the expense of paying staff to train on a new brand of cardiac mapping system, which takes minimum of three months.

### CLINICAL SUPPORT: MONOPOLY POWER

26.    Biosense Webster has monopoly power in the nationwide market and local markets for clinical support on the CARTO 3 cardiac mapping system. Biosense Webster has a 100% share of the nationwide market or local markets for CARTO 3 clinical support. While few individual hospitals have their own CARTO 3 clinical support, Biosense Webster has been the only supplier for hospitals in the market for CARTO 3 clinical support in the United States. No one has the ability to deprive Biosense Webster of significant levels of business in CARTO 3 clinical support. Biosense Webster provides clinical support for more than 95% of the CARTO 3 systems installed in the United States. Biosense Webster invariably provides clinical support to more than 95% of the hospitals within the geographic scope of each pod. Again, Biosense Webster has been the only supplier for hospitals in the market for CARTO 3 clinical support anywhere in the United States. Biosense Webster has a 100% share of each and every geographic market or submarket for CARTO 3 clinical support within the United States.

27.    There are significant barriers to entry into CARTO 3 clinical support. Biosense Webster is the leading brand in electrophysiology. Moreover, Biosense Webster is "part of the Johnson & Johnson family of companies." (*See* Exhibit 1, attached hereto and incorporated by reference.) Johnson & Johnson is the No. 1 health care brand in the world. Biosense Webster has a natural advantage in access to information regarding its own products. In fact, Biosense Webster is the sole source for training on the CARTO 3 system. In addition, Biosense Webster controls

access to training instruction and materials for the CARTO 3 system hardware, software, and catheters.

28.    There are economies of scale.  Clinical support can be provided more efficiently by covering a geographic cluster of hospitals.  Most electrophysiology labs do not need clinical support every day or all hours of the day.  At the same time, there may not be the need for more than one supplier of CARTO 3 clinical support in each local market.  Moreover, no independent service organization is going to enter the market to compete with Biosense Webster by providing CARTO 3 clinical support for free, or anything close to it.

29.    There are also entrenched buying preferences.  The Biosense Webster clinical account specialists are embedded in the labs.  They develop close working relationships with the physicians.  The physicians do not bear the higher combined costs of the free clinical support and the more expensive catheters.  They are loath to make a change that could disrupt physician workflow and clinical outcomes.

30.    Biosense Webster is also able to limit the supply of clinical support personnel for a new entrant into the market.  Biosense Webster has noncompete provisions of 18 months or more in its employment agreements with its clinical account specialists.  Biosense Webster regularly hires away clinical support personnel from the few hospitals handling their own CARTO 3 clinical support by offering significantly higher compensation.  In addition, there are no existing competitors in the market to provide CARTO 3 clinical support to hospitals in the United States.

31.    Furthermore, nearly all hospitals have shifted to the free CARTO 3 clinical support offered by Biosense Webster.  As a result, the hospitals no longer have experienced technicians on staff to provide case coverage.  They are discouraged from restarting their own case coverage.  Biosense Webster is providing it for free.  Due to the economies of scale, it is generally not cost effective for hospitals to provide their own CARTO 3 clinical support in competition with third

13

parties – especially when Biosense Webster is offering it for free.  The hospital also knows that it is unlikely to recoup the investment in training new technicians because Biosense Webster usually hires away any experienced technicians to cultivate the relationship with the hospital and the physician or physicians in the lab.

## CATHETER MARKETS: MONOPOLY POWER

32.    Biosense Webster has monopoly power in the nationwide markets or submarkets for the sale of the high-density mapping catheters and the ultrasound catheters for use with the CARTO 3 mapping system.  Biosense Webster is able to exclude competition and control prices for the high-density mapping catheters and ultrasound catheters for use with the CARTO 3 mapping system.

33.    For more than eight years, Biosense Webster has been able to charge supracompetitive prices in high-density mapping catheters and ultrasound catheters for use with the CARTO 3 system.  For example, Biosense Webster charges 20% more for new high-density mapping catheters and 10% to 20% more for new ultrasound catheters for use with the CARTO 3 system than Abbott, which is the second leading seller of cardiac mapping systems behind Biosense Webster, charges for those catheters for use with its cardiac mapping system.  As a result, customers pay far higher overall prices because they are prevented from purchasing the less expensive reprocessed catheters and are forced to pay inflated prices for the new catheters.

34.    In addition, Biosense Webster has durably maintained a dominant share of the market.  For the last eight years, Biosense Webster has held an estimated 99% share of the nationwide market for sale of the high-density mapping catheters for use with the CARTO 3 cardiac mapping system and an estimated 90% share of the nationwide market for sale of the ultrasound catheters (and a 99% share of the nationwide submarket for the sale of 3D navigational ultrasound catheters) for use with the CARTO 3 cardiac mapping system.  There are significant barriers to entry. (*see* ¶¶ 38-42.)

35.     In addition, existing competitors (i.e., reprocessors) lack the capacity to expand their output in the short run to challenge Biosense Webster's prices for high-density mapping catheters or ultrasound catheters for use with the CARTO 3 system.  Biosense Webster restricts the output of its competitors by strictly limiting access to customers through its refusal to provide case coverage on high-density mapping catheters or ultrasound catheters reprocessed by third parties.  (*see* ¶¶ 43-48.)  Biosense Webster severely restricts its own output of reprocessed high-density mapping catheters and ultrasound catheters and only generates enough output of new high-density mapping catheters and ultrasound catheters for sale at supracompetitive prices.

36.     Furthermore, Biosense Webster necessarily restricts output in the market by taking most catheters out of the market after the first use.  Biosense Webster controls the supply of a necessary input for any competitor – namely Biosense Webster catheters available for reprocessing by third parties.  Biosense Webster has placed collection bins in labs and directed customers to dispose of "all catheters" for "removal by BWI staff only."  Also, Biosense Webster has contracts and programs with many customers to return catheters to Biosense Webster, or simply destroy the catheters, after the first use.  Even though Biosense Webster acquires more than enough used catheters for its own production through customer return programs, Biosense Webster also pays to acquire its high-density mapping catheters and ultrasound catheters after first use from hospitals and third parties that have acquired the used catheters from hospitals.  In addition, Biosense Webster sometimes retrieves its catheters from customers after the first use without the knowledge or consent of the hospital.  Most of the returned, repurchased, and retrieved catheters are not reprocessed and returned to the market.

37.     While Innovative Health has a 5% to 10% market share in various non-navigational diagnostic catheters (e.g., HALO, ISMUS, and CRISTACATH), it has been unable to reach a 1% market share in high-density mapping catheters

15

(PENTARAY and LASSO) for use in the CARTO 3 system.  Similarly, Innovative Health has been unable to reach a 1% market share in 3D navigational ultrasound catheters or 2% market share in all ultrasound catheters for use with the Carto 3 system.  By restricting the output of reprocessed catheters, which have a significantly lower cost of production than new catheters, Biosense Webster is able to maintain supracompetitive prices in the markets for high-density mapping catheters and ultrasound catheters for use with the CARTO 3 system.

### CATHETER MARKETS: BARRIERS TO ENTRY

38.     There are significant barriers to entry into these catheter markets. Biosense Webster has ownership rights and exclusive licenses to patents blocking development of competing brands of catheters for use on the CARTO 3 system. Biosense Webster has brand name power as well.  Biosense Webster is the leading brand in electrophysiology.  Moreover, Biosense Webster is "part of the Johnson & Johnson family of companies."  (Exhibit 1.)  Johnson & Johnson is the No. 1 health care brand in the world.

39.     Biosense Webster has also created a closed system for connecting high-density mapping catheters and ultrasound catheters directly to the CARTO 3 cardiac mapping system.  In order to function, the catheter, cable, and system must engage in a proverbial three-way handshake via a printed circuit board, or dongle, on the cable connecting the catheter to the system for the catheter, cable, and system to recognize each other.  The CARTO 3 only recognizes the SOUNDSTAR for ultrasound and the PENTARAY and the LASSO for high-density mapping.  There is no procompetitive justification for limiting compatibility between navigational catheters and cardiac mapping systems.  In addition, Biosense Webster installs new cables on the CARTO 3 cardiac mapping system, often without the knowledge or consent of the hospital, that are only compatible with the SOUNDSTAR or the PENTARAY catheters.

40.    The manufacturer and any reprocessor of ultrasound or high-density mapping catheters must be cleared by the FDA to sell a catheter for use in the United States.  There are very few reprocessors with the knowledge and expertise to obtain clearance from the FDA and acceptance from the market to compete in the sale of ultrasound catheters or high-density mapping catheters.  In fact, there are only two independent third-party reprocessors competing in the sale of electrophysiology catheters of any kind.  In addition, the reprocessor typically needs 6 to 9 months to develop and validate its reprocessing methodology for a catheter and 3 to 6 months to obtain clearance from the FDA.  The encrypted technology on a catheter can further extend the time needed for a reprocessor to enter the market. If the encryption is changed during the development process, it can add an additional 8 to 10 months to time needed to enter the market.

41.    Moreover, Biosense Webster largely controls the supply of Biosense Webster catheters available for reprocessing by third parties.  Biosense Webster has contracts and programs with many customers to return catheters to Biosense Webster after the first use.  Biosense Webster also buys up its high-density mapping catheters and ultrasound catheters from third parties that have acquired the used catheters from hospitals.  In addition, Biosense Webster sometimes retrieves its catheters from customers after the first use without the knowledge or consent of the hospital.  Most of the returned, repurchased, and retrieved catheters are not reprocessed and returned to the market.  Biosense Webster is simply restricting output by reprocessors.

42.    Furthermore, there are very entrenched buying preferences.  Physicians and technicians already have significant training and extensive experience invested in the Biosense Webster catheters.  Biosense Webster has also generated good will through the funding of onsite clinical support, training centers, and teaching fellowships at hospitals and offers research grants and consulting contracts to physicians to create loyalty with the administrators and physicians making

17

purchasing decisions at the hospitals.  According to the Centers for Medicare & Medicaid Services, Biosense Webster made payments to physicians alone in 2017 totaling $12,823,406.  Biosense Webster is also shielded from price competition because the physician often makes the decision while the hospital bears the cost.

## CATHETER MARKETS: PREDATORY CONDUCT

43.    Biosense Webster is able to impose additional barriers to entry into the catheter markets and maintain its monopoly power, i.e., its ability to raise prices and exclude competition, through various types of exclusionary and predatory conduct. Biosense Webster has implemented a written policy of refusing to provide case coverage by its clinical account specialists in support of physicians at hospitals on cases with Biosense Webster high-density mapping and ultrasound catheters reprocessed by competitors.  (*see* Exhibit 1.)  The FDA has cleared the reprocessed catheters for sale in the United States.  The FDA clearance process is designed to determine whether the catheter maintains its safety and effectiveness after reprocessing.  In other words, the catheter originally manufactured by Biosense Webster has been proven through testing and validation to function in the exact same way after reprocessing by Innovative Health.  During the procedure, the CARTO 3 system validates the catheter regardless of whether it is reprocessed or new.  The physician, and not the clinical account specialist, is responsible for handling the catheters and interpreting the data.

44.    The other major manufacturers provide coverage for cases with ultrasound and high-density mapping catheters reprocessed by third parties.  At least once in the last eight years, Biosense Webster has relaxed its rule and provided coverage for cases with ultrasound and high-density mapping catheters reprocessed by third parties.  Notably, Biosense Webster only enforces the rule on cases with reprocessed high-density mapping catheters and ultrasound catheters, which are much more expensive and profitable in the mix of catheters used with a cardiac mapping system.  Biosense Webster will still provide coverage on the CARTO 3

18

cardiac mapping system for cases using the other less expensive and less profitable non-navigational diagnostic catheters originally manufactured or reprocessed by third parties.

45.    Biosense Webster is able to offer case coverage for free and recoup the costs through the additional profits of more than $4,000 per procedure on additional sales of its new, rather than reprocessed, high-density mapping catheters and ultrasound catheters on just 30 electrophysiology studies per year.  The Biosense Webster clinical account specialist will typically handle several hundred cases a year across the hospitals in his or her pod.  In addition, the customers pay far more than the combined fair market value for clinical support and ultrasound and high-density mapping catheters from Biosense Webster.  For example, Innovative Health offers savings on reprocessed catheters that is at least four to five times the value of the clinical support from Biosense Webster.  Notably, Abbott provides free case coverage without restrictions and has significantly lower prices than Biosense Webster for its new ultrasound and high-density mapping catheters.  With its monopoly power in CARTO 3 clinical support, Biosense Webster uses the policy to coerce and induce hospitals to deal exclusively with Biosense Webster for purchases of high-density mapping catheters and ultrasound catheters for use with the CARTO 3 system and forecloses its competitors from 98% to 99% of the nationwide markets for those catheters, including more than $25 million in annual sales in California alone.  These exclusive arrangements continue for the lifecycle of the CARTO 3 system (5 to 10 years) because the hospital is dependent on Biosense Webster to provide CARTO 3 clinical support for the duration of its use at the hospital.

46.    Many hospitals would purchase high-density mapping catheters and ultrasound catheters reprocessed by third parties for use with the CARTO 3 system but for Biosense Webster's case coverage policy.  For example, one hospital recently sent the following email to Innovative Health after reviewing a proposal for buying various catheters, including high-density mapping catheters and ultrasound

catheters, reprocessed by Innovative Health: "After speaking with Biosense
Webster, it is clear to us that we would lose our mapping support, which we can't
afford. We are going to have to go in a different direction. We appreciate the help
and information you provided in leading us into looking at your program."

47.     Many hospitals have declined to place orders with Innovative Health
for high-density mapping catheters and ultrasound catheters for use with the
CARTO 3 system because of the case coverage policy, including but not limited to
the following hospitals in California: El Camino Hospital in Mountain View,
Providence Little Company of Mary in Torrance, Providence St. Joseph Medical
Center in Burbank, Providence Tarzana Medical Center in Los Angeles, Queen of
the Valley Medical Center in Napa, Santa Rosa Memorial Hospital, Stanford Health
in Emeryville, Stanford Hospital & Clinics in Palo Alto, and Torrance Memorial
Medical Center.

48.     In addition, many other hospitals have returned their orders for high-
density mapping catheters and ultrasound catheters for use with the CARTO 3
system to Innovative Health in response to enforcement of the case coverage policy
by Biosense Webster, including the following hospitals in California: Community
Memorial Hospital of Ventura, Marin General Hospital in Greenbrae, Mills
Peninsula Medical Center in Burlingame, Mission Hospital in Mission Viejo,
Providence St. John's Health Center in Santa Monica, Stanford Hospital & Clinics
in Foster City, and St. Joseph's Hospital in Orange.

49.     Biosense Webster makes false and misleading statements to customers
regarding the safety of medical devices that have been originally manufactured by
Biosense Webster and reprocessed by third parties.  Biosense Webster has circulated
versions of a form letter to customers for at least five years claiming that Biosense
Webster has "no knowledge" of the "specifications" of Biosense Webster single-use
catheters reprocessed by third parties.  (Exhibit 1.)  In fact, Biosense Webster knows
that the product specifications of reprocessed devices must meet the product

specifications of the originally manufactured device to receive clearance for sale by the FDA. The FDA requires "cleaning and sterilization data, and functional performance data demonstrating that each [single-use device] remain substantially equivalent to its predicate device" after reprocessing. 68 FR 38071-01. Furthermore, the sensors on the device are validated in the exact same way for new and reprocessed catheters by the CARTO 3 system software itself at the time of use. Unfortunately, the letter has been circulated to hospitals throughout the country and is not readily susceptible of neutralization or other offset by reprocessors.

50. Biosense Webster has added encrypted technology on the chips for SOUNDSTAR, PENTARAY, and LASSO catheters. With that encrypted technology, Biosense Webster has introduced a timestamp limiting the catheter to 24 hours of use after plugging into the CARTO 3 cardiac mapping system. Notably, the timestamp does not address the risk of accidental reuse by staff in a lab because it does not prevent an additional use for a second procedure in the lab on the same day. Biosense Webster has not included any way for a customer or reprocessor to reset the timestamp for an additional use after reprocessing the catheter. The timestamp does not improve the performance of the catheter for single use, and the FDA has approved the catheters for reprocessing for an additional use.

51. The timestamp is specifically targeted to eliminate competition from third-party reprocessors in the United States. Biosense Webster raises the cost of entry and cost of production for rivals by requiring reprocessors to expend time and money to figure out how to generally decrypt the data on the chip and specifically override the timestamp on the chip. The encryption of the timestamp delays entry significantly. Decryption typically takes 8 to 10 months to gain access to the timestamp, which results in significant loss of sales. Moreover, Biosense Webster will change the encryption from time to time, which requires the reprocessor to restart the decryption process or withdraw an existing product from the market, which results in significant loss of sales and goodwill. Moreover, there is the

possibility of failing to decrypt the chip and gain access to the timestamp: Innovative Health has been unable to decrypt the chip on one model of Biosense Webster catheter.  Biosense Webster also creates artificial restrictions in hardware and software upgrades on the CARTO 3 system designed solely to identify and impede the use of SOUNDSTAR, PENTARAY, and LASSO catheters reprocessed by third parties.

52.    Biosense Webster purposely limits the access of reprocessors to used Biosense Webster catheters.  Biosense Webster has contracts and programs with many customers to return used catheters to Biosense Webster even though Biosense Webster does not intend to use most of them.  In addition, Biosense Webster sometimes retrieves its high-density mapping catheters and ultrasound catheters from customers, or simply destroys them or arranges for their destruction, after the first use without the knowledge or consent of the hospital.  On some occasions, Biosense Webster clinical account specialists have even absconded with the hospital's used catheters stashed in their personal belongings after an electrophysiology procedure to prevent reprocessing by third parties.  Most of the returned and retrieved catheters are not reprocessed and returned to the market. Biosense Webster is simply preventing the hospital from making a second use of the catheter through a reprocessing program.

53.    As a result of this pattern of anticompetitive conduct, Biosense Webster has been able to maintain its monopolies in high-density mapping catheters and ultrasound catheters for use with the CARTO 3 system and force customers to pay supracompetitive prices for those catheters.  Customers pay far higher overall prices because they are prevented from purchasing the less expensive reprocessed catheters distributed by third parties and are forced to pay inflated prices for the new catheters distributed by Biosense Webster.  Biosense Webster charges 20% more for new high-density mapping catheters and 10% to 20% more for new ultrasound catheters for use with the CARTO 3 system than Abbott, which is the second leading seller of

cardiac mapping systems behind Biosense Webster, charges for those catheters for use with its cardiac mapping system.  Moreover, the leading national health care group purchasing organization recently reported that these sorts of tactics allow an electrophysiology supplier to "slow down the pricing pressures seen in other cardiovascular and orthopedic markets."

## FIRST CAUSE OF ACTION

### (Monopolization, Sherman Act, 15 U.S.C. § 2 – High-Density Mapping Catheters)

54.     The foregoing allegations are all expressly incorporated.

55.     Biosense Webster has monopolized the nationwide market for the sale of high-density mapping catheters for use with the CARTO 3 system in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

56.      Biosense Webster possesses monopoly power in the nationwide market for the sale of high-density mapping catheters for use with the CARTO 3 system and has willfully acquired or maintained that power.

57.     As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## SECOND CAUSE OF ACTION

### (Attempted Monopolization, Sherman Act, 15 U.S.C. § 2 – High-Density Mapping Catheters)

58.     The foregoing allegations are all expressly incorporated.

59.     Biosense Webster has attempted to monopolize the nationwide market for the sale of high-density mapping catheters for use with the CARTO 3 system in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

60.     Biosense Webster has a specific intent to control prices, destroy competition, and build a monopoly in the nationwide market for the sale of high-density mapping catheters for use with the CARTO 3 system.  Biosense Webster has

23

engaged in predatory and anticompetitive conduct directed at accomplishing that purpose.  Biosense Webster has a dangerous probability of achieving monopoly power in the nationwide market for the sale of high-density mapping catheters for use with the CARTO 3 system.

61.    As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## THIRD CAUSE OF ACTION

### (Tying, Sherman Act, 15 U.S.C. § 1 – High-Density Mapping Catheters)

62.    The foregoing allegations are all expressly incorporated.

63.    Biosense Webster has tied the sale of high-density mapping catheters for use with the CARTO 3 system to the provision of CARTO 3 clinical support, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Biosense Webster has forced customers to purchase high-density mapping catheters to get case coverage by its CARTO 3 clinical account specialists.  Biosense Webster has sufficient market power in the domestic market or markets for CARTO 3 clinical support to coerce customers into purchasing its high-density mapping catheters.  The tying arrangements have had anticompetitive effects in the nationwide market for the sale of high-density mapping catheters for use with the CARTO 3 system, which involves a not insubstantial amount of interstate commerce.

64.    As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## FOURTH CAUSE OF ACTION

### (Exclusive Dealing, Sherman Act, 15 U.S.C. § 1 – High-Density Mapping Catheters)

65.    The foregoing allegations are all expressly incorporated.

66.     Biosense Webster has entered agreements with its customers that prevent the customers from purchasing high-density mapping catheters for use with the CARTO 3 system from any other vendor and have substantially foreclosed competition in the nationwide market for the sale of high-density mapping catheters for use with the CARTO 3 system, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

67.     As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## FIFTH CAUSE OF ACTION

### (Tying, Cartwright Act, Cal. Bus. & Prof. Code § 16720 – High-Density Mapping Catheters)

68.     The foregoing allegations are all expressly incorporated.

69.     Biosense Webster has agreed to provide CARTO 3 clinical support on the condition that hospitals also purchase high-density mapping catheters, thereby curbing competition in the sale of the high-density mapping catheters, in violation of Cal. Bus. & Prof. Code § 16720.  The CARTO 3 clinical support is linked to the sale of the high-density mapping catheters.  Biosense Webster has sufficient economic power in the domestic market or markets for CARTO 3 clinical support market to coerce the purchase of the high-density mapping catheters.  A substantial amount of sales is affected in high-density mapping catheters.

70.     As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## SIXTH CAUSE OF ACTION

### (Exclusive Dealing, Cartwright Act, Cal. Bus. & Prof. Code § 16720 – High-Density Mapping Catheters)

71.     The foregoing allegations are all expressly incorporated.

25

72.     Biosense Webster has coerced hospitals to agree to deal exclusively with Biosense Webster in the purchase of high-density mapping catheters for use with the CARTO 3 system, in violation of Cal. Bus. & Prof. Code § 16720.  The agreements have foreclosed competition in a substantial share of the nationwide market for high-density mapping catheters for use with the CARTO 3 system.

73.     As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## SEVENTH CAUSE OF ACTION

## (Monopolization, Sherman Act, 15 U.S.C. § 2 – Ultrasound Catheters)

74.     The foregoing allegations are all expressly incorporated.

75.     Biosense Webster has monopolized the nationwide market for the sale of ultrasound catheters for use with the CARTO 3 system in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

76.      Biosense Webster possesses monopoly power in the nationwide market for the sale of ultrasound catheters for use with the CARTO 3 system and has willfully acquired or maintained that power. As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## EIGHTH CAUSE OF ACTION

## (Attempted Monopolization, Sherman Act, 15 U.S.C. § 2 – Ultrasound Catheters)

77.     The foregoing allegations are all expressly incorporated.

78.     Biosense Webster has attempted to monopolize the nationwide market for the sale of ultrasound catheters for use with the CARTO 3 system in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

79.     Biosense Webster has a specific intent to control prices, destroy competition, and build a monopoly in the nationwide market for the sale of

26

ultrasound catheters for use with the CARTO 3 system.  Biosense Webster has engaged in predatory and anticompetitive conduct directed at accomplishing that purpose.  Biosense Webster has a dangerous probability of achieving monopoly power in the nationwide market for the sale of ultrasound catheters for use with the CARTO 3 system.  As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## NINTH CAUSE OF ACTION

### (Tying, Sherman Act, 15 U.S.C. § 1 – Ultrasound Catheters)

80.    The foregoing allegations are all expressly incorporated.

81.    Biosense Webster has tied the sale of ultrasound catheters for use with the CARTO 3 system to the provision of CARTO 3 clinical support, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Biosense Webster has forced customers to purchase ultrasound catheters to get case coverage by its CARTO 3 clinical account specialists.  Biosense Webster has sufficient market power in the domestic market or markets for CARTO 3 clinical support to coerce customers into purchasing its ultrasound catheters.  The tying arrangements have had anticompetitive effects in the nationwide market for the sale of ultrasound catheters for use with the CARTO 3 system, which involves a not insubstantial amount of interstate commerce.

82.    As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## TENTH CAUSE OF ACTION

### (Exclusive Dealing, Sherman Act, 15 U.S.C. § 1 – Ultrasound Catheters)

83.    The foregoing allegations are all expressly incorporated.

84.    Biosense Webster has entered agreements with its customers that prevent the customers from purchasing ultrasound catheters for use with the

27

CARTO 3 system from any other vendor and have substantially foreclosed competition in the nationwide market for the sale of ultrasound catheters for use with the CARTO 3 system, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

85.    As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## ELEVENTH CAUSE OF ACTION

### (Tying, Cartwright Act, Cal. Bus. & Prof. Code § 16720 – Ultrasound Catheters)

86.    The foregoing allegations are all expressly incorporated.

87.    Biosense Webster has agreed to provide CARTO 3 clinical support on the condition that hospitals also purchase ultrasound catheters, thereby curbing competition in the sale of the ultrasound catheters, in violation of Cal. Bus. & Prof. Code § 16720.  The CARTO 3 clinical support is linked to the sale of the ultrasound catheters.  Biosense Webster has sufficient economic power in the domestic market or markets for CARTO 3 clinical support market to coerce the purchase of the ultrasound catheters.  A substantial amount of sales is affected in ultrasound catheters.

88.    As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## TWELFTH CAUSE OF ACTION

### (Exclusive Dealing, Cartwright Act, Cal. Bus. & Prof. Code § 16720 – Ultrasound Catheters)

89.    The foregoing allegations are all expressly incorporated.

90.    Biosense Webster has coerced hospitals to agree to deal exclusively with Biosense Webster in the purchase of ultrasound catheters for use with the

CARTO 3 system, in violation of Cal. Bus. & Prof. Code § 16720.  The agreements have foreclosed competition in a substantial share of the nationwide market for ultrasound catheters for use with the CARTO 3 system.

91.    As a direct and proximate result of the foregoing conduct, Innovative Health has been injured in its business and property, including the loss of profits in the market and damage to its reputation and goodwill.

## PRAYER FOR RELIEF

Plaintiff respectfully asks that this Court:

(a)    enter judgment awarding damages to Plaintiff in an amount to be determined, and trebled as provided in Section 4 of the Clayton Act, 15 U.S.C. § 15(a), on its federal antitrust claims;

(b)    award Plaintiff the cost of this suit, including reasonable attorney's fees, as provided in Section 4 of the Clayton Act, 15 U.S.C. § 15, on its federal antitrust claims;

(c)    enter injunctive relief in favor of Plaintiff to prevent the threat of loss or injury by violation of the federal antitrust laws as provided in Section 16 of the Clayton Act, 15 U.S.C. § 26;

(d)    enter judgment awarding damages to Plaintiff in an amount to be determined, and trebled as provided in Cal Bus. & Prof. Code § 16750(a), along with interest on its actual damages as provided in Cal Bus. & Prof. Code § 16761, on its state antitrust claims;

(e)    award Plaintiff reasonable attorney's fees together with the costs of suit, as provided in Cal Bus. & Prof. Code § 16750(a), on its state antitrust claims;

(f)    enter injunctive relief in favor of Plaintiff to prevent the threat of loss or injury by violation of the state antitrust laws as provided in Cal Bus. & Prof. Code § 16750(a); and

(g)    order such other and further relief as this Court deems proper and just.

1
2      DATED:  December 9, 2019          THEODORA ORINGHER PC

3

4                                        By:        /s/ Panteha Abdollahi
5                                             Panteha Abdollahi
                                              Bradley Dugan
6

7
8      DATED:  December 9, 2019          JEFFREY L. BERHOLD, P.C.

9

10                                       By:        /s/ Jeffrey L. Berhold
11                                            Jeffrey L. Berhold

12                                       Attorneys   for   Plaintiff   INNOVATIVE
13                                       HEALTH LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial of its claims by jury to the extent authorized by law.


DATED:  December 9, 2019          THEODORA ORINGHER PC


By:       /s/ Panteha Abdollahi
_____
Panteha Abdollahi
Bradley Dugan

DATED:  December 9, 2019          JEFFREY L. BERHOLD, P.C.


By:       /s/ Jeffrey L. Berhold
_____
Jeffrey L. Berhold

Attorneys  for  Plaintiff  INNOVATIVE HEALTH LLC

# EXHIBIT 1



Date: February 4, 2019


RE: Position Statement on Clinical Account Specialist Case Support of Reprocessed Single Use Devices (SUD)


Dear Valued Customer,

This letter is to inform you of Biosense Webster, Inc.'s position regarding case support of reprocessed Single-Use-Devices (SUD) distributed by third parties.  Biosense Webster's commitment to providing high-quality products and services requires that we properly train all Clinical Account Specialists on the capabilities, limitations, and proper functioning of all our devices and equipment. Electrophysiologists ask Clinical Account Specialists to assist with reconstructing cardiac anatomy using our technology and interpreting maps and providing insight on the images generated by the CARTO® 3 System.  It is critical that our personnel possess a competent base of knowledge of the design intent of each device feature and a thorough understanding of how each device is designed to work with our capital equipment to help achieve the best possible outcome for each patient.  This base of knowledge is especially important when it comes to providing product technical support for the CARTO® 3 System, and troubleshooting the CARTO® 3 System in the midst of a procedure, which requires accurate inputs from diagnostic mapping and ultrasound catheters. Most hospital facilities also recognize the critical nature of vendor product competency as it relates to patient safety and consequently require vendor representatives to provide documentation attesting to their competency with their company's products as part of the vendor credentialing process.Reprocessing is a manufacturing process regulated by the U.S. Food and Drug Administration, and reprocessed single use devices generally require a new regulatory submission before they can be distributed. The regulatory clearance for reprocessed devices is owned by the reprocessing company that manufactures and distributes the devices, not the original equipment manufacturer. Therefore, once Biosense Webster's single use devices are subjected to the reprocessing process of another company, those devices are no longer our products.

To offer our customers a portfolio of both new and reprocessed devices, Biosense Webster has partnered with a reprocessing company that is also a member of the Johnson & Johnson Family of Companies. We have shared our calibration methods and product testing methods with our affiliated reprocessing company, and we distribute those products along with new Biosense Webster devices. We are confident that the reprocessed devices we distribute meet our quality standards.  However, we have no knowledge of the manufacturing operations or specifications of reprocessed devices manufactured by third parties with which we are not affiliated. As such, Biosense Webster cannot attest to the safety, effectiveness, and accuracy of these devices.

Accordingly, our Clinical Account Specialists can only provide product technical support in cases that use diagnostic mapping and ultrasound catheters distributed by Biosense Webster. Our Clinical Account Specialists understand the capabilities, limitations, and proper functioning of these devices and are able to deliver on our commitment of high-quality support for these products.

For any questions related to the information contained in this letter, please contact your local Biosense Webster, Inc. representative.

Thank you for your continued partnership and for choosing the Biosense Webster, Inc.


Sincerely,


Biosense Webster, Inc.

097317-180821

**Biosense Webster, Inc.**
33 Technology Drive
Irvine, CA 92618, USA
www.biosensewebster.com
**TEL:** 1-909-839-8500
**TEL:** 1-800-729-9010