KARLA KRAFT, State Bar No. 205530
  kkraft@sycr.com
KATIE BEAUDIN, State Bar No. 306402
  kbeaudin@sycr.com
STRADLING YOCCA CARLSON & RAUTH
A Professional Corporation
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100

Katherine B. Forrest (*Pro Hac Vice*)
kforrest@cravath.com
Michael T. Reynolds (*Pro Hac Vice*)
mreynolds@cravath.com
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>Defendant. | CASE NO. 8:19-cv-01984-JVS-KES<br>Hon. James V. Selna<br><br>**NOTICE OF DEFENDANT BIOSENSE WEBSTER, INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing<br>Date: October 19, 2020<br>Time: 1:30 p.m.<br><br>Complaint Filed:  October 18, 2019<br>Second Amended Complaint Filed: September 2, 2020 |

1

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on October 19, 2020 at 1:30 p.m., before the
3  Honorable James V. Selna, at Courtroom 10C at the above-captioned Court,
4  located at 411 West 4th Street, Santa Ana, California, 92701, defendant Biosense
5  Webster, Inc. ("Biosense" or "Defendant") will move the Court for an order
6  partially dismissing this action, without leave to amend, pursuant to Federal Rule
7  of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be
8  granted as to the third, fifth, ninth, and eleventh causes of action in the Second
9  Amended Complaint.

10  This Motion is based on this Notice of Motion, the attached Memorandum of
11  Points and Authorities, the declaration of Katie Beaudin and the exhibits thereto,
12  and all pleadings, records and other documents on file with the Court in this action,
13  and upon such oral argument as may be presented at, before and after the hearing
14  of this Motion.

15  This Motion is made following conferences of counsel pursuant to Local
16  Rule 7-3, which occurred on September 8, 2020.

17
18  DATED: September 16, 2020    STRADLING YOCCA CARLSON & RAUTH,
                                 A Professional Corporation
19
20                               By:   /s/ Katie Beaudin
                                       Karla Kraft
21                                     Katie Beaudin

22                               And

23
                                 Katherine B. Forrest *(Pro Hac Vice)*
24                               Michael T. Reynolds *(Pro Hac Vice)*
                                 CRAVATH, SWAINE & MOORE LLP
25                               Worldwide Plaza
                                 825 Eighth Avenue
26                               New York, NY 10019-7475

27                               Attorneys for Defendant
28                               BIOSENSE WEBSTER, INC.

2
NOTICE OF MOTION
CASE NO. 8:19-cv-01984

# MEMORANDUM OF POINTS AND AUTHORITIES

# BACKGROUND

Plaintiff's Second Amended Complaint (Dkt. No. 48) ("SAC") appears designed to create the impression that Plaintiff has done something to remedy a deficiency in its First Amended Complaint (Dkt. No. 25) ("FAC"), when in fact it does not. At best, the SAC adds a few words and moves some existing allegations from one section to another, but it alleges *nothing* substantively new, and certainly nothing new that is dispositive of any deficiency the Court identified in Plaintiff's prior pleading.

On August 18, 2020, this Court issued an order deciding Defendant Biosense's motion to dismiss Plaintiff's FAC. (Order Regarding Motion to Dismiss (Dkt. No. 45) ("Order").) In the Order, the Court ruled against Plaintiff in two respects: (1) it dismissed Plaintiff's causes of action for exclusive dealing (the Fourth, Sixth, Tenth and Twelfth counts); and (2) it "grant[ed] Biosense's motion to dismiss [Plaintiff's] causes of action as they relate to 'clinical support'" because Plaintiff "fails to plausibly allege Biosense's market power in clinical support". (Order at 10.) In granting the motion to dismiss Plaintiff's claims relating to clinical support, the Court also found with respect to market definition that while Plaintiff "attempts to define a separate market for clinical support for CARTO 3 systems", it concedes both "that hospitals may train their own personnel in how to use the mapping machine" and that it "does not exclude hospitals from [its] product market definition". (*Id.*)

However, in what gives rise to an internal inconsistency, the Court declined to dismiss Plaintiff's tying claims (the Third, Fifth, Ninth and Eleventh counts) (*id.* at 12), despite its acknowledgement that a Sherman Act claim requires a showing of market power in a relevant market (*see* Order at 8, 10) and that a Sherman Act tying claim requires Plaintiff to show "that the defendant has 'market power in the tying product'" (here, the provision of clinical support services) (*id.* at 11). The

fact that the tying claims were not dismissed based on Plaintiff's failure plausibly to allege market power in clinical support also raises the question of what causes of action were dismissed based on Plaintiff's pleading failures.

As a result, on August 27, 2020, Biosense filed a short Motion for Partial Reconsideration (Dkt. No. 46) ("Reconsideration Motion") arguing that, because the Court acknowledged the need, in a tying claim, to show market power in the alleged market for the tying product (clinical support)—a holding consistent with applicable precedent and Plaintiff's concession in its opposition brief (*see* Dkt. No. 36 at 23)—"[d]ismissal of the tying claims should follow from the Court's holding that Plaintiff failed to allege market power in the tying market" (Reconsideration Motion at 1). Plaintiff filed its opposition to the Reconsideration Motion on September 14, 2020, making five arguments why the Reconsideration Motion should be denied. (Dkt. No. 50 ("Reconsideration Opposition").) Biosense maintains that resolution of the inconsistency in the Court's Order remains as necessary now as it was prior to the filing of the SAC and that the Reconsideration Motion will aid in the resolution of the current motion by resolving that inconsistency without relitigating all of the points already litigated in the parties' prior briefing.[1]

Plaintiff filed the SAC on September 2, 2020.[2] With respect to the dismissed exclusive dealing claims, Plaintiff concedes that it included them in the SAC only to preserve them for appeal and that the Fourth, Sixth, Tenth and

---

[1] Biosense will not address Plaintiff's arguments in the Reconsideration Opposition here because they will be addressed in Biosense's reply to the Reconsideration Opposition, due September 21, 2020. To the extent the Reconsideration Opposition includes arguments that rely on Plaintiff's pleadings in the SAC, *see, e.g.*, Reconsideration Opposition at 5-6, those arguments should be made in opposition to this Motion to Dismiss the SAC, and Biosense will address them in its reply to Plaintiff's opposition here.

[2] A full redline tracking the changes between the FAC and the SAC is attached hereto as Exhibit 1.

Twelfth Counts of the SAC remain dismissed. (SAC at 2 n.1.) Thus, Plaintiff's only apparent purpose in filing the SAC is to attempt to address the Court's finding that Plaintiff did not plausibly allege Biosense's market power in the purported market for clinical support for the CARTO 3 system. In doing so, Plaintiff appears to concede that the FAC failed adequately to plead market power as required to support its tying claims. If the failure plausibly to allege market power in the tying product did *not* require dismissal of Plaintiff's tying claims (or any other claim), there would have been no reason for Plaintiff to attempt to remedy that deficiency in an amended pleading.

In any event, as detailed below, the SAC does not achieve its apparent purpose because it alleges nothing new that could conceivably require the Court to revisit its holdings—after extensive briefing by both sides—that Plaintiff does not plausibly allege Biosense's market power in clinical support and that Plaintiff's causes of action as they relate to clinical support should accordingly be dismissed. (Order at 10.) Therefore, and for the reasons stated below and in Biosense's Reconsideration Motion, Plaintiff's tying claims, the Third, Fifth, Ninth and Eleventh counts of the SAC, should be dismissed.

## ARGUMENT

As the Court recognized in its Order, to state a valid Sherman Act claim, "plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." (Order at 9 (quoting *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008)); *see also id.* at 10 (citing *Rick-Mik Enters. v. Equilon Enters*, 532 F.3d 963, 972 (9th Cir. 2008) for the proposition that "[a] failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint).) This is as true for a tying claim as it is for any other Sherman Act claim, whether analyzed using a per se or rule of reason analysis. As the Supreme Court stated unequivocally in *Illinois Tool*

*Works v. Independent Ink, Inc.*: "[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." 547 U.S. 28, 46 (2006); *see also DSM Desotech Inc. v. 3D Sys. Corp.*, 749 F.3d 1332, 1337 (Fed. Cir. 2014) ("As with a tying suit based on the per se rule, a tying suit based on the rule of reason requires a showing of market power."); *Tele Atlas N.V. v. NAVTEQ Corp.*, No. C-05-01673 RS, 2008 WL 4911230, at *2, n.2 (N.D. Cal. Nov. 13, 2008) (plaintiff's "failure to produce any evidence that [defendant] possessed market power in the alleged tying . . . market doomed its tying claims, regardless of whether they arise under a per se or rule of reason rubric."); Order at 11 (citing *Illinois Tool Works*, 547 U.S. at 34, for the proposition that "[t]he coercion element [of a tying claim] requires showing that the defendant has 'market power in the tying product'" and *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 13-14 (1984), for the proposition that courts "have condemned tying arrangements when the seller has some special ability—usually called 'market power'—to force a purchaser to do something that he would not do in a competitive market.")[3]

To avoid repetitive briefing, Biosense limits this motion to dismiss to whether anything "new" that Plaintiff alleges in the SAC adequately pleads a product market for clinical support for the CARTO 3 system or alters the Court's decision that Plaintiff's claims relating to clinical support should be dismissed because Plaintiff failed plausibly to allege that Biosense has market power in that purported market.[4] Because a tying claim requires that Plaintiff adequately plead

---

[3] In the Reconsideration Opposition, Plaintiff appears to argue that demonstrating market power in the tying product is not required for a tying claim under a "rule of reason" analysis. Plaintiff misunderstands and misstates the law—there is no such exception to the market power requirement in applicable precedents. Biosense will respond further to Plaintiff's arguments on this point in reply to the Reconsideration Opposition.

[4] In so doing, Biosense expressly preserves for appeal, but does not repeat here, all arguments made in its briefing on the motion to dismiss the FAC.

6
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 8:19-cv-01984

market power in the purported market for the tying product, the answer to that question will determine whether Plaintiff's tying claims should likewise be dismissed. Here, the analysis is straightforward because the SAC alleges nothing substantively new.

In its briefing on the motion to dismiss the FAC, none of Biosense's arguments about the absence of market power in the alleged clinical support market were premised on Plaintiff's failure to plead facts with sufficient particularity. (*See, e.g.*, Reply Brief at 12-15.)[5] Instead, Biosense argued that, even taking all of Plaintiff's allegations as true, those allegations are legally insufficient to establish meaningful barriers to entry. (*Id.*) Thus, it is unclear why Plaintiff believes that filing an amended pleading that at best adds minor details consistent with what was already alleged before could disturb the Court's prior determination of that legal question.[6]

While a redline comparison of the two complaints might give the impression that there have been significant changes and additions, a closer look shows that all of Plaintiff's changes in the SAC (relative to the FAC) fall into one of two categories.

*First*, in thirteen paragraphs of the SAC, Plaintiff merely adds or wordsmiths one or a few words, none of which substantively alters the meaning of the prior allegations in the FAC. A full comparison of the text of these paragraphs is

---

[5] For ease of reference, Biosense's briefing on its Motion to Dismiss the First Amended Complaint is attached hereto at Exhibit 4 (Dkt. 35, Defendant's Notice of Motion and Motion to Dismiss, "Opening Brief"); and Exhibit 5 (Dkt. 39, Defendant's Reply to Motion to Dismiss, "Reply Brief"), and Biosense's arguments with respect to clinical support and Plaintiff's tying claims have been highlighted.

[6] Biosense expects Plaintiff to exercise the same restraint Biosense has shown by not attempting to reargue issues already decided in the Order on the first motion to dismiss. To the extent that Plaintiff nevertheless attempts to do so, Biosense incorporates by reference herein its existing briefing on those issues and reserves its right to respond to any such arguments on reply.

presented in Exhibit 2. For example, in paragraph 16 of the SAC, Plaintiff adds that a new clinical support specialist needs 15 to 18 months of training and needs to keep up with software updates. But paragraph 16 of the FAC already alleged that "CARTO 3 clinical support requires specialized training and experience operating the CARTO 3 system software". Likewise, paragraph 46 of the SAC simply adds a topic sentence to what was previously paragraph 44 of the FAC. And in paragraphs 34 and 49 of the SAC, Plaintiff now decides that the alleged delay associated with encryption on catheters—which is not even relevant to the purported market for clinical support—is 8 to *12* months, as opposed to the 8 to *10* months previously alleged. It is self-evident that simply saying the same thing in a slightly different or more detailed way does nothing to remedy the legal insufficiency of those allegations.

*Second*, Plaintiff creates the impression that it has deleted a section of the FAC entitled "Clinical Support: Monopoly Power" (FAC ¶¶ 26-31) and added an entirely new set of four paragraphs in a section of the SAC entitled "Catheter Markets: Predatory Conduct" (SAC ¶¶ 40-43). However, a closer review reveals that Plaintiff has not added entirely new paragraphs, but has simply moved existing allegations from one section of its pleading to another, without adding anything substantively new. This fact can be seen in the full side-by-side comparison of the "new" and corresponding old paragraphs presented in Exhibit 3. For example, the allegation that Biosense provides clinical support for more than 95% of CARTO 3 procedures has simply moved from the now deleted paragraph 26 of the FAC to "new" paragraph 40 of the SAC. The allegation that Biosense controls access to "training instruction and materials for the CARTO 3 system hardware, software and catheters" moved from now deleted paragraph 27 of the FAC to "new" paragraph 41 of the SAC. The allegations that Biosense has cost advantages over independent service organization and that it is more efficient to cover a geographic cluster of hospitals because not every hospital needs clinical support every day

moved from now deleted paragraph 28 of the FAC to "new" paragraph 41 of the SAC. The allegations in now deleted paragraph 29 of the FAC that Biosense clinical account specialists "develop close working relationships with the physicians" and that physicians are loath to change specialists moved to "new" paragraph 42 of the SAC. And the allegation in now deleted paragraph 31 of the FAC that hospitals are disincentivized from restarting their own case coverage because Biosense is providing it for free moved to "new" paragraph 43 of the SAC. Plaintiff's shuffling of paragraphs does nothing to change the legal insufficiency of its prior allegations.

These various allegations of alleged barriers to entry regarding the purported market for clinical support are not new and therefore cannot save Plaintiff's tying claims. Each allegation was addressed in the parties' briefing on the prior motion to dismiss, including discussion of (1) "brand name power"; (2) hiring and training clinical account specialists; (3) control of training instruction and materials; (4) economies of scale like providing service to geographic clusters of hospitals; (5) cost advantages over independent service organizations; and (6) "entrenched buying preferences". (*See, e.g.*, Opening Brief at 19-21; Reply Brief at 13-15.) For example, Biosense pointed out that the need for specialized training is not a barrier to entry because it is "nothing more than the cost of providing the clinical support itself—hiring, training and paying employees—which is not unique to entrants and which Innovative itself could undertake". (Opening Brief at 21; *PNY Techs., Inc. v. SanDisk Corp.*, No. 11-CV-04689-WHO, 2014 WL 1677521, at *10 (N.D. Cal. Apr. 25, 2014) (dismissing complaint without allegations that alleged entry costs "will not be incurred by incumbent providers" (quoting *E. Portland Imaging Ctr., P.C. v. Providence Health Sys. Or.*, 280 F. App'x 584, 586 (9th Cir. 2008))).) Nothing about the "new" reference to needing "15 to 18 months" of training (SAC ¶ 16) changes that, since Plaintiff has not alleged that a new specialist at Biosense requires any appreciably lesser period of time to be trained or

that Plaintiff itself could not readily hire former Biosense or hospital personnel that already possessed the requisite training. *See Los Angeles Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1428 (9th Cir. 1993) ("The mere fact that entry requires a large absolute expenditure of funds does not constitute a 'barrier to entry'; a new entrant is disadvantaged only to the extent that he must pay more to attract those funds than would an established firm." (quoting 2 Areeda & Turner, Antitrust Law ¶ 409e at 303)). Since each of the barriers to entry alleged in the SAC was alleged in the FAC and thoroughly addressed in the parties' briefs, there is simply no reason to disturb the Court's finding that Plaintiff does not plausibly allege that Biosense has market power in the purported market for clinical support. (Order at 10.)

Finally, and tellingly, Plaintiff omitted a single allegation in this set of paragraphs that it previously pled—its allegation that Biosense "regularly hires away clinical support personnel" from hospitals. (FAC ¶ 30) As pointed out in Biosense's opening brief, this allegation, among others, demonstrates that hospitals can and do provide their own clinical support. (*See* Opening Brief at 20.) This omission is not surprising as the allegation provides further support for the Court's holding that "the FAC fails to plausibly allege Biosense's market power in clinical support" in part because "hospitals may train their own personnel in how to use the mapping machine" and "Innovative Health concedes that its market definition does not exclude hospitals from the product market definition . . . ." (Order at 10 (internal quotations omitted).) But Plaintiff cannot try to avoid the Court's prior holding by deleting its own allegation; the allegation remains a judicial admission that Plaintiff cannot avoid on a motion to dismiss by omitting it from its SAC. *See Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019). In any event, other allegations that remain in the SAC are sufficient to support the same conclusion despite the deletion. (*See, e.g.*, SAC ¶ 15 (alleging that hospitals historically provided their own case support); ¶ 16 (alleging that "[v]ery few hospitals handle their own

1 | CARTO 3 case coverage", conceding that some do); ¶ 40 (conceding that
2 | approximately 5 percent of hospitals provide their own clinical support).)
3 |     As demonstrated above, none of the allegations in the SAC has substantively
4 | changed.  The premises underlying Biosense's arguments in its motion to dismiss
5 | the FAC, as well as the Court's decision dismissing Plaintiff's claims as they relate
6 | to clinical support, remain the same.  Plaintiff has not corrected its failure to plead
7 | threshold market allegations sufficient to establish a market for CARTO 3 clinical
8 | support; the same concessions that hospitals have historically and still do provide
9 | their own case support remain.  Plaintiff also has not corrected its failure plausibly
10 | to plead market power in the purported "clinical support" market, under either a
11 | per se or rule of reason analysis, but has simply shuffled the inadequate allegations
12 | in the FAC without making any substantive changes.  Therefore, because a
13 | plausible allegation of market power in the tying product is a prerequisite to a tying
14 | claim, each of Plaintiff's tying claims should be dismissed.  *See Illinois Tool*
15 | *Works*, 547 U.S. at 46 (holding that "all" tying claims require a showing of market
16 | power in the tying product); *see also* Reconsideration Motion.
17 | / / /
18 | / / /
19 | / / /
20 | / / /
21 | / / /
22 | / / /
23 | / / /
24 | / / /
25 | / / /
26 | / / /
27 | / / /
28 | / / /

# CONCLUSION

For the reasons stated above, each of the Third, Fifth, Ninth and Eleventh counts of the SAC (the tying claims) should be dismissed with prejudice.

DATED: September 16, 2020    STRADLING YOCCA CARLSON & RAUTH,
A Professional Corporation

By:   */s/ Katie Beaudin*
Karla Kraft
Katie Beaudin

And

Katherine B. Forrest *(Pro Hac Vice)*
Michael T. Reynolds *(Pro Hac Vice)*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Attorneys for Defendant
BIOSENSE WEBSTER, INC.