Panteha Abdollahi, Esq. (State Bar No. 230002)
pabdollahi@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq. (Georgia State Bar No. 054682) (*Admitted Pro Hac Vice*)
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>Defendant. | Case No. 8:19-cv-1984 JVS (KESx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:         October 19, 2020<br>Time:         1:30 p.m.<br>Courtroom:  10C<br><br>Action Filed: October 18, 2019<br>Trial Date: September 28, 2021 |

Plaintiff Innovative Health LLC ("Innovative Health") hereby opposes Defendant Biosense Webster, Inc.'s ("Biosense") motion to dismiss the Section 1 tying claims in the Second Amended Complaint ("SAC"). The Court previously ruled that the First Amended Complaint ("FAC") adequately alleged the Section 1 tying claims. Order, Dkt. No. 45, at 12. Innovative Health alleged that hospitals cannot get clinical support for the CARTO 3 cardiac mapping system (the tying product) from Biosense without buying and using the high-density mapping catheters and ultrasound catheters for use on the CARTO 3 (the tied products) from Biosense. FAC ¶¶ 43-48 and Ex. 1. In denying the motion to dismiss the Section 1 tying claims in the FAC, the Court found that Innovative Health adequately alleged market power in the tying product under the per se rule (actual coercion) and actual detrimental effects in the tied product under the rule of reason (anticompetitive prices) for a tying claim under Section 1. Order, Dkt. No. 45, at 12.

Consistent with that order, Innovative Health filed the SAC to clarify its allegations of market power, *rather than monopoly power*, in CARTO 3 clinical support (the tying product) under the per se rule for its Section 1 tying claims. The Court had opined that Innovative Health would need to account for the presence of hospitals in the market in alleging market power. Order at 10. Therefore, the SAC also buttresses the allegations of market power in CARTO 3 clinical support based on four *additional* grounds beyond actual coercion – high market share, unique cost advantages, unique physician relationships, and free clinical support – *even when accounting for hospitals in the market*. Compare FAC, Dkt. No. 25, ¶¶ 26-31 *with* SAC, Dkt. No. 48, ¶¶ 40-43. Biosense contends Innovative Health is somehow admitting the inadequacy of its allegations on market power by setting out additional grounds to find market power. Mot. to Dismiss SAC at 5. This is *false*: the Court already found that Innovative Health adequately alleged market power by alleging Biosense actually coerced the hospitals (which obviously accounts for the presence of the hospitals in the market) and did not rule out any other basis for finding that

Biosense had the ability to coerce hospitals so long as those grounds accounted for the presence of hospitals in the market for clinical support. Order at 10 and 12. Therefore, Innovative Health filed the SAC to eliminate any dispute over the scope of discovery and issues for trial on its tying claims.[1]

Furthermore, those allegations are more than adequate as separate and independent bases of showing market power on the tying claims as discussed in Sections I.B to I.E below. At the same time, the SAC realleges the facts verbatim of market power based on the actual coercion of hospitals into buying their high-density mapping and ultrasound catheters from Biosense because of its case coverage policy. *Compare* FAC ¶¶ 46-48 *with* SAC ¶¶ 44-46. The SAC also realleges the facts verbatim of actual detrimental effects based on anticompetitive prices in the catheter markets. *Compare* FAC ¶¶ 33, 53 *with* SAC ¶¶ 27, 51. Innovative Health did not buttress these allegations because the Court already found them adequately pled when it denied Biosense's motion to dismiss the tying claims in the FAC. Order at 12.

Innovative Health adequately alleges its tying claims in the SAC, including allegations showing Biosense's market power in CARTO 3 clinical support. The SAC reaffirms the allegations of market power from the FAC that were already deemed sufficient by the Court and adds new bases for finding market power for analysis of the tying claims under the per se rule. The SAC also reaffirms the allegations of actual detrimental effects from the FAC that were already deemed sufficient by the Court as an alternative basis of liability under the rule of reason. Thus, Biosense's motion to dismiss should be denied.

---

[1] The complaint should give the defendant "reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *SMS Signature Cars v. Connects Mktg. LLC*, No. 8:12-cv-1300 JVS (ANx), 2012 WL 12893935, at *2 (C.D. Cal. Oct. 29, 2012) (Selna, J.) (quotations and citations omitted).

## I. The SAC Adequately Alleges Market Power for Per Se Rule.

The question of market power for a tying claim is "a factual question." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008). The present motion invites error to say otherwise. See Mot. to Dismiss SAC at 7 (claiming without support that market power is a "legal question"). The Court found that the FAC adequately alleged actual coercion giving rise to the inference of market power. Order at 12. The Court was correct in doing so. The SAC realleges the facts of actual coercion. SAC ¶¶ 44-46. They are addressed again below in Section I.A of this opposition brief.

Moreover, the Court did not find on the motion to dismiss the FAC that Innovative Health could not adequately allege market power in a relevant market for clinical support including hospitals where Biosense had a market share of more than 95% on "all" procedures or had unique cost advantages or relationship advantages over competitors "including hospitals." Nor did the Court find that cost advantage, customer relationships, or free goods could not be separate sources of economic power in clinical support. In fact, Biosense did not raise any of those arguments in challenging the tying claims in the motion to dismiss the FAC. Mot. to Dismiss FAC at 22-26. As set forth below in Sections I.B to I.E, they are separate bases in the SAC giving rise to the inference of market power for Biosense over hospitals and other potential competitors in CARTO 3 clinical support.

### A. Biosense's Actual Coercion

The Court held that the FAC adequately alleged a per se tying violation under Section 1. Order at 12. "The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." Order at 11 (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 n.9 (1992)). It is "clearly reasonable to infer" market power from the ability to charge higher prices

and exclude competition. *Kodak*, 504 U.S. at 477. Again, the question of market power for a tying claim is "a factual question." *Newcal*, 513 F.3d at 1052. It is enough to allege that Biosense is "able to force purchasers of the tying product . . . to buy the tied product." *Id.* at 1051-52 (quoting complaint in *Newcal*).

Here, the Court noted that Biosense had been able to force "many hospitals" to purchase its higher-priced catheters and that the case coverage policy foreclosed competitors from "the vast majority of the nation's markets for these catheters." Order at 12. The Court cited to the allegations showing the "force of the tying" in this case: "Innovative Health has alleged that many hospitals would not purchase Biosense catheters but for the [clinical support] service. See FAC ¶¶ 46-48." *Id.* That force of tying is present regardless of whether hospitals are included in the market definition for clinical support: the hospitals are still being coerced into buying catheters from Biosense. The SAC restates those allegations of actual coercion verbatim as a basis for finding enough economic power in clinical support. SAC ¶¶ 44-46.

### B. Biosense's Market Share

In addition, the SAC adequately alleges the inference of market power based on a dominant market share of more than 95% in clinical support after taking account of the presence of hospitals in that market. SAC ¶ 40. The SAC now specifically alleges that Biosense has a "dominant market share of more than 95%" in the relevant market for CARTO 3 clinical support including the hospitals: "Biosense Webster is the only supplier of CARTO 3 clinical support besides the hospitals themselves and provides CARTO 3 clinical support on more than 95% of <u>all</u> CARTO 3 procedures in the United States and each of its geographic pods within the United States." Id.

In the absence of actual coercion, market power "ordinarily is inferred from the seller's possession of a predominant share of the market." *Kodak*, 504 U.S. at 464. The Ninth Circuit has said that a market share of 60% to 70%, together with

the fragmented nature of the rest of the market, is more than adequate to infer market power under Section 1. *California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1186 & n.6 (9th Cir. 2010), on reh'g en banc sub nom. *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118 (9th Cir. 2011). Moreover, this Court has held that a market share "over 90%" in the tying market shows "immense" economic power. *Packaging Sys., Inc. v. PRC-Desoto Int'l, Inc.*, 268 F. Supp. 3d 1071, 1085 (C.D. Cal. 2017).

Market power in the tying product for a per se tying claim under Section 1 is not the same as monopoly power in the tied product for a monopolization claim under the "more stringent standard" of Section 2. *Kodak*, 504 U.S. at 481. That is exactly why Innovative Health amended the complaint. The SAC clarifies that Innovative Health only needs to allege market power, rather than monopoly power and entry barriers, in clinical support (the tying product) for its Section 1 tying claims for that exact reason. The harm from tying results from the ability to cut off rivals from sources of customers so the "real" basis of economic power in tying is market share in the tying product. Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and Its Practice § 3.1c, at 107 (6th ed. 2020).

There is no requirement to allege or prove barriers to entry into the tying product market. Where tying results in cutting off rivals *in the tied product market* from sources of customers, tying hinders competition *in the tied product market* by requiring competitors to enter two markets simultaneously, which is "one of the evils proscribed by the antitrust laws." *Kodak*, 504 U.S. at 485. Here, Biosense has "immense" power to block competitors in the high-density mapping catheters and the ultrasound catheters (the tied products) from access to customers because the market share allegations show that more than 95% of hospitals prefer to use Biosense for CARTO 3 clinical support (the tying product). *Packaging Sys.*, 268 F. Supp. 3d at 1085. It would be clear error to dismiss the tying claims in the face of allegations of market share in the tying product exceeding 95%.

### C. Biosense's Unique Cost Advantages

Furthermore, the SAC alleges Biosense has advantages not shared by its competitors, *including hospitals*, in the costs of providing clinical support. SAC ¶ 41. The Ninth Circuit has recognized economic power for tying claims arising from a unique cost advantage over competitors. *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 915 n.26 (9th Cir. 2008). Here, hospitals lack the economies of scale, and third parties lack access to Biosense's technology and its proprietary training materials, to compete with Biosense on the cost of providing CARTO 3 clinical support. SAC ¶ 41.

### D. Biosense's Physician Relationships

The Ninth Circuit has also recognized economic power for tying claims flowing from relationships with customers. *Newcal*, 513 F.3d at 1050. Here, the physicians select their clinical support and have longstanding relationships with their Biosense clinical account specialists: they often insist on continuing to use CARTO 3 clinical support provided by Biosense Webster rather than switching to CARTO 3 clinical support provided even by their own hospital. SAC ¶ 42.

### E. Biosense's Free Clinical Support

Moreover, the economic literature recognizes that you can create economic power in a tying product by offering the tying product for free. Michal S. Gal & Daniel L. Rubinfeld, The Hidden Costs of Free Goods, 80 Antitrust L.J. 521, 528-31, 552-53, 559 (2015-16) (attached hereto as Exhibit 1). "Here, hospitals are much less willing to pay to train and employ their own clinical support specialist after becoming accustomed to receiving CARTO 3 clinical support for free. At the same time, independent third parties do not have an incentive to enter a market for free goods." SAC ¶ 43.

## II. The SAC Adequately Alleges Detrimental Effects for Rule of Reason.

The Court also found that the FAC adequately alleged an "anticompetitive effect" – *i.e.*, "forcing customers to pay higher prices" – to bring a claim under the

rule of reason "[i]f Innovative was unable to allege a per se tying violation." Order at 12. A tying claim can be analyzed under the per se rule – or the rule of reason. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012). Section 1 asks whether a tying arrangement is likely to affect competition by proof of market power (per se rule) or has affected competition by proof of actual detrimental effects (rule of reason). To state a Section 1 tying claim under the rule of reason, a plaintiff is not required to allege sufficient economic power in the tying market.

Instead, a plaintiff must simply allege facts supporting the inference that the tying "actually injures competition." *Id.* (citations and quotations omitted). In fact, Biosense has already argued that the FAC failed to adequately allege that the case coverage policy has an anticompetitive effect "to the extent the FAC seeks to plead a tying claim under the rule of reason." Mot. to Dismiss FAC, Dkt. No. 35, at 25-26 (quoting *Brantley*). But the Court cited to the specific factual allegations on prices in the FAC and denied the motion to dismiss the FAC. Order at 12 (citing FAC ¶¶ 33, 53 and quoting *Brantley*).

The Ninth Circuit allows tying claims under Section 1, like any other claims under Section 1, to be proven under the rule of reason. *Brantley*, 675 F.3d at 1197. The present motion does not even acknowledge *Brantley*. See Mot. to Dismiss at 5-6. Instead, Biosense points to a snippet from a decision six years earlier in *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 32 (2006). But the Ninth Circuit in *Brantley* was aware of *Illinois Tool Works*.

And the plaintiff in *Illinois Tool Works* was relying on the presumption of market power for a patented product to prevail on a tying claim *under the "per se" rule*. Id. at 32 (quoting district court on summary judgment). The Supreme Court said no: "The question presented to us today is whether the presumption of market power in a patented product should survive as a matter of antitrust law despite its demise in patent law. We conclude that the mere fact that a tying product is patented does not support such a presumption." *Id.* at 31. At the same time, the Supreme

*PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS*
*SECOND AMENDED COMPLAINT*

Court made clear in *Illinois Tool Works* that market power would not be presumed under the per se rule because *the per se rule is a shortcut* that "focuses on the probability of anticompetitive consequences" – *e.g.*, whether "the existence of forcing is probable" in a tying arrangement – "without inquiry into actual market conditions." *Id.* at 37.

The rule of reason is that inquiry into actual market conditions resulting from a tying arrangement that allegedly violates Section 1. The Supreme Court has explained that market power is "but a surrogate for detrimental effects." *Fed. Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61 (1986) (quotations omitted). Biosense already acknowledged the need to analyze the tying claims under the rule of reason in its briefing on the motion to dismiss the FAC. Mot. to Dismiss FAC at 25 (quoting *Brantley*). Moreover, the Court already analyzed the allegations of actual detrimental effects under the rule of reason and expressly found that the FAC had adequately alleged an "anticompetitive effect" to proceed on that basis on the Section 1 tying claims. (citing FAC ¶¶ 33, 53 and quoting *Brantley*). The SAC restates those allegations verbatim. SAC ¶¶ 27, 51. The Court was correct in finding that they were adequate for alleging a tying claim based on the rule of reason under *Brantley*.

### Conclusion

In sum, the Court already found that the FAC adequately alleged actual coercion of hospitals giving rise to market power in the tying product (clinical support) for its Section 1 tying claims under the per se rule. The SAC restates those allegations verbatim. The SAC also sets out specific factual allegations of four additional bases for inferring market power in clinical support (the tying product) that expressly account for the presence of hospitals in that market. They each adequately allege facts giving rise to the inference of market power in clinical support as well. Finally, the Court already found that the FAC adequately alleged actual anticompetitive effects for its Section 1 tying claims under the rule of reason.

The SAC restates those allegations verbatim. Therefore, dismissal of the Section 1 tying claims would be clear error.

In any event, the Court is not required by any purported inconsistency in its prior ruling on the FAC to reverse its express findings on the tying claims in the FAC or ignore the additional factual allegations of market power in the tying product in the SAC. "Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In fact, the Court has the inherent authority to "correct mistakes" that lead to "clear error." *Allergan Inc. v. Athena*, No. 8:07-cv-1316-JVS, 2012 WL 12898344, at *4 (C.D. Cal. May 24, 2012) (Selna, J.). Here, dismissal of the Section 1 tying claims would be clear error on the factual allegations in the SAC. For all the foregoing reasons, the motion to dismiss the SAC should be denied.

DATED: September 28, 2020         THEODORA ORINGHER PC

By:    /s/ Panteha Abdollahi
       Panteha Abdollahi

JEFFREY L. BERHOLD, P.C.

By:    /s/ Jeffrey L. Berhold
       Jeffrey L. Berhold

Attorneys for Plaintiff INNOVATIVE HEALTH LLC