UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-01984JVS(KESx) | Date | Dec. 11, 2020 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Defendant's Motion to Dismiss**

Defendant Biosense Webster, Inc. ("Biosense") moved to dismiss Plaintiff Innovative Health LLC's ("Innovative Health") corrected second amended complaint ("CSAC"). Dkt. No. 60. Innovative Health opposed the motion. Dkt. No. 61. Biosense then filed its Reply. Dkt. No. 69.

After the Court posted its tentative order, Biosense requested a hearing. Dkt. No. 70. Innovative Health then responded. Dkt. No. 72. The Court finds that no hearing is necessary, but has addressed certain concerns Biosense raised below.

For the following reasons, the Court **DENIES** the motion.

### I. BACKGROUND

#### 1. Factual Background

The background is drawn from the allegations in Innovative Health's CSAC. See CSAC, Dkt. No. 58. Only the portions of the factual background relevant to the instant motion are discussed.

This action involves a dispute between two competitors in the market for cardiac mapping systems and catheters. Biosense manufactures and sells the CARTO 3 cardiac mapping system and ultrasound catheters (SOUNDSTAR and ACUNAV) and high-density mapping catheters (PENTARAY and LASSO) for use with the system. Id. ¶¶ 2, 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-01984JVS(KESx)                            Date   Dec. 11, 2020

Title   Innovative Health LLC v. Biosense Webster, Inc.

The CARTO 3 cardiac mapping system tests the electrical activity of the heart to diagnose abnormal heart rhythms. Id. ¶¶ 2, 6, 7. During the procedure, the physician uses a variety of catheters and relies on a technician to operate the mapping system software. Id. ¶¶ 6, 15.

Biosense describes itself as the "global leader" in cardiac mapping systems and has more than 50% of the systems installed in the United States. Id. ¶ 7. The FDA approved the CARTO 3 system for sale on October 13, 2009. Id.

The FDA has also cleared Innovative Health to reprocess and sell the same catheters to hospitals one to three additional times for single use before disposal. Id. ¶¶ 1, 7.

*i.   Catheter Market*

Innovative Health alleges that Biosense has monopoly power in the nationwide markets or submarkets for high-density mapping and ultrasound catheters for use with the CARTO 3 mapping system. CSAC ¶ 27. Specifically, Biosense has been able to charge supracompetitive prices for high-density mapping and ultrasound catheters. Id. Biosense has also maintained a dominant share of the market (estimated at 99%). Id. ¶ 28. Biosense also restricts output in the market and existing competitors lack the capacity to expand their output to effectively compete with Biosense. Id. ¶¶ 29-30.

Biosense has also caused significant barriers to entry in those markets. Id. ¶ 32. For example, "Biosense has ownership rights and exclusive licenses to patents blocking development of competing brands for use on the CARTO 3 system" and has brand name power as well. Id. ¶ 32. It has also "created a closed system for connecting high-density mapping catheters and ultrasound catheters." Id. ¶ 33. Biosense uses Because of encryption technologies on catheters. Id. ¶ 34. For third-party re-processors competing against Biosense, a change in Biosense's in encryption "during the development process, can add an additional 8 to 12 months to time needed to enter the market." Id.

Biosense also imposes additional barriers to entry into the catheter markets through its predatory conduct. Id. ¶¶ 37-51. For example, as a result of Biosense's training programs, it "hires away clinical support personnel from the few hospitals handling their own CARTO 3 Clinical Support by offering significantly higher compensation once the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-01984JVS(KESx) | Date | Dec. 11, 2020 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

hospital has incurred the expense of training the specialist." Id. ¶ 41.  As a result of then imposing noncompete agreements of 18 months or more on its own clinical account specialists, it is also able to limit the supply of qualified CARTO 3 Clinical Support specialists. Id.

    *ii.    Clinical Support Market*

In the CSAC, Innovative Health claims that a relevant service market exists for CARTO 3 clinical support. CSAC ¶ 8.

In the CSAC, Innovative Health discusses the role of CARTO 3 Clinical Support relative to the catheters Biosense also provides. Innovative Health alleges that this service is unique and difficult to provide. Specifically, "[i]f there is no CARTO 3 Clinical Support, the cardiac mapping procedure does not get done." Id.  CARTO 3 Clinical Support requires the use of an expert to guarantee proper use of CARTO 3 hardware, software, and catheters. Id.  These experts are hired by Biosense, which operates a clinical account specialist training program, including "extensive life classroom and one-on-one clinical training on the CARTO 3 that lasts 6 to 12 months." Id.  According to Innovative Health, these experts "are not reasonably interchangeable with other allied health professionals, such as radiographers or sonographers," and hospitals "must use a trained CARTO 3 clinical support specialist for CARTO 3 procedures regardless of any price increase in CARTO 3 clinical support." Id.

Not only is CARTO 3 Clinical Support difficult to provide, but also, Biosense is "the only option for CARTO 3 clinical support" in "almost every hospital in the United States." Id. ¶ 9.  "Very few hospitals provide their own CARTO 3 clinical support," and "on information and belief, California has just one hospital that provides its own CARTO 3 clinical support and has the capability to provide" similar training to what Biosense itself provides. Id.  This is because hospitals do not have the ability to start their own CARTO 3 Clinical Support programs. Id.

Biosense also does not provide its training materials to hospitals so they can manage CARTO 3 themselves: "[u]pon information and belief, Biosense has not provided its own clinical account specialist training program or any comparable program with live classroom and one-on-one clinical training to hospitals to train their staffs to provide their own CARTO 3 clinical support." Id.  Biosense also has been "the sole

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-01984JVS(KESx) | Date | Dec. 11, 2020 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

outside supplier to hospitals in the market for CARTO 3 clinical support" and "none of the other cardiac mapping system manufacturers offer clinical support, or training for clinical support, on the CARTO 3." Id. ¶ 10.

Innovative Health also alleges "relevant geographic markets or submarkets for CARTO 3 clinical support based on the geographic pods organized by Biosense to provide CARTO 3 clinical support in the United States." Id. ¶ 11. There are "hundreds of clinical account specialists" organized into these geographic pods. Id. "[O]ne or more clinical account specialists will service the cluster of labs in that pod or territory." Id.

### iii. Separate Market

Innovative Health alleges a separate market for its catheter markets. Id. ¶ 19. "The prices of catheters are set independently of the price for clinical support" and Biosense even "sells catheters of all kinds without clinical support." Id. Hospitals also purchase other catheters – those not from Biosense – without clinical support. Id. ¶ 19. Moreover, hospitals even "prefer to purchase catheters separately from the clinical support and routinely do so in the absence of the case coverage policy." Id. Hospitals can realize "even larger cost savings on the higher-priced catheters" provided by Biosense by doing so. Id.

Historically, the aforementioned was the case, but Biosense has "since initiated a program more than ten years ago to provide clinical account specialists free of charge to provide case coverage to develop physician relationships, cultivate brand loyalty, and drive catheter sales." Id. ¶ 20. Since Biosense started this program, "nearly all hospitals have switched their CARTO 3 clinical support to Biosense and become accustomed to receiving CARTO 3 clinical support for free. They have also lost the capability to provide their own CARTO 3 clinical support or train their staff to do so." Id. ¶ 20.

Whereas CARTO 3 clinical support is not provided as part of the contract for the purchase of the CARTO 3 system, "Biosense has implemented a written policy of refusing to provide case coverage by its clinical account specialists in support of physicians at hospitals on cases with Biosense high-density mapping and ultrasound catheters reprocessed by competitors." Id. ¶¶ 19, 20. To that end, "Biosense will pull its clinical support for the CARTO 3 if the hospital intends to use a high-density mapping catheter or ultrasound catheter reprocessed by a third party on the case." Id. ¶ 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-01984JVS(KESx) | Date | Dec. 11, 2020 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Once a hospital has purchased a cardiac mapping system – which Innovative Health claims Biosense is shielded from competition on the initial price – it is also likely to continue using the existing system. Id. ¶¶ 21-26. Hospitals do so not only because of Biosense's initial courting of hospitals by building relationships with them, but also because the CARTO 3 systems are "already used at their hospital and perceived to be the established standard of care at that hospital specifically or in their locale generally." Id. ¶ 25. Moreover, hospitals will hesitate to purchase a new cardiac mapping system given the enormous cost of doing so, and because "very few hospitals even have staff qualified to operate any cardiac mapping system to get trained for switching to a new system." Id. ¶ 26.

Biosense also provides clinical support for some catheters not provided by it. Id. ¶ 19.

## 2.  Procedural Background

On August 18, 2020, the Court granted in part and denied in part Biosense's motion to dismiss. Dkt. No. 45. In addition to the matters described below, the Court granted the motion to dismiss the exclusive dealing causes of action. Id. at 11.

Thereafter, Biosense moved for partial reconsideration on other issues addressed in the Court's Order. Biosense claimed that while the Court dismissed the causes of action as they related to clinical support because Innovative Health failed to plausibly allege market power for clinical support, the Court erred in finding that Innovative Health could plausibly plead tying. Dkt. No. 46. The Court agreed, finding that Innovative Health needed to allege market power, but failed to do so, and granted Innovative Health ten days to submit a corrected second amended complaint. Dkt. No. 58. On October 16, 2020, Innovative Health filed its corrected second amended complaint. Dkt. No. 58. Biosense then moved to dismiss. Dkt. No. 60.

Innovative Health now asserts 12 causes of action against Biosense: (1) monopolization in violation of the Sherman Act, 15 U.S.C. § 2 (high-density mapping catheters); (2) attempted monopolization in violation of the Sherman Act § 2 (high-density mapping catheters); (3) tying in violation of the Sherman Act § 1 (high-density mapping catheters); (4) exclusive dealing in violation of the Sherman Act § 1 (high-density mapping catheters); (5) tying in violation of the Cartwright Act, Cal. Bus. & Prof.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-01984JVS(KESx)   Date   Dec. 11, 2020

Title   Innovative Health LLC v. Biosense Webster, Inc.

Code § 16720 (high-density mapping catheters); (6) exclusive dealing in violation of the Cartwright Act (high-density mapping catheters); (7) monopolization in violation of the Sherman Act § 2 (ultrasound catheters); (8) attempted monopolization in violation of the Sherman Act § 2 (ultrasound catheters); (9) tying in violation of the Sherman Act § 1 (ultrasound catheters); (10) exclusive dealing in violation of the Sherman Act § 1 (ultrasound catheters); (11) tying in violation of the Cartwright Act (ultrasound catheters); and (12) exclusive dealing in violation of the Cartwright Act (ultrasound catheters). See generally, id.

Biosense limited its discussion and its motion to dismiss to Innovative Health's tying claims (i.e., the third, fifth, ninth, and eleventh counts in the SAC). Dkt. No. 59 at 23.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-01984JVS(KESx)    Date  Dec. 11, 2020

Title    Innovative Health LLC v. Biosense Webster, Inc.

### III. DISCUSSION[1]

Tying occurs when "the seller conditions the sale of one product (the tying product) on the buyer's purchase of a second product (the tied product)." Rick-Mik Enters. v. Equilon Enters., 532 F.3d 963, 971 (9th Cir. 2008) (internal quotation marks omitted). "The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 464 n.9 (1992) (internal quotation marks and alterations omitted).

The coercion element requires showing that the defendant has "market power in the tying product." Illinois Tool Works Inc. v. Indep. Ink, 547 U.S. 28, 34 (2006); see also Jefferson Par. Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 13-14 (1984), abrogated by Illinois Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28,(2006) ("[W]e have condemned tying arrangements when the seller has some special ability—usually called 'market power'—to force a purchaser to do something that he would not do in a competitive market."). Coercion requires more than "mere and incidental sales pressure." Paladin Assocs., Inc. v. Montana Power Co., 328 F. 3d 1145, 1160 (9th Cir. 2003).

"[T]o establish that a tying arrangement is illegal per se, plaintiffs must prove three elements: (1) a tie between two separate products or services sold in relevant markets; (2) sufficient economic power in the tying product market to affect the tied market; and (3) an effect on a not-insubstantial volume of commerce in the tied product market. See Bhan v. NME Hosps., Inc., 929 F.2d 1410, 1411 (9th Cir. 1991). However, a "tying arrangement which is not unlawful per se may be invalidated under the 'rule of reason' if

---

[1] At the outset, the Court acknowledges Biosense's argument that the CSAC is an improper attempt to amend a complaint that adds nothing substantively new. Biosense claims that the Court did not permit Innovative Health the opportunity to amend its complaint, only ordering it to submit a corrected second amended complaint. Dkt. No. 60 at 6. While the Court did order Innovative Health to submit a CSAC, its earlier order on Biosense's motion to dismiss granted it thirty days to replead. Subsequent to that order, Biosense filed a motion for reconsideration as well as a motion to dismiss while other matters were still pending. Moreover, to the extent that Innovative Health claims that certain discovery is required to verify its claims (a claim which Biosense asserts is unfounded), the Court also recognizes that the current posture of this case is at a motion to dismiss. Therefore, the Court will consider Innovative Health's CSAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 19-01984JVS(KESx)  Date Dec. 11, 2020

Title  Innovative Health LLC v. Biosense Webster, Inc.

the party challenging the tie demonstrates that it is 'an unreasonable restraint on competition in the relevant market.'" Cty. of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1157 (9th Cir. 2001) (internal quotations omitted). Under the rule of reason analysis, a Court analyzes "the degree of harm to competition along with any justifications or pro-competitive effects to determine whether the practice is unreasonable on balance." Oltz v. St. Peter's Community Hosp., 861 F.2d 1440, 1445 (9th Cir.1988).

  i.  *Failure to Identify a Separate Tying Market*

"The definition of an antitrust 'relevant market' is typically a factual rather than a legal inquiry, but certain legal principals govern the definition." Apple Inc. v. Psystar Corp., 586 F.Supp.2d 1190, 1196 (N.D. Cal. 2008) (citing Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1045 (9th Cir. 2008)). A product market comprises "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." United States v. E.I. duPont de Nemours & Co., 351 U.S. 377, 406 (1956). Pursuant to these guidelines, "the relevant market must include 'the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business.'" Newcal Indus., 513 F.3d at 1045 (quoting Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1374 (9th Cir.1989)).

Accordingly, a complaint should be dismissed under Rule 12(b)(6) only where "the complaint's 'relevant market' definition is facially unsustainable." Newcal Indus., 513 F.3d at 1045. Such a "facially unsustainable" relevant market definition may be found in cases where "the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." Colonial Med. Group, Inc. v. Catholic Healthcare W., No. 09–2192 MMC, 2010 WL 2108123, at *3 (N.D. Cal. May 25, 2010) (quoting Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997)).

In its motion, Biosense first claims that Innovative Health has failed to define a plausible separate tying market for clinical support. Dkt. No. 60 at 9-13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-01984JVS(KESx) | Date | Dec. 11, 2020 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Key to Biosense's argument is that "according to Plaintiff's own allegations, Biosense neither currently sells, nor has it ever sold, clinical support for CARTO 3; no other entity has ever sold such support; and Biosense's free clinical support program was put in place incidental to its product sales and not in response to demand for a separate product." Id. at 10. Because, at base, there is no price for clinical support, and Innovative Health even concedes that Biosense has provided clinical support as only incidental to the purchase of Biosense's products and not as a separate service, Biosense asserts Innovative Health cannot demonstrate a separate tying market. Id.

Biosense also asserts that Innovative Health's claims fail the purchaser demand test, as both "direct and indirect facts alleged show that clinical support is not an independent product." Id. Biosense claims that the allegations of direct evidence support a single product, as, for example, at one time, "Biosense did not have the alleged tie, and customers still overwhelmingly chose Biosense's catheters." Id. at 11. Indirect evidence also shows a single product because the fact that "more hospitals do not continue to self-support shows that there is insufficient demand for clinical support as a separate product", something which began more than ten years ago. Id. at 12-13.

In its Opposition, Innovative Health claims that the CSAC clarifies the relevant market to be CARTO 3 Clinical Support, i.e., the operation of the CARTO 3 during a cardiac mapping procedure. Opp'n at 12, Dkt. No. 61. CARTO 3 Clinical Support also has all the practical indicia of an economically distinct submarket, according to Innovative Health: "public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." Id. Moreover, clinical support is not provided for free, but rather, is "a scarce resource" as hospitals "pay significant sums to provide their own clinical support." Id. at 14. Only Biosense can provide Clinical Support for free because it receives other benefits in exchange for it. Id. Effectively, Innovative Health argues that the cost of the support service is borne out by consumers having to pay monopolistic prices to purchase the clinical support. Id. at 14-15. Innovative Health also contends there is evidence of demand (i.e., $400 million in annual sales) for catheters apart from clinical support as many customers would not purchase the tied product from Biosense when given a choice. Id. at 15-16. Lastly, the lack of new entry into the market is evidence of power in the tied market. Id. at 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-01984JVS(KESx)                                Date   Dec. 11, 2020

Title   Innovative Health LLC v. Biosense Webster, Inc.

    The Court finds that Innovative Health has sufficiently demonstrated a relevant product market, at least at the pleading stage.

    A relevant market "encompasses notions of geography as well as product use, quality, and description. The geographic market extends to the area of effective competition' ... where buyers can turn for alternative sources of supply.  The product market includes the pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand."  Tanaka v. Univ. of S. California, 252 F.3d 1059, 1063 (9th Cir. 2001) (internal quotations omitted).

    First, there is significant training and expense dedicated to sustaining enough professionals to support the market, and CARTO-3 Clinical Support is recognized by hospitals, physicians, and Biosense as a specialty, all of which demonstrates the existence of a market for CARTO 3 Clinical Support.  See CSAC ¶¶ 10-11.  Moreover, the situation is analogous to that in Eastman Kodak Co. v. Image Tech. Servs.,Inc., 504 U.S. 451 (1992).

    In Kodak, the Supreme Court found that because the record had indicated that services and parts in the past had been sold separately and were still sold separately to self-service equipment owners, there was sufficient evidence of two markets.  Kodak, 504 U.S. at 462.  While Biosense disputes the applicability of Kodak, arguing that the record there reflected distinct product markets and that is not the case here.  Reply at 6-9, Dkt. No. 69.  In Kodak, the Supreme Court found the following:
> Evidence in the record indicates that service and parts have been sold separately in the past and still are sold separately to self-service equipment owners.  Indeed, the development of the entire high-technology service industry is evidence of the efficiency of a separate market for service.

Kodak, 504 U.S. at 462.  Here, the CSAC alleges that hospitals in the past have provided their own clinical support.  CSAC ¶ 20.  Some hospitals continue to do so.  Id. ¶ 9.  The CSAC also alleges that some hospitals that do not currently provide their own clinical support would prefer to do so now too.  Id. ¶¶ 44-46.  Like in Kodak, for the customers "who self-service, for example, [and] would purchase parts without the service," here, it is plausible that hospitals would procure clinical support from other sources.

    Second, the Court is persuaded that Biosense is not the only provider in the market – hospitals can also provide their own CARTO 3 Clinical Support – and therefore, this is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-01984JVS(KESx)    Date  Dec. 11, 2020

Title  Innovative Health LLC v. Biosense Webster, Inc.

not the situation involving a single-branded market. See CSAC ¶10; see also Green Country Food Market, Inc. v. Bottling Group, 371 F.3d 1275, 1282 (10th Cir. 2004) ("Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market."). The Court also disagrees with Biosense that the lack of a change in Biosense's market share in catheters demonstrates a single market. Reply at 10. The CSAC asserts a rough timeline establishing when the case coverage policy came into effect, as well as when Biosense began circulating the letter attached to the CSAC (informing consumers of its case coverage policy). CSAC ¶¶ 38, 47. The claim that Biosense's market share should have increased (when it was already had a high market share) does not necessarily follow. Unlawfully maintaining share is just as actionable as unlawfully increasing share.

Finally, Innovative Health describes a geographic market or submarket for CARTO 3 clinical support, noting the related geographic pods that exist and that Biosense organizes its clinical support specialists accordingly. See CSAC ¶ 11.

Outside of these two points, the Court finds that the allegations are sufficient to withstand a motion to dismiss given the significant case law that Courts should not dismiss these claims unless they are facially unsustainable. Much of the Parties attention has focused on the applicability of Kodak to the instant case. In Kodak, the Supreme Court also noted that "[e]nough doubt is cast on Kodak's claim of a unified market that it should be resolved by the trier of fact." Kodak, 504 U.S. at 464. Biosense requests that the Court prevent Innovative from even reaching that stage. The Court cannot comply with that request. See, e.g., Tanaka, 252 F.3d at 1063–64; Newcal Indus., 513 F.3d at 1045 ("[S]ince the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial.").

The Court addresses another issue Biosense cites in its request for hearing. Dkt. No. 70. Biosense claims that the Court has shifted its holdings while the substantive allegations have gone unchanged. But that is incorrect – since filing the original complaint, the first amended complaint, the second amended complaint, and the now operative corrected second amended complaint, Innovative Health has revised its claims. Therefore, the Court finds that Innovative Health plausibly alleges a separate product market.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-01984JVS(KESx) | Date | Dec. 11, 2020 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

      *ii.    Failure to Allege Market Power in the Tying Market*

      Biosense next claims that Innovative Health does not plausibly allege a separate product market for clinical support, first because there are no significant barriers to entry, and second, because all of its allegations concerning anticompetitive effects in the catheter markets are conclusory.

      Biosense asserts that the CSAC does not plausibly plead market power circumstantially because even its previous allegation that Biosense maintained a 95% share of the purported market is alone insufficient to infer market power absent any barriers to entry. Dkt. No. 26 at 14-15. Biosense also claims that the barriers to entry pled in Innovative Heatlh's CSAC – i.e., the hiring and training of clinical support technicians, physician relationships, or the free effect of its support – do not constitute actual barriers because they are not significant enough to constrain the market. Id. at 15-17. Its assertions related to the hiring and training of clinical support technicians fail because, first, these are not new allegations, and second, hospitals operated the CARTO 3 without Biosense clinical support before Biosense's clinical support program. Id. at 15.

      Biosense also asserts that Innovative Health's claims concerning the anticompetitive effects in the catheter markets are conclusory because first, Biosense has not foreclosed competition as it only has a 90% share of the market and second, because the only claimed point of reference is that Biosense catheters for CARTO 3 are 10-20% higher than competitor catheters. Id. at 19.

      In Opposition, Innovative Health first contends that the Ninth Circuit tests market product for a tying claim by examining whether a defendant possesses enough economic power in the tying market to coerce its customers into purchasing the tied product. Opp'n at 19. It claims that it does not need to demonstrate barriers to entry. According to Innovative Health, the CSAC alleges coercion because Biosense "refuses to provide the clinical support without the high-density and ultrasound catheters." Id. at 20. It also alleges high market share because Biosense has a market share of more than 95% of the tying product, exceeding the 90% threshold courts have previously found to constitute market power. Id. at 20-21. It also has significant advantages in clinical support, i.e., its relationships with physicians. Id. at 21-22. These advantages also pose significant barriers of entry into the market. Id. at 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-01984JVS(KESx)                             Date   Dec. 11, 2020

Title       Innovative Health LLC v. Biosense Webster, Inc.

In the Court's Order on Biosense's Motion to Dismiss, the Court found that Innovative Health had failed to allege that Biosense exercised market power for its CARTO 3 clinical support. Dkt. No. 45 at 10. It found so because Innovative Health had conceded that its market definition did not exclude hospitals from the product market definition. Id.

Since the Court's Order (Dkt. No. 48) on Biosense's motion for reconsideration, Innovative Health clarified that the relevant market was "CARTO 3 clinical support, i.e., operation of the CARTO 3 during a cardiac mapping procedure." CSAC ¶ 8. This definition differs from the earlier Complaint, which specified that the market was CARTO 3 clinical support and did not include the reference to operation of the machine itself. Based on this clarification, the Court finds that the CSAC has sufficiently addressed this issue from its earlier Order. The Court then assesses whether Innovative Health has sufficiently pled market power.

The Court agrees with Innovative Health that the CSAC alleges actual coercion and market power. In the Court's earlier Order on Biosense's motion to dismiss, it found that "Innovative Health has alleged that many hospitals would not purchase Biosense catheters but for the service." Dkt. No. 45 at 12 (citing FAC ¶¶ 46-48). The Court sees no reason to deviate from that earlier finding, especially given that Innovative Health addressed the other flaws associated with its earlier Complaint. The Court is also persuaded that, at the current stage, Innovative Health has adequately pleaded barriers to entry into the market, by alleging the close physician relationships that exist, the high cost to enter the market, or the inability to compete with Biosense at the same cost.

Moreover, the Court is persuaded that the market share Biosense holds is sufficient to demonstrate market power. Market power can be established by showing that the firm has a predominant share of the market. United States v. Loew's, Inc., 371 U.S. 38, 45 (1962), overruled on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28, 33 (2006). This is also the case because Biosense "offers a product that is unique or that has special appeal to consumers." Id.; see also Digidyne Corp. v. Data Gen'l. Corp., 734 F.2d 1336, 1339–41 (9th Cir. 1984), cert. denied, 473 U.S. 908 (1985).

While the Court also recognizes Biosense's argument – both in its motion and its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-01984JVS(KESx) | Date | Dec. 11, 2020 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

reply – that market share alone is insufficient to demonstrate market power, the Court is satisfied with that Innovative Health's allegations sufficiently plead market power. See Dkt. No. 60 at 14-15, Reply at 14-15; Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1439 (9th Cir. 1995) ("A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme. The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price."). For example, in addition to pleading a high market share, the CSAC also adequately pleads a special relationship between the clinical account specialist and the physician involving a product that otherwise would be difficult to procure. CSAC ¶ 42.

Therefore, the Court finds that Innovative Health sufficiently pleads market power for CARTO 3 clinical support.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |