```
              UNITED STATES DISTRICT COURT

             CENTRAL DISTRICT OF CALIFORNIA

                   SOUTHERN DIVISION

                        - - -

     THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING


     INNOVATIVE HEALTH, LLC,     ) CERTIFIED TRANSCRIPT
                   Plaintiff,    )
          vs.                    )
                                 )   SACV-19-01984-JVS
     BIOWEBSTER, INC.,           )
                   Defendant.    )
     ----------------------------)



         REPORTER'S TRANSCRIPT OF PROCEEDINGS

              Santa Ana, California

                 June 14, 2024



                  SHARON A. SEFFENS, RPR
                  United States Courthouse
                  411 West 4th Street, Suite 1-1053
                  Santa Ana, CA  92701
                  (612) 804-8655
```

```
 1   APPEARANCES OF COUNSEL:

 2   For the Plaintiff:

 3   PANTEHA ABDOLLAHI
     THEODORA ORINGHER, PC
 4   535 Anton Boulevard, Ninth Floor
     Costa Mesa, CA   92626-7109
 5   (714) 549-6200

 6   JEFFREY L. BERHOLD
     JEFFREY L. BERHOLD, PC
 7   1230 Peachtree Street, Suite 1050
     Atlanta, Georgia   30309
 8   (404) 872-3800

 9   JOSHUA P. DAVIS
     BERGER MONTAGUE, PC
10   505 Montgomery Street, Suite 625
     San Francisco, CA   94111
11   (415) 906-0684

12   For the Defendant:

13   KARLA DRAFT
     LISA M. NORTHRUP
14   SEAN THOMAS LOBB
     STRADLING YOCCA CARLSON & RAUTH, LLP
15   660 Newport Center Drive, Suite 1600
     Newport Beach, CA   92660-6422
16   (949) 725-4000

17

18

19

20

21

22

23

24

25
```

|  |  |
|---|---|
|  | 1  SANTA ANA, CALIFORNIA; MONDAY, JUNE 10, 2024; 11:34 A.M. |
| 11:34 | 2  THE CLERK: Calling Item No. 4, SACV-19-01984-JVS, |
| 11:34 | 3  Innovative Health, LLC, versus Biosense Webster, Inc. |
| 11:34 | 4  Counsel, please state your appearances for the |
| 11:34 | 5  record. |
| 11:34 | 6  MR. BERHOLD: Good morning, Your Honor. Jeff |
| 11:34 | 7  Berhold for Innovative Health, LLC. |
| 11:34 | 8  THE COURT: Good morning. |
| 11:34 | 9  MR. DAVIS: Good morning, Your Honor. Josh Davis |
| 11:34 | 10 for Innovative. |
| 11:34 | 11 THE COURT: Good morning. |
| 11:34 | 12 MS. ABDOLLAHI: Good morning, Your Honor. Panteha |
| 11:34 | 13 Abdollahi on behalf of Innovative. |
| 11:34 | 14 THE COURT: Good morning. |
| 11:34 | 15 MS. KRAFT: Good morning, Your Honor. Karla Kraft |
| 11:34 | 16 of Stradling on behalf of defendant Biosense Webster. |
| 11:34 | 17 THE COURT: Good morning. |
| 11:34 | 18 MS. NORTHRUP: Good morning, Your Honor. Lisa |
| 11:34 | 19 Northrup, also on behalf of Biosense. |
| 11:34 | 20 THE COURT: Good morning. |
| 11:34 | 21 MR. LOBB: Good morning, Your Honor. Sean Lobb, |
| 11:34 | 22 also on behalf of defendant Biosense Webster. |
| 11:34 | 23 THE COURT: Good morning. |
| 11:34 | 24 We're looking at an August 20, 2024, trial date, |
| 11:34 | 25 and I believe having read the briefs that there is a cloud |

```
11:35   1    over that date.  Let me share some general thoughts with
11:35   2    you.  No new theories.  Given the filings, I'm unable to
11:35   3    discern exactly what such theories would be but no new
11:35   4    theories.  There will be no plugging through experts of
11:35   5    previously identified holes or deficiencies in the expert
11:35   6    reports, and I underscore "previously identified."  Three,
11:35   7    I'm not reopening discovery.  I was not asked to reopen
11:35   8    discovery, and we're not going to reopen discovery.  Were I
11:35   9    convinced to do that, I'd vacate the trial date.
11:36  10           I've reviewed the request for a supplement of
11:36  11    certain requests for production in the correspondence
11:36  12    beginning at page 254, Docket 226-1 and also the
11:36  13    correspondence beginning at page 230 of 26-1.  I believe
11:36  14    it's appropriate to update any information that goes to
11:36  15    damages.  That would include supplemental information.  It
11:36  16    would allow for a further extension of the period of damages
11:36  17    to be commensurate with the trial date.  There may be
11:36  18    certain facts such as transactions that underlie the damage
11:37  19    calculation, but beyond that, I'm not going to require
11:37  20    further supplementation of any substantive facts going to
11:37  21    the claims.  The record is the record.
11:37  22           I haven't seen the supplemental expert reports, so
11:37  23    I'm not able to comment whether there is an issue with those
11:37  24    reports in terms of the guidelines I've laid out, but if
11:37  25    there is an issue, I expect you to bring that promptly to my
```

```
11:37   1    attention.  I made the same remark in the order issued at
11:37   2    Docket 218 when I noted:  "The dates leading to the trial
11:37   3    date are without prejudice to further relief promptly sought
11:37   4    after receipt of the supplemental reports and discovery
11:37   5    responses."
11:38   6              So I'll be happy to hear you.  Are we on track or
11:38   7    not?
11:38   8              MR. DAVIS:  Thank you, Your Honor.
11:38   9              We don't believe we are on track, and just to
11:38  10    summarize our understanding of it, our understanding was
11:38  11    that Biosense, as we interpreted your order -- I always
11:38  12    hesitate to tell a judge what it ordered.
11:38  13              THE COURT:  That's fine.
11:38  14              MR. DAVIS:  But it was a deadline of May 14 for
11:38  15    the supplemental disclosures.
11:38  16              THE COURT:  Right.
11:38  17              MR. DAVIS:  We have yet to receive anything, so
11:38  18    the parties agreed -- and then we had a supplemental report
11:38  19    that we were going to serve on May 31, but not having
11:38  20    received the supplemental disclosures which would be
11:38  21    relevant to that report, the parties agreed to set up a new
11:38  22    schedule and to brief that through this status conference
11:38  23    today.
11:38  24              We are concerned very much about the viability of
11:39  25    that August trial date given where we are in the
```

11:39  1  supplemental disclosure process, so we were hoping we could
11:39  2  set a new date by which Biosense would have to make its
11:39  3  supplemental disclosures, and if we could then use that as a
11:39  4  basis for setting a new date by which we could serve a
11:39  5  supplemental expert report and key off of that.
11:39  6         We are very much concerned about whether -- we
11:39  7  think the original schedule as ordered by this Court was
11:39  8  viable.  I think we are very concerned about whether we can
11:39  9  hold the August trial date unless we receive supplemental
11:39  10 disclosures immediately.
11:39  11        THE COURT:  Ms. Kraft.
11:39  12        MS. KRAFT:  Yes, Your Honor.  The supplemental
11:39  13 discovery date of May 14 was something that the Court
11:40  14 announced when it served the order on May 10.  We
11:40  15 immediately started to gather what we believed to be a scope
11:40  16 of documents that is appropriate based upon what the Court
11:40  17 just said in its comments with regard to documents that go
11:40  18 to damages or data that goes to damages.  However, it was
11:40  19 impossible to gather the volume and scope of the information
11:40  20 by May 14.  We notified the plaintiff and the Court of that
11:40  21 fact and said we are and continue to gather documents as
11:40  22 rapidly as we can in good faith.
11:40  23        We also did not know the scope of what needed to
11:40  24 be produced as of May 14.  We held a meet and confer with
11:40  25 plaintiff where we made the proposal that is documented in

| | | |
|---|---|---|
| 11:40 | 1 | our briefing in front of the Court, which is I think |
| 11:40 | 2 | congruent with what Your Honor said.  We have one question |
| 11:40 | 3 | on that, which is when the Court said that it was |
| 11:40 | 4 | appropriate to update information that goes to damages up |
| 11:40 | 5 | through the trial date, does that refer to data related to |
| 11:40 | 6 | the 142 machines that were sold prior to -- 142 CARTO 3's |
| 11:41 | 7 | that were sold prior to April 2016? |
| 11:41 | 8 |       THE COURT:  What would be needed to be updated |
| 11:41 | 9 | with respect to those? |
| 11:41 | 10 |       MS. KRAFT:  In the Court's summary judgment, and |
| 11:41 | 11 | then affirmed or favorably commented upon in the Court of |
| 11:41 | 12 | Appeal, was the fact that the District Court found that the |
| 11:41 | 13 | relevant items or relevant machines for damages purposes, |
| 11:41 | 14 | locked in purposes, was 142 CARTO 3's that were sold prior |
| 11:41 | 15 | to April of 2016, which was when the clinical support policy |
| 11:41 | 16 | was announced. |
| 11:41 | 17 |       MR. DAVIS:  At an appropriate time, we would like |
| 11:41 | 18 | to address that if we could, Your Honor. |
| 11:41 | 19 |       MS. KRAFT:  We began to immediately gather that |
| 11:41 | 20 | data.  We have most of that gathered at this point, so we |
| 11:41 | 21 | believe that that is something that can be promptly |
| 11:41 | 22 | produced.  I can't tell you an exact date, but we're working |
| 11:41 | 23 | as fast as we can. |
| 11:41 | 24 |       THE COURT:  All right. |
| 11:41 | 25 |       MR. DAVIS:  From our view, that would not be an |

| | | |
|---|---|---|
| 11:41 | 1 | adequate production, not for damages or for market power. |
| 11:41 | 2 | To be very clear, what the Ninth Circuit held was that under |
| 11:42 | 3 | one theory, one way we can prove market power to a single |
| 11:42 | 4 | brand aftermarket -- for purposes of assessing market power, |
| 11:42 | 5 | the relevant issue is which hospitals were locked in at the |
| 11:42 | 6 | time of the policy. |
| 11:42 | 7 | That said, there's a couple of things.  One, |
| 11:42 | 8 | that's not the limit for damages.  That's for market power. |
| 11:42 | 9 | That doesn't mean everyone didn't suffer damages as a result |
| 11:42 | 10 | of that market power, and it doesn't mean that Innovative |
| 11:42 | 11 | didn't suffer damages because of exclusion from the market. |
| 11:42 | 12 | So we think that disclosure would be woefully inadequate. |
| 11:42 | 13 | The second point is that even under our original |
| 11:42 | 14 | theories as presented to the Ninth Circuit and this Court, |
| 11:42 | 15 | we have other ways of establishing market power than through |
| 11:42 | 16 | a single brand aftermarket.  The Ninth Circuit explicitly |
| 11:42 | 17 | said it didn't have to reach that issue.  It did not rule |
| 11:43 | 18 | that out. |
| 11:43 | 19 | So if we are going to calculate damages, we would |
| 11:43 | 20 | need discovery related to damages not just based on the |
| 11:43 | 21 | market power inquiry for that very limited subset -- we |
| 11:43 | 22 | actually think those numbers are incorrect, the number 142. |
| 11:43 | 23 | It's much smaller that actually is the right number.  But in |
| 11:43 | 24 | addition, we need to be able to show what happened in the |
| 11:43 | 25 | market between the time the Court granted summary judgment |

| | | |
|---|---|---|
| 11:43 | 1 | or discovery closed and the present to be able to establish |
| 11:43 | 2 | Innovative's damages.  It's not just a question of those -- |
| 11:43 | 3 | it's a question about the market more generally. |
| 11:43 | 4 | That information would just require updating the |
| 11:43 | 5 | spreadsheets that Biosense previously disclosed.  That is |
| 11:43 | 6 | not discovery contrary to what Biosense has said under a new |
| 11:43 | 7 | theory.  If it wasn't part of the case before, they wouldn't |
| 11:43 | 8 | have disclosed it before.  It is part of the case.  This is |
| 11:43 | 9 | information that is very important for us to have our fair |
| 11:43 | 10 | chance to prove up our damages, and to circumscribe that |
| 11:44 | 11 | discovery in the way Biosense is proposing would really |
| 11:44 | 12 | prejudice us and limit our ability to prove the damages up |
| 11:44 | 13 | to the time of trial. |
| 11:44 | 14 | THE COURT:  Well, what I hear collectively is, |
| 11:44 | 15 | one, the presently intended production and updating can't |
| 11:44 | 16 | get done in time for trial; and, two, even if it were |
| 11:44 | 17 | adequate -- and, two, from your perspective, it won't be |
| 11:44 | 18 | adequate.  So in the minute order today, I'm vacating the |
| 11:44 | 19 | trial date. |
| 11:44 | 20 | I'd like you to give me a date to conclude your |
| 11:44 | 21 | meet and confer activities and come back to me with a |
| 11:44 | 22 | further status conference laying out in concrete what needs |
| 11:44 | 23 | to be done, so that in the concrete, I can make some |
| 11:44 | 24 | rulings. |
| 11:44 | 25 | I assume the current dates for the expert reports |

```
11:45   1   -- are those going to hold or not, or do you need to push
11:45   2   those out?
11:45   3           MR. DAVIS:  I believe those are all vacated in the
11:45   4   last stip and order we submitted, so I think those are
11:45   5   currently not in place.
11:45   6           THE COURT:  Okay.  Well, we need to come back with
11:45   7   that schedule.
11:45   8           So what's your suggestion for returning and trying
11:45   9   to get down to nuts and bolts?
11:45  10           MR. DAVIS:  If I could confer for a moment with my
11:45  11   co-counsel.
11:45  12               (Plaintiff's counsel conferring)
11:45  13           MR. DAVIS:  There is one issue, this issue of the
11:45  14   scope.  I am concerned.  We're always happy to meet and
11:45  15   confer.  There is a very wide gap I would say between the
11:45  16   parties' views, so I do wonder if maybe this could be a
11:45  17   vehicle for it.  You know, normally we hope to reach
11:45  18   agreement, and I'm concerned we will not.  It would be good
11:45  19   to have a vehicle to try and resolve that issue if possible.
11:45  20           THE COURT:  I'm the vehicle.
11:45  21           MR. DAVIS:  You're certainly the vehicle, and this
11:45  22   process can be part of that.
11:46  23           THE COURT:  Do you want to suggest a date to make
11:46  24   your filings and come back and have a further status
11:46  25   conference?
```

```
11:46   1              MR. DAVIS:  Yes.
11:46   2              (Counsel conferring)
11:46   3              MR. DAVIS:  Do you have a suggestion, or --
11:46   4              MS. KRAFT:  I do, Your Honor.  I would suggest
11:46   5    that we schedule a date for a status conference four to six
11:46   6    week out.  Between now and then, we would produce what we
11:46   7    believe to be the appropriate scope of documents so that we
11:46   8    could meet and confer on those and then present that to the
11:46   9    Court.
11:46  10              THE COURT:  Okay.
11:46  11              MR. DAVIS:  We're amenable to that.
11:46  12              Do you have a sense of the timing of that
11:46  13    disclosure?
11:46  14              MS. KRAFT:  We have most of the documents, and
11:46  15    there's a set that we do not yet have, and we're trying to
11:46  16    determine that.  We're still in the process of reviewing the
11:46  17    data because it is a very large volume of data, so I would
11:46  18    hope that within three weeks -- hopefully within two
11:46  19    weeks -- we would have that produced, but that's an estimate
11:47  20    at this point because we're working hard on it.
11:47  21              THE COURT:  Well, why don't we put the status
11:47  22    conference out to July 5, and say at least one week prior,
11:47  23    you'll file whatever briefs you wish to.  And for the
11:47  24    record, the trial and all present dates are vacated.
11:47  25              MS. KRAFT:  Your Honor, if I may, would it be
```

```
11:47   1    possible to put that July 15 or after?  I'm planning on
11:47   2    being out of town, and my co-lead counsel is in New York.
11:47   3              THE COURT:  When would you want to set the
11:47   4    hearing?
11:47   5              MS. KRAFT:  Anything July 15 or after would be
11:47   6    helpful if we could file briefing and then --
11:47   7              THE COURT:  But August 5 is after that.
11:47   8              MS. KRAFT:  Oh, August.  I'm sorry.  I thought you
11:47   9    said July 5.
11:47  10              THE COURT:  Yes, I misspoke.  August 5.
11:47  11              MS. KRAFT:  August 5 is fine, Your Honor.
11:47  12              MR. DAVIS:  So August 5?
11:48  13              THE COURT:  Yes.
11:48  14              MR. DAVIS:  And then since we'll be receiving the
11:48  15    disclosures, our proposal would be that if we meet and
11:48  16    confer and if we can't come to agreement, we might do an
11:48  17    ordinary briefing schedule with a Motion to Compel and an
11:48  18    opposition and reply.  Would that work?
11:48  19              THE COURT:  However you want to structure it.  But
11:48  20    by the time we set a trial date, I want to make sure that we
11:48  21    have a schedule that from everybody's perspective, whether
11:48  22    they agree with it or not, that it's doable.
11:48  23              MR. DAVIS:  Yes, Your Honor.
11:48  24              THE COURT:  The matter will not go to trial this
11:48  25    year.  I have at least three major trials, one beginning
```

```
11:48   1   after Labor Day, one beginning the end of October, and a
11:48   2   couple in between the two very large ones.  At this point, I
11:48   3   think if the trial after Labor Day got resolved, it really
11:48   4   wouldn't be any benefit.  You wouldn't be ready by that
11:48   5   time.
11:49   6              MR. DAVIS:  Your Honor, you had said before on
11:49   7   some of these issues that -- I may have misunderstood you,
11:49   8   so I apologize.  But if some of the constraints you are
11:49   9   imposing were based on holding the August trial date, I'm
11:49  10   wondering if --
11:49  11              THE COURT:  Well, there's still -- there is a
11:49  12   matter of a substantive holding, yes.  They can't be
11:49  13   accomplished with an August trial date.  They can't be
11:49  14   accomplished because the law doesn't recognize wholesale
11:49  15   reopening of discovery, and it doesn't recognize new
11:49  16   theories late in the day, and it doesn't recognize curing
11:49  17   holes that have already been identified.
11:49  18              MR. DAVIS:  Yeah, and I do want to say to be clear
11:49  19   on the record we think that that is not what we had ever
11:49  20   proposed to do.  At the April 29 hearing, Your Honor had
11:49  21   suggested that we could update and modify the expert report
11:49  22   in light of the intervening Ninth Circuit law that came
11:50  23   down.
11:50  24              THE COURT:  Right.
11:50  25              MR. DAVIS:  I do want to clarify that just as
```

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
| 11:50 | 1  | Biosense -- this Court ruled because there has been two or           |
| 11:50 | 2  | three years of intervening law, Biosense has been able to            |
| 11:50 | 3  | withdraw its old motions in-limine and file new ones.                |
| 11:50 | 4  |     THE COURT:  Right.                           |
| 11:50 | 5  |     MR. DAVIS:  We understood that we similarly could |
| 11:50 | 6  | conform our expert reports to not only the Ninth Circuit's           |
| 11:50 | 7  | ruling in this case, which gave guidance on how to frame a           |
| 11:50 | 8  | single brand aftermarket theory, but also Epic Games in              |
| 11:50 | 9  | particular has come down.  And although there's disagreement         |
| 11:50 | 10 | between the parties, we would like to be able to conform our         |
| 11:50 | 11 | expert report to that as well.                                       |
| 11:50 | 12 |     THE COURT:  To the extent there's intervening law |
| 11:50 | 13 | there, in principle, that's fine.                                    |
| 11:50 | 14 |     MR. DAVIS:  Okay.  Thank you, Your Honor.    |
| 11:50 | 15 |     MS. KRAFT:  Your Honor, just for the record on |
| 11:50 | 16 | that, we just disagree that Epic is new law.  Epic relies            |
| 11:50 | 17 | extensively on the Newcal case, which relies extensively on          |
| 11:50 | 18 | the Kodak case.  We disagree that there's been new law here,         |
| 11:50 | 19 | and also disagree with the concept that reopening or                 |
| 11:51 | 20 | creating new discovery is similar to motions in-limine.              |
| 11:51 | 21 | Motions in-limine tailor things for trial.  Whereas, new             |
| 11:51 | 22 | discovery opens things wide open and creates more expense            |
| 11:51 | 23 | and delay and so forth.  It's a fundamentally different              |
| 11:51 | 24 | concept.                                                             |
| 11:51 | 25 |     MR. DAVIS:  I do want to be clear if I was   |

```
11:51   1   unclear.  I'm talking about -- not about new discovery other
11:51   2   than as this Court just set forth we could pursue in order
11:51   3   to calculate our damages but, rather, conform the expert
11:51   4   report to what we think was a clarification of the law in
11:51   5   Epic Games.  As we set forth in our brief -- well, I won't
11:51   6   go there.
11:51   7           Let me just ask one other question because I do
11:51   8   think it creates a challenging issue potentially for us.
11:51   9   That is, we are seeking not only damages but injunctive
11:51  10   relief, and in order to seek injunctive relief -- I just had
11:51  11   this happen in a trial in Las Vegas where the issue arose if
11:51  12   we were seeking injunctive relief, then the defendant was
11:51  13   going to make arguments about the intervening period where
11:51  14   there hadn't been discovery to say whether injunctive relief
11:52  15   was appropriate.
11:52  16           Now, if Biosense is willing to stipulate that our
11:52  17   discovery up to the time it closed says what the market is
11:52  18   now and there can be no testimony about current market
11:52  19   conditions or how they may have changed, we can understand
11:52  20   that as a potential approach.  But if not, we feel like we
11:52  21   do need discovery about current market conditions, anything
11:52  22   that may have changed between the close of discovery and
11:52  23   during the pendency of the appeal.  Otherwise, we have an
11:52  24   unfair disadvantage where we're not able to present evidence
11:52  25   about current market conditions that could potentially be
```

```
11:52   1    highly relevant to equitable relief.
11:52   2             THE COURT:  Well, any eBay analysis ought to speak
11:52   3    to current conditions.
11:52   4             MR. DAVIS:  I'm sorry, Your Honor?
11:52   5             THE COURT:  Any eBay analysis.
11:52   6             MR. DAVIS:  Right.  Well, we would want to have
11:53   7    the expert address current market conditions about market
11:53   8    power and what have you.
11:53   9             THE COURT:  Well, if I'm asked to grant injunctive
11:53  10    relief, I think the current conditions ought to be before
11:53  11    the Court.
11:53  12             MR. DAVIS:  Yes.
11:53  13             THE COURT:  If the defendant is on his last legs
11:53  14    and is not manufacturing anymore, you know, that would be
11:53  15    relevant.
11:53  16             MR. DAVIS:  Right.  I think from our perspective
11:53  17    what's also relevant is what are the current policies in
11:53  18    place the defendant has, and what effect does that have on
11:53  19    competition in the market, and what kind of changes might be
11:53  20    appropriate if we were to prevail so that we could --
11:53  21             THE COURT:  Outline what discovery you think you
11:53  22    would need for injunctive relief when you come back.
11:53  23             MR. DAVIS:  Thank you, Your Honor.
11:53  24             MS. KRAFT:  Your Honor, I was just going to say
11:53  25    that that seems to be an appropriate topic for the parties'
```

```
11:53   1    meet and confer.  There's been a lot of discussion on the
11:53   2    theory for damages, not necessarily for this, although I
11:53   3    will note that the injunction that they seek is very
11:54   4    different than some of the injunctions that might be out
11:54   5    there.  They're seeking an injunction for clinical support
11:54   6    to be provided to their client, which is quite different
11:54   7    than the evidence that might be necessary for injunctive
11:54   8    relief in other matters.
11:54   9             Regardless, Your Honor, I think that's a topic for
11:54  10    this further meet and confer, and we'll see if we can
11:54  11    resolve whatever the issues are.
11:54  12             THE COURT:  Okay.
11:54  13             MR. DAVIS:  We are happy to meet and confer.  I
11:54  14    always hate to leave a record unclear, so I do want to say
11:54  15    we have a different view of what injunctive relief we're
11:54  16    seeking, but we're happy to meet and confer.
11:54  17             THE COURT:  But you haven't met and conferred.
11:54  18             MR. DAVIS:  Maybe we'll arrive at an agreement.
11:54  19             THE COURT:  Okay.  Anything further for today?
11:54  20             MS. KRAFT:  No, Your Honor.
11:54  21             MR. DAVIS:  No, Your Honor.  Thank you.
11:54  22             THE COURT:  See you on August 5.  If there's a
11:54  23    need to get together via telephone or Zoom in advance of
11:54  24    that, just contact Ms. Vargas.
11:54  25             MS. KRAFT:  Your Honor, what time?
```

```
11:54   1              THE COURT:  11:00.
11:55   2              MS. KRAFT:  Thank you, Your Honor.
11:55   3              THE COURT:  Okay.  Thank you.
11:55   4              MR. DAVIS:  Thank you, Your Honor.
11:55   5              (Whereupon, the proceedings were concluded.)
11:55   6                          *   *   *
11:55   7
11:55   8
11:55   9
11:55  10
11:55  11
11:55  12
11:55  13
11:55  14
11:55  15
11:55  16
11:55  17
11:55  18
11:55  19
11:55  20
11:55  21
11:55  22
11:55  23
11:55  24
11:55  25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

## CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  June 14, 2024

/s/   Sharon A. Seffens   6/14/24
_____
**SHARON A. SEFFENS, U.S. COURT REPORTER**