EXHIBIT A

1  Panteha Abdollahi, Esq. (State Bar No. 230002)
   pabdollahi@tocounsel.com
2  THEODORA ORINGHER PC
   535 Anton Boulevard, Ninth Floor
3  Costa Mesa, California 92626-7109
   Telephone: (714) 549-6200
4  Facsimile: (714) 549-6201

5  Jeffrey L. Berhold, Esq. (Georgia State Bar No. 054682) (*Admitted Pro Hac Vice*)
   jeff@berhold.com
6  JEFFREY L. BERHOLD, P.C.
   1230 Peachtree Street, Suite 1050
7  Atlanta, Georgia 30309
   Telephone: (404) 872-3800
8  Facsimile: (678) 868-2021

9  Joshua P. Davis (State Bar No. 193254)
   jdavis@bm.net
10 BERGER MONTAGUE PC
   505 Montgomery St., Suite 625
11 San Francisco, California 94111
   Telephone:  (415) 906-0684
12
   Attorneys for Plaintiff
13 INNOVATIVE HEALTH LLC

14           **UNITED STATES DISTRICT COURT**

15     **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

16

| | |
|---|---|
| 17  INNOVATIVE HEALTH LLC, | Case No. 8:19-cv-1984 JVS (KESx) |
| 18          Plaintiff, | Assigned for all purposes to: Honorable James V. Selna |
| 19          vs. | **DECLARATION OF JEFFREY L. BERHOLD IN SUPPORT OF INNOVATIVE HEALTH, LLC'S MOTIONS (1) FOR ORDER DIRECTING BIOSENSE WEBSTER, INC. TO PROVIDE SUPPLEMENTAL PRODUCTION OF TRANSACTION DATA; AND (2) TO REOPEN DISCOVERY TO ISSUE SUBPOENAS TO THIRD PARTIES** |
| 20  BIOSENSE WEBSTER, INC, | |
| 21          Defendant. | |
| 22 | |
| 23 | |
| 24 | |
| 25 | Date:    August 19, 2024 |
| 26 | Time:    1:30 p.m. Crtrm:  10C |
| 27 | Action Filed:  October 18, 2019 |
| 28 | Trial Date:  To Be Determined |

# DECLARATION OF JEFFREY L. BERHOLD

I, JEFFREY L. BERHOLD, declare as follows:

1.    I am an attorney admitted to the bar of the State of Georgia and have been admitted pro hac vice to practice before this Court. I am the founder of Jeffrey L. Berhold P.C., lead counsel for plaintiff INNOVATIVE HEALTH LLC ("Plaintiff" or "Innovative") in the above-entitled matter. I have personally been involved in all aspects of this litigation, including document exchanges, depositions, and the exchange of expert reports. I make this declaration in connection with Plaintiff Innovative Health LLC's (1) Motion for Order Directing Defendant Biosense Webster, Inc. to Provide Supplemental Production of Data for All Customers by August 30, 2024; and (2) Motion to Reopen Discovery to Issue Subpoenas to Third Parties Stryker Sustainability Solutions, Inc. and Abbot Laboratories to Update Sales Spreadsheets.

2.    The facts stated herein are true and correct and based upon my own personal knowledge or knowledge based on my review of the files pertinent to this matter, including pleadings, transcripts, correspondence, and discovery disclosures. If called as a witness to testify, I could and would competently testify to the facts set forth herein.

3.    Attached hereto as **Exhibit 1** is a true and correct copy of the redacted Reporter's Transcript of Proceedings for the Oral Argument on Summary Judgment held before this Court on February 28, 2022 (Dkt. 193).

4.    Attached hereto as **Exhibit 2** is a true and correct copy of the Reporter's Transcript of Proceedings for the Status Conference held before this Court on June 10, 2024 (Dkt. 232).

5.    Attached hereto as **Exhibit 3** is a true and correct copy of the relevant email chain, dated April 23, 2024 to May 3, 2024 re Updated Dataset cited by Innovative in its concurrently filed papers.

6.    Attached hereto as **Exhibit 4** is a true and correct copy of the relevant

email chain dated April 23, 2024 to July 15, 2024 re Updated Dataset cited by Innovative in its concurrently filed papers.

7.    Attached hereto as **Exhibit 5** is a true and correct copy of the relevant email chain, dated April 23, 2024 to July 16, 2024 re Updated Dataset cited by Innovative in its concurrently filed papers.

8.    Attached hereto as **Exhibit 6** is a true and correct copy of the relevant email chain, dated April 23, 2024 to July 19, 2024 re Updated Dataset cited by Innovative in its concurrently filed papers.

9.    Attached hereto as **Exhibit 7** is a true and correct copy of Plaintiff Innovative Health LLC's First Requests For Documents To Defendant Biosense Webster, Inc., dated September 18, 2020.

10.    Attached hereto as **Exhibit 8** is a true and correct copy of Plaintiff Innovative Health LLC's Fourth Requests For Documents To Defendant Biosense Webster, Inc., dated December 31, 2020.

11.    Attached hereto as **Exhibit 9** is a true and correct copy of Plaintiff Innovative Health LLC's Fifth Requests For Documents To Defendant Biosense Webster, Inc., dated January 29, 2021.

12.    Each of the requests attached as Exhibits 7-9 was served on Defendant Biosense Webster, Inc. ("Biosense" or "Defendant") on or about the date on the requests.

13.    Attached hereto as **Exhibit 10** is a true and correct copy of Defendant Biosense Webster, Inc.'s Responses To Innovative Health LLC's First Requests for Documents, dated October 19, 2020.

14.    Attached hereto as **Exhibit 11** is a true and correct copy of Defendant Biosense Webster, Inc.'s Responses To Innovative Health LLC'S Fourth Requests For Documents, dated February 1, 2021.

15.    Attached hereto as **Exhibit 12** is a true and correct copy of Defendant Biosense Webster, Inc.'s Responses To Innovative Health LLC's Fifth Requests For

1    Documents, dated March 1, 2021.

2        16.    Each of these Responses by Biosense attached as Exhibits 10-12 was

3    served on Innovative on or about the date on the responses.

4        17.    In response to Request Nos. 3 and 49, Biosense produced catheter sales

5    spreadsheets (BWI-INN00510476, BWI-INN00706180, and BWI-INN00710526)

6    containing catheter sales data for all customers in the United States through March

7    31, 2021. Biosense produced catheter sales for 1,471 customers in the original

8    discovery. BWI-INN00510476.

9        18.    In response to Request Nos. 3 and 51, Biosense produced system sales

10    spreadsheets (BWI-INN00704867) containing data for all customers in the United

11    States through March 31, 2021.

12        19.    In response to Request No. 65, Biosense produced catheter complaint

13    spreadsheets (BWI-INN00704867) containing data for customers in the United

14    States through December 31, 2020.

15        20.    In response to Request Nos. 15 and 50, Biosense produced patch sale

16    and market share data (BWI-INN00047408, BWI-INN00146709) for the United

17    States through September 2020. Biosense appears to receive the procedure share

18    data through its membership in the EP Consortium Project. BWI-INN00047408.

19        21.    In response to Request Nos. 4 and 48, Biosense produced clinical

20    support logs (BWI-INN00000025, BWI-INN704857) for all customers in the United

21    States through November 2020.

22        22.    In response to Request No. 52, Biosense produced system placement

23    spreadsheets (BWI-INN00545226) for systems installed in hospitals in the United

24    States. Based on sorting the system data by date, the "Installed base" tab in BWI-

25    INN00545226) appears to show at least 1,092 CARTO 3 systems installed in the

26    United States between October 2009 and March 2016.

27        23.    On June 26, 2024, Biosense updated its complaint rate data at BWI-

28    INN00722099. The complaint rates appear to be worldwide rather than nationwide.

1  They do not appear to break down the complaint rates for the new catheters from
2  Biosense and the reprocessed catheters from Sterilmed. In the parties' meet and
3  confer calls on July 15, 2024 and July 17, 2024, I raised those issues with Ms. Kraft
4  and Mr. Lobb. They said that they would look into it.

5      24.    On June 26, 2024, Biosense also updated various datasets for sales
6  purportedly relating to 142 CARTO 3 systems installed between November 2014
7  and March 2016. The installed base appears to be limited to 95 systems that were
8  installed between November 10, 2014 and June 15, 2016. BWI-INN722136. The
9  system sales appear to be limited to 10 customers. BWI-INN00722135. The case
10  logs appear to be limited to 105 customers. BWI-INN-00722130. The patch sales
11  appear to be limited to 104 hospitals. BWI-INN-00722131. According to counsel
12  from Biosense, the supplemental production contains new catheter sales in BWI-
13  INN00722132 and reprocessed catheter sales in BWI-INN00722133 and BWI-
14  INN00722134. The new catheter sales appear to be limited to 96 customers in the
15  supplemental production. BWI-INN00722132. Biosense does not appear to have
16  produced any updates of procedure share data showing its market share for cardiac
17  mapping procedures based on patch sales or other metrics. In the parties' meet and
18  confer call on July 15, 2024, Ms. Kraft and Mr. Lobb confirmed that Biosense
19  would not update any of the installed base, system sales, case logs, or catheter sales
20  datasets for systems installed before November 2014 or after March 2016 without an
21  order of the Court.

22      25.    Biosense also did not appear to produce new catheter sales for two of
23  the three catheter markets (high-density mapping catheters like PENTARAY,
24  OCTARAY, or OPTRELL or circular mapping catheters like LASSO Nav) and one
25  of the two yardstick catheters for calculating damages (Webster CS). BWI-
26  INN00722132. In the parties' meet and confer calls on July 15, 2024 and July 17,
27  2024, I asked Ms. Kraft and Mr. Lobb whether some catheters may be missing from
28  the data. They said that they would look into it.

26.     Biosense appears to have produced 1,517 entries for new catheter sales in the supplemental production. BWI-INN00722132. Biosense produced 378,448 entries for new catheter sales in the original discovery. BWI-INN00510476.

27.     In response to subpoena(s) issued in discovery in this case, Stryker Sustainability Solutions ("Stryker") produced catheter sales spreadsheets (STRYKER00001161) containing catheter sales data for the United States through September 2020.

28.     In response to subpoena(s) issued in discovery in this case, Abbott Laboratories ("Abbott") produced a catheter sales spreadsheet (ABB0000001) containing catheter sales data for the United States through December 2020.

29.     Attached hereto as **Exhibit 13** is a true and correct copy of Plaintiff Innovative Health, LLC's proposed Rule 45 Subpoena to Third Party Stryker Sustainability Solutions, Inc. for: Documents or electronically stored information sufficient to show the monthly catheter sales data contained in STRYKER00001161 produced in this case for the additional time period from January 1, 2021 to June 30, 2024.

30.     Attached hereto as **Exhibit 14** is a true and correct copy of Plaintiff Innovative Health, LLC's proposed Rule 45 Subpoena to Third Party Stryker Sustainability Solutions, Inc. for: Documents or electronically stored information sufficient to show the quarterly catheter sales data contained in ABB0000001 produced in this case for the additional time period from January 1, 2021 to June 30, 2024.

31.     Attached hereto as **Exhibit 15** is a true and correct copy of the Reporter's Transcript of Proceedings for the Motion Hearing held before Hon. Richard F. Boulware on November 21, 2023 in *Le v. Zuffa*, Case No. 2:15-cv-01045-RFB-BNW, in the United States District Court for the District of Nevada.

6

*DECLARATION OF JEFFREY L. BERHOLD*

1       I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3

4       Executed on this 22nd day of July, 2024, at Atlanta, Georgia.

5

6

7                           */s/ Jeffrey L. Berhold*

8                           JEFFREY L. BERHOLD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING


INNOVATIVE HEALTH, LLC,        ) CERTIFIED TRANSCRIPT
                  Plaintiff,   )
     vs.                       )
                               )      SACV-19-01984-JVS
BIOSENSE WEBSTER, INC.,        )
                  Defendant.   )
----------------------------)



REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

February 28, 2022



SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

2

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiff:

3    JEFFREY L. BERHOLD
     JEFFREY L. BERHOLD, PC
4    1230 Peachtree Street, Suite 1050
     Atlanta, GA  30309
5    (404) 872-3800

6    PANTEHA ABDOLLAHI
     THEORDORA ORINGHER, PC
7    535 Anton Boulevard, Ninth Floor
     Costa Mesa, CA  92626
8    (714) 549-6200

9    For the Defendant:

10   KARLA J. KRAFT
     KAITLYN BEAUDIN
11   STRADLING YOCCA CARLSON & RAUTH, PC
     660 Newport Center Drive, Suite 1600
12   Newport Beach, CA  92660
     (949) 725-4000
13
     KATHERINE D. FORREST
14   CRAVATH SWAINE & MOORE, LLP
     Worldwide Plaza
15   825 Eighth Avenue
     New York, NY  10019
16   (212) 474-1155

17

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

1    SANTA ANA, CALIFORNIA; MONDAY, FEBRUARY 28, 2022; 1:40 P.M.

2                    (The following proceedings were under seal:)

01:40    3          THE CLERK:  Calling Item No. 6, SACV-19-01984-JVS,

01:40    4    Innovative Health, LLC, versus Biosense Webster, Inc.

01:41    5          Appearance on behalf of the plaintiff, please.

01:41    6          MR. BERHOLD:  Good afternoon, Your Honor.  Jeff

01:41    7    Berhold and Panteha Abdollahi for plaintiff Innovative

01:41    8    Health, LLC.

01:41    9          MS. ABDOLLAHI:  Good afternoon, Your Honor.

01:41   10          THE COURT:  Good afternoon.

01:41   11          THE CLERK:  On behalf of defendants, please.

01:41   12          MS. FORREST:  Good afternoon, Your Honor.

01:41   13    Katherine Forrest on behalf of the defendant Biosense

01:41   14    Webster.

01:41   15          MS. BEAUDIN:  Good afternoon, Your Honor.  Kaitlyn

01:41   16    Beaudin on behalf of Biosense Webster.

01:41   17          MS. KRAFT:  Good afternoon.  Karla Kraft on behalf

01:41   18    of Biosense Webster.

01:41   19          THE COURT:  Good afternoon to you all.

01:41   20          The Court follows the CDC guidelines, and

01:41   21    presently Orange County is in the medium transmissible zone,

01:41   22    which means that masks are not required if you're fully

01:41   23    vaccinated.  The reason I'm not wearing a mask is I'm fully

01:41   24    vaccinated, and I've had my booster.  Notwithstanding that,

0    2   25    if anyone is fully vaccinated and nevertheless feels more

                    SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | |
|---|---|
| 01:42 | 1 | comfortable wearing a mask, please do. I just wanted to put |
| 01:42 | 2 | that on the record as to why I'm not wearing a mask. |
| 01:42 | 3 | Okay, I think I'd like to hear from the plaintiffs |
| 01:42 | 4 | first, please. |
| 01:42 | 5 | MR. BERHOLD: Thank you, Your Honor. |
| 01:42 | 6 | First of all, we thank you for the opportunity to |
| 01:42 | 7 | be heard in person. This is an important case, a $3 billion |
| 01:42 | 8 | a year cardiac ablation industry. I mean the ultimate |
| 01:42 | 9 | question is whether Biosense stepped over the line in being |
| 01:42 | 10 | the one manufacturer to use its leverage in clinical support |
| 01:42 | 11 | for its system to lock competition in catheters. |
| 01:43 | 12 | As far as the tentative ruling at issue here |
| 01:43 | 13 | today, first is market definition. At the end of page 8, |
| 01:43 | 14 | the tentative ruling talks about economic substitute issues |
| 01:43 | 15 | and the ability to deprive each other of significant levels |
| 01:43 | 16 | of business, which begs the question what is the test? The |
| 01:43 | 17 | lodestar is cross elasticity of demand and SSNIP. How would |
| 01:43 | 18 | customers respond or how do they respond to a small but |
| 01:43 | 19 | significant non-transitory increase in price in a closed |
| 01:43 | 20 | market? Would enough customers switch to the peak in |
| 01:43 | 21 | profitability of such increase, typically five to |
| 01:43 | 22 | ten percent? |
| 01:43 | 23 | This sits at the core of the Ninth Circuit |
| 01:43 | 24 | precedent and the ABA Civil Jury Instructions, not to |
| 0  4 | 25 | mention US and EU competition agency guidelines. |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:44  1        I want to turn to page 17 of the composition

01:44  2   brief.  Innovative quotes the Court from its Motion to

01:44  3   Dismiss in its brief at page 17:  "A properly defined

01:44  4   product market includes a pool of goods or services that

01:44  5   enjoy reasonable interchangeability of use, a cross

01:44  6   elasticity of demand."

01:44  7        The brief goes on to quote Ninth Circuit

01:44  8   precedent:  "Cross elasticity of demand measures the

01:44  9   percentage change in quantity that consumers will demand of

01:44  10  one product in response to a percentage change in the price

01:45  11  of another.  A SSNIP analysis asks whether a monopolist in

01:45  12  the proposed market could properly impose a small,

01:45  13  significant, and non-transitory price increase."

01:45  14        Let me also quote the ABA Model Civil Jury

01:45  15  Instruction on relevant product market.

01:45  16        THE COURT:  Well, it's based on the law.

01:45  17        MR. BERHOLD:  Thank you, Your Honor.

01:45  18        It is not a question of whether customers could

01:45  19  shift their purchases to another product.  It is a question

01:45  20  of whether they would do so in significant enough numbers to

01:45  21  deter a price increase.

01:45  22        To be clear, Innovative is not talking about a

01:45  23  submarket of customers without another cardiac mapping

01:45  24  system or a submarket of customers that have already bought

0  5    25  a CARTO 3.  This is not Newcal for the boundaries of the

01:45　1　market to depend on a contractually created group of

01:46　2　consumers.  Innovative is talking about hospitals with or

01:46　3　without other systems.  That's discussed at the brief at

01:46　4　pages 23 and 24.  A SSNIP test looks at all prospective

01:46　5　customers.  Do enough customers switch their catheter

01:46　6　purchases?  The tentative ruling omits that test at this

01:46　7　juncture.

01:46　8　　　　The tentative ruling doesn't just follow the

01:46　9　anecdotal evidence over empirical evidence, but it omits any

01:46　10　discussion of evidence that customers as a whole did not

01:46　11　shift significant purchases of the catheters at issue in

01:46　12　response to the increase in the market prices for the

01:46　13　catheters as a result of the case coverage policy.

01:46　14　　　　That discussion starts at page 19 of the brief,

01:46　15　and it refers back to the chart on page 17 of the brief

01:46　16　showing how prices increase after imposition of the case

01:47　17　coverage policy, average prices in the market.  Yet the

01:47　18　customers do not switch away from these catheters, and they

01:47　19　do not switch away from the CARTO 3 mapping system, even

01:47　20　though profit margins were already high on catheters and the

01:47　21　mapping system.

01:47　22　　　　Could they switch in the abstract while coming

01:47　23　from Atlanta to Santa Ana by plane versus bus?  That's not

01:47　24　the question.  Customers could switch from plane to bus or a

0　7　25　nonstop to a one-way flight.  They both get you to the same

01:47   1   place.  But how do they collectively respond -- customers --

01:47   2   to a five percent or ten percent increase in nonstop fares?

01:47   3   My parents might switch in response to an increase of $50 in

01:48   4   those fares.  But again, that is not the question.

01:48   5          The question is would enough customers switch

01:48   6   their purchases in response to a SSNIP to eliminate the

01:48   7   profitability of such an increase?  Airlines, for example,

01:48   8   typically the Justice Department finds that there would not

01:48   9   be sufficient switching.  It concludes that the nonstop

01:48   10  route is the relevant product market.  It does not matter

01:48   11  that Delta, or United, or American may be the only carrier

01:48   12  on that route.  Customers typically prefer to fly nonstop on

01:48   13  a route if it is available.  As a whole, customers prefer

01:48   14  and they're willing to incur a price change to do it.

01:48   15         The test does not change for a single brand

01:48   16  market.  The tentative ruling refers to Apple v. Psystar,

01:49   17  and I would refer the Court to page 1198 of Apple v.

01:49   18  Psystar.  Quote:  "The responsiveness of one product to the

01:49   19  price of another is at the heart of the market definition

01:49   20  analysis."  This is a decision where -- the Court said this

01:49   21  expressly:  "I am looking at whether there is a single brand

01:49   22  product market."  However, it is not unusual to see single

01:49   23  brand markets in healthcare.  Courts have found relevant

01:49   24  markets for brands of pharmaceuticals, even though there are

0   9   25  other drugs to treat the same condition, that the SSNIP test

| | |
|---|---|
| 01:49 | 1 |
| 01:49 | 2 |
| 01:49 | 3 |
| 01:49 | 4 |
| 01:50 | 5 |
| 01:50 | 6 |
| 01:50 | 7 |
| 01:50 | 8 |
| 01:50 | 9 |
| 01:50 | 10 |
| 01:50 | 11 |
| 01:50 | 12 |
| 01:50 | 13 |
| 01:50 | 14 |
| 01:50 | 15 |
| 01:50 | 16 |
| 01:50 | 17 |
| 01:51 | 18 |
| 01:51 | 19 |
| 01:51 | 20 |
| 01:51 | 21 |
| 01:51 | 22 |
| 01:51 | 23 |
| 01:51 | 24 |
| 0   1 | 25 |

points to that conclusion.  Ciprofloxacin is just one

example.

          The test is the same for asking whether

competition in a foremarket would prevent market power in an

aftermarket.  Biosense has argued that many customers

already have another mapping system where they can buy one.

The question is still the extent to which one market

prevents the exploitation of another market.  And it depends

on the extent to which customers will change their

consumption of one product in response to a price change in

another.  That's from Kodak at page 468, a Supreme Court

decision.  Red Lion Medical Safety, which is also in the

tentative ruling, says the same thing.

          And there are good reasons here why physicians

would not switch away from the catheter specifically and the

CARTO 3 mapping system generally.  The opposition brief,

page 7, talks about the unique characteristics of the CARTO

3 cardiac mapping system and the catheters it can be used

on, for example, the SoundStar catheter combined with the

CARTO sound module and the CARTO 3 mapping system.  It's the

only catheter in the system that allows you to see the

ultrasound image -- it's generated by an ultrasound catheter

machine -- to be integrated with the cardiac map, the 3D

cardiac map on the cardiac mapping system.  And the Director

of Marketing, has testified how customers believe that's

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:52  1    very valuable to them.  That's just one example.

01:52  2              So when a physician walks in the room or schedules

01:52  3    a procedure, they're deciding what's going to work best for

01:52  4    the physician, for the type of the procedure, and the type

01:52  5    of patient.  If I want to have the ultrasound image right in

01:52  6    the CARTO map for speed, safety, or efficiency, I'm going to

01:52  7    use SoundStar.  If I'm going to use the SoundStar, I'm going

01:52  8    to use the CARTO, and I'm going to use its mapping

01:52  9    catheters, too.  And it's discussed again at page 10 of the

01:52 10    brief.

01:52 11              Again, SoundStars are the only navigational

01:52 12    ultrasound catheters for use with any cardiac mapping system

01:53 13    and are only usable with the CARTO 3 and the CARTO Sound

01:53 14    software module.  Zare, who leads marketing for Biosense in

01:53 15    the United States, explained that physicians tell us that's

01:53 16    really important for them.  The tentative ruling omits that

01:53 17    factual background.  In any event, we can see empirically

01:53 18    that customers as a whole did not switch catheters or

01:53 19    systems in response to the higher catheter prices resulting

01:53 20    from the face coverage policy.  That is the lodestar of the

01:53 21    market definition analysis.

01:53 22              Second, separate products, the tentative ruling

01:53 23    sets out the correct standard.  Is there sufficient demand

01:53 24    for the tying product -- the tie product -- for producers to

0    4 25    provide each product separately?  We know that there is

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

01:54  1    sufficient demand for catheters for manufacturers and

01:54  2    reprocessors to provide the catheters separately from the

01:54  3    support.  Not only have the manufacturers been willing to

01:54  4    buy the catheters without the support, but the manufacturers

01:54  5    mostly provided their own catheters without support until

01:54  6    recently.  Stryker and Innovative were willing to provide

01:54  7    the catheters separately as well, and we know that it is a

01:54  8    lucrative business.

01:54  9              Your Honor, can I mention some confidential

01:54  10   information?

01:54  11             MS. FORREST:  Your Honor, we have no issue with

01:54  12   counsel stating confidential information since the

01:54  13   individuals in this courtroom, as I understand it, are

01:54  14   either associated with court personnel or with the parties

01:54  15   and are otherwise entitled to see that information.

01:55  16             THE COURT:  The transcript won't be filed before

01:55  17   you have an opportunity to review it and suggest redactions.

01:55  18             MR. BERHOLD:  Thank you, Your Honor.

01:55  19             We know catheters are a lucrative business.

01:55  20   Manufacturers -- Biosense in particular had profit margins

01:55  21   exceeding ▮ percent.  We know they're going to provide the

01:55  22   catheters.  We know there's a market for catheters, a very

01:55  23   big market for catheters.

01:55  24             Is there a sufficient demand for clinical support

0  5   25   for firms to provide support separately from the catheters?

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 01:55 | 1 | Hospitals were providing their own support. Moreover, this |
| 01:55 | 2 | is a lucrative procedure for hospitals. There's no -- that |
| 01:55 | 3 | reasonably hospitals would not continue their own support, |
| 01:55 | 4 | nor that third parties, individuals, or companies, would |
| 01:55 | 5 | offer it on a contract basis if the manufacturers did not |
| 01:56 | 6 | decide to offer it for free to get into the room to upsell |
| 01:56 | 7 | their customers. |
| 01:56 | 8 | The manufacturers do not provide support because |
| 01:56 | 9 | no one else will provide it. In fact, hospitals like |
| 01:56 | 10 | Torrance Memorial and Mayo Clinic still provide their own |
| 01:56 | 11 | support, and hospitals like Allegheny General and Hackensack |
| 01:56 | 12 | Regional asked Biosense for training to provide their own |
| 01:56 | 13 | support, even though they can get it without charge from the |
| 01:56 | 14 | manufacturers. |
| 01:56 | 15 | The manufacturers provide clinical support and |
| 01:56 | 16 | provide it without charge to get into the room to upsell the |
| 01:56 | 17 | customers. Biosense -- and it's in the brief in the |
| 01:56 | 18 | record -- Biosense increases its revenue per case by more |
| 01:56 | 19 | than ▉ percent with its own clinical account specialist in |
| 01:56 | 20 | the room. It's Exhibit 94 at page 4, the Forester rebuttal |
| 01:57 | 21 | report at paragraph 34B. It's also in the brief. Biosense |
| 01:57 | 22 | spends $▉ for the clinical account specialist to make an |
| 01:57 | 23 | additional $▉ in revenue. |
| 01:57 | 24 | So this is not a case of filling an unmet need. |
| 0  7 | 25 | The cases will get covered if the manufacturers did not |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

12

| | | |
|---|---|---|
| 01:57 | 1 | cover them. The tentative ruling talks about the value of |
| 01:57 | 2 | getting free support rather than providing it yourself. |
| 01:57 | 3 | That's not the question. It is merely a question of whether |
| 01:57 | 4 | there is a sufficient demand for support for firms to |
| 01:57 | 5 | provide it separately. |
| 01:57 | 6 | Would hospitals pay fair market value, that is, |
| 01:57 | 7 | the actual cost for the clinical support if they had to do |
| 01:57 | 8 | so? The answer is yes. There is huge demand for support. |
| 01:58 | 9 | Hospitals would pay staff or independent contractors or |
| 01:58 | 10 | third parties for it if necessary. In fact, they have done |
| 01:58 | 11 | so. That's the record in this case, and that was the basis |
| 01:58 | 12 | for going forward in this case in the original ruling on the |
| 01:58 | 13 | Motion to Dismiss, and it's right out of Kodak. |
| 01:58 | 14 | Now, let me close on the final point in the |
| 01:58 | 15 | tentative ruling, that the free clinical support was a |
| 01:58 | 16 | competitive differentiation that benefited consumers. That |
| 01:58 | 17 | does not change the fact that there was already sufficient |
| 01:58 | 18 | demand for support for firms to provide it separately. But |
| 01:58 | 19 | it does highlight that the only differentiation now is |
| 01:58 | 20 | anti-competitive. |
| 01:58 | 21 | Every manufacturer, including Biosense, developed |
| 01:58 | 22 | programs to provide clinical support for their system to any |
| 01:58 | 23 | customer that requested it. Now, Biosense is the only one |
| 01:59 | 24 | to take advantage of that leverage with its customers to |
| 0   9 | 25 | implement a case coverage policy that blocks competition on |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 01:59 | 1 | the catheters. The hospitals pay higher catheter prices. |
| 01:59 | 2 | Medicare and Blue Cross, all of us, pay more for our |
| 01:59 | 3 | procedures, and that is not pro-competitive. It's clearly |
| 01:59 | 4 | anti-competitive. |
| 01:59 | 5 | Thank you, Your Honor. |
| 01:59 | 6 | THE COURT: Thank you. |
| 01:59 | 7 | MS. FORREST: Good afternoon, Your Honor. |
| 01:59 | 8 | THE COURT: Good afternoon. |
| 01:59 | 9 | MS. FORREST: Katherine Forrest. May I proceed? |
| 01:59 | 10 | THE COURT: Please. |
| 01:59 | 11 | MS. FORREST: Your Honor, Biosense Webster |
| 01:59 | 12 | believes that the tentative ruling is correct in all |
| 01:59 | 13 | respects. Indeed, the law that Your Honor cites is exactly |
| 01:59 | 14 | the right law. It's stated in exactly the right way. It |
| 01:59 | 15 | goes to exactly the right tests. |
| 01:59 | 16 | Counsel today has described a single brand product |
| 02:00 | 17 | market that has not followed the test that Your Honor had |
| 02:00 | 18 | laid out. In fact, they are defined by the Supreme Court in |
| 02:00 | 19 | the Kodak case and the Ninth Circuit in the Newcal case. |
| 02:00 | 20 | There is a preliminary question which counsel has not |
| 02:00 | 21 | addressed, which is the ultimate fourth Newcal factor, which |
| 02:00 | 22 | Your Honor so correctly pointed out in your decision, which |
| 02:00 | 23 | is whether or not the competition in the foremarket |
| 02:00 | 24 | disciplines the competition in the aftermarket. |
| 0. 0 | 25 | Here, the fourth factor for the Newcal test has |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:00   1   not been met, and the SSNIP test does not meet that test and

02:00   2   can't begin to meet it because as Dr. Forester, the expert

02:00   3   who presented the SSNIP test concedes, he never performed a

02:00   4   test or looked at the foremarket. Indeed, Dr. Forester

02:01   5   himself says that he never -- and it's in our reply brief --

02:01   6   that he never offered an opinion on the single brand product

02:01   7   market. So a SSNIP test offered only through Dr. Forester

02:01   8   cannot support a single brand product market.

02:01   9         Your Honor, I would suggest that the SSNIP test

02:01  10   must be ignored to the extent that it is relyed upon Dr.

02:01  11   Forester, which is the only support for it. But I'll also

02:01  12   go into the SSNIP test itself in a moment to explain to Your

02:01  13   Honor why even if you were to think about the SSNIP test and

02:01  14   look at the SSNIP test it still is inadequate.

02:01  15         Counsel is correct that the test for a

02:01  16   well-defined antitrust product market is reasonable

02:01  17   interchangeability of use, and Your Honor also states that

02:01  18   test correctly in your decision. But as Innovative's

02:01  19   witnesses have stated, and as is undisputed in the

02:02  20   responsive statement of undisputed facts at Fact No. 92,

02:02  21   there is no debate between the parties that all of the

02:02  22   cardiac mapping systems that are in the foremarket have a

02:02  23   reasonable interchangeability of use.

02:02  24         The real question, Your Honor, is whether or not

0   2  25   the foremarket, which has robust competition, which Your

02:02  1   Honor acknowledges and correctly cites to the undisputed

02:02  2   facts in the record -- whether that robust competition can

02:02  3   discipline the competition in the aftermarket.

02:02  4        If it can, then it doesn't matter that the

02:02  5   aftermarket has catheters that work only with the CARTO 3,

02:02  6   because the CARTO 3 is only one of a number of competing

02:02  7   machines.  And if the vast number -- we've got seven

02:02  8   competing machines, many of which are new entrants, as Your

02:02  9   Honor points out, coming out after 2017.  If those new

02:03  10  machines and the existing cardiac mapping machines can take

02:03  11  away business because of their own catheters, then there is

02:03  12  discipline.  As Your Honor points out in the tentative

02:03  13  ruling, there's in fact actual evidence of actual switching.

02:03  14  That evidence is uncontradicted in the record.

02:03  15       Also, counsel cited the Apple versus Psystar case.

02:03  16  In that case, a single brand product market case, the Court

02:03  17  acknowledged that the Newcal test, which is governing in the

02:03  18  Ninth Circuit, requires some form of market imperfection in

02:03  19  order for customers in the aftermarket to be locked into the

02:03  20  product, the durable good which they have acquired in the

02:03  21  foremarket.  There is no evidence here of such market

02:04  22  imperfections.

02:04  23       As Your Honor has so correctly stated in your

02:04  24  tentative ruling, there is not a lack of information.  There

0   4  25  was a policy change that was put in place in 2014 and was

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:04   1    fully implemented by 2016 and by 2017 when Innovative began

02:04   2    selling its catheters. That policy was fully in place.

02:04   3          But more than that Your Honor, there's not a

02:04   4    single customer -- not a single one -- that has said that

02:04   5    they were surprised by the policy and that they felt

02:04   6    trapped. As Your Honor acknowledged in the tentative

02:04   7    ruling, the customers in fact have the ability to switch if

02:04   8    they want to. If they had in fact felt that they had been

02:04   9    misled in some way, first of all, there would be evidence of

02:04   10    it. There is no such evidence.

02:04   11          But second of all, as Your Honor acknowledges in

02:05   12    your decision, there are a number of ways that customers are

02:05   13    able to acquire other competing machines. They have and

02:05   14    they do. Since 2016, as Your Honor acknowledged in your

02:05   15    decision, there have been a number of machines for the CARTO

02:05   16    3 sold each and every year since. There is no market

02:05   17    imperfection in terms of the policy change.

02:05   18          There also is no market imperfection in terms of

02:05   19    the ability to estimate life cycle costs. Your Honor has

02:05   20    cited that information. I don't think I need to go through

02:05   21    it. Counsel hasn't raised it here.

02:05   22          My point, Your Honor, is that there is not a

02:05   23    market imperfection. As a result, we don't have here the

02:05   24    fourth Newcal factor. What plaintiff has failed to do is to

0   5   25    make out a single brand product market.

02:05  1    What they have done is they've raised with Your

02:06  2    Honor product differentiation.  Your Honor, there are a

02:06  3    number of cases which indicate that product differentiation

02:06  4    is not a basis upon which to find that products are not in

02:06  5    the same market.  Warlick Distribution is such a case.

02:06  6    Green Country Food Market is such a case.  DSM Desotech is

02:06  7    such a case.

02:06  8        Indeed, in the DSM Desotech case, there the Court

02:06  9    said there are a number of dimensions upon which products

02:06  10   may be differentiated.  They can be differentiated based

02:06  11   upon customer service, on performance, on price, on cost,

02:06  12   and that those are not bases to separate the products into a

02:06  13   different market.  That's the law.

02:06  14       Product differentiation is a statement of success

02:06  15   of the American competition system.  It's a statement of

02:07  16   robust, interbrand competition.  What we don't want is for

02:07  17   every product to be the same.  What we do want is for

02:07  18   manufacturers to compete hard to make their products the

02:07  19   best products, to be different from the other products, to

02:07  20   be able to compete in ways that other products don't.  That

02:07  21   doesn't mean the product is in its own market.  What it

02:07  22   means is that somebody has built a better mouse trap.  And

02:07  23   that, Your Honor, is what has happened here.

02:07  24       Your Honor, I also would just very briefly mention

0   7  25   that counsel has suggested that cross elasticity of demand

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:07   1     is a test, and we agree that cross elasticities of demand

02:07   2     can be a test for product markets.  That's, however, not the

02:07   3     test that was done by Dr. Forester in his analysis.  He did

02:07   4     no cross elasticity of demand.

02:08   5         Why?  Because Dr. Forester's analysis depended

02:08   6     entirely upon his market being the original manufacturer's

02:08   7     catheter, the LASSO, for instance, and the reprocessed

02:08   8     version of that catheter.  That's the competition he was

02:08   9     looking at.  He wasn't looking at the cross elasticities of

02:08   10     demand or in fact demand of any sort between what Boston

02:08   11     Scientific has as its catheters, or Abbott has as its

02:08   12     catheters, or Acutus has as its catheters.

02:08   13         Your Honor, as you acknowledge in the tentative

02:08   14     ruling, the Innovative executives themselves along with the

02:08   15     marketing literature acknowledge that these catheters from

02:08   16     other manufacturers compete against one another.  Why?

02:08   17     Because of the foremarket competition.

02:09   18         So, Your Honor, I can go through more on the

02:09   19     single brand product market or the SSNIP test if Your Honor

02:09   20     would like me to, but I don't want to overstep your patience

02:09   21     for that to get into the nuances of the SSNIP test.

02:09   22         THE COURT:  Well, does the SSNIP test produce a

02:09   23     result that favors your side?

02:09   24         MS. FORREST:  Your Honor, the SSNIP test is an

0  9   25     irrelevant test.

02:09   1          THE COURT:  I understand.

02:09   2          MS. FORREST:  What I would say is that it produces

02:09   3   a result favorable to our side because it does not do

02:09   4   anything to indicate in the way it was done that there are

02:09   5   in fact separate products.  The SSNIP test in the way that

02:09   6   it was done here is in fact entirely irrelevant.  It doesn't

02:09   7   show that there -- what a SSNIP test is supposed to do is

02:09   8   take a basket of products from different manufacturers,

02:09   9   interbrand, and it is supposed to then have a test where you

02:09   10  put together different baskets of products and say if there

02:10   11  was a price rise, would the other catheters sort of go away,

02:10   12  and is that monopolist able then to hold on to that price

02:10   13  rise, or are these catheters in fact able to take business

02:10   14  away from that manufacturer?  That's not the test that was

02:10   15  run here.

02:10   16          The test that was run here with the SoundStar,

02:10   17  with the Lasso, and the PentaRay, looked at, number one,

02:10   18  only the manufacturers and the reprocessed version of the

02:10   19  same brand.  That is not a SSNIP test that's looking at a

02:10   20  basket of catheters from different manufacturers.  That's

02:10   21  the number one problem.

02:10   22          The number two problem is it looks at average

02:10   23  prices.  There is no SSNIP test known to the history of

02:10   24  mankind that looks at average prices, because -- when I say

0    0   25  average prices, what the expert did who I deposed is he

02:10  1   looked at price -- his SSNIP test looked at prices of both
02:11  2   the OEM and the reprocessed, and put those prices together,
02:11  3   and looked at whether or not there had been a price increase
02:11  4   for the SoundStar over time, found that there had, but could
02:11  5   not tell me who was responsible for the price increase.  And
02:11  6   I asked -- and this is in our reply brief -- "Do you know
02:11  7   whether or not the SoundStar ever raised the price in terms
02:11  8   of what we sold new?"  And he said, "I don't know.  I didn't
02:11  9   look at that."
02:11  10          For PentaRay and for Lasso, again, average prices,
02:11  11  the reprocessed plus what Biosense Webster had manufactured,
02:11  12  he put those together and said those average prices did not
02:11  13  change when there was entry.  But he only looked at entry of
02:11  14  one catheter of one manufacturer.  First of all, average
02:11  15  prices and the fact that average prices destroys the SSNIP
02:11  16  test to begin with, but second of all, he didn't look at a
02:11  17  basket of catheters that included Boston Scientific's
02:12  18  Acutus, et cetera, et cetera.  But in addition to that, the
02:12  19  conditions of entry are very specific conditions.
02:12  20          So the SSNIP test, Your Honor, I would say only
02:12  21  helps us not because it's right, but because it's just
02:12  22  absolutely wrong.  If I were to cross-examine the expert on
02:12  23  that SSNIP test, it could never hold up.  And, indeed, we've
02:12  24  made a Daubert motion on that very basis.
0   2   25          Your Honor, it's very important to go back to the

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 02:12 | 1 | law as Your Honor had suggested, which is that when an |
|---|---|---|
| 02:12 | 2 | expert is coming into court to present an opinion, the |
| 02:12 | 3 | Brooke Group case tells us that the expert is to help us |
| 02:12 | 4 | explain facts, not come up with new facts.  Expert opinions |
| 02:12 | 5 | that contradict the factual record are not expert opinions |
| 02:12 | 6 | that can create a triable issue.  They are expert opinions |
| 02:13 | 7 | that are being used to try to manufacture something that |
| 02:13 | 8 | doesn't otherwise exist. |
| 02:13 | 9 | My last point, Your Honor, would be simply on the |
| 02:13 | 10 | separate product markets, which was the last portion of Your |
| 02:13 | 11 | Honor's opinion -- or separate products for the tying claim. |
| 02:13 | 12 | First, for clinical support, if there is no single brand |
| 02:13 | 13 | product market, then there is no single brand product market |
| 02:13 | 14 | for that market as well as the three catheter markets. |
| 02:13 | 15 | But putting that aside, as Your Honor correctly |
| 02:13 | 16 | noted in your tentative decision, the law is a demand test. |
| 02:13 | 17 | That is Jefferson Parish.  That is Rick-Mik.  In both of |
| 02:13 | 18 | those cases, the Court says you look at whether or not there |
| 02:13 | 19 | is a demand for the separate product.  In the Rick-Mik case, |
| 02:13 | 20 | there had been an aggregation of products for a very long |
| 02:13 | 21 | time, and the Court said if these cases are never unbundled, |
| 02:13 | 22 | then there isn't separate demand. |
| 02:14 | 23 | What we have here, Your Honor, is a situation in |
| 02:14 | 24 | which the OEMs have provided this clinical support for free. |
| 0    4 | 25 | The customers have an expectation of it being provided for |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:14   1    free.  It's never been charged for, and there's no evidence

02:14   2    in the record that a single hospital wants to pay Biosense

02:14   3    Webster a charge for what it's now providing for free.

02:14   4          So the demand is for the value added service

02:14   5    that's bundled in with a product that we already provide.

02:14   6    The result of the situation here, if Innovative were to

02:14   7    prevail, would be that prices would go up, because customers

02:14   8    would now be charged for something for which they today get

02:14   9    free.  And, Your Honor, that is not the law.

02:14  10          Unless Your Honor has any further questions, I

02:14  11    will sit down.

02:14  12          THE COURT:  No.  Thank you.

02:14  13          Mr. Berhold.

02:15  14          MR. BERHOLD:  Thank you, Your Honor.  Let me

02:15  15    address --

02:15  16          THE COURT:  Well, let me ask you one thing.  Do

02:15  17    you agree with the proposition that unless there is an

02:15  18    irregularity in the forward market, you don't consider

02:15  19    yourselves about the aftermarket?

02:15  20          MR. BERHOLD:  No, Your Honor.  I would approach it

02:15  21    somewhat differently.  Kodak --

02:15  22          THE COURT:  Well, first, is there an imperfection

02:15  23    in the forward market in this case?

02:15  24          MR. BERHOLD:  There are actually.  The biggest

0  5  25    market imperfection by far is that we've got a third-party

02:15   1   payer problem that's talked about extensively in the

02:15   2   Forester report. It's talked about in the Ninth Circuit

02:15   3   case law, and it's talked about in the opposition brief.

02:15   4   Hospitals pay for the system. Hospitals pay for

02:15   5   the catheters. The physicians are the ones indisputably who

02:16   6   pick which system to use on every procedure and the

02:16   7   catheters to use on every procedure. That's by order of the

02:16   8   FDA, and that's what every hospital testified in this case.

02:16   9   The physicians choose, not the hospital administration.

02:16   10   They choose which system to buy, and then they decide when

02:16   11   they schedule a procedure which room they're going to use,

02:16   12   which system they're going to use, and then they instruct

02:16   13   their assistant which catheters they're going to use. They

02:16   14   make the decisions, not the hospital. So it's a very big

02:16   15   market imperfection.

02:16   16   But the question --

02:16   17   THE COURT: Well, is it an imperfection or just a

02:16   18   manifestation that the competition occurs really in the

02:16   19   position level given the structure of things rather than at

02:16   20   the hospital purchaser level?

02:17   21   MR. BERHOLD: It's an imperfection in the sense

02:17   22   that someone else is paying for those customers' choices.

02:17   23   You're not going to see prices as an effective discipline on

02:17   24   customer choices by the physician. It's the physician's

0   7   25   choice, but the hospital pays for it.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 02:17 | 1 | THE COURT:  But doesn't the customer always get |
| 02:17 | 2 | the choice in the marketplace?  For a practical matter, the |
| 02:17 | 3 | doctor is a servant for the hospital, and the doctor makes |
| 02:17 | 4 | the product choice.  So what's wrong with that as long as |
| 02:17 | 5 | there's freedom of choice at some point in the open |
| 02:17 | 6 | decision-making process in the forward market? |
| 02:17 | 7 | MR. BERHOLD:  There's nothing wrong with it in and |
| 02:17 | 8 | of itself.  It just creates an imperfection in the market |
| 02:18 | 9 | because -- |
| 02:18 | 10 | THE COURT:  Imperfection or different |
| 02:18 | 11 | manifestation? |
| 02:18 | 12 | MR. BERHOLD:  Imperfection. |
| 02:18 | 13 | THE COURT:  Okay. |
| 02:18 | 14 | MR. BERHOLD:  It's third-party payer problem. |
| 02:18 | 15 | The analogy I think of is when you give your child your |
| 02:18 | 16 | credit card.  It's your credit card, and you'll pay the |
| 02:18 | 17 | bills.  But the question is, is there going to be discipline |
| 02:18 | 18 | in that market?  No.  The hospitals have testified again and |
| 02:18 | 19 | again we defer to the physicians.  They call the shots. |
| 02:18 | 20 | THE COURT:  Is there anything constraining the |
| 02:18 | 21 | physicians? |
| 02:18 | 22 | MR. BERHOLD:  I mean, they make the choice largely |
| 02:18 | 23 | on other reasons besides price, their preference in terms of |
| 02:18 | 24 | quality of care, in terms of the speed of the procedure, and |
| 0  8 | 25 | that's why -- |

25

```
02:18   1              THE COURT:  But isn't that true with all
02:19   2   customers?  Not all customers make the ultimate decision on
02:19   3   price.  I may want a car with airbags front and back.  Two
02:19   4   cars, they're both functioning as cars, but, you know, one
02:19   5   has this extra safety item that I want.  Is there not
02:19   6   competition there?
02:19   7              MR. BERHOLD:  I think the Ninth Circuit law and
02:19   8   economic practice would tell you that the third-party payer
02:19   9   problem does affect competition.  It is a market
02:19  10   imperfection.  If someone else is paying for your car, you'd
02:19  11   say I'll take the airbags.  They may be only worth $500
02:20  12   extra, but I'll have --
02:20  13              THE COURT:  But somebody may say, you know, this
02:20  14   manufacturer uses this brand, and their airbags are
02:20  15   notoriously unreliable.  So even though other features may
02:20  16   be offered and the hospital is effectively not the ultimate
02:20  17   decision-maker, doesn't the physician have the opportunity
02:20  18   to consider things other than dollars that may affect the
02:20  19   decision?  I don't think that's anti-competitive.
02:20  20              MR. BERHOLD:  It's not that it's anti-competitive.
02:20  21   It's a market imperfection.  A third-party payer problem
02:20  22   alone, that's not against the law.  It's a fact in certain
02:20  23   situations.
02:20  24              THE COURT:  Right.
0    0  25              MR. BERHOLD:  That's all I'm saying.
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:20  1          THE COURT:  Okay.

02:20  2          MR. BERHOLD:  So the test in Kodak is whether

02:20  3  competition -- so let's take for granted that there is

02:21  4  competition in a foremarket -- copiers, mapping systems.

02:21  5  The question is whether that -- I'll just quote from

02:21  6  page 469 of Kodak:  "The extent to which one market prevents

02:21  7  exploitation of another market depends on the extent to

02:21  8  which consumers will change their consumption of one product

02:21  9  in response to price change in another."

02:21  10         And the brief at page 23:  "Innovative was offered

02:21  11  evidence that did not shift away from CARTO 3 in response to

02:21  12  higher prices associated with the case coverage policy.

02:21  13  CARTO procedure share has been flat."

02:21  14         It cites to the Forester report, paragraph 176,

02:22  15  which states:  "Biosense's ability to increase average

02:22  16  prices was not constrained by a decline in CARTO 3 system

02:22  17  usage."

02:22  18         This isn't just any -- there's absolutely nothing

02:22  19  anti-competitive about the fact that Biosense makes the best

02:22  20  mapping system on the market, so ▉ percent of the mapping

02:22  21  systems but they have ▉ percent procedure share.  There's

02:22  22  nothing wrong with that.  The problem is that there's a case

02:22  23  coverage policy, and competition in the foremarket is not a

02:22  24  discipline.  How do we know it?  It's not based on theories.

0   2  25  It's based on what we see with the SSNIP test.

| | | |
|--|--|--|
| 02:22 | 1 | To be clear, the whole point of a SSNIP test is to |
| 02:23 | 2 | look at the proposed product market. Here, customers buy a |
| 02:23 | 3 | mix of new and reprocessed SoundStar catheters. That's the |
| 02:23 | 4 | proposition. That's the proposed market. The question is, |
| 02:23 | 5 | if the average market price goes up, I say I'm not going to |
| 02:23 | 6 | buy SoundStar's anymore. I'm going to buy AcuNav's, or |
| 02:23 | 7 | ViewFlex's, or I'm going to use a different mapping system. |
| 02:23 | 8 | The answer is no to both. SoundStar volume has |
| 02:23 | 9 | gone up, up, up throughout the period of the case coverage |
| 02:23 | 10 | policy, and the CARTO 3 procedure volume has remained flat. |
| 02:23 | 11 | As a whole, customers are not moving away in response to the |
| 02:23 | 12 | case coverage policy. |
| 02:23 | 13 | I did want to address one more thing. In Newcal, |
| 02:24 | 14 | there was a Motion to Dismiss on the sufficiency of a |
| 02:24 | 15 | Complaint, and Newcal goes into the four factors with |
| 02:24 | 16 | respect to that particular Complaint why factually it's |
| 02:24 | 17 | plausible. It's still the same ultimate question as Kodak. |
| 02:24 | 18 | Does competition -- this is at page -- towards the end of |
| 02:24 | 19 | page 1050 of Newcal: "Competition in the initial market |
| 02:24 | 20 | does not necessarily suffice to discipline anti-competitive |
| 02:25 | 21 | practices in the aftermarket." |
| 02:25 | 22 | Here, we don't have to guess anymore. We're not |
| 02:25 | 23 | at the Complaint stage. We've had discovery. We've seen |
| 02:25 | 24 | what happens. They're not moving. But they have taken it, |
| 0    5 | 25 | and they're not switching. That tells you that, one, these |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

02:25  1   are appropriate catheter markets; and, two, that competition

02:25  2   in the foremarket is not disciplining the competition in the

02:25  3   aftermarket.

02:25  4        I lost my thought. I should have written a note

02:25  5   about the last point from Biosense about separate markets.

02:26  6   Do you mind if I confer with counsel?

02:26  7        THE COURT: Sure. Look at the last page of the

02:26  8   tentative.

02:26  9        MR. BERHOLD: Let me take your suggestion and look

02:26  10  at the last line of the tentative if I can find it in my

02:26  11  stack of --

02:26  12       (Pause in proceedings)

02:26  13       MR. BERHOLD: I don't think I have anything to add

02:27  14  on separate market. I don't recall my point, but the

02:27  15  question is whether there's sufficient demand, that people

02:27  16  would provide it if wasn't free and tied to the catheters in

02:27  17  the system. The answer is clearly yes. It's been done

02:27  18  historically that way, and it would be done again. There's

02:27  19  no doubt. These are very lucrative procedures for the

02:27  20  hospitals.

02:27  21       Thank you, Your Honor.

02:27  22       THE COURT: Thank you.

02:27  23       I have a stip to continue filing dates for certain

02:27  24  of the pretrial filings. I'll sign that.

0   8   25       MR. BERHOLD: Can I mention that the stipulation

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| 02:28 | 1 | and proposed order was limited to certain filings? |
|---|---|---|
| 02:28 | 2 | THE COURT: Right. |
| 02:28 | 3 | MR. BERHOLD: We neglected to include oppositions |
| 02:28 | 4 | to motions in-limine that are due today. I would ask that |
| 02:28 | 5 | be added to the order as well. |
| 02:28 | 6 | THE COURT: Any objection? |
| 02:28 | 7 | MS. FORREST: No objection, Your Honor. |
| 02:28 | 8 | THE COURT: Will do. |
| 02:28 | 9 | MR. BERHOLD: Thank you, Your Honor. That will |
| 02:28 | 10 | make everyone's life a little easier as well. |
| 02:28 | 11 | THE COURT: You know, practice of law is tough |
| 02:28 | 12 | enough as it is. |
| 02:28 | 13 | Okay, anything else for today? |
| 02:28 | 14 | MS. FORREST: Your Honor, unless you have any |
| 02:28 | 15 | questions for me, then nothing from Biosense. |
| 02:28 | 16 | THE COURT: Okay. Thank you very much. It's been |
| 02:28 | 17 | helpful. |
| 02:28 | 18 | (Whereupon, the proceedings were concluded.) |
| 02:28 | 19 | *   *   * |
| 02:28 | 20 | |
| 02:28 | 21 | |
| 02:28 | 22 | |
| 02:28 | 23 | |
| 02:28 | 24 | |
| 0   8 | 25 | |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

30

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:   June 11, 2022

/s/    Sharon A. Seffens   6/11/22

SHARON A. SEFFENS, U.S. COURT REPORTER

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

EXHIBIT 2

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

INNOVATIVE HEALTH, LLC,     ) CERTIFIED TRANSCRIPT
                 Plaintiff,  )
     vs.                     )
                             )   SACV-19-01984-JVS
BIOWEBSTER, INC.,            )
                 Defendant.  )
----------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

June 14, 2024

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(612) 804-8655

2

| | |
|---|---|
| 1 | APPEARANCES OF COUNSEL: |
| 2 | For the Plaintiff: |
| 3 | PANTEHA ABDOLLAHI |
| | THEODORA ORINGHER, PC |
| 4 | 535 Anton Boulevard, Ninth Floor |
| | Costa Mesa, CA  92626-7109 |
| 5 | (714) 549-6200 |
| 6 | JEFFREY L. BERHOLD |
| | JEFFREY L. BERHOLD, PC |
| 7 | 1230 Peachtree Street, Suite 1050 |
| | Atlanta, Georgia  30309 |
| 8 | (404) 872-3800 |
| 9 | JOSHUA P. DAVIS |
| | BERGER MONTAGUE, PC |
| 10 | 505 Montgomery Street, Suite 625 |
| | San Francisco, CA  94111 |
| 11 | (415) 906-0684 |
| 12 | For the Defendant: |
| 13 | KARLA DRAFT |
| | LISA M. NORTHRUP |
| 14 | SEAN THOMAS LOBB |
| | STRADLING YOCCA CARLSON & RAUTH, LLP |
| 15 | 660 Newport Center Drive, Suite 1600 |
| | Newport Beach, CA  92660-6422 |
| 16 | (949) 725-4000 |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| | |
|---|---|
| | 1 SANTA ANA, CALIFORNIA; MONDAY, JUNE 10, 2024; 11:34 A.M. |
| 11:34 | 2       THE CLERK:  Calling Item No. 4, SACV-19-01984-JVS, |
| 11:34 | 3 Innovative Health, LLC, versus Biosense Webster, Inc. |
| 11:34 | 4       Counsel, please state your appearances for the |
| 11:34 | 5 record. |
| 11:34 | 6       MR. BERHOLD:  Good morning, Your Honor.  Jeff |
| 11:34 | 7 Berhold for Innovative Health, LLC. |
| 11:34 | 8       THE COURT:  Good morning. |
| 11:34 | 9       MR. DAVIS:  Good morning, Your Honor.  Josh Davis |
| 11:34 | 10 for Innovative. |
| 11:34 | 11       THE COURT:  Good morning. |
| 11:34 | 12       MS. ABDOLLAHI:  Good morning, Your Honor.  Panteha |
| 11:34 | 13 Abdollahi on behalf of Innovative. |
| 11:34 | 14       THE COURT:  Good morning. |
| 11:34 | 15       MS. KRAFT:  Good morning, Your Honor.  Karla Kraft |
| 11:34 | 16 of Stradling on behalf of defendant Biosense Webster. |
| 11:34 | 17       THE COURT:  Good morning. |
| 11:34 | 18       MS. NORTHRUP:  Good morning, Your Honor.  Lisa |
| 11:34 | 19 Northrup, also on behalf of Biosense. |
| 11:34 | 20       THE COURT:  Good morning. |
| 11:34 | 21       MR. LOBB:  Good morning, Your Honor.  Sean Lobb, |
| 11:34 | 22 also on behalf of defendant Biosense Webster. |
| 11:34 | 23       THE COURT:  Good morning. |
| 11:34 | 24       We're looking at an August 20, 2024, trial date, |
| 11:34 | 25 and I believe having read the briefs that there is a cloud |

11:35  1  over that date.  Let me share some general thoughts with

11:35  2  you.  No new theories.  Given the filings, I'm unable to

11:35  3  discern exactly what such theories would be but no new

11:35  4  theories.  There will be no plugging through experts of

11:35  5  previously identified holes or deficiencies in the expert

11:35  6  reports, and I underscore "previously identified."  Three,

11:35  7  I'm not reopening discovery.  I was not asked to reopen

11:35  8  discovery, and we're not going to reopen discovery.  Were I

11:35  9  convinced to do that, I'd vacate the trial date.

11:36  10        I've reviewed the request for a supplement of

11:36  11  certain requests for production in the correspondence

11:36  12  beginning at page 254, Docket 226-1 and also the

11:36  13  correspondence beginning at page 230 of 26-1.  I believe

11:36  14  it's appropriate to update any information that goes to

11:36  15  damages.  That would include supplemental information.  It

11:36  16  would allow for a further extension of the period of damages

11:36  17  to be commensurate with the trial date.  There may be

11:36  18  certain facts such as transactions that underlie the damage

11:37  19  calculation, but beyond that, I'm not going to require

11:37  20  further supplementation of any substantive facts going to

11:37  21  the claims.  The record is the record.

11:37  22        I haven't seen the supplemental expert reports, so

11:37  23  I'm not able to comment whether there is an issue with those

11:37  24  reports in terms of the guidelines I've laid out, but if

11:37  25  there is an issue, I expect you to bring that promptly to my

11:37  1    attention.  I made the same remark in the order issued at

11:37  2    Docket 218 when I noted:  "The dates leading to the trial

11:37  3    date are without prejudice to further relief promptly sought

11:37  4    after receipt of the supplemental reports and discovery

11:37  5    responses."

11:38  6            So I'll be happy to hear you.  Are we on track or

11:38  7    not?

11:38  8            MR. DAVIS:  Thank you, Your Honor.

11:38  9            We don't believe we are on track, and just to

11:38  10   summarize our understanding of it, our understanding was

11:38  11   that Biosense, as we interpreted your order -- I always

11:38  12   hesitate to tell a judge what it ordered.

11:38  13           THE COURT:  That's fine.

11:38  14           MR. DAVIS:  But it was a deadline of May 14 for

11:38  15   the supplemental disclosures.

11:38  16           THE COURT:  Right.

11:38  17           MR. DAVIS:  We have yet to receive anything, so

11:38  18   the parties agreed -- and then we had a supplemental report

11:38  19   that we were going to serve on May 31, but not having

11:38  20   received the supplemental disclosures which would be

11:38  21   relevant to that report, the parties agreed to set up a new

11:38  22   schedule and to brief that through this status conference

11:38  23   today.

11:38  24           We are concerned very much about the viability of

11:39  25   that August trial date given where we are in the

11:39  1    supplemental disclosure process, so we were hoping we could
11:39  2    set a new date by which Biosense would have to make its
11:39  3    supplemental disclosures, and if we could then use that as a
11:39  4    basis for setting a new date by which we could serve a
11:39  5    supplemental expert report and key off of that.
11:39  6              We are very much concerned about whether -- we
11:39  7    think the original schedule as ordered by this Court was
11:39  8    viable.  I think we are very concerned about whether we can
11:39  9    hold the August trial date unless we receive supplemental
11:39  10   disclosures immediately.
11:39  11             THE COURT:  Ms. Kraft.
11:39  12             MS. KRAFT:  Yes, Your Honor.  The supplemental
11:39  13   discovery date of May 14 was something that the Court
11:40  14   announced when it served the order on May 10.  We
11:40  15   immediately started to gather what we believed to be a scope
11:40  16   of documents that is appropriate based upon what the Court
11:40  17   just said in its comments with regard to documents that go
11:40  18   to damages or data that goes to damages.  However, it was
11:40  19   impossible to gather the volume and scope of the information
11:40  20   by May 14.  We notified the plaintiff and the Court of that
11:40  21   fact and said we are and continue to gather documents as
11:40  22   rapidly as we can in good faith.
11:40  23             We also did not know the scope of what needed to
11:40  24   be produced as of May 14.  We held a meet and confer with
11:40  25   plaintiff where we made the proposal that is documented in

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:40 | 1 | our briefing in front of the Court, which is I think |
| 11:40 | 2 | congruent with what Your Honor said.  We have one question |
| 11:40 | 3 | on that, which is when the Court said that it was |
| 11:40 | 4 | appropriate to update information that goes to damages up |
| 11:40 | 5 | through the trial date, does that refer to data related to |
| 11:40 | 6 | the 142 machines that were sold prior to -- 142 CARTO 3's |
| 11:41 | 7 | that were sold prior to April 2016? |
| 11:41 | 8 | THE COURT:  What would be needed to be updated |
| 11:41 | 9 | with respect to those? |
| 11:41 | 10 | MS. KRAFT:  In the Court's summary judgment, and |
| 11:41 | 11 | then affirmed or favorably commented upon in the Court of |
| 11:41 | 12 | Appeal, was the fact that the District Court found that the |
| 11:41 | 13 | relevant items or relevant machines for damages purposes, |
| 11:41 | 14 | locked in purposes, was 142 CARTO 3's that were sold prior |
| 11:41 | 15 | to April of 2016, which was when the clinical support policy |
| 11:41 | 16 | was announced. |
| 11:41 | 17 | MR. DAVIS:  At an appropriate time, we would like |
| 11:41 | 18 | to address that if we could, Your Honor. |
| 11:41 | 19 | MS. KRAFT:  We began to immediately gather that |
| 11:41 | 20 | data.  We have most of that gathered at this point, so we |
| 11:41 | 21 | believe that that is something that can be promptly |
| 11:41 | 22 | produced.  I can't tell you an exact date, but we're working |
| 11:41 | 23 | as fast as we can. |
| 11:41 | 24 | THE COURT:  All right. |
| 11:41 | 25 | MR. DAVIS:  From our view, that would not be an |

11:41    1    adequate production, not for damages or for market power.

11:41    2    To be very clear, what the Ninth Circuit held was that under

11:42    3    one theory, one way we can prove market power to a single

11:42    4    brand aftermarket -- for purposes of assessing market power,

11:42    5    the relevant issue is which hospitals were locked in at the

11:42    6    time of the policy.

11:42    7         That said, there's a couple of things.  One,

11:42    8    that's not the limit for damages.  That's for market power.

11:42    9    That doesn't mean everyone didn't suffer damages as a result

11:42   10    of that market power, and it doesn't mean that Innovative

11:42   11    didn't suffer damages because of exclusion from the market.

11:42   12    So we think that disclosure would be woefully inadequate.

11:42   13         The second point is that even under our original

11:42   14    theories as presented to the Ninth Circuit and this Court,

11:42   15    we have other ways of establishing market power than through

11:42   16    a single brand aftermarket.  The Ninth Circuit explicitly

11:42   17    said it didn't have to reach that issue.  It did not rule

11:43   18    that out.

11:43   19         So if we are going to calculate damages, we would

11:43   20    need discovery related to damages not just based on the

11:43   21    market power inquiry for that very limited subset -- we

11:43   22    actually think those numbers are incorrect, the number 142.

11:43   23    It's much smaller that actually is the right number.  But in

11:43   24    addition, we need to be able to show what happened in the

11:43   25    market between the time the Court granted summary judgment

11:43    1    or discovery closed and the present to be able to establish

11:43    2    Innovative's damages.  It's not just a question of those --

11:43    3    it's a question about the market more generally.

11:43    4        That information would just require updating the

11:43    5    spreadsheets that Biosense previously disclosed.  That is

11:43    6    not discovery contrary to what Biosense has said under a new

11:43    7    theory.  If it wasn't part of the case before, they wouldn't

11:43    8    have disclosed it before.  It is part of the case.  This is

11:43    9    information that is very important for us to have our fair

11:43   10    chance to prove up our damages, and to circumscribe that

11:44   11    discovery in the way Biosense is proposing would really

11:44   12    prejudice us and limit our ability to prove the damages up

11:44   13    to the time of trial.

11:44   14        THE COURT:  Well, what I hear collectively is,

11:44   15    one, the presently intended production and updating can't

11:44   16    get done in time for trial; and, two, even if it were

11:44   17    adequate -- and, two, from your perspective, it won't be

11:44   18    adequate.  So in the minute order today, I'm vacating the

11:44   19    trial date.

11:44   20        I'd like you to give me a date to conclude your

11:44   21    meet and confer activities and come back to me with a

11:44   22    further status conference laying out in concrete what needs

11:44   23    to be done, so that in the concrete, I can make some

11:44   24    rulings.

11:44   25        I assume the current dates for the expert reports

| 11:45 | 1 | -- are those going to hold or not, or do you need to push |
|---|---|---|
| 11:45 | 2 | those out? |
| 11:45 | 3 | MR. DAVIS:  I believe those are all vacated in the |
| 11:45 | 4 | last stip and order we submitted, so I think those are |
| 11:45 | 5 | currently not in place. |
| 11:45 | 6 | THE COURT:  Okay.  Well, we need to come back with |
| 11:45 | 7 | that schedule. |
| 11:45 | 8 | So what's your suggestion for returning and trying |
| 11:45 | 9 | to get down to nuts and bolts? |
| 11:45 | 10 | MR. DAVIS:  If I could confer for a moment with my |
| 11:45 | 11 | co-counsel. |
| 11:45 | 12 | (Plaintiff's counsel conferring) |
| 11:45 | 13 | MR. DAVIS:  There is one issue, this issue of the |
| 11:45 | 14 | scope.  I am concerned.  We're always happy to meet and |
| 11:45 | 15 | confer.  There is a very wide gap I would say between the |
| 11:45 | 16 | parties' views, so I do wonder if maybe this could be a |
| 11:45 | 17 | vehicle for it.  You know, normally we hope to reach |
| 11:45 | 18 | agreement, and I'm concerned we will not.  It would be good |
| 11:45 | 19 | to have a vehicle to try and resolve that issue if possible. |
| 11:45 | 20 | THE COURT:  I'm the vehicle. |
| 11:45 | 21 | MR. DAVIS:  You're certainly the vehicle, and this |
| 11:45 | 22 | process can be part of that. |
| 11:46 | 23 | THE COURT:  Do you want to suggest a date to make |
| 11:46 | 24 | your filings and come back and have a further status |
| 11:46 | 25 | conference? |

| | | |
|---|---|---|
| 11:46 | 1 | MR. DAVIS:  Yes. |
| 11:46 | 2 | (Counsel conferring) |
| 11:46 | 3 | MR. DAVIS:  Do you have a suggestion, or -- |
| 11:46 | 4 | MS. KRAFT:  I do, Your Honor.  I would suggest |
| 11:46 | 5 | that we schedule a date for a status conference four to six |
| 11:46 | 6 | week out.  Between now and then, we would produce what we |
| 11:46 | 7 | believe to be the appropriate scope of documents so that we |
| 11:46 | 8 | could meet and confer on those and then present that to the |
| 11:46 | 9 | Court. |
| 11:46 | 10 | THE COURT:  Okay. |
| 11:46 | 11 | MR. DAVIS:  We're amenable to that. |
| 11:46 | 12 | Do you have a sense of the timing of that |
| 11:46 | 13 | disclosure? |
| 11:46 | 14 | MS. KRAFT:  We have most of the documents, and |
| 11:46 | 15 | there's a set that we do not yet have, and we're trying to |
| 11:46 | 16 | determine that.  We're still in the process of reviewing the |
| 11:46 | 17 | data because it is a very large volume of data, so I would |
| 11:46 | 18 | hope that within three weeks -- hopefully within two |
| 11:46 | 19 | weeks -- we would have that produced, but that's an estimate |
| 11:47 | 20 | at this point because we're working hard on it. |
| 11:47 | 21 | THE COURT:  Well, why don't we put the status |
| 11:47 | 22 | conference out to July 5, and say at least one week prior, |
| 11:47 | 23 | you'll file whatever briefs you wish to.  And for the |
| 11:47 | 24 | record, the trial and all present dates are vacated. |
| 11:47 | 25 | MS. KRAFT:  Your Honor, if I may, would it be |

```
11:47   1    possible to put that July 15 or after?  I'm planning on
11:47   2    being out of town, and my co-lead counsel is in New York.
11:47   3              THE COURT:  When would you want to set the
11:47   4    hearing?
11:47   5              MS. KRAFT:  Anything July 15 or after would be
11:47   6    helpful if we could file briefing and then --
11:47   7              THE COURT:  But August 5 is after that.
11:47   8              MS. KRAFT:  Oh, August.  I'm sorry.  I thought you
11:47   9    said July 5.
11:47  10              THE COURT:  Yes, I misspoke.  August 5.
11:47  11              MS. KRAFT:  August 5 is fine, Your Honor.
11:47  12              MR. DAVIS:  So August 5?
11:48  13              THE COURT:  Yes.
11:48  14              MR. DAVIS:  And then since we'll be receiving the
11:48  15    disclosures, our proposal would be that if we meet and
11:48  16    confer and if we can't come to agreement, we might do an
11:48  17    ordinary briefing schedule with a Motion to Compel and an
11:48  18    opposition and reply.  Would that work?
11:48  19              THE COURT:  However you want to structure it.  But
11:48  20    by the time we set a trial date, I want to make sure that we
11:48  21    have a schedule that from everybody's perspective, whether
11:48  22    they agree with it or not, that it's doable.
11:48  23              MR. DAVIS:  Yes, Your Honor.
11:48  24              THE COURT:  The matter will not go to trial this
11:48  25    year.  I have at least three major trials, one beginning
```

| 11:48 | 1 | after Labor Day, one beginning the end of October, and a |
| 11:48 | 2 | couple in between the two very large ones.  At this point, I |
| 11:48 | 3 | think if the trial after Labor Day got resolved, it really |
| 11:48 | 4 | wouldn't be any benefit.  You wouldn't be ready by that |
| 11:48 | 5 | time. |
| 11:49 | 6 | MR. DAVIS:  Your Honor, you had said before on |
| 11:49 | 7 | some of these issues that -- I may have misunderstood you, |
| 11:49 | 8 | so I apologize.  But if some of the constraints you are |
| 11:49 | 9 | imposing were based on holding the August trial date, I'm |
| 11:49 | 10 | wondering if -- |
| 11:49 | 11 | THE COURT:  Well, there's still -- there is a |
| 11:49 | 12 | matter of a substantive holding, yes.  They can't be |
| 11:49 | 13 | accomplished with an August trial date.  They can't be |
| 11:49 | 14 | accomplished because the law doesn't recognize wholesale |
| 11:49 | 15 | reopening of discovery, and it doesn't recognize new |
| 11:49 | 16 | theories late in the day, and it doesn't recognize curing |
| 11:49 | 17 | holes that have already been identified. |
| 11:49 | 18 | MR. DAVIS:  Yeah, and I do want to say to be clear |
| 11:49 | 19 | on the record we think that that is not what we had ever |
| 11:49 | 20 | proposed to do.  At the April 29 hearing, Your Honor had |
| 11:49 | 21 | suggested that we could update and modify the expert report |
| 11:49 | 22 | in light of the intervening Ninth Circuit law that came |
| 11:50 | 23 | down. |
| 11:50 | 24 | THE COURT:  Right. |
| 11:50 | 25 | MR. DAVIS:  I do want to clarify that just as |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

| | | |
|---|---|---|
| 11:50 | 1 | Biosense -- this Court ruled because there has been two or |
| 11:50 | 2 | three years of intervening law, Biosense has been able to |
| 11:50 | 3 | withdraw its old motions in-limine and file new ones. |
| 11:50 | 4 | THE COURT: Right. |
| 11:50 | 5 | MR. DAVIS: We understood that we similarly could |
| 11:50 | 6 | conform our expert reports to not only the Ninth Circuit's |
| 11:50 | 7 | ruling in this case, which gave guidance on how to frame a |
| 11:50 | 8 | single brand aftermarket theory, but also Epic Games in |
| 11:50 | 9 | particular has come down. And although there's disagreement |
| 11:50 | 10 | between the parties, we would like to be able to conform our |
| 11:50 | 11 | expert report to that as well. |
| 11:50 | 12 | THE COURT: To the extent there's intervening law |
| 11:50 | 13 | there, in principle, that's fine. |
| 11:50 | 14 | MR. DAVIS: Okay. Thank you, Your Honor. |
| 11:50 | 15 | MS. KRAFT: Your Honor, just for the record on |
| 11:50 | 16 | that, we just disagree that Epic is new law. Epic relies |
| 11:50 | 17 | extensively on the Newcal case, which relies extensively on |
| 11:50 | 18 | the Kodak case. We disagree that there's been new law here, |
| 11:50 | 19 | and also disagree with the concept that reopening or |
| 11:51 | 20 | creating new discovery is similar to motions in-limine. |
| 11:51 | 21 | Motions in-limine tailor things for trial. Whereas, new |
| 11:51 | 22 | discovery opens things wide open and creates more expense |
| 11:51 | 23 | and delay and so forth. It's a fundamentally different |
| 11:51 | 24 | concept. |
| 11:51 | 25 | MR. DAVIS: I do want to be clear if I was |

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

11:51 1 unclear. I'm talking about -- not about new discovery other

11:51 2 than as this Court just set forth we could pursue in order

11:51 3 to calculate our damages but, rather, conform the expert

11:51 4 report to what we think was a clarification of the law in

11:51 5 Epic Games. As we set forth in our brief -- well, I won't

11:51 6 go there.

11:51 7 Let me just ask one other question because I do

11:51 8 think it creates a challenging issue potentially for us.

11:51 9 That is, we are seeking not only damages but injunctive

11:51 10 relief, and in order to seek injunctive relief -- I just had

11:51 11 this happen in a trial in Las Vegas where the issue arose if

11:51 12 we were seeking injunctive relief, then the defendant was

11:51 13 going to make arguments about the intervening period where

11:51 14 there hadn't been discovery to say whether injunctive relief

11:51 15 was appropriate.

11:52 16 Now, if Biosense is willing to stipulate that our

11:52 17 discovery up to the time it closed says what the market is

11:52 18 now and there can be no testimony about current market

11:52 19 conditions or how they may have changed, we can understand

11:52 20 that as a potential approach. But if not, we feel like we

11:52 21 do need discovery about current market conditions, anything

11:52 22 that may have changed between the close of discovery and

11:52 23 during the pendency of the appeal. Otherwise, we have an

11:52 24 unfair disadvantage where we're not able to present evidence

11:52 25 about current market conditions that could potentially be

| 11:52 | 1 | highly relevant to equitable relief. |
| 11:52 | 2 | THE COURT: Well, any eBay analysis ought to speak |
| 11:52 | 3 | to current conditions. |
| 11:52 | 4 | MR. DAVIS: I'm sorry, Your Honor? |
| 11:52 | 5 | THE COURT: Any eBay analysis. |
| 11:52 | 6 | MR. DAVIS: Right. Well, we would want to have |
| 11:53 | 7 | the expert address current market conditions about market |
| 11:53 | 8 | power and what have you. |
| 11:53 | 9 | THE COURT: Well, if I'm asked to grant injunctive |
| 11:53 | 10 | relief, I think the current conditions ought to be before |
| 11:53 | 11 | the Court. |
| 11:53 | 12 | MR. DAVIS: Yes. |
| 11:53 | 13 | THE COURT: If the defendant is on his last legs |
| 11:53 | 14 | and is not manufacturing anymore, you know, that would be |
| 11:53 | 15 | relevant. |
| 11:53 | 16 | MR. DAVIS: Right. I think from our perspective |
| 11:53 | 17 | what's also relevant is what are the current policies in |
| 11:53 | 18 | place the defendant has, and what effect does that have on |
| 11:53 | 19 | competition in the market, and what kind of changes might be |
| 11:53 | 20 | appropriate if we were to prevail so that we could -- |
| 11:53 | 21 | THE COURT: Outline what discovery you think you |
| 11:53 | 22 | would need for injunctive relief when you come back. |
| 11:53 | 23 | MR. DAVIS: Thank you, Your Honor. |
| 11:53 | 24 | MS. KRAFT: Your Honor, I was just going to say |
| 11:53 | 25 | that that seems to be an appropriate topic for the parties' |

11:53  1  meet and confer.  There's been a lot of discussion on the

11:53  2  theory for damages, not necessarily for this, although I

11:53  3  will note that the injunction that they seek is very

11:54  4  different than some of the injunctions that might be out

11:54  5  there.  They're seeking an injunction for clinical support

11:54  6  to be provided to their client, which is quite different

11:54  7  than the evidence that might be necessary for injunctive

11:54  8  relief in other matters.

11:54  9          Regardless, Your Honor, I think that's a topic for

11:54  10  this further meet and confer, and we'll see if we can

11:54  11  resolve whatever the issues are.

11:54  12          THE COURT:  Okay.

11:54  13          MR. DAVIS:  We are happy to meet and confer.  I

11:54  14  always hate to leave a record unclear, so I do want to say

11:54  15  we have a different view of what injunctive relief we're

11:54  16  seeking, but we're happy to meet and confer.

11:54  17          THE COURT:  But you haven't met and conferred.

11:54  18          MR. DAVIS:  Maybe we'll arrive at an agreement.

11:54  19          THE COURT:  Okay.  Anything further for today?

11:54  20          MS. KRAFT:  No, Your Honor.

11:54  21          MR. DAVIS:  No, Your Honor.  Thank you.

11:54  22          THE COURT:  See you on August 5.  If there's a

11:54  23  need to get together via telephone or Zoom in advance of

11:54  24  that, just contact Ms. Vargas.

11:54  25          MS. KRAFT:  Your Honor, what time?

18

| | | |
|---|---|---|
| 11:54 | **1** | THE COURT:  11:00. |
| 11:55 | **2** | MS. KRAFT:  Thank you, Your Honor. |
| 11:55 | **3** | THE COURT:  Okay.  Thank you. |
| 11:55 | **4** | MR. DAVIS:  Thank you, Your Honor. |
| 11:55 | **5** | (Whereupon, the proceedings were concluded.) |
| 11:55 | **6** | *    *    * |
| 11:55 | **7** | |
| 11:55 | **8** | |
| 11:55 | **9** | |
| 11:55 | **10** | |
| 11:55 | **11** | |
| 11:55 | **12** | |
| 11:55 | **13** | |
| 11:55 | **14** | |
| 11:55 | **15** | |
| 11:55 | **16** | |
| 11:55 | **17** | |
| 11:55 | **18** | |
| 11:55 | **19** | |
| 11:55 | **20** | |
| 11:55 | **21** | |
| 11:55 | **22** | |
| 11:55 | **23** | |
| 11:55 | **24** | |
| 11:55 | **25** | |

19

```
11:55    1
11:55    2
11:55    3
11:55    4                    CERTIFICATE
11:55    5
11:55    6         I hereby certify that pursuant to Section 753,
11:55    7    Title 28, United States Code, the foregoing is a true and
11:55    8    correct transcript of the stenographically reported
11:55    9    proceedings held in the above-entitled matter and that the
11:55   10    transcript page format is in conformance with the
11:55   11    regulations of the Judicial Conference of the United States.
11:55   12
11:55   13    Date:  June 14, 2024
11:55   14
11:55   15
11:55                          /s/   Sharon A. Seffens  6/14/24
11:55   16                     _____
11:55                          SHARON A. SEFFENS, U.S. COURT REPORTER
11:55   17
11:55   18
11:55   19
11:55   20
        21
        22
        23
        24
        25
```

EXHIBIT 3

| From: | Lobb, Sean |
|---|---|
| To: | Jeffrey Berhold |
| Cc: | "Joshua P. Davis"; "Kyla Gibboney"; "Julie A. Pollock"; "Matthew Summers"; "Panteha Abdollahi"; Northrup, Lisa; Kraft, Karla; "Robinson, Matthew"; "Forrest, Katherine B" |
| Subject: | Re: Innovative v. Biosense - Updated Datasets |
| Date: | Friday, May 3, 2024 12:32:47 PM |

Dear Jeff,

Thank you for putting together the chart.  We can agree to most of the deadlines that Plaintiff proposes.  However, we do not agree to the deadlines for supplemental discovery responses, supplemental expert reports, or expert depositions because: (1) the Court's order from Monday afternoon for briefing on the issue of expert theories makes it clear that the Court is currently considering whether supplemental expert reports should even be permitted in the first place and (2) the supplemental discovery is not relevant or necessary because the only relevant time period is the 2014 to 2016 period before the policy change so new sales data, for instance, is wholly irrelevant.  After the briefing is submitted to the Court next week, if the Court allows Plaintiff to offer new expert theories, then we can revisit the deadlines relating to supplemental discovery at that point.

We also agree that both parties are entitled to file new motions in limine and withdraw our prior motions in limine, other than the Daubert motion.  But Defendant reserves the right to withdraw our Daubert motion and file a new Daubert motion if the Court ultimately allows for supplemental discovery.  Additionally, if the Court allows supplemental discovery, then we reserve our right to seek updated information from Plaintiff.  And if Plaintiff seeks to amend its expert reports, Defendant will need to see the amended report before we can agree to a timeframe to respond.

Lastly, we are available for a call today or Monday, but we believe that this meet and confer can be readily resolved via email.  If you can please send us the draft joint report today, then we can input any revisions in track changes. Thank you.


Sincerely,

Sean



**Sean Thomas Lobb**

Associate

stlobb@stradlinglaw.com


Stradling Yocca Carlson & Rauth

660 Newport Center Drive, Suite 1600

Newport Beach, CA 92660

**D:** 949 725 4079

[stradlinglaw.com](stradlinglaw.com) | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it
is addressed, and may contain information that is privileged, confidential and
exempt from disclosure under applicable law.  If the reader of this message is
not the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited.  If you have
received this communication in error, please notify us immediately. Thank
you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, May 2, 2024 4:28 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Clarification: the dates for depositions are the last days for taking depositions.

| | | |
|---|---|---|
| Supplemental Discovery Responses | | 5/10/2024 |
| Forister Supplemental Report | | 5/31/2024 |
| Wu Supplemental Report | | 6/14/2024 |
| Forister Supplemental Reply Report | | 6/21/2024 |
| Last Day to Conduct Expert Depositions | | 7/2/2024 |
| Last Day to Conduct Deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit Lists). | 21 days | 7/30/2024 |
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |

| | | |
|---|---|---|
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

---

**From:** Jeffrey Berhold
**Sent:** Thursday, May 2, 2024 7:21 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Karla:

What is your availability tomorrow to meet and confer on the case management dates due on Monday?

Below are our proposed dates.

Thanks!

Jeff

| | | |
|---|---|---|
| Supplemental Discovery Responses | | 5/10/2024 |
| Forister Supplemental Report | | 5/31/2024 |
| Wu Supplemental Report | | 6/14/2024 |
| Forister Supplemental Reply Report | | 6/21/2024 |
| Expert Depositions | | 7/2/2024 |
| Conduct deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |

| | | |
|---|---|---|
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit Lists). | 21 days | 7/30/2024 |
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 2:11 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

I am traveling and will let Karla take the lead on that.

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3195 (Direct Phone) | +1 212 492 0195 (Direct Fax) | +1 917 828 4061 (Cell)
kforrest@paulweiss.com | www.paulweiss.com

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Wednesday, May 1, 2024 10:25 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>

**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Katherine:

Yes, the parties should talk soon about the remaining dates to submit to the Court on Monday.  Who
will be participating for Biosense?  And what is your side's availability tomorrow?

Thanks!

Jeff

Jeffrey L. Berhold, P.C.
1230 Peachtree St., Suite 1050
Atlanta, GA 30309

404-872-3800

---

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 12:49:03 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson,
Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner,
Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff — Karla will take the laboring oar on these but can you let us know whether you plan to have
your expert review any materials we might produce and use them in a supplemental report of some
kind? Or is that not the plan?

Thanks,

Katherine

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
212 373 3195 (Direct Phone) | 212 492 0195 (Direct Fax) | 917 828 4061 (Cell)
kforrest@paulweiss.com | www.paulweiss.com

**From:** Jeffrey Berhold <jeff@berhold.com>
**Date:** Wednesday, May 01, 2024 at 9:11 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>, 'Kraft, Karla' <KKraft@stradlinglaw.com>, Robinson, Matthew <mrobinson@paulweiss.com>, 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>, 'Reiner, Lila' <LReiner@stradlinglaw.com>, 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>, 'Kyla Gibboney' <kgibboney@bm.net>, 'Julie A. Pollock' <jpollock@bm.net>, 'Matthew Summers' <msummers@bm.net>, 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Following up my email on 4/23 and our conversation on 4/29, Innovative will be producing its transaction data for Q2 2021 to Q1 2024 (i.e., three additional years) and complaint data for 2021, 2022, and 2023 (three additional years) in the same format as prior productions on Friday.

Innovative has identified the following datasets from Biosense in need of similar updates:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00704867: Transaction Data (Request No. 3 and 51) through Q1 2024
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00722083: Complaint Data (Request No. 65) through 2023
BWI-INN00545226: System Placement (Request No. 52) through Q1 2024
BWI-INN00000025: Case Logs (Request Nos. 4 and 48) through Q1 2024
BWI-INN00047408: Patch Sales and Market Shares (Request Nos. 15 and 50) through Q1 2024
BWI-INN00722085: Clarivate Estimates (used by Dr. Wu) through Q1 2024

Biosense also needs to produce any new estimates or calculations of your market share for mapping procedures, patch sales, clinical support, or ultrasound or mapping catheters (Request No. 15).

Biosense also needs to produce any new iterations of the Position Statement on Clinical Account Specialist Case Support of Reprocessed Single Use Devices (SUD) created by Biosense (Request Nos. 19 and 20). For example, Biosense expanded its case coverage policy to include the Vizigo steerable sheath on June 8, 2022.

Thanks!

Jeff

---

**From:** Jeffrey Berhold

**Sent:** Tuesday, April 23, 2024 11:08 AM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>;
'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>;
Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** Joshua P. Davis <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Innovative requests that Biosense update its spreadsheets for transaction data and complaint
data through First Quarter 2024.  Innovative is doing the same.

During discovery in 2021, Biosense produced the spreadsheets covering data typically through
First Quarter 2021.  The additional three years or more of data is material to various issues,
including lost profits and injunctive relief.

I am listing the spreadsheets by production number and citing the document request below:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49)
BWI-INN00704867: Transaction Data (Request No. 3 and 51)
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49)
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49)
BWI-INN00722083: Complaint Data (Request No. 65)
BWI-INN00545226: System Placement (Request No. 52)

In addition, Innovative asks Biosense to produce any new Position Statement on Clinical
Account Specialist Case Support of Reprocessed Single Use Devices (SUD) in response to
Request Nos. 19 and 20.  For example, Biosense expanded its case coverage policy to include
the Vizigo steerable sheath (which is not a navigational device) on June 8, 2022 after Innovative
became the first third party to receive clearance to reprocess the Vizigo on March 10, 2022.

Also, Innovative asks Biosense to produce any new estimates or calculations of your market
share for mapping procedures, clinical support, or ultrasound catheters.  (Request No. 15.)

Finally, Innovative asks Biosense to produce new information received by Biosense regarding
sales or market shares for patches or ultrasound catheters from the U.S. EP Consortium
Project.  (Request No. 50.)

Please provide availability on your side to meet and confer on Wednesday and Thursday to
discuss these requests if you have any questions or concerns.

Thanks!

Jeff

Jeffrey L. Berhold, P.C.

1230 Peachtree St., Suite 1050

Atlanta, GA 30309

404.872.3800

www.berhold.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

EXHIBIT 4

| | |
|---|---|
| **From:** | Jeffrey Berhold |
| **To:** | "Lobb, Sean" |
| **Cc:** | "Joshua P. Davis"; "Kyla Gibboney"; Northrup, Lisa; "Julie A. Pollock"; "Matthew Summers"; "Panteha Abdollahi"; Kraft, Karla; "Robinson, Matthew"; "Forrest, Katherine B"; Northrup, Lisa |
| **Subject:** | RE: Innovative v. Biosense - Updated Datasets |
| **Date:** | Monday, July 15, 2024 3:44:37 PM |
| **Attachments:** | image001.png |
| | image002.png |

Sean:

Thanks for the information. We asked to meet and confer before the production to discuss what would be provided in the production. It was the practice in this case with prior counsel from Cravath. Since Biosense declined our request on June 17, Innovative appreciates the opportunity to finally meet and confer this afternoon on our more recent request on July 1 to discuss the various deficiencies in the Biosense supplemental production of nationwide transaction data.

While Innovative intends to file its motion for a permanent injunction <u>after</u> the verdict, *see*, *e.g.*, *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, No. C 87-1686 AWT, 1996 WL 101173, at *1 (N.D. Cal. Feb. 28, 1996), I can tell you in advance of our call that Innovative understands that injunctive relief is predicated on the "*threatened* loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (emphasis added). *Kodak* offers some examples of relief sought and obtained by permanent injunction in cases like this one. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1226-29 (9th Cir. 1997).

I will look back at the email from June 26 regarding your recent requests for supplemental production from Innovative.

Thanks.

Jeff.

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Friday, July 12, 2024 8:07 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

While we are unaware of any prior request from Innovative asking that Biosense specifically describe/explain the contents of its production in response to Innovative's requests (which Biosense is under no affirmative obligation to do particularly in the absence of any specific inquiry from Innovative), we will do so now in the interest of moving the meet and confer process forward.

Biosense's June 26th production consisted of the updated spreadsheets and documents that Innovative requested, consistent with Biosense's obligations under Federal Rule of Civil Procedure 26(e) and the Court's decisive ruling that there will be "no new theories", "no plugging through experts of previously identified holes or deficiencies in the expert reports," and "no reopening of discovery" in this case  (June 14, 2024 Hearing Transcript at 4).

Accordingly, Biosense's June 26 production included spreadsheets containing market share and complaint/safety data as well as other spreadsheets that contained data specifically about the 142 devices at issue in this case.
Biosense produced the spreadsheets in their native format and is not aware of the removal of any metadata prior to production.  Please specify what metadata, if any, Plaintiff contends is missing.

Regarding Innovative's contentions about the "recent precedent of *Epic Games*," as we have discussed previously *Epic Games* changed nothing as it relates to this case and Judge Selna has agreed.  *Epic Games* did not involve a change in Ninth Circuit law or clarify any ambiguous law.  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Circ. 2023).

In *Epic Games*, the propositions of antitrust law supporting the decision rely on and follow existing Supreme Court and Ninth Circuit precedent.  *Epic Games* did not change the legal landscape or clarify any open issues of law; it merely restated already existing law.  Moreover, the *Epic Games* decision was already existing law at the time that Innovative argued this case before the Ninth Circuit.

Here, the Court has allowed for limited supplemental discovery under Rule 26(e), and Biosense's June 26 production complies with what the Court has permitted.

Lastly, Innovative has still not responded to our below June 26th request:  please identify the specific injunctive relief Innovative seeks, identify with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to the injunctive relief Innovative seeks, and explain the relevance of the identified information to that injunctive relief.  Nor has Innovative responded to our attached questions from June 26 regarding Innovative's supplemental production.  Please respond accordingly.

We look forward to speaking with you on Monday.

Sincerely,
Sean



**Sean Thomas Lobb**

Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, July 11, 2024 10:42 AM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

In order for us to have a productive meet and confer and consider any alleged shortcomings in the production to have an informed conversation on Monday, can Biosense finally say what exactly was produced on June 26 because the new spreadsheets have carved out most customers and most catheters from Biosense's nationwide transaction data?

When Innovative inquired on June 17 ahead of the production, Biosense declined to say what it would be producing and declined to discuss whether its intended production would meet the requirements of Rule 26(e).  When Biosense did produce the data on June 26, Biosense did not provide any description of the data being produced.  Nor did Biosense provide load files with the required metadata under the ESI protocol filed with the Court.

As I mentioned in my email on June 17, Innovative did not narrow its case to any submarket at summary judgment: "To be clear, Innovative is not talking about a submarket of customers without another cardiac mapping system or a submarket of customers that have already bought a CARTO 3."  Transcript at 5.  "Innovative has offered evidence that customers did not shift away from the CARTO 3 in response to higher prices associated with the case coverage policy. CARTO procedure share has been flat. Those are the facts."  Opposition to Summary Judgment at 23

Nor did the Ninth Circuit limit the case on remand: "Because we conclude that Innovative has produced evidence of a single brand aftermarket and so raised a triable issue regarding market definition, we do not address its argument that it produced sufficient direct evidence of Biosense's market power such that it need not define a market."

Furthermore, Judge Selna has certainly not entered such an order on remand.  It would be contrary to the law of the case, along with the recent precedent in *Epic Games* and subsequent cases like *Lambrix v. Tesla*, which provide for the plaintiff to offer direct and/or indirect evidence of market power in the foremarket or direct evidence of market power in the aftermarket in lieu of proving Kodak-style single-brand aftermarkets.

Therefore, the additional three years of nationwide transaction data is material to the claims for damages and injunctive relief. That would allow the experts to assess unit volumes, sales prices, and market shares for the years between discovery and trial. That would be useful in proving the amount of Innovative's lost profits, the anticompetitive effects of Biosense's conduct on the market, and Biosense's continuing market power, as well as that Innovative's lost profits flow from Biosense's exercise of market power in violation of antitrust law.

Both experts used the nationwide transaction data to calculate the size of each relevant catheter market and project nationwide sales for Innovative in the relevant markets but for violations of the antitrust law based on nationwide sales of yardstick or benchmark catheters. They also used the nationwide transaction data to analyze market power in the cardiac mapping system market, the clinical support market, and the catheter markets.

The additional transaction data is material to injunctive relief under the Clayton Act.  The injunctive relief is based on the threat of future harm: "[A] private plaintiff must allege threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."  Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 113 (1986).  While the experts have eight years of data (January 1, 2013 to March 31, 2020), it would be preferable also to have recent data to analyze the threat of future harm.

Thanks.

Jeff

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Wednesday, July 10, 2024 1:05 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean
<stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you for sending the Zoom invite for Monday.  As Biosense understands its production of
documents complies with what the Court explained it is requiring as supplemental fact discovery, we
have been waiting for your responses to the questions raised below in my June 26 email to move the
meet and confer process forward.  In order for us to have a productive meet and confer and
consider any alleged shortcomings in the production to have an informed conversation on Monday,
please respond to our questions in advance of the meet and confer.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Monday, July 8, 2024 7:26 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Following up below regarding the questions raised to facilitate a productive meet and confer.  Please provide a response, and then we are available to meet and confer on Monday, July 15 at 10:30 a.m. Pacific/1:30 p.m. Eastern or 1:00 p.m. Pacific/4:00 p.m. Eastern.  Please let us know if either of those times work for you, and we will circulate a dial-in.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa

**Sent:** Friday, June 28, 2024 11:56 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We saw your email sent yesterday regrading receipt of Biosense's production of documents and that Dr. Forister is presently out of town.  We are not trying to rush your review or Dr. Forister's review of the documents.  If after having a chance to review the production, if you still believe a meet and confer is necessary, if you would then please let us know we can schedule a call. And in advance of a call, we believe it would be more efficient and productive if you would please respond to the questions below so we can be prepared to discussed during the meet and confer.

We are additionally in receipt today of the password for Innovative's recent production of documents, and will let you know if we have any questions following our review.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is

privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Wednesday, June 26, 2024 5:45 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

During the conference on June 14, 2024, this Court explained:  "I believe it's appropriate to update any information that goes to damages. That would include supplemental information. It would allow for a further extension of the period of damages to be commensurate with the trial date. There may be certain facts such as transactions that underlie the damage calculation, but beyond that, I'm not going to require further supplementation of any substantive facts going to the claims. The record is the record."  (Tr.4:13-21.)

Biosense's production of documents today complies with what the Court explained it is requiring as supplemental fact discovery.  Below, in your email dated June 17, Innovative essentially restates the position it took during the conference.  While Biosense disagrees, to effectively move forward in meeting and conferring on this issue rather than focus only on what theories Innovative believes it is entitled to pursue, please provide an explanation in advance of any meet and confer identifying with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to Innovative's damages calculation and explain the relevance.

Further, Innovative asserts below that "the updated data is necessary for evaluating the need for injunctive relief."  Please likewise identify with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to injunctive relief Innovative seeks, identify the injunctive relief Innovative seeks, and explain the relevance of the identified information to the injunctive relief Innovative seeks.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Wednesday, June 26, 2024 5:22 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Please see the below link and password for Defendant's supplemental production of documents.

Link: https://filecloud.sycr.com/url/ptkieteq2xaqwvsk
Password: 106rffk6jg067

Please let us know if you are available sometime this Friday before 10am Pacific Time or between 12:30pm to 2pm Pacific Time to meet and confer regarding the supplemental production.  Thank you.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Monday, June 17, 2024 6:53 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean
<stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We think a meet and confer will be more productive and that it makes sense to do so after you have
Biosense's produced documents in hand.  We intend to produce early next week.

Biosense reserves all objections.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660

**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Monday, June 17, 2024 5:03 PM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

What is your availability this week to meet and confer regarding Biosense's supplemental production?  It has been more than a month since Biosense began the process of collecting data.  Biosense has never confirmed which datasets are being updated.

Moreover, the updated data should not be limited to mapping systems purchased before April 1, 2016 or catheters purportedly sold for use specifically on systems purchased before April 1, 2016.  Innovative has never limited its case to *Kodak*-style single-brand aftermarkets: "To be clear, Innovative is not talking about a submarket of customers without another cardiac mapping system *or a submarket of customers that have already bought a CARTO 3*. This is *not Newcal for the boundaries of the market to depend on a contractually created group of consumers*. Innovative is talking about hospitals with or without other systems.  That's discussed at pages 23 and 24."  Summary Judgment Oral Argument Transcript at 5:22-6:3.

At those pages in the opposition brief referenced at oral argument on summary judgment, Innovative pointed to the direct evidence of market power: "Market power requires an examination of the economic reality of the market at issue for the responsiveness of the sales of one product to price changes of the other.  Here, Innovative has offered evidence that customers did not shift purchases of catheters in response to higher prices from the case

coverage policy or lower prices from reprocessed catheter clearance. And Innovative has offered evidence that customers did not shift away from the CARTO 3 in response to higher prices associated with the case coverage policy. CARTO procedure share has been flat. Those are the facts." Opposition Brief at 23 (citations and quotation marks omitted).

On appeal, the Ninth Circuit reversed and remanded the grant of summary judgment for Biosense and made clear that Innovative could continue to make its case without *Kodak*-style aftermarkets: "we do not address its argument that it produced sufficient direct evidence of Biosense's market power such that it need not define a market."

In any event, the catheters are not sold to a hospital for use on a specific machine. Many hospitals have systems purchased before and systems purchased after April 1, 2016. Furthermore, most systems were installed at hospitals before the change in policy. Forister Rep. ¶ 71. Biosense started to sell the CARTO 3 in October 2009 and had installed more than 1,000 systems by April 1, 2016. *E.g.*, BWI-INN00545226.

In addition, the updated data is necessary for evaluating the need for injunctive relief.

Thanks.

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Saturday, May 18, 2024 10:34 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you for the meet and confer yesterday. As we made clear, Biosense maintains its objection that Innovative's additional discovery requests exceed the scope of what is called for under Federal Rule of Civil Procedure 26(e)(1)(A). Nevertheless, Biosense has started a diligent document collection process in good faith so that in the event that the Court requires Biosense to produce any documents or additional discovery beyond what is ordinarily required by Rule 26(e)(1)(A) in response to the parties briefing on the issue, that production can be made available to Innovative in as timely manner as possible.

If the Court does permit additional discovery, however, Biosense continues to preserve all objections and reserve all rights as to Innovative' s discovery requests. As explained at length in yesterday's

meet and confer, these include Biosense's objections on the grounds of relevance and undue burden. Subject to Biosense's objections expressed herein and as generally preserved, and contingent upon any future Court order clarifying the scope of Biosense's obligations to respond to the additional requests, should the Court require, we discussed the possibility during the meet and confer that Biosense is amenable to producing the following:

- As to the requests to update transaction data in BWI-INN00510476, BWI-INN00704867, BWI-INN00706180, BWI-INN00710526 and the case logs re BWI-INN00000025, we discussed Biosense producing updated information specific to the 142 CARTO 3 purchases that took place prior to the adoption of the case coverage policy in April 2016.  Any information regarding subsequent purchases related to the purchase of CARTO 3 subsequent to this period is not relevant as made clear by the Ninth Circuit's opinion.  *See Innovative Health, LLC v. Biosense Webster, Inc.*, No. 22-55413, 2024 U.S. App. LEXIS 308, at *6 (9th Cir. Jan. 5, 2024) ("The district court correctly concluded that customers who purchased the CARTO 3 after Biosense's tying policy formally took effect in April 2016 cannot serve as evidence of Biosense's market power.")
- A general update to BWI-INN00722083 regarding complaint data as requested
- More recent documents related to market share (to the extent any such documents exist)
- Any updates to the clinical support policy as to the at-issue catheters (to the extent any such documents exist)

Biosense did not offer to produce any update to BWI-INN00545226 regarding system placement including on the grounds that any more recent purchases of CARTO 3 systems are not relevant. Biosense now understands based on Innovative's clarification during the meet and confer that Innovative seeks an update regarding whether the CARTO 3 Systems already identified in the spreadsheet are still in use.  Biosense is considering whether it may be agreeable to providing such information and is investigating whether such information is available.

Biosense additionally explained it is not able to update BWI-INN00722085 described as "Clarivate Estimates" in part because of Biosense's understanding that this information was prepared by a third party and is based on information collected from third parties.

Lastly on the issue of the case schedule, as discussed during the meet and confer, Biosense is not attempting to "jam" Innovative, but does view the timing of the production of documents (if any) as inextricably linked to the deadlines in the remainder of the schedule and believes it would be best to aim to provide the Court with a single stipulation rather than knowingly presenting the Court with a stipulation that will require a further stipulation.  To address Innovative's concerns about its upcoming deadline, Biosense will agree not to take any adverse action or otherwise attempt to hold Innovative to the May 31, 2024 Forister Supplemental Report deadline as set forth in the Court's order (*see* Dkt. 218.).  Biosense will further agree to file a joint stipulation prior to or on May 31, 2024 to generally extend deadlines, and agrees that in the stipulation the deadline for the Forister Supplemental Report may be extended for seven (7) days following the material completion of any

production of documents Biosense may make.  If the parties cannot reach agreement as to any of the deadlines in negotiating the stipulation, the parties may each set forth their separate positions in the stipulation.   Please let us know if this approach to the schedule is agreeable to Innovative.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Thursday, May 16, 2024 9:32 AM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you, we will plan on discussing tomorrow (May 17) at noon Pacific/3 pm Eastern.

Best,
Lisa



## Lisa M. Northrup
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, May 16, 2024 8:01 AM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets


Lisa:

Innovative has been available since April 23. We offered to talk in person after the status
conference on April 29.

We were available to talk on Monday and Tuesday.  We were available yesterday.  We are
available today and tomorrow.

I will send an invite with zoom link for  Friday at 12 noon PT (3 pm ET).

Thanks!

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Wednesday, May 15, 2024 6:51 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We remain available to meet and confer as proposed on this Friday after 12 p.m. Pacific/3 p.m. Eastern and will be prepared to discuss the topics proposed below including whether any changes will be required to the current schedule.  We are unable to meet and confer earlier both due to pre-existing conflicts and the time required to assess how long it will take to collect the information that would be responsive to Innovative's substantive requests.  Our aim is to have an informed and productive meet and confer including discussing realistic deadlines for Biosense's production of documents.  Biosense is diligently working on responding to the requests in the interim, and undertaking this work is relevant to having a fruitful meet and confer.  To be clear, Biosense is not delaying any efforts in responding until the meet and confer, but rather has been and will continue moving forward as quickly as possible with its efforts.

Please let us know what time works for you on Friday.

Biosense continues to preserve all objections and reserve all rights.  This includes, but is not limited to Biosense's objections as to whether Biosense should be, or is required to produce any of the requested documents.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660

**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Wednesday, May 15, 2024 12:00 PM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

Thanks, the parties are going to need to talk today.  Innovative is available at 12:30, 1:00, or 2:30 PT or later.  There is no justification for the failure to produce on May 14.  The mandate issued on March 12.  Innovative affirmatively notified Biosense of the need to supplement specific datasets on April 23.  I have attached a proposed stipulation to discuss on the call.

What time is someone available for Biosense?

Thanks!

Jeff

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Tuesday, May 14, 2024 8:50 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Biosense continues to preserve all objections and reserve all rights.  This includes, but is not limited to Biosense's objections as to whether Biosense should be, or is required to produce any of the requested documents.

Biosense is endeavoring to quickly determine what information is available to respond to the requests, including reaching out to its discovery vendor and prior custodians in light of the fact that discovery has been dormant for more than two years, but given the substance and the volume of information requested, Biosense despite its diligent efforts has not yet been able to determine a realistic timeline for production, but continues to undertake all efforts to do so.  As part of these efforts and examining the information requested, we think it would be helpful to meet and confer regarding three topics:  (i) the scope of Innovative's requests; (ii) a potential timeline for Biosense's production of documents; and (iii) the impact to the current expert discovery and pretrial deadlines based on Biosense's anticipated timing for producing documents.

Please let us know if you are available to discuss on Friday, May 17 after 12 p.m. Pacific/3 p.m. Eastern by which point we anticipate having further information for a hopefully productive discussion.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this

communication in error, please notify us immediately. Thank you.

---

**From:** Northrup, Lisa
**Sent:** Monday, May 13, 2024 4:49 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Biosense continues to preserve all objections and reserve all rights.  This includes, but is not limited
to Biosense's objections as to whether Biosense should be, or is required to produce any of the
requested documents.

Nevertheless, Biosense is engaging in diligent efforts to determine how rapidly it may provide the
requested documents.  We do not yet have a timeline, but are working hard on determining one.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
**D:** 949 725 4011




stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this

communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Monday, May 13, 2024 8:33 AM
**To:** Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Thanks for the update on Friday.  Please provide a timeline for production by 5:00 p.m. PT today so Innovative can plan accordingly.

Thanks!

Jeff

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Friday, May 10, 2024 9:41 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

As an initial matter, Defendant does not agree that the below referenced information should be produced, and Defendant reserves all rights and objections.

However, Defendant is working to determine a timeline for production.  We do not believe it is possible to produce the information by Tuesday.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Friday, May 10, 2024 5:05 PM
**To:** Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla
<KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine
B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Please confirm that Biosense will be updating the following datasets by the court deadline of
May 14:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00704867: Transaction Data (Request No. 3 and 51) through Q1 2024
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00722083: Complaint Data (Request No. 65) through 2023
BWI-INN00545226: System Placement (Request No. 52) through Q1 2024
BWI-INN00000025: Case Logs (Request Nos. 4 and 48) through Q1 2024
BWI-INN00047408: Patch Sales and Market Shares (Request Nos. 15 and 50) through Q1 2024
BWI-INN00722085: Clarivate Estimates (used by Dr. Wu) through Q1 2024

Thanks!

Jeff

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Friday, May 3, 2024 12:32 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Thank you for putting together the chart.  We can agree to most of the deadlines that Plaintiff proposes.  However, we do not agree to the deadlines for supplemental discovery responses, supplemental expert reports, or expert depositions because: (1) the Court's order from Monday afternoon for briefing on the issue of expert theories makes it clear that the Court is currently considering whether supplemental expert reports should even be permitted in the first place and (2) the supplemental discovery is not relevant or necessary because the only relevant time period is the 2014 to 2016 period before the policy change so new sales data, for instance, is wholly irrelevant.  After the briefing is submitted to the Court next week, if the Court allows Plaintiff to offer new expert theories, then we can revisit the deadlines relating to supplemental discovery at that point.

We also agree that both parties are entitled to file new motions in limine and withdraw our prior motions in limine, other than the Daubert motion.  But Defendant reserves the right to withdraw our Daubert motion and file a new Daubert motion if the Court ultimately allows for supplemental discovery.  Additionally, if the Court allows supplemental discovery, then we reserve our right to seek updated information from Plaintiff.  And if Plaintiff seeks to amend its expert reports, Defendant will need to see the amended report before we can agree to a timeframe to respond.

Lastly, we are available for a call today or Monday, but we believe that this meet and confer can be readily resolved via email.  If you can please send us the draft joint report today, then we can input any revisions in track changes. Thank you.

Sincerely,
Sean

**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it
is addressed, and may contain information that is privileged, confidential and
exempt from disclosure under applicable law.  If the reader of this message is
not the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited.  If you have
received this communication in error, please notify us immediately. Thank
you.

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, May 2, 2024 4:28 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets


Clarification: the dates for depositions are the last days for taking depositions.

| | | |
|---|---|---|
| Supplemental Discovery Responses | | 5/10/2024 |
| Forister Supplemental Report | | 5/31/2024 |
| Wu Supplemental Report | | 6/14/2024 |
| Forister Supplemental Reply Report | | 6/21/2024 |
| Last Day to Conduct Expert Depositions | | 7/2/2024 |
| Last Day to Conduct Deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit | 21 days | 7/30/2024 |

Lists).

| | | |
|---|---|---|
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

**From:** Jeffrey Berhold
**Sent:** Thursday, May 2, 2024 7:21 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>;
Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>;
'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Karla:

What is your availability tomorrow to meet and confer on the case management dates due on
Monday?

Below are our proposed dates.

Thanks!

Jeff

| | |
|---|---|
| Supplemental Discovery Responses | 5/10/2024 |
| Forister Supplemental Report | 5/31/2024 |
| Wu Supplemental Report | 6/14/2024 |

| | | |
|---|---|---|
| Forister Supplemental Reply Report | | 6/21/2024 |
| Expert Depositions | | 7/2/2024 |
| Conduct deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit Lists). | 21 days | 7/30/2024 |
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 2:11 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

I am traveling and will let Karla take the lead on that.

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3195 (Direct Phone) | +1 212 492 0195 (Direct Fax) | +1 917 828 4061 (Cell)

kforrest@paulweiss.com | www.paulweiss.com

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Wednesday, May 1, 2024 10:25 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>;
Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>;
'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Katherine:

Yes, the parties should talk soon about the remaining dates to submit to the Court on Monday.  Who
will be participating for Biosense?  And what is your side's availability tomorrow?

Thanks!

Jeff

Jeffrey L. Berhold, P.C.
1230 Peachtree St., Suite 1050
Atlanta, GA 30309

404-872-3800

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 12:49:03 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson,
Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner,
Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff — Karla will take the laboring oar on these but can you let us know whether you plan to have
your expert review any materials we might produce and use them in a supplemental report of some
kind? Or is that not the plan?

Thanks,

Katherine

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
212 373 3195 (Direct Phone) | 212 492 0195 (Direct Fax) | 917 828 4061 (Cell)
kforrest@paulweiss.com | www.paulweiss.com

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Date:** Wednesday, May 01, 2024 at 9:11 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>, 'Kraft, Karla' <KKraft@stradlinglaw.com>, Robinson, Matthew <mrobinson@paulweiss.com>, 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>, 'Reiner, Lila' <LReiner@stradlinglaw.com>, 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>, 'Kyla Gibboney' <kgibboney@bm.net>, 'Julie A. Pollock' <jpollock@bm.net>, 'Matthew Summers' <msummers@bm.net>, 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Following up my email on 4/23 and our conversation on 4/29, Innovative will be producing its transaction data for Q2 2021 to Q1 2024 (i.e., three additional years) and complaint data for 2021, 2022, and 2023 (three additional years) in the same format as prior productions on Friday.

Innovative has identified the following datasets from Biosense in need of similar updates:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00704867: Transaction Data (Request No. 3 and 51) through Q1 2024
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00722083: Complaint Data (Request No. 65) through 2023
BWI-INN00545226: System Placement (Request No. 52) through Q1 2024
BWI-INN00000025: Case Logs (Request Nos. 4 and 48) through Q1 2024
BWI-INN00047408: Patch Sales and Market Shares (Request Nos. 15 and 50) through Q1 2024
BWI-INN00722085: Clarivate Estimates (used by Dr. Wu) through Q1 2024

Biosense also needs to produce any new estimates or calculations of your market share for mapping procedures, patch sales, clinical support, or ultrasound or mapping catheters (Request No. 15).

Biosense also needs to produce any new iterations of the Position Statement on Clinical Account Specialist Case Support of Reprocessed Single Use Devices (SUD) created by Biosense (Request Nos. 19 and 20).  For example, Biosense expanded its case coverage policy

to include the Vizigo steerable sheath on June 8, 2022.

Thanks!

Jeff

---

**From:** Jeffrey Berhold
**Sent:** Tuesday, April 23, 2024 11:08 AM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>;
'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>;
Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** Joshua P. Davis <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Innovative requests that Biosense update its spreadsheets for transaction data and complaint
data through First Quarter 2024.  Innovative is doing the same.

During discovery in 2021, Biosense produced the spreadsheets covering data typically through
First Quarter 2021.  The additional three years or more of data is material to various issues,
including lost profits and injunctive relief.

I am listing the spreadsheets by production number and citing the document request below:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49)
BWI-INN00704867: Transaction Data (Request No. 3 and 51)
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49)
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49)
BWI-INN00722083: Complaint Data (Request No. 65)
BWI-INN00545226: System Placement (Request No. 52)

In addition, Innovative asks Biosense to produce any new Position Statement on Clinical
Account Specialist Case Support of Reprocessed Single Use Devices (SUD) in response to
Request Nos. 19 and 20.  For example, Biosense expanded its case coverage policy to include
the Vizigo steerable sheath (which is not a navigational device) on June 8, 2022 after Innovative
became the first third party to receive clearance to reprocess the Vizigo on March 10, 2022.

Also, Innovative asks Biosense to produce any new estimates or calculations of your market
share for mapping procedures, clinical support, or ultrasound catheters.  (Request No. 15.)

Finally, Innovative asks Biosense to produce new information received by Biosense regarding sales or market shares for patches or ultrasound catheters from the U.S. EP Consortium Project. (Request No. 50.)

Please provide availability on your side to meet and confer on Wednesday and Thursday to discuss these requests if you have any questions or concerns.

Thanks!

Jeff

Jeffrey L. Berhold, P.C.
1230 Peachtree St., Suite 1050
Atlanta, GA 30309
404.872.3800

www.berhold.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

EXHIBIT 5

| From: | Jeffrey Berhold |
|---|---|
| To: | "Lobb, Sean" |
| Cc: | "Joshua P. Davis"; "Kyla Gibboney"; Northrup, Lisa; "Julie A. Pollock"; "Matthew Summers"; "Panteha Abdollahi"; Kraft, Karla; "Robinson, Matthew"; "Forrest, Katherine B" |
| Subject: | RE: Innovative v. Biosense - Updated Datasets |
| Date: | Tuesday, July 16, 2024 6:21:11 PM |
| Attachments: | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

Sean:

Innovative flagged issues with the Biosense complaint data on our call yesterday. I asked whether the new data was domestic or worldwide. You said that you understood Biosense simply updated the old data through March 30, 2024. Upon further review, we see several possible discrepancies between the old complaint data and the new complaint data. The new data does not track the format of the old data. In addition, the new data does not have separate tabs for catheters from Biosense and catheters from Sterilmed. Even so, the number of complaints and the rate of complaints suggests the old data appears to be nationwide while the new data appears to be worldwide. For example, the datasets would indicate a total volume of roughly 85,892 Pentaray NAV ECO catheters in 2019 and a total volume of roughly 284,819 PENTARAY NAV ECO catheters in 2021.

Please let us know if and when Biosense will update the complaint data using the original format (including breakdown between new and reprocessed catheter) in the original scope (nationwide).

I will get back to you shortly regarding (1) proposed language for a stipulation on the issue of new transaction data and (2) your proposal regarding the time frame for complaint data.

Thanks.

Jeff

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Tuesday, July 16, 2024 9:25 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Thank you for your time during our meet and confer yesterday. During the call, we discussed the following:

1. Biosense proposed that both parties supplement their complaint data up until the end of the first quarter in 2024. Innovative disagreed and proposed that the parties update their complaint data at the beginning of 2025 with data up until the end of the fourth quarter of 2024. Biosense believes that updating the data on the eve of trial in 2025 would not make sense because any supplemental expert reports will be generated within the next few months. Innovative claimed that the data is required to be maintained by the FDA, and that it should be easy to quickly produce it, so please let us know if Innovative will agree to produce the updated data this month so that it can be potentially included in any supplemental expert reports.

2. As discussed and briefed previously, Biosense does not agree to the reopening of discovery and does not agree to Innovative issuing subpoenas to third parties at this late stage of the case.

3. Innovative proposed two stipulations related to the use of evidence at trial. Please send us the wording of your proposed stipulations, and we will consider them.

4. Regarding the catheters included in the transaction data spreadsheet, we are double checking on that, and we will follow up with you shortly.

5. Biosense agrees to reproduce its supplemental production in a load file format.

6. Biosense agrees to stipulate to moving the August 5th status conference to August 19th. Please send us your proposed draft stipulation.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach , CA  92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn



CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Monday, July 15, 2024 12:45 PM
**To:** Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Thanks for the information.  We asked to meet and confer before the production to discuss what would be provided in the production.  It was the practice in this case with prior counsel from Cravath.  Since Biosense declined our request on June 17, Innovative appreciates the opportunity to finally meet and confer this afternoon on our more recent request on July 1 to discuss the various deficiencies in the Biosense supplemental production of nationwide transaction data.

While Innovative intends to file its motion for a permanent injunction <u>after</u> the verdict, *see*, *e.g.*, *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, No. C 87-1686 AWT, 1996 WL 101173, at *1 (N.D. Cal. Feb. 28, 1996), I can tell you in advance of our call that Innovative understands that injunctive relief is predicated on the "*threatened* loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (emphasis added).  *Kodak* offers some examples of relief sought and obtained by permanent injunction in cases like this one.  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1226-29 (9th Cir. 1997).

I will look back at the email from June 26 regarding your recent requests for supplemental production from Innovative.

Thanks.

Jeff.

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Friday, July 12, 2024 8:07 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

While we are unaware of any prior request from Innovative asking that Biosense specifically describe/explain the contents of its production in response to Innovative's requests (which Biosense is under no affirmative obligation to do particularly in the absence of any specific inquiry from Innovative), we will do so now in the interest of moving the meet and confer process forward.

Biosense's June 26th production consisted of the updated spreadsheets and documents that Innovative requested, consistent with Biosense's obligations under Federal Rule of Civil Procedure 26(e) and the Court's decisive ruling that there will be "no new theories", "no plugging through experts of previously identified holes or deficiencies in the expert reports," and "no reopening of discovery" in this case  (June 14, 2024 Hearing Transcript at 4).

Accordingly, Biosense's June 26 production included spreadsheets containing market share and complaint/safety data as well as other spreadsheets that contained data specifically about the 142 devices at issue in this case.
Biosense produced the spreadsheets in their native format and is not aware of the removal of any metadata prior to production.  Please specify what metadata, if any, Plaintiff contends is missing.

Regarding Innovative's contentions about the "recent precedent of *Epic Games*," as we have discussed previously *Epic Games* changed nothing as it relates to this case and Judge Selna has agreed.  *Epic Games* did not involve a change in Ninth Circuit law or clarify any ambiguous law.  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Circ. 2023).

In *Epic Games*, the propositions of antitrust law supporting the decision rely on and follow existing Supreme Court and Ninth Circuit precedent.  *Epic Games* did not change the legal landscape or clarify any open issues of law; it merely restated already existing law.  Moreover, the *Epic Games* decision was already existing law at the time that Innovative argued this case before the Ninth Circuit.

Here, the Court has allowed for limited supplemental discovery under Rule 26(e), and Biosense's June 26 production complies with what the Court has permitted.

Lastly, Innovative has still not responded to our below June 26th request: please identify the specific injunctive relief Innovative seeks, identify with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to the injunctive relief Innovative seeks, and explain the relevance of the identified information to that injunctive relief. Nor has Innovative responded to our attached questions from June 26 regarding Innovative's supplemental production. Please respond accordingly.

We look forward to speaking with you on Monday.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, July 11, 2024 10:42 AM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean

<stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

In order for us to have a productive meet and confer and consider any alleged shortcomings in the production to have an informed conversation on Monday, can Biosense finally say what exactly was produced on June 26 because the new spreadsheets have carved out most customers and most catheters from Biosense's nationwide transaction data?

When Innovative inquired on June 17 ahead of the production, Biosense declined to say what it would be producing and declined to discuss whether its intended production would meet the requirements of Rule 26(e). When Biosense did produce the data on June 26, Biosense did not provide any description of the data being produced. Nor did Biosense provide load files with the required metadata under the ESI protocol filed with the Court.

As I mentioned in my email on June 17, Innovative did not narrow its case to any submarket at summary judgment: "To be clear, Innovative is not talking about a submarket of customers without another cardiac mapping system or a submarket of customers that have already bought a CARTO 3." Transcript at 5. "Innovative has offered evidence that customers did not shift away from the CARTO 3 in response to higher prices associated with the case coverage policy. CARTO procedure share has been flat. Those are the facts." Opposition to Summary Judgment at 23

Nor did the Ninth Circuit limit the case on remand: "Because we conclude that Innovative has produced evidence of a single brand aftermarket and so raised a triable issue regarding market definition, we do not address its argument that it produced sufficient direct evidence of Biosense's market power such that it need not define a market."

Furthermore, Judge Selna has certainly not entered such an order on remand. It would be contrary to the law of the case, along with the recent precedent in *Epic Games* and subsequent cases like *Lambrix v. Tesla*, which provide for the plaintiff to offer direct and/or indirect evidence of market power in the foremarket or direct evidence of market power in the aftermarket in lieu of proving Kodak-style single-brand aftermarkets.

Therefore, the additional three years of nationwide transaction data is material to the claims for damages and injunctive relief. That would allow the experts to assess unit volumes, sales prices, and market shares for the years between discovery and trial. That would be useful in proving the amount of Innovative's lost profits, the anticompetitive effects of Biosense's conduct on the market, and Biosense's continuing market power, as well as that Innovative's lost profits flow from Biosense's exercise of market power in violation of antitrust law.

Both experts used the nationwide transaction data to calculate the size of each relevant

catheter market and project nationwide sales for Innovative in the relevant markets but for violations of the antitrust law based on nationwide sales of yardstick or benchmark catheters. They also used the nationwide transaction data to analyze market power in the cardiac mapping system market, the clinical support market, and the catheter markets.

The additional transaction data is material to injunctive relief under the Clayton Act. The injunctive relief is based on the threat of future harm: "[A] private plaintiff must allege threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 113 (1986). While the experts have eight years of data (January 1, 2013 to March 31, 2020), it would be preferable also to have recent data to analyze the threat of future harm.

Thanks.

Jeff

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Wednesday, July 10, 2024 1:05 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you for sending the Zoom invite for Monday. As Biosense understands its production of documents complies with what the Court explained it is requiring as supplemental fact discovery, we have been waiting for your responses to the questions raised below in my June 26 email to move the meet and confer process forward. In order for us to have a productive meet and confer and consider any alleged shortcomings in the production to have an informed conversation on Monday, please respond to our questions in advance of the meet and confer.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers

Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Northrup, Lisa
**Sent:** Monday, July 8, 2024 7:26 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Following up below regarding the questions raised to facilitate a productive meet and confer.  Please provide a response, and then we are available to meet and confer on Monday, July 15 at 10:30 a.m. Pacific/1:30 p.m. Eastern or 1:00 p.m. Pacific/4:00 p.m. Eastern.  Please let us know if either of those times work for you, and we will circulate a dial-in.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP

660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Friday, June 28, 2024 11:56 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We saw your email sent yesterday regrading receipt of Biosense's production of documents and that Dr. Forister is presently out of town.  We are not trying to rush your review or Dr. Forister's review of the documents.  If after having a chance to review the production, if you still believe a meet and confer is necessary, if you would then please let us know we can schedule a call. And in advance of a call, we believe it would be more efficient and productive if you would please respond to the questions below so we can be prepared to discussed during the meet and confer.

We are additionally in receipt today of the password for Innovative's recent production of documents, and will let you know if we have any questions following our review.

Best,
Lisa



**Lisa M. Northrup**

she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Wednesday, June 26, 2024 5:45 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

During the conference on June 14, 2024, this Court explained:  "I believe it's appropriate to update any information that goes to damages. That would include supplemental information. It would allow for a further extension of the period of damages to be commensurate with the trial date. There may be certain facts such as transactions that underlie the damage calculation, but beyond that, I'm not going to require further supplementation of any substantive facts going to the claims. The record is the record."  (Tr.4:13-21.)

Biosense's production of documents today complies with what the Court explained it is requiring as supplemental fact discovery.  Below, in your email dated June 17, Innovative essentially restates the position it took during the conference.  While Biosense disagrees, to effectively move forward in meeting and conferring on this issue rather than focus only on what theories Innovative believes it is entitled to pursue, please provide an explanation in advance of any meet and confer identifying with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to Innovative's damages calculation and explain the relevance.

Further, Innovative asserts below that "the updated data is necessary for evaluating the need for injunctive relief." Please likewise identify with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to injunctive relief Innovative seeks, identify the injunctive relief Innovative seeks, and explain the relevance of the identified information to the injunctive relief Innovative seeks.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Wednesday, June 26, 2024 5:22 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Please see the below link and password for Defendant's supplemental production of documents.

11

<u>Link</u>: https://filecloud.sycr.com/url/ptkieteq2xaqwvsk
<u>Password</u>: 106rffk6jg067

Please let us know if you are available sometime this Friday before 10am Pacific Time or between 12:30pm to 2pm Pacific Time to meet and confer regarding the supplemental production.  Thank you.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Monday, June 17, 2024 6:53 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We think a meet and confer will be more productive and that it makes sense to do so after you have

Biosense's produced documents in hand.  We intend to produce early next week.

Biosense reserves all objections.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Monday, June 17, 2024 5:03 PM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean
<stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

What is your availability this week to meet and confer regarding Biosense's supplemental
production?  It has been more than a month since Biosense began the process of collecting
data.  Biosense has never confirmed which datasets are being updated.

Moreover, the updated data should not be limited to mapping systems purchased before April 1, 2016 or catheters purportedly sold for use specifically on systems purchased before April 1, 2016.  Innovative has never limited its case to *Kodak*-style single-brand aftermarkets: "To be clear, Innovative is not talking about a submarket of customers without another cardiac mapping system *or a submarket of customers that have already bought a CARTO 3*. This is *not Newcal for the boundaries of the market to depend on a contractually created group of consumers*. Innovative is talking about hospitals with or without other systems.  That's discussed at pages 23 and 24."  Summary Judgment Oral Argument Transcript at 5:22-6:3.

At those pages in the opposition brief referenced at oral argument on summary judgment, Innovative pointed to the direct evidence of market power: "Market power requires an examination of the economic reality of the market at issue for the responsiveness of the sales of one product to price changes of the other.  Here, Innovative has offered evidence that customers did not shift purchases of catheters in response to higher prices from the case coverage policy or lower prices from reprocessed catheter clearance. And Innovative has offered evidence that customers did not shift away from the CARTO 3 in response to higher prices associated with the case coverage policy. CARTO procedure share has been flat. Those are the facts."  Opposition Brief at 23 (citations and quotation marks omitted).

On appeal, the Ninth Circuit reversed and remanded the grant of summary judgment for Biosense and made clear that Innovative could continue to make its case without *Kodak*-style aftermarkets: "we do not address its argument that it produced sufficient direct evidence of Biosense's market power such that it need not define a market."

In any event, the catheters are not sold to a hospital for use on a specific machine.  Many hospitals have systems purchased before and systems purchased after April 1, 2016.  Furthermore, most systems were installed at hospitals before the change in policy.  Forister Rep. ¶ 71.  Biosense started to sell the CARTO 3 in October 2009 and had installed more than 1,000 systems by April 1, 2016.  *E.g.*, BWI-INN00545226.

In addition, the updated data is necessary for evaluating the need for injunctive relief.

Thanks.

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Saturday, May 18, 2024 10:34 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'

<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you for the meet and confer yesterday.  As we made clear, Biosense maintains its objection that Innovative's additional discovery requests exceed the scope of what is called for under Federal Rule of Civil Procedure 26(e)(1)(A).  Nevertheless, Biosense has started a diligent document collection process in good faith so that in the event that the Court requires Biosense to produce any documents or additional discovery beyond what is ordinarily required by Rule 26(e)(1)(A) in response to the parties briefing on the issue, that production can be made available to Innovative in as timely manner as possible.

If the Court does permit additional discovery, however, Biosense continues to preserve all objections and reserve all rights as to Innovative's discovery requests.  As explained at length in yesterday's meet and confer, these include Biosense's objections on the grounds of relevance and undue burden. Subject to Biosense's objections expressed herein and as generally preserved, and contingent upon any future Court order clarifying the scope of Biosense's obligations to respond to the additional requests, should the Court require, we discussed the possibility during the meet and confer that Biosense is amenable to producing the following:

- As to the requests to update transaction data in BWI-INN00510476, BWI-INN00704867, BWI-INN00706180, BWI-INN00710526 and the case logs re BWI-INN00000025, we discussed Biosense producing updated information specific to the 142 CARTO 3 purchases that took place prior to the adoption of the case coverage policy in April 2016.  Any information regarding subsequent purchases related to the purchase of CARTO 3 subsequent to this period is not relevant as made clear by the Ninth Circuit's opinion.  *See Innovative Health, LLC v. Biosense Webster, Inc.*, No. 22-55413, 2024 U.S. App. LEXIS 308, at *6 (9th Cir. Jan. 5, 2024) ("The district court correctly concluded that customers who purchased the CARTO 3 after Biosense's tying policy formally took effect in April 2016 cannot serve as evidence of Biosense's market power.")
- A general update to BWI-INN00722083 regarding complaint data as requested
- More recent documents related to market share (to the extent any such documents exist)
- Any updates to the clinical support policy as to the at-issue catheters (to the extent any such documents exist)

Biosense did not offer to produce any update to BWI-INN00545226 regarding system placement including on the grounds that any more recent purchases of CARTO 3 systems are not relevant. Biosense now understands based on Innovative's clarification during the meet and confer that Innovative seeks an update regarding whether the CARTO 3 Systems already identified in the spreadsheet are still in use.  Biosense is considering whether it may be agreeable to providing such

information and is investigating whether such information is available.

Biosense additionally explained it is not able to update BWI-INN00722085 described as "Clarivate Estimates" in part because of Biosense's understanding that this information was prepared by a third party and is based on information collected from third parties.

Lastly on the issue of the case schedule, as discussed during the meet and confer, Biosense is not attempting to "jam" Innovative, but does view the timing of the production of documents (if any) as inextricably linked to the deadlines in the remainder of the schedule and believes it would be best to aim to provide the Court with a single stipulation rather than knowingly presenting the Court with a stipulation that will require a further stipulation.  To address Innovative's concerns about its upcoming deadline, Biosense will agree not to take any adverse action or otherwise attempt to hold Innovative to the May 31, 2024 Forister Supplemental Report deadline as set forth in the Court's order (*see* Dkt. 218.).  Biosense will further agree to file a joint stipulation prior to or on May 31, 2024 to generally extend deadlines, and agrees that in the stipulation the deadline for the Forister Supplemental Report may be extended for seven (7) days following the material completion of any production of documents Biosense may make.  If the parties cannot reach agreement as to any of the deadlines in negotiating the stipulation, the parties may each set forth their separate positions in the stipulation.   Please let us know if this approach to the schedule is agreeable to Innovative.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Thursday, May 16, 2024 9:32 AM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you, we will plan on discussing tomorrow (May 17) at noon Pacific/3 pm Eastern.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, May 16, 2024 8:01 AM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'

<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

Innovative has been available since April 23. We offered to talk in person after the status
conference on April 29.

We were available to talk on Monday and Tuesday.  We were available yesterday.  We are
available today and tomorrow.

I will send an invite with zoom link for  Friday at 12 noon PT (3 pm ET).

Thanks!

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Wednesday, May 15, 2024 6:51 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We remain available to meet and confer as proposed on this Friday after 12 p.m. Pacific/3 p.m.
Eastern and will be prepared to discuss the topics proposed below including whether any changes
will be required to the current schedule.  We are unable to meet and confer earlier both due to pre-
existing conflicts and the time required to assess how long it will take to collect the information that
would be responsive to Innovative's substantive requests.  Our aim is to have an informed and
productive meet and confer including discussing realistic deadlines for Biosense's production of
documents.  Biosense is diligently working on responding to the requests in the interim, and
undertaking this work is relevant to having a fruitful meet and confer.  To be clear, Biosense is not
delaying any efforts in responding until the meet and confer, but rather has been and will continue
moving forward as quickly as possible with its efforts.

Please let us know what time works for you on Friday.

Biosense continues to preserve all objections and reserve all rights.  This includes, but is not limited

to Biosense's objections as to whether Biosense should be, or is required to produce any of the requested documents.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Wednesday, May 15, 2024 12:00 PM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

Thanks, the parties are going to need to talk today. Innovative is available at 12:30, 1:00, or 2:30 PT or later. There is no justification for the failure to produce on May 14. The mandate issued on March 12. Innovative affirmatively notified Biosense of the need to supplement specific datasets on April 23. I have attached a proposed stipulation to discuss on the call.

What time is someone available for Biosense?

Thanks!

Jeff

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Tuesday, May 14, 2024 8:50 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Biosense continues to preserve all objections and reserve all rights.  This includes, but is not limited
to Biosense's objections as to whether Biosense should be, or is required to produce any of the
requested documents.

Biosense is endeavoring to quickly determine what information is available to respond to the
requests, including reaching out to its discovery vendor and prior custodians in light of the fact that
discovery has been dormant for more than two years, but given the substance and the volume of
information requested, Biosense despite its diligent efforts has not yet been able to determine a
realistic timeline for production, but continues to undertake all efforts to do so.  As part of these
efforts and examining the information requested, we think it would be helpful to meet and confer
regarding three topics:  (i) the scope of Innovative's requests; (ii) a potential timeline for Biosense's
production of documents; and (iii) the impact to the current expert discovery and pretrial deadlines
based on Biosense's anticipated timing for producing documents.

Please let us know if you are available to discuss on Friday, May 17 after 12 p.m. Pacific/3 p.m.
Eastern by which point we anticipate having further information for a hopefully productive
discussion.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** <u>949 725 4011</u>

 

<u>stradlinglaw.com</u> | <u>LinkedIn</u>

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Monday, May 13, 2024 4:49 PM
**To:** Jeffrey Berhold <<u>jeff@berhold.com</u>>; Lobb, Sean <<u>stlobb@stradlinglaw.com</u>>
**Cc:** 'Joshua P. Davis' <<u>jdavis@bm.net</u>>; 'Kyla Gibboney' <<u>kgibboney@bm.net</u>>; 'Julie A. Pollock'
<<u>jpollock@bm.net</u>>; 'Matthew Summers' <<u>msummers@bm.net</u>>; 'Panteha Abdollahi'
<<u>pabdollahi@tocounsel.com</u>>; Kraft, Karla <<u>KKraft@stradlinglaw.com</u>>; 'Robinson, Matthew'
<<u>mrobinson@paulweiss.com</u>>; 'Forrest, Katherine B' <<u>kforrest@paulweiss.com</u>>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Biosense continues to preserve all objections and reserve all rights.  This includes, but is not limited to Biosense's objections as to whether Biosense should be, or is required to produce any of the requested documents.

Nevertheless, Biosense is engaging in diligent efforts to determine how rapidly it may provide the requested documents.  We do not yet have a timeline, but are working hard on determining one.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
<u>LNorthrup@stradlinglaw.com</u>

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** <u>949 725 4011</u>

 

<u>stradlinglaw.com</u> | <u>LinkedIn</u>

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <<u>jeff@berhold.com</u>>
**Sent:** Monday, May 13, 2024 8:33 AM
**To:** Lobb, Sean <<u>stlobb@stradlinglaw.com</u>>
**Cc:** 'Joshua P. Davis' <<u>jdavis@bm.net</u>>; 'Kyla Gibboney' <<u>kgibboney@bm.net</u>>; 'Julie A. Pollock' <<u>jpollock@bm.net</u>>; 'Matthew Summers' <<u>msummers@bm.net</u>>; 'Panteha Abdollahi' <<u>pabdollahi@tocounsel.com</u>>; Northrup, Lisa <<u>LNorthrup@stradlinglaw.com</u>>; Kraft, Karla <<u>KKraft@stradlinglaw.com</u>>; 'Robinson, Matthew' <<u>mrobinson@paulweiss.com</u>>; 'Forrest, Katherine B' <<u>kforrest@paulweiss.com</u>>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Thanks for the update on Friday. Please provide a timeline for production by 5:00 p.m. PT today so Innovative can plan accordingly.

Thanks!

Jeff

---

**From:** Lobb, Sean <<u>stlobb@stradlinglaw.com</u>>
**Sent:** Friday, May 10, 2024 9:41 PM
**To:** Jeffrey Berhold <<u>jeff@berhold.com</u>>
**Cc:** 'Joshua P. Davis' <<u>jdavis@bm.net</u>>; 'Kyla Gibboney' <<u>kgibboney@bm.net</u>>; 'Julie A. Pollock' <<u>jpollock@bm.net</u>>; 'Matthew Summers' <<u>msummers@bm.net</u>>; 'Panteha Abdollahi' <<u>pabdollahi@tocounsel.com</u>>; Northrup, Lisa <<u>LNorthrup@stradlinglaw.com</u>>; Kraft, Karla <<u>KKraft@stradlinglaw.com</u>>; 'Robinson, Matthew' <<u>mrobinson@paulweiss.com</u>>; 'Forrest, Katherine B' <<u>kforrest@paulweiss.com</u>>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

As an initial matter, Defendant does not agree that the below referenced information should be produced, and Defendant reserves all rights and objections.

However, Defendant is working to determine a timeline for production.  We do not believe it is possible to produce the information by Tuesday.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Friday, May 10, 2024 5:05 PM
**To:** Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

23

Please confirm that Biosense will be updating the following datasets by the court deadline of
May 14:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00704867: Transaction Data (Request No. 3 and 51) through Q1 2024
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00722083: Complaint Data (Request No. 65) through 2023
BWI-INN00545226: System Placement (Request No. 52) through Q1 2024
BWI-INN00000025: Case Logs (Request Nos. 4 and 48) through Q1 2024
BWI-INN00047408: Patch Sales and Market Shares (Request Nos. 15 and 50) through Q1 2024
BWI-INN00722085: Clarivate Estimates (used by Dr. Wu) through Q1 2024

Thanks!

Jeff

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Friday, May 3, 2024 12:32 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla
<KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine
B' <kforrest@paulweiss.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Thank you for putting together the chart.  We can agree to most of the deadlines that
Plaintiff proposes.  However, we do not agree to the deadlines for supplemental discovery
responses, supplemental expert reports, or expert depositions because: (1) the Court's
order from Monday afternoon for briefing on the issue of expert theories makes it clear that
the Court is currently considering whether supplemental expert reports should even be
permitted in the first place and (2) the supplemental discovery is not relevant or necessary
because the only relevant time period is the 2014 to 2016 period before the policy change so
new sales data, for instance, is wholly irrelevant.  After the briefing is submitted to the Court
next week, if the Court allows Plaintiff to offer new expert theories, then we can revisit the
deadlines relating to supplemental discovery at that point.

We also agree that both parties are entitled to file new motions in limine and withdraw our prior motions in limine, other than the Daubert motion.  But Defendant reserves the right to withdraw our Daubert motion and file a new Daubert motion if the Court ultimately allows for supplemental discovery.  Additionally, if the Court allows supplemental discovery, then we reserve our right to seek updated information from Plaintiff.  And if Plaintiff seeks to amend its expert reports, Defendant will need to see the amended report before we can agree to a timeframe to respond.

Lastly, we are available for a call today or Monday, but we believe that this meet and confer can be readily resolved via email.  If you can please send us the draft joint report today, then we can input any revisions in track changes. Thank you.

Sincerely,
Sean


**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, May 2, 2024 4:28 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Clarification: the dates for depositions are the last days for taking depositions.

| | | |
|---|---|---|
| Supplemental Discovery Responses | | 5/10/2024 |
| Forister Supplemental Report | | 5/31/2024 |
| Wu Supplemental Report | | 6/14/2024 |
| Forister Supplemental Reply Report | | 6/21/2024 |
| Last Day to Conduct Expert Depositions | | 7/2/2024 |
| Last Day to Conduct Deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit Lists). | 21 days | 7/30/2024 |
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

---

**From:** Jeffrey Berhold
**Sent:** Thursday, May 2, 2024 7:21 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Karla:

What is your availability tomorrow to meet and confer on the case management dates due on Monday?

Below are our proposed dates.

Thanks!

Jeff

| | | |
|---|---|---|
| Supplemental Discovery Responses | | 5/10/2024 |
| Forister Supplemental Report | | 5/31/2024 |
| Wu Supplemental Report | | 6/14/2024 |
| Forister Supplemental Reply Report | | 6/21/2024 |
| Expert Depositions | | 7/2/2024 |
| Conduct deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit Lists). | 21 days | 7/30/2024 |
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 2:11 PM

**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

I am traveling and will let Karla take the lead on that.

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3195 (Direct Phone) | +1 212 492 0195 (Direct Fax) | +1 917 828 4061 (Cell)
kforrest@paulweiss.com | www.paulweiss.com

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Wednesday, May 1, 2024 10:25 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Katherine:

Yes, the parties should talk soon about the remaining dates to submit to the Court on Monday.  Who will be participating for Biosense?  And what is your side's availability tomorrow?

Thanks!

Jeff

Jeffrey L. Berhold, P.C.
1230 Peachtree St., Suite 1050
Atlanta, GA 30309

404-872-3800

---

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 12:49:03 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>

**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff — Karla will take the laboring oar on these but can you let us know whether you plan to have your expert review any materials we might produce and use them in a supplemental report of some kind? Or is that not the plan?

Thanks,

Katherine

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
212 373 3195 (Direct Phone) | 212 492 0195 (Direct Fax) | 917 828 4061 (Cell)
kforrest@paulweiss.com | www.paulweiss.com

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Date:** Wednesday, May 01, 2024 at 9:11 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>, 'Kraft, Karla' <KKraft@stradlinglaw.com>, Robinson, Matthew <mrobinson@paulweiss.com>, 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>, 'Reiner, Lila' <LReiner@stradlinglaw.com>, 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>, 'Kyla Gibboney' <kgibboney@bm.net>, 'Julie A. Pollock' <jpollock@bm.net>, 'Matthew Summers' <msummers@bm.net>, 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Following up my email on 4/23 and our conversation on 4/29, Innovative will be producing its transaction data for Q2 2021 to Q1 2024 (i.e., three additional years) and complaint data for 2021, 2022, and 2023 (three additional years) in the same format as prior productions on Friday.

Innovative has identified the following datasets from Biosense in need of similar updates:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00704867: Transaction Data (Request No. 3 and 51) through Q1 2024
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00722083: Complaint Data (Request No. 65) through 2023

BWI-INN00545226: System Placement (Request No. 52) through Q1 2024
BWI-INN00000025: Case Logs (Request Nos. 4 and 48) through Q1 2024
BWI-INN00047408: Patch Sales and Market Shares (Request Nos. 15 and 50) through Q1 2024
BWI-INN00722085: Clarivate Estimates (used by Dr. Wu) through Q1 2024

Biosense also needs to produce any new estimates or calculations of your market share for
mapping procedures, patch sales, clinical support, or ultrasound or mapping
catheters (Request No. 15).

Biosense also needs to produce any new iterations of the Position Statement on Clinical
Account Specialist Case Support of Reprocessed Single Use Devices (SUD) created by
Biosense (Request Nos. 19 and 20).  For example, Biosense expanded its case coverage policy
to include the Vizigo steerable sheath on June 8, 2022.

Thanks!

Jeff

---

**From:** Jeffrey Berhold
**Sent:** Tuesday, April 23, 2024 11:08 AM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>;
'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>;
Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** Joshua P. Davis <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>
**Subject:** Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Innovative requests that Biosense update its spreadsheets for transaction data and complaint
data through First Quarter 2024.  Innovative is doing the same.

During discovery in 2021, Biosense produced the spreadsheets covering data typically through
First Quarter 2021.  The additional three years or more of data is material to various issues,
including lost profits and injunctive relief.

I am listing the spreadsheets by production number and citing the document request below:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49)
BWI-INN00704867: Transaction Data (Request No. 3 and 51)
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49)
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49)

BWI-INN00722083: Complaint Data (Request No. 65)
BWI-INN00545226: System Placement (Request No. 52)

In addition, Innovative asks Biosense to produce any new Position Statement on Clinical Account Specialist Case Support of Reprocessed Single Use Devices (SUD) in response to Request Nos. 19 and 20.  For example, Biosense expanded its case coverage policy to include the Vizigo steerable sheath (which is not a navigational device) on June 8, 2022 after Innovative became the first third party to receive clearance to reprocess the Vizigo on March 10, 2022.

Also, Innovative asks Biosense to produce any new estimates or calculations of your market share for mapping procedures, clinical support, or ultrasound catheters.  (Request No. 15.)

Finally, Innovative asks Biosense to produce new information received by Biosense regarding sales or market shares for patches or ultrasound catheters from the U.S. EP Consortium Project.  (Request No. 50.)

Please provide availability on your side to meet and confer on Wednesday and Thursday to discuss these requests if you have any questions or concerns.

Thanks!

Jeff

Jeffrey L. Berhold, P.C.
1230 Peachtree St., Suite 1050
Atlanta, GA 30309
404.872.3800


www.berhold.com


This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

EXHIBIT 6

| From: | Lobb, Sean |
|---|---|
| To: | Jeffrey Berhold |
| Cc: | "Joshua P. Davis"; "Kyla Gibboney"; Northrup, Lisa; "Julie A. Pollock"; "Matthew Summers"; "Panteha Abdollahi"; Kraft, Karla; "Robinson, Matthew"; "Forrest, Katherine B" |
| Subject: | RE: Innovative v. Biosense - Updated Datasets |
| Date: | Friday, July 19, 2024 12:21:05 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |

Dear Jeff,

We decline to agree to your below proposed stipulation.  The Federal Rules of Evidence do not generally allow us to rely upon evidence that was requested but that we declined to produce.  At trial, if you believe that Biosense is seeking to rely upon evidence that it failed, after a properly issued request, to produce, then you can object at that juncture.  But Biosense will not agree to the below stipulation in advance.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, July 18, 2024 12:54 PM
**To:** Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers'

<msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla
<KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine
B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Here is our draft language for a stipulation regarding the data:

Biosense is precluded from offering any evidence or argument at any stage of this case
(including motion, hearing, trial, or appeal) related to or predicated on transaction data from
April 1, 2021 to the present, or related to or predicated on the absence of such data from the
record.  That preclusion bars Biosense from offering any evidence or argument that Innovative
might have been able to rebut with transaction data from April 1, 2021 to the present.  The
preclusion also bars Biosense from offering or eliciting any testimony based on any facts or
expressing any opinions that involve or could have been rebutted by transaction data from
April 1, 2021 to the present.

Thanks.

Jeff

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Tuesday, July 16, 2024 9:25 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa
<LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers'
<msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla
<KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine
B' <kforrest@paulweiss.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Thank you for your time during our meet and confer yesterday.  During the call, we discussed
the following:

1. Biosense proposed that both parties supplement their complaint data up until the end of the
   first quarter in 2024.  Innovative disagreed and proposed that the parties update their
   complaint data at the beginning of 2025 with data up until the end of the fourth quarter of
   2024.  Biosense believes that updating the data on the eve of trial in 2025 would not make
   sense because any supplemental expert reports will be generated within the next few
   months.  Innovative claimed that the data is required to be maintained by the FDA, and that it

should be easy to quickly produce it, so please let us know if Innovative will agree to produce the updated data this month so that it can be potentially included in any supplemental expert reports.

2. As discussed and briefed previously, Biosense does not agree to the reopening of discovery and does not agree to Innovative issuing subpoenas to third parties at this late stage of the case.

3. Innovative proposed two stipulations related to the use of evidence at trial. Please send us the wording of your proposed stipulations, and we will consider them.

4. Regarding the catheters included in the transaction data spreadsheet, we are double checking on that, and we will follow up with you shortly.

5. Biosense agrees to reproduce its supplemental production in a load file format.

6. Biosense agrees to stipulate to moving the August 5th status conference to August 19th. Please send us your proposed draft stipulation.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach , CA  92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>

**Sent:** Monday, July 15, 2024 12:45 PM
**To:** Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa
<LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers'
<msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla
<KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest,
Katherine B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Thanks for the information.  We asked to meet and confer before the production to discuss
what would be provided in the production.  It was the practice in this case with prior counsel
from Cravath.  Since Biosense declined our request on June 17, Innovative appreciates the
opportunity to finally meet and confer this afternoon on our more recent request on July 1 to
discuss the various deficiencies in the Biosense supplemental production of nationwide
transaction data.

While Innovative intends to file its motion for a permanent injunction <u>after</u> the verdict, *see*,
*e.g.*, *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, No. C 87-1686 AWT, 1996 WL 101173, at *1
(N.D. Cal. Feb. 28, 1996), I can tell you in advance of our call that Innovative understands that
injunctive relief is predicated on the "*threatened* loss or damage of the type the antitrust laws
were designed to prevent and that flows from that which makes defendants' acts unlawful."
*Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (emphasis added).  *Kodak*
offers some examples of relief sought and obtained by permanent injunction in cases like this
one.  *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1226-29 (9th Cir. 1997).

I will look back at the email from June 26 regarding your recent requests for supplemental
production from Innovative.

Thanks.

Jeff.

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Friday, July 12, 2024 8:07 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; Northrup, Lisa
<LNorthrup@stradlinglaw.com>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers'
<msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla
<KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine
B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

While we are unaware of any prior request from Innovative asking that Biosense specifically describe/explain the contents of its production in response to Innovative's requests (which Biosense is under no affirmative obligation to do particularly in the absence of any specific inquiry from Innovative), we will do so now in the interest of moving the meet and confer process forward.

Biosense's June 26th production consisted of the updated spreadsheets and documents that Innovative requested, consistent with Biosense's obligations under Federal Rule of Civil Procedure 26(e) and the Court's decisive ruling that there will be "no new theories", "no plugging through experts of previously identified holes or deficiencies in the expert reports," and "no reopening of discovery" in this case  (June 14, 2024 Hearing Transcript at 4).

Accordingly, Biosense's June 26 production included spreadsheets containing market share and complaint/safety data as well as other spreadsheets that contained data specifically about the 142 devices at issue in this case.
Biosense produced the spreadsheets in their native format and is not aware of the removal of any metadata prior to production.  Please specify what metadata, if any, Plaintiff contends is missing.

Regarding Innovative's contentions about the "recent precedent of *Epic Games*," as we have discussed previously *Epic Games* changed nothing as it relates to this case and Judge Selna has agreed.  *Epic Games* did not involve a change in Ninth Circuit law or clarify any ambiguous law.  *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Circ. 2023).

In *Epic Games*, the propositions of antitrust law supporting the decision rely on and follow existing Supreme Court and Ninth Circuit precedent.  *Epic Games* did not change the legal landscape or clarify any open issues of law; it merely restated already existing law.  Moreover, the *Epic Games* decision was already existing law at the time that Innovative argued this case before the Ninth Circuit.

Here, the Court has allowed for limited supplemental discovery under Rule 26(e), and Biosense's June 26 production complies with what the Court has permitted.

Lastly, Innovative has still not responded to our below June 26th request:  please identify the specific injunctive relief Innovative seeks, identify with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to the injunctive relief Innovative seeks, and explain the relevance of the identified information to that injunctive relief.  Nor has Innovative responded to our attached questions from June 26 regarding Innovative's supplemental production.  Please respond accordingly.

We look forward to speaking with you on Monday.

Sincerely,

Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, July 11, 2024 10:42 AM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

In order for us to have a productive meet and confer and consider any alleged shortcomings in the production to have an informed conversation on Monday, can Biosense finally say what exactly was produced on June 26 because the new spreadsheets have carved out most customers and most catheters from Biosense's nationwide transaction data?

When Innovative inquired on June 17 ahead of the production, Biosense declined to say what it would be producing and declined to discuss whether its intended production would meet the requirements of Rule 26(e).  When Biosense did produce the data on June 26, Biosense did not

provide any description of the data being produced.  Nor did Biosense provide load files with the required metadata under the ESI protocol filed with the Court.

As I mentioned in my email on June 17, Innovative did not narrow its case to any submarket at summary judgment: "To be clear, Innovative is not talking about a submarket of customers without another cardiac mapping system or a submarket of customers that have already bought a CARTO 3."  Transcript at 5.  "Innovative has offered evidence that customers did not shift away from the CARTO 3 in response to higher prices associated with the case coverage policy. CARTO procedure share has been flat. Those are the facts."  Opposition to Summary Judgment at 23

Nor did the Ninth Circuit limit the case on remand: "Because we conclude that Innovative has produced evidence of a single brand aftermarket and so raised a triable issue regarding market definition, we do not address its argument that it produced sufficient direct evidence of Biosense's market power such that it need not define a market."

Furthermore, Judge Selna has certainly not entered such an order on remand.  It would be contrary to the law of the case, along with the recent precedent in *Epic Games* and subsequent cases like *Lambrix v. Tesla*, which provide for the plaintiff to offer direct and/or indirect evidence of market power in the foremarket or direct evidence of market power in the aftermarket in lieu of proving Kodak-style single-brand aftermarkets.

Therefore, the additional three years of nationwide transaction data is material to the claims for damages and injunctive relief. That would allow the experts to assess unit volumes, sales prices, and market shares for the years between discovery and trial. That would be useful in proving the amount of Innovative's lost profits, the anticompetitive effects of Biosense's conduct on the market, and Biosense's continuing market power, as well as that Innovative's lost profits flow from Biosense's exercise of market power in violation of antitrust law.

Both experts used the nationwide transaction data to calculate the size of each relevant catheter market and project nationwide sales for Innovative in the relevant markets but for violations of the antitrust law based on nationwide sales of yardstick or benchmark catheters. They also used the nationwide transaction data to analyze market power in the cardiac mapping system market, the clinical support market, and the catheter markets.

The additional transaction data is material to injunctive relief under the Clayton Act.  The injunctive relief is based on the threat of future harm: "[A] private plaintiff must allege threatened loss or damage of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful."  Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 113 (1986).  While the experts have eight years of data (January 1, 2013 to March 31, 2020), it would be preferable also to have recent data to analyze the threat of future harm.

Thanks.

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Wednesday, July 10, 2024 1:05 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you for sending the Zoom invite for Monday. As Biosense understands its production of documents complies with what the Court explained it is requiring as supplemental fact discovery, we have been waiting for your responses to the questions raised below in my June 26 email to move the meet and confer process forward. In order for us to have a productive meet and confer and consider any alleged shortcomings in the production to have an informed conversation on Monday, please respond to our questions in advance of the meet and confer.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Monday, July 8, 2024 7:26 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Following up below regarding the questions raised to facilitate a productive meet and confer.  Please provide a response, and then we are available to meet and confer on Monday, July 15 at 10:30 a.m. Pacific/1:30 p.m. Eastern or 1:00 p.m. Pacific/4:00 p.m. Eastern.  Please let us know if either of those times work for you, and we will circulate a dial-in.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Friday, June 28, 2024 11:56 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean
<stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We saw your email sent yesterday regrading receipt of Biosense's production of documents and that
Dr. Forister is presently out of town.  We are not trying to rush your review or Dr. Forister's review of
the documents.  If after having a chance to review the production, if you still believe a meet and
confer is necessary, if you would then please let us know we can schedule a call. And in advance of a
call, we believe it would be more efficient and productive if you would please respond to the
questions below so we can be prepared to discussed during the meet and confer.

We are additionally in receipt today of the password for Innovative's recent production of
documents, and will let you know if we have any questions following our review.

Best,
Lisa




**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Wednesday, June 26, 2024 5:45 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

During the conference on June 14, 2024, this Court explained: "I believe it's appropriate to update any information that goes to damages. That would include supplemental information. It would allow for a further extension of the period of damages to be commensurate with the trial date. There may be certain facts such as transactions that underlie the damage calculation, but beyond that, I'm not going to require further supplementation of any substantive facts going to the claims. The record is the record." (Tr.4:13-21.)

Biosense's production of documents today complies with what the Court explained it is requiring as supplemental fact discovery. Below, in your email dated June 17, Innovative essentially restates the position it took during the conference. While Biosense disagrees, to effectively move forward in meeting and conferring on this issue rather than focus only on what theories Innovative believes it is entitled to pursue, please provide an explanation in advance of any meet and confer identifying with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to Innovative's damages calculation and explain the relevance.

Further, Innovative asserts below that "the updated data is necessary for evaluating the need for injunctive relief." Please likewise identify with specificity what if any supplemental, updated information requested by Innovative, but not provided by Biosense, is relevant to injunctive relief Innovative seeks, identify the injunctive relief Innovative seeks, and explain the relevance of the identified information to the injunctive relief Innovative seeks.

Best,

Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011
stradlinglaw.com | LinkedIn

 

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Wednesday, June 26, 2024 5:22 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Please see the below link and password for Defendant's supplemental production of documents.

Link: https://filecloud.sycr.com/url/ptkieteq2xaqwvsk
Password: 106rffk6jg067

Please let us know if you are available sometime this Friday before 10am Pacific Time or between 12:30pm to 2pm Pacific Time to meet and confer regarding the supplemental production.  Thank you.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079
stradlinglaw.com | LinkedIn




CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Monday, June 17, 2024 6:53 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean
<stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We think a meet and confer will be more productive and that it makes sense to do so after you have
Biosense's produced documents in hand.  We intend to produce early next week.

Biosense reserves all objections.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Monday, June 17, 2024 5:03 PM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean
<stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

What is your availability this week to meet and confer regarding Biosense's supplemental
production?  It has been more than a month since Biosense began the process of collecting
data.  Biosense has never confirmed which datasets are being updated.

Moreover, the updated data should not be limited to mapping systems purchased before April
1, 2016 or catheters purportedly sold for use specifically on systems purchased before April 1,
2016.  Innovative has never limited its case to *Kodak*-style single-brand aftermarkets: "To be
clear, Innovative is not talking about a submarket of customers without another cardiac
mapping system *or a submarket of customers that have already bought a CARTO 3*. This is *not*

*Newcal for the boundaries of the market to depend on a contractually created group of consumers*. Innovative is talking about hospitals with or without other systems.  That's discussed at pages 23 and 24."  Summary Judgment Oral Argument Transcript at 5:22-6:3.

At those pages in the opposition brief referenced at oral argument on summary judgment, Innovative pointed to the direct evidence of market power: "Market power requires an examination of the economic reality of the market at issue for the responsiveness of the sales of one product to price changes of the other.  Here, Innovative has offered evidence that customers did not shift purchases of catheters in response to higher prices from the case coverage policy or lower prices from reprocessed catheter clearance. And Innovative has offered evidence that customers did not shift away from the CARTO 3 in response to higher prices associated with the case coverage policy. CARTO procedure share has been flat. Those are the facts."  Opposition Brief at 23 (citations and quotation marks omitted).

On appeal, the Ninth Circuit reversed and remanded the grant of summary judgment for Biosense and made clear that Innovative could continue to make its case without *Kodak*-style aftermarkets: "we do not address its argument that it produced sufficient direct evidence of Biosense's market power such that it need not define a market."

In any event, the catheters are not sold to a hospital for use on a specific machine.  Many hospitals have systems purchased before and systems purchased after April 1, 2016.  Furthermore, most systems were installed at hospitals before the change in policy.  Forister Rep. ¶ 71.  Biosense started to sell the CARTO 3 in October 2009 and had installed more than 1,000 systems by April 1, 2016.  *E.g.*, BWI-INN00545226.

In addition, the updated data is necessary for evaluating the need for injunctive relief.

Thanks.

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Saturday, May 18, 2024 10:34 AM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you for the meet and confer yesterday. As we made clear, Biosense maintains its objection that Innovative's additional discovery requests exceed the scope of what is called for under Federal Rule of Civil Procedure 26(e)(1)(A). Nevertheless, Biosense has started a diligent document collection process in good faith so that in the event that the Court requires Biosense to produce any documents or additional discovery beyond what is ordinarily required by Rule 26(e)(1)(A) in response to the parties briefing on the issue, that production can be made available to Innovative in as timely manner as possible.

If the Court does permit additional discovery, however, Biosense continues to preserve all objections and reserve all rights as to Innovative' s discovery requests. As explained at length in yesterday's meet and confer, these include Biosense's objections on the grounds of relevance and undue burden. Subject to Biosense's objections expressed herein and as generally preserved, and contingent upon any future Court order clarifying the scope of Biosense's obligations to respond to the additional requests, should the Court require, we discussed the possibility during the meet and confer that Biosense is amenable to producing the following:

- As to the requests to update transaction data in BWI-INN00510476, BWI-INN00704867, BWI-INN00706180, BWI-INN00710526 and the case logs re BWI-INN00000025, we discussed Biosense producing updated information specific to the 142 CARTO 3 purchases that took place prior to the adoption of the case coverage policy in April 2016. Any information regarding subsequent purchases related to the purchase of CARTO 3 subsequent to this period is not relevant as made clear by the Ninth Circuit's opinion. *See Innovative Health, LLC v. Biosense Webster, Inc.*, No. 22-55413, 2024 U.S. App. LEXIS 308, at *6 (9th Cir. Jan. 5, 2024) ("The district court correctly concluded that customers who purchased the CARTO 3 after Biosense's tying policy formally took effect in April 2016 cannot serve as evidence of Biosense's market power.")
- A general update to BWI-INN00722083 regarding complaint data as requested
- More recent documents related to market share (to the extent any such documents exist)
- Any updates to the clinical support policy as to the at-issue catheters (to the extent any such documents exist)

Biosense did not offer to produce any update to BWI-INN00545226 regarding system placement including on the grounds that any more recent purchases of CARTO 3 systems are not relevant. Biosense now understands based on Innovative's clarification during the meet and confer that Innovative seeks an update regarding whether the CARTO 3 Systems already identified in the spreadsheet are still in use. Biosense is considering whether it may be agreeable to providing such information and is investigating whether such information is available.

Biosense additionally explained it is not able to update BWI-INN00722085 described as "Clarivate Estimates" in part because of Biosense's understanding that this information was prepared by a third party and is based on information collected from third parties.

Lastly on the issue of the case schedule, as discussed during the meet and confer, Biosense is not attempting to "jam" Innovative, but does view the timing of the production of documents (if any) as inextricably linked to the deadlines in the remainder of the schedule and believes it would be best to aim to provide the Court with a single stipulation rather than knowingly presenting the Court with a stipulation that will require a further stipulation.  To address Innovative's concerns about its upcoming deadline, Biosense will agree not to take any adverse action or otherwise attempt to hold Innovative to the May 31, 2024 Forister Supplemental Report deadline as set forth in the Court's order (*see* Dkt. 218.).  Biosense will further agree to file a joint stipulation prior to or on May 31, 2024 to generally extend deadlines, and agrees that in the stipulation the deadline for the Forister Supplemental Report may be extended for seven (7) days following the material completion of any production of documents Biosense may make.  If the parties cannot reach agreement as to any of the deadlines in negotiating the stipulation, the parties may each set forth their separate positions in the stipulation.   Please let us know if this approach to the schedule is agreeable to Innovative.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Thursday, May 16, 2024 9:32 AM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'

<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Thank you, we will plan on discussing tomorrow (May 17) at noon Pacific/3 pm Eastern.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, May 16, 2024 8:01 AM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

Innovative has been available since April 23. We offered to talk in person after the status conference on April 29.

We were available to talk on Monday and Tuesday. We were available yesterday. We are available today and tomorrow.

I will send an invite with zoom link for Friday at 12 noon PT (3 pm ET).

Thanks!

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Wednesday, May 15, 2024 6:51 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

We remain available to meet and confer as proposed on this Friday after 12 p.m. Pacific/3 p.m. Eastern and will be prepared to discuss the topics proposed below including whether any changes will be required to the current schedule. We are unable to meet and confer earlier both due to pre-existing conflicts and the time required to assess how long it will take to collect the information that would be responsive to Innovative's substantive requests. Our aim is to have an informed and productive meet and confer including discussing realistic deadlines for Biosense's production of documents. Biosense is diligently working on responding to the requests in the interim, and undertaking this work is relevant to having a fruitful meet and confer. To be clear, Biosense is not delaying any efforts in responding until the meet and confer, but rather has been and will continue moving forward as quickly as possible with its efforts.

Please let us know what time works for you on Friday.

Biosense continues to preserve all objections and reserve all rights. This includes, but is not limited to Biosense's objections as to whether Biosense should be, or is required to produce any of the requested documents.

Best,
Lisa



**Lisa M. Northrup**

she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011

 

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this
communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Wednesday, May 15, 2024 12:00 PM
**To:** Northrup, Lisa <LNorthrup@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew'
<mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Lisa:

Thanks, the parties are going to need to talk today.  Innovative is available at 12:30, 1:00, or
2:30 PT or later.  There is no justification for the failure to produce on May 14.  The mandate
issued on March 12.  Innovative affirmatively notified Biosense of the need to supplement
specific datasets on April 23.  I have attached a proposed stipulation to discuss on the call.

What time is someone available for Biosense?

Thanks!

Jeff

---

**From:** Northrup, Lisa <LNorthrup@stradlinglaw.com>
**Sent:** Tuesday, May 14, 2024 8:50 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Biosense continues to preserve all objections and reserve all rights. This includes, but is not limited to Biosense's objections as to whether Biosense should be, or is required to produce any of the requested documents.

Biosense is endeavoring to quickly determine what information is available to respond to the requests, including reaching out to its discovery vendor and prior custodians in light of the fact that discovery has been dormant for more than two years, but given the substance and the volume of information requested, Biosense despite its diligent efforts has not yet been able to determine a realistic timeline for production, but continues to undertake all efforts to do so. As part of these efforts and examining the information requested, we think it would be helpful to meet and confer regarding three topics: (i) the scope of Innovative's requests; (ii) a potential timeline for Biosense's production of documents; and (iii) the impact to the current expert discovery and pretrial deadlines based on Biosense's anticipated timing for producing documents.

Please let us know if you are available to discuss on Friday, May 17 after 12 p.m. Pacific/3 p.m. Eastern by which point we anticipate having further information for a hopefully productive discussion.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4011




stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

**From:** Northrup, Lisa
**Sent:** Monday, May 13, 2024 4:49 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff,

Biosense continues to preserve all objections and reserve all rights.  This includes, but is not limited to Biosense's objections as to whether Biosense should be, or is required to produce any of the requested documents.

Nevertheless, Biosense is engaging in diligent efforts to determine how rapidly it may provide the requested documents.  We do not yet have a timeline, but are working hard on determining one.

Best,
Lisa



**Lisa M. Northrup**
she/her/hers
Partner
LNorthrup@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660
**D:** 949 725 4011

22




[stradlinglaw.com](stradlinglaw.com) | [LinkedIn](LinkedIn)

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <[jeff@berhold.com](mailto:jeff@berhold.com)>
**Sent:** Monday, May 13, 2024 8:33 AM
**To:** Lobb, Sean <[stlobb@stradlinglaw.com](mailto:stlobb@stradlinglaw.com)>
**Cc:** 'Joshua P. Davis' <[jdavis@bm.net](mailto:jdavis@bm.net)>; 'Kyla Gibboney' <[kgibboney@bm.net](mailto:kgibboney@bm.net)>; 'Julie A. Pollock' <[jpollock@bm.net](mailto:jpollock@bm.net)>; 'Matthew Summers' <[msummers@bm.net](mailto:msummers@bm.net)>; 'Panteha Abdollahi' <[pabdollahi@tocounsel.com](mailto:pabdollahi@tocounsel.com)>; Northrup, Lisa <[LNorthrup@stradlinglaw.com](mailto:LNorthrup@stradlinglaw.com)>; Kraft, Karla <[KKraft@stradlinglaw.com](mailto:KKraft@stradlinglaw.com)>; 'Robinson, Matthew' <[mrobinson@paulweiss.com](mailto:mrobinson@paulweiss.com)>; 'Forrest, Katherine B' <[kforrest@paulweiss.com](mailto:kforrest@paulweiss.com)>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Thanks for the update on Friday.  Please provide a timeline for production by 5:00 p.m. PT today so Innovative can plan accordingly.

Thanks!

Jeff

---

**From:** Lobb, Sean <[stlobb@stradlinglaw.com](mailto:stlobb@stradlinglaw.com)>
**Sent:** Friday, May 10, 2024 9:41 PM
**To:** Jeffrey Berhold <[jeff@berhold.com](mailto:jeff@berhold.com)>
**Cc:** 'Joshua P. Davis' <[jdavis@bm.net](mailto:jdavis@bm.net)>; 'Kyla Gibboney' <[kgibboney@bm.net](mailto:kgibboney@bm.net)>; 'Julie A. Pollock' <[jpollock@bm.net](mailto:jpollock@bm.net)>; 'Matthew Summers' <[msummers@bm.net](mailto:msummers@bm.net)>; 'Panteha Abdollahi' <[pabdollahi@tocounsel.com](mailto:pabdollahi@tocounsel.com)>; Northrup, Lisa <[LNorthrup@stradlinglaw.com](mailto:LNorthrup@stradlinglaw.com)>; Kraft, Karla <[KKraft@stradlinglaw.com](mailto:KKraft@stradlinglaw.com)>; 'Robinson, Matthew' <[mrobinson@paulweiss.com](mailto:mrobinson@paulweiss.com)>; 'Forrest, Katherine B' <[kforrest@paulweiss.com](mailto:kforrest@paulweiss.com)>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Dear Jeff,

As an initial matter, Defendant does not agree that the below referenced information should be produced, and Defendant reserves all rights and objections.

However, Defendant is working to determine a timeline for production. We do not believe it is possible to produce the information by Tuesday.

Sincerely,
Sean



**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079

  

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Friday, May 10, 2024 5:05 PM
**To:** Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine B' <kforrest@paulweiss.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Sean:

Please confirm that Biosense will be updating the following datasets by the court deadline of May 14:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00704867: Transaction Data (Request No. 3 and 51) through Q1 2024
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00722083: Complaint Data (Request No. 65) through 2023
BWI-INN00545226: System Placement (Request No. 52) through Q1 2024
BWI-INN00000025: Case Logs (Request Nos. 4 and 48) through Q1 2024
BWI-INN00047408: Patch Sales and Market Shares (Request Nos. 15 and 50) through Q1 2024
BWI-INN00722085: Clarivate Estimates (used by Dr. Wu) through Q1 2024

Thanks!

Jeff

---

**From:** Lobb, Sean <stlobb@stradlinglaw.com>
**Sent:** Friday, May 3, 2024 12:32 PM
**To:** Jeffrey Berhold <jeff@berhold.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock'
<jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi'
<pabdollahi@tocounsel.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Kraft, Karla
<KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; 'Forrest, Katherine
B' <kforrest@paulweiss.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Dear Jeff,

Thank you for putting together the chart.  We can agree to most of the deadlines that
Plaintiff proposes.  However, we do not agree to the deadlines for supplemental discovery
responses, supplemental expert reports, or expert depositions because: (1) the Court's
order from Monday afternoon for briefing on the issue of expert theories makes it clear that
the Court is currently considering whether supplemental expert reports should even be
permitted in the first place and (2) the supplemental discovery is not relevant or necessary
because the only relevant time period is the 2014 to 2016 period before the policy change so
new sales data, for instance, is wholly irrelevant.  After the briefing is submitted to the Court
next week, if the Court allows Plaintiff to offer new expert theories, then we can revisit the
deadlines relating to supplemental discovery at that point.

We also agree that both parties are entitled to file new motions in limine and withdraw our
prior motions in limine, other than the Daubert motion.  But Defendant reserves the right to
withdraw our Daubert motion and file a new Daubert motion if the Court ultimately allows for

supplemental discovery.  Additionally, if the Court allows supplemental discovery, then we reserve our right to seek updated information from Plaintiff.  And if Plaintiff seeks to amend its expert reports, Defendant will need to see the amended report before we can agree to a timeframe to respond.

Lastly, we are available for a call today or Monday, but we believe that this meet and confer can be readily resolved via email.  If you can please send us the draft joint report today, then we can input any revisions in track changes. Thank you.

Sincerely,
Sean

**Sean Thomas Lobb**
Associate
stlobb@stradlinglaw.com

Stradling Yocca Carlson & Rauth
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
**D:** 949 725 4079

stradlinglaw.com | LinkedIn

CONFIDENTIALITY NOTICE
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Thursday, May 2, 2024 4:28 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Clarification: the dates for depositions are the last days for taking depositions.

| Supplemental Discovery Responses | 5/10/2024 |
| Forister Supplemental Report | 5/31/2024 |
| Wu Supplemental Report | 6/14/2024 |

| | | |
|---|---|---|
| Forister Supplemental Reply Report | | 6/21/2024 |
| Last Day to Conduct Expert Depositions | | 7/2/2024 |
| Last Day to Conduct Deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit Lists). | 21 days | 7/30/2024 |
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

**From:** Jeffrey Berhold
**Sent:** Thursday, May 2, 2024 7:21 PM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Karla:

What is your availability tomorrow to meet and confer on the case management dates due on Monday?

Below are our proposed dates.

Thanks!

Jeff

| | | |
|---|---|---|
| Supplemental Discovery Responses | | 5/10/2024 |
| Forister Supplemental Report | | 5/31/2024 |
| Wu Supplemental Report | | 6/14/2024 |
| Forister Supplemental Reply Report | | 6/21/2024 |
| Expert Depositions | | 7/2/2024 |
| Conduct deposition of Vincent Thomas (new JNJ witness). | | 7/2/2024 |
| Motions in Limine Due | 42 days | 7/9/2024 |
| Submit Jury Questionnaire | 30 days | 7/19/2024 |
| Opposition to Motions in Limine Due. | 28 days | 7/23/2024 |
| Reply to Motions in Limine Due. | 21 days | 7/30/2024 |
| Pretrial Conference Order Due | 21 days | 7/30/2024 |
| Memorandum of Contentions Due (including Witness & Exhibit Lists). | 21 days | 7/30/2024 |
| Status Report Regarding Settlement | 21 days | 7/30/2024 |
| Pretrial Conference & Hearing on Motions in Limine (Monday at 11:00) | 15 days | 8/5/2024 |
| File Agreed Jury Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement Regarding Disputed Instructions & Verdict Forms | 15 days | 8/5/2024 |
| File Joint Statement of Case | 15 days | 8/5/2024 |
| File and Serve Special Questions for Voir Dire | 15 days | 8/5/2024 |
| Disclosure of Graphic and Illustrative Material | 11 days | 8/9/2024 |
| Meet and Confer Regarding Stipulations to Foundation, Waiver of Best Evidence Rule, and to those Exhibits Which May Be Received Into Evidence at the Start of Trial | 10 days | 8/12/2024 |
| Reply to Memorandum of Contentions | 7 days | 8/13/2024 |
| Submit Deposition Designations and Objections | Before Trial | 8/19/2024 |
| Exhibit Binders | Tuesday | 8/20/2024 |
| Trial  (Jury Selection on 8/16/2024) | Tuesday | 8/20/2024 |

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 2:11 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>

**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>

**Subject:** RE: Innovative v. Biosense - Updated Datasets

I am traveling and will let Karla take the lead on that.

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3195 (Direct Phone) | +1 212 492 0195 (Direct Fax) | +1 917 828 4061 (Cell)
kforrest@paulweiss.com | www.paulweiss.com

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Sent:** Wednesday, May 1, 2024 10:25 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** Re: Innovative v. Biosense - Updated Datasets

Katherine:

Yes, the parties should talk soon about the remaining dates to submit to the Court on Monday. Who will be participating for Biosense? And what is your side's availability tomorrow?

Thanks!

Jeff

Jeffrey L. Berhold, P.C.
1230 Peachtree St., Suite 1050
Atlanta, GA 30309

404-872-3800

---

**From:** Forrest, Katherine B <kforrest@paulweiss.com>
**Sent:** Wednesday, May 1, 2024 12:49:03 PM
**To:** Jeffrey Berhold <jeff@berhold.com>; 'Kraft, Karla' <KKraft@stradlinglaw.com>; Robinson, Matthew <mrobinson@paulweiss.com>; 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>; 'Reiner, Lila' <LReiner@stradlinglaw.com>; 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>

**Subject:** RE: Innovative v. Biosense - Updated Datasets

Jeff — Karla will take the laboring oar on these but can you let us know whether you plan to have your expert review any materials we might produce and use them in a supplemental report of some kind? Or is that not the plan?

Thanks,

Katherine

**Katherine B Forrest** | Partner
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
212 373 3195 (Direct Phone) | 212 492 0195 (Direct Fax) | 917 828 4061 (Cell)
kforrest@paulweiss.com | www.paulweiss.com

---

**From:** Jeffrey Berhold <jeff@berhold.com>
**Date:** Wednesday, May 01, 2024 at 9:11 AM
**To:** Forrest, Katherine B <kforrest@paulweiss.com>, 'Kraft, Karla' <KKraft@stradlinglaw.com>, Robinson, Matthew <mrobinson@paulweiss.com>, 'Northrup, Lisa' <LNorthrup@stradlinglaw.com>, 'Reiner, Lila' <LReiner@stradlinglaw.com>, 'Lobb, Sean' <stlobb@stradlinglaw.com>
**Cc:** 'Joshua P. Davis' <jdavis@bm.net>, 'Kyla Gibboney' <kgibboney@bm.net>, 'Julie A. Pollock' <jpollock@bm.net>, 'Matthew Summers' <msummers@bm.net>, 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** RE: Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Following up my email on 4/23 and our conversation on 4/29, Innovative will be producing its transaction data for Q2 2021 to Q1 2024 (i.e., three additional years) and complaint data for 2021, 2022, and 2023 (three additional years) in the same format as prior productions on Friday.

Innovative has identified the following datasets from Biosense in need of similar updates:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00704867: Transaction Data (Request No. 3 and 51) through Q1 2024
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49) through Q1 2024
BWI-INN00722083: Complaint Data (Request No. 65) through 2023
BWI-INN00545226: System Placement (Request No. 52) through Q1 2024
BWI-INN00000025: Case Logs (Request Nos. 4 and 48) through Q1 2024
BWI-INN00047408: Patch Sales and Market Shares (Request Nos. 15 and 50) through Q1 2024

BWI-INN00722085: Clarivate Estimates (used by Dr. Wu) through Q1 2024

Biosense also needs to produce any new estimates or calculations of your market share for mapping procedures, patch sales, clinical support, or ultrasound or mapping catheters (Request No. 15).

Biosense also needs to produce any new iterations of the Position Statement on Clinical Account Specialist Case Support of Reprocessed Single Use Devices (SUD) created by Biosense (Request Nos. 19 and 20).  For example, Biosense expanded its case coverage policy to include the Vizigo steerable sheath on June 8, 2022.

Thanks!

Jeff

---

**From:** Jeffrey Berhold
**Sent:** Tuesday, April 23, 2024 11:08 AM
**To:** 'Forrest, Katherine B' <kforrest@paulweiss.com>; Kraft, Karla <KKraft@stradlinglaw.com>; 'Robinson, Matthew' <mrobinson@paulweiss.com>; Northrup, Lisa <LNorthrup@stradlinglaw.com>; Reiner, Lila <LReiner@stradlinglaw.com>; Lobb, Sean <stlobb@stradlinglaw.com>
**Cc:** Joshua P. Davis <jdavis@bm.net>; 'Kyla Gibboney' <kgibboney@bm.net>; 'Julie A. Pollock' <jpollock@bm.net>; 'Matthew Summers' <msummers@bm.net>; 'Panteha Abdollahi' <pabdollahi@tocounsel.com>
**Subject:** Innovative v. Biosense - Updated Datasets

Katherine and Karla:

Innovative requests that Biosense update its spreadsheets for transaction data and complaint data through First Quarter 2024.  Innovative is doing the same.

During discovery in 2021, Biosense produced the spreadsheets covering data typically through First Quarter 2021.  The additional three years or more of data is material to various issues, including lost profits and injunctive relief.

I am listing the spreadsheets by production number and citing the document request below:

BWI-INN00510476: Transaction Data (Request Nos. 3 and 49)
BWI-INN00704867: Transaction Data (Request No. 3 and 51)
BWI-INN00706180: Transaction Data (Request Nos. 3 and 49)
BWI-INN00710526: Transaction Data (Request Nos. 3 and 49)
BWI-INN00722083: Complaint Data (Request No. 65)
BWI-INN00545226: System Placement (Request No. 52)

In addition, Innovative asks Biosense to produce any new Position Statement on Clinical Account Specialist Case Support of Reprocessed Single Use Devices (SUD) in response to Request Nos. 19 and 20.  For example, Biosense expanded its case coverage policy to include the Vizigo steerable sheath (which is not a navigational device) on June 8, 2022 after Innovative became the first third party to receive clearance to reprocess the Vizigo on March 10, 2022.

Also, Innovative asks Biosense to produce any new estimates or calculations of your market share for mapping procedures, clinical support, or ultrasound catheters.  (Request No. 15.)

Finally, Innovative asks Biosense to produce new information received by Biosense regarding sales or market shares for patches or ultrasound catheters from the U.S. EP Consortium Project.  (Request No. 50.)

Please provide availability on your side to meet and confer on Wednesday and Thursday to discuss these requests if you have any questions or concerns.

Thanks!

Jeff

Jeffrey L. Berhold, P.C.
1230 Peachtree St., Suite 1050
Atlanta, GA 30309
404.872.3800

www.berhold.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

EXHIBIT 7

1  Panteha Abdollahi, Esq. (State Bar No. 230002)
   pabdollahi@tocounsel.com
2  THEODORA ORINGHER PC
   535 Anton Boulevard, Ninth Floor
3  Costa Mesa, California 92626-7109
   Telephone: (714) 549-6200
4  Facsimile: (714) 549-6201

5  Jeffrey L. Berhold, Esq. (Georgia State Bar No.
   054682) (*Admitted Pro Hac Vice*)
6  jeff@berhold.com
   JEFFREY L. BERHOLD, P.C.
7  1230 Peachtree Street, Suite 1050
   Atlanta, Georgia 30309
8  Telephone: (404) 872-3800
   Facsimile: (678) 868-2021
9

10 Attorneys for Plaintiff
   INNOVATIVE HEALTH LLC
11

12

13              **UNITED STATES DISTRICT COURT**

14    **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

15

16 INNOVATIVE HEALTH LLC,          Case No. 8:19-cv-1984 JVS (KESx)

17         Plaintiff,              **PLAINTIFF INNOVATIVE
                                   HEALTH LLC'S FIRST REQUESTS
18    vs.                          FOR DOCUMENTS TO
                                   DEFENDANT BIOSENSE
19 BIOSENSE WEBSTER, INC.,         WEBSTER, INC.**

20         Defendant.
                                   **Action Filed:  October 18, 2019
21                                 Trial Date:  September 28, 2021**

22

23

24

25

26

27

28

1    Pursuant to Fed. R. Civ. Proc. 34, Plaintiff Innovative Health ("Innovative
2  Health") hereby serves the following requests upon Defendant Biosense Webster,
3  Inc. ("Biosense") for documents and electronically stored information in its
4  possession, custody, or control.  Documents and electronically stored information
5  include writings, drawings, graphs, charts, photographs, sound recordings, images,
6  and other data or data compilations—stored in any medium from which information
7  can be obtained either directly or, if necessary, after translation by Biosense into a
8  reasonably usable form.

9                    Definitions and Instructions

10    "You" or "your" means the person or entity to whom these requests are
11  addressed; its officers, directors, agents, and employees, or any merged,
12  consolidated, or acquired predecessor or successor, parent, or subsidiary, division,
13  or affiliate; or any person acting on your behalf; or any person within a "controlled
14  group of corporations" of which you are a member.

15    "Person" means any individual, corporation, partnership, joint venture, firm,
16  association, proprietorship, agency, board, authority, commission, or other such
17  entity.

18    "Communicate" or "communication" means every manner or means of
19  disclosure, transfer, or exchange of information whether orally or by document or
20  whether face-to-face, by telephone, mail, personal delivery, or otherwise.

21    "Policy" means any rule, procedure, directive, practice, or course of conduct,
22  whether formal or informal, written or unwritten, recorded or unrecorded, which
23  was recognized by you.

24    "Competitor" means any person whom you considered, viewed, or recognized
25  as being in competition with you relating to the manufacture, distribution, or sale of
26  surgical equipment or equipment services.

27    "Customer" means any person purchasing or receiving products or services
28  directly from you.

                                2

1    As to a person, "identify" includes name, business and residence address(es)

2  (including zip code), occupation, job title, and dates so employed; and if not an

3  individual, state the type of entity and the address of its principal place of business.

4    As to a document, "identify" means the type of document (letter, memo, etc.),

5  the identity of the author or originator, the date authored or originated, the identity

6  of each person to whom the original or copy was addressed or delivered, the identity

7  of such person known or reasonably believed by you to have present possession,

8  custody, or control thereof, and a brief description of the subject matter thereof, all

9  with sufficient particularity to request its production under Federal Rules of Civil

10  Procedure 34.

11    As to a communication, "identity" means the date of the communication, the

12  type of communication (telephone conversation, meeting, etc.), the place where the

13  communication took place, the identity of the person who made the communication,

14  the identity of each person present when it was made, and the subject matter

15  discussed.

16    "Or" shall be construed either conjunctively or disjunctively to bring within

17  the scope of these interrogatories or requests any information which might otherwise

18  be construed to be outside their scope.

19    The singular includes the plural number, and vice versa.  The masculine

20  includes the feminine and neuter genders.  The past tense includes the present tense

21  where the clear meaning is not distorted by change of tense.

22    Unless otherwise indicated, these requests cover the period from January 1,

23  2015 to the present.

24                                   <u>Requests</u>

25    1.    <u>Organization Charts</u>.  All organization charts and internal memoranda

26  showing or describing the organization of your employees involved in the design,

27  marketing, sale, or servicing of your products or services or your network of field

28  service engineers

3

2.  <u>Competitive Analysis</u>.  All studies, surveys, analyses and reports which were prepared by or for any officer(s) or director(s) for the purpose of evaluating or analyzing your business with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets.

3.  <u>Transaction Data</u>.  Electronically stored information to be produced in xls format for all of your customer transactions, including any transaction number, transaction type (*e.g.*, sale, return, credit, rebate, service or administrative fee or charge), invoice number, transaction date, order date, shipping date, delivery date, customer name, customer id, facility name, facility id, billing address, delivery address, order code, item code, product code, part number, product name, product description, unit cost, unit price, product quantity, and total price.

4.  <u>Case Logs</u>.  All documents and electronically stored information recording or tracking cases or electrophysiology studies or procedures by your customers using your products or services, including any database of procedures using the CARTO 3 cardiac mapping system that identifies the catheters used and who supplied them for each procedure.

5.  <u>Customer Database</u>.  Any database for your customer relationships or customer contracts.

6.  <u>Promotional Materials</u>.  Documents sufficient to show all documents and electronically stored information distributed to your employees or the public (*e.g.*, hospitals, physicians, or patients) for purposes of marketing or advertising your company, products, or services (including any comparison of products or services provided by you to products or services provided by others).

7.  <u>Customer Surveys</u>.  All surveys and polls of hospitals, physicians, nurses, or administrators.

8.  <u>Product Features</u>.  All documents discussing or detailing any features or attributes, including any recommended use, of your products or services.

9.    <u>Physician Preferences</u>.  All documents discussing or detailing the role of physicians in selecting a cardiac mapping system, clinical support specialist, or catheter for use in a procedure or for purchase by your customers.

10.    <u>Paid Consultants</u>.  Documents sufficient to identify each physician, administrator, and executive that was paid by you for consulting or other services while affiliated with any customer, and the amounts paid each year by you to each such person for any consulting or other services.

11.    <u>Clinical Support</u>.  All documents discussing or detailing the costs in time or money for hospitals to train staff to become proficient in operating the CARTO 3 cardiac mapping system software without supervision or assistance.

12.    <u>Training Materials</u>.  Documents sufficient to show all training materials available or provided to your customers or anyone else regarding operation of your products, along with any documents relating to restrictions on access to training materials.

13.    <u>Technician Recruitment</u>.  Documents sufficient to identify each of your clinical support specialists that was previously employed by any of your customers.

14.    <u>Geographic Pods</u>.  All documents discussing or explaining any reasons for providing clinical support by geographic pod or territory, along with documents sufficient to show the organization for providing clinical support to your customers by geographic pod or territory.

15.    <u>Market Shares</u>.  Documents sufficient to show any estimates or calculations of your share or percentage of the market or sales (dollar or unit) for clinical support, high-density mapping catheters, ultrasound catheters, or other products or services for use with the CARTO 3 cardiac mapping system.

16.    <u>Product Catalogs</u>.  All catalogs for any of your products or services (including mapping systems, system upgrades, system catheters, and clinical support).

17.    Price Management.  All studies and analyses of managing or setting prices for your products or services or generating revenue.

18.    Free Support.  All documents discussing or explaining any reasons for any policy or practice from January 1, 2010 to the present that you provide Clinical Account Specialists without charge to customers for product technical support on the CARTO 3 cardiac mapping system.

19.    Case Coverage.  All documents discussing or explaining any reasons for any policy or practice from January 1, 2010 to the present that your Clinical Account Specialists can only provide product technical support in cases that use diagnostic mapping and ultrasound catheters distributed by you.

20.    Policy Enforcement.  All documents relating to communications with customers regarding any policy that your Clinical Account Specialists can only provide product technical support in cases that use diagnostic mapping and ultrasound catheters distributed by you.

21.    Free Goods.  All studies or analyses of offering any product or service for free to customers.

22.    Sales Promotions.  Documents sufficient to show any sales promotions or programs (*e.g.*, free software upgrades) offered to any customer based in whole or in part on the dollar or unit volume or percentage of new catheters, reprocessed catheters, or total catheters purchased from you.

23.    Used Catheters.  Documents sufficient to show your policies or practices regarding the repurchase, repossession, or destruction of used catheters in the possession of customers or third parties and the recycling, reprocessing, or resale of used catheters acquired from customers.

24.    Recovery Logs.  All documents recording or tracking your recovery and disposition of catheters used by your customers.

25.    Closed System.  All documents from January 1, 2010 to the present discussing or explaining the reasons why the CARTO 3 cardiac mapping system is

designed to limit compatibility to high-density mapping catheters or ultrasound catheters manufactured by Biosense.

26.    <u>Blocking Technology</u>.  Documents sufficient to show any technology (e.g., encryption, passwords) installed by you that blocks or prevents third parties from accessing, using, or reprocessing catheters manufactured by you.

27.    <u>Reprocessing Catheters</u>.  All documents relating to communications between employees of Biosense Webster, Inc. and employees of SterilMed, Inc. regarding the installation or bypassing of technology (*e.g.*, encryption, passwords) that blocks or prevents third parties from accessing, using, or reprocessing catheters.

28.    <u>Software Upgrades</u>.  All documents relating to communications with your employees responsible for the design, engineering, or manufacturing of your catheters regarding software upgrades on your cardiac mapping system(s).

29.    <u>Innovative Health</u>.  All documents regarding Innovative Health or its products.

30.    <u>Reprocessed Catheters</u>.  All documents regarding catheters reprocessed by Innovative Health or any other third party, including any communications or correspondence about the use, or discouraging or preventing the use, by your customers of catheters reprocessed by Innovative Health or any third party.

31.    <u>SterilMed Catheters</u>.  Documents sufficient to show all training materials provided to your employees and customers for operating the CARTO 3 cardiac mapping system software in electrophysiology studies or procedures where the electrophysiologist is using the CARTO 3 cardiac mapping system and diagnostic mapping catheters or ultrasound catheters reprocessed by SterilMed.

1 | DATED:  September 18, 2020        THEODORA ORINGHER PC

2

3

4                                        By: _____/s/ Panteha Abdollahi_____

5                                                 Panteha Abdollahi

6

7                                        JEFFREY L. BERHOLD, P.C.

8

9                                        By: _____/s/ Jeffrey L. Berhold_____

10                                                Jeffrey L. Berhold

11                                       Attorneys   for   Plaintiff   INNOVATIVE

12                                       HEALTH LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**CERTIFICATE OF SERVICE**

4        Pursuant to agreement of the parties under Fed. R. Civ. Proc. 5(b)(2)(E), I hereby

5  certify that I served the **PLAINTIFF INNOVATIVE HEALTH LLC'S FIRST**

6  **REQUESTS FOR DOCUMENTS TO DEFENDANT BIOSENSE WEBSTER,**

7  **INC.** on the following counsel of record via email on September 18, 2020:

8        Kaitlyn Beaudin            kbeaudin@sycr.com

9        Karla J Kraft              kkraft@sycr.com

10       Katherine B Forrest        kforrest@cravath.com

11       Michael T Reynolds         mreynolds@cravath.com

12       Panteha Abdollahi          pabdollahi@tocounsel.com

13

14

15

16                      By:      /s/ Jeffrey L. Berhold

17                               Jeffrey L. Berhold

18                               Attorney   for   Plaintiff   INNOVATIVE
                                 HEALTH LLC
19

20

21

22

23

24

25

26

27

28

*PLAINTIFF INNOVATIVE HEALTH LLC'S FIRST REQUESTS FOR DOCUMENTS*
*TO DEFENDANT BIOSENSE WEBSTER, INC.*
*CASE NO. 8:19-cv-1984 JVS (KESx)*

EXHIBIT 8

Panteha Abdollahi, Esq. (State Bar No. 230002)
pabdollahi@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq. (Georgia State Bar No.
054682) (*Admitted Pro Hac Vice*)
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021


Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC, | Case No. 8:19-cv-1984 JVS (KESx) |
| Plaintiff, | **PLAINTIFF INNOVATIVE HEALTH LLC'S FOURTH REQUESTS FOR DOCUMENTS TO DEFENDANT BIOSENSE WEBSTER, INC.** |
| vs. | |
| BIOSENSE WEBSTER, INC., | |
| Defendant. | **Action Filed:  October 18, 2019**<br>**Trial Date:  September 28, 2021** |

1    Pursuant to Fed. R. Civ. Proc. 34, Plaintiff Innovative Health ("Innovative

2  Health") hereby serves the following requests upon Defendant Biosense Webster,

3  Inc. ("Biosense") for documents and electronically stored information in its

4  possession, custody, or control.  Documents and electronically stored information

5  include writings, drawings, graphs, charts, photographs, sound recordings, images,

6  and other data or data compilations—stored in any medium from which information

7  can be obtained either directly or, if necessary, after translation by Biosense into a

8  reasonably usable form.

9                            Definitions and Instructions

10    "You" or "your" means the person or entity to whom these requests are

11  addressed; its officers, directors, agents, and employees, or any merged,

12  consolidated, or acquired predecessor or successor, parent, or subsidiary, division,

13  or affiliate; or any person acting on your behalf; or any person within a "controlled

14  group of corporations" of which you are a member.

15    "Person" means any individual, corporation, partnership, joint venture, firm,

16  association, proprietorship, agency, board, authority, commission, or other such

17  entity.

18    "Communicate" or "communication" means every manner or means of

19  disclosure, transfer, or exchange of information whether orally or by document or

20  whether face-to-face, by telephone, mail, personal delivery, or otherwise.

21    "Policy" means any rule, procedure, directive, practice, or course of conduct,

22  whether formal or informal, written or unwritten, recorded or unrecorded, which

23  was recognized by you.

24    "Competitor" means any person whom you considered, viewed, or recognized

25  as being in competition with you relating to the manufacture, distribution, or sale of

26  medical equipment or equipment services.

27    "Customer" means any person purchasing or receiving products or services

28  directly from you.

2

1    As to a person, "identify" includes name, business and residence address(es)

2   (including zip code), occupation, job title, and dates so employed; and if not an

3   individual, state the type of entity and the address of its principal place of business.

4    As to a document, "identify" means the type of document (letter, memo, etc.),

5   the identity of the author or originator, the date authored or originated, the identity

6   of each person to whom the original or copy was addressed or delivered, the identity

7   of such person known or reasonably believed by you to have present possession,

8   custody, or control thereof, and a brief description of the subject matter thereof, all

9   with sufficient particularity to request its production under Federal Rules of Civil

10   Procedure 34.

11    As to a communication, "identity" means the date of the communication, the

12   type of communication (telephone conversation, meeting, etc.), the place where the

13   communication took place, the identity of the person who made the communication,

14   the identity of each person present when it was made, and the subject matter

15   discussed.

16    "Or" shall be construed either conjunctively or disjunctively to bring within

17   the scope of these interrogatories or requests any information which might otherwise

18   be construed to be outside their scope.

19    The singular includes the plural number, and vice versa.  The masculine

20   includes the feminine and neuter genders.  The past tense includes the present tense

21   where the clear meaning is not distorted by change of tense.

22    Unless otherwise indicated, these requests cover the period from January 1,

23   2015 to the present.

24                         Requests

25    46.   Reprocessing Prevention.  All documents from January 1, 2010 to the

26   present regarding discussions, proposals, plans, or efforts to prevent reprocessing or

27   reuse of your catheters by third parties (including the Falcon Project).

28

47.     <u>Competitor Communications</u>.  All communications with reprocessors, distributors, or other competitors regarding the sale of reprocessed Biosense catheters, the employment of former Biosense employees, the training of your customers on the use of the CARTO 3, or the provision of technical support on the CARTO 3.

48.     <u>Case Logs</u>.  All documents and electronically stored information from January 1, 2010 to the present recording or tracking cases or electrophysiology studies or procedures by your customers using your products or services, including any database of procedures using the CARTO 3 cardiac mapping system that identifies the catheters used and who supplied them for each procedure.

49.     <u>Sales Data</u>.  Documents sufficient to show the following information by year, by month, by customer, and by product for each diagnostic catheter and ultrasound catheter sold by you from January 1, 2012 to the present: product name, ordering number, facility name, facility address, gross revenues, sales allowances, sales discounts, returns, cost of goods sold, other selling costs (e.g., commissions), net revenues, gross profits or losses, gross profit margins, net profits or losses, net profit margins, units sold, list prices, and average selling price.

DATED:  December 31, 2020          THEODORA ORINGHER PC


                                   By:      /s/ Panteha Abdollahi
                                          Panteha Abdollahi

1                          JEFFREY L. BERHOLD, P.C.

2

3

4                       By:      /s/ Jeffrey L. Berhold

5                              Jeffrey L. Berhold

6                       Attorneys for Plaintiff INNOVATIVE

7                       HEALTH LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*PLAINTIFF INNOVATIVE HEALTH LLC'S FOURTH REQUESTS FOR DOCUMENTS*
*TO DEFENDANT BIOSENSE WEBSTER, INC.*
*CASE NO. 8:19-cv-1984 JVS (KESx)*

1

2

3 **CERTIFICATE OF SERVICE**

4       Pursuant to agreement of the parties under Fed. R. Civ. Proc. 5(b)(2)(E), I hereby

5 certify that I served the **PLAINTIFF INNOVATIVE HEALTH LLC'S FOURTH**

6 **REQUESTS FOR DOCUMENTS TO DEFENDANT BIOSENSE WEBSTER,**

7 **INC.** on the following counsel of record via email on December 31, 2020:

8     Kaitlyn Beaudin         kbeaudin@sycr.com

9     Karla J Kraft          kkraft@sycr.com

10     Katherine B Forrest     kforrest@cravath.com

11     Michael T Reynolds     mreynolds@cravath.com

12     Panteha Abdollahi      pabdollahi@tocounsel.com

13

14

15

16              By:       /s/ Jeffrey L. Berhold

17                     Jeffrey L. Berhold

18                     Attorney  for  Plaintiff  INNOVATIVE

19                     HEALTH LLC

20

21

22

23

24

25

26

27

28

EXHIBIT 9

Panteha Abdollahi, Esq. (State Bar No. 230002)
pabdollahi@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq. (Georgia State Bar No.
054682) (*Admitted Pro Hac Vice*)
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| INNOVATIVE HEALTH LLC, | Case No. 8:19-cv-1984 JVS (KESx) |
|---|---|
| Plaintiff, | **PLAINTIFF INNOVATIVE HEALTH LLC'S FIFTH REQUESTS FOR DOCUMENTS TO DEFENDANT BIOSENSE WEBSTER, INC.** |
| vs. | |
| BIOSENSE WEBSTER, INC., | |
| Defendant. | **Action Filed: October 18, 2019** <br> **Trial Date: September 28, 2021** |

1      Pursuant to Fed. R. Civ. Proc. 34, Plaintiff Innovative Health ("Innovative

2    Health") hereby serves the following requests upon Defendant Biosense Webster,

3    Inc. ("Biosense") for documents and electronically stored information in its

4    possession, custody, or control.  Documents and electronically stored information

5    include writings, drawings, graphs, charts, photographs, sound recordings, images,

6    and other data or data compilations—stored in any medium from which information

7    can be obtained either directly or, if necessary, after translation by Biosense into a

8    reasonably usable form.

9                           <u>Definitions and Instructions</u>

10      "You" or "your" means the person or entity to whom these requests are

11    addressed; its officers, directors, agents, and employees, or any merged,

12    consolidated, or acquired predecessor or successor, parent, or subsidiary, division,

13    or affiliate; or any person acting on your behalf; or any person within a "controlled

14    group of corporations" of which you are a member.

15      "Person" means any individual, corporation, partnership, joint venture, firm,

16    association, proprietorship, agency, board, authority, commission, or other such

17    entity.

18      "Communicate" or "communication" means every manner or means of

19    disclosure, transfer, or exchange of information whether orally or by document or

20    whether face-to-face, by telephone, mail, personal delivery, or otherwise.

21      "Policy" means any rule, procedure, directive, practice, or course of conduct,

22    whether formal or informal, written or unwritten, recorded or unrecorded, which

23    was recognized by you.

24      "Competitor" means any person whom you considered, viewed, or recognized

25    as being in competition with you relating to the manufacture, distribution, or sale of

26    medical equipment or equipment services.

27      "Customer" means any person purchasing or receiving products or services

28    directly from you.

---

2

1    As to a person, "identify" includes name, business and residence address(es)

2   (including zip code), occupation, job title, and dates so employed; and if not an

3   individual, state the type of entity and the address of its principal place of business.

4    As to a document, "identify" means the type of document (letter, memo, etc.),

5   the identity of the author or originator, the date authored or originated, the identity

6   of each person to whom the original or copy was addressed or delivered, the identity

7   of such person known or reasonably believed by you to have present possession,

8   custody, or control thereof, and a brief description of the subject matter thereof, all

9   with sufficient particularity to request its production under Federal Rules of Civil

10  Procedure 34.

11   As to a communication, "identity" means the date of the communication, the

12  type of communication (telephone conversation, meeting, etc.), the place where the

13  communication took place, the identity of the person who made the communication,

14  the identity of each person present when it was made, and the subject matter

15  discussed.

16   "Or" shall be construed either conjunctively or disjunctively to bring within

17  the scope of these interrogatories or requests any information which might otherwise

18  be construed to be outside their scope.

19   The singular includes the plural number, and vice versa.  The masculine

20  includes the feminine and neuter genders.  The past tense includes the present tense

21  where the clear meaning is not distorted by change of tense.

22   Unless otherwise indicated, these requests cover the period from January 1,

23  2015 to the present.

24                                <u>Requests</u>

25   50.   <u>Consortium Project</u>.  Documents sufficient to show any data, reports, or

26  analyses provided to you from the U.S. EP Consortium Project.

27   51.   <u>Lifecycle Pricing</u>.  Documents sufficient to show average net price and

28  total unit volume by year and product from January 1, 2010 to the present for your

1  sales of mapping systems, software modules, service contracts, extended warranties,

2  patch sets, diagnostic catheters, ultrasound systems, ultrasound catheters, RF

3  generators, pump systems, therapeutic catheters, guiding sheaths, transseptal

4  needles, and catheter cables.

5     52.   <u>System Placement</u>.  Documents sufficient to show each cardiac

6  mapping system in service from January 1, 2010 to the present by year, serial

7  number, customer name, and customer location.

8     53.   <u>System Usage</u>.  Documents sufficient to show your units sold of patch

9  sets from January 1, 2010 to the present by year and facility location.

10    54.   <u>Physician Usage</u>.  Documents sufficient to show the number of

11  procedures using the CARTO 3 cardiac mapping system from January 1, 2010 to the

12  present by year, physician, and facility location.

13    55.   <u>Vendor Credentials</u>.  Documents sufficient to show any proof of

14  liability insurance (*e.g.*, "Liability Letter") and any certificate or letter of

15  competency or training (*e.g.*, "Vendor Product Competency Letter") submitted for

16  vendor credentials on behalf of your Clinical Account Specialists or Associate

17  Clinical Account Specialists from January 1, 2010 to the present.

18    56.   <u>Catheter Testing</u>.  Documents sufficient to show the results or

19  conclusions of any testing or analysis from January 1, 2010 to the present of

20  location accuracy, image quality, or any other aspect of LASSO, PENTARAY,

21  ACUNAV, or SOUNDSTAR catheters reprocessed by Innovative Health, Stryker

22  Sustainability Solutions, or any other third party.

23    57.   <u>SOUNDSTAR 3D</u>.  Documents sufficient to show any discussions of

24  any consideration, proposal, or decision (including any discussion of any rationale,

25  reason, or benefit of such a proposal or decision) from January 1, 2010 to the

26  present to discontinue the sale of the SOUNDSTAR 3D in the United States.

27    58.   <u>PENTARAY 510(k)</u>.  Documents sufficient to show any discussions of

28  any consideration, proposal, or decision (including any discussion of any rationale,

4

reason, or benefit of such a proposal or decision) on the timing for submitting any FDA 510(k) premarket notification of intent to market PENTARAY catheters reprocessed by Biosense or Sterilmed.

59. <u>Policy Training</u>.  All training resources (including simulation training videos and webinar recordings) regarding any position, policy, or practice on providing clinical support for catheters distributed by third parties.

60. <u>Performance Warranty</u>.  Documents sufficient to show any discussions of any consideration, proposal, or decision (including any discussion of any rationale, reason, or benefit of such a proposal or decision) to offer or not offer a performance or other warranty or guarantee for new or reprocessed PENTARAY, LASSO, SOUNDSTAR, or ACUNAV catheters.

61. <u>Navigational Accuracy</u>.  Documents sufficient to show any discussions of why Biosense does not or did not warrant the location accuracy of Certified Reprocessed SOUNDSTAR Catheters (less than 1.5 mm) at the same location accuracy of New SOUNDSTAR Catheters (less than 1 mm).

62. <u>Quality Standards</u>.  Documents sufficient to show whether Biosense Webster, Inc. Quality Standards for new catheters include 100% quality inspection of the electrodes.

63. <u>Image Quality</u>.  Documents sufficient to show what constitutes "original fidelity" for warranting ">94% fidelity" on image quality for your Certified Reprocessed Ultrasound Catheters.

64. <u>Prior Policies</u>.  Documents from January 1, 2010 to the present sufficient to show any position, policy, or practice before October 31, 2014 on providing clinical support on cases involving catheters distributed by third parties.

65. <u>Customer Complaints</u>.  Documents sufficient to show your failure rates, complaint rates, and complaint investigations concerning the quality or reliability of ACUNAV, LASSO, PENTARAY or SOUNDSTAR catheters distributed by you.

66.    <u>Siemens Communications</u>.  Documents sufficient to show all of your communications from January 1, 2010 to the present with Siemens regarding the possible reprocessing of ACUNAV, ACUNAV VOLUME, or SOUNDSTAR catheters by third parties.

67.    <u>FDA Complaints</u>.  Documents sufficient to show your communications with the U.S. Food and Drug Administration ("FDA") from January 1, 2010 to the present regarding any electrophysiology catheters reprocessed by third parties.

DATED:  January 29, 2021         THEODORA ORINGHER PC


By:    _____/s/ Panteha Abdollahi_____
         Panteha Abdollahi


JEFFREY L. BERHOLD, P.C.


By:    _____/s/ Jeffrey L. Berhold_____
         Jeffrey L. Berhold

Attorneys   for   Plaintiff   INNOVATIVE HEALTH LLC

1

2

3                       **CERTIFICATE OF SERVICE**

4           Pursuant to agreement of the parties under Fed. R. Civ. Proc. 5(b)(2)(E), I hereby

5    certify that I served the **PLAINTIFF INNOVATIVE HEALTH LLC'S FIFTH**

6    **REQUESTS FOR DOCUMENTS TO DEFENDANT BIOSENSE WEBSTER,**

7    **INC.** on the following counsel of record via email on January 29, 2021:

8           Kaitlyn Beaudin            kbeaudin@sycr.com

9           Karla J Kraft              kkraft@sycr.com

10          Katherine B Forrest        kforrest@cravath.com

11          Michael T Reynolds         mreynolds@cravath.com

12          Panteha Abdollahi          pabdollahi@tocounsel.com

13

14

15

16                            By:        /s/ Jeffrey L. Berhold

17                                     Jeffrey L. Berhold

18                                     Attorney   for   Plaintiff   INNOVATIVE
                                       HEALTH LLC
19

20

21

22

23

24

25

26

27

28
                                        7

EXHIBIT 10

1  KARLA KRAFT, State Bar No. 205530
     kkraft@sycr.com
2  KATIE BEAUDIN, State Bar No. 306402
     kbeaudin@sycr.com
3  STRADLING YOCCA CARLSON & RAUTH
   A Professional Corporation
4  660 Newport Center Drive, Suite 1600
   Newport Beach, CA 92660-6422
5  Telephone:  (949) 725-4000
   Facsimile:  (949) 725-4100
6
   Katherine B. Forrest (*Pro Hac Vice*)
7  kforrest@cravath.com
   Michael T. Reynolds (*Pro Hac Vice*)
8  mreynolds@cravath.com
   CRAVATH, SWAINE & MOORE LLP
9  Worldwide Plaza
   825 Eighth Avenue
10 New York, NY 10019-7475
   Telephone:  (212) 474-1000
11 Facsimile:  (212) 474-3700

12 Attorneys for Defendant
   BIOSENSE WEBSTER, INC.
13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16                 **SOUTHERN DIVISION**

17 INNOVATIVE HEALTH LLC,          | CASE NO. 8:19-cv-01984-JVS-KES
                                    | Hon. James V. Selna
18            Plaintiff,

19            vs.                   | **DEFENDANT BIOSENSE
                                    | WEBSTER, INC'S RESPONSES
20 BIOSENSE WEBSTER, INC.,         | TO INNOVATIVE HEALTH
                                    | LLC'S FIRST REQUESTS FOR
21            Defendant.           | DOCUMENTS**

22                                  | Complaint Filed:  October 18, 2019

23                                  | Corrected Second Amended Complaint
                                    | Filed: October 16, 2020
24

25

26

27

28
                                   1

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure

2    ("Federal Rules"), the Local Rules of the United States for the Central District of

3    California ("Local Rules") and any other applicable laws or rules, Defendant

4    Biosense Webster, Inc. ("Biosense") hereby responds and objects as follows to

5    Innovative Health's ("Innovative" or "Plaintiff") First Requests for Documents

6    dated September 18, 2020 (the "Requests").

7                          **GENERAL OBJECTIONS**

8        The following general objections ("General Objections") apply to the

9    Requests for Production generally and to the Definitions and Instructions and are

10   incorporated in Biosense's Specific Responses to each Request.  Biosense's

11   response to any Request is not and shall not be deemed a waiver of Biosense's

12   General Objections.  Any undertaking to search for, or provide information in

13   response to, any Request remains subject to the General Objections.

14       1.     Biosense objects to the Requests, including the Definitions and

15   Instructions therein, on the ground and to the extent that they purport to impose

16   duties and obligations beyond those imposed by the Federal Rules, the Local Rules

17   and/or any applicable rule or law (the "Applicable Rules").  Subject to and without

18   waiving any General or Specific Objections, in responding to the Requests,

19   Biosense will construe the Requests, including the Definitions and Instructions

20   therein, in accordance with the Applicable Rules.

21       2.     Biosense objects to the Requests, including the Definitions and

22   Instructions therein, on the grounds that they seek documents or information that

23   come within the scope of the attorney-client privilege, the work-product doctrine,

24   the common interest or joint defense privilege, the critical self-analysis privilege,

25   the privilege accorded to subsequent remedial measures, or any other applicable

26   privilege or immunity, or that otherwise are exempted from disclosure.  Biosense

27   hereby claims such privileges and protections to the extent implicated by the

28   Requests and excludes privileged or protected material from its responses to the

2

1  Requests.  Any disclosure of any such privileged or protected material in response

2  to the Requests is inadvertent and not intended to waive those privileges and

3  protections.  Biosense reserves the right to demand that Plaintiff return, destroy or

4  sequester any privileged or protected documents produced and all copies thereof

5  consistent with the Applicable Rules or the terms and conditions of an appropriate

6  Protective Order entered by the Court in this action.

7       3.     Biosense further objects to the Requests, including the Definitions and

8  Instructions therein, to the extent they call for personal identifying information or

9  personal medical information, including information protected from disclosure by

10  the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1230(d). et.

11  seq., and 45 C.F.R. § 164.512 ("HIPAA"), which prohibits the disclosure of

12  medical information provided by a health care provider absent an authorization

13  expressly releasing such information.

14       4.     Biosense objects to the Requests, including the Definitions and

15  Instructions therein, to the extent that they call for the disclosure of confidential

16  information including, without limitation, trade secrets or information that is

17  confidential, proprietary, commercially sensitive, competitively significant or

18  personal to Biosense, its affiliates and its respective employees and/or clients,

19  customers or counterparties, or that constitutes information that is subject to other

20  protective orders, nondisclosure agreements or other confidentiality undertakings.

21  To the extent Biosense provides information or documents in response to the

22  Requests, it will do so only subject to the terms and conditions of an appropriate

23  Protective Order entered by the Court in this action.

24       5.     Biosense objects to the Requests, including the Definitions and

25  Instructions therein, to the extent that they seek information concerning events

26  outside the time period relevant to the allegations at issue in the Corrected Second

27  Amended Complaint in this action or purport to require Biosense to respond as to

28

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1    all times.  Biosense is willing to meet and confer with Plaintiff to determine an

2    appropriate time period for the Requests.

3              6.      Biosense objects to the Requests, including the Definitions and

4    Instructions therein, to the extent that they are cumulative or duplicative, vague

5    and ambiguous, overly broad, unduly burdensome, lacking in particularity,

6    unreasonable or seek discovery of information that is neither relevant to the claims

7    or defenses of any party to this action nor reasonably calculated to lead to the

8    discovery of admissible evidence, as well as to the extent that they are unduly

9    burdensome because they impose a significant expense and inconvenience on

10   Biosense or are equally obtainable from public sources or from some other source

11   or through some other means of discovery that is more convenient, less

12   burdensome or less expensive.

13             7.      Biosense objects to the Requests as overbroadly broad, unduly

14   burdensome and seeking documents that are neither relevant to the claims or

15   defenses of either party in this Action nor proportional to the needs of the case to

16   the extent that they seek information regarding claims that were dismissed pursuant

17   to the Court's August 18, 2020 Opinion and Order granting in part and denying in

18   part Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court Order

19   Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58).

20             8.      Biosense objects to the Requests, including the Definitions and

21   Instructions therein, to the extent that they purport to require Biosense to conduct

22   anything beyond a reasonable and diligent search where responsive information

23   reasonably would be expected to be found (including electronic sources).  Biosense

24   further objects to the Requests to the extent that they purport to require Biosense to

25   search for and disclose information that is not maintained by, or on behalf of,

26   persons believed to have significant involvement in the matters at issue in this

27   litigation.

28

4

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

9.      Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they purport to require Biosense to draw subjective or legal conclusions or are predicated on subjective or legal conclusions or arguments. Subject to and without waiving any objections, Biosense states that any response, production of documents or provision of information in response to the Requests is not intended to provide, and shall not constitute or be construed as providing, an admission concerning any of the terms used in the Requests.

10.     Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they contain inaccurate, incomplete or misleading descriptions of the facts, persons, relationships, and/or events underlying this action.  Biosense further objects to the Requests, including the Definitions and Instructions therein, to the extent that they assume the existence of facts that do not exist or the occurrence of events that did not take place.  Any response, production of documents or provision of information in response to the Requests is not intended to provide, and shall not constitute or be construed as providing, an admission that any factual predicates stated in the Requests are accurate.

11.     Biosense objects to the Requests, including the Definitions and Instructions therein, as overly broad and unduly burdensome to the extent that they exceed the definitions of those terms under the Applicable Rules.  Biosense further objects to the Requests, including the Definitions and Instructions therein, as overly broad and unduly burdensome to the extent that they purport to require production of "any" or "all" information under circumstances in which a subset of information would be sufficient to show the pertinent information.

12.     Biosense objects to the definition of "You" or "your" to the extent that it seeks to impose an obligation to respond on behalf of any individual or entity other than Biosense.  These answers and objections are made on behalf of Biosense, as defined herein, only and should not be construed as applicable to any

5

1    other party, entity or person unless otherwise stated.  Biosense will respond to the

2    Requests based only on information known to it, and which is in its own

3    possession, custody or control, to the extent required by the Applicable Rules.

4          13.    Biosense objects to the definition of "Policy" as overly broad, vague

5    and ambiguous to the extent it is includes a wide range of requirements and

6    conduct not consistent with the ordinary business usage of the term.  In responding

7    to these Requests, Biosense will apply the ordinary business usage of the term.

8          14.    Biosense objects to these Requests, including the Definitions and

9    Instructions therein, to the extent that they seek documents that do not currently

10   exist or purport to require Biosense to create, compile or develop new documents.

11         15.    By responding that the responsive information will be produced in

12   response to a particular Request, Biosense does not warrant that it has responsive

13   material or that such materials exist, only that it will conduct a reasonable search,

14   of a reasonable scope, and make available responsive, non-privileged documents

15   located thereby.  No objection, or lack thereof, is an admission by Biosense as to

16   the existence or non-existence of any information.

17         16.    Biosense is providing these responses without waiver of or prejudice

18   to (a) its right at any later time to raise objections as to the competence, relevance,

19   materiality, privilege, work product character and admissibility as evidence, for

20   any purpose, of (i) the Requests or any part thereof, or (ii) statements made in this

21   Response to the Requests or any part thereof; or (b) the right to object to the use of

22   any of the information disclosed hereunder in any subsequent proceedings or the

23   trial of this or any other actions; or (c) the right to object on any ground at any time

24   to a demand for further response to these or other discovery requests in this action.

25   Any response or objection to an individual Request is not an acknowledgement

26   that the information requested therein exists or is in Biosense's possession, custody

27   or control.

28

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

17.     These Responses are based on Biosense's investigation to date of those sources within its possession, custody or control where it reasonably believes responsive information or documents may exist.  Biosense reserves the right to revise, correct, add to, amend, supplement and clarify these Reponses in accordance with the Federal Rules of Civil Procedure, the Local Rules for the United States District Court of the Central District of California and any relevant orders issued by the Court, with additional information, documents or objections that may become available or come to Biosense's attention at any time, and to rely upon such information, documents or objections in any hearing, trial or other proceeding in this litigation.

## RESPONSES AND OBJECTIONS

## REQUEST FOR PRODUCTION NO. 1:

Organization Charts. All organization charts and internal memoranda showing or describing the organization of your employees involved in the design, marketing, sale, or servicing of your products or services or your network of field service engineers

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein.  Biosense further objects to this Request on the ground that it is overly broad, unduly burdensome and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case.  Biosense further objects to the extent the Request requires production of "all" documents under circumstances in which a subset of documents would be sufficient to show any relevant information.  Biosense further objects to this Request as cumulative and duplicative of Interrogatory No. 1 of Plaintiff's First Interrogatories.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1    Subject to and without waiving the above Objections, Biosense will conduct

2    a reasonable search for documents sufficient to show the organization of Biosense

3    employees with supervisory responsibility for the design, marketing or sale of

4    Biosense's CARTO 3 cardiac mapping system and Biosense diagnostic and

5    mapping catheters, and employees with supervisory responsibility for clinical

6    support for CARTO 3, and will produce responsive, non-privileged documents, if

7    any, located in that search.

8    **REQUEST FOR PRODUCTION NO. 2:**

9    <u>Competitive Analysis</u>. All studies, surveys, analyses and reports which were

10   prepared by or for any officer(s) or director(s) for the purpose of evaluating or

11   analyzing your business with respect to market shares, competition, competitors,

12   markets, potential for sales growth or expansion into product or geographic

13   markets.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

15   Biosense incorporates by reference the General Objections set forth above,

16   including the objections to the Definitions of the terms contained in this Request,

17   as if fully stated herein.  Biosense further objects to this Request on the ground that

18   the Request is overly broad, unduly burdensome, and seeks documents that are

19   neither relevant to the claims or defenses of either party in this Action nor

20   proportional to the needs of the case.  Biosense further objects to the extent the

21   Request requires production of "all" documents under circumstances in which a

22   subset of documents would be sufficient to show any relevant information.

23   Subject to and without waiving the above Objections, Biosense will conduct

24   a reasonable search for documents responsive to this Request relating to Biosense's

25   CARTO 3 cardiac mapping system and Biosense diagnostic and mapping catheters

26   pursuant to a mutually agreed upon search protocol to be negotiated by the parties

27   and will produce responsive, non-privileged documents, if any, located in that

28   search.

8

**REQUEST FOR PRODUCTION NO. 3:**

_Transaction Data_. Electronically stored information to be produced in xls format for all of your customer transactions, including any transaction number, transaction type (e.g., sale, return, credit, rebate, service or administrative fee or charge), invoice number, transaction date, order date, shipping date, delivery date, customer name, customer id, facility name, facility id, billing address, delivery address, order code, item code, product code, part number, product name, product description, unit cost, unit price, product quantity, and total price.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein.  Biosense further objects on the grounds that the Request is overly broad, unduly burdensome and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case.  Biosense further objects to this Request to the extent it seeks documents that do not currently exist or purports to require Biosense to create, compile or develop new documents.  Biosense further objects to this Request to the extent it calls for the disclosure of confidential customer information.

Subject to and without waiving the above Objections, Biosense is willing to meet and confer regarding parameters for a reasonable search for relevant information relating to Biosense's CARTO 3 cardiac mapping system and Biosense diagnostic and mapping catheters responsive to this Request.

**REQUEST FOR PRODUCTION NO. 4:**

_Case Logs_. All documents and electronically stored information recording or tracking cases or electrophysiology studies or procedures by your customers using your products or services, including any database of procedures using the CARTO 3 cardiac mapping system that identifies the catheters used and who supplied them for each procedure.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the extent the Request requires production of "all" documents and "any database" under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request to the extent it calls for personal identifying information or personal medical information, including information protected from disclosure by HIPAA.

Subject to and without waiving the above Objections, Biosense is willing to meet and confer concerning the relevance and scope of this Request.

**REQUEST FOR PRODUCTION NO. 5:**

Customer Database. Any database for your customer relationships or customer contracts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad, unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the extent the Request requires production of "any database" under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request to the extent it calls for the disclosure of confidential customer information.

10

1    Subject to and without waiving the above Objections, Biosense is willing to

2  meet and confer concerning the relevance and scope of this Request.

3  **REQUEST FOR PRODUCTION NO. 6:**

4    <u>Promotional Materials</u>. Documents sufficient to show all documents and

5  electronically stored information distributed to your employees or the public (e.g.,

6  hospitals, physicians, or patients) for purposes of marketing or advertising your

7  company, products, or services (including any comparison of products or services

8  provided by you to products or services provided by others).

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

10    Biosense incorporates by reference the General Objections set forth above,

11  including the objections to the Definitions of the terms contained in this Request,

12  as if fully stated herein.  Biosense further objects to this Request on the ground that

13  the Request is overly broad, unduly burdensome, and seeks documents that are

14  neither relevant to the claims or defenses of either party in this Action nor

15  proportional to the needs of the case.  Biosense further objects to this Request as it

16  seeks information that is not relevant to the claims and defenses in this Action,

17  given the Court's August 18, 2020 Opinion and Order granting in part and denying

18  in part Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court

19  Order Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58).

20  Biosense further objects to the Request as cumulative and duplicative of Request

21  Nos. 8 and 16.

22    Subject to and without waiving the above Objections, Biosense will conduct

23  a reasonable search for documents sufficient to show marketing and advertising

24  materials distributed by Biosense for the CARTO 3 cardiac mapping system and

25  Biosense diagnostic and mapping catheters from January 1, 2016 to the date of

26  these Requests and will produce responsive, non-privileged documents, if any,

27  located in that search.

28

1    **REQUEST FOR PRODUCTION NO. 7:**

2         <u>Customer Surveys</u>. All surveys and polls of hospitals, physicians, nurses, or

3    administrators.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

5         Biosense incorporates by reference the General Objections set forth above,

6    including the objections to the Definitions of the terms contained in this Request,

7    as if fully stated herein.  Biosense further objects to this Request on the ground that

8    the Request is overly broad, unduly burdensome, and seeks documents that are

9    neither relevant to the claims or defenses of either party in this Action nor

10   proportional to the needs of the case.  Biosense further objects to the extent the

11   Request requires production of "all" documents under circumstances in which a

12   subset of documents would be sufficient to show any relevant information.

13   Biosense further objects to this Request to the extent it calls for the disclosure of

14   confidential customer information.

15        Subject to and without waiving the above Objections, Biosense is willing to

16   meet and confer concerning the relevance and scope of this Request.

17   **REQUEST FOR PRODUCTION NO. 8:**

18        <u>Product Features</u>. All documents discussing or detailing any features or

19   attributes, including any recommended use, of your products or services.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

21        Biosense incorporates by reference the General Objections set forth above,

22   including the objections to the Definitions of the terms contained in this Request,

23   as if fully stated herein.  Biosense further objects to this Request on the ground that

24   the Request is overly broad, unduly burdensome, and seeks documents that are

25   neither relevant to the claims or defenses of either party in this Action nor

26   proportional to the needs of the case to the extent it seeks.  Biosense further objects

27   to the extent the Request requires production of "all" documents "discussing or

28   detailing" features and attributes of Biosense products under circumstances in

12

which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request as it seeks information that is not relevant to the claims and defenses in this Action, given the Court's August 18, 2020 Opinion and Order granting in part and denying in part Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58). Biosense further objects to the Request as cumulative and duplicative of Request Nos. 6 and 16.

Subject to and without waiving the above Objections, Biosense will conduct a reasonable search for documents sufficient to show the features, attributes and recommended use of the CARTO 3 cardiac mapping system and Biosense diagnostic and mapping catheters from January 1, 2016 to the date of these Requests and will produce responsive, non-privileged documents, if any, located in that search.

**REQUEST FOR PRODUCTION NO. 9:**

Physician Preferences. All documents discussing or detailing the role of physicians in selecting a cardiac mapping system, clinical support specialist, or catheter for use in a procedure or for purchase by your customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the extent the Request requires production of "all" documents under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request to the extent it calls for the disclosure of confidential customer information. Biosense further objects to this Request as it

13

1    seeks information that is not relevant to the claims and defenses in this Action,

2    given the Court's August 18, 2020 Opinion and Order granting in part and denying

3    in part Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court

4    Order Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58).

5         Subject to and without waiving the above Objections, Biosense will conduct

6    a reasonable search for documents responsive to this Request relating to Biosense's

7    CARTO 3 cardiac mapping system and Biosense diagnostic and mapping catheters

8    pursuant to a mutually agreed upon search protocol to be negotiated by the parties

9    and will produce responsive, non-privileged documents, if any, located in that

10   search.

11   **REQUEST FOR PRODUCTION NO. 10:**

12        <u>Paid Consultants</u>. Documents sufficient to identify each physician,

13   administrator, and executive that was paid by you for consulting or other services

14   while affiliated with any customer, and the amounts paid each year by you to each

15   such person for any consulting or other services.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

17        Biosense incorporates by reference the General Objections set forth above,

18   including the objections to the Definitions of the terms contained in this Request,

19   as if fully stated herein.  Biosense further objects to this Request on the ground that

20   the Request is overly broad and unduly burdensome, and seeks documents that are

21   neither relevant to the claims or defenses of either party in this Action nor

22   proportional to the needs of the case.

23        Subject to and without waiving the above Objections, Biosense will conduct

24   a reasonable search for documents sufficient to show the requested information for

25   the time period January 1, 2016 to present and will produce responsive, non-

26   privileged documents, if any, located in that search.

27

28

14

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

**REQUEST FOR PRODUCTION NO. 11:**

Clinical Support. All documents discussing or detailing the costs in time or money for hospitals to train staff to become proficient in operating the CARTO 3 cardiac mapping system software without supervision or assistance.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein.  Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case.  Biosense further objects to the extent the Request requires production of "all" documents under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request as it seeks information that is not relevant to the claims and defenses in this Action, given the Court's August 18, 2020 Opinion and Order granting in part and denying in part Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58).

**REQUEST FOR PRODUCTION NO. 12:**

Training Materials. Documents sufficient to show all training materials available or provided to your customers or anyone else regarding operation of your products, along with any documents relating to restrictions on access to training materials.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein.  Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are

15

1  neither relevant to the claims or defenses of either party in this Action nor

2  proportional to the needs of the case.  Biosense further objects to the extent the

3  Request requires production of "all" documents under circumstances in which a

4  subset of documents would be sufficient to show any relevant information.

5  Biosense further objects to this Request as it seeks information that is not relevant

6  to the claims and defenses in this Action, given the Court's August 18, 2020

7  Opinion and Order granting in part and denying in part Biosense's Motion to

8  Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's

9  Motion for Partial Reconsideration (Dkt. 58).

10  **REQUEST FOR PRODUCTION NO. 13:**

11        <u>Technician Recruitment</u>. Documents sufficient to identify each of your

12  clinical support specialists that was previously employed by any of your

13  customers.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

15        Biosense incorporates by reference the General Objections set forth above,

16  including the objections to the Definitions of the terms contained in this Request,

17  as if fully stated herein.  Biosense further objects to this Request on the ground that

18  the Request is overly broad and unduly burdensome, and seeks documents that are

19  neither relevant to the claims or defenses of either party in this Action nor

20  proportional to the needs of the case.  Biosense further objects to this Request as it

21  seeks information that is not relevant to the claims and defenses in this Action,

22  given the Court's August 18, 2020 Opinion and Order granting in part and denying

23  in part Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court

24  Order Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58).

25  **REQUEST FOR PRODUCTION NO. 14:**

26        <u>Geographic Pods</u>. All documents discussing or explaining any reasons for

27  providing clinical support by geographic pod or territory, along with documents

28

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1    sufficient to show the organization for providing clinical support to your customers

2    by geographic pod or territory.

3    **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

4         Biosense incorporates by reference the General Objections set forth above,

5    including the objections to the Definitions of the terms contained in this Request,

6    as if fully stated herein.  Biosense further objects to this Request on the ground that

7    the Request is overly broad and unduly burdensome, and seeks documents that are

8    neither relevant to the claims or defenses of either party in this Action nor

9    proportional to the needs of the case.  Biosense further objects to the extent the

10   Request requires production of "all" documents under circumstances in which a

11   subset of documents would be sufficient to show any relevant information.

12   Biosense further objects to this Request as it seeks information that is not relevant

13   to the claims and defenses in this Action, given the Court's August 18, 2020

14   Opinion and Order granting in part and denying in part Biosense's Motion to

15   Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's

16   Motion for Partial Reconsideration (Dkt. 58).

17   **REQUEST FOR PRODUCTION NO. 15:**

18        <u>Market Shares</u>. Documents sufficient to show any estimates or calculations

19   of your share or percentage of the market or sales (dollar or unit) for clinical

20   support, high-density mapping catheters, ultrasound catheters, or other products or

21   services for use with the CARTO 3 cardiac mapping system.

22   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

23        Biosense incorporates by reference the General Objections set forth above,

24   including the objections to the Definitions of the terms contained in this Request,

25   as if fully stated herein.  Biosense further objects to this Request to the extent it

26   suggests that there is a market for clinical support, high-density mapping catheters,

27   or ultrasound catheters for use with the CARTO 3 cardiac mapping system or that

28   Biosense competes in such markets.  Biosense further objects to the term "high-

17

1  density mapping catheters" as vague and ambiguous.  Biosense further objects to

2  this Request on the ground that the Request is overly broad and unduly

3  burdensome, and seeks documents that are neither relevant to the claims or

4  defenses of either party in this Action nor proportional to the needs of the case.

5  Biosense further objects to this Request as it seeks information that is not relevant

6  to the claims and defenses in this Action, given the Court's August 18, 2020

7  Opinion and Order granting in part and denying in part Biosense's Motion to

8  Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's

9  Motion for Partial Reconsideration (Dkt. 58).

10        Subject to and without waiving the above Objections, Biosense will conduct

11  a reasonable search for documents responsive to this Request relating to Biosense's

12  CARTO 3 cardiac mapping system and Biosense diagnostic and mapping catheters

13  pursuant to a mutually agreed upon search protocol to be negotiated by the parties

14  and will produce responsive, non-privileged documents, if any, located in that

15  search.

16  **REQUEST FOR PRODUCTION NO. 16:**

17        <u>Product Catalogs</u>. All catalogs for any of your products or services

18  (including mapping systems, system upgrades, system catheters, and clinical

19  support).

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

21        Biosense incorporates by reference the General Objections set forth above,

22  including the objections to the Definitions of the terms contained in this Request,

23  as if fully stated herein.  Biosense further objects to this Request on the ground that

24  the Request is overly broad and unduly burdensome, and seeks documents that are

25  neither relevant to the claims or defenses of either party in this Action nor

26  proportional to the needs of the case.  Biosense further objects to the extent the

27  Request requires production of "all" documents under circumstances in which a

28  subset of documents would be sufficient to show any relevant information.

18

1   Biosense further objects to this Request as it seeks information that is not relevant

2   to the claims and defenses in this Action, given the Court's August 18, 2020

3   Opinion and Order granting in part and denying in part Biosense's Motion to

4   Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's

5   Motion for Partial Reconsideration (Dkt. 58).  Biosense further objects to this

6   Request to the extent it is duplicative of Request Nos. 6 and 8.

7         Subject to and without waiving the above Objections, Biosense will conduct

8   a reasonable search for documents sufficient to show Biosense's product catalogs

9   for the CARTO 3 cardiac mapping system and Biosense diagnostic and mapping

10  catheters from January 1, 2016 to the date of these Requests and will produce

11  responsive, non-privileged documents, if any, located in that search.

12  **REQUEST FOR PRODUCTION NO. 17:**

13        Price Management. All studies and analyses of managing or setting prices

14  for your products or services or generating revenue.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

16        Biosense incorporates by reference the General Objections set forth above,

17  including the objections to the Definitions of the terms contained in this Request,

18  as if fully stated herein.  Biosense further objects to this Request on the ground that

19  the Request is overly broad and unduly burdensome, and seeks documents that are

20  neither relevant to the claims or defenses of either party in this Action nor

21  proportional to the needs of the case.  Biosense further objects to the extent the

22  Request requires production of "all" documents under circumstances in which a

23  subset of documents would be sufficient to show any relevant information.

24  Biosense further objects to the term "managing" with respect to prices.  Biosense

25  further objects to this Request to the extent it seeks trade secret or highly sensitive

26  competitive information.  Biosense further objects to this Request as it seeks

27  information that is not relevant to the claims and defenses in this Action, given the

28  Court's August 18, 2020 Opinion and Order granting in part and denying in part

19

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1  Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court Order

2  Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58).

3        Subject to and without waiving the above Objections, Biosense will conduct

4  a reasonable search for documents responsive to this Request relating to Biosense's

5  CARTO 3 cardiac mapping system and Biosense diagnostic and mapping catheters

6  pursuant to a mutually agreed upon search protocol to be negotiated by the parties

7  and will produce responsive, non-privileged documents, if any, located in that

8  search.

9  **REQUEST FOR PRODUCTION NO. 18:**

10      <u>Free Support</u>. All documents discussing or explaining any reasons for any

11  policy or practice from January 1, 2010 to the present that you provide Clinical

12  Account Specialists without charge to customers for product technical support on

13  the CARTO 3 cardiac mapping system.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

15        Biosense incorporates by reference the General Objections set forth above,

16  including the objections to the Definitions of the terms contained in this Request,

17  as if fully stated herein.  Biosense further objects to this Request on the ground that

18  the Request is overly broad and unduly burdensome, and seeks documents that are

19  neither relevant to the claims or defenses of either party in this Action nor

20  proportional to the needs of the case both with respect to the information requested

21  and specified date range.  Biosense further objects to the extent the Request

22  requires production of "all" documents under circumstances in which a subset of

23  documents would be sufficient to show any relevant information.  Biosense further

24  objects to this Request as it seeks information that is not relevant to the claims and

25  defenses in this Action, given the Court's August 18, 2020 Opinion and Order

26  granting in part and denying in part Biosense's Motion to Dismiss (Dkt. 45), and

27  the October 7, 2020 Court Order Regarding Biosense's Motion for Partial

28  Reconsideration (Dkt. 58).

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

**REQUEST FOR PRODUCTION NO. 19:**

Case Coverage. All documents discussing or explaining any reasons for any policy or practice from January 1, 2010 to the present that your Clinical Account Specialists can only provide product technical support in cases that use diagnostic mapping and ultrasound catheters distributed by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case both with respect to the information requested and the specified date range. Biosense further objects to the extent the Request requires production of "all" documents under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request to the extent it is duplicative of Request No. 20.

Subject to and without waiving the above Objections, Biosense will conduct a reasonable search for documents responsive to this Request pursuant to a mutually agreed upon search protocol to be negotiated by the parties and will produce responsive, non-privileged documents, if any, located in that search.

**REQUEST FOR PRODUCTION NO. 20:**

Policy Enforcement. All documents relating to communications with customers regarding any policy that your Clinical Account Specialists can only provide product technical support in cases that use diagnostic mapping and ultrasound catheters distributed by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request,

21

as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the extent the Request requires production of "all" documents under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request to the extent it is duplicative of Request No. 19.

Subject to and without waiving the above Objections, Biosense will conduct a reasonable search for documents responsive to this Request pursuant to a mutually agreed upon search protocol to be negotiated by the parties and will produce responsive, non-privileged documents, if any, located in that search.

**REQUEST FOR PRODUCTION NO. 21:**

Free Goods. All studies or analyses of offering any product or service for free to customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the extent the Request requires production of "all" documents under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to this Request as it seeks information that is not relevant to the claims and defenses in this Action, given the Court's August 18, 2020 Opinion and Order granting in part and denying in part Biosense's Motion to

22

1    Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's

2    Motion for Partial Reconsideration (Dkt. 58).

3    **REQUEST FOR PRODUCTION NO. 22:**

4         Sales Promotions. Documents sufficient to show any sales promotions or

5    programs (e.g., free software upgrades) offered to any customer based in whole or

6    in part on the dollar or unit volume or percentage of new catheters, reprocessed

7    catheters, or total catheters purchased from you.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

9         Biosense incorporates by reference the General Objections set forth above,

10   including the objections to the Definitions of the terms contained in this Request,

11   as if fully stated herein. Biosense further objects to this Request on the ground that

12   the Request is overly broad and unduly burdensome, and seeks documents that are

13   neither relevant to the claims or defenses of either party in this Action nor

14   proportional to the needs of the case. Biosense further objects to this Request to

15   the extent it calls for the disclosure of confidential customer information. Biosense

16   further objects to this Request to the extent it seeks trade secret or highly sensitive

17   competitive information.

18        Subject to and without waiving the above Objections, Biosense will conduct

19   a reasonable search for documents sufficient to show the requested information

20   from January 1, 2016 to the date of these Requests and will produce responsive,

21   non-privileged documents, if any, located in that search.

22   **REQUEST FOR PRODUCTION NO. 23:**

23        Used Catheters. Documents sufficient to show your policies or practices

24   regarding the repurchase, repossession, or destruction of used catheters in the

25   possession of customers or third parties and the recycling, reprocessing, or resale

26   of used catheters acquired from customers.

27

28

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

2          Biosense incorporates by reference the General Objections set forth above,

3  including the objections to the Definitions of the terms contained in this Request,

4  as if fully stated herein.  Biosense further objects to this Request on the ground that

5  the Request is overly broad and unduly burdensome, and seeks documents that are

6  neither relevant to the claims or defenses of either party in this Action nor

7  proportional to the needs of the case.  Biosense further objects to the extent this is

8  duplicative of Request No. 24.

9          Subject to and without waiving the above Objections, Biosense will conduct

10  a reasonable search for documents sufficient to show the requested information

11  from January 1, 2016 to the date of these Requests and will produce responsive,

12  non-privileged documents, if any, located in that search.

13  **REQUEST FOR PRODUCTION NO. 24:**

14          Recovery Logs. All documents recording or tracking your recovery and

15  disposition of catheters used by your customers.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

17          Biosense incorporates by reference the General Objections set forth above,

18  including the objections to the Definitions of the terms contained in this Request,

19  as if fully stated herein.  Biosense further objects to this Request on the ground that

20  the Request is overly broad and unduly burdensome, and seeks documents that are

21  neither relevant to the claims or defenses of either party in this Action nor

22  proportional to the needs of the case.  Biosense further objects to the extent the

23  Request requires production of "all" documents under circumstances in which a

24  subset of documents would be sufficient to show any relevant information.

25          Subject to and without waiving the above Objections, Biosense will conduct

26  a reasonable search for documents sufficient to show the recovery and disposition

27  of Biosense diagnostic and mapping catheters used by Biosense customers from

28

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1  January 1, 2016 to the date of these Requests and will produce responsive, non-

2  privileged documents, if any, located in that search.

3  **REQUEST FOR PRODUCTION NO. 25:**

4      <u>Closed System</u>. All documents from January 1, 2010 to the present

5  discussing or explaining the reasons why the CARTO 3 cardiac mapping system is

6  designed to limit compatibility to high-density mapping catheters or ultrasound

7  catheters manufactured by Biosense.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

9      Biosense incorporates by reference the General Objections set forth above,

10  including the objections to the Definitions of the terms contained in this Request,

11  as if fully stated herein.  Biosense further objects to this Request on the ground that

12  the Request is overly broad and unduly burdensome, and seeks documents that are

13  neither relevant to the claims or defenses of either party in this Action nor

14  proportional to the needs of the case both with respect to the information requested

15  and the specified date range.  Biosense further objects to the term "high-density

16  mapping catheters" as vague and ambiguous.  Biosense further objects to this

17  Request to the extent that it assumes the existence of facts that do not exist or the

18  occurrence of events that did not take place.  Biosense further objects to the extent

19  the Request requires production of "all" documents under circumstances in which a

20  subset of documents would be sufficient to show any relevant information.

21  Biosense further objects to this Request to the extent it seeks trade secret or highly

22  sensitive competitive information.

23      Subject to and without waiving the above Objections, Biosense will conduct

24  a reasonable search for documents responsive to this Request pursuant to a

25  mutually agreed upon search protocol to be negotiated by the parties and will

26  produce responsive, non-privileged documents, if any, located in that search.

27

28

25

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

**REQUEST FOR PRODUCTION NO. 26:**

<u>Blocking Technology</u>. Documents sufficient to show any technology (e.g., encryption, passwords) installed by you that blocks or prevents third parties from accessing, using, or reprocessing catheters manufactured by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the terms "accessing" or "using" Biosense catheters as vague and ambiguous as used in the Request. Biosense further objects to this Request to the extent that it assumes the existence of facts that do not exist or the occurrence of events that did not take place. Biosense further objects to the Request to the extent it does not know what technology might block or prevent a particular third party from reprocessing its catheters. Biosense further objects to the Request to the extent it seeks information beyond the specific technology it alleges blocks or prevents third parties from reprocessing Biosense catheters. Biosense further objects to this Request to the extent it seeks trade secret or highly sensitive competitive information.

Subject to and without waiving the above Objections, Biosense is available to meet and confer concerning the relevance and scope of this request.

**REQUEST FOR PRODUCTION NO. 27:**

<u>Reprocessing Catheters</u>. All documents relating to communications between employees of Biosense Webster, Inc. and employees of SterilMed, Inc. regarding the installation or bypassing of technology (e.g., encryption, passwords) that blocks or prevents third parties from accessing, using, or reprocessing catheters.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the terms "accessing" or "using" Biosense catheters as vague and ambiguous as used in the Request. Biosense further objects to this Request to the extent that it assumes the existence of facts that do not exist or the occurrence of events that did not take place. Biosense further objects to the Request to the extent it does not know what technology might block or prevent a particular third party from reprocessing its catheters. Biosense further objects to the Request to the extent it seeks information beyond the specific technology it alleges blocks or prevents third parties from reprocessing Biosense catheters. Biosense further objects to this Request to the extent it seeks trade secret or highly sensitive competitive information.

Subject to and without waiving the above Objections, Biosense is available to meet and confer concerning the relevance and scope of this request.

**REQUEST FOR PRODUCTION NO. 28:**

Software Upgrades. All documents relating to communications with your employees responsible for the design, engineering, or manufacturing of your catheters regarding software upgrades on your cardiac mapping system(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor

27

1    proportional to the needs of the case, including to the extent it seeks production of

2    documents relating to all software upgrades regardless of their relationship to the

3    matters at issue in this litigation.  Biosense further objects to the extent the Request

4    requires production of "all" documents under circumstances in which a subset of

5    documents would be sufficient to show any relevant information.  Biosense further

6    objects to this Request to the extent it seeks trade secret or highly sensitive

7    competitive information.

8        Subject to and without waiving the above Objections, Biosense is available

9    to meet and confer concerning the relevance and scope of this request.

10   **REQUEST FOR PRODUCTION NO. 29:**

11       Innovative Health. All documents regarding Innovative Health or its

12   products.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

14       Biosense incorporates by reference the General Objections set forth above,

15   including the objections to the Definitions of the terms contained in this Request,

16   as if fully stated herein.  Biosense further objects to this Request on the ground that

17   the Request is overly broad and unduly burdensome, and seeks documents that are

18   neither relevant to the claims or defenses of either party in this Action nor

19   proportional to the needs of the case.  Biosense further objects to the extent the

20   Request requires production of "all" documents under circumstances in which a

21   subset of documents would be sufficient to show any relevant information.

22   Biosense further objects to the extent it is cumulative and duplicative of Request

23   No. 30.

24       Subject to and without waiving the above Objections, Biosense will conduct

25   a reasonable search for documents responsive to this Request relating to Innovative

26   Health's reprocessed catheters pursuant to a mutually agreed upon search protocol

27   to be negotiated by the parties and will produce responsive, non-privileged

28   documents, if any, located in that search.

28

**REQUEST FOR PRODUCTION NO. 30:**

<u>Reprocessed Catheters</u>. All documents regarding catheters reprocessed by Innovative Health or any other third party, including any communications or correspondence about the use, or discouraging or preventing the use, by your customers of catheters reprocessed by Innovative Health or any third party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to the extent the Request requires production of "all" documents under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to the extent it is cumulative and duplicative of Request No. 29.

Subject to and without waiving the above Objections, Biosense will conduct a reasonable search for documents responsive to this Request pursuant to a mutually agreed upon search protocol to be negotiated by the parties and will produce responsive, non-privileged documents, if any, located in that search.

**REQUEST FOR PRODUCTION NO. 31:**

<u>SterilMed Catheters</u>. Documents sufficient to show all training materials provided to your employees and customers for operating the CARTO 3 cardiac mapping system software in electrophysiology studies or procedures where the electrophysiologist is using the CARTO 3 cardiac mapping system and diagnostic mapping catheters or ultrasound catheters reprocessed by SterilMed.

29

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the ground that the Request is overly broad and unduly burdensome, and seeks documents that are neither relevant to the claims or defenses of either party in this Action nor proportional to the needs of the case. Biosense further objects to this Request as it seeks information that is not relevant to the claims and defenses in this Action, given the Court's August 18, 2020 Opinion and Order granting in part and denying in part Biosense's Motion to Dismiss (Dkt. 45), and the October 7, 2020 Court Order Regarding Biosense's Motion for Partial Reconsideration (Dkt. 58).

Subject to and without waiving the above Objections, Biosense will conduct a reasonable search for documents sufficient to show training materials provided to Biosense employees and customers for operating the CARTO 3 cardiac mapping system software in electrophysiology studies or procedures where the electrophysiologist is using the CARTO 3 cardiac mapping system and diagnostic mapping catheters or ultrasound catheters reprocessed by SterilMed from January 1, 2016 to the date of these Requests and will produce responsive, non-privileged documents, if any, located in that search.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIRST SET OF REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1

DATED: October 19, 2020    STRADLING YOCCA CARLSON & RAUTH,
A Professional Corporation

2

3

By:  /s/ Karla Kraft
Karla Kraft
Katie Beaudin

4

5

And

6

7

Katherine B. Forrest *(Pro Hac Vice)*
Michael T. Reynolds *(Pro Hac Vice)*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

8

9

10

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

1

**CERTIFICATE OF SERVICE**

2

3        I, Lillian S. Grossbard, hereby certify that on October 19, 2020, pursuant to

4    Fed. R. Civ. Proc. 5(b)(2)(E), I caused a true and correct copy of the

5    DEFENDANT BIOSENSE WEBSTER, INC'S RESPONSES TO INNOVATIVE

6    HEALTH LLC'S FIRST SET OF REQUESTS FOR DOCUMENTS foregoing to

7    be served on the following counsel of record via email on the below email

8    addresse(s):

9    Panteha Abdollahi                          Jeffrey L. Berhold (*Pro Hac Vice*)
     THEODORA ORINGHER PC                        JEFFREY L. BERHOLD, P.C.
10   535 Anton Boulevard, Ninth Floor           1230 Peachtree Street, Suite 1050
     Costa Mesa, California  92626-7109          Atlanta, Georgia  30309
11   Telephone:  (714) 549-6200                  Telephone:  (404) 872-3800
     Facsimile:  (714) 549-6201                  Facsimile:  (678) 868-2021
12   Email:  pabdollahi@tocounsel.com            Email:  jeff@berhold.com

13   Attorneys for Plaintiff
     INNOVATIVE HEATH LLC
14                                               Attorneys for Plaintiff
                                                 INNOVATIVE HEATH LLC
15

16

17                                               /s/ Lillian S. Grossbard
                                                    Lillian S. Grossbard
18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 11

KARLA KRAFT, State Bar No. 205530
  kkraft@sycr.com
KATIE BEAUDIN, State Bar No. 306402
  kbeaudin@sycr.com
STRADLING YOCCA CARLSON & RAUTH
A Professional Corporation
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

Katherine B. Forrest (*Pro Hac Vice*)
kforrest@cravath.com
Michael T. Reynolds (*Pro Hac Vice*)
mreynolds@cravath.com
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC, | CASE NO. 8:19-cv-01984-JVS-KES |
| Plaintiff, | Hon. James V. Selna |
| vs. | **DEFENDANT BIOSENSE WEBSTER, INC.'S RESPONSES TO INNOVATIVE HEALTH LLC'S FOURTH REQUESTS FOR DOCUMENTS** |
| BIOSENSE WEBSTER, INC., | |
| Defendant. | |
| | Complaint Filed: October 18, 2019 |
| | Corrected Second Amended Complaint Filed: October 16, 2020 |

1

1        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure

2  ("Federal Rules"), the Local Rules of the United States for the Central District of

3  California ("Local Rules") and any other applicable laws or rules, Defendant

4  Biosense Webster, Inc. ("Biosense") hereby responds and objects as follows to

5  Innovative Health LLC's ("Innovative" or "Plaintiff") Fourth Requests for

6  Documents dated December 31, 2020 (the "Requests").

7                   **GENERAL OBJECTIONS**

8        The following general objections ("General Objections") apply to the

9  Requests for Production generally and to the Definitions and Instructions and are

10  incorporated in Biosense's Specific Responses to each Request.  Biosense's

11  response to any Request is not and shall not be deemed a waiver of Biosense's

12  General Objections.  Any undertaking to search for, or provide information in

13  response to, any Request remains subject to the General Objections.

14        1.      Biosense objects to the Requests, including the Definitions and

15  Instructions therein, on the ground and to the extent that they purport to impose

16  duties and obligations beyond those imposed by the Federal Rules, the Local Rules

17  and/or any applicable rule or law (the "Applicable Rules").  Subject to and without

18  waiving any General or Specific Objections, in responding to the Requests,

19  Biosense will construe the Requests, including the Definitions and Instructions

20  therein, in accordance with the Applicable Rules.

21        2.      Biosense objects to the Requests, including the Definitions and

22  Instructions therein, on the grounds that they seek documents or information that

23  come within the scope of the attorney-client privilege, the work-product doctrine,

24  the common interest or joint defense privilege, the critical self-analysis privilege,

25  the privilege accorded to subsequent remedial measures, or any other applicable

26  privilege or immunity, or that otherwise are exempted from disclosure.  Biosense

27  hereby claims such privileges and protections to the extent implicated by the

28  Requests and excludes privileged or protected material from its responses to the

Requests.  Any disclosure of any such privileged or protected material in response to the Requests is inadvertent and not intended to waive those privileges and protections.  Biosense reserves the right to demand that Plaintiff return, destroy or sequester any privileged or protected documents produced and all copies thereof consistent with the Applicable Rules or the terms and conditions of an appropriate Protective Order entered by the Court in this action.

3.    Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent they call for personal identifying information or personal medical information, including information protected from disclosure by the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1230(d). et. seq., and 45 C.F.R. § 164.512 ("HIPAA"), which prohibits the disclosure of medical information provided by a health care provider absent an authorization expressly releasing such information.

4.    Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they call for the disclosure of confidential information including, without limitation, trade secrets or information that is confidential, proprietary, commercially sensitive, competitively significant or personal to Biosense, its affiliates and its respective employees and/or clients, customers or counterparties, or that constitutes information that is subject to other protective orders, nondisclosure agreements or other confidentiality undertakings.  Biosense further objects to the Requests to the extent that they purport to impose on Biosense burdens and obligations that are broader than, inconsistent with or not authorized under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California, the Stipulated Protective Order entered by the Court in this action on November 12, 2020 (Dkt. 65) or the Protocol Governing Electronically Stored Information and Hard Copy Documents entered by the Court in this action on November 12, 2020 (Dkt. 68).

3

5.     Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they seek information concerning events outside the time period relevant to the allegations at issue in the Corrected Second Amended Complaint in this action or purport to require Biosense to respond as to all times.  Unless otherwise specified, Biosense will apply the Parties' agreed upon January 1, 2015 default start date.

6.     Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they are cumulative or duplicative, vague and ambiguous, overly broad, unduly burdensome, lacking in particularity, unreasonable or seek discovery of information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence, as well as to the extent that they are unduly burdensome because they impose a significant expense and inconvenience on Biosense or are equally obtainable from public sources or from some other source or through some other means of discovery that is more convenient, less burdensome or less expensive.

7.     Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they purport to require Biosense to conduct anything beyond a reasonable and diligent search where responsive information reasonably would be expected to be found (including electronic sources).  Biosense further objects to the Requests to the extent that they purport to require Biosense to search for and disclose information that is not maintained by, or on behalf of, persons believed to have significant involvement in the matters at issue in this litigation.

8.     Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they purport to require Biosense to draw subjective or legal conclusions or are predicated on subjective or legal conclusions or arguments.  Subject to and without waiving any objections, Biosense states that

4

1    any response, production of documents or provision of information in response to

2    the Requests is not intended to provide, and shall not constitute or be construed as

3    providing, an admission concerning any of the terms used in the Requests.

4        9.    Biosense objects to the Requests, including the Definitions and

5    Instructions therein, to the extent that they contain inaccurate, incomplete or

6    misleading descriptions of the facts, persons, relationships, and/or events

7    underlying this action.  Biosense further objects to the Requests, including the

8    Definitions and Instructions therein, to the extent that they assume the existence of

9    facts that do not exist or the occurrence of events that did not take place.  Any

10   response, production of documents or provision of information in response to the

11   Requests is not intended to provide, and shall not constitute or be construed as

12   providing, an admission that any factual predicates stated in the Requests are

13   accurate.

14       10.    Biosense objects to the Requests, including the Definitions and

15   Instructions therein, as overly broad and unduly burdensome to the extent that they

16   exceed the definitions of those terms under the Applicable Rules.  Biosense further

17   objects to the Requests, including the Definitions and Instructions therein, as

18   overly broad and unduly burdensome to the extent that they purport to require

19   production of "any" or "all" information under circumstances in which a subset of

20   information would be sufficient to show the pertinent information.

21       11.    Biosense objects to the definition of "You" or "your" to the extent that

22   it seeks to impose an obligation to respond on behalf of any individual or entity

23   other than Biosense.  These answers and objections are made on behalf of

24   Biosense, as defined herein, only and should not be construed as applicable to any

25   other party, entity or person unless otherwise stated.  Biosense will respond to the

26   Requests based only on information known to it, and which is in its own

27   possession, custody or control, to the extent required by the Applicable Rules.

28

RESPONSES TO INNOVATIVE HEALTH LLC'S
FOURTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

12.     Biosense objects to the Requests, including the Definitions and Instructions therein, to the extent that they seek documents that do not currently exist or purport to require Biosense to create, compile or develop new documents.

13.     By responding that the responsive information will be produced in response to a particular Request, Biosense does not warrant that it has responsive material or that such materials exist, only that it will conduct a reasonable search, of a reasonable scope, and make available responsive, non-privileged documents located thereby.  No objection, or lack thereof, is an admission by Biosense as to the existence or non-existence of any information.

14.     Biosense is providing these responses without waiver of or prejudice to (a) its right at any later time to raise objections as to the competence, relevance, materiality, privilege, work product character and admissibility as evidence, for any purpose, of (i) the Requests or any part thereof, or (ii) statements made in this Response to the Requests or any part thereof; or (b) the right to object to the use of any of the information disclosed hereunder in any subsequent proceedings or the trial of this or any other actions; or (c) the right to object on any ground at any time to a demand for further response to these or other discovery requests in this action. Any response or objection to an individual Request is not an acknowledgement that the information requested therein exists or is in Biosense's possession, custody or control.

15.     These Responses are based on Biosense's investigation to date of those sources within its possession, custody or control where it reasonably believes responsive information or documents may exist.  Biosense reserves the right to revise, correct, add to, amend, supplement and clarify these Reponses in accordance with the Federal Rules of Civil Procedure, the Local Rules for the United States District Court of the Central District of California and any relevant orders issued by the Court, with additional information, documents or objections that may become available or come to Biosense's attention at any time, and to rely

6

1   upon such information, documents or objections in any hearing, trial or other

2   proceeding in this litigation.

3   **RESPONSES AND OBJECTIONS**

4   **REQUEST FOR PRODUCTION NO. 46:**

5       Reprocessing Prevention. All documents from January 1, 2010 to the present

6   regarding discussions, proposals, plans, or efforts to prevent reprocessing or reuse

7   of your catheters by third parties (including the Falcon Project).

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

9       Biosense incorporates by reference the General Objections set forth above,

10  including the objections to the Definitions of the terms contained in this Request,

11  as if fully stated herein.  Biosense further objects to this Request on the grounds

12  that it is overly broad, unduly burdensome and seeks documents that are neither

13  relevant to the claims or defenses of either party in this action nor proportional to

14  the needs of the case, including because it calls for Biosense to provide

15  information over an eleven-year period, including many years prior to the time

16  Innovative began reprocessing Biosense catheters, and because Innovative has not

17  been prevented from reprocessing any of the Biosense catheters at issue in this

18  litigation.  Biosense further objects to this Request to the extent that it assumes the

19  existence of facts that do not exist or the occurrence of events that did not take

20  place, including but not limited to the description of "the Falcon Project" or any

21  other project as concerning the use of technology to prevent the reprocessing or

22  reuse of catheters.  Biosense further objects to the Request to the extent it seeks

23  information beyond the specific technology Plaintiff alleges blocks or prevents

24  third parties from reprocessing Biosense catheters.  Biosense further objects to this

25  Request to the extent the Request requires production of "all" documents under

26  circumstances in which a subset of documents would be sufficient to show any

27  relevant information.  Biosense further objects to this Request to the extent it seeks

28  trade secret or highly sensitive competitive information.  Biosense further objects

7

1  to this Request on the grounds that it is cumulative and duplicative of Request for

2  Production Nos. 26, 27 and 38 and Interrogatory Nos. 16 and 20.

3      Subject to and without waiving the above Objections, Biosense refers

4  Plaintiff to its response to Request for Production No. 38.

5  **REQUEST FOR PRODUCTION NO. 47:**

6      <u>Competitor Communications</u>. All communications with reprocessors,

7  distributors, or other competitors regarding the sale of reprocessed Biosense

8  catheters, the employment of former Biosense employees, the training of your

9  customers on the use of the CARTO 3, or the provision of technical support on the

10  CARTO 3.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

12      Biosense incorporates by reference the General Objections set forth above,

13  including the objections to the Definitions of the terms contained in this Request,

14  as if fully stated herein.  Biosense further objects to the terms "reprocessors,

15  distributors, or other competitors" as vague and ambiguous.  Biosense further

16  objects to this Request on the grounds that the Request is vague, overly broad,

17  unduly burdensome and seeks documents that are neither relevant to the claims or

18  defenses of either party in this action nor proportional to the needs of the case,

19  including because it calls for the production of "all communications" with a wide

20  range of non-parties in multiple, broad subject areas untethered to any specific

21  matter at issue in this litigation.  Biosense further objects to the extent the Request

22  requires production of "all" communications under circumstances in which a

23  subset of communications would be sufficient to show any relevant information.

24  Biosense further objects to this Request to the extent that it assumes the existence

25  of facts that do not exist or the occurrence of events that did not take place.

26  Biosense further objects to this Request on the grounds that it is cumulative and

27  duplicative of Request for Production Nos. 12, 19, 29, 30, 31 and 39 and

28  Interrogatory Nos. 17 and 21.

8

RESPONSES TO INNOVATIVE HEALTH LLC'S
FOURTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1    **REQUEST FOR PRODUCTION NO. 48:**

2        Case Logs. All documents and electronically stored information from

3    January 1, 2010 to the present recording or tracking cases or electrophysiology

4    studies or procedures by your customers using your products or services, including

5    any database of procedures using the CARTO 3 cardiac mapping system that

6    identifies the catheters used and who supplied them for each procedure.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

8        Biosense incorporates by reference the General Objections set forth above,

9    including the objections to the Definitions of the terms contained in this Request,

10   as if fully stated herein.  Biosense further objects to this Request on the grounds

11   that it is overly broad, unduly burdensome and seeks documents that are neither

12   relevant to the claims or defenses of either party in this action nor proportional to

13   the needs of the case both with respect to the information requested and the

14   specified date range, including because it calls for Biosense to provide all

15   documents and electronically stored information recording or tracking

16   electrophysiology studies or procedures over an eleven-year period, including

17   many years prior to the time Innovative began reprocessing Biosense catheters.

18   Biosense further objects to the extent the Request requires production of "all"

19   documents and "any database" under circumstances in which a subset of

20   documents would be sufficient to show any relevant information.  Biosense further

21   objects to this Request to the extent it calls for personal identifying information or

22   personal medical information, including information protected from disclosure by

23   HIPAA.  Biosense further objects to this Request on the grounds that it is

24   cumulative and duplicative of Request for Production No. 4.

25       Subject to and without waiving the above Objections and Biosense's

26   objections in its Responses to Innovative Health LLC's First Requests for

27   Documents, Biosense states that it has already produced documents responsive to

28   this Request and Request for Production No. 4, for the time period January 1, 2015

9

1    to October 31, 2020, as set forth in Biosense's November 11, 2020 email

2    correspondence to Innovative's counsel.

3    **REQUEST FOR PRODUCTION NO. 49:**

4         _Sales Data_. Documents sufficient to show the following information by year,

5    by month, by customer, and by product for each diagnostic catheter and ultrasound

6    catheter sold by you from January 1, 2012 to the present: product name, ordering

7    number, facility name, facility address, gross revenues, sales allowances, sales

8    discounts, returns, cost of goods sold, other selling costs (_e.g._, commissions), net

9    revenues, gross profits or losses, gross profit margins, net profits or losses, net

10   profit margins, units sold, list prices, and average selling price.

11   **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

12        Biosense incorporates by reference the General Objections set forth above,

13   including the objections to the Definitions of the terms contained in this Request,

14   as if fully stated herein.  Biosense further objects to this Request on the grounds

15   that it is overly broad, unduly burdensome and seeks documents that are neither

16   relevant to the claims or defenses of either party in this action nor proportional to

17   the needs of the case, including because it calls for Biosense to provide

18   information regarding sales over a nine-year period, including many years prior to

19   the time Innovative began reprocessing Biosense catheters.  Biosense further

20   objects to this Request to the extent it seeks documents that do not currently exist

21   or purports to require Biosense to create, compile or develop new data or

22   documents.  Biosense further objects to this Request to the extent it calls for the

23   disclosure of confidential customer information.  Biosense further objects to this

24   Request on the grounds that it is cumulative and duplicative of Request for

25   Production No. 3.

26        Subject to and without waiving the above Objections, Biosense is willing to

27   meet and confer concerning a reasonable search for and production of sales data

28   from January 1, 2015 forward to be completed by both parties.

10

RESPONSES TO INNOVATIVE HEALTH LLC'S
FOURTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

DATED:  February 1, 2021     STRADLING YOCCA CARLSON & RAUTH,
A Professional Corporation

By:   */s/ Karla Kraft*

Karla Kraft
Katie Beaudin

And

Katherine B. Forrest *(Pro Hac Vice)*
Michael T. Reynolds *(Pro Hac Vice)*
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza, 825 Eighth Avenue
New York, NY 10019-7475

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FOURTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1

**CERTIFICATE OF SERVICE**

2      I, Lillian S. Grossbard, hereby certify that on February 1, 2021, pursuant to

3  Fed. R. Civ. Proc. 5(b)(2)(E), I caused a true and correct copy of the foregoing

4  DEFENDANT BIOSENSE WEBSTER, INC.'S RESPONSES TO INNOVATIVE

5  HEALTH LLC'S FOURTH REQUESTS FOR DOCUMENTS to be served on the

6  following counsel of record via email at the below email addresses:

7  Panteha Abdollahi
   THEODORA ORINGHER PC
8  535 Anton Boulevard, Ninth Floor
   Costa Mesa, California 92626-7109
9  Telephone: (714) 549-6200
   Facsimile: (714) 549-6201
10 Email: pabdollahi@tocounsel.com

   Jeffrey L. Berhold (*Pro Hac Vice*)
   JEFFREY L. BERHOLD, P.C.
   1230 Peachtree Street, Suite 1050
   Atlanta, Georgia 30309
   Telephone: (404) 872-3800
   Facsimile: (678) 868-2021
   Email: jeff@berhold.com

11

12 Attorneys for Plaintiff
   INNOVATIVE HEALTH LLC

   Attorneys for Plaintiff
   INNOVATIVE HEALTH LLC

13

14      /s/ *Lillian S. Grossbard*

15      Lillian S. Grossbard

16

17

18

19

20

21

22

23

24

25

26

27

28

12

RESPONSES TO INNOVATIVE HEALTH LLC'S
FOURTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

EXHIBIT 12

1   KARLA KRAFT, State Bar No. 205530
      kkraft@sycr.com
2   KATIE BEAUDIN, State Bar No. 306402
      kbeaudin@sycr.com
3   STRADLING YOCCA CARLSON & RAUTH
    A Professional Corporation
4   660 Newport Center Drive, Suite 1600
    Newport Beach, CA 92660-6422
5   Telephone:  (949) 725-4000
    Facsimile:  (949) 725-4100
6
7   Katherine B. Forrest (*Pro Hac Vice*)
      kforrest@cravath.com
8   Michael T. Reynolds (*Pro Hac Vice*)
      mreynolds@cravath.com
9   CRAVATH, SWAINE & MOORE LLP
    Worldwide Plaza
10  825 Eighth Avenue
    New York, NY 10019-7475
11  Telephone:  (212) 474-1000
    Facsimile:  (212) 474-3700
12  Attorneys for Defendant
    BIOSENSE WEBSTER, INC.
13

14              **UNITED STATES DISTRICT COURT**

15             **CENTRAL DISTRICT OF CALIFORNIA**

16                  **SOUTHERN DIVISION**

17  INNOVATIVE HEALTH LLC,          CASE NO. 8:19-cv-01984-JVS-KES
                                    Hon. James V. Selna
18           Plaintiff,

19       vs.                        **DEFENDANT BIOSENSE
                                    WEBSTER, INC.'S RESPONSES
20  BIOSENSE WEBSTER, INC.,         TO INNOVATIVE HEALTH
                                    LLC'S FIFTH REQUESTS FOR
21           Defendant.            DOCUMENTS**

22
                                    Complaint Filed: October 18, 2019
23
                                    Corrected Second Amended Complaint
24                                  Filed: October 16, 2020

25

26

27

28

                          1

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure

2  ("Federal Rules"), the Local Rules of the United States for the Central District of

3  California ("Local Rules") and any other applicable laws or rules, Defendant

4  Biosense Webster, Inc. ("Biosense") hereby responds and objects as follows to

5  Innovative Health LLC's ("Innovative" or "Plaintiff") Fifth Requests for

6  Documents dated January 29, 2021 (the "Requests").

7  ## GENERAL OBJECTIONS

8    The following general objections ("General Objections") apply to the

9  Requests for Production generally and to the Definitions and Instructions and are

10  incorporated in Biosense's Specific Responses to each Request.  Biosense's

11  response to any Request is not and shall not be deemed a waiver of Biosense's

12  General Objections.  Any undertaking to search for, or provide information in

13  response to, any Request remains subject to the General Objections.

14    1.    Biosense objects to the Requests, including the Definitions and

15  Instructions therein, on the ground and to the extent that they purport to impose

16  duties and obligations beyond those imposed by the Federal Rules, the Local Rules

17  and/or any applicable rule or law (the "Applicable Rules").  Subject to and without

18  waiving any General or Specific Objections, in responding to the Requests,

19  Biosense will construe the Requests, including the Definitions and Instructions

20  therein, in accordance with the Applicable Rules.

21    2.    Biosense objects to the Requests, including the Definitions and

22  Instructions therein, on the grounds that they seek documents or information that

23  come within the scope of the attorney-client privilege, the work-product doctrine,

24  the common interest or joint defense privilege, the critical self-analysis privilege,

25  the privilege accorded to subsequent remedial measures, or any other applicable

26  privilege or immunity, or that otherwise are exempted from disclosure.  Biosense

27  hereby claims such privileges and protections to the extent implicated by the

28  Requests and excludes privileged or protected material from its responses to the

2

1    Requests.  Any disclosure of any such privileged or protected material in response

2    to the Requests is inadvertent and not intended to waive those privileges and

3    protections.  Biosense reserves the right to demand that Plaintiff return, destroy or

4    sequester any privileged or protected documents produced and all copies thereof

5    consistent with the Applicable Rules or the terms and conditions of an appropriate

6    Protective Order entered by the Court in this action.

7        3.    Biosense objects to the Requests, including the Definitions and

8    Instructions therein, to the extent that they call for the disclosure of confidential

9    information including, without limitation, trade secrets or information that is

10   confidential, proprietary, commercially sensitive, competitively significant or

11   personal to Biosense, its affiliates and its respective employees and/or clients,

12   customers or counterparties, or that constitutes information that is subject to other

13   protective orders, nondisclosure agreements or other confidentiality undertakings.

14   Biosense further objects to the Requests to the extent that they purport to impose

15   on Biosense burdens and obligations that are broader than, inconsistent with or not

16   authorized under the Federal Rules of Civil Procedure, the Local Rules of the

17   United States District Court for the Central District of California, the Stipulated

18   Protective Order entered by the Court in this action on November 12, 2020 (Dkt.

19   65) or the Protocol Governing Electronically Stored Information and Hard Copy

20   Documents entered by the Court in this action on November 12, 2020 (Dkt. 68).

21       4.    Biosense objects to the Requests, including the Definitions and

22   Instructions therein, to the extent that they seek information concerning events

23   outside the time period relevant to the allegations at issue in the Corrected Second

24   Amended Complaint in this action or purport to require Biosense to respond as to

25   all times.  Unless otherwise specified, Biosense will apply the Parties' agreed upon

26   January 1, 2015 default start date.

27       5.    Biosense objects to the Requests, including the Definitions and

28   Instructions therein, to the extent that they are cumulative or duplicative, vague

1  and ambiguous, overly broad, unduly burdensome, lacking in particularity,

2  unreasonable or seek discovery of information that is neither relevant to the claims

3  or defenses of any party to this action nor reasonably calculated to lead to the

4  discovery of admissible evidence, as well as to the extent that they are unduly

5  burdensome because they impose a significant expense and inconvenience on

6  Biosense or are equally obtainable from public sources or from some other source

7  or through some other means of discovery that is more convenient, less

8  burdensome or less expensive.

9          6.     Biosense objects to the Requests, including the Definitions and

10  Instructions therein, to the extent that they purport to require Biosense to conduct

11  anything beyond a reasonable and diligent search where responsive information

12  reasonably would be expected to be found (including electronic sources).  Biosense

13  further objects to the Requests to the extent that they purport to require Biosense to

14  search for and disclose information that is not maintained by, or on behalf of,

15  persons believed to have significant involvement in the matters at issue in this

16  litigation.

17          7.     Biosense objects to the Requests, including the Definitions and

18  Instructions therein, to the extent that they purport to require Biosense to draw

19  subjective or legal conclusions or are predicated on subjective or legal conclusions

20  or arguments.  Subject to and without waiving any objections, Biosense states that

21  any response, production of documents or provision of information in response to

22  the Requests is not intended to provide, and shall not constitute or be construed as

23  providing, an admission concerning any of the terms used in the Requests.

24          8.     Biosense objects to the Requests, including the Definitions and

25  Instructions therein, to the extent that they contain inaccurate, incomplete or

26  misleading descriptions of the facts, persons, relationships, and/or events

27  underlying this action.  Biosense further objects to the Requests, including the

28  Definitions and Instructions therein, to the extent that they assume the existence of

1    facts that do not exist or the occurrence of events that did not take place.  Any

2    response, production of documents or provision of information in response to the

3    Requests is not intended to provide, and shall not constitute or be construed as

4    providing, an admission that any factual predicates stated in the Requests are

5    accurate.

6         9.    Biosense objects to the Requests, including the Definitions and

7    Instructions therein, as overly broad and unduly burdensome to the extent that they

8    exceed the definitions of those terms under the Applicable Rules.  Biosense further

9    objects to the Requests, including the Definitions and Instructions therein, as

10   overly broad and unduly burdensome to the extent that they purport to require

11   production of "any" or "all" information under circumstances in which a subset of

12   information would be sufficient to show the pertinent information.

13        10.   Biosense objects to the definition of "You" or "your" to the extent that

14   it seeks to impose an obligation to respond on behalf of any individual or entity

15   other than Biosense.  These answers and objections are made on behalf of

16   Biosense, as defined herein, only and should not be construed as applicable to any

17   other party, entity or person unless otherwise stated.  Biosense will respond to the

18   Requests based only on information known to it, and which is in its own

19   possession, custody or control, to the extent required by the Applicable Rules.

20        11.   Biosense objects to the Requests, including the Definitions and

21   Instructions therein, to the extent that they seek documents that do not currently

22   exist or purport to require Biosense to create, compile or develop new documents.

23        12.   By responding that the responsive information will be produced in

24   response to a particular Request, Biosense does not warrant that it has responsive

25   materials or that such materials exist, only that it will conduct a reasonable search,

26   of a reasonable scope, and make available responsive, non-privileged documents

27   located thereby.  No objection, or lack thereof, is an admission by Biosense as to

28   the existence or non-existence of any information.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIFTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1       13.    Biosense is providing these responses without waiver of or prejudice

2 to (a) its right at any later time to raise objections as to the competence, relevance,

3 materiality, privilege, work product character and admissibility as evidence, for

4 any purpose, of (i) the Requests or any part thereof, or (ii) statements made in this

5 Response to the Requests or any part thereof; or (b) the right to object to the use of

6 any of the information disclosed hereunder in any subsequent proceedings or the

7 trial of this or any other actions; or (c) the right to object on any ground at any time

8 to a demand for further response to these or other discovery requests in this action.

9 Any response or objection to an individual Request is not an acknowledgement

10 that the information requested therein exists or is in Biosense's possession, custody

11 or control.

12       14.    These Responses are based on Biosense's investigation to date of

13 those sources within its possession, custody or control where it reasonably believes

14 responsive information or documents may exist.  Biosense reserves the right to

15 revise, correct, add to, amend, supplement and clarify these Reponses in

16 accordance with the Federal Rules of Civil Procedure, the Local Rules for the

17 United States District Court of the Central District of California and any relevant

18 orders issued by the Court, with additional information, documents or objections

19 that may become available or come to Biosense's attention at any time, and to rely

20 upon such information, documents or objections in any hearing, trial or other

21 proceeding in this litigation.

22                **RESPONSES AND OBJECTIONS**

23 **REQUEST FOR PRODUCTION NO. 50:**

24      <u>Consortium Project</u>. Documents sufficient to show any data, reports, or

25 analyses provided to you from the U.S. EP Consortium Project.

26 **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

27      Biosense incorporates by reference the General Objections set forth above,

28 including the objections to the Definitions of the terms contained in this Request,

6

1   as if fully stated herein.  Biosense further objects to this Request on the grounds

2   that it is overly broad, unduly burdensome and seeks documents that are neither

3   relevant to the claims or defenses of either party in this action nor proportional to

4   the needs of the case.

5         Subject to and without waiving the above Objections, Biosense will conduct

6   a reasonable search for documents responsive to this request and will produce

7   responsive, non-privileged documents, if any, located in that search.

8   **REQUEST FOR PRODUCTION NO. 51:**

9         <u>Lifecycle Pricing</u>. Documents sufficient to show average net price and total

10  unit volume by year and product from January 1, 2010 to the present for your sales

11  of mapping systems, software modules, service contracts, extended warranties,

12  patch sets, diagnostic catheters, ultrasound systems, ultrasound catheters, RF

13  generators, pump systems, therapeutic catheters, guiding sheaths, transseptal

14  needles, and catheter cables.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

16        Biosense incorporates by reference the General Objections set forth above,

17  including the objections to the Definitions of the terms contained in this Request,

18  as if fully stated herein.  Biosense further objects to this Request on the grounds

19  that the Request is overly broad, unduly burdensome and seeks documents that are

20  neither relevant to the claims or defenses of either party in this action nor

21  proportional to the needs of the case, including because it calls for Biosense to

22  provide information regarding pricing and unit volume for numerous products not

23  at issue in this litigation over an eleven-year period, including many years prior to

24  the time Innovative began reprocessing Biosense catheters.  Biosense further

25  objects to this Request to the extent it seeks documents that do not currently exist

26  or purports to require Biosense to create, compile or develop new documents.

27  Biosense further objects to this Request on the grounds that it is cumulative and

28  duplicative of Request for Production Nos. 3 and 49.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIFTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

**REQUEST FOR PRODUCTION NO. 52:**

System Placement. Documents sufficient to show each cardiac mapping system in service from January 1, 2010 to the present by year, serial number, customer name, and customer location.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks documents that are neither relevant to the claims or defenses of either party in this action nor proportional to the needs of the case both with respect to the information requested and the specified date range, including because it calls for Biosense to provide information regarding cardiac mapping systems in service over an eleven-year period, including many years prior to the time Innovative began reprocessing Biosense catheters. Biosense further objects to the term "cardiac mapping systems" as vague and ambiguous to the extent it does not specify the cardiac mapping systems for which Innovative is requesting information. Biosense further objects to this Request to the extent it seeks documents that do not currently exist or purports to require Biosense to create, compile or develop new documents.

Subject to and without waiving the above Objections, Biosense is willing to meet and confer concerning the relevance and scope of this Request.

**REQUEST FOR PRODUCTION NO. 53:**

System Usage. Documents sufficient to show your units sold of patch sets from January 1, 2010 to the present by year and facility location.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the grounds

8

1   that it is overly broad, unduly burdensome and seeks documents that are neither

2   relevant to the claims or defenses of either party in this action nor proportional to

3   the needs of the case, including because it calls for Biosense to provide

4   information regarding patch set sales, a product not at issue in this litigation, over

5   an eleven-year period, including many years prior to the time Innovative began

6   reprocessing Biosense catheters.  Biosense further objects to this Request to the

7   extent it seeks documents that do not currently exist or purports to require Biosense

8   to create, compile or develop new data or documents.

9   **REQUEST FOR PRODUCTION NO. 54:**

10      Physician Usage. Documents sufficient to show the number of procedures

11  using the CARTO 3 cardiac mapping system from January 1, 2010 to the present

12  by year, physician, and facility location.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

14      Biosense incorporates by reference the General Objections set forth above,

15  including the objections to the Definitions of the terms contained in this Request,

16  as if fully stated herein.  Biosense further objects to this Request on the grounds

17  that it is overly broad, unduly burdensome and seeks information and documents

18  that are neither relevant to the claims or defenses of either party in this action nor

19  proportional to the needs of the case, including because it calls for Biosense to

20  provide information over an eleven-year period, including many years prior to the

21  time Innovative began reprocessing Biosense catheters, and requests categories of

22  information that are not relevant to the matters at issue in this litigation.  Biosense

23  further objects to this Request to the extent it seeks documents that do not currently

24  exist or purports to require Biosense to create, compile or develop new data or

25  documents.  Biosense further objects to this Request on the grounds that it is

26  cumulative and duplicative of Request for Production Nos. 4 and 48.

27      Subject to and without waiving the above Objections, Biosense refers

28  Plaintiff to the document bearing production number BWI-INN00000025 produced

9

1 | in response to Request for Production No. 4.

2 | **REQUEST FOR PRODUCTION NO. 55:**

3 | <u>Vendor Credentials</u>. Documents sufficient to show any proof of liability

4 | insurance (*e.g.*, "Liability Letter") and any certificate or letter of competency or

5 | training (*e.g.*, "Vendor Product Competency Letter") submitted for vendor

6 | credentials on behalf of your Clinical Account Specialists or Associate Clinical

7 | Account Specialists from January 1, 2010 to the present.

8 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

9 | Biosense incorporates by reference the General Objections set forth above,

10 | including the objections to the Definitions of the terms contained in this Request,

11 | as if fully stated herein.  Biosense further objects to this Request on the grounds

12 | that it is overly broad, unduly burdensome and seeks documents that are neither

13 | relevant to the claims or defenses of either party in this action nor proportional to

14 | the needs of the case, including because it calls for Biosense to provide

15 | information regarding vendor credentials over an eleven-year period, including

16 | many years prior to the time Innovative began reprocessing Biosense catheters.

17 | Biosense further objects to the extent the Request requires production of "any

18 | proof of liability insurance" and "any certificate or letter of competency or training

19 | . . . submitted for vendor credentials" under circumstances in which a subset of

20 | documents would be sufficient to show any relevant information.

21 | Subject to and without waiving the above Objections, Biosense is willing to

22 | meet and confer concerning the relevance and scope of this Request.

23 | **REQUEST FOR PRODUCTION NO. 56:**

24 | <u>Catheter Testing</u>. Documents sufficient to show the results or conclusions of

25 | any testing or analysis from January 1, 2010 to the present of location accuracy,

26 | image quality, or any other aspect of LASSO, PENTARAY, ACUNAV, or

27 | SOUNDSTAR catheters reprocessed by Innovative Health, Stryker Sustainability

28 | Solutions, or any other third party.

10

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks documents that are neither relevant to the claims or defenses of either party in this action nor proportional to the needs of the case, including because it calls for Biosense to provide information over an eleven-year period, including many years prior to the time Innovative began reprocessing Biosense catheters. Biosense further objects to this Request to the extent that it assumes the existence of facts that do not exist or the occurrence of events that did not take place. Biosense further objects to this Request on the grounds that it is cumulative and duplicative of Request for Production No. 30.

Subject to and without waiving the above Objections, Biosense will conduct a reasonable search for documents sufficient to show the results or conclusions of testing or analysis of the location accuracy or image quality of LASSO, PENTARAY, ACUNAV, or SOUNDSTAR catheters reprocessed by a third party beginning on the Parties' agreed-upon default start date of January 1, 2015, and will produce responsive, non-privileged documents, if any, located in that search.

**REQUEST FOR PRODUCTION NO. 57:**

SOUNDSTAR 3D. Documents sufficient to show any discussions of any consideration, proposal, or decision (including any discussion of any rationale, reason, or benefit of such a proposal or decision) from January 1, 2010 to the present to discontinue the sale of the SOUNDSTAR 3D in the United States.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the grounds

11

1    that it is overly broad, unduly burdensome and seeks documents that are neither

2    relevant to the claims or defenses of either party in this action nor proportional to

3    the needs of the case, including because it calls for Biosense to provide

4    information over an eleven-year period, including many years prior to the time

5    Innovative began reprocessing Biosense catheters.  Biosense further objects to this

6    Request to the extent that it assumes the existence of facts that do not exist or the

7    occurrence of events that did not take place.

8    **REQUEST FOR PRODUCTION NO. 58:**

9         PENTARAY 510(k). Documents sufficient to show any discussions of any

10   consideration, proposal, or decision (including any discussion of any rationale,

11   reason, or benefit of such a proposal or decision) on the timing for submitting any

12   FDA 510(k) premarket notification of intent to market PENTARAY catheters

13   reprocessed by Biosense or Sterilmed.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

15        Biosense incorporates by reference the General Objections set forth above,

16   including the objections to the Definitions of the terms contained in this Request,

17   as if fully stated herein.  Biosense further objects to this Request on the grounds

18   that it is overly broad, unduly burdensome and seeks documents that are neither

19   relevant to the claims or defenses of either party in this action nor proportional to

20   the needs of the case, including because it calls for Biosense to provide highly-

21   confidential and highly-sensitive competitive information regarding matters not at

22   issue in this litigation.  Biosense further objects to this Request to the extent that it

23   assumes the existence of facts that do not exist or the occurrence of events that did

24   not take place.

25   **REQUEST FOR PRODUCTION NO. 59:**

26        Policy Training. All training resources (including simulation training videos

27   and webinar recordings) regarding any position, policy, or practice on providing

28   clinical support for catheters distributed by third parties.

12

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks documents that are neither relevant to the claims or defenses of either party in this action nor proportional to the needs of the case, including to the extent the Request requires production of "all" training resources under circumstances in which a subset of documents would be sufficient to show any relevant information. Biosense further objects to the term "training resources" as vague and ambiguous. Biosense further objects to this Request on the grounds that it is cumulative and duplicative of Request for Production Nos. 19 and 20.

Subject to and without waiving the above Objections, Biosense will conduct a reasonable search for documents sufficient to show training materials concerning Biosense's position with respect to providing clinical support for catheters reprocessed by third parties and will produce responsive, non-privileged documents, if any, located in that search.

**REQUEST FOR PRODUCTION NO. 60:**

Performance Warranty. Documents sufficient to show any discussions of any consideration, proposal, or decision (including any discussion of any rationale, reason, or benefit of such a proposal or decision) to offer or not offer a performance or other warranty or guarantee for new or reprocessed PENTARAY, LASSO, SOUNDSTAR, or ACUNAV catheters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein. Biosense further objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks documents that are neither

13

1  relevant to the claims or defenses of either party in this action nor proportional to

2  the needs of the case.

3  **REQUEST FOR PRODUCTION NO. 61:**

4      Navigational Accuracy. Documents sufficient to show any discussions of

5  why Biosense does not or did not warrant the location accuracy of Certified

6  Reprocessed SOUNDSTAR Catheters (less than 1.5 mm) at the same location

7  accuracy of New SOUNDSTAR Catheters (less than 1 mm).

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

9      Biosense incorporates by reference the General Objections set forth above,

10  including the objections to the Definitions of the terms contained in this Request,

11  as if fully stated herein.  Biosense further objects to this Request on the grounds

12  that it is overly broad, unduly burdensome and seeks documents that are neither

13  relevant to the claims or defenses of either party in this action nor proportional to

14  the needs of the case.  Biosense further objects to this Request to the extent that it

15  assumes the existence of facts that do not exist or the occurrence of events that did

16  not take place.

17      Subject to and without waiving the above Objections, Biosense will conduct

18  a reasonable search for documents sufficient to show the basis for the certified

19  location accuracy of its Certified Performance ultrasound catheters and will

20  produce responsive, non-privileged documents, if any, located in that search.

21  **REQUEST FOR PRODUCTION NO. 62:**

22      Quality Standards. Documents sufficient to show whether Biosense Webster,

23  Inc. Quality Standards for new catheters include 100% quality inspection of the

24  electrodes.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

26      Biosense incorporates by reference the General Objections set forth above,

27  including the objections to the Definitions of the terms contained in this Request,

28  as if fully stated herein.  Biosense further objects to this Request on the grounds

14

1    that it is overly broad, unduly burdensome and seeks documents that are neither

2    relevant to the claims or defenses of either party in this action nor proportional to

3    the needs of the case.

4    **REQUEST FOR PRODUCTION NO. 63:**

5    <u>Image Quality</u>. Documents sufficient to show what constitutes "original

6    fidelity" for warranting ">94% fidelity" on image quality for your Certified

7    Reprocessed Ultrasound Catheters.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

9    Biosense incorporates by reference the General Objections set forth above,

10   including the objections to the Definitions of the terms contained in this Request,

11   as if fully stated herein. Biosense further objects to this Request on the grounds

12   that it is overly broad, unduly burdensome and seeks documents that are neither

13   relevant to the claims or defenses of either party in this action nor proportional to

14   the needs of the case.

15   Subject to and without waiving the above Objections, Biosense will conduct

16   a reasonable search for documents sufficient to show the basis for the certified

17   fidelity of its Certified Performance ultrasound catheters and will produce

18   responsive, non-privileged documents, if any, located in that search.

19   **REQUEST FOR PRODUCTION NO. 64:**

20   <u>Prior Policies</u>. Documents from January 1, 2010 to the present sufficient to

21   show any position, policy, or practice before October 31, 2014 on providing

22   clinical support on cases involving catheters distributed by third parties.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

24   Biosense incorporates by reference the General Objections set forth above,

25   including the objections to the Definitions of the terms contained in this Request,

26   as if fully stated herein. Biosense further objects to this Request on the grounds

27   that it is overly broad, unduly burdensome and seeks documents that are neither

28   relevant to the claims or defenses of either party in this action nor proportional to

15

the needs of the case, including because it calls for Biosense to provide information regarding case coverage over an almost five-year period, outside of the Parties' agreed upon default discovery period, during which Innovative was not in existence and had not begun reprocessing Biosense catheters.  Biosense further objects to this Request on the grounds that it is cumulative and duplicative of Request for Production Nos. 19 and 47 and Interrogatory Nos. 8, 9 and 23.

**REQUEST FOR PRODUCTION NO. 65:**

Customer Complaints. Documents sufficient to show your failure rates, complaint rates, and complaint investigations concerning the quality or reliability of ACUNAV, LASSO, PENTARAY or SOUNDSTAR catheters distributed by you.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Biosense incorporates by reference the General Objections set forth above, including the objections to the Definitions of the terms contained in this Request, as if fully stated herein.  Biosense further objects to this Request on the grounds that it is overly broad, unduly burdensome and seeks documents that are neither relevant to the claims or defenses of either party in this action nor proportional to the needs of the case.  Biosense further objects to the terms "failure rates" and "complaint rates" as vague and ambiguous.  Biosense further objects to this Request to the extent it seeks documents that do not currently exist or purports to require Biosense to create, compile or develop new data or documents.

**REQUEST FOR PRODUCTION NO. 66:**

Siemens Communications. Documents sufficient to show all of your communications from January 1, 2010 to the present with Siemens regarding the possible reprocessing of ACUNAV, ACUNAV VOLUME, or SOUNDSTAR catheters by third parties.

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIFTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

2          Biosense incorporates by reference the General Objections set forth above,

3  including the objections to the Definitions of the terms contained in this Request,

4  as if fully stated herein.  Biosense further objects to this Request on the grounds

5  that it is overly broad, unduly burdensome and seeks documents that are neither

6  relevant to the claims or defenses of either party in this action nor proportional to

7  the needs of the case, including because it calls for Biosense to provide

8  information over an eleven-year period, including many years prior to the time

9  Innovative began reprocessing Biosense catheters, regarding matters not at issue in

10  this litigation.  Biosense further objects to this Request to the extent that it assumes

11  the existence of facts that do not exist or the occurrence of events that did not take

12  place.  Biosense further objects to the term "possible reprocessing" as vague and

13  ambiguous.  Biosense further objects to this Request to the extent it seeks "all"

14  communications under circumstances in which a subset of documents would be

15  sufficient to show any relevant information.  Biosense further objects to this

16  Request on the grounds that it is cumulative and duplicative of Request for

17  Production No. 30.

18  **REQUEST FOR PRODUCTION NO. 67:**

19          FDA Complaints. Documents sufficient to show your communications with

20  the U.S. Food and Drug Administration ("FDA") from January 1, 2010 to the

21  present regarding any electrophysiology catheters reprocessed by third parties.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

23          Biosense incorporates by reference the General Objections set forth above,

24  including the objections to the Definitions of the terms contained in this Request,

25  as if fully stated herein.  Biosense further objects to this Request on the grounds

26  that it is overly broad, unduly burdensome and seeks documents that are neither

27  relevant to the claims or defenses of either party in this action nor proportional to

28  the needs of the case, including because it calls for Biosense to provide

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIFTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1  information over an eleven-year period, including many years prior to the time

2  Innovative began reprocessing Biosense catheters, and includes numerous products

3  not at issue in this litigation.  Biosense further objects to this Request to the extent

4  that it assumes the existence of facts that do not exist or the occurrence of events

5  that did not take place.  Biosense further objects to this Request on the grounds that

6  it is cumulative and duplicative of Request for Production No. 30.

7

8  DATED:  March 1, 2021          STRADLING YOCCA CARLSON & RAUTH,

9                                 A Professional Corporation

10

11                                 By:   */s/ Karla Kraft*
                                   Karla Kraft
12                                 Katie Beaudin

13                                 And

14                                 Katherine B. Forrest (*Pro Hac Vice*)
15                                 Michael T. Reynolds (*Pro Hac Vice*)
                                   CRAVATH, SWAINE & MOORE LLP
16                                 Worldwide Plaza, 825 Eighth Avenue
17                                 New York, NY 10019-7475

18                                 Attorneys for Defendant
                                   BIOSENSE WEBSTER, INC.
19

20

21

22

23

24

25

26

27

28

RESPONSES TO INNOVATIVE HEALTH LLC'S
FIFTH REQUESTS FOR DOCUMENTS
CASE NO. 8:19-cv-01984

1

**CERTIFICATE OF SERVICE**

2        I, Lillian S. Grossbard, hereby certify that on March 1, 2021, pursuant to

3  Fed. R. Civ. Proc. 5(b)(2)(E), I caused a true and correct copy of the foregoing

4  DEFENDANT BIOSENSE WEBSTER, INC.'S RESPONSES TO INNOVATIVE

5  HEALTH LLC'S FIFTH REQUESTS FOR DOCUMENTS to be served on the

6  following counsel of record via email at the below email addresses:

7

8  Panteha Abdollahi                  Jeffrey L. Berhold (*Pro Hac Vice*)
      THEODORA ORINGHER PC       JEFFREY L. BERHOLD, P.C.

9  535 Anton Boulevard, Ninth Floor   1230 Peachtree Street, Suite 1050
      Costa Mesa, California 92626-7109  Atlanta, Georgia  30309

10  Telephone: (714) 549-6200        Telephone: (404) 872-3800
     Facsimile: (714) 549-6201          Facsimile: (678) 868-2021

11  Email: pabdollahi@tocounsel.com    Email: jeff@berhold.com

12

13  Attorneys for Plaintiff             Attorneys for Plaintiff
     INNOVATIVE HEALTH LLC       INNOVATIVE HEALTH LLC

14

15                                  /s/ *Lillian S. Grossbard*

16                                  Lillian S. Grossbard

17

18

19

20

21

22

23

24

25

26

27

28

19

EXHIBIT 13

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Innovative Health LLC | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 8:19-cv-1984 JVS |
| Biosense Webster, Inc. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Stryker Sustainability Solutions, Inc.

To: _____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Documents or electronically stored information sufficient to show the data produced by Stryker Sustainability Solutions, Inc. in STRYKER00001161 in this case for the additional time period from October 1, 2020 to June 30, 2024.

| Place: Jeffrey L. Berhold, P.C. | Date and Time: |
|---|---|
| 1230 Peachtree St., Suite 1050 Atlanta, GA 30309 | 08/31/2024 2:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/19/2024

| CLERK OF COURT | | |
|---|---|---|
| | OR | *Jeff Berhold* (signature) |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Innovative Health LLC_____, who issues or requests this subpoena, are:
Jeff Berhold, 1230 Peachtree St., Suite 1050, Atlanta, GA 30309, jeff@berhold.com, 404-872-3800

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 8:19-cv-1984 JVS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                        *Server's signature*

                                _____
                                        *Printed name and title*

                                _____
                                        *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

EXHIBIT 14

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Innovative Health LLC | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 8:19-cv-1984 JVS |
| Biosense Webster, Inc. | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

Abbott Laboratories

To: _____

_(Name of person to whom this subpoena is directed)_

☛ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Documents or electronically stored information sufficient to show the data produced by Abbott Laboratories in AB0000001 in this case for the additional time period from January 1, 2021 to June 30, 2024.

| Place: Jeffrey L. Berhold, P.C. 1230 Peachtree St., Suite 1050 Atlanta, GA 30309 | Date and Time: 08/31/2024 2:00 pm |
|---|---|

❏ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 08/19/2024

CLERK OF COURT

_____     OR     _____
Signature of Clerk or Deputy Clerk                    _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Innovative Health LLC_____ , who issues or requests this subpoena, are:
Jeff Berhold, 1230 Peachtree St., Suite 1050, Atlanta, GA 30309, jeff@berhold.com, 404-872-3800

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 8:19-cv-1984 JVS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                _____
                                                              *Server's signature*

                                                        _____
                                                              *Printed name and title*

                                                        _____
                                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

EXHIBIT 15

———2:15-cv-01045-RFB-BNW———

1              UNITED STATES DISTRICT COURT

2                  DISTRICT OF NEVADA

3

4   CUNG LE, et al.,                    )
                                        )
5               Plaintiffs,             )  Case No. 2:15-cv-01045-RFB-BNW
                                        )
6        vs.                            )  Las Vegas, Nevada
                                        )  Friday, November 21, 2023
7   ZUFFA, LLC, d/b/a Ultimate          )  11:36 a.m.
    Fighting Championship and           )
8   UFC,                                )  MOTION HEARING
                                        )
9               Defendants.             )
    _____        )    *C E R T I F I E D   C O P Y*

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14        THE HONORABLE RICHARD F. BOULWARE, II,
                UNITED STATES DISTRICT JUDGE

15

16

17

18

19  APPEARANCES:        See Pages 2 and 3

20

21

    COURT REPORTER:     Patricia L. Ganci, RMR, CRR
22                      United States District Court
                        333 Las Vegas Boulevard South, Room 1334
23                      Las Vegas, Nevada  89101

24

    Proceedings reported by machine shorthand, transcript produced
25  by computer-aided transcription.

———————————2:15-cv-01045-RFB-BNW———————————

```
 1   APPEARANCES:
     For the Plaintiffs:
 2
             DON SPRINGMEYER, ESQ.
 3           WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
             3556 E. Russell Road, 2nd Floor
 4           Las Vegas, Nevada 89120
             (702) 341-5200
 5
             ERIC L. CRAMER, ESQ.
 6           PATRICK F. MADDEN, ESQ.
             BERGER & MONTAGUE, P.C.
 7           1818 Market Street, Suite 3600
             Philadelphia, Pennsylvania 19103
 8           (215) 875-3000

 9           JOSEPH R. SAVERI, ESQ.
             THE JOSEPH SAVERI LAW FIRM, INC.
10           555 Montgomery Street, Suite 1210
             San Francisco, California 94111
11           (415) 500-6800

12   For Defendant Zuffa, LLC:

13           J. COLBY WILLIAMS, ESQ.
             CAMPBELL & WILLIAMS
14           700 South 7th Street
             Las Vegas, Nevada 89101
15           (702) 382-5222

16           WILLIAM A. ISAACSON, ESQ.
             JESSICA PHILLIPS, ESQ.
17           PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
             2001 K Street, NW
18           Washington, DC 20006
             (202) 223-7300
19
             CHRISTOPHER S. YATES, ESQ.
20           LATHAM & WATKINS, LLP
             505 Montgomery Street, Suite 2000
21           San Francisco, California 94111
             (415) 395-8157
22

23

24

25
```

```
                    ──2:15-cv-01045-RFB-BNW──
```

 1          LAS VEGAS, NEVADA; FRIDAY, NOVEMBER 21, 2023; 11:36 A.M.

 2                              --oOo--

 3                    P R O C E E D I N G S

 4          THE COURT:  Please be seated.

 5          COURTROOM ADMINISTRATOR:  The matter now before the

 6  Court is Le versus Zuffa, Inc., Case Number

 7  2:15-cv-1045-RFB-BNW.  Counsel, please make your appearances

 8  beginning with the plaintiff.

 9          MR. CRAMER:  Good morning, Your Honor.  Eric Cramer for

10  the plaintiffs.

11          MR. MADDEN:  Good morning, Your Honor.  Patrick Madden

12  for the plaintiffs.

13          MR. SAVERI:  Good morning, Your Honor.  Joseph Saveri

14  for the plaintiffs.

15          MR. SPRINGMEYER:  Good morning, Your Honor.

16  Don Springmeyer for the plaintiffs.

17          THE COURT:  Good morning.

18          MR. ISAACSON:  Good morning, Your Honor.  It's Bill

19  Isaacson from Paul Weiss for the defendant.

20          MR. YATES:  Good morning, Your Honor.  Chris Yates from

21  Latham and Watkins for the Defendant.

22          MS. PHILLIPS:  Good morning, Your Honor.  Jessica

23  Phillips from Paul Weiss for the defendant.

24          MR. WILLIAMS:  And good morning, Your Honor.  Colby

25  Williams, Campbell and Williams, on behalf of the defendants.

—————— 2:15-cv-01045-RFB-BNW ——————

1          THE COURT:  Good morning.  We have a couple of motions

2     that we are going to address here.  So let me get straight to it

3     here.

4          Mr. Isaacson, are you going to be arguing these

5     motions?

6          MR. ISAACSON:  No, Mr. Yates will be arguing the motion

7     to reopen discovery.

8          THE COURT:  Okay.  Well, why don't we have Mr. Yates

9     come up.

10         So, Mr. Yates, my basic question to you is this.

11    You've had years.  I got no motion to reopen discovery.  How is

12    that diligence?  How is this not a strategic decision that you

13    thought you were going to prevail in a class certification or on

14    the appeal and you didn't, and your sat on your hands and didn't

15    file a motion to reopen discovery, despite knowing all of this

16    information?

17         MR. YATES:  Your Honor, we moved to reopen discovery at

18    the earliest feasible time --

19         THE COURT:  No, no.  Let me ask you a question.  At the

20    time I said I was going to announce my decision, I said there

21    was going to be a delay while I looked at and waited for the

22    *Olean* decision.  Was there anything at that time that prevented

23    you from filing a motion to reopen discovery?

24         MR. YATES:  Your Honor, I believe there was because,

25    Your Honor, what was pending at the time was a motion to certify

───── 2:15-cv-01045-RFB-BNW ─────

1   both the damages class and an injunctive class.  The plaintiffs

2   admit there was going to have to be discovery on the injunctive

3   relief class.  Then they filed the --

4          THE COURT:  My question, though, I'm going to be very

5   direct, was there any legal impediment to you filing a motion to

6   reopen discovery at that time?  Was there anything that stopped

7   you, that prevented you, from filing such a motion, other than

8   making a decision about where you thought you were, right?

9   There was no order from this Court or anything like that that

10  said you couldn't file a motion to reopen discovery, right?

11         MR. YATES:  There was no such order that had been

12  issued by the Court.  However, as a practical matter, Your

13  Honor -- Your Honor was considering the class certification

14  decision.  And part of the class certification decision was

15  injunctive relief, which necessarily the plaintiffs admit was

16  going to require additional discovery.  They then filed the

17  Johnson case.  As part of our motion to dismiss in the Johnson

18  case, we say we need discovery, including in Le.  In our reply

19  brief we say the same thing.  We say the cases should be

20  consolidated.  That would be the most efficient way to go.  And

21  we say that discovery should be reopened in Le.  We then --

22         THE COURT:  So why not file a motion to reopen?  I

23  mean, Le is the case.  And so I guess what I'm pressing you on

24  is -- and I'm sure, counsel, you've done it multiple times --

25  you file a motion to reopen in the case you want to reopen.  I

—2:15-cv-01045-RFB-BNW—

1  mean, it's actually a fairly straightforward motion.  You've

2  done it here, right.  You could have done it earlier.

3       And I understand that there might have been,

4  quote/unquote, practical considerations, but, again, that's not

5  necessarily something that establishes good cause or would be

6  excusable neglect if you could have done it and you made a

7  strategic decision not to do it.

8       I'm trying to understand why I should consider your

9  practical argument when, in fact, in this case that we're

10  talking about, Le, there was no impediment at all to filing a

11  motion that you filed recently years ago.

12       MR. YATES:  Well, Your Honor gave us leave to file the

13  motion on October 24th, which is what we did.  The cases speak

14  to providing notice to the Court, which we did, of the need for

15  further discovery.  We did that multiple times for years.  The

16  plaintiffs in their opposition claimed that we were not

17  diligent.  We were diligent.  Your Honor, there's nothing more

18  diligent that we could have done.

19       Again, injunctive relief was necessarily going to

20  require additional discovery.  Everyone agrees on that.  And so

21  the first -- the first time that we could, when we were filing a

22  motion to dismiss in the Johnson case, we notified Your Honor,

23  put the plaintiffs on notice, and then met and conferred with

24  them about the need for additional discovery in Le.

25       Frankly, it would be -- Your Honor, it would be error

─2:15-cv-01045-RFB-BNW─

1   -- it would be error not to give us this discovery because we're

2   talking about a situation where they're -- the plaintiffs are

3   trying to silo the class period.  The Courts, the *Geneva*

4   *Pharmaceuticals* and the Ninth Circuit, has said that entry even

5   after the class period is relevant in a monopoly or monopsony

6   case.

7           THE COURT:  Well, counsel, you weren't here for any of

8   the expert advice.  I didn't hear any of the experts say that

9   they needed data from after the class period to be able to prove

10  their theory within the class period.  And, in fact, I

11  questioned them quite extensively about that.

12          MR. YATES:  Sure.

13          THE COURT:  They did not say, "We believe based upon

14  our theories and our testimony that we need information after

15  the class period to establish what would be the monopsony power

16  within the class period."  I didn't hear anything from the

17  experts that said that.  I went back over their testimony in

18  preparation for my hearing today because I wanted to make sure

19  that I didn't miss anything.

20          We had extensive testimony from experts, and I didn't

21  hear any of them offer a theory as it relates to establishing

22  monopsony power that you need to wait two or three years after

23  the relevant period to provide that information.  And, in fact,

24  we allowed for and I allowed for them to supplement the

25  information.  And I didn't hear anything from those experts that

—————2:15-cv-01045-RFB-BNW—————

1  would suggest to me, because we're moving a little bit into

2  relevance, but would suggest to me that somehow the information

3  that you're now seeking to obtain would be relevant to the

4  determination of a monopsony within the class period.

5          MR. YATES:  Well, I believe -- I believe the experts

6  did talk about entry and they talked about the growth of

7  competitors.  And what's happened -- what's happened since the

8  class period is there's been additional entry.  PFL has entered,

9  and of course the plaintiffs -- I mean, the experts can't

10 predict exactly what's going to happen in the future.  At the

11 time everyone was thinking about the class period.  Your Honor

12 was holding hearings in 2018 and 2019.  No one knew that it was

13 going to be four years before class certification was decided.

14         THE COURT:  But I guess my question, counsel, is this.

15 If their theories or models as relates to monopsony were based

16 upon years of econometric study that said one of the best ways

17 for us to understand a monopsony is to look two or three

18 afterwards because it affects our lag, that would be one thing.

19 Then there would be potentially a basis for me to consider that.

20 They didn't say that.  That's what I'm saying to you.

21         They didn't say, "If we look at how we study

22 monopsonies, we typically look two or three years after a period

23 for a lag."  They didn't say that that was the basis for their

24 theories.  And that's why I'm saying to you it would be one

25 thing if it was in the information that would be relevant, but

—2:15-cv-01045-RFB-BNW—

1    if they didn't say that, including your own experts, why would I

2    find this to be relevant?

3          MR. YATES:  Well, because the Ninth Circuit and other

4    Courts say it's relevant, Your Honor.

5          THE COURT:  Well, yeah, that argument, counsel, is not

6    going to work for me here.  I'm talking about my case here

7    specifically.

8          MR. YATES:  Well --

9          THE COURT:  I decided this on my case already.  Look,

10   the Ninth Circuit has actually already looked at my

11   certification order, right.  They didn't actually allow for an

12   appeal on that order, and that order went through extensively

13   this theory.  So you're going to have to give me a reason why

14   within the record that's here, because each case is unique, as

15   to why, here, there is evidence or expert advice that would

16   somehow suggest that information beyond the class period is

17   relevant for determining monopsony power within the class

18   period.

19         MR. YATES:  Because it took four years for Your Honor

20   to decide class certification and there has been substantial

21   entry and expansion by competitors during that period, which as

22   a matter of law, if you look at *Rebel Oil*, if you look at the

23   *Syufy* case, if you look at the *Geneva Pharmaceuticals* case, must

24   be considered because current market conditions must be

25   considered when evaluating both market power and monopsony and

1    monopoly power.  That is -- that is fundamental.

2            And of course, again, no one thought it was going to

3    take four years for class certification to be decided.  The

4    experts did point to at the time PFL coming in, and they -- the

5    plaintiffs said they're just minor league.  PFL doesn't think

6    they're minor league today.  No one thinks they're minor league.

7    What does that mean?  That means that the plaintiffs' theory of

8    the case is dead wrong.

9            THE COURT:  But my question to you is, I want to go

10   back to this, can you point to me the portions of the record

11   here where your experts said it's important for us to consider

12   information beyond the class period to determine whether or not

13   there's monopsony power within the class period?  Where in the

14   record do your own experts say that?

15           MR. YATES:  Your Honor, I don't -- I didn't go back and

16   re-review the entire record to prepare for this hearing.

17   However, my recollection is that they were talking about entry.

18   They were talking about competitors coming into the marketplace.

19   They were talking about PFL, which had just entered at the --

20   just shortly before the class certification hearing.  That's

21   part of the reason that Your Honor allowed supplemental expert

22   reports, which I think counsels again in favor of reopening

23   discovery here or, at the very least, let us take some discovery

24   in Johnson that we can then use in the lead trial.

25           Otherwise, we're going to have a trial where the jury

Case 8:19-cv-01984-JVS-KES   Document 239-23   Filed 07/23/24   Page 274 of 329
Page ID #:15032
Case 2:15-cv-01045-RFB-BNW   Document 839   Filed 01/12/24   Page 274 of 329

11

2:15-cv-01045-RFB-BNW

1   is going to sit there and say, "Wow.  I don't know what has

2   happened since 2017."  And the reality is --

3           THE COURT:  Well, what if I tell them that's not

4   relevant?  First of all, I may decide that that's actually not

5   relevant.  Because the reason why I'm asking you, counsel, about

6   the expert advice is, in order for me to allow evidence, it

7   would have to be relevant.  And I'm saying this to you because

8   when we had the hearings, and that's why I'm focusing on the

9   record, I did go back and read their expert testimony explicitly

10  to figure out whether or not what you were offering now was

11  something that they suggested would be necessary for their

12  modeling to make the determination.  Because as it relates to

13  evidence, right, it's important for the Court to determine

14  what's relevant.

15          The fact of the matter is I may very well find, look,

16  that's actually misleading to the jury.  The inquiry is during

17  the class period did Zuffa have monopsony power, and to the

18  extent that there's evidence offered outside of the class

19  period, there would have to be relevance for that as it relates

20  to theories about monopsony power related to this case.  And

21  that's why, again, I'm focussed on the experts because that's

22  where we heard the testimony about monopsony power.

23          MR. YATES:  And respectfully, Your Honor, if Your Honor

24  were to exclude evidence of current market conditions, that

25  would be an error of law.

———————2:15-cv-01045-RFB-BNW———————

 1          THE COURT:  You said that before.  And I know that
 2   that's a strategic argument people make, but you can say that.
 3          MR. YATES:  Well --
 4          THE COURT:  And you all said the same thing about my
 5   class certification, that that would be error, too.  And you are
 6   free to, right, make that argument.  I'm trying to actually ask
 7   you a question related to the record.  Simply saying to me it
 8   would be error is actually not a particularly productive use of
 9   our time here, counsel.  I would rather focus on what you think
10   is your best argument about this.
11          Because, again, I spent a lot of time preparing for
12   this today and I'm focussed on what it is that would give you --
13   what it is that's necessary.  I want to find out why this is --
14   I should allow this.  And I want to focus on what parts of the
15   monopsony theory that you've talked about.  One, you say entry.
16   Two, you say competitors.  But there was information about
17   competitors and entry during the period.  Why isn't that enough?
18          MR. YATES:  Because the continued entry of competitors
19   demonstrates there are not barriers to entry and that something
20   else must be accounting for what plaintiffs call wrongful
21   anticompetitive conduct.  Because where you've got competitors
22   who are entering and growing and who are saying that we actually
23   can get any fighter we want, it proves that the alleged 30-month
24   contracts are not barriers to entry.
25          These competitors -- and our experts did talk about

Case 8:12-cv-01984-JVS-KES Document 239-3 Filed 07/23/24 Page 276 of 329
Case 2:15-cv-01045-RFB-BNW Document 839 Filed 07/23/24 Page 276 of 329
Page ID #:15034

13

———2:15-cv-01045-RFB-BNW———

1  entry.  They did talk about expansion.  That's only continued.

2  That has only continued after the class period and after Your

3  Honor had the class certification hearing.

4      What has happened is that these competitors have

5  continued to grow, even though the plaintiffs say that the

6  contracts are virtually the same out -- after the class period.

7  So that's classic evidence which shows that the plaintiffs'

8  theory is wrong, that there is no monopsony power.  And,

9  frankly, you know, the entry -- entry and expansion are the key

10 things in most monopoly and monopsony cases.

11      THE COURT:  So I want to ask you a question about that.

12      MR. YATES:  Sure.

13      THE COURT:  One is are you arguing that Zuffa still

14 doesn't still -- because you can have competitors and still have

15 market power, right.  It doesn't -- it may mean that your market

16 power is lessened, but the existence of a competitor -- even

17 your experts acknowledged, the existence of a competitor does

18 not itself in fact negate the potential for market power and to

19 be able to exercise a monopsony as relates to wages.  And in

20 fact the threshold that your experts identified, which is like

21 around 30 or 40 percent, is well below what the -- what the

22 amount of market power is here.

23      And so one of the arguments that I was -- one of the

24 issues that I wanted to raise with you is about, even if this

25 were the case that they're competitors -- and we haven't even

—2:15-cv-01045-RFB-BNW—

1  gotten to the issue of changes in behavior, but assuming that

2  everything is the same, why would that matter if Zuffa is still

3  potentially or at least allegedly exercising market power?

4          MR. YATES:  Well, because we obviously vigorously

5  dispute Dr. Singer's calculations of market share and market

6  power.  We think they're wrong.

7          You know, Dr. Singer's opinions have been excluded

8  three times in three major cases since the class certification

9  hearings as unreliable.  So we don't think that the market share

10 calculations that Dr. Singer provided and which ultimately

11 formed the basis, I agree, for Your Honor's class certification

12 decision which obviously did not decide these issues as a matter

13 of fact --

14         THE COURT:  Right.

15         MR. YATES:  -- that's going to be for trial.  You know,

16 we vigorously dispute those market share calculations.

17         So entry and expansion by competitors is exactly what

18 needs to be tested to see if there is actual monopoly or

19 monopsony power, as the plaintiffs allege, or if something

20 different is going on here.

21         Our position -- we've said it all along, our position

22 is Zuffa created this sport.  Zuffa created this sport.  It's

23 natural that it had a head start for a while.  Competitors sat

24 back and waited for a while.  And what did they do?  They said,

25 "Okay.  Zuffa's made this sport mainstream.  It's now on TV

—2:15-cv-01045-RFB-BNW—

1   networks.  Sponsors like it now.  So we're going to get in."

2         And what's happened with PFL?  PFL, you know, at the

3   time of the class certification hearings were just getting

4   going.  And what's happened since then?  They've exploded.

5   They've got hundreds of millions of dollars of new money coming

6   in to their -- to their business.

7         That is classic evidence of entry and the fact that

8   there are not durable barriers to entry.

9         THE COURT:  So I guess again we go back to you say it's

10  classic evidence, but I don't have experts telling me that.  I

11  didn't have your experts saying to me classic evidence of this

12  is -- again, that's why I go back to this lag period, but let me

13  ask you another question.

14        Why couldn't the Court simply say, "Look, that's

15  attributed to change in behavior.  Zuffa no longer took" -- and,

16  again, allegedly because, again, I know these issues as a matter

17  of fact is going to be for the jury to decide.  But why wouldn't

18  I find, look, you know what, Zuffa changed its strategy.  It no

19  longer decided that it was going to acquire or force out

20  competitors because they recognize the potential for a case like

21  this one to proceed.  This case had already -- of course had

22  already been filed by that time.  Why wouldn't that be

23  potentially something that the Court should consider as it

24  relates to the information that you provide?

25        MR. YATES:  I just don't think -- I mean, I don't --

1  that's obviously -- you're making speculation.  There's

2  speculation there, Your Honor.  That's not based on any fact.

3  I'm sure the plaintiffs will make exactly that argument, if Your

4  Honor allows the discovery, which we respectfully submit should

5  be allowed here.

6       This is evidence and our experts -- going back to Your

7  Honor's previous question, our experts did talk about entry and

8  expansion.  And this evidence, it proves that what the

9  plaintiffs were saying at the time, which is all of these

10 competitors are minor league, is not true.  It is not true.  If

11 you look just at the quotes we put in our reply brief, all of

12 the competitors think that they have access to all of the

13 athletes that they need to put on viable MMA promotions.

14      THE COURT:  I guess my question is, do I have in this

15 record evidence from experts that would indicate that the effect

16 of these new competitors is to potentially eliminate the alleged

17 market power that existed?  Even if you disagree with it, right,

18 there is a dispute here and the Court considered it and it's

19 part of the Court's certification order.  Do you have expert

20 testimony that would suggest that this entry data would mean

21 that Zuffa is no longer allegedly even the market dominant power

22 that Dr. Singer said that they were?

23      MR. YATES:  I believe Dr. Topel addressed that.  He was

24 talking about entry and expansion, and this is a continuation of

25 that testimony.  Four-plus years have elapsed since that

—2:15-cv-01045-RFB-BNW—

 1  testimony.  Obviously competitors have continued to grow and
 2  expand, which is what we're going to argue to the jury,
 3  ultimately, after -- after hopefully Your Honor allows us to get
 4  into discovery on this.  We're going to argue to the jury that
 5  establishes that these contracts that the plaintiffs say and
 6  Dr. Singer contends are exclusionary are nothing of the sort.
 7          THE COURT:  Well, let me ask you a separate question
 8  because there's a separate issue about the trial date here.
 9  What if I were to say to you, "Fine.  I'll allow you discovery,
10  but it has to be done by April 8th so we can go to trial.  I'm
11  not going to move that date," what would you say to me?
12          MR. YATES:  I'd say fine.  Your Honor, I did it last
13  year.  My wife didn't love the fact that I was gone for a lot of
14  the holidays and -- but that's what we do as trial lawyers.
15          THE COURT:  I'm just saying that because one of the
16  arguments the plaintiffs make --
17          MR. YATES:  Yeah.
18          THE COURT:  -- obviously is that this is a pretextual
19  argument about the trial date.  And, again, I haven't decided
20  the issue of the motion for summary judgment, but I'm saying
21  that because they've raised this as an issue about moving the
22  trial date.  And, as you know, the Court has to at least
23  consider that in the context --
24          MR. YATES:  Of course.
25          THE COURT:  -- of making this determination.

```
 1          MR. YATES:  Of course.

 2          THE COURT:  Right.  And they've argued that you have

 3  said, "Oh, we need four to six months for this to happen.  We

 4  can't complete it in the time that would be necessary for a

 5  trial to go forward on that date."  And so they're arguing that

 6  you're essentially trying to delay, and I wanted to give you an

 7  opportunity to be able to directly address that by talking about

 8  what you think that is going to be accomplished before the trial

 9  date.

10          MR. YATES:  I -- I personally did this, as I said, last

11  year.  We went from discovery opening on December 21 to a trial

12  in the middle of April.  So about the same amount of time, Your

13  Honor.  This was in the District of Delaware.  It's a merger

14  case.  Merger cases, typically, you do all of the discovery,

15  including expert discovery, in four or five months.  It can be

16  done.  It can be done.  I am -- I would be --

17          THE COURT:  So let me ask you a question about that.

18          MR. YATES:  Yeah.

19          THE COURT:  So what is it -- again, because the

20  plaintiffs will argue that you're basically seeking open-ended

21  discovery.  And I guess my question to you is it seems to me

22  that really what you're asking for is to be allowed to

23  supplement your experts' testimony.  I mean, that seems to me

24  like what you're asking to do.  I don't know what else there

25  would be, but supplement their testimony in terms of their
```

─2:15-cv-01045-RFB-BNW─

1  expert opinions based upon --

2          MR. YATES:  Sure.

3          THE COURT:  -- subsequent market data, right.

4          MR. YATES:  That would be part of it, Your Honor.  I

5  think that, I mean, to me the key thing here would be to get the

6  testimony of the competitors, get documents from the

7  competitors.  We've already started that process in the Johnson

8  case.  Once Your Honor allowed discovery to open in Johnson,

9  we've subpoenaed them in Johnson.  But -- and the same

10 subpoenas, you know, the same discovery could and should be used

11 in Le.

12         So we would want testimony from the competitors after

13 getting you their documents --

14         THE COURT:  What would you need beyond their relative

15 market position?  So, in other words, if you wanted to get

16 testimony --

17         MR. YATES:  Sure.

18         THE COURT:  -- what you've talked about is entry and

19 expansion.  You don't really need anything from them directly

20 related to that, other than potentially basic numbers about, I

21 guess, their revenue or things like that.  But it doesn't seem

22 to me that that's extensive internal information.  There's some

23 information about, sort of, again relative market share and

24 power.  But tell me a little bit about what information you

25 believe that you would need --

———2:15-cv-01045-RFB-BNW———

1          MR. YATES:  Sure.

2          THE COURT:  -- from these third parties because

3  certainly that can hold things up as it relates to a trial date.

4          MR. YATES:  We have already been meeting and conferring

5  with Bellator and PFL and one other entity that we've subpoenaed

6  in the Johnson case.  They -- they've indicated they're willing

7  to produce documents once a protective order is entered.  That

8  has stalled things because the plaintiffs sat on our -- our

9  protective order for a period of weeks.

10          THE COURT:  I'm sorry, but what -- again, counsel, what

11  documents would you --

12          MR. YATES:  Sure.

13          THE COURT:  -- are you trying to obtain?

14          MR. YATES:  Sure.  I mean, we would want their -- we

15  would want their strategic plans.  We'd want their documents

16  regarding their ability -- their efforts to recruit fighters,

17  their efforts to develop fighters, and the like.  Because,

18  again, our theory of the case is that Zuffa's allegedly

19  exclusionary contracts do not actually exclude anyone and that

20  these competitors are able to put on viable MMA promotions.

21          Obviously Your Honor mentioned market share data.  We

22  would obviously want that.  We would want their strategic plans

23  to see what they're saying internally and also what they're

24  saying to investors because as I mentioned PFL, for example, PFL

25  just got $100 million from the Kingdom of Saudi Arabia

1  Investment Fund and $400 million from a variety of other

2  investors.  I can bet you dollars to doughnuts that there were

3  some documents prepared that were submitted to those potential

4  investors about their growth opportunities and how they're not

5  impeded at all by UFC.  So that's the kind of thing.

6          And then I think we take in addition --

7          THE COURT:  What about UFC information?

8          MR. YATES:  Sure.  We are ready, willing, and able to

9  update it.

10          THE COURT:  Right, because we spent a lot of time with

11  discovery orders related to protective orders regarding

12  statements, right.  And I can imagine huge fights about

13  conversations about what to do in the face of the lawsuit and

14  whether they're privileged or not, whether or not there's

15  conduct that we should change because of the lawsuit, which

16  would be potentially relevant, and we'd have this back and

17  forth.

18          And so we had a lot of discovery practice in this case

19  for the three-year discovery period related to protective orders

20  and what information would be provided.  Do you actually believe

21  that all of that could also be accomplished in this period of

22  time?

23          MR. YATES:  I would certainly hope so.  For better or

24  for worse, Your Honor, obviously I wasn't counsel in that time

25  period so I don't know all of the details and the ins and outs.

———2:15-cv-01045-RFB-BNW———

1          THE COURT:  Right.

2          MR. YATES:  But in my experience what happens when

3   you've got this kind of period where you have done discovery and

4   when you either reopen it or there's a new case is that counsel

5   take a lot of learnings from what the Court did in terms of

6   deciding issues either in the first case or -- or earlier in the

7   case.  And so I would fully expect that we could get things

8   done.  It requires cooperation on both sides.  That's the

9   reality.

10          These merger cases are able to go to trial fast because

11   both sides, both the Government and -- and the merging parties,

12   are motivated to get things done.  Zuffa is motivated to get

13   this discovery done.  We will commit to getting it done.

14          Again, you know, beyond the competitors, I think there

15   would be some depositions of additional fighters, perhaps,

16   managers or agents.  And, yes, I mean, I think Your Honor --

17   Your Honor's right.  I think there would be a short period to

18   supplement expert reports.  It's going to be nothing like the --

19   the -- you know, the expert report period that you had before.

20   There's just not time for it, but that's okay.

21          THE COURT:  Okay.  Hold on a moment.

22          MR. YATES:  Sure.  Certainly, Your Honor.

23          THE COURT:  And I wanted just to go back to one thing,

24   Mr. -- is it Yates?  Is that right?

25          MR. YATES:  Yates.  Thank you, Your Honor.

Case 8:19-cv-01984-JVS-KES Document 239-3 Filed 07/23/24 Page 286 of 329 Page ID #:15044
Case 2:15-cv-01045-RFB-BNW Document 839-1 Filed 07/23/24 Page 286 of 329

23

—————2:15-cv-01045-RFB-BNW—————

1      THE COURT:  Mr. Yates, what case can you point to me

2   that you believe provides the clearest example of a Court

3   reopening discovery as it relates to establishing monopsony

4   power or monopoly power in a class period post the class period?

5      So, in other words, the cases that you've cited I don't

6   know that they are directly on point, but, again, we don't have

7   that many monopsony cases --

8      MR. YATES:  Sure.

9      THE COURT:  -- period.  But I want to think about and

10  look at what case you think best legally supports your position

11  as it relates to the relevance of the information.  And I say

12  that because from my standpoint, Mr. Yates, if the information

13  isn't relevant, then obviously there's no reason or basis to

14  reopen the discovery.  That's certainly a threshold issue.

15  Apart from -- and we can disagree about potential issues of

16  diligence or not.  Certainly if it's not relevant, that doesn't

17  even matter because then we don't reopen discovery.

18      So tell me what you think is the best legal support for

19  that position.  Because, again, I've looked at the expert record

20  here, but I want to hear from you because I want to give you an

21  opportunity to make your best legal argument for that.

22      MR. YATES:  Sure.  I mean, I think the case that is the

23  closest, and then I'll come back to some Ninth Circuit

24  authorities, the *Geneva Pharmaceuticals* case, which is Judge

25  Cote out of the Southern District of New York, very experienced

—————2:15-cv-01045-RFB-BNW—————

1   judge.

2           THE COURT:  I know why you're quoting Judge Cote to me.

3   I don't know if everyone else knows, but I clerked for Judge

4   Cote, obviously, in the Southern District of New York.

5           MR. YATES:  I understand.

6           THE COURT:  Right.  Of course respect her legal acumen,

7   but so --

8           MR. YATES:  I think this was after your clerkship, Your

9   Honor, but --

10          THE COURT:  Right.  No, it was.  But tell me a little

11  bit about why that is and why it's relevant here.  Because,

12  again, Mr. Yates, I have focussed quite a bit on the experts

13  here because, I mean, we spent a lot of time with that -- as you

14  can see, I spent a lot of time with that in my order which goes

15  into very, very significant detail about the experts' opinions.

16  We spent a lot of time with that.

17          And so I'm focussed on how the legal arguments would

18  work with the expert testimony here.  So why don't you tell me

19  about why you think that case is compelling here.

20          MR. YATES:  Sure.  That case is filed in I believe

21  1998, and there's allegedly exclusionary conduct.  It goes up on

22  appeal and then comes back down from the Second Circuit.  And

23  what does Judge Cote allow?  The plaintiffs make the same

24  argument -- the plaintiffs in that case make the same arguments

25  as the plaintiffs in this case, which is, oh, evidence of what

1  happens after the alleged wrongful conduct cannot be considered.

2  Judge Cote categorically rejects that, categorically.  I mean, I

3  can quote it to Your Honor if Your Honor gives me one moment.

4         She says:  "The plaintiffs have urged that the entry of

5  USL Laboratories in 2003 and Gen Pharm in 2004" -- remember, the

6  case is filed in 1998 -- quote, can easily be dismissed as

7  irrelevant because their entry occurred five or more years after

8  plaintiff's entry and defendant's unlawful conduct which delayed

9  plaintiff's entry.

10        Then she says, quote, The time period for analyzing the

11 ability of a competitor to enter the marketplace, however, is

12 not tied to the date of a defendant's alleged unlawful conduct.

13        And then if Your Honor looks at the *Rebel Oil* case and

14 the *Syufy* case out of the Ninth Circuit, they both speak -- and

15 there's another case that we cited in our briefing from the

16 Ninth Circuit as well -- they all speak to the fact that, you

17 know, the plaintiffs don't get to cabin in the time period and

18 say this is the only time period that's relevant.

19        If, as happened here, there's been a substantial delay,

20 not of Zuffa's choice or making, later information about current

21 competitive market conditions is relevant.  Entry and expansion

22 is quintessentially relevant information because it proves that

23 there are not barriers to entry.

24        And even if everything Dr. Singer said is correct about

25 market share -- and we obviously disagree with that

---
2:15-cv-01045-RFB-BNW
---

1    strenuously -- if there are not barriers to entry, then judgment

2    as a matter of law should be entered for Zuffa.

3              THE COURT:  Okay.

4              MR. YATES:  Okay.

5              THE COURT:  Thank you, Mr. Yates.

6              MR. YATES:  Thank you, Your Honor.

7              MR. CRAMER:  Good morning, Your Honor.

8              THE COURT:  Good morning, Mr. Cramer.

9              MR. CRAMER:  Is there anything in particular you would

10   like me to cover?

11             THE COURT:  So I want to focus a little bit on the

12   issue of relevance because, as I said to Mr. Yates, the issue

13   really for me is relevance.  And in looking at the record here,

14   I'm not sure that the record supports a finding that this isn't

15   relevant.  I mean, there's certain issues of diligence, but

16   assuming that we can set aside the issue of diligence, for the

17   moment, I want you to focus on relevance because that relates to

18   the record itself.

19             MR. CRAMER:  Yeah.  Thank you, Your Honor.

20             So we think it's pretty clear that nothing that happens

21   in 2021 or 2022 can -- can show that Zuffa did not have market

22   power from 2010 to 2017.  And the cases that Zuffa cites, they

23   talk about *Geneva*.  Well, it's true that in *Geneva* the Court

24   allowed discovery after a certain period of time, but the reason

25   why the Court decided that was relevant was two things that are

 1  not at issue here.  Number one, the plaintiffs had sought
 2  damages projected forward during the period for which the
 3  defendant wanted discovery.  So the Court said, "Okay.  Well,
 4  the plaintiffs are relying upon projections for this period, and
 5  we should probably allow to see what actually happened in the
 6  market rather than rely upon projections."
 7         But of course, here, plaintiffs' damages end in June
 8  2017.  We're not seeking damages for anything that happens in
 9  2018 or 2019 or 2020.  Our damages end.  That's one reason why
10  *Geneva* is not relevant.
11         The second reason, and this is the reason why all of
12  the cases they cite are not relevant, is that in each of those
13  cases that Zuffa cites there was -- that the defendant came in,
14  the movant came in, and said, "Your Honor, there was a major
15  change in the trend."  Most of these cases are attempted
16  monopolization cases that they're citing.  Most of these cases
17  the market power that was alleged was fleeting.  And they came
18  in and said, "You know there was a major change in the trend."
19  And in *Geneva*, there was a huge change in the trend.
20         And what the defendant said is, "What this trend shows
21  is that the relevant market that the plaintiffs are showing
22  doesn't make sense because there's all kinds of substitution
23  going on.  And the trend changed."
24         Same thing in the other cases that Zuffa cites.  All of
25  them talk about a changed trend.  Zuffa cites the Ninth Circuit.

—2:15-cv-01045-RFB-BNW—

1    They cite the *Pomona* case, for example.  Let's talk about

2    *Pomona*.  What *Pomona* said was that a party who wanted some very

3    targeted discovery relating to a single issue in a single expert

4    report, they should be allowed to update that expert report

5    because what happened was the expert relied upon some studies

6    and those studies were updated.  And the Court didn't allow the

7    expert to update those studies.  The Ninth Circuit said the

8    Court should have allowed the expert to update those studies.

9            What Zuffa wants here is nothing like that.  And they

10   have not come in with any evidence of a change in trend.  What

11   they have said is what they have always said, competition is

12   just around the corner.  They point to what they call two new

13   entrants.  Who are their two new entrants in the six years after

14   2017?  PFL.  Is that really a new entrant?  They just bought

15   World Series of Fighting, re-branded it, and tried do the same

16   thing again.  They point to Bellator, which they've already

17   called and are currently calling a feeder league.

18           It's interesting that Mr. Yates cites the discovery he

19   wants from what these so-called competitors are telling their

20   investors.  What did Zuffa just tell their investors about the

21   relevance, the importance of these competitors?  What Zuffa just

22   told their investors, which they have to tell the truth to, they

23   can't say material falsehoods to their investors.  Zuffa -- not

24   Zuffa actually.  TKO, Zuffa's owners -- Zuffa's owner, CFO, just

25   said that all of these competitors, in particular Bellator and

———2:15-cv-01045-RFB-BNW———

1   PFL, they're feeder leagues.  They're like the XFL to the NFL.

2   That's what Zuffa is telling their investors and the public.

3   There is no trend towards more competition.

4            And, second, in all of the cases that Zuffa cites they

5   actually come in and say there is a change in trend.  Has Zuffa

6   or Dr. Topel or any of their experts said that market share or

7   market power has declined post 2017?  No, they don't even claim

8   that.

9            Dr. Singer based on publicly-available information

10  actually did a study.  He looked.  He took the headliner market,

11  which he used during the class period, and he used

12  publicly-available information.  And what he showed is that in

13  the headliner market between 2017 and 2023, UFC's market share

14  rose from 90 percent to 93 percent.  And why is that important?

15  Because the headliner market, that's where the money is.  That's

16  where the power is.  Those are the fighters that generate the

17  revenues.

18           And what -- the only evidence in the record about

19  market share and trend is that Zuffa's power rose after 2017.

20  It did not fall.  Zuffa points to the growth -- supposed growth

21  of PFL and Bellator, but it ignores its own growth.  Its

22  revenues doubled between 2017 and 2023.  Wage share has fallen,

23  reportedly, between 2017 and 2023.

24           Moreover, what Zuffa wants is basically a complete redo

25  because they say they want discovery.  They served subpoenas on

──2:15-cv-01045-RFB-BNW──

1   11 competitors in Johnson.  Those subpoenas are extremely broad.

2   They asked for evidence from 2006 to 2023.

3       When they're going to get all of that, we don't know.

4   We've just learned today that there were two out of the 11 meet

5   and confers.  When is that evidence going to come?

6       But even if that evidence were produced --

7       THE COURT:  Mr. Cramer, let me ask you this question.

8       MR. CRAMER:  Yes.

9       THE COURT:  One of the issues here that the Court is

10   focussed on as it relates to Zuffa's arguments is whether or not

11   they sought to reopen discovery or made statements about it.  I

12   mean, you've heard I asked Mr. Yates this question, but I'm

13   going to ask you a different question.

14       But the record is very clear.  Yes, there was a delay

15   here for reasons stated by the Court.  I don't recall the exact

16   record in Johnson as it relates to all of the, I guess, requests

17   for reopening discovery in Le.  I know there was no request,

18   obviously a motion, in this case.  But I want you to comment on

19   that.

20       MR. CRAMER:  First of all, the first time that Zuffa

21   said they wanted to reopen discovery in Le was in August of

22   2023.  Second, they have -- they never said, prior to August of

23   2023, that any of the discovery they were talking about was

24   relevant to the damages or liability in Le.  They said it was

25   relevant to injunctive relief, but of course Your Honor has put

——2:15-cv-01045-RFB-BNW——

1  the injunctive relief off until later.

2         So they have never publicly stated until August 2023

3  that any of this evidence that they said they wanted was

4  relevant to Le, liability, and damages.

5         THE COURT:  So let me ask you this other question --

6         MR. CRAMER:  Yes.

7         THE COURT:  -- related to that, Mr. Cramer.  If I'm

8  going to be deciding injunctive relief, the motions for that are

9  going to be filed and fully briefed a little bit later, why

10  wouldn't I reopen discovery for deciding the issue of injunctive

11  relief currently?  And so there's certainly an issue about, sort

12  of, the efficiency of doing that.

13         If the plaintiff, which they are asking for some

14  injunctive relief, why wouldn't I reopen discovery for that?

15         MR. CRAMER:  So, Your Honor, what our concern is is to

16  have a trial on liability and damages in Le starting on April

17  8th, 2024.  And what we don't want in that trial is apparently

18  what Zuffa is intending to do, start lobbing in out-of-context

19  statements to investors, apparently, from PFL in 2022 and then

20  argue, either through their expert or otherwise, that that

21  somehow shows Zuffa did not have monopsony power in 2012.

22         THE COURT:  Well, I want to be clear about one thing,

23  Mr. Cramer.  We have multiple issues that are going on.

24         MR. CRAMER:  Yeah.

25         THE COURT:  I have not decided an issue as relates to a

1  motion in limine.  Even if I were to find that potentially this

2  is not sufficiently-relevant information for Zuffa to reopen

3  discovery considering all of the factors, it doesn't necessarily

4  mean that I wouldn't allow them to present some evidence of

5  this.  We have to have a separate discussion about what's

6  admissible and relevant even if we were to go forward on April

7  8th date, and I understand your concerns, but I just want to be

8  clear, to the extent that the Court would decide about reopening

9  discovery one way or the other, there would still be a separate

10 discussion that would need to be had about the relevance of it.

11      I may decide, for example, to reopen discovery, but

12 then decide after seeing the discovery that it's in fact not

13 relevant in hearing the testimony.  But I want to be clear that

14 from my perspective those are separate issues.  What gets

15 admitted into trial versus what would be permitted in discovery

16 are two separate things.  There are plenty of situations where

17 discovery's allowed, and then once the discovery's produced the

18 Court may make the determination this is relevant, but that's

19 not relevant so you can't bring it in.  So I want to focus

20 really on the reasons that we are here.

21      And I want to go back to this issue about injunctive

22 relief.  What type of injunctive relief essentially would the

23 plaintiffs be seeking now?  And I know that -- this has been

24 briefed a little bit, but because I want to talk about that

25 today as it relates to reopening discovery.  What is it that

─────────2:15-cv-01045-RFB-BNW─────────

1   you're going to be seeking?

2          MR. CRAMER:  So, first of all, Zuffa can take any

3   discovery it wants or needs in the context of the Johnson case

4   now.  So -- and it can be adjudicated later that that discovery

5   is relevant to injunctive relief in Le.

6          Second, the injunctive relief we will be seeking in Le

7   is some form of restricting the ability of the UFC to use

8   never-ending contracts, essentially, so some kind of cap on the

9   amount of time that those contracts can last.  Apparently --

10         THE COURT:  I'm sorry.  Would these be contracts that

11  were initially agreed to in the class period or subsequent

12  contracts?

13         MR. CRAMER:  No, the injunctive relief is about current

14  market conditions.

15         THE COURT:  Okay.  All right.

16         MR. CRAMER:  So that's why we think the injunctive

17  relief --

18         THE COURT:  But it would only apply -- if you're

19  talking about Le -- are you seeking injunctive relief for both

20  Le and Johnson?  Are you seeking injunctive relief for just one?

21  Because certainly, I mean, you could at least make the argument

22  that you would like it to apply to people in Johnson, but that

23  would be a little bit premature.

24         But are you talking about for injunctive relief the

25  class members for Le, and there may be some carryover, but I

─────2:15-cv-01045-RFB-BNW─────

1   don't think there would be necessarily -- well, I take that
2   back.  There probably is for those two classes.  Are you just
3   talking about those class members or are you talking about other
4   people?
5           MR. CRAMER:  So the injunctive relief in Le would apply
6   across the board to Zuffa as a whole, is what we would ask for,
7   and we would also ask for that in Johnson.  It would be a
8   generally-applicable injunction against the UFC that would say
9   that they could no longer engage in the same contracting
10  practices that they current -- currently engage in.  And it
11  would apply equally to the class members in Le and the class
12  members in Johnson.
13          Unfortunately, because the class in Le goes through
14  June 2017, a lot of those fighters are now retired or no longer
15  fighting with the UFC.  So it's going to be more relevant to the
16  current fighters who are the class members in Johnson.  And
17  that's why we think it makes more sense to handle the injunctive
18  relief claim in conjunction with the Johnson case.  Let's --
19  let's do the Johnson case, which goes from July 2017 to the
20  present, and let's do the Le injunctive relief claim with the
21  Johnson case because injunctive relief has to do with current
22  market conditions and current conduct.
23          THE COURT:  Why wouldn't I then just bifurcate the
24  injunctive relief?  It would seem to me that the injunctive
25  relief as it relates to the fighters in Le would be different,

—2:15-cv-01045-RFB-BNW—

1  in part, because of where we are procedurally.  The class has

2  been certified, right.  The request for the appeal has been

3  denied.  We're on a track to decide dispositive motions one way

4  or the other to figure that out, and depending on how they're

5  decided, the case moves forward I guess, or not.

6       But assuming that it moves forward and you're asking

7  for injunctive relief, why wouldn't I simply then just bifurcate

8  the relief and say, you know, "If you're going to ask for relief

9  for the Le class, then you have to separate that out"?  Because

10  if you're going to ask for both of them at the same time, then

11  it seems to me that it might make sense to reopen discovery.

12  Because I don't know how you're going to be simultaneously

13  asking me for injunctive relief for a combined class, but then

14  asking me to restrict discovery for that combined class to a

15  limited period of time.

16       MR. CRAMER:  Your Honor makes a good point, and I think

17  it probably does make sense to bifurcate the liability and

18  damages class in Le and the injunctive relief claim in Le.  I

19  think that does make sense.

20       THE COURT:  No, I don't know that, Mr. Cramer, you

21  could argue to me that we want to have injunctive relief that

22  applies now because we -- it applies to current conditions and

23  then simultaneously argue to me we don't think the current

24  conditions matter for liability damages, right --

25       MR. CRAMER:  Yeah.  No, you're -- you're right.

————2:15-cv-01045-RFB-BNW————

1    THE COURT:  -- for the bout class.

2    MR. CRAMER:  We recognize that.  What we want -- what

3  we think is -- we think Your Honor makes an excellent point.  We

4  think the orderly way to do this is to try the liability and

5  damages claim in Le in April of 2024, put the -- and bifurcate,

6  put the injunctive relief claim in Le together with Johnson and

7  try that separately.  That makes eminent sense.  Then the

8  damages and liability is through 2017.  What happens after 2017

9  is not relevant in our view.  No -- no more discovery is needed.

10    I mean, you'll recall, Your Honor, there were 12 years

11  of discovery in Le from 2005 to 2017, right.  There's

12  no -- there's no case that says that in order to prove a

13  monopoly or monopsony you need more than 12 years.  Dr. Topel

14  doesn't say that.  None of the experts say that.  No cases say

15  that.

16    The authorities we cited to Your Honor are three or

17  four years is probably enough to show durable monopoly or a

18  monopsony power.  So it's a self-contained case.  There's --

19  there's nothing more that plaintiffs need to show after 2017 if

20  we bifurcate the injunctive relief.  So we think that's

21  sensible.

22    THE COURT:  When you say "bifurcate," what I was saying

23  was bifurcate the two classes in terms of the cases; that if

24  you're asking for injunctive relief, right, for Le class

25  members, right, that your argument would have to be based upon

1   what occurred during the class period they should be permitted

2   to be able to get out of contracts or change what the terms were

3   or ask the Court to modify them.  That's very different than you

4   saying, "Well, we want to bifurcate it and have the damages for

5   Le and then have the injunctive relief for Le and Johnson

6   decided together."  That's not what I'm talking about.

7           I'm talking about separating out the injunctive relief

8   for Le and Johnson because, again, I don't know that it's

9   consistent to argue to me that that claim should be bifurcated,

10  but still those two classes should be considered together

11  because that would mean that the discovery regarding that would

12  cover 2006 to 2023, right?

13          MR. CRAMER:  You're right, you're right, Your Honor.  I

14  mean, we're in this situation where I think both sides agree

15  that injunctive relief claims are about current market

16  conditions.  And it would be -- make no sense to try to talk

17  about 2016 contracts and change those if Zuffa doesn't use them

18  anymore, right.

19          THE COURT:  Right.

20          MR. CRAMER:  But what we -- what we don't want from

21  Your Honor in terms of both Le and Johnson and injunctive relief

22  is to change -- is for some business practices that are being

23  used today to change.

24          So we agree, Your Honor.

25          THE COURT:  Yes, but how would that affect -- if many

────────2:15-cv-01045-RFB-BNW────────

1   of these fighters are retired or not still fighting, I mean,

2   what injunctive relief would the class members in Le even be

3   seeking then?

4          MR. CRAMER:  They're seeking -- I mean, they have

5   standing because of the law that says --

6          THE COURT:  Right.

7          MR. CRAMER:  -- that if they are fighting at or in the

8   market at the time they filed the case, they have standing.  But

9   the fact -- it's like in a college case what happens is if

10  you're a senior and you bring a case against your college and

11  you graduate, you can still seek injunctive relief.

12         THE COURT:  No, I've already found it.  I already found

13  the issue of standing.

14         MR. CRAMER:  Right, so --

15         THE COURT:  So the issue really, though, even

16  injunctive relief has to be very targeted and specific.  And

17  even if you have standing, it doesn't mean that you are going to

18  be entitled to whatever injunctive relief you seek.

19         MR. CRAMER:  Of course.

20         THE COURT:  Right.  The question is what would you be

21  seeking for fighters who are predominantly or almost all

22  retired.

23         MR. CRAMER:  Right.  For the retired fighters what

24  we're seeking is money damages.

25         THE COURT:  Okay.

PATRICIA L. GANCI, RMR, CRR - (702) 385-0670

Case 8:19-cv-01984-JVS-KES Document 399-12 Filed 07/23/24 Page 302 of 329
Case 2:15-cv-01045-RFB-BNW Document 839 Filed 07/23/24 Page 302 of 329
Page ID #:15060

39

————2:15-cv-01045-RFB-BNW————

1        And are there any class members in Le who are not

2   retired who would be seeking other form of damages as far as you

3   know?

4        MR. CRAMER:  I don't standing here today.  There may --

5   there may well be because it goes through June 2017.  But most

6   of the -- most of the -- almost all of the injunctive relief

7   will apply to the current fighters at the UFC.  The plaintiff in

8   Le -- the plaintiffs in Le that have standing have standing to

9   seek injunctive relief on behalf of the current fighters even if

10  they're not in the class in Le.  That's what we'll argue in what

11  we're going to file in December.

12       But we agree that will not be what we're seeking at

13  trial in Le in April of 2024, and that's an issue that can be

14  handled later.

15       THE COURT:  And when would we expect all of the

16  discovery in Johnson to be completed?

17       MR. CRAMER:  Discovery in Johnson is supposed to end in

18  February of 2025.

19       THE COURT:  Right.

20       MR. CRAMER:  I mean, it -- it -- I mean, one of the

21  concerns we have about the reopening of discovery in Le is that

22  it cannot be cabined to just looking at a few competitors in

23  2022 or 2023.  As Your Honor has pointed out, we also need

24  discovery from the UFC.  We need from their bankers and their

25  investors.  As we saw at the class hearing, a lot of the bankers

2:15-cv-01045-RFB-BNW

1   and investor materials are some of the best evidence of what

2   Zuffa is telling itself about its own market power and how

3   important those contracts are to be barriers to entry to

4   competitors.  And so we're going to want that discovery, too.

5          And, again, what Zuffa is saying is that the reason why

6   2022 entrants or expansion is relevant is because it says

7   something about Zuffa's conduct.  Well, we then have to know

8   whether the conduct in Le is the same as the conduct in Johnson.

9   It's -- Zuffa says it's a natural experiment.  Well, an

10  experiment you have to see whether -- if you're testing whether

11  the conduct is or is not a barrier to entry, you have to see

12  whether the conduct is the same.  So what we need --

13         THE COURT:  But, Mr. Cramer, are you saying to me that

14  you think that what we should do is decide damages in 2024 and

15  then wait until 2025 to decide injunctive relief for Le?

16         MR. CRAMER:  Oh.  In -- for Le what I'm saying is we

17  don't need anything more.  The record is closed.

18         THE COURT:  I'm talking about for injunctive relief --

19         MR. CRAMER:  In Le, yes.  Yes.  I am saying --

20         THE COURT:  Are you saying to me that what the schedule

21  should be is damages in April of 2024 if the trial goes forward?

22         MR. CRAMER:  Yes.

23         THE COURT:  Right.

24         And if there are damages awarded, then we -- because if

25  there aren't damages awarded, right, there would be no

—2:15-cv-01045-RFB-BNW—

 1 injunctive relief -- well, likely would be no injunctive relief

 2 that would be ordered potentially.

 3      But what you're suggesting to me is that if I allow the

 4 trial to go forward in April 8th after having potentially denied

 5 the motions for summary judgment, that you still wouldn't seek

 6 injunctive relief until the following year for the Le class?

 7      MR. CRAMER:  I think that's right.  We would seek

 8 injunctive relief in conjunction with the Johnson trial.  I

 9 think that would be the most orderly way to handle it because we

10 need discovery of the conduct through the present.  I think

11 that's -- that's the way it would have to happen.  We're open to

12 other ways of handling it.

13      THE COURT:  Well, I don't know honestly, Mr. Cramer,

14 that -- I have to think about that.  Because it seems to me that

15 you may have to make a choice about how much injunctive relief

16 you seek for the Le class if you're asking me to hold it off a

17 year.  That -- that's a substantial period of time for a class

18 and for the case.  And that I think goes to one of the arguments

19 that the defendant has made about efficiency.

20      And so as you're saying this to me, I'm concerned --

21      MR. CRAMER:  Okay.

22      THE COURT:  -- that asking me to decide the injunctive

23 relief for Le a full year after any potential trial would

24 potentially be very inefficient.  I'm not saying the Court

25 couldn't potentially do that.  I think there are reasons for the

————2:15-cv-01045-RFB-BNW————

 1  Court to do that.

 2         But I don't know that there would be an issue.  And

 3  potentially, again, if there was even an award after a jury

 4  trial, you would have a very sticky, messy situation as relates

 5  to the finality of a judgment and the potential appeal of that

 6  judgment as well.

 7         And so as you're saying this, I'm thinking about how

 8  this would work, and that seems to me to be a little bit

 9  potentially problematic, Mr. Cramer.

10         MR. CRAMER:  So, Your Honor, we hear you on that.  Our

11  priority is to go to trial on damages and liability in Le in

12  April of 2024 if Your Honor denies the motion for summary

13  judgment.  If Your Honor thinks that -- that would not be

14  efficient to then do some kind of injunctive relief hearing

15  within a month or two of the damages verdict, then we could try

16  to do that, or if Your Honor thinks that, perhaps, injunctive

17  relief should just be handled in Johnson and not in Le at all --

18         THE COURT:  Right.

19         MR. CRAMER:  -- that might be another approach.

20         THE COURT:  What I'm saying to you is I'm just putting

21  you on notice --

22         MR. CRAMER:  Yes.

23         THE COURT:  -- as I think about this, which is that if

24  you're asking me not to reopen discovery and to move forward

25  with the case, assuming you prevail on a motion for summary

─────────────2:15-cv-01045-RFB-BNW─────────────

1  judgment at least as it going to trial, I'm not sure that I

2  would permit an injunctive relief claim to move forward for the

3  Le class.

4          MR. CRAMER:  Okay.

5          THE COURT:  Because I don't think that you can ask me

6  to do both of those things.  I think that they are

7  potentially -- and I'll look at -- again, I'm going to look back

8  over the schedule, but I think that they are potentially

9  inconsistent with one another and they disadvantage the

10  defendant and force them to defend both of those claims in that

11  way.

12          MR. CRAMER:  So, Your Honor, that is perfectly

13  understandable.  We will look at that.  It is possible then --

14  we will consider it, talk about it.  But it may make more sense

15  to deal with the injunctive relief claim in Johnson and abandon

16  the injunctive relief claim in Le, but again --

17          THE COURT:  Look, I'm not requiring you to do one thing

18  or the other.  What I'm saying to you is those arguments to me

19  are inconsistent with one another to ask me -- to say, "Well, we

20  want you to keep this potential date if we prevail all the way

21  through here, but we want you then to wait another year for an

22  injunctive claim."  That doesn't make sense to me.

23          MR. CRAMER:  Right.

24          THE COURT:  And so I don't know if you need to -- if

25  you would need to speak with your clients about that or how you

44

—2:15-cv-01045-RFB-BNW—

1  want to proceed, but I don't know that, to me, I would deny the

2  motion if you're still going to be pursuing injunctive relief.

3  It just doesn't necessarily make sense for the reasons that I

4  have outlined because --

5        MR. CRAMER:  Right.

6        THE COURT:  -- you're going to be seeking all sorts of

7  information about current conditions.  And if we're doing that,

8  why aren't we doing that once and then trying the case?  We

9  could still try the case in 2025 when that -- when that

10  discovery's ended, but I understand that that's not what you

11  want --

12        MR. CRAMER:  Right.

13        THE COURT:  -- and that's not what your clients have

14  wanted.  And so I'm just letting you know that because I don't

15  know that those two positions can be maintained.

16        MR. CRAMER:  That's fair.  And now, recall, that in

17  Johnson discovery is going on right now.  But I understand Your

18  Honor loud and clear.  I can tell you that our priority is to

19  have a trial in April of 2024.  We think that is the best way to

20  help resolve this case and both cases for -- and -- and that is

21  our priority.

22        So we will confer and -- and provide Your Honor -- we

23  have a motion due regarding injunctive relief in December.  We

24  can tell Your Honor what -- we can give Your Honor

25  information --

```
────────────────2:15-cv-01045-RFB-BNW────────────────
```

 1            THE COURT:  Well, I'll tell you what I'm likely to

 2   do --

 3            MR. CRAMER:  Okay.

 4            THE COURT:  -- potentially is I will think about -- I'm

 5   going to have Mr. Yates come back up and answer some questions.

 6   And what I'm likely to do is issue -- because I want the issue

 7   of the reopening of the discovery to be decided either today or

 8   tomorrow.  I'm not going to put this off.

 9            So in my order I would simply say, Mr. Cramer, if I

10   decide to deny the motion, right, then that also means that the

11   Court would not permit injunctive relief to be based upon

12   anything other than the discovery that's been obtained in Le,

13   which might effectively preclude it, and that then the

14   plaintiffs could seek to ask me to reconsider my order if I'm

15   denying the motion after meeting and conferring with their

16   clients.

17            So if I were to rule in your favor, I would give you

18   potentially the option to speak with your clients and ask for me

19   to reconsider that and move the trial date if you want me to do

20   that.  But I'm not going to -- if you're going to prevail, I'm

21   not going to both keep the trial date and push injunctive relief

22   out for a year.  That's not going to happen, right.  So you may

23   have to make a choice.

24            MR. CRAMER:  Okay.  That -- we understand, Your Honor.

25   You've been crystal clear.  Appreciate it.

———2:15-cv-01045-RFB-BNW———

1          THE COURT:  Okay.

2          Mr. Yates.

3          MR. YATES:  Sounds like you wanted me back up, Your

4   Honor.  I'll come on up.

5          THE COURT:  Well, again, I wanted to give you an

6   opportunity to respond.  You heard the question I asked

7   Mr. Johnson [sic] because I don't think -- and you don't have to

8   comment on this.  Obviously you heard the Court -- that the

9   plaintiffs can't be arguing both for injunctive relief until

10  2025 and a trial date.

11         That being said, injunctive relief is obviously

12  different than damages in this case.  And so I wanted to give

13  you an opportunity to be able to respond to some of the

14  arguments that Mr. Cramer made because obviously, as I indicated

15  to Mr. Cramer, I want to decide the motion to reopen today or

16  tomorrow.  I just don't think that we should delay that anymore.

17  And so if you want to be able to respond, you can.

18         MR. YATES:  I appreciate that.  Thank you, Your Honor.

19         I think the -- you know, we're fine going to trial in

20  April of 2024 as long as we get the discovery.  And then

21  understand that Your Honor may -- may want to deal with in

22  limines downstream.  I understand that and appreciate that and

23  respect that.

24         I do think that the notion that we should be waiting a

25  year to then think about injunctive relief in Le doesn't make

Case 8:12-cv-01840-JVS-KES Document 239-23 Filed 07/23/24 Page 310 of 329
Case 2:15-cv-01045-RFB-BNW Document 839-13 Filed 07/23/24 Page 310 of 329
Page ID #:15068

47

—————2:15-cv-01045-RFB-BNW—————

1   any sense from an efficiency standpoint for the Court and the

2   like.  You know, we've -- we've argued for a long time that the

3   most efficient thing is to consolidate the cases and to just

4   have one trial.

5        Respect Your Honor's views on that and -- you know.

6   But I'm not sure they can just abandon their injunctive claims

7   today, but the arguments I've heard all suggest that Your

8   Honor --

9        THE COURT:  Well, I could just decide that the

10  injunctive claim can't proceed.  They don't have to abandon it.

11  I could simply say if they're pursuing the claim, they're

12  pursuing their damages claim, right, that they can't pursue an

13  injunctive claim later, which is why I said that to Mr. Cramer.

14       I'm not going to --

15       MR. YATES:  Right.

16       THE COURT:  I agree with you.  As I said, it makes no

17  sense --

18       MR. YATES:  Right.

19       THE COURT:  -- to have them both go forward in this

20  way, right.  So that's not going to happen, right.

21       But I do want you to understand that I may still decide

22  that I'm not going to potentially reopen discovery.  And

23  Mr. Cramer made some arguments about that, and I want you to

24  focus on that --

25       MR. YATES:  Sure.

2:15-cv-01045-RFB-BNW

1       THE COURT:  -- because, as far as I'm concerned, that

2  is sort of the focal issue here.

3       MR. YATES:  Perfect.

4       THE COURT:  And so I want you, again, to talk to me,

5  Mr. Yates, about two things.  One is, sort of, again timing

6  issues.  Partly it seems to me that there was simply a strategic

7  decision not to file a motion to reopen discovery, that you were

8  essentially -- and, again, you weren't involved in the case.

9  I'm not saying you, per se.

10       MR. YATES:  Understood.

11       THE COURT:  But that your client made a decision

12  strategically to wait to see my order, then to see if the order

13  could be appealed, and when your client didn't prevail on the

14  certification and didn't prevail on the request for the appeal,

15  then to seek discovery.  Typically that type of a strategic

16  decision would not be recognized as good cause or excusable

17  neglect.  And notwithstanding, again, the issue of the time that

18  it took for me to decide that, but I was actually, as I said in

19  the record, very clear that the reason why that was happening

20  was because I was considering *Olean* and the review of that as it

21  applied to the facts in this case and that that would take some

22  time for me to apply.

23       So it's not even as if the Court was opaque about, sort

24  of, what was the nature of the delay, right.  It was very clear.

25  I said, "I am inclined to grant the certification."  Then we had

Case 8:19-cv-01984-JVS-KES Document 339 Filed 07/23/24 Page 312 of 329
Case 2:15-cv-01045-RFB-BNW Document 939-13 Filed 07/23/24 Page 312 of 329
Page ID #:15070

49

2:15-cv-01045-RFB-BNW

1   a status conference where I said, "There are these cases that

2   are pending that I think are directly relevant."  Those cases

3   were decided.  And then after that, having gone through the

4   record which took some time, the Court issued its certification

5   order.  So it's not even as if your client was in the dark as to

6   what was happening.

7            MR. YATES:  Right.

8            THE COURT:  Right.  And so, again, I know you're coming

9   to this a little bit later, but why wouldn't I consider that a

10  strategic decision?

11           MR. YATES:  It certainly was not, Your Honor.  And

12  Mr. Cramer is just dead wrong, and I was hoping that the

13  plaintiffs would concede that they were wrong on this point, but

14  they have not so I'll go through it.

15           He says that the first time that we asked for merits

16  and damages discovery in Le was in August of 2023.  That's what

17  he just told Your Honor.  If Your Honor looks at Page 3 of our

18  brief, back in 2021 and 2022 we said the two actions should be

19  consolidated and discovery should proceed promptly in this

20  action as well as to bring the discovery in Le current.

21           THE COURT:  No, I guess what I understood from

22  Mr. Cramer -- because I agree that that was what was requested

23  and I recall that being requested.  We in fact had hearings

24  about that, obviously -- is a motion.  So I think there's a

25  difference obviously between making that argument which was made

—2:15-cv-01045-RFB-BNW—

 1  to me as it relates to the consolidation and the motion in Le.

 2  I think that the record's fairly clear that there was mention of

 3  joint discovery for the purposes of deciding whether or not to

 4  consolidate the cases, and that occurred prior to August of

 5  2023.

 6          And so you don't need to address that because I took

 7  Mr. Cramer as saying essentially a motion rather than

 8  discussions.

 9          MR. YATES:  You know, we did file documents with the

10  Court saying that discovery should be reopened in Le --

11          THE COURT:  Right.

12          MR. YATES:  -- in 2021 and 2022 and 2023.  I don't

13  think a party can be any more diligent than that.  We -- you

14  know, it wasn't me, it was Mr. Isaacson, you know, having

15  conversations with you made that clear in 2022.  And Your Honor

16  decided to stay discovery in Johnson.

17          We accept that.  But once Your Honor has decided that,

18  there's not much more that -- that a litigant can do.  We raised

19  it multiple times with the Court, and then -- and then we --

20  we -- Your Honor, we raised it again when the class

21  certification decision came down.  And then Your Honor set

22  October 24th to file it.  We filed it at the date Your Honor

23  said was -- was acceptable.

24          So I just don't know what more a litigant can do.  We

25  raised it in filings with the Court saying that discovery should

—2:15-cv-01045-RFB-BNW—

1  be reopened in Le to bring things current and to reflect current

2  market conditions.

3          The other point I would like to make, Your Honor,

4  Mr. Isaacson reminded me that the reason that there are no

5  models of monopsony power in the class certification record is

6  because that was conceded to be a common issue that -- the issue

7  of monopsony.  So, you know, that's -- that's -- I just wanted

8  to make that clear.

9          THE COURT:  Tell me what you mean by that, Mr. Yates.

10  Because when you say "a common issue," the case actually

11  evolved.  Initially the plaintiffs were arguing monopoly and

12  monopsony.

13          MR. YATES:  Right.

14          THE COURT:  And then their argument shifted slightly to

15  focus on monopsony --

16          THE COURT:  Correct.

17          THE COURT:  -- with monopoly being supportive of the

18  monopsony or the alleged monopsony power.  So I guess I want to

19  make sure I'm understanding --

20          MR. YATES:  Just I don't believe the experts were

21  speaking to, sort of, how you -- how you would model out

22  monopsony-type behavior in the way that Your Honor was I think

23  looking for because it was an issue that was ultimately going to

24  be common.

25          But in any event, what I think -- here's what I've

PATRICIA L. GANCI, RMR, CRR - (702) 385-0670

 1  heard, Your Honor.  I've heard lots of statements by the

 2  plaintiffs that discovery is open in Johnson.  You know, if Your

 3  Honor were to decide to deny the motion to reopen -- and I

 4  respectfully submit Your Honor should grant the motion to

 5  reopen.  We can get this done.  We can try the case in April if

 6  that's Your Honor's choice, or if Your Honor wants to combine

 7  the trials, that's fine as well.

 8        But if Your Honor denies the motion to reopen, Your

 9  Honor should at least allow us to use Johnson discovery in Le.

10        THE COURT:  So tell me -- because that's the other

11  thing I want to ask about.  What Johnson discovery would you be

12  using?

13        MR. YATES:  The same stuff that I said we would be

14  seeking in -- in -- from the third parties and the like.  I

15  mean, we would want to put that evidence in and let the trier of

16  fact, assuming Your Honor denies the summary judgment motion,

17  evaluate that evidence.

18        THE COURT:  Can you give me an example of the type of

19  information that you would be talking about?  Because, again, it

20  seems to me part of this would be essentially supplementing

21  expert reports.  So what I would expect might happen, right, and

22  I wouldn't hold this against you all, is all of a sudden there

23  would be expert reports that would be supplemented in the middle

24  of the Johnson discovery period potentially if the case is going

25  to trial as a way to admit them.

2:15-cv-01045-RFB-BNW

1           Mr. Yates, that's the type of strategic decision that
2     seems to me is perfectly -- if the Court were to allow it, would
3     be acceptable.  I'm not saying you would do that, but it seems
4     to me that really what you're asking me to do is to allow you to
5     supplement information as relates to your expert's report and
6     about current market conditions --
7           MR. YATES:  Well --
8           THE COURT:  -- and to say essentially what you've said.
9     Fighters have left.  Competitors have risen.  This shows, sort
10    of, backwards looking that we never had the power that they said
11    that we had and, see, if we had, this would have never happened.
12          Now, your experts didn't say that at the evidentiary
13    hearings.  They didn't even say that two years later.  But
14    you're saying they can say that now and, again, we can talk
15    about whether or not that's appropriate or not.  And what I
16    understand you to be saying is, "We would like to be able to use
17    whatever we can acquire between now and when the case went to
18    trial from our experts and from competitors to be able to argue
19    these points to the jury if the case goes to trial."  Is that
20    right?
21          MR. YATES:  Well, I certainly -- I would love to be
22    able to -- I would love to be able to supplement expert reports
23    to reflect current market conditions, but I think that probably
24    would require Your Honor to grant the motion to reopen.
25          THE COURT:  Right.

Case 8:12-cv-01984-JVS-KES Document 239-13 Filed 07/23/24 Page 317 of 329
Case 2:15-cv-01045-RFB-BNW Document 839 Filed 07/23/24 Page 53 of 65
Page ID #:15075
54

———————2:15-cv-01045-RFB-BNW———————

1          MR. YATES:  But, you know, discovery -- we're going to

2    be taking discovery in Johnson.  These cases are obviously --

3    they are overlapping.  They're intimately related.  The alleged

4    conduct supposedly, according to plaintiffs, continues.

5          And so if we -- if we're able to discover information

6    from competitors as part of Johnson, all I'm saying is that that

7    should be part -- should be usable at a Le trial.  Now, Mr. --

8          THE COURT:  But I guess I'm -- okay.

9          MR. YATES:  Certainly.

10         THE COURT:  You have to be more specific, Mr. Yates.

11         MR. YATES:  Okay.

12         THE COURT:  What information specifically?  Let's set

13   the experts apart.  Let's move the experts apart.  What other

14   information would you be seeking?  Because it sounds like what

15   you were saying is you would be seeking essentially information

16   from competitors to say, you know, "We were actually able to

17   compete with Zuffa, and notwithstanding their market power, we

18   were able to poach fighters.  We were able to use their own

19   business model, and we could resist their efforts to acquire us

20   or to intimidate us."

21         MR. YATES:  Yeah, I think that would --

22         THE COURT:  Right?

23         MR. YATES:  I think that would be -- let me step back.

24   By the way, I just noticed the quote from the Abraham Lincoln

25   that's on the lectern.  And obviously I far exceeded the 135

—2:15-cv-01045-RFB-BNW—

1  seconds.

2        But I think that in my experience jurors are -- you

3  know, they're going to hear about econometrics, and a lot of

4  that is going to go over their head.  What is going to be

5  powerful to them is Scott Coker, the head of PFL, other

6  competitors saying directly to the jury, "We were not

7  restricted.  Our fighters are as good as the UFC's fighters."

8        Also, what else is probative?  They pay less than the

9  UFC by and large except for when they take stars.  So all of

10  that information, I think, is going to be incredibly powerful to

11  a trier of fact, a jury, who may or may not understand

12  econometrics, but will understand hearing directly from the

13  competitors that they are not minor league.  They believe that

14  they are competitors, and they have not been restricted or

15  restrained in any way.

16        THE COURT:  Okay.

17        All right, Mr. Yates.  Give me a moment.  I just need

18  to ask Mr. Cramer some questions.

19        MR. YATES:  Sure.  Thank you, Your Honor.

20        THE COURT:  I'll come back to you.

21        So, Mr. Cramer, I want you to respond to this potential

22  situation where I say, "I'm not reopening discovery, but if

23  defendant or plaintiffs find things in Johnson that they want to

24  use, they can petition the Court to use it.  But I'm not going

25  to categorically exclude it."  What's your position as relates

———2:15-cv-01045-RFB-BNW———

1    to that?

2           MR. CRAMER:  Our position is there is information

3    that's being produced in Johnson.  If they want to file -- they

4    want to put a document on their witness list or on their exhibit

5    list for trial, we'll deal with it before trial.

6           Our point, now, is that the parties need to be

7    preparing for trial in April 2024.  We're briefing summary

8    judgment.  And then we're going to prepare for trial.  The

9    record needs to come to a close.  It has to close.  We need to

10   be able to prepare --

11          THE COURT:  So let me ask you this question,

12   Mr. Cramer, because one of the things that is sort of creeping

13   in a little bit here --

14          MR. CRAMER:  Yeah.

15          THE COURT:  -- is what the trial arguments are going to

16   be.

17          MR. CRAMER:  Yeah.

18          THE COURT:  And certainly one of the things that has

19   happened with me in cases is I've seen someone argue something

20   in their trial brief, but I say, "Well, wait a minute.  You

21   can't have argued something as relates to me issuing a

22   particular discovery order and then turn around and use that

23   particular order in a different way to be able to make an

24   argument based upon, for example, a lack of information at a

25   trial."

Case 8:19-cv-01984-JVS-KES Document 389-13 Filed 07/23/24 Page 532 of 66329
Case 2:15-cv-01984-JVS-KES Document 839-23 Filed 07/23/24 Page 532 of 329
Page ID #:15078

57

─────2:15-cv-01045-RFB-BNW─────

1      So you're not saying, for example, that you would argue

2  on behalf of your clients, "Well, they haven't been able to

3  since demonstrate that competitors have entered the market," or

4  things along those lines at a trial in this case that would

5  suggest that had they had that information they could argue it

6  to the jury?

7      MR. CRAMER:  Our clients are not going to themselves

8  initiate putting in any evidence that's not already in the

9  record in Le.

10      THE COURT:  Okay.

11      MR. CRAMER:  We do not need it.  We show durable

12  monopsony power from at least 2010 to 2017.  There's no expert,

13  not Dr. Topel, not Dr. Singer, not any expert in this case has

14  said that you need more than seven years of showing of

15  foreclosure of monopsony power to prove a Section 2 case.  So --

16      THE COURT:  So are you saying to me, because I want to

17  be clear.

18      MR. CRAMER:  Yes.

19      THE COURT:  Because we dealt with a couple of issues

20  here.  Are you saying to me that if this case were to proceed to

21  trial, the plaintiffs would not be seeking to add any

22  information, if I were to deny the motion to reopen, beyond the

23  discovery that has been provided in Le?

24      MR. CRAMER:  Well, we won't unilaterally disarm.  If

25  Zuffa wants to put it in --

———————2:15-cv-01045-RFB-BNW———————

```
 1              THE COURT:  No, that's not -- right.

 2              MR. CRAMER:  Oh, okay.  Yeah.  Then the answer to that

 3  is we will not.

 4              THE COURT:  You're plaintiffs.  You present your

 5  case --

 6              MR. CRAMER:  Yes.

 7              THE COURT:  -- right, and you argue it.  I'm not saying

 8  that -- they obviously want to use it.  That's why they filed

 9  these motions, right.

10              MR. CRAMER:  Yeah.

11              THE COURT:  That's not really the issue, right.  They

12  want this information to be provided.

13              MR. CRAMER:  Yes.

14              THE COURT:  And it seems to me that if I were to decide

15  this in your favor, that you couldn't then turn around and use

16  that to your advantage.  And I'm asking you that now because

17  there's no point of going through this if you're going to be

18  raising arguments at trial that effectively implicate recent

19  conditions or in any way suggest that that would be relevant

20  information.  Because if you're doing that, then obviously I

21  would grant the motion to reopen.

22              And I want to be clear about this on the record, right.

23  If you're saying to me now directly, "We will not use any

24  information if we were to go to trial, other than discovery in

25  Le," is that what you're telling me?
```

—————————2:15-cv-01045-RFB-BNW—————————

```
 1              MR. CRAMER:  That is what I am telling you.

 2              THE COURT:  All right.  Okay.

 3              All right.  Thank you, Mr. Cramer.

 4              MR. CRAMER:  Thank you, Your Honor.

 5              THE COURT:  So here's what we're going to do for right

 6  now.  I'm going to go back and look at this record a little bit

 7  and decide whether or not I can decide this today.  I really

 8  don't want to drag this out.  So we're going to take a short,

 9  little break.  All I would say to you is to stay close to the

10  courtroom.  And maybe 15, 20 minutes or so.  Maybe around that

11  timeframe.  But I'm likely to come back in and give you my

12  ruling or let you know how we're going to proceed.  Okay?

13              COURTROOM ADMINISTRATOR:  Please rise.

14              MR. SAVERI:  Excuse me, Your Honor.  Can we stay in

15  here?

16              THE COURT:  Oh, no.  You don't have to stay in the

17  courtroom, but just be close so that if Ms. Smith needs to find

18  you, right, she doesn't have to chase around the hallway to find

19  you.

20              MR. SAVERI:  I plan on remaining in my seat, if that's

21  possible.

22              THE COURT:  Okay.  All right.

23              MR. CRAMER:  Thank you, Your Honor.

24              (Recess taken at 12:52 p.m.)

25              (Resumed at 1:07 p.m.)
```

—2:15-cv-01045-RFB-BNW—

1          THE COURT:  Please be seated.

2          So we are back on the record here.  I'll note the

3   presence of all counsel in this case.

4          So here's what we're going to do.  I'm going to deny

5   both motions in this case to reopen and to share discovery.  In

6   this case I don't find based upon my review of the record and

7   particularly the experts, including defendant's experts, that

8   the discovery's likely to lead to relevant information related

9   to damages.  The information that has been gleaned in the expert

10  reports themselves don't suggest the need for that considering

11  the relevant testimony at the time.  I think based upon the

12  record here that the class period itself is sufficient one way

13  or another to establish whether or not monopsony power existed

14  and without consideration for information beyond the class

15  timeframe.

16         I also find that plaintiffs would be prejudiced by any

17  further delay as it relates to the reopening of the discovery,

18  in part, because of the nature and amount of the discovery that

19  the defendants seek.

20         The Court doesn't find this to be a tailored or narrow

21  request.  It actually finds it to be a quite broad request,

22  which could lead to several months of discovery well beyond the

23  trial date that the Court has set in this case.

24         Trial in this case is imminent notwithstanding the fact

25  that there are dispositive motions in this case.  The Court in

—2:15-cv-01045-RFB-BNW—

1  essentially looking at the nature of those motions and having

2  considered the evidence in this case finds that it's quite

3  likely the case will proceed to trial and certainly likely

4  enough that the trial date must be considered in the context of

5  these motions.

6          I also find that the defendants have had sufficient --

7  more than sufficient time for the discovery and the discovery

8  that they seek was available to them and could have been

9  provided at the evidentiary hearing.  And the Court did allow

10  for supplementation at that time which would have been the

11  appropriate time to continue to request this, but there was not

12  a further request for that supplementation.

13          For all of those reasons, the Court is going to deny

14  both motions in this case.  I am going to restrict the

15  plaintiffs in this case to using just the discovery from Le in

16  their case-in-chief.  I also wanted to be clear that my decision

17  about these motions is not necessarily dispositive of evidence

18  that can be presented.  And what will happen as this case

19  proceeds to trial, as I think it likely will, is I'm going to

20  ask the parties to submit trial briefs early enough that should

21  there be issues that would suggest the need for certain types of

22  discovery outside of Le to be used, then we'll consider it at

23  that time.

24          But I want to be clear, Mr. Cramer and Mr. Yates and

25  Mr. Isaacson, I'm not making a categorical decision about

———————2:15-cv-01045-RFB-BNW———————

1  admissibility as it relates to trial at this time.  I find that

2  those decisions have to be made in the moment and potentially

3  either side could open the door to information.  And so I'm

4  saying that to the plaintiffs so they can be particularly aware

5  of that.

6       The other thing is, to the extent the plaintiffs seek

7  injunctive relief in Le, it will be limited to the discovery in

8  Le itself.  The Court will set a hearing on injunctive relief in

9  Le after the trial in this case.  Obviously if the defendant

10 prevails at trial, then that will potentially be dispositive of

11 the injunctive relief.  Either way, Mr. Cramer, the plaintiffs

12 will be limited to the record as it relates to injunctive

13 relief.

14      Now, that may not provide for the nature of the relief

15 that you seek.  I will consider it at the time.  And if you want

16 me to reconsider allowing for information beyond the class

17 period to be used for injunctive relief in Le, you can ask --

18 you can file a motion for reconsideration, but I will tell you

19 that will lead to the trial date in this case being moved.  And

20 so I want to be clear about that.  You certainly have leave to

21 seek reconsideration of my order as relates to injunctive

22 relief, but if you seek reconsideration and I grant it, I will

23 move the trial date back to 2025.  So that's something that I

24 want to be very clear about in this case.

25      The other thing I wanted to talk with you all about is

2:15-cv-01045-RFB-BNW

1   preparation for trial.  As I've indicated, based upon the record

2   that I have and based upon the Court's certification order and

3   looking at the motions that have been filed, I think it's quite

4   likely this case will proceed to trial.  This will be a lengthy

5   trial, and so I think it's important for us to think about

6   scheduling issues.

7           One of the issues that I anticipate is going to happen

8   is we're going to have a fair amount of work dealing with

9   evidentiary issues regarding the experts and other evidence that

10  may come in.  And so what I'm going to ask you all to do is to

11  meet and confer to set a schedule, a trial schedule, regarding

12  deadlines, right.  I would like to be able to resolve all

13  evidentiary issues at least a month before trial, which means

14  you all will have to file briefs and motions probably starting

15  in January, right.

16          I'm going to require you to file trial briefs in this

17  case, and you'll have to file and prepare your exhibits and file

18  a joint pretrial order.  I'm going to ask you to meet and confer

19  about setting that, the deadlines for that.

20          At some point we're going to have to have an

21  evidentiary hearing I would fully anticipate as it relates to

22  exhibits in the trial and in particular expert testimony.  So

23  you all should meet and confer about that.

24          Any questions about the Court's order today?  I am

25  going to memorialize it in a minute order, but I'm not going to

─2:15-cv-01045-RFB-BNW─

1  issue a separate written order.  My reasons outlined here today

2  on the record as well as the reasons that I will include in the

3  minute order will be the final order of the Court as relates to

4  these motions.

5       Any questions, Mr. Cramer, about what the Court has

6  ordered today?

7       MR. CRAMER:  No, Your Honor.  Thank you.

8       THE COURT:  Mr. Yates, any questions about that?

9       MR. YATES:  No, Your Honor.

10      MR. ISAACSON:  Your Honor, no questions, but just, you

11  know, I had previously informed you I have a trial date on the

12  same -- on the same date.  And there are motions pending in that

13  case.

14      THE COURT:  As I understand it, Mr. Isaacson, that case

15  is not as old as this case.  This case is much older than the

16  case at least that I thought that you had identified.  I'm happy

17  to reach out to the Court in that case to let the Court know why

18  I'm not going to move the trial date, but I don't intend to move

19  the trial date, in part, because of my own trial schedule.  I

20  can't try the case much later without it pushing months later in

21  my own schedule, and so the window that I've given you is the

22  window that I have.  But I'm not going to move the trial date at

23  this point in time.

24      MR. ISAACSON:  All right, Your Honor.

25      THE COURT:  All right.  Mr. Cramer?

———2:15-cv-01045-RFB-BNW———

1          MR. CRAMER:  We saw Your Honor granted the motion to

2     start the notice process.

3          THE COURT:  Yes.

4          MR. CRAMER:  So we were going -- we're going to start

5     that, and the notice itself has the April 8th trial date.  And

6     we're going to go forward with that.  I just wanted to confirm

7     that with the Court.

8          THE COURT:  Yes.

9          MR. CRAMER:  All right.  Thank you, Your Honor.

10         THE COURT:  All right.  So anything else we need to do

11    today from counsel?  Anyone?

12         MR. CRAMER:  No, Your Honor.

13         THE COURT:  Anyone?

14         MR. YATES:  No, Your Honor.

15         THE COURT:  All right.  We'll be adjourned.  I'm going

16    to stay on the bench for a few moments.  Thank you.

17         (Whereupon the proceedings concluded at 1:15 p.m.)

18

19

20

21

22

23

24

25

2:15-cv-01045-RFB-BNW

1

2                                    --oOo--

3                      COURT REPORTER'S CERTIFICATE

4

5         I, PATRICIA L. GANCI, Official Court Reporter, United

6    States District Court, District of Nevada, Las Vegas, Nevada,

7    certify that the foregoing is a correct transcript from the

8    record of proceedings in the above-entitled matter.

9

10   Date:  November 21, 2023.

11                                    /s/ **Patricia L. Ganci**

12                                    Patricia L. Ganci, RMR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25