KARLA KRAFT, State Bar No. 205530
kkraft@stradlinglaw.com
LISA M. NORTHRUP, State Bar No. 293784
lnorthrup@stradlinglaw.com
SEAN THOMAS LOBB, State Bar No. 324213
stlobb@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: 949-725-4000
Facsimile: 949-725-4100

KATHERINE B. FORREST, *(pro hac vice)*
kforrest@paulweiss.com
MATTHEW A. ROBINSON, *(pro hac vice)*
mrobinson@paulweiss.com
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3195
Facsimile: 212-492-0195

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

INNOVATIVE HEALTH LLC,

Plaintiff,

vs.

BIOSENSE WEBSTER, INC.,

Defendant.

CASE NO. 8:19-cv-01984-JVS-KES

Hon. James V. Selna

**DEFENDANT BIOSENSE WEBSTER, INC.'S OPPOSITION TO PLAINTIFF INNOVATIVE HEALTH LLC'S MOTION TO REQUIRE DEFENDANT TO PRODUCE ALL COURT ORDERED SUPPLEMENTAL DATA BY NOVEMBER 8, 2024**

Date: November 4, 2024
Time 1:30 p.m.
Judge: Hon. Karen E. Scott
Courtroom: 6D

**JURY TRIAL**:
April 29, 2025, 8:30 am [Dkt 256]

Complaint Filed: October 18, 2019

# TABLE OF CONTENTS


I. INTRODUCTION .......... 4

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......... 6

A. Innovative Filed Antitrust Claims Against Biosense Arising From Innovative's Sale of Reprocessed Biosense Catheters .......... 6

B. Biosense's Productions Of Catheter Sales Information .......... 7

III. ARGUMENT .......... 8

A. Biosense Timely Produced The Supplemental Information Required By The Court's Order .......... 8

B. Innovative's Attempt To Expand The Scope Of This Case To Include New Catheters Should Be Rejected .......... 8

C. Sales Information For The New, Not At-Issue Catheters Is Not Relevant .......... 13

D. Rule 26(e) Does Not Require Production Of Additional Supplemental Sales Information For Catheters Not At Issue .......... 14

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*ASA Enter. v. Stan Boyett & Son, Inc.*, No. 1:21-cv-00915-BAK2022 U.S. Dist. LEXIS 164982 (E.D. Cal. Sep. 12, 2022) .......... 10-11

*Bombardier Transp. Holdings USA Inc. v. HDR Eng'g Inc.*, No. CV-21-01460-PHX-SPL, 2022 U.S. Dist. LEXIS 237125 (D. Ariz. Oct. 3, 2022) .......... 10

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JF (RS), 2008 U.S. Dist. LEXIS 90708 (N.D. Cal. Oct. 29, 2008) .......... 14

*Golden v. Intel Corp.*, 642 F. Supp. 3d 1066 (N.D. Cal. 2022) .......... 11

*Innovative Health, LLC v. Biosense Webster, Inc.*, No. 22-55413, 2024 U.S. App. LEXIS 308 (9th Cir. Jan. 5, 2024) .......... 7, 9

*Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541 (N.D. Cal. 2009) .......... 10, 13

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139 (9th Cir. 1989) .......... 11

*Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP, 2013 U.S. Dist. LEXIS 200627 (C.D. Cal. Sep. 9, 2013) .......... 14

**Federal Statutes**

Sherman Act .......... 6

Cartwright Act .......... 6

**Other Authorities**

Federal Rule of Civil Procedure 26(e) .......... 5, 10, 14

# I. INTRODUCTION

This is an antitrust dispute between defendant Biosense Webster, Inc. ("Biosense"), an original manufacturer of catheters, and plaintiff Innovative Health LLC ("Innovative"), a reprocesser of catheters. Throughout this litigation, Innovative alleged separate markets for three specific Biosense catheters and reprocessed versions of each—the SOUNDSTAR, LASSO NAV, and PENTARAY. Innovative now seeks the eleventh-hour production of information about two new, irrelevant catheters that were not subject to Innovative's prior allegations or any of the prior discovery, and are not required by this Court's order—the OCTARAY and OPTRELL. Biosense accordingly opposes Innovative's Motion to Require Biosense to Produce All Court-Ordered Supplemental Data by November 8, 2024 (the "Motion"; Dkt. 267).

Following the Ninth Circuit Court of Appeal's reversal of the Court's grant of summary judgment in favor of Biosense, Innovative sought supplemental discovery, including updating several previously produced spreadsheets containing sales and related data, given the lapse of time between the close of discovery and the pending trial. Pursuant to the Court Order's directing Biosense to "produce the supplemental data to update the transaction information it previously disclosed in discovery" and "include data from the prior disclosure end date through June 30, 2024," Biosense produced updated sales information from the end date on the prior spreadsheets through June 30, 2024. This supplemental production included information for the three at-issue catheters in this case.

No other catheters are, or can be, relevant to this litigation. Innovative's own expert opined there were three catheter markets, one for each of the three at-issue catheters (the SOUNDSTAR, LASSO NAV, and PENTARAY) and reprocessed versions of each. Biosense prepared its defense against this theory, and Innovative argued its theory through summary judgment and appeal.

Realizing that its single catheter product market theory is fundamentally flawed, Innovative now attempts to revive a nearly four-year-old theory that it has long since abandoned in this case: that there are supposedly two markets—one for high-density mapping catheters and one for ultrasound catheters. This is remarkable because Innovative never pursued these allegations during litigation of this matter; instead, Innovative has consistently put three single product markets at issue. After the close of discovery and in relation to limited supplemental discovery to update data previously produced, Innovative is now reaching back to abandoned allegations in an attempt to justify broadening the scope of this case to include two newer Biosense catheters, the OCTARAY and OPTRELL, neither of which even existed before the close of discovery and summary judgment in this matter—and, crucially, which Innovative does not even reprocess. The record is clear these new catheters are not at issue, and it would be unjust and an inefficient use of party and judicial resources to now permit Innovative to expand supplemental, post-remand discovery to include these irrelevant catheters.

Importantly, even if Innovative were to stipulate that the OCTARAY and OPTRELL are not at-issue products for which Innovative seeks relief, Innovative's argument that catheter sales for these two products are generally relevant to calculating damages and seeking injunctive relief likewise fails. Catheter sales for the OCTARAY and OPTRELL are not required by the Court's prior order, are not relevant to the potential damages and injunctive relief at issue, and are not required under Federal Rule of Civil Procedure 26(e) ("Rule 26(e)").

For these reasons, as discussed further herein, the Court should deny Innovative's Motion in its entirety.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Innovative Filed Antitrust Claims Against Biosense Arising From Innovative's Sale of Reprocessed Biosense Catheters

Biosense manufactures and sells the CARTO 3 cardiac mapping system and electrophysiology ("EP") products, including catheters, that can be used with the CARTO 3 system. Innovative reprocesses and sells EP catheters that can be used with cardiac mappings systems, including but not limited to the three at-issue Biosense catheters—the SOUNDSTAR, LASSO NAV, and PENTARAY.

Innovative filed this antitrust case nearly five years ago. (*See* Dkt. 1.) Biosense successfully moved to dismiss Innovative's exclusive dealing claims, narrowing Innovative's twelve causes of action to eight. (*See* Dkt. 45.) The causes of action that survived the motion to dismiss in the operative Corrected Second Amended Complaint allege monopolization, attempted monopolization, and tying under the Sherman Act and Cartwright Act. (*See* Dkt. 59.) The tying claim alleges that a free clinical support service offered by Biosense is the tying product and the catheters are the tied products. Pursuant to a case coverage policy initiated in April 2016, Biosense only offers free clinical support to doctors using OEM catheters or catheters reprocessed by Sterilmed,[1] a sister company whose reprocessing and recalibration requirements are known to Biosense.

The parties conducted extensive fact discovery for over fourteen months, closing on September 21, 2021, followed by expert discovery which closed on December 7, 2021. (*See* Dkt. 90; Dkt. 106 at 1.) Biosense moved for summary judgment as to all eight causes of action, and the Court granted the motion in full

---

[1] Sterilmed, Inc. is a reprocessing company that is part of the Johnson & Johnson family of companies. Sterilmed, Inc. reprocesses medical devices originally manufactured by a number of Johnson & Johnson MedTech companies and other original equipment manufacturers. *See* "Sustainability Through Reprocessing," Johnson & Johnson MedTech, available at https://www.jnjmedtech.com/en-US/service/reprocessing.

in March 2022. (*See* Dkt. 114; Dkt. 177.) Innovative appealed, and the Ninth Circuit reversed and remanded for further proceedings in January 2024. *See Innovative Health, LLC v. Biosense Webster, Inc.*, No. 22-55413, 2024 U.S. App. LEXIS 308 (9th Cir. Jan. 5, 2024). The Ninth Circuit in reversing, however, made it clear that while "Innovative has produced sufficient evidence to defeat summary judgment [that] does not mean that it will triumph at trial" and noted substantial deficiencies in Innovative's case. *See id*. at *8-*9. This included narrowing the case to 142 sales of the CARTO 3 representing the only customers that potentially could be locked-in before the case coverage policy officially went into effect in April 2016. *See id*. at *6-*8.

**B. Biosense's Productions Of Catheter Sales Information**

Before the close of discovery in 2021, Biosense produced three spreadsheets showing Biosense and Sterilmed catheter sales. Those three spreadsheets (BWI-INN00510476, BWI-INN00706180, and BWI-INN00710526) included PENTARAY, LASSO NAV, and SOUNDSTAR catheter sales from 2013 through the first quarter of 2021.

Post remand, in the at-issue order, this Court concluded that "Biosense is ORDERED to produce the supplemental data to update the transaction information it previously disclosed in discovery" and that the "supplemental production should include data from the prior disclosure end date through June 30, 2024." (Dkt. 246 at 8-9 (the "Order").) Referencing a June status conference addressing supplemental discovery, the Court explained that "[t]he Court made clear that this production would be limited in scope and it would not 'require further supplementation of any substantive facts going to the claims.'" (Dkt. 246 at 8.) The Court clarified at the June status conference "the record is the record" and that the limited supplemental discovery permitted did not allow for any new theories because the law "doesn't recognize new theories late in the day." (*See* Dkt. 239 at Ex. 2 at 4:1-21, 13:11-17.)

Biosense timely made its production of supplemental data as required by the Order for those catheters on the previously produced spreadsheets Innovative sought for Biosense to update. (*See* Dkt. 236; Dkt. 238 at Ex. 3 at 6-7; Dkt. 246 at 8-9; Dkt. 255.)

**III. ARGUMENT**

**A. Biosense Timely Produced The Supplemental Information Required By The Court's Order**

As explained *supra*, this Court ordered Biosense to "produce the supplemental data to update the transaction information it previously disclosed in discovery." (Dkt. 246 at 8.) This is precisely what Biosense did. Biosense went back to its previously produced spreadsheets (BWI-INN00510476, BWI-INN00706180, and BWI-INN00710526) with catheter information as identified by Innovative during the parties' meet and confers and in its motion papers (*see* Dkt. 236-1; Dkt. 238 at Ex. 3 at 6-7), and then produced updated transaction information for these catheters from the prior end date through June 30, 2024. Innovative does not dispute that Biosense produced this information. (*See* Dkt. 267 *passim*.)

**B. Innovative's Attempt To Expand The Scope Of This Case To Include New Catheters Should Be Rejected**

Innovative now seeks information about two irrelevant Biosense catheters that were launched after discovery closed and years after the case coverage policy was fully effective, the OCTARAY and OPTRELL.[2] Neither of these catheters is or should be at issue in this litigation. The record is clear as to which three

[2] During the parties' meet and confer on October 3, 2024, Innovative only asked Biosense to produce catheter sales information for the OCTARAY, and did not discuss or even mention the OPTRELL.

catheters Innovative put at issue and Innovative's market theories, which identify a separate market for each of the three at-issue catheters.[3]

Fact discovery closed in September 2021, and Biosense launched the OCTARAY catheter long after in September 2022 and the OPTRELL very recently in July 2024. (*See* Dkt. 90; Dkt. 267 at 7 nn. 1, 2.) The parties devoted substantial time, resources, and money to developing an evidentiary record and engaging in expert discovery focused on the three at-issue catheters—SOUNDSTAR, LASSO NAV, and PENTARAY.[4] Innovative's expert, Eric Forister, likewise opined there were three product markets at issue: (i) SOUNDSTAR and reprocessed SOUNDSTAR catheters; (ii) LASSO NAV and reprocessed LASSO NAV catheters; and (iii) PENTARAY and reprocessed PENTARAY catheters. (*See* Dkt. 130 at Ex. 22 at ¶¶ 124, 130, 135.)

Based on this extensively developed record focused on these three catheters and the corresponding single product markets as defined by Innovative, the parties proceeded through summary judgment and appeal with these three catheter markets at issue. (*See* Dkt. 114; Dkt. 131-13 at ¶ 18; *Innovative Health, LLC v. Biosense Webster, Inc*., No. 22-55413 (9th Cir. Sept. 30, 2022) at Dkt. 15 at 15, 25, 51 (Innovative's opening brief stating "Dr. Forister analyzed whether a seller could impose a SSNIP in each of the relevant Catheter markets: SOUNDSTAR; PENTARAY; and LASSO.").) If, as Innovative has argued, SOUNDSTAR,

---

[3] Innovative's declaration accurately states that Biosense agreed during the meet and confer that the OCTARAY is a high-density mapping catheter (*see* Dkt. 267-1 at ¶ 10), but then in the Motion repeatedly twists this to imply Biosense agrees the OCTARAY is part of an at issue **market** (*see* Dkt. 267 at 5:12-14; 9:3-6). This is false. Biosense disputed during the meet and confer that the OCTARAY was at issue, and continues to so dispute now.

[4] Innovative initially also put at issue a fourth catheter, called the ACUNAV, but as frequently happens through the course of discovery Innovative has since effectively dropped ACUNAV from its claims. (*See* Dkt. 130 at Ex. 22 at ¶¶ 190-92.)

PENTARAY, and LASSO NAV represent individual product markets, then OCTARAY and OPTRELL cannot be included in any of those markets.

Innovative should not be permitted to unwind half a decade of litigation representing significant time and resources spent by Biosense in defending this litigation to now attempt, post-appeal, to expand the scope of the litigation heading into trial. *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 542-44 (N.D. Cal. 2009) (granting motion to preclude after plaintiffs' late-stage attempt to expand the scope of damages).

This Court made clear in determining the scope of supplemental discovery following remand that there would be "no new theories" and that the "record is the record." (*See* Dkt. 239 at Ex. 2 at 4:1-21, 13:11-17.) Putting at issue new catheters would necessitate Innovative's expert developing new theories about the relevant markets, as the prior markets each included a single Biosense catheter – in other words, Innovative is proposing to add two entirely new catheter markets to the case. (*See* Dkt. 130 at Ex. 22 at ¶¶ 124, 130, 135.) Developing new theories would be in stark contravention of what this Court determined is permissible and would extend well beyond any Rule 26(e) update to an expert report. *See Bombardier Transp. Holdings USA Inc. v. HDR Eng'g Inc.*, No. CV-21-01460-PHX-SPL, 2022 U.S. Dist. LEXIS 237125, at *4-*5 (D. Ariz. Oct. 3, 2022) ("[S]upplementary disclosures do not permit a party to introduce new opinions after the disclosure deadline under the guise of a supplement.") (internal citations and quotations omitted).

Further, the injection of new catheters into the litigation would require Biosense to engage not only in substantive expert discovery to rebut new theories, but also in significant additional fact discovery. Biosense previously conducted no discovery regarding either of these catheters—nor could it have been expected or required to do so, as both were still under clinical development and not for sale or at issue during the course of discovery. *See ASA Enter. v. Stan Boyett & Son, Inc.*,

No. 1:21-cv-00915-BAK2022 U.S. Dist. LEXIS 164982, *44 n.5 (E.D. Cal. Sep. 12, 2022) (denying motions to compel filed at the end of the discovery cutoff period because the motions sought to expand the scope of discovery into new factual topics that would also require follow-up discovery, which would be disproportional and unduly burdensome to the needs of the case given the late procedural stage). For example, Biosense would require written discovery and depositions to determine whether Innovative considered reprocessing the OCTARAY and OPTRELL, what steps if any Innovative took toward reprocessing these catheters, whether Innovative sought to obtain FDA approval to reprocess either of these catheters, what business reasons Innovative determined it had for not pursuing reprocessing these catheters, under what circumstances Innovative would further pursue reprocessing these catheters, etc. And Biosense would need discovery not just from Innovative, but more broadly: as the OCTARAY and OPTRELL are two entirely new catheter markets, all of the discovery, including third party discovery, that occurred with respect to the three single product markets at issue would now need to be conducted again as to the new catheters.

Innovative admitted during the parties' meet and confer that it does not does reprocess OCTARAY catheters and has not even obtained FDA approval to do so.[5] As such, Innovative lacks antitrust standing because it cannot adequately allege or prove antitrust injury *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 150 (9th Cir. 1989) (affirming based on lack of standing where plaintiff "was not in the steam market and [plaintiff] suffered no identifiable injury in the steam rights market"); *Golden v. Intel Corp*., 642 F. Supp. 3d 1066, 1073 (N.D. Cal. 2022) (granting motion to dismiss antitrust claim for lack of antitrust standing where plaintiff did not allege it was in same market or suffered injury in same

[5] The OCTRELL was not discussed during the meet and confer. A review of the FDA's 510(k) public database supports that Innovative has not submitted a premarket notification for either catheter.

market as defendant and alleged speculative damages); *aff'd* No. 2023-1257, 2023 U.S. App. LEXIS 11034, at *3 (Fed. Cir. May 5, 2023). Clearly, Innovative cannot incur damages for catheters it does not reprocess or sell. Any attempt by Innovative to speculate that it would have sold reprocessed versions of the OCTARAY and OPTRELL but for Biosense's clinical support case coverage policy is a non-starter because Biosense's case coverage policy was in existence before Innovative began selling reprocessed SOUNDSTAR, LASSO NAV, and PENTARAY catheters.

Innovative attempts to evade the clear record as to what products are at issue—and as to how Innovative's own expert defined the three single product market—by reaching back to the Corrected Second Amended Complaint filed nearly four years ago. (*See* Dkt. 59.) Even that pleading, however, already made clear that Innovative's allegations centered on the PENTARAY, LASSO, and SOUNDSTAR: in the Corrected Second Amended Complaint, Innovative alleged a "relevant product market for high-density mapping catheters for use with the CARTO 3 cardiac mapping system" and then specifically identifies the PENTARAY and LASSO catheters. (*See* Dkt. 59 at ¶ 12.) Innovative also alleged a "relevant product market for ultrasound catheters" and that there "may be a relevant product submarket for 3D navigational ultrasound catheters" for use with the CARTO 3, identifying the SOUNDSTAR and ACUNAV specifically. (*Id*. at ¶ 15.)

During the course of fact and expert discovery, the at-issue products narrowed from four to three, and the proposed markets were revised based on Innovative's own expert's opining as to three single product markets specific to the three at-issue catheters. (*See* Dkt. 130 at Ex. 22 at ¶¶ 124, 130 ("OEM and reprocessed LASSO Nav catheters, is a relevant product market."; ¶ 135.) This Court should reject Innovative's effort to rely on abandoned allegations at a time "when the parties should already [be] focusing on streamlining this case for trial,"

and after Biosense reasonably relied on Innovative's discovery disclosures and subsequent briefing on summary judgment and appeal as to the market theories Innovative has put at issue. *See Oracle,* 264 F.R.D. at 542-44 (granting motion to preclude certain damages evidence after plaintiffs' late-stage attempt to expand the scope of damages sought to include additional customers, licenses, and product sales after defendants reasonably relied in preparing their defense on plaintiffs' discovery responses, initial disclosures, and representations to the court and counsel and because "[f]undamental fairness as well as effective case management require that damages discovery not be dramatically expanded at this late date.").

**C. Sales Information For The New, Not At-Issue Catheters Is Not Relevant**

Further, Innovative's Motion should be denied because sales information for the OCTARAY and OPTRELL is not relevant. Without any explanation, Innovative relies on the assertion that sales of the OCTARAY are "relevant to current market conditions (including market share), damages, and injunctive relief." (*See* Dkt. 267 at 10.) The record belies this broad assertion. Innovative's expert, Dr. Forister, defined the three markets at issue as corresponding to each of three single Biosense catheters and reprocessed versions of each. (*See* Dkt. 130 at Ex. 22 at ¶¶ 124, 130, 135.) Accordingly, when Dr. Forister analyzed market share and market power he relied exclusively on the sales of these three catheters, within these three single product markets. (*See* Dkt. 130 at Ex. 22 at ¶¶ 157, 162, 167, Exs, 12, 14, 15.) Likewise, Dr. Forister's lost profits calculation relied on two benchmark catheters being sold at that time, neither of which is related to the OCTARAY or OPTRELL catheters in any way. (*See* Dkt. 130 at Ex. 22 at ¶¶ 182 - 187, Exs. 15, 16.) Updating the lost profit calculations to bring them current accordingly does not require sales information for the OCTARAY and OPTRELL – especially because Innovative does not reprocess either of these catheters.

Innovative also seeks an injunction that would require Biosense to provide free clinical support for Innovative's reprocessed versions of the SOUNDSTAR, LASSO NAV, and PENTARAY as Biosense does for the OEM versions of these catheters. (*See* Dkt. 241 at 7.) Granular sales data for the OCTARAY and OPTRELL is not relevant to whether such an injunction is warranted as to the three at-issue catheters. Moreover, Innovative would not be able to obtain an injunction involving the OCTARAY and OPTRELL because Innovative does not reprocess these catheters. The Court previously provided an example of the type of current market condition that might be relevant to injunctive relief: "If the defendant is on his last legs and is not manufacturing anymore, you know, that would be relevant." (Dkt. 239 at Ex. 2 at 16:9-15.) Data regarding the OCTARAY and OPTRELL simply is not relevant to the relief sought.

**D. Rule 26(e) Does Not Require Production Of Additional Supplemental Sales Information For Catheters Not At Issue**

Rule 26(e) imposes a duty directed toward preventing counsel from failing to disclose later discovered or later created documents that undermine or contradict an earlier discovery response. *See Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *23-24 (C.D. Cal. Sep. 9, 2013) ("duty to supplement where documents exist that undermine or contradict the earlier response"); *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C 06-3359 JF (RS), 2008 U.S. Dist. LEXIS 90708, at *5-6 (N.D. Cal. Oct. 29, 2008) ("The duty to supplement under Rule 26(e)(1) is directed to documents generated during the relevant time frame previously not produced but subsequently discovered.") Biosense's previously produced catheter sales information did not require any correction, and Biosense has now supplemented that information pursuant to the Order through June 30, 2024. This satisfies any Rule 26(e) duty Biosense may have had to supplement its prior catheter sales data to bring current the data for those catheters.

In sum, Innovative's Motion seeks information for two new, additional catheters that is not relevant at this late stage of this litigation. The Motion should be denied irrespective of the purpose for which Innovative purportedly seeks to use the information. Biosense already produced supplemental catheter sales information consistent with the Court's Order.

## IV. CONCLUSION

For the foregoing reasons, Biosense respectfully requests that this Court deny Innovative's Motion in its entirety.

DATED: October 11, 2024 STRADLING YOCCA CARLSON & RAUTH LLP

By: */s/ Karla Kraft*
Karla Kraft
Lisa M. Northrup
Sean Thomas Lobb
Attorneys for Defendant
Biosense Webster, Inc.

DATED: October 11, 2024 PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Katherine B. Forrest*
Katherine B. Forrest
Matthew A. Robinson
Attorneys for Defendant
Biosense Webster, Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Biosense Webster, Inc., certifies that this brief contains 3,466 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated ____________.

Dated: October 11, 2024

*/s/ Karla Kraft*
KARLA KRAFT