Panteha Abdollahi, Esq.
State Bar No. 230002
pabdollahi@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq.
Admitted *Pro Hac Vice*
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021

Joshua P. Davis, Esq.
State Bar No. 193254
jdavis@bm.net
BERGER MONTAGUE PC
505 Montgomery St., Suite 625
San Francisco, California 94111
Telephone: (415) 906-0684

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

Derek T. Ho, Esq.*
Andrew E. Goldsmith, Esq.*
Matthew D. Reade, Esq.*
Kelley C. Schiffman, Esq.
State Bar No. 325023
Rachel T. Anderson, Esq.*
*Admitted *Pro Hac Vice*
dho@kellogghansen.com
agoldsmith@kellogghansen.com
mreade@kellogghansen.com
kschiffman@kellogghansen.com
randerson@kellogghansen.com
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK. P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 367-7900
Facsimile: (202) 326-7999

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>BIOSENSE WEBSTER, INC,<br><br>        Defendant. | Case No. 8:19-cv-1984 JVS (KES)<br><br>**PLAINTIFF INNOVATIVE HEALTH LLC'S REPLY IN SUPPORT OF MOTION TO REQUIRE DEFENDANT BIOSENSE WEBSTER, INC. TO PRODUCE ALL COURT-ORDERED SUPPLEMENTAL DATA BY NOVEMBER 8, 2024**<br><br>Date:    November 4, 2024<br>Time:    1:30 p.m.<br>Crtrm:  6D<br><br>Action Filed:  October 18, 2019<br>Trial Date:  April 29, 2025 |

1

# **TABLE OF CONTENTS**

2    I.      Introduction ....................................................................................... 5

3    II.     Argument ............................................................................................ 6

4            A.     This Court's Order Requires Biosense To Produce Catheter Sales

5                   Data for All Customers, Including for OCTARAY and OPTRELL ...... 6

6            B.     Biosense Waived Its Relevance Objection ............................................ 7

7            C.     Even If Not Waived, Biosense's Objections Lack Merit ...................... 8

8                   1.     Even Biosense Admits That Innovative Defined a Market for

9                          All "High-Density Mapping Catheters For Use With the

10                         CARTO 3" ..................................................................................... 9

11                  2.     OCTARAY and OPTRELL Are High-Density Mapping

12                         Catheters Subject to the Anticompetitive Case Coverage

13                         Policy ............................................................................................ 10

14                  3.     Therefore, Sales of Both Catheters Are Relevant ...................... 11

15                  4.     Excluding OCTARAY and OPTRELL Renders Biosense's

16                         Production of Catheter Sales Data Materially Incomplete ......... 13

17   III.    Conclusion ........................................................................................ 13

18

19

20

21

22

23

24

25

26

27

28

*PL.'S REPLY I.S.O. MOT. TO REQUIRE DEF. TO PRODUCE ALL COURT-ORDERED SUPPLEMENTAL DATA*

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**CASES**

4

*Bubar v. Ampco Foods, Inc.*,

5

   752 F.2d 445 (9th Cir. 1985) ............................................................................ 12

6

*Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. D.T.S. Enter., Inc.*,

7

   2023 U.S. Dist. LEXIS 40047 (C.D. Cal.) ........................................................ 8

8

*Davis v. Fendler*,

9

   650 F.2d 1154 (9th Cir. 1981) ............................................................................ 7

10

*Duran v. Cisco Sys., Inc.*,

11

   258 F.R.D. 375 (C.D. Cal. 2009) ........................................................................ 8

12

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,

13

   504 U.S. 451 (1992) .......................................................................................... 11

14

*Fortner Enters., Inc. v. U.S. Steel Corp.*,

15

   394 U.S. 495 (1969) .......................................................................................... 11

16

*Innovative Health LLC v. Biosense Webster, Inc.*,

17

   2022 WL 1599713 (C.D. Cal.) ........................................................................... 9

18

*Innovative Health, LLC v. Biosense Webster, Inc.*,

19

   2024 WL 62948 (9th Cir.) ............................................................................ 9, 10

20

*Ramirez v. Cnty. of L.A.*,

21

   231 F.R.D. 407 (C.D. Cal. 2005) .................................................................... 7, 8

22

*Richmark Corp. v. Timber Falling Consultants*,

23

   959 F.2d 1468 (9th Cir. 1992) ............................................................................ 7

24

*Schwartz v. Bai Brands LLC*,

25

   2020 WL 6526364 (C.D. Cal.) ........................................................................... 8

26

*United States v. United Shoe Mach. Corp.*,

27

   391 U.S. 244 (1968) .......................................................................................... 12

28

## OTHER AUTHORITIES

Areeda & Hovenkamp, Antitrust Law: An Analysis of Antitrust
Principles & Their Application (5th ed. 2024 supp.) ..................................................11

1   <u>**REPLY IN SUPPORT OF INNOVATIVE'S MOTION**</u>

2   **I.    <u>Introduction</u>**

3       Innovative Health asked this Court to order Biosense Webster to supplement

4   its production of catheter sales data to include "new catheter sales for . . . high-

5   density mapping catheters like PENTARAY, OCTARAY, and OPTRELL."

6   Dkt. 236 at 17.  This Court granted that order, *see* Dkt. 246 at 9, rejecting

7   Biosense's argument that "any additional data Innovative seeks is part of a wider

8   effort to rectify its previously flawed theories of the case," *id.* at 8.

9       Biosense now wants to reprise its objections—and add new ones that it

10  waived.  So it must theorize that in granting Innovative's prior motion, this Court

11  did not actually grant the relief that motion sought.  That is false.  This Court

12  already settled the issue.  Innovative sought an order requiring Biosense to produce

13  this data, and this Court granted it.  That should end the matter.

14      But even if this Court entertained Biosense's effort to revisit its order, this

15  Court should reject it.  As Biosense itself told the Ninth Circuit in its failed petition

16  for *en banc* rehearing, "Innovative based its claims" on "four single-*brand* product

17  markets," including a market for "high-density mapping catheters for use with the

18  CARTO 3" cardiac mapping system.  Pet. for Reh'g *En Banc* at 5 n.4, *Innovative*

19  *Health LLC v. Biosense Webster, Inc.*, 22-55413, Dkt. 76 (9th Cir. Feb. 8, 2024)

20  ("*En Banc* Petition") (emphasis altered).  OCTARAY and OPTRELL are Biosense's

21  newest entries in that market, and both catheters are subject to its anticompetitive

22  case coverage policy.  Those facts dispense with Biosense's claims about new

23  markets and new discovery.  All Innovative seeks is what it sought before and won:

24  sales data reflecting current conditions in the markets it will prove at trial.

25      This Court should require Biosense to produce all catheter sales data this

26  Court ordered, including for the OCTARAY and OPTRELL catheters.

27

28

1    II.    **<u>Argument</u>**

2    A.    **This Court's Order Requires Biosense To Produce Catheter Sales**

3    **Data for All Customers, Including for OCTARAY and OPTRELL**

4    This Court's order was clear.  It observed that "Innovative seeks an order

5    directing Biosense to supplement its production of nationwide transaction data for

6    all customers because it is the 'lifeblood' of antitrust cases."  Dkt. 246 at 8.  It then

7    granted Innovative's motion, ordering Biosense "to update the transaction

8    information it previously disclosed in discovery," including catheter sales data,

9    through June 30, 2024.  *Id.* at 8-9.  This Court explained its order as "part of the

10    ordinary course of business for assessing damages," and added that "current market

11    conditions ought to be before [the Court] in order to properly address any injunctive

12    relief Innovative seeks."  *Id.* at 8 (internal quotations omitted).  This Court limited

13    Biosense's production only "to the same categories of data already produced," *id.* at

14    9—meaning the same "six categories of information," such as catheter sales data,

15    that Innovative had asked Biosense to update and, ultimately, sought in its motion.

16    Dkt. 240 at 7 (Biosense's response brief listing those "six categories of

17    information," including "catheter sales").  Nowhere did the order authorize Biosense

18    to *further* limit the scope of any update it provided to the data in those categories.

19    But if this Court's order weren't enough, the history—*first*, of this dispute,

20    and *second*, of the production this Court ordered Biosense to supplement—leaves no

21    doubt that in granting Innovative's motion, this Court ordered Biosense to produce

22    sales data for the OCTARAY and OPTRELL catheters through June 30, 2024.

23    ***First***, the motion this Court granted challenged Biosense's failure to produce

24    sales data for OCTARAY and OPTRELL.  Innovative informed this Court that

25    "Biosense's supplemental production is materially incomplete" because it excluded

26    "most customers *and* most catheters."  Dkt. 236 at 15-16.  Innovative then specified,

27    under the bolded heading "Most Catheters Are Missing," that Biosense had not

28    produced "new catheter sales for . . . high-density mapping catheters like

1    PENTARAY, OCTARAY, or OPTRELL . . . ."  *Id.* at 17.

2        ***Second***, Biosense's original productions of catheter sales data included data

3    for all U.S. customers through March 31, 2021, and for all Biosense diagnostic and

4    ultrasound catheters sold during that period.  *See* Dkt. 238 at 4 (¶ 17); Dkt. 267-1 at

5    2-4 (¶¶ 7, 10).  And Biosense acknowledges that it produced that data in response to

6    Innovative's requests for *all* sales for *each* catheter sold by Biosense.  *See* Dkt. 238

7    at 231, 197 (seeking "[s]ales [d]ata . . . by year, by month, by customer, and by

8    product for each diagnostic catheter and ultrasound catheter sold by [Biosense] . . .

9    to the present" and "all of [Biosense's] customer transactions"); Dkt. 240 at 7

10   (Biosense's agreement that it produced the "catheter sales spreadsheets" in response

11   to those requests).  So a complete supplement to Biosense's response to those

12   requests through mid-2024—as this Court ordered—must include all sales for each

13   of its diagnostic and ultrasound catheters, including the OCTARAY and OPTRELL.

14       **B.    Biosense Waived Its Relevance Objection**

15       For the first time, Biosense argues that it need not provide sales data for any

16   catheter besides SOUNDSTAR, LASSO NAV, and PENTARAY because "[n]o

17   other catheters are, or can be, relevant to this litigation."  Dkt. 273 at 4.  But "a

18   failure to object to discovery requests within the time required constitutes a waiver

19   of any objection."  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468,

20   1473 (9th Cir. 1992).  Biosense forfeited its new argument at least twice over:  *first*,

21   by not objecting on that ground to Innovative's requests for all sales of each catheter

22   Biosense sells; and *second*, by not objecting on that ground when Innovative asked

23   this Court to require Biosense to produce sales data for the OCTARAY and

24   OPTRELL catheters.

25       When a party objects to discovery, it must state "all grounds for objection . . .

26   with specificity."  *Ramirez v. Cnty. of L.A.*, 231 F.R.D. 407, 409 (C.D. Cal. 2005)

27   (citing *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981)).  Failing to timely

28   object in that way waives "any objections which a party might have to the requests."

*Id.* (citation omitted).  Thus, this Court has held many times that a "relevance objection raised for the first time in opposition to [a] Motion to Compel is waived." *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. D.T.S. Enter., Inc.*, 2023 U.S. Dist. LEXIS 40047, at \*11 (C.D. Cal.).[1]  Likewise, a party waives a timely asserted objection to discovery by failing to argue that objection when opposing a motion to compel that discovery.  *See, e.g.*, *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009).

During discovery, Innovative sought data for "each diagnostic catheter and ultrasound catheter sold by [Biosense]," not just the SOUNDSTAR, LASSO NAV, and PENTARAY.  Dkt. 238 at 231.  But Biosense did not object on relevance grounds.  Instead, Biosense produced sales data for all its catheters, indicating that it did not object on that basis.  *See* Dkt. 267-1 at 4 (¶ 10).  And when Innovative moved to require Biosense to supplement that production with "new catheter sales for . . . high-density mapping catheters like PENTARAY, OCTARAY, and OPTRELL," Dkt. 236 at 17, Biosense again declined to argue that it should not have to produce sales data for other catheters, like OCTARAY and OPTRELL, because of their supposed irrelevance.  *See generally* Dkt. 240.  In fact, after the Court granted Innovative's motion, Biosense updated its production with sales data for all the catheters it had originally provided, including catheters that it now says are irrelevant.  *See* Dkt. 273 at 8; Dkt. 267-1 at 4 (¶ 10).  Because Biosense has waived its relevance objection, this Court should not consider it.

### C.    Even If Not Waived, Biosense's Objections Lack Merit

Even so, Biosense's arguments fail because they depend on a misstatement of the relevant markets that Innovative defined in this case.  As the Court has stated,

---

[1] *See also, e.g.*, *Schwartz v. Bai Brands LLC*, 2020 WL 6526364, at \*3 (C.D. Cal.) ("Nor will [courts] consider objections raised for the first time in an opposition to a motion to compel.").

and as Biosense admits, Innovative defined a market for *all* "high-density mapping catheters for use with the CARTO 3"—not a single-catheter market. *Innovative Health LLC v. Biosense Webster, Inc.*, 2022 WL 1599713, at *4 (C.D. Cal.), *rev'd and remanded*, 2024 WL 62948 (9th Cir.); *En Banc* Petition at 5 n.4. The OCTARAY and OPTRELL are high-density mapping catheters for the CARTO 3, and both catheters are subject to Biosense's anticompetitive case coverage policy. So sales of those catheters are relevant to current market conditions, damages, and injunctive relief, and will inform this Court and the jury. Requiring Biosense to produce that sales data as ordered will not "expand the scope of this case"; it will just ensure a complete understanding of a market Innovative has already defined.

>        1.    Even Biosense Admits That Innovative Defined a Market for All
>              "High-Density Mapping Catheters For Use With the CARTO 3"

The Court's summary-judgment order accurately recounted the relevant markets here: "Innovative Health argues that there are four product markets at issue: (1) navigational ultrasound catheters for use with the CARTO 3; (2) high-density mapping catheters for use with the CARTO 3; (3) circular mapping catheters for use with the CARTO 3; and (4) clinical support for the CARTO 3." *Innovative Health*, 2022 WL 1599713, at *4. So did Biosense's petition for *en banc* rehearing, after the Ninth Circuit reversed the summary judgment for Biosense:

> Innovative based its claims on the following four single-brand product markets: (1) navigational ultrasound catheters for use with the CARTO 3; (2) **high-density mapping catheters for use with the CARTO 3**; (3) circular mapping catheters for use with the CARTO 3; and (4) clinical support for the CARTO 3.

*En Banc* Petition at 5 n.4 (punctuation fixed & emphasis modified).

After analyzing those markets, Innovative's expert, Dr. Forister, concluded that Biosense has monopolized them and that Biosense's anticompetitive conduct in those markets has harmed Innovative and consumers alike. *See* Dkt. 146-1 at 337-

9

38, 352, 385-89 (Ex. 22 ¶¶ 8, 46-48, 144-56).  To be sure, market conditions have changed since Dr. Forister authored his opening report in 2021.  Then, Biosense offered just one product in each of the three catheter markets.  Now, it offers more.  But Dr. Forister defined none of the markets he analyzed as a single-product market.  Instead, he expressly defined each market to include "*all*" catheters of the relevant type, accommodating the possibility of new products.  Dkt. 146-1 at 377-82 (Ex. 22 ¶¶ 124, 130, 135) (emphasis added).  The Ninth Circuit understood this:  Biosense "manufactures and sells three *types* of specialized catheters that connect to the CARTO 3."  *Innovative Health, LLC v. Biosense Webster, Inc.*, 2024 WL 62948, at *1 (9th Cir.) (emphasis added).

       2.    <u>OCTARAY and OPTRELL Are High-Density Mapping Catheters Subject to the Anticompetitive Case Coverage Policy</u>

      OCTARAY and OPTRELL are Biosense's latest entries in the market for high-density mapping catheters that Innovative defined.  Biosense does not contest that OCTARAY and OPTRELL, like the PENTARAY, are high-density mapping catheters compatible with the CARTO 3.  *See, e.g.*, Dkt. 273 at 9 n.3; Dkt. 267 at 7 & n.2.  And there can be no real question that these high-density mapping catheters compatible with the CARTO 3 belong to a relevant market for high-density mapping catheters compatible with the CARTO 3.  Likewise, Biosense does not contest that both OCTARAY and OPTRELL are subject to its case coverage policy—one of the anticompetitive tactics that Innovative has challenged here.  *See* Dkt. 273 at 6; Dkt. 267-1 at 4-11 (¶¶ 11-12 & Exs. 1-2);[2] *see also, e.g.*, *Innovative Health*, 2024 WL 62948, at *1 ("There is no dispute that Biosense has tied its clinical support services to its sale of catheters").

---

[2] Under that policy, Biosense refuses to provide clinical support to doctors using a reprocessed catheter that Biosense originally manufactured if that catheter was purchased from a third-party reprocessor.  *See* Dkt. 267-1 at 11 (Ex. 2).

3.    Therefore, Sales of Both Catheters Are Relevant

OCTARAY and OPTRELL belong to a relevant market and are subject to the same, marketwide anticompetitive policy.  So sales of those catheters are relevant. They show current conditions in the alleged market for high-density mapping catheters compatible with the CARTO 3.  And they will illuminate market power, damages, and injunctive relief in several ways.  For example:

a. **Market power.**  The complete sales data will show how OCTARAY and OPTRELL have altered sales and pricing in the defined market for high-density mapping catheters used with the CARTO 3.  *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992) (quoting *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 503 (1969)) (market power is "the ability of a single seller to raise price and restrict output").  That information will permit Dr. Forister to update his analysis of the "pricing experience of catheters used in cardiac mapping," which he concluded "demonstrates that [Biosense's] policies did have anticompetitive effects." Dkt. 146-1 at 352 (¶ 48).

b. **Damages.**  Complete sales data would permit the parties to fully account for the effects of OCTARAY and OPTRELL on sales of the PENTARAY high-density mapping catheter.  Those effects may affect the parties' damages calculations.  *See* Dkt. 246 at 8 (reiterating this Court's statement that "it's appropriate to update any information that goes to damages").

c. **Injunctive relief.**  In an antitrust case, "[t]he threshold requirement for any remedy is that it be effective to undo the harm that has been challenged, whether by eliminating a monopoly, dissolving a joint venture, or simply enjoining against a looser form of cartel."  Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles & Their Application ¶ 325 (5th ed. 2024 supp.).  Biosense does not contest that its case coverage policy applies to all its high-density mapping catheters; and

as Dr. Forister's report explained, Biosense abuses that policy "to foreclose" competition from third-party reprocessors like Innovative in all three relevant markets.  Dkt. 146-1 at 352 (¶ 46).  So complete sales data is relevant not only to understanding the extent of that competitive harm, but also to crafting injunctive relief that fully remediates it, eliminating barriers to entry and protecting reprocessors' ability to compete.

Biosense nonetheless claims (at 11-14) that complete sales data is "not relevant" to injunctive relief—and that Innovative somehow "lacks antitrust standing"—because Innovative doesn't yet sell reprocessed versions of OCTARAY and OPTRELL.  Both claims are mistaken.  OCTARAY and OPTRELL belong to a relevant market, and Innovative, which competes with Biosense in that market, suffered identifiable injury in that market.  So Biosense's own cases affirm Innovative's standing.  *See* Dkt. 273 at 11-12.[3]  And if Innovative prevails at trial, "it is the duty of the court to prescribe relief which will terminate the illegal monopoly, deny to the defendant the fruits of its statutory violation, and *ensure that there remain no practices likely to result in monopolization in the future*."  *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 250-51 (1968) (emphasis added).  Complete sales data will help this Court determine the extent of injunctive relief necessary to protect competition in all the relevant markets.  And if the case coverage policy does foreclose competition in those markets, injunctive relief may be required to ensure that Biosense cannot protect or extend its monopoly just by applying the same anticompetitive ties and tactics to new products in those markets.

Biosense finally warns (at 11) that it may "require written discovery and depositions" to understand Innovative's plans for reprocessing the OCTARAY and

---

[3] Innovative also would have antitrust standing even if it were just a *potential* competitor in a *new* market.  *See Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir. 1985) ("intent to enter" and "preparedness to do so" proves standing).

1   OPTRELL catheters.  That claim is not credible:  Biosense simultaneously argues
2   (at 11-12) that *any* evidence that Innovative "would have sold reprocessed versions
3   of the OCTARAY and OPTRELL" is immaterial "because Biosense's case coverage
4   policy was in existence before Innovative began selling" other reprocessed catheters
5   and because Innovative does not yet have regulatory approval to reprocess its new
6   catheters.  But that claim is also beside the point.  The relevance of OCTARAY and
7   OPTRELL sales data does not depend on Innovative's current reprocessing
8   activities or intentions.  What matters is that those catheters belong to a relevant
9   market.  That means they bear on market power, damages, and injunctive relief.

10                    4.       Excluding OCTARAY and OPTRELL Renders Biosense's
11                             Production of Catheter Sales Data Materially Incomplete

12          Innovative sought sales data for all customers and catheters, including—
13   specifically—the OCTARAY and OPTRELL high-density mapping catheters.  *See*
14   Dkt. 236 at 17.  But Biosense excluded all sales for those two catheters.  Biosense
15   has not contended or proved that it sold *none* of them.  So its production of sales
16   data for all customers and catheters "from the prior disclosure end date through June
17   30, 2024," is materially incomplete, and Biosense must supplement its response.

18   **III.   Conclusion**

19          This Court should require Biosense to produce all catheter sales data this
20   Court ordered, including for the OCTARAY and OPTRELL catheters.

21
22
23
24
25
26
27
28

1  DATED:  October 21, 2024          THEODORA ORINGHER PC

2

3

4                                     By:     /s/ Panteha Abdollahi
                                             Panteha Abdollahi
5

6
                                     JEFFREY L. BERHOLD, P.C.
7

8

9                                     By:     /s/ Jeffrey L. Berhold
10                                           Jeffrey L. Berhold

11

12
                                     BERGER MONTAGUE PC
13

14

15
                                     By:     /s/ Joshua P. Davis
16                                           Joshua P. Davis

17
                                     KELLOGG, HANSEN, TODD, FIGEL & FREDERICK,
18                                   P.L.L.C.

19

20

21                                   By:     /s/ Matthew D. Reade
22                                           Derek T. Ho
                                             Andrew E. Goldsmith
23                                           Matthew D. Reade
                                             Kelley C. Schiffman
24                                           Rachel T. Anderson

25                                   Attorneys for Plaintiff
                                     INNOVATIVE HEALTH LLC
26

27

28

                                          14

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff Innovative Health, LLC, certifies that this reply brief contains 2,826 words, which complies with the word limit of Central District of California Local Rule 11-6.1.

DATED:  October 21, 2024          THEODORA ORINGHER PC

By:     */s/ Panteha Abdollahi*
        Panteha Abdollahi