Panteha Abdollahi, Esq.
State Bar No. 230002
pabdollahi@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq.
Admitted *Pro Hac Vice*
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021

Joshua P. Davis, Esq.
State Bar No. 193254
jdavis@bm.net
BERGER MONTAGUE PC
505 Montgomery St., Suite 625
San Francisco, California 94111
Telephone:  (415) 906-0684

Derek T. Ho, Esq.*
Andrew E. Goldsmith, Esq.*
Matthew D. Reade, Esq.*
Kelley C. Schiffman, Esq.
State Bar No. 325023
Rachel T. Anderson, Esq.*
Annamaria M. Morales-Kimball*
Sean P. Quirk*
*Admitted *Pro Hac Vice*
dho@kellogghansen.com
agoldsmith@kellogghansen.com
mreade@kellogghansen.com
kschiffman@kellogghansen.com
randerson@kellogghansen.com
amoraleskimball@kellogghansen.com
squirk@kellogghansen.com
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK. P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 367-7900
Facsimile: (202) 326-7999

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC,<br><br>Defendant. | Case No. 8:19-cv-1984 JVS (KES)<br><br>Assigned for all purposes to:<br>Honorable James V. Selna<br>**DECLARATION OF MATTHEW D. READE IN SUPPORT OF PLAINTIFF INNOVATIVE HEALTH LLC'S MOTION FOR ORDER REQUIRING THE EXCHANGE OF UNREDACTED TRIAL EXHIBITS**<br><br>Date:    March 3, 2025<br>Time:    1:30 p.m.<br>Crtrm:  10C<br>Action Filed:  October 18, 2019<br>Trial Date:  April 29, 2025 |

I, Matthew D. Reade, declare as follows:

1.      I am an attorney admitted to the bars of the State of Texas and the District of Columbia.  I am admitted *pro hac vice* to practice before this Court.  I practice law at Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., and represent the plaintiff, Innovative Health LLC, in this matter.

2.      I make this declaration in support of Plaintiff Innovative Health LLC's Motion for an Order Requiring the Exchange of Unredacted Trial Exhibits.

3.      The facts I state here are true and correct.  They are based on my own personal knowledge or knowledge I gleaned from reviewing files pertinent to this matter.  If called as a witness to testify, I could and would competently testify to these facts.

4.      On December 12, 2024, I sent a letter to Biosense's counsel.  My letter identified concerns with Biosense's redaction of 40 documents that Innovative's counsel had identified as potential trial exhibits.

5.      On December 23, 2024, Biosense responded via letter, stating in part: "BWI properly redacted proprietary and commercially sensitive information that was not responsive to any agreed production requests pursuant to the parties' ESI Protocol and marked such redactions '[Redaction:  Other].'"  Regarding the Octaray and Optrell, Biosense wrote that Innovative "is not entitled to, nor does it need, any further information regarding those two catheters."

6.      On December 31, I replied via letter (a true and correct copy is attached to this declaration as **Exhibit 1**).

7.      On January 3, 2025, counsel for Innovative and Biosense conferred via Zoom about their December 12, 23, and 31 correspondence.  I attended that conference.  Counsel discussed Innovative's proposal for exchanging unredacted exhibits.

8.      On January 9, Biosense agreed to exchange preliminary exhibit lists with Innovative on March 4, 2025.

9.      In a letter dated January 10 (a true and correct copy is attached to this declaration as **Exhibit 2**), Biosense rejected Innovative's proposal to exchange unredacted exhibits alongside the parties' preliminary exhibit lists.

10.     Using the metadata fields that I understand to be associated with redacted documents (both for privilege and not for privilege) our searches of the parties' productions show that Biosense redacted 11,112 documents, and Innovative redacted 93 documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 3rd day of February, 2025, at Washington, D.C.



_____

Matthew D. Reade

*DECLARATION OF MATTHEW D. READE*

# EXHIBIT 1

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

December 31, 2024

*By Email*

Alejandro H. Cruz, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
acruz@pbwt.com

      Re:    *Innovative Health LLC v. Biosense Webster, Inc.*, No. 8:19-cv-01984-JVS-KES (C.D. Cal.)

Alejandro:

      Thank you for your response letter dated December 23, 2024.  I write in reply.

      **I.**    **Confidentiality Designations.**  Innovative appreciates Biosense's agreement to its proposal regarding the confidentiality designations applied to the parties' exhibits.  Each party will note in its exhibit list, during the pretrial exchanges between the parties, whether it objects to the confidentiality designations applied by other parties or non-parties and whether it will modify or withdraw its own confidentiality designations.  Then, after exchanging responses, the parties will confer in good faith to resolve disputes and minimize the need for sealing at trial.

      **II.**    **Redactions of Non-Privileged Information.**  Biosense asserts that its redactions "are appropriate and consistent with the ESI Protocol in this case."  Letter from A. Cruz to M. Reade at 2 (Dec. 23, 2024).  This general assurance of propriety does not address any of the specific redactions that Innovative identified as obscuring relevant and responsive information. Instead, Biosense appears to view the ESI Order as a blanket authorization to redact any Biosense documents that the parties use at trial.  Biosense also suggests (at 1) that asking it to substantiate any redactions to anticipated trial exhibits amounts to "eleventh-hour attempts to derail [Biosense's] preparation for the upcoming trial."  Innovative disagrees for at least two reasons.

      *First*, the ESI Order *requires* Biosense to provide "additional information regarding the basis for redactions on specific documents" upon request.  Dkt. 64 at 11.  Innovative has made that request and reiterates it here.  Should Biosense refuse to provide any information about the basis for its redactions to the specific documents that Innovative's December 12 letter identified,

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Alejandro H. Cruz, Esq.
December 31, 2024
Page 2

Biosense will breach the ESI Order and waive any basis for asserting the challenged redactions and, in turn, other redactions regarding the same subject matter.

- Please produce unredacted versions of the potential trial exhibits identified in Innovative's December 12 letter by **January 9, 2025**. Otherwise, please explain the basis for each redaction you have applied by **January 9, 2025**.

Innovative also asked Biosense to confirm whether it redacted information about its Octaray and Optrell catheters from its productions. Innovative asked this question because, as should be evident, Innovative cannot see behind the redactions that Biosense applied.

Biosense's response ignores Innovative's question, instead reiterating the position that the Octaray and Optrell catheters are irrelevant. But the Court rejected that position. *See* Hr'g Tr. at 37:2-22 (Nov. 4, 2024). After the Court's ruling, Biosense should have disclosed whether it unilaterally redacted information about those relevant products from its productions. After all, if Biosense *did* redact that information, it knows that its prior disclosures were incomplete. *See* Fed. R. Civ. P. 26(e).

- So Innovative asks again: Did Biosense redact references to the Octaray and Optrell catheters from responsive documents that it produced in this case? And if so, how many documents did Biosense redact on that ground, and when will Biosense provide them without redactions?

*Second*, both the law and this Court's local rules require the parties to substantiate every redaction to the materials that they plan to use at trial. No matter the stage of a case, a "party seeking to seal a judicial record," such as a trial exhibit, "must present 'compelling reasons' to keep the records secret." *Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2019 WL 11742967, at *2 (C.D. Cal.) (Selna, J.) (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). And under this circuit's law, a "blanket" court order that permits sealing certain materials produced in discovery, like the ESI Order here, "does *not* justify sealing court records" and "is *not* a compelling reason that rebuts the presumption of access" to those records. *Kamakana*, 447 F.3d at 1183 (citations omitted) (emphasis added).

Likewise, this Court's local rules require that any party seeking to keep information under seal must, for all such information:

1. explain "why the strong presumption of public access in civil cases should be overcome, with citations to the applicable legal standard";

2. "list[] in table form each document or portion thereof to be filed under seal";

3. highlight "any proposed redactions" in its under-seal filings; and

K ELLOGG , H ANSEN , T ODD , F IGEL & F REDERICK , P.L.L.C.

Alejandro H. Cruz, Esq.
December 31, 2024
Page 3

4. "inform[] the Court whether anyone opposes" sealing all or part of the identified information, among other requirements.  C.D. Cal. L.R. 79-5.2.2(a); *see also id.* (requiring a "declaration" to substantiate each request for under-seal filing).

Given relevant precedent and the local rules, Innovative seeks to resolve disputes over redactions to trial exhibits early, so far as possible, to streamline the parties' trial preparations— through discrete requests about specific trial exhibits (like those discussed above) and through the parties' preliminary exhibit list exchange.  Here is how Innovative proposes to address any trial exhibits with remaining redactions when the parties exchange their preliminary exhibit lists:

1. ***Identify redacted exhibits.***  The parties' preliminary exhibit lists shall identify any proposed exhibit that contains redactions, no matter who produced the exhibit, as well as the type of redactions included.  For example, if Innovative lists a Biosense document that contains privilege redactions, Innovative will add "Y" to the redaction column for that exhibit, then state "Privilege" as the redaction type.  Likewise, if Innovative lists an *Innovative* redacted document, Innovative will note whether that document contains redactions and what kind of redactions it includes.

2. ***Unredacted, highlighted versions of exhibits with non-privilege redactions.***  The redacting party shall provide an unredacted, highlighted version of each exhibit that the redacting party produced with non-privilege redactions during discovery.

   a. *Privilege redactions excepted.*  At this stage, the parties need only unredact material they have not claimed as privileged.

   b. *Highlighting color.*  Any desired non-privilege redactions to the public version of those documents should be highlighted in teal.  Unredacted, unhighlighted versions of each exhibit will be used with the jury.

   c. *Timing.*  The redacting party will provide the unredacted, highlighted versions of any documents that it produced and included on its own exhibit list when the parties exchange preliminary exhibit lists on the date(s) agreed by the parties or ordered by the Court for pretrial exchanges of exhibits and objections.  Within 2 days of that exchange, the redacting party shall provide unredacted, unhighlighted versions of any documents that the redacting party produced but that the non-redacting party listed as exhibits.

3. ***Responding to proposed redactions.***  When responding to the other party's exhibit list on the date(s) agreed by the parties or ordered by the Court for pretrial exchanges of exhibits and objections, each party shall provide unredacted versions of each document that it produced but that is listed on the other party's exhibit list.  Unlike the prior exchange of unredacted documents, these versions should include teal highlighting showing the redacting party's proposed non-privilege redactions (if any)

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Alejandro H. Cruz, Esq.
December 31, 2024
Page 4

to those documents.  The parties should then meet and confer regarding the scope of redactions to be applied to the public exhibits.

- Please let us know whether Biosense agrees to the procedure outlined above for addressing sealing disputes through the parties' exhibit list exchange.  If so, Innovative will prepare a template for the parties to use.

**III.    Privilege Waiver.**  Biosense also argues that it has not waived attorney-client privilege over its communications about the case coverage policy.  We are unconvinced.  But given Biosense's representation that it "is not relying on the substance" of its attorneys' advice or "any underlying legal advice, instructions, or directives as a defense" here, Innovative is willing to discuss a stipulation to exclude evidence and argument based on advice of counsel. This stipulation would need to bar, at minimum:

1. Any evidence of communications with counsel, and any argument that such evidence is a defense to Innovative's claims;

2. Any evidence that Biosense believed that its conduct was legal, and any argument that such evidence is a defense to Innovative's claims;

3. Any evidence that Biosense believed that its conduct was required by law, and any argument that such evidence is a defense to Innovative's claims;

4. Any evidence that Biosense took any action based in whole or in part on advice of counsel, and any argument that such evidence is a defense to Innovative's claims;

5. Any evidence that counsel created the case coverage policy, approved the policy, or reviewed or cleared any communication about the policy, and any argument that such evidence is a defense to Innovative's claims;

6. Any evidence that continuing case coverage for third parties' catheters would violate the law, hospital policies, or any other rules or regulations, and any argument that such evidence is a defense to Innovative's claims;

7. Any evidence that continuing case coverage for third parties' catheters would exceed the terms and conditions of Biosense's liability insurance, and any argument that such evidence is a defense to Innovative's claims;

8. Any evidence that Biosense believed that the case coverage policy or position statement was necessary based in whole or in part on advice of counsel, and any argument that such evidence is a defense to Innovative's claims;

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Alejandro H. Cruz, Esq.
December 31, 2024
Page 5

9. Any evidence that Biosense believed that the case coverage policy would reduce the risk of liability to Biosense based in whole or in part on advice of counsel, and any argument that such evidence is a defense to Innovative's claims; and

10. Any evidence that continuing case coverage would result in additional risk of liability to Biosense from attesting to the safety and efficacy of third parties' catheters, and any argument that such evidence is a defense to Innovative's claims.

- Please let us know whether Biosense is amenable to resolving this issue through joint stipulation rather than motion practice. If so, the parties can discuss a timetable for preparing their joint stipulation at the forthcoming meet-and-confer.

Otherwise, we look forward to discussing a schedule for timely briefing any or all of these open issues when we meet and confer.

Sincerely,

*/s/ Matthew D. Reade*

Matthew D. Reade
Counsel for Innovative Health

cc: All counsel of record

# EXHIBIT 2



www.pbwt.com

January 10, 2025

Alejandro H. Cruz
Partner
(212) 336-7613
acruz@pbwt.com

**By Electronic Mail**

Matthew D. Reade, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
Sumner Square
1615 M Street NW, Suite 400
Washington, DC 20036
*mreade@kellogghansen.com*

> Re: ***Innovative Health LLC v. Biosense Webster, Inc.,***
> <u>**No. 8:19-cv-01984-JVS-KES (C.D. Cal.)**</u>

Dear Matthew:

We write in response to your letter of December 31, 2024, relating to Biosense Webster, Inc.'s ("BWI") document productions in this case, as well as to follow-up on our conferral of January 3, 2025.

As an initial matter, Innovative Health, LLC ("IH") has failed to respond with respect to IH's waiver of the issues in its December 12, 2024 letter. As detailed in BWI's letter of December 23, 2024, IH's concerns regarding BWI's assertions of privilege and various redactions have been stale for over three years, and IH concedes as much by its silence. Moreover, in its December 31 letter, as well as during our subsequent conferral, IH appears to confuse the redactions applied by the parties based on responsiveness and discoverability, as contemplated by the ESI Protocol, and documents that may require sealing from public view. The redactions at issue here are redactions applied by BWI based on assertions of privilege, as well as those based on proprietary information that was "not responsive to any agreed requests for production" pursuant to the ESI Protocol. There is no question of public access to judicial records at issue, and framing IH's concerns with respect to "sealing" at the upcoming trial does not change that.

## I.    BWI HAS SATISFIED ITS OBLIGATION UNDER THE ESI PROTOCOL TO PROVIDE ADDITIONAL INFORMATION REGARDING ITS REDACTIONS

IH asserts that BWI failed to provide additional information regarding the redactions identified by IH pursuant to the ESI Protocol and requests that BWI reproduce unredacted version of certain documents. BWI disagrees for at least two reasons.

*First*, despite IH's belated request, BWI has already provided additional information regarding the basis of its redactions and thus satisfied its obligation under the ESI

Matthew D. Reade, Esq.
January 10, 2025
Page 2

Protocol.  Specifically, with respect to its privilege redactions, BWI confirmed that the redactions reflect "transmission of otherwise privileged information between non-attorney corporate representatives" as well as "legal advice" from counsel.  *See* Cruz Ltr. (Dec. 23, 2024), at 2.  Similarly, with respect to its non-privilege redactions, BWI confirmed that the redactions marked "Redaction: Other" are "proprietary and commercially sensitive information that was not responsive to any agreed production requests."  *Id.*  The ESI Protocol requires the parties to provide "additional information regarding the *basis* for redactions on specific documents," not the *substance* of such redactions.  Disclosure of the latter—which, based on your letter and our discussion, appears to be what IH is looking for—would dilute BWI's attorney-client privilege, as well as the parties' agreement that otherwise non-responsive commercially sensitive information would not be disclosed in this action.

*Second*, IH's requests relating to redactions of information concerning Octaray and Optrell catheters has no basis in the court's decisions and is unduly burdensome, especially this late in the day.  Contrary to IH's allegations, the court has never found that all information relating to the Octaray and Optrell catheters is relevant to this case.  Indeed, the hearing held on November 4, 2024, was limited to the parties' dispute regarding the ***sales transaction data*** for Octaray and Optrell.  *See* Tr. 4:11-5:6 ("the only issue that is remaining in dispute is whether the Defendant Biosense needs to update sales transaction data . . . for two new models of catheters that were introduced after the Ninth Circuit appeal, the Octaray and the Optrell.").  The court has made clear, and IH concedes, that the parties are not to pursue any new theories of the case or re-open discovery at this point in time, less than four months before trial.  *See* Tr. 11:16-12:8 (IH's counsel confirming that "Judge Selna wasn't authorizing brand new factual discovery" and representing to the court that "[a]ll we're seeking is complete catheter sales data through mid-2024.")  BWI supplemented such data pursuant to the court's order and without prejudice to the fact that discovery is and remains closed.  To the extent IH demands that BWI undertake a review and revision of all redactions it appropriately applied years ago across its production of 102,747 documents (totaling 724,109 pages), BWI will not agree to such a request.

Nonetheless, in an effort to reach a compromise, BWI will agree to two things:

***Privilege Redactions***.  BWI will provide a privilege log with respect to the privilege redactions reflected in the documents identified in IH's letter of December 12, 2024 in the coming week.  For the sake of efficiency, BWI does not believe it is necessary to identify privilege redactions on the parties' exhibit list since such redactions are marked as "Redaction: Privilege" on the face of the documents.

***Non-Privilege Redactions.***  As you suggested during our January 3 discussion, BWI proposes that the parties specifically identify any proposed trial exhibit containing such redactions on the parties' exhibit list, and to the extent either party has questions or concerns regarding specific redactions, the parties should meet-and-confer to address them on a document-by-document basis for potential trial exhibits only, obviating the necessity of BWI retroactively reviewing its entire production.  To be clear, for the reasons detailed above, BWI does not

Matthew D. Reade, Esq.
January 10, 2025
Page 3

believe it is necessary or appropriate for the parties to exchange unredacted exhibits to implement this process in the first instance, and BWI will not do so.[1]

## II.    BWI DID NOT WAIVE PRIVILEGE AND IH'S PROPOSED STIPULATION IS BOTH PREMATURE AND INAPPROPRIATE

As detailed in BWI's letter of December 23, 2024, BWI has not waived its attorney-client privilege in this case by putting any legal advice at issue.  BWI has not relied on any privileged information or communications with counsel to defend itself or otherwise negate any aspect of IH's claims in this action.  Tellingly, IH has no substantive response, merely claiming with no legal or factual basis that it remains "unconvinced."  Instead, IH proposes a stipulation that is not only overbroad in its scope, but unnecessary.

It is neither necessary nor efficient for the parties to engage in a lengthy negotiation of a stipulation when BWI has never defended itself on the basis of any legal advice in this action.  IH's proposed stipulation, moreover, would likely hinder BWI's ability to defend itself as a practical matter, even in the absence of any defense based on legal advice.  IH's proposed language for the stipulation—which goes well beyond the scope of advice of counsel—substantiates BWI's concern since it limits BWI's ability to discuss the clinical support policy and its justifications *at all*, the core issues in this case.  IH's proposed language for the stipulation would also prevent BWI from discussing the history of the clinical support policy, which will provide important context for the jury to understand the policy's purpose and effect. Finally, all of these issues, to the extent IH chooses to press them, will be properly addressed through objections at trial, or, if IH prefers to address it in advance of trial, through a motion *in limine*.

BWI reserves all rights and waives none.

Very truly yours,

Alejandro H. Cruz

Cc: All Counsel of Record

---

[1] Our positions with respect to exhibit lists are detailed in our letter of yesterday, January 9, 2025.