**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

Panteha Abdollahi, Esq.
State Bar No. 230002
pabdollahi@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq.
Admitted *Pro Hac Vice*
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021

Joshua P. Davis, Esq.
State Bar No. 193254
jdavis@bm.net
BERGER MONTAGUE PC
505 Montgomery St., Suite 625
San Francisco, California 94111
Telephone: (415) 906-0684

Derek T. Ho, Esq.*
Andrew E. Goldsmith, Esq.*
Matthew D. Reade, Esq.*
Kelley C. Schiffman, Esq.
State Bar No. 325023
Rachel T. Anderson, Esq.*
Annamaria M. Morales-Kimball, Esq.*
Sean P. Quirk, Esq.*
*Admitted *Pro Hac Vice*
dho@kellogghansen.com
agoldsmith@kellogghansen.com
mreade@kellogghansen.com
kschiffman@kellogghansen.com
randerson@kellogghansen.com
amoraleskimball@kellogghansen.com
squirk@kellogghansen.com
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK. P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 367-7900
Facsimile: (202) 326-7999

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BIOSENSE WEBSTER, INC., <br><br> Defendant. | Case No. 8:19-cv-1984 JVS (KES) <br><br> Assigned for all purposes to: <br> Honorable James V. Selna <br> **PLAINTIFF INNOVATIVE HEALTH LLC'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 3 TO PRECLUDE BIOSENSE FROM RELYING ON LATE-DISCLOSED AND UNVERIFIABLE DATA** <br> *[Filed with [Proposed] Order]* <br> Date:    April 14, 2025 <br> Time:    11:00 a.m. <br> Crtrm:   10C <br> Action Filed:  October 18, 2019 <br> Trial Date:  April 29, 2025 |

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 14, 2025 at 11:00 a.m., or as soon after as the matter may be heard, before the Honorable James V. Selna, Courtroom 10C, located at 411 West Fourth Street, Room 1053, Santa Ana, California 92701-4516, Plaintiff Innovative Health LLC will and does submit this Motion *in Limine* No. 3 To Preclude Biosense From Relying on Late-Disclosed and Unverifiable Data.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, and all other papers and pleadings on file here or that may be presented to the Court.

This Motion is made after conference of counsel on March 7, 2025. *See* Local Rule 7-3. Defendant Biosense Webster, Inc. would not agree to the relief sought thus necessitating the motion.

DATED: March 17, 2025            THEODORA ORINGHER PC

By:      */s/ Panteha Abdollahi*
         Panteha Abdollahi

JEFFREY L. BERHOLD, P.C.

By:      */s/ Jeffrey L. Berhold*
         Jeffrey L. Berhold

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

BERGER MONTAGUE PC


By: _____/s/ Joshua P. Davis_____
      Joshua P. Davis
      Matthew Summers


KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.


By: _____/s / Andrew E. Goldsmith_____
      Derek T. Ho
      Andrew E. Goldsmith
      Matthew D. Reade
      Kelley C. Schiffman
      Rachel T. Anderson
      Annamaria M. Morales-Kimball
      Sean P. Quirk


Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

3

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court should preclude Defendant Biosense Webster, Inc. ("Biosense") from presenting evidence, testimony, or argument that its own transaction data produced on September 19, 2024 is unreliable or should be replaced by its late-disclosed transaction data produced on January 25, 2025.  On remand, the Court ordered the parties to produce three years of supplemental transaction data by September 13, 2024.  Biosense produced the supplemental transaction data on September 6, 2024 and "corrected" it in response to questions from Plaintiff Innovative Health LLC ("Innovative") on September 19, 2024.  Innovative's expert relied on this data – combined with data the Court ordered on two additional catheters (together, the "Original Data") – in producing his supplemental expert report, disclosed on December 3, 2024.

When Biosense disclosed its expert's supplemental report on January 25, 2025, Biosense separately produced yet another version of the supplemental transaction data ("New Data").  Biosense produced that data with the unsubstantiated claim that it "corrects" the Original Data.  Innovative has had no opportunity for discovery into how Biosense generated the New Data (Biosense's own expert had no idea), or to test Biosense's assertion (through counsel) that the New Data "correct" "errors" in the Original Data.  All Innovative has is Biosense's *ipse dixit*, which conveniently for Biosense results in a dramatic reduction in Innovative's damages.

The Court should not permit this highly prejudicial result at trial.  Biosense had an obligation to produce accurate data in response to this Court's orders.  But, on its telling, it instead produced what amounts to meaningless numbers.  The discrepancies are not modest: the New Data correct the vast majority (more than 90%) of the values in the Original Data, without any explanation.  Biosense should not be allowed to take advantage of its own discovery failures to manufacture doubt

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

1  in the jurors' minds about the accuracy of the data that are the foundation of the

2  parties' damages estimates in this case – especially since it has deprived Innovative

3  of any meaningful discovery on that issue.  The only fair result is that the original

4  transaction data that Biosense produced and represented to be accurate during the

5  supplemental discovery period should be "taken as established" for purposes of trial.

6  *See* Fed. R. Civ. P. 37(b)(2)(A)(i).

7  **II.     FACTUAL BACKGROUND**

8          Dr. Forister and Dr. Wu disclosed expert reports in September, October, and

9  November 2021.  Following the Ninth Circuit's remand order, this Court granted

10  Innovative's request and ordered Biosense to produce supplemental transactional

11  data to enable damages calculations for the years since the original reports.  *See*

12  ECF No. 232 (Hr'g Tr. 4:13-17); ECF No. 246.

13          The Parties stipulated that Biosense would produce its supplemental data by

14  September 13, 2024.  *See* ECF Nos. 253 & 255.  On September 6, 2024 Biosense

15  produced supplemental data.  Immediately, Innovative identified inconsistencies in

16  the data and asked Biosense to review it.  Biosense produced a "corrected" version

17  of the catheter sales on September 19, 2024.  *See, e.g.*, Declaration of A. Goldsmith,

18  Ex. 1 (Emails between S. Lobb and J. Berhold (Sept. 19, 2024)).  On November 4,

19  2024, this Court ordered Biosense to supplement its production with new data

20  related to the Octaray and Optrell catheters.  ECF No. 278.  Biosense provided that

21  data to Innovative on November 18, 2024, but did not provide any new or changed

22  data related to any other catheters.

23          Dr. Forister relied upon Biosense's already-once-corrected sales data from

24  September 19, 2024 and the additional production from November 18, 2024.  Both

25  of those productions were made in response to Court orders for production of

26  supplemental data by court-ordered deadlines.

27          But on January 25, 2025, long after those deadlines had passed, Biosense

28  disclosed a report by Dr. Wu and simultaneously produced a new set of data that

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1  purported to remove "duplicate" Soundstar entries from the Original Data and

2  changed 92% of the remaining values in the spreadsheet.

3      Innovative immediately questioned Biosense's counsel regarding the New

4  Data.  *See* Ex. 2 (Email between M. Summers and I. Weingram (Jan. 29, 2025)

5  (asking "[w]hen and how" the New Data came into Biosense's possession, why the

6  Original Data was incorrect, what was changed, and how the New Data was

7  collected, and seeking assurances that the New Data was, in fact, correct)).

8  Biosense offered minimal explanation, stating only that a review of the data (by an

9  unnamed individual) revealed "thousands of entries" with a standard cost of

10  $█████ , and that "Biosense identified an error in the query previously used to pull

11  the data and provided corrected data on Friday, January 17, 2025."  *See* Ex. 2 (Email

12  between I. Weingram and M. Summers (Jan. 30, 2025)).  Counsel did not indicate

13  the source of the error in the query, why Biosense's system had those additional

14  entries logged, or why—far beyond the purported duplicate entries—virtually all

15  (92%) of the data entries in the New Data had different values than the Original

16  Data.

17      Some of these changes to the data values were dramatic.  In addition to

18  removing over █████ SoundStar entries that were purportedly duplicates, the data

19  changed the standard cost of nearly all catheters.  For example, the standard cost for

20  one hospital's catheters changed from approximately $██ in the Original Data to

21  over $███ in the New Data, with no explanation.  This example is captured in

22  Exhibits 3 and 4 (Dep. Exs. 427, 428).  Other standard cost data changed by a matter

23  of cents.

24      Innovative sought answers about the New Data on March 5, 2025 at Dr. Wu's

25  deposition.  But he had none to offer.  When pressed to explain how and why the

26  data changed, Dr. Wu did not even appear to be *aware* that the standard cost values

27  in the data had changed and could provide no explanation why data going back to

28  April 2021 fluctuated so erratically between the two data sets.  *See* Ex. 5 (Wu Tr.

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1  95:7-19 ("Q. Do you have an understanding of why the standard cost for the Lasso

2  NAV 10 Pole Fixed went from [one number] to [a higher number] between the

3  original data that was produced and the updated data that was produced? A. I cannot

4  tell you sitting here today.  Q. You didn't identify any error in the standard cost of

5  column of the original data apart from the ███ Soundstar transactions that you

6  refer to in your report, did you? A. I don't recall."); *id.* at 97:13-17 ("I don't recall

7  hearing what the reason for the errors were in the first place, but I accept the data …

8  as the corrected and accurate data."); *id.* at 101:10-14 ("Q. Do you have any

9  explanation of why the standard cost is different? A. I'd have to go back and refresh

10  my memory on what elements are in the calculation of the standard cost[.]")).  Dr.

11  Wu also did not know the reason for the supposed errors in the Original Data.  *Id.* at

12  98:17-22.  He had not spoken to anyone at Biosense about the New Data, and he did

13  not know what Biosense had done to correct the supposed errors.  *Id.* at 98:23-99:9.

14  **III.    LEGAL STANDARD**

15         Motions *in limine* "allow parties to resolve evidentiary disputes ahead of trial,

16  without first having to present potentially prejudicial evidence in front of a jury."

17  *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (Berzon J. dissenting).

18  They are subject to the district court's sound judicial discretion.  *See United States v.*

19  *Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999).

20  **IV.    ARGUMENT**

21         The New Data should be excluded for two independent reasons: first, as the

22  standard sanction for evidence disclosed after the court-ordered deadline; and

23  second, because it contradicts Biosense's own prior productions and representations

24  and is itself unverifiable, because no witness can vouch for its accuracy.

25         **A.    Use of the New Data Would Be Prejudicial and Fundamentally**
                  **Unfair to Innovative**
26
27         Biosense spent weeks gathering supplemental catheter sales data in response

28

7

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

1  to the Court's order.[1]  When it finally made that production, the data was

2  incorrect—as Innovative immediately noted.  Biosense had the opportunity then to

3  review the process it was using to collect the data and ensure it was accurate.  On

4  September 19, 2024, Biosense produced "corrected" data.  This fell just outside of

5  the deadline ordered by the Court.  Innovative's expert proceeded to rely on that

6  data to update his analysis of market power, competitive effects, and lost profits for

7  his report on December 3, 2024.

8         But on January 25, 2025, seven months after it was first notified that

9  supplemental sales data must be produced and four months after the Court-ordered

10  deadline for production, Biosense made a new production of supposedly further

11  "corrected" sales data.  The data purports to reduce Innovative's damages by over

12  $30 million and changes the vast majority of standard cost values with no

13  explanation.  Such a violation of fundamental fairness in discovery—particularly so

14  close to trial—should not go unremedied.

15         Rule 26(e)(1)(B) requires that a party "who has responded to a[] . . . request

16  for production . . . must supplement or correct its . . . response . . . as ordered by the

17  court."  Rule 37(c)(1) provides the remedy for failure to do so:  "the party is not

18  allowed to use that information . . . to supply evidence on a motion, at a hearing, or

19  at a trial, unless the failure was substantially justified or is harmless."

20         Biosense's production of the New Data on January 25, 2025, obviously did

21  not meet the Court's timeline for producing supplemental data.  Biosense received

22  notice in June 2024 that the Court would order it to supplement its previous

23  productions.  *See* ECF No. 232 (Hr'g Tr. 4:13-17).  Biosense itself proposed a

24  deadline of September 13, 2024 to make that court-ordered production.  *See* ECF

25

26      [1] *See* ECF No. 288 (Hr'g Tr. 28:15-19) ("Updating data on existing catheters
and so forth took quite some time. I'm trying to recall exactly how long but certainly
27  weeks, potentially longer than that, potentially a month, month and a half --
something in that range").
28

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

1    No. 253.  However, the data Biosense produced was erroneous.  Innovative quickly

2    identified those errors and requested that Biosense fix them.  Biosense did not do so

3    until September 19, 2025, nearly a week after the Court-ordered deadline.  Then,

4    four months later, Biosense attempted to replace it with the New Data.

5          Even if the New Data is accurate, Biosense's failure to produce it on time,

6    whether through genuine error or otherwise, was not "substantially justified" nor

7    "harmless."  Plaintiff's expert had already conducted his updated analysis of the

8    relevant markets and damages calculations in his 93-page report and had only 19

9    days to review the New Data while in the midst of preparing a reply to Dr. Wu's

10   143-page report.

11         But more importantly, the latest figures produced by Biosense reduce

12   Innovative's damages by $30 million, and Innovative has no ability to explore why

13   there have been "corrections" of the data or test whether the New Data is in fact

14   accurate.  Biosense itself provided vague explanations for only one of the changes in

15   the data, and Dr. Wu admitted to knowing nothing about the purported errors or

16   corrections.  In Innovative's current posture—weeks before trial, preparing to

17   depose two recently disclosed Biosense fact witnesses, still receiving new Biosense

18   documents, and unable to investigate the source this "corrected" data—Biosense's

19   belated production is highly prejudicial.

20         **B.     The New Data Should Be Excluded Because It Is Unverifiable**

21         As discussed above, Biosense has provided nothing more than its own say-so

22   to support its assertions that the old data are not accurate and that the new data are

23   accurate, and Innovative has had no opportunity to investigate those claims.  Courts

24   routinely exclude parties from relying on such unverifiable data at trial.  *See*, *e.g.*,

25   *Niemeyer v. Ford Motor Co.*, 2012 WL 3277273, at *12 (D. Nev. Aug. 9, 2012)

26   (granting motion *in limine* to exclude data produced through "unverifiable process,"

27   because "plaintiffs have no ability to verify the accuracy of the EDR data and cannot

28   effectively cross-examine [the witness testifying to that data] or challenge the EDR

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

1   evidence"); *Dreyer v. Ryder Automotive Carrier Group, Inc.*, 2005 WL 1074320, at

2   *26 (W.D.N.Y. Feb. 9, 2005) ("Data relied upon by an expert as the basis for an

3   opinion that is neither verified as to its accuracy and completeness or, if from a

4   recognized source, is 'speculative in nature and therefore inherently insufficient,'

5   should be excluded." (citation omitted)), *objections overruled*, 367 F. Supp. 2d 413

6   (W.D.N.Y. 2005).  This Court should do the same here.

7        The Court should also exclude the new data under Rule 403, because in the

8   absence of any explanation or verification, such data presents a substantial danger of

9   "unfair prejudice, confusing the issues, [and] misleading the jury."  Fed. R. Evid.

10  403.  Allowing Biosense to introduce the new data would be confusing and a waste

11  of the jury's time, as no witness has insight into the process that led to the New Data

12  being produced, leaving the jurors with no facts they can use to decide which dataset

13  to credit.  The only reasonable solution to this problem is to hold Biosense to its

14  timely-produced data and prevent Biosense from using or otherwise relying on the

15  New Data.

16       **C.    Biosense Should Be Precluded from Questioning the Reliability of**

17              **The Original Data**

18       In addition to precluding Biosense from introducing evidence or argument

19  related to the New Data, the Court should bar Biosense from questioning the

20  reliability of the Original Data.  Excluding the New Data but allowing Biosense to

21  undermine the Original Data would be perverse.  Biosense would be able to attack

22  Innovative's damages evidence as unreliable because of its own discovery

23  misconduct.  The only appropriate result of Biosense producing data upon which

24  Innovative justifiably relied for months is for the Original Data to be "taken as

25  established."  Fed. R. Civ. P. 37(b)(2)(A)(i).

26       Deeming certain facts to be established is a standard sanction for failing to

27  obey a Court's discovery order.  Fed. R. Civ. P. 37(b)(2)(A)(i)-(ii) (Sanctions may

28  include "directing that the matters embraced in the order or other designated facts be

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1  taken as established for purposes of the action" or "prohibiting the disobedient party

2  from supporting or opposing designated claims or defenses, or from introducing

3  designated matters in evidence.").

4           Rule 37(b)'s sanctions are essential to avoid rewarding discovery abuses.  *G-*

5  *K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645, 647 (9th

6  Cir. 1978) ("Litigants who are willful in halting the discovery process act in

7  opposition to the authority of the court and cause impermissible prejudice to their

8  opponents."); *see also, e.g.*, *Holtsinger v. Briddle*, 2009 WL 3157510 at *1-4 (E.D.

9  Cal. Sept. 25, 2009), *report and recommendation adopted sub nom. Holtsinger v.*

10  *Voros*, 2009 WL 4052749 (E.D. Cal. Nov. 19, 2009) (ordering facts establishing

11  liability be taken as true as sanction for discovery violation); *Life Music, Inc. v.*

12  *Broad. Music, Inc.*, 41 F.R.D. 16, 20 (S.D.N.Y. 1966) (precluding party from

13  presenting evidence of any instances of solicitation not included in its Court-ordered

14  interrogatory responses).  And among the discovery sanctions available to the Court,

15  "deeming certain facts established for purposes of the litigation" is a "less severe

16  discovery sanction[]."  *Sanctions that may be imposed; Discretionary power of*

17  *court—Facts taken as established*, 2 Discovery Proceedings in Federal Court §

18  22:14 (3d ed.).  Innovative need therefore only show that the sanction is "just and

19  fair," bears "a substantial relationship to the facts sought to be established," and

20  meets "Rule 37's goals of punishment and deterrence."  *Alexsam, Inc. v. IDT Corp.*,

21  715 F.3d 1336, 1343 (Fed. Cir. 2013); *see also Chilcutt v. U.S.*, 4 F.3d 1313, 1319-

22  21 (5th Cir. 1993) (same).

23           Experts may rely upon data an opposing party produces about its own

24  operations, regardless of its admissibility.  *See* Fed. R. Evid. 703 ("If experts in the

25  particular field would reasonably rely on those kinds of facts or data in forming an

26  opinion on the subject, they need not be admissible for the opinion to be admitted.").

27  Furthermore, litigants are fairly entitled to assume that documents produced by the

28  opposing party in response to a Court order are accurate.  The Court specifically

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

1 ordered Biosense to produce this data.  Its claimed failure to do so accurately after

2 multiple opportunities is its own fault to bear, and it should not be permitted to

3 avoid accountability for these errors at trial by undermining its own data that it

4 claims it spent weeks compiling.  *See* ECF No. 288 (Hr'g Tr. 28:15-19).

5      The undue prejudice is clear.  Innovative has reasonably relied on the Old

6 Data.  We are now six weeks from trial.  Biosense insists *without any evidence* that

7 the parties should replace the Old Data with the New Data for their analysis at trial.

8 The result materially reduces damages.  It would be fundamentally unjust and unfair

9 to allow Biosense or any litigant to sandbag its opponent in this way.  In the interest

10 of litigation fairness, as well as principles of deterrence, Innovative requests that the

11 Court preclude Biosense from arguing the unreliability of the Original Data.

12 **V.     CONCLUSION**

13      Innovative respectfully requests that this Court preclude Biosense from

14 bringing evidence, testimony, or argument based on the late-disclosed, wholly

15 revised sales data produced by it on January 25, 2025, as well as from making any

16 suggestion before the jury that the previously produced data is unreliable.

17

18 DATED:  March 17, 2025          THEODORA ORINGHER PC

19

20

21                          By:    */s/  Panteha Abdollahi*
                              Panteha Abdollahi

22

23                          JEFFREY L. BERHOLD, P.C.

24

25

26                          By:    */s/ Jeffrey L. Berhold*
                              Jeffrey L. Berhold

27

28

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

BERGER MONTAGUE PC

By:    */s/ Joshua P. Davis*
      Joshua P. Davis

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

By:    */s/ Andrew E. Goldsmith*
      Derek T. Ho
      Andrew E. Goldsmith
      Matthew D. Reade
      Kelley C. Schiffman
      Rachel T. Anderson
      Annamaria M. Morales-Kimball
      Sean P. Quirk

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*

**REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Innovative Health LLC, certifies that this brief contains 2,851 words, which complies with the word limit of Central District of California Local Rule 11-6.1.

DATED: March 17, 2025        KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

By:    /s/ Andrew E. Goldsmith
        Andrew E. Goldsmith

*PL.'S MOT. IN LIMINE NO. 3 TO PRECLUDE LATE-DISCLOSED & UNVERIFIABLE DATA*