| | |
|---|---|
| KARLA KRAFT<br>State Bar No. 205530<br>kkraft@stradlinglaw.com<br>STRADLING YOCCA CARLSON & RAUTH LLP<br>660 Newport Center Drive, Suite 1600<br>Newport Beach, CA 92660-6422<br>Telephone: (949) 725-4000 | WILLIAM F. CAVANAUGH, JR.<br>State Bar No. 133461<br>wfcavanaugh@pbwt.com<br>PATTERSON BELKNAP WEBB AND TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 336-2000<br><br>MUHAMMAD U. FARIDI<br>(Admitted *Pro Hac Vice*)<br>LINKLATERS LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Telephone: (212) 903-9000<br><br>Attorneys for Defendant<br>BIOSENSE WEBSTER, INC. |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>   Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>   Defendant. | CASE NO. 8:19-cv-01984-JVS-KES<br><br>Hon. James V. Selna<br><br>**DEFENDANT'S OPPOSITION TO INNOVATIVE HEALTH LLC'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF PERSONAL WEALTH AND ATTEMPTED SALES OF INNOVATIVE HEALTH**<br><br>Date: April 14, 2025<br>Time: 11:00 a.m.<br>Judge: Hon. James V. Selna<br>Courtroom: 10C<br><br>**PRE-TRIAL CONFERENCE**:<br>April 24, 2025, 11:00 am [Dkt 256]<br><br>**JURY TRIAL**:<br>April 29, 2025, 8:30 am [Dkt 256]<br><br>Complaint Filed: October 18, 2019 |

- 1 -

DEFENDANT'S OPPOSITION TO INNOVATIVE HEALTH LLC'S MOTION *IN LIMINE* NO. 4

## I. PRELIMINARY STATEMENT

In its motion *in limine* No. 4, Innovative Health LLC ("IH") purports to seek the exclusion of evidence "regarding the personal wealth of Rick Ferreira and Tim Einwechter," and their desire to profit from the sale of IH, claiming that such evidence is irrelevant and unduly prejudicial. Dkt. No. 331 ("Br."). Notably, the evidence that IH seeks to exclude has **nothing** to do with Mr. Ferreira's or Mr. Einwechter's "personal wealth," lifestyle, or, in IH's word, "greed." Br. at 6, 8. Nor has Defendant Biosense Webster, Inc. ("BWI") ever suggested that it will present such evidence at trial. Instead, IH's motion is a thinly veiled attempt to preclude the jury from hearing highly probative evidence of BWI's defenses, including evidence related to IH's refusal to invest in its own clinical support infrastructure, IH's known ability to provide clinical support and training, IH's financial incentives for refusing to offer or invest in those services, Mr. Ferreira's and Mr. Einwechter's business strategies, and circumstances wholly unrelated to BWI that have negatively affected IH's financial standing. Moreover, to the extent "personal wealth" can be construed to encompass evidence bearing on potential witnesses' credibility and bias—*i.e.*, evidence showing that Mr. Ferreira and Mr. Einwechter have a financial stake in this litigation—IH *concedes* that such evidence is relevant and admissible. *See* Br. at 9-10. In light of the probative value of this evidence, the lack of any undue prejudice that would result from its admission at trial, and IH's concession that financial information can be used for impeachment purposes, the Court should deny IH's motion.

## II. BACKGROUND

In its motion, IH argues that the Court should exclude two categories of evidence: (1) evidence of Mr. Ferreira's and Mr. Einwechter's "personal wealth" and (2) evidence of "any past or anticipated attempted sale of Innovative." Br. at 5. IH asserts that both categories of evidence should be excluded as

irrelevant, pursuant to Fed. R. Evid. 401 and 402, and unduly prejudicial, pursuant to Fed. R. Evid. 403. But the evidence at the core of IH's motion is focused exclusively on IH's business structure and strategies, financial motivations and incentives, and operational investments—all bearing significantly on BWI's defenses in this case.

In contending that BWI plans to introduce evidence of Mr. Ferreira's and Mr. Einwechter's "personal wealth" at trial, IH claims that BWI asked Mr. Ferreira and Mr. Einwechter at their depositions "about their personal profit motivations for establishing Innovative and their financial success." Br. at 5. IH then points to deposition excerpts in which Mr. Ferreira acknowledged that he started IH because he saw it "[a]s a business opportunity" and explained the value at which he hoped to sell IH to potential acquirers. IH also points to Mr. Einwechter's estimation of the value of his ownership interest in IH and testimony discussing his ownership interest in Ascent at the time it was acquired by Stryker. *See id.* (citing Goldsmith Decl. Exs. 1, 2). Tellingly, none of this evidence contains any discussion of Mr. Ferreira's or Mr. Einwechter's financial success, affluence, or class broadly, beyond the scope of any relationship to or business goals for IH.

As for evidence of Mr. Ferreira's and Mr. Einwechter's attempts to sell the company, IH specifically identifies the following testimony:

- Mr. Ferreira agreeing that his goal in starting IH was to build "a company that would be appetizing to potential acquirers and then sell it" in five to seven years, rather than making a "long-term investment" in the company, including with respect to clinical support;
- Mr. Ferreira and Mr. Einwechter describing efforts to sell the company to various buyers during the same period in which they

-3-
DEFENDANT'S OPPOSITION TO INNOVATIVE HEALTH LLC'S MOTION *IN LIMINE* NO. 4

claim that BWI was pushing them out of the market and during which IH was not providing clinical support to its customers; and,

- Mr. Einwechter indicating that he advised potential investors and acquirers that IH's profit margins could meet or exceed eighty percent.

*See id.* (citing Goldsmith Decl. Exs. 1, 2). According to IH, the introduction of evidence along these lines at trial would "add[] nothing" because BWI could only use such evidence to underscore Mr. Ferreira's and Mr. Einwechter's "greed" or "pecuniary interest in the outcome of the litigation." *Id.* at 8-10.

### III.  ARGUMENT

IH's motion should be denied because, despite veiling itself in an argument regarding "personal wealth," "spending habits," "affluence," and "class," IH's motion is laser focused on excluding evidence that will assist the jury in understanding why IH is not winning the market share it wants and why IH's alleged underperformance has nothing to do with anticompetitive conduct by BWI.

The evidence IH seeks to exclude is probative of several issues that will be before the jury, and any adverse effect of such evidence for IH will stem from the import of that evidence to the key issues in the case, not from any "unfair prejudice."

#### A.   IH's Motion Has Nothing to Do with "Personal Wealth"

IH purports to seek the exclusion of evidence concerning its executives' "personal wealth," but this term is a strawman. While IH petitions this Court to exclude evidence concerning its executives' "spending habits," *see* Br. at 6-7, IH's motion fails to identify any evidence that BWI has sought about how Mr. Ferreira or Mr. Einwechter has *spent* his money. Instead, revealing IH's true target, IH cites evidence addressing these individuals' reasons for starting IH, their past business practices, and their plans for the future of IH. Despite its

-4-

avowed intent, IH fails to point to any evidence about what Mr. Ferreira and Mr. Einwechter choose to "do[] with" their money. Br. at 7.

IH's repeated objections to evidence regarding "affluence" and "class" are similarly misdirected. The evidence IH seeks to exclude does not concern information about any individual's financial standing, but rather specific business strategies Mr. Ferreira and Mr. Einwechter have used in the past and intend to use with IH. At bottom, IH's motion fails to identify any record evidence that fits within its own articulated theory of "personal wealth." And IH fails to identify any cases holding that, in a business competition case, evidence of the plaintiff's commercial strategies, decisions, and motivations is not admissible to rebut the plaintiff's *prima facie* case or prove a defense. *See infra*.

The cases on which IH relies are inapposite. *See* Br. at 6-8. In those cases, courts excluded evidence of "'lavish' personal spending," *United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010), multiple homes, *see BoDeans Cone Co. v. Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d 883, 898-99 (N.D. Iowa 2009), and other purely personal assets, *see Keefe v. LendUS, LLC*, 659 F. Supp. 3d 196, 201 (D.N.H. 2023), as irrelevant. BWI has not suggested that it intends to highlight how these individuals spend money in their personal lives or make any other appeal to class prejudice. *See* Br. at 7. The same cannot be said for IH, given its recent questioning of BWI's expert regarding his purely personal income and assets. *See* Cruz Decl. Ex. 1 (filed under seal).

For the avoidance of doubt, while BWI does not endorse IH's overbroad definition of "personal wealth" as encompassing evidence regarding a witness's financial interest in the outcome of the litigation, BWI agrees with IH that any such evidence is clearly admissible to prove bias. *See Peck v. Cnty. of Orange*, No. 19-cv-4654, 2023 WL 11195794, at *6 (C.D. Cal. May 22, 2023) (agreeing that "pecuniary interest may be shown to prove bias" (alterations omitted)); *Conan v. City of Fontana*, No. 16-cv-1261, 2017 WL 7795953, at *1-2 (C.D.

Cal. Oct. 16, 2017) (same, and collecting cases). BWI therefore reserves its undisputed right to introduce evidence regarding Mr. Ferreira's or Mr. Einwechter's stake in the outcome of this case at trial, including any financial or ownership interest these individuals have in the private equity companies that support IH. *See* Br. at 10 (acknowledging that evidence of a "witness's pecuniary interest in the outcome of the litigation" is admissible).

### B. Evidence of IH's Business Strategies, Financial Condition, and Potential Sales Is Highly Relevant and Not Unduly Prejudicial

As the Ninth Circuit has explained, a key question in tying cases is whether the defendant "has some cost advantage not shared by its competitors which makes its competitors *unable* to provide the tying product" because a "mere showing that its competitors did not *want* to provide the tying product is insufficient to establish an illegal tie." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 915 n.26 (9th Cir. 2008); *see also Moore v. James H. Matthews & Co.*, 550 F.2d 1207, 1215 (9th Cir. 1977) ("A product or service is not unique merely because the seller is willing to accept greater risks or a lesser profit than its rivals.").

Here, among other reasons, the evidence IH seeks to preclude is relevant to the question of whether IH is unable, or merely unwilling, to provide clinical support, training, or some other alternative to its customers to fully compete with BWI. Indeed, evidence indicating that IH had an incentive to maximize its margins (at the expense of investment in clinical support) in an effort to sell the company expeditiously and as profitably as possible has a tendency to show that IH was unwilling (rather than unable) to operate at a profit margin that would allow it to compete effectively.[1] *See Medtronic, Inc. v. Axonics Modulation*

---

[1] The cases IH cites to argue that "[c]ourts routinely exclude irrelevant evidence regarding potential asset sales where that evidence lacks a direct link to antitrust claims," Br. at 8, deal with corporate mergers under Section 7 of the Clayton Act, which are plainly not at issue here. *See United States v. Phillips Petroleum*

-6-

*Techs., Inc.*, No. 19-cv-2115, 2024 WL 3550482, at *5-6 (C.D. Cal. July 18, 2024) (holding that evidence regarding "business practice of [company's] executives to create and sell companies quickly" and details regarding company's acquisition were relevant and admissible); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (explaining that evidence of party's "profits, financial condition, and financial statements" helped establish "business strategies, incentives, and practices," all of which were relevant to claims at issue).

Furthermore, such evidence is relevant in determining whether IH is "seeking a 'free ride'" on BWI's innovations and investments. *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1572-73 (11th Cir. 1991) (explaining that the antitrust laws are not intended to "equip" plaintiffs with defendants' "competitive advantage[s]" where plaintiffs are "unable, or unwilling, to finance the growth necessary" to achieve those advantages themselves). BWI has been a leader in the electrophysiology ("EP") field for decades and has developed a competitive advantage through its ongoing commitment to developing an integrated EP ecosystem consisting of the technology, software, services, and products that many doctors and hospitals prefer. IH will no doubt make reference to BWI's size and resources, as well as to the fact that it is one of the Johnson & Johnson family of companies. Yet, IH seeks to preclude evidence that it is backed by multiple private equity companies in which its principals have a stake. Indeed, Mr. Einwechter made clear in his testimony that IH "had

---

*Co.*, 367 F. Supp. 1226, 1258-59 (C.D. Cal. 1973) (explaining that subjective evidence of management intent is not a defense in a Section 7 action because this section is concerned "only with the effect upon competition of an acquisition" such that "it is irrelevant why one corporation sells its assets to another"); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 290 F. Supp. 3d 507, 513-17 (E.D. Va. 2018) (discussing the "weakened competitor defense" in context of mergers).

the resources" to assist its customers in providing clinical support, *see* Cruz Decl. Ex. 2; IH chose not to because, as Mr. Ferreira testified, from a financial perspective, it "just wouldn't make any sense to do," Cruz Decl. Ex. 3. Such evidence therefore goes to the heart of the antitrust laws: whether BWI's alleged conduct has harmed *competition* in the relevant market or has harmed IH as a *competitor* "that cannot effectively compete [in that market] on [its] own." *Seagood Trading Corp.*, 924 F.2d at 1573; *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (recognizing that the antitrust laws are "concern[ed] with the protection of competition, not competitors").

Evidence, moreover, about IH's financial state is relevant to issues of causation. *See Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1172 (S.D. Cal. 2022) ("Causal antitrust injury is 'an essential element of any remedy under the Sherman Act.'" (quoting *Catlin v. Wash. Energy Co.*, 791 F.2d 1343, 1347 (9th Cir. 1986))). There is significant evidence that IH's purported antitrust injury is attributable to factors outside of BWI's control—such as IH's own sales strategy and distributor partnerships. Thus, evidence regarding IH's financial condition is relevant to that inquiry. *See CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 835-36 (D. Minn. 2007) (determining that evidence showing that defendant's development of technology "did not cause damage" to plaintiff was "relevant to causation").

IH will not suffer unfair prejudice if this evidence is presented to the jury. Negative effects of relevant evidence are not sufficient to exclude that evidence under Rule 403. The Advisory Notes make clear that "unfair prejudice" in this context means "an undue tendency to suggest decision on an *improper* basis, commonly, though not necessarily, an emotional one." *See* Advisory Committee Note to Fed. R. Evid. 403 (emphasis added); *see also United States v. Blackstone*, 56 F.3d 1143, 1146 (9th Cir. 1995). Critically, "[p]rejudice does not simply mean damage to the opponent's cause. If it did, most relevant

evidence would be deemed prejudicial." *Miniter v. City of Los Angeles*, No. 10-cv-5826, 2011 WL 13134768, at *5 (C.D. Cal. Aug. 22, 2011) (internal quotation marks omitted).

IH's motion fails to explain any "unfair" prejudice it will suffer if the challenged evidence is admitted—let alone any "unfair" prejudice that would substantially outweigh the probative value of this evidence. IH's contentions that the only reasons BWI might seek to admit the challenged evidence would be to show that Mr. Ferreira and Mr. Einwechter are "purely profit-seeking," "greed[y]," unworthy of compensatory damages, and/or unreliable because they have a "pecuniary interest in the outcome of the litigation," Br. at 8-10, ignore the numerous ways in which this evidence is relevant to issues for trial, as detailed above.

Nor would evidence regarding Mr. Ferreira's and Mr. Einwechter's attempts to sell IH "invite collateral issues on acquisition attempts," as IH claims. *Id.* at 9. Put simply, the details of any particular acquisition attempt are immaterial to overarching points about Mr. Ferreira's and Mr. Einwechter's business strategy, incentives, and undisputed intention to build up IH and sell it as quickly as possible, as opposed to investing for long-term growth and true innovation in a highly competitive market environment.

## IV. CONCLUSION

For the reasons stated above, the Court should deny IH's motion *in limine* to "exclude evidence, testimony, and argument regarding the personal wealth of Rick Ferreira and Tim Einwechter and any past or anticipated attempted sale of Innovative."

DATED: March 24, 2025           STRADLING YOCCA CARLSON & RAUTH LLP

                                By: */s/ Karla Kraft*
                                    Karla Kraft

DEFENDANT'S OPPOSITION TO INNOVATIVE HEALTH LLC'S MOTION *IN LIMINE* NO. 4

PATTERSON BELKNAP WEBB AND TYLER LLP

By: */s/ William F. Cavanaugh, Jr.*
    William F. Cavanaugh, Jr.

LINKLATERS LLP

By: */s/ Muhammad U. Faridi*
    Muhammad U. Faridi

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

-10-
DEFENDANT'S OPPOSITION TO INNOVATIVE HEALTH LLC'S MOTION *IN LIMINE* NO. 4

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Biosense Webster, Inc., certifies that this brief contains 2,522 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

Dated: March 24, 2025                    /s/ Karla Kraft
                                         KARLA KRAFT