# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>Defendant. | Case No. 8:19-cv-1984 JVS (KES)<br><br>Assigned for all purposes to:<br>Honorable James V. Selna<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br>Date:   April 14, 2025<br>Time:  11:00 a.m.<br>Crtrm: 10C<br><br>Action Filed: October 18, 2019<br>Trial Date: April 29, 2025 |

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

1. **The parties are:** Plaintiff Innovative Health LLC ("Plaintiff" or "Innovative") and Defendant Biosense Webster, Inc. ("Defendant" or "Biosense"). Each of these parties has been served and has appeared. No other parties are named in the pleadings.

   **The pleadings which raise the issues as to this case are:**
   (a) Corrected Second Amended Complaint for Damages and Injunctive Relief for Violations of Sherman Act and Cartwright Act (Dkt. 59); and
   (b) Defendant's Answer to Plaintiff's Corrected Second Amended Complaint and Defenses (Dkt. 78).

2. **Federal jurisdiction** is invoked upon the grounds of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 15 U.S.C. §§ 15, 22. **Venue** is proper under 15 U.S.C. §§ 15 and 22 and 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2). The parties do not dispute federal jurisdiction or venue, or pendent jurisdiction over any associated state law claims.

3. **The trial will consist of six days of evidence. Each side will have 16 hours for all examinations. This does not include voire dire, opening statements, and closing arguments.**

4. **The trial is to be a jury trial.** At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

5. The following facts are admitted and require no proof: Not applicable.

6. The following facts, though stipulated, shall be without prejudice to any evidentiary objection:
   (a) Biosense is a California corporation.

2
FINAL PRETRIAL CONFERENCE ORDER

(b) Biosense introduced its current cardiac mapping machine, the CARTO 3, to the U.S. market in 2009.

(c) Innovative is an Arizona company.

7. **Claims and defenses to be presented at trial:**

<u>**Innovative's Claims[1]:**</u>

(a) Innovative alleges the following catheters markets:

i. Sensor-enabled circular mapping catheters for use with the CARTO 3 (Lasso Nav);

ii. Sensor-enabled high-density mapping catheters for use with the CARTO 3 (Pentaray, Octaray, Optrell); and

iii. Sensor-enabled ultrasound catheters (Soundstar).

In this Pretrial Conference Order, Innovative refers to these markets as the "catheter markets." Innovative refers to the catheters collectively as "CARTO 3 sensor-enabled catheters."

(b) Innovative plans to pursue the following claims against Biosense:

i. <u>Sherman Act Tying (Counts III, IX)</u>: Biosense violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by tying its CARTO 3 sensor-enabled catheters to its clinical support.

ii. <u>Sherman Act Monopolization (Counts I, VII)</u>: Biosense violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully monopolizing the alleged catheters markets through its policy on clinical support, its catheter design, and its collection practices for used catheters.

---

[1] The exclusive dealing claims in Counts IV, VI, X, and XII were previously dismissed by the Court with leave to amend. *See* Dkt. 45. Innovative hereby preserves its rights on appeal with respect to those claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

  iii. <u>Sherman Act Attempted Monopolization (Counts II, VIII)</u>: Biosense violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by attempting to unlawfully monopolize the alleged catheter markets through its policy on clinical support, its catheter design, and its collection of used catheters.

  iv. <u>Cartwright Act Tying (Counts V, XI)</u>:  Biosense violated the Cartwright Act, Cal. Bus. & Prof. Code § 16720, by tying its CARTO 3 sensor-enabled catheters to its clinical support.

(c) The elements required to establish Innovative's claims, which may be shown as to any of the three catheter markets (*supra* § 7(a)), are:

  i. <u>Sherman Act Tying (Counts III, IX)</u>:  Innovative must prove the following six elements by a preponderance of the evidence:

   (1) CARTO 3 clinical support and CARTO 3 sensor-enabled catheters are separate products;

   (2) Biosense will provide CARTO 3 clinical support only on the condition that the customer uses CARTO 3 sensor-enabled catheters that it purchased from Biosense/SterilMed, or that the customer not use CARTO 3 sensor-enabled catheters it purchased from any other supplier;

   (3) Biosense has sufficient market power with respect to CARTO 3 clinical support to enable it to restrain competition as to CARTO 3 sensor-enabled catheters;

   (4) The alleged tying arrangement has foreclosed a substantial volume of commerce as to CARTO 3 sensor-enabled catheters;

|   |   |   |
|---|---|---|
|   | (5) | The tying arrangement has unreasonably restrained trade in that it had a substantial adverse effect on competition with respect to CARTO 3 sensor-enabled catheters; and |
|   | (6) | Innovative was injured in its business or property because of the tying arrangement. |

ii. <u>Sherman Act Monopolization (Counts I, VII):</u> Innovative must prove the following four elements by a preponderance of the evidence with respect to any of the catheter markets (*supra* § 7(a)):

(1) The alleged market is a valid antitrust market;

(2) Biosense possessed monopoly power in that market;

(3) Biosense willfully acquired or maintained monopoly power in that market by engaging in anticompetitive conduct; and

(4) Innovative was injured in its business or property because of Biosense's anticompetitive conduct.

iii. <u>Sherman Act Attempted Monopolization (Counts II, VIII):</u> Innovative must prove the following four elements by a preponderance of the evidence:

(1) Biosense engaged in anticompetitive conduct;

(2) Biosense had a specific intent to achieve monopoly power in the alleged market;

(3) There was a dangerous probability that Biosense would achieve its goal of monopoly power in the alleged market; and

(4) Innovative was injured in its business or property because of Biosense's anticompetitive conduct.

        iv.    <u>Cartwright Act Tying (Counts V, XI)</u>:  Innovative must prove the following six elements by a preponderance of the evidence:

            (1)    CARTO 3 clinical support and CARTO 3 sensor-enabled catheters are separate products;

            (2)    Biosense will provide CARTO 3 clinical support only if the customer also uses CARTO 3 sensor-enabled catheters purchased from Biosense/SterilMed, or Biosense provided CARTO clinical support and required or otherwise coerced customers to not use CARTO 3 sensor-enabled catheters purchased from any other supplier;

            (3)    Biosense has sufficient economic power in the market for CARTO 3 clinical support to coerce at least some customers into using CARTO 3 sensor-enabled catheters manufactured by Biosense/SterilMed or not using CARTO 3 sensor-enabled catheters purchased from a competitor of Biosense;

            (4)    That the conduct involves a substantial amount of sales, in terms of the total dollar value of CARTO 3 sensor-enabled catheters;

            (5)    Innovative was harmed; and

            (6)    Biosense's conduct was a substantial factor in causing Innovative's harm.

(d)    In brief, the key evidence Innovative relies on for each of the claims is:

        i.    <u>Sherman Act Tying (Counts III, IX)</u>:

            (1)    Testimony of fact and expert witnesses at trial as set forth in the parties' witness lists, documents and information as set forth in the parties' exhibit list, and other testimony as set forth in the parties' deposition designations and

counter-designations. This evidence includes, but is not limited to, evidence of the following facts:

    (a)    The service provided by clinical support technicians is separate from the product of CARTO 3 sensor-enabled catheters;

    (b)    Biosense requires the purchase of new (or SterilMed reprocessed) CARTO 3 sensor-enabled catheters as a condition of using its clinical support through the clinical support policy;

    (c)    Biosense has market power in the market for CARTO 3 clinical support;

    (d)    Biosense's clinical support policy has foreclosed commerce for CARTO 3 sensor-enabled catheters;

    (e)    Biosense's clinical support policy has had a substantial adverse effect on competition with respect to CARTO 3 sensor-enabled catheters; and

    (f)    Biosense's clinical support policy has harmed Innovative, including by depriving Innovative of catheter sales.

    ii.    <u>Sherman Act Monopolization (Counts I, VII):</u>

    (1)    Testimony of fact and expert witnesses at trial as set forth in the parties' witness lists, documents and information as set forth in the parties' exhibit list, and other testimony as set forth in the parties' deposition designations and counter-designations. This evidence includes, but is not limited to, evidence of the following facts:

    (a)    There are distinct markets for CARTO 3 sensor-enabled catheters;

  (b) Biosense possesses monopoly power in the markets for CARTO 3 sensor-enabled catheters (e.g., Biosense controls almost all sales of these catheters, in some cases accounting for up to 99% of all sales);

  (c) To monopolize and maintain its monopoly power in these markets for CARTO 3 sensor-enabled catheters, Biosense willfully implemented, enforced, maintained, and expanded its clinical support policy, implemented "blocking" technology, and interfered with the supply of raw materials needed to reprocess catheters; and

  (d) Biosense's actions have harmed Innovative, including by depriving Innovative of catheter sales.

 iii. <u>Sherman Act Attempted Monopolization (Counts II, VIII):</u>

  (1) Testimony of fact and expert witnesses at trial as set forth in the parties' witness lists, documents and information as set forth in the parties' exhibit list, and other testimony as set forth in the parties' deposition designations and counter-designations. This evidence includes, but is not limited to, evidence of the following facts:

   (a) In an attempt to monopolize and maintain its monopoly power for CARTO 3 sensor-enabled catheters, Biosense willfully implemented, enforced, maintained, and expanded its clinical support policy, implemented "blocking" technology, and interfered with the supply of raw materials needed to reprocess catheters;

  (b) Biosense specifically intended to achieve monopoly power in the markets for CARTO 3 sensor-enabled catheters;

  (c) There was a dangerous probability that Biosense would achieve its goal of monopoly power (e.g., Biosense now controls almost all sales of these catheters, in some cases accounting for up to 99% of all sales); and

  (d) Biosense's actions have harmed Innovative, including by depriving Innovative of catheter sales.

 iv. <u>Cartwright Act Tying (Counts V, XI):</u>

  (1) Testimony of fact and expert witnesses at trial as set forth in the parties' witness lists, documents and information as set forth in the parties' exhibit list, and other testimony as set forth in the parties' deposition designations and counter-designations.  This evidence includes, but is not limited to, evidence of the following facts:

   (a) The service of CARTO 3 clinical support is separate from the product of CARTO 3 sensor-enabled catheters;

   (b) Biosense requires the purchase of new (or SterilMed reprocessed) CARTO 3 sensor-enabled catheters as a condition of using its clinical support technicians through the clinical support policy;

   (c) Biosense has sufficient market power in the market for CARTO 3 clinical support to coerce at least some users of CARTO 3 clinical support into using

CARTO 3 sensor-enabled catheters purchased from Biosense/SterilMed;

(d) Biosense's clinical support policy impacts a substantial amount of CARTO 3 sensor-enabled catheter sales;

(e) Innovative has been harmed, including by depriving Innovative of catheter sales; and

(f) Biosense's clinical support policy was a substantial factor in causing that harm to Innovative.

**Biosense:**

(a) Biosense disputes that Innovative will be able to carry its burden in proving the elements of these claims, including because:

 i. Innovative cannot show the existence of its alleged antitrust markets;

 ii. Innovative cannot show that clinical support is separate and distinct from Biosense's sensor-enabled catheters;

 iii. Innovative cannot show that Biosense has market or monopoly power in the alleged antitrust markets;

 iv. Innovative cannot show that Biosense engaged in anticompetitive conduct;

 v. Innovative cannot show that the alleged anticompetitive harm outweighs the procompetitive benefits of Biosense's conduct;

 vi. Innovative cannot show that it has suffered an antitrust injury, *i.e.*, the type of injury that the antitrust laws were intended to prevent and that the injury flows from the alleged anticompetitive conduct;

 vii. Innovative cannot show that it has suffered damages from the alleged conduct; and

      viii.    For Innovative's monopolization and attempted monopolization claims, Innovative will fail to show that Biosense had the requisite intent.

(b) Biosense plans to pursue the following affirmative defense:

    i.    <u>Business Justification</u>. The elements required to establish this affirmative defense are:

        (1)    The tie is implemented for a legitimate business purpose; and

        (2)    There is no substantially less restrictive alternative.

(c) In brief, the key evidence Biosense relies on for this affirmative defense is:[2]

    i.    Biosense implemented the clinical support policy for legitimate business purposes. Biosense will introduce the following key evidence, among other evidence, in support of this business justification:

        (1)    Documents and testimony reflecting that Biosense implemented its clinical support policy in part because other manufacturers' reprocessed navigational catheters are not BWI devices;

        (2)    Documents and testimony demonstrating how the clinical support policy promotes and ensures accuracy during mapping procedures on the CARTO 3, which is fundamental to Biosense's value proposition in the EP space; and

---

[2] This evidence is additionally relevant—outside of the context of Biosense's affirmative business-justification defense—to Biosense's arguments that Innovative has failed to carry its burden of proving a violation of the Sherman Act.

      (3)    Documents and testimony showing Biosense's significant investments in its clinical support program and that the clinical support policy prevents would-be rivals from free-riding on these investments.

  ii.  In addition, there is no less restrictive alternative to Biosense's clinical support policy that is as effective in achieving Biosense's objectives. Documents and testimony will prove the following deficiencies with any proposed alternative to Biosense's policy:

      (1)    If BWI began supporting Innovative's products free of charge in the absence of the policy, this would increase BWI's costs while resulting in a loss of revenue, which would be ineffective in preventing free-riding;

      (2)    If BWI began charging customers for clinical support, this would increase costs to hospital customers without addressing concerns regarding Innovative's reprocessing and/or testing specifications; and

      (3)    Allowing BWI insight and control over the quality of competitive reprocessed catheters would require BWI to share its proprietary specifications and testing standards and provide access to BWI's calibration tools so that reprocessors could meet BWI's accuracy guarantees. This level of control and oversight would entail increased costs, and this arrangement would not address potential liability issues or free-riding concerns.

**Third Party Plaintiffs and Defendants:** Not applicable.

8. **In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:**

    (a)    Whether Biosense violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by tying its CARTO 3 sensor-enabled catheters to its clinical support.

    (b)    Whether Biosense violated Section 2 of the Sherman Act, 15 U.S.C. § 2, through its policy on clinical support, its catheter design, and its collection of used catheters.

    (c)    Whether Biosense violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by attempting to monopolize the market for CARTO 3 sensor-enabled catheters.

    (d)    Whether Biosense violated the Cartwright Act, Cal. Bus. & Prof. Code § 16720, by tying its CARTO 3 sensor-enabled catheters to its clinical support technicians.

    (e)    Whether the alleged conduct was undertaken for a legitimate business purpose that could not reasonably have been achieved through substantially less restrictive means.

    (f)    The amount of damages, if any, owed by Biosense to Innovative.

In Innovative's view, issues (a)-(d) include the issue of whether any applicable affirmative defenses have been shown. With respect to issue (e), for the avoidance of doubt, Innovative rejects the claim that any business justification affirmative defense, distinct from the "rule of reason," exists as an independent affirmative defense. Biosense disagrees and maintains that whether it has proven this affirmative defense is an issue to be tried. The parties have identified this as an issue for resolution in their respective memoranda of contentions and proposed jury instructions.

9.    **All discovery is complete.** However, Innovative has indicated that it still may seek a deposition of Romeo Dela Cruz, pending the Court's resolution of Plaintiff's motion *in limine* No. 3.

10. **All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.** The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. The parties reserve the right to amend their exhibit list upon a showing of good cause for amendment. All exhibits on the parties' joint exhibit list to which the opposing party did not object will be admitted without objection upon being offered at trial by the party that listed such exhibit. Additionally, as reflected in the joint exhibit list, the parties have agreed to admit a set of "pre-admission" exhibits at the beginning of trial. Admission of any exhibit is subject to resolution of the pending motions *in limine*.

11. **Witness lists of the parties have been filed with the Court.** Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment or rebuttal). The parties reserve the right to present witnesses by way of deposition should they not appear in person, and each party specifically reserves the right to supplement the list set forth in section (a) if any of the following do not appear at trial: (i) Meredith Snider, (ii) Wendy Tam, (iii) Dr. Rahul Doshi, and (iv) Dr. Jose Osorio.

   (a) Each party intending to present evidence by way of deposition testimony[3] has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

   i. Bienvenue-Kauffman, Christine

---

[3] It is Innovative's position that no person who is offered as a live witness shall be additionally presented by deposition testimony, though deposition testimony may be used during the cross-examination of a live witness. Biosense requests the opportunity to present deposition testimony from Innovative's officers, directors, managing agents, and/or designees at trial as necessary. *See Optional Cap., Inc. v. Kyung Joon Kim*, No. 04-cv-3866, 2008 WL 11336496, at *9 (C.D. Cal. Jan. 17, 2008) (citing Fed. R. Civ. P. 32(a)(3)).

| | | |
|---|---|---|
| ii. | Chudzik, Rafal |
| iii. | Coldiron, Don |
| iv. | Cormier, Amy |
| v. | Czajka, Frank |
| vi. | Dambeck, Matthew |
| vii. | Demczuk, Nick |
| viii. | DeTate, Aaron |
| ix. | Distel, Dave |
| x. | Einwechter, Timothy |
| xi. | Farris, Jay |
| xii. | Ferreira, Rick |
| xiii. | Idio, Michael |
| xiv. | Joseph, Blessan |
| xv. | Martin, Noah |
| xvi. | Muecke, David |
| xvii. | Palfi, Sandor |
| xviii. | Roberts, Mary |
| xix. | Saxby, Cheryl |
| xx. | Senard, Todd |
| xxi. | Shome, Shibaji |
| xxii. | Stanton, Robert |
| xxiii. | Stoneman, Elizabeth |
| xxiv. | Thomas, Vincent |
| xxv. | Thording, Lars |
| xxvi. | Tranguch, Portia |
| xxvii. | Tuttle, Troy |
| xxviii. | Wish, Allen |
| xxix. | Yaron, Uri |

15

*FINAL PRETRIAL CONFERENCE ORDER*

  (b) Innovative objects in whole to the presentation of testimony by deposition of the following witness:

    i. Muecke, David[4]

  (c) The Parties do not generally object to the presentation of deposition testimony by the witnesses listed in section (a) above, other than set forth in section (b), but when the index is filed when the deposition transcripts are lodged, then under L.R. 16.2.7, the index will include each party's objections to certain deposition testimony designated by the opposing party.

12. The following law and motion matters and motions *in limine*, and no others, are pending or contemplated:

  (a) Innovative's Motion *in Limine* No. 1 To Exclude Evidence, Testimony, and Argument that Justify Biosense's Tie Without Acknowledging It Causes Supracompetitive Prices (Dkt. 345);

  (b) Innovative's Motion *in Limine* No. 2 To Exclude Defendant's Advice-of-Counsel Evidence (Dkt. 346);

  (c) Innovative's Motion *in Limine* No. 3 To Preclude Biosense From Relying on Late-Disclosed and Unverifiable Data (Dkt. 347);

  (d) Innovative's Motion *in Limine* No. 4 To Exclude Evidence Of Personal Wealth And Attempted Sales of Innovative Health (Dkt. 331);

  (e) Innovative's *Daubert* Motion To Exclude Dr. Wu's Free-Riding Justification (Dkt. 348);

  (f) Biosense's Motion *in Limine* (1) To Preclude Evidence or Argument or Opinion Related to the MAUDE Data (Dkt. 342);

---

[4] On March 14, 2025, Biosense sent Innovative a letter addressing Innovative's objection to Biosense's designations of David Muecke's deposition testimony. Innovative stands on its objection and has responded by letter.

|   |      |                                                                                       |
|---|------|---------------------------------------------------------------------------------------|
|   | (g)  | Biosense's Motion *in Limine* (2) To Preclude Evidence or Argument Related to the Alleged Catheter Collection Practices (Dkt. 343); |
|   | (h)  | Biosense's Motion *in Limine* (3) To Preclude Evidence and Argument Related to Newly Introduced Theories (Dkt. 344); |
|   | (i)  | Biosense's *Daubert* Motion To Exclude Certain Opinions of Dr. Eric F. Forister (Dkt. 341); and |
|   | (j)  | Only if the parties cannot reach agreement, Innovative intends to seek an order requiring disclosure or in camera review of certain unredacted trial exhibits.  See Dkt. 303 at 3 & n.2 (observing that "absent a constructive meet-and-confer among the parties, it may be necessary for the Court to resolve redaction disputes at the pretrial conference").  Biosense disputes that the February 26, 2025 order cited by Innovative, Dkt. 303, properly applies to the majority of IH's challenged redactions, which concern privilege-related redactions rather than the "non-privileged redactions" contemplated by Innovative's prior motion and the Court's related order.  *See id.* at 2 (citing Innovative Mot. at 5). |

13. **Bifurcation of the following issues for trial is ordered:**  None.

14. **Final statement of the parties.** The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues, as well as injunctive relief and attorneys' fees (which may need to be decided by the Court following trial depending on the jury's determination as to liability), remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

DATED: April 15, 2025

The Honorable James V. Selna
United States District Judge