UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings: **[IN CHAMBERS] Order Regarding Daubert Motions [318, 334]**

    Before the Court are two Daubert motions. First, Defendant Biosense Webster ("Biosense") moved to exclude certain opinions of Dr. Eric. F. Forister. (Motion ("Mot."), Dkt. Nos. 318, 341 (sealed).) Plaintiff Innovative Health LLC ("Innovative") opposed the motion. (Opp'n, Dkt. Nos. 364, 378 (sealed).) Biosense replied. (Reply, Dkt. Nos. 396, 412 (sealed).)

    Second, Innovative filed a Daubert motion to exclude Dr. Wu's free-riding justification. (Motion ("Wu Mot."), Dkt. Nos. 334, 348 (sealed).) Biosense opposed. (Opp'n ("Wu Opp'n"), Dkt. Nos. 366, 384 (sealed).) Innovative replied. (Reply, ("Wu Reply"), Dkt. Nos. 405, 418 (sealed).) A hearing on the following motions were held on April 14, 2025.

    For the following reasons, the Court makes the following rulings:

- **DENIES** Biosense's Daubert Motion (Dkt. Nos. 318, 341).

- **DENIES** Innovative's Daubert Motion (Dkt. Nos. 334, 348).

The parties shall meet and confer and, within seven (7) days of this order, notify the Court via email to the Courtroom Deputy Clerk whether the order may be filed on the public docket or parts of the sealed order should be redacted from the publicly filed version. If the parties request that any portions of the order remain sealed, when submitting their request, they shall attach a copy thereof with proposed redactions for the Court's review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

## I. BACKGROUND

Dr. Eric F. Forister ("Dr. Forister") is Innovative's economist. (See generally Expert Report of Eric F. Forister ("Forister Report"), Dkt. No. 341-1.) Dr. Forister was asked to determine the relevant markets and their market power, as well as the Innovative's lost profits. (Id.) Biosense seeks to exclude Dr. Forister's opinions relating to market power for clinical support, causation, damages, customers' awareness of the clinical support policy, and market definitions in their entirety. (Mot., at 22.)

Dr. Lawrence Wu ("Dr. Wu") is Biosense's economist and Innovative moves to exclude opinions related to competitors' free-riding procompetitive justification. (Wu Mot., at 4.)

## II. LEGAL STANDARD

Rule 702 allows expert testimony where "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert opinions must be "based on sufficient facts or data" and "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). Expert testimony may not be admitted unless "the proponent demonstrates to the court that it is more likely than not that" the proffered testimony meets the admissibility requirements set forth in Rule 702. Id.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93, 597 (1993), the Supreme Court explained that, in applying Rule 702, "the trial judge plays a 'gatekeeping role,' which 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1295 (Fed. Cir. 2015). "The Court emphasized that the focus 'must be solely on principles and methodology, not on the conclusions that they generate.'" Id. (quoting 509 U.S. at 595). "Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." Id. at 1295.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

The Ninth Circuit reiterated that the "test of reliability is flexible." Primiano v. Cook, 598 F.3d 558, 564-65 (9th Cir. 2010) (internal quotation marks omitted). When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony." Id. at 565. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Id. at 564.

### III. DISCUSSION

    *A.*    *Motion to Exclude Dr. Forister's Opinions (Dkt. Nos. 318, 341)*

        1.    Dr. Forister's Opinions on Market Power, Causation, and Damages

Biosense argues that Dr. Forister's opinions are internally inconsistent because he opines that Biosense can use its market power to raise its prices for clinical support above competitive levels, but offers the opposite opinion when addressing causation and damages. (Mot., at 9.) More specifically, in analyzing the market power, Dr. Forister asserts that Biosense has market power over clinical support for CARTO 3 and that it could profitably increase the price of its clinical support above $0 by charging inflated catheter prices. (Mot., at 8; Reply, at 5.) However, in assessing causation and damages, Dr. Forister argues that in a but-for world— where Biosense has market power but would sell mapping catheters and clinical support separately— Biosense would charge $0 for its clinical support. (Mot., at 10; Reply, at 6.) But if Biosense had market power as Dr. Forister attests, Biosense argues that it would have had to charge a price directly for clinical support in a but-for world above $0. (Mot., at 10; Reply, at 6.) Thus, Biosense claims that "either [it] does not in fact have market power with respect to clinical support for CARTO 3 procedures or [Dr.] Forister's causation and damages model is based on an unsupportable assumption that [Biosense] would charge nothing for clinical support in his but-for world." (Id.) According to Biosense, accepting Dr. Forister's opinion would result in "an inflated damages figure disconnected from the alleged anticompetitive behavior" because ascertaining the value of the products prior to the unlawful tying arrangement is necessary to calculate the injury. (Mot., at 11) (citing Siegel v. Chicken Delight, Inc., 448 F.2d 43, 52 (9th Cir. 1971); U.S. Steel Corp. v. Fortner Enterprises, Inc., 429 U.S. 610, 618 (1977).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Contrarily, Innovative contends that Biosense "mischaracterizes Dr. Forister's analysis" and his opinions are internally consistent. (Opp'n, at 1.) The Court agrees. First, Innovative bases its theory on sound economic principles of market power. Market power is indeed "multifaceted" and can manifest in various ways, such as through tying. Tying forces customers to purchase the tied product (mapping catheters) to the tying product (clinical support) and forgo lower-priced or higher-quality offerings by other sellers. (Opp'n, at 5.)

Second, fundamentally at issue is Dr. Forister's analysis that although Biosense has market power, the "but-for market price for clinical support is $0." (Second Rebuttal Expert Report of Eric F. Forister ("Forister Second Rebuttal"), Dkt. No. 341-3, at 28–30.) Biosense contends this cannot be true because a firm can exploit its market power either by "(a) directly increasing prices for clinical support or (b) indirectly by implementing the alleged tie and thereby requiring customers to pay for higher priced catheters." (Mot., at 10, Reply, at 7.)

Here, Biosense presumes that a firm with market power *must* exercise it. However, Innovative propounds a theory where a firm *chooses* not to exercise this power. The economic literature that Biosense relies on does not explicitly conclude that one must exploit its market power, but rather suggests there can be instances of unexercised market power.[1] Neither do the cases cited by Biosense stand for such proposition. See, e.g., Siegel v. Chicken Delight, Inc., 448 F.2d 43, 52 (9th Cir. 1971). The Court agrees with Innovative that a basic precept of the tying doctrine is that a defendant leverages its unused market power in the tying market to engage in anticompetitive conduct in another to profitably exploit this power. Accordingly, Dr. Forister provides a reasonable theory that Biosense precisely leveraged this unused power in the clinical support market to tie its service to the catheters. (Opp'n, at 6–7.)

---

[1] Biosense relies on Phillip E. Areeda and Herbert Hovenkamp's Antitrust Law. (Mot., at 9.) However, Areeda and Hovenkamp only says that a dominant firm "can" use its market power directly or indirectly. Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law (5th ed. 2024) ¶ 340c2. Although economists would "assume that [] a firm is charging its profit-maximizing price" because one could not distinguish between unexercised market power from competitive price, this is a rebuttal presumption. Id. ¶ 508. It is entirely possible that "[a firm] might choose not to exercise the power it knowingly has, abandoning a profit-maximization goal in favor of some other goal." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
|---|---|---|---|
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Thus, Dr. Forister's opinion that Biosense has market power is reconcilable with the $0 but-for market price for clinical support.

The Court finds Dr. Forister's testimony is necessary to "help the trier of fact" understand why Biosense chose to keep its market price for clinical support at $0. Fed. R. Evid. 702(a). He explains that Biosense has incentives to maintain its free clinical support because "Biosense obtains substantial economic benefits from hospitals using its clinical support specialists," such as getting "physicians to use the latest and most expensive devices," "firsthand market information in terms of usage, trends," or "increasing brand loyalty." (Opp'n, at 5–6.) Biosense argues that Dr. Forister does not explain why Biosense could not capture these benefits even if it were to charge for clinical support. (Reply, at 7–8.) However, not only does Dr. Forister begin his analysis with the theory that it is not necessary for a firm to exercise its market power, he posits that the zero market price helps cement its market position. (See Forister Second Rebuttal ¶ 71; Opp'n, at 6.)

Dr. Forister further relies on additional competitive benchmarks that point to a but-for price of zero for clinical support. (See Forister Second Rebuttal ¶ 70.) He mentions that "in other countries where the Tie is not being used, Biosense has found that it maximizes profits to charge $0" and "[a]ll other rival manufacturers find it optimal to charge $0 for their clinical support." (Id.) Biosense counters that Dr. Forister did not sufficiently analyze nor "could [] answer basic questions" about these competitive benchmarks. (Reply, at 8.)

The Court is persuaded by Innovative's response that these benchmarks are not groundless and pass the Daubert threshold. The Court finds that these benchmarks are based on the Ramos deposition as well as Biosense's own expert witness. (See, e.g., Expert Rport of Doctor Wu, October 22, 2021, Dkt. No. 341-2 ¶¶ 135–137.)

Accordingly, Biosense's motion is denied on the issue of Dr. Forister's market power, causation, and damages analysis.

### 2. Dr. Forister's Damages Model

Next, Biosense challenges Dr. Forister's damages model. The crux of the dispute is whether the Eastman Kodak lock-in analysis applies to the calculation of damages.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Biosense contends that Innovative's "theory hinges on the [] existence of consumers who are locked in" and damages "must flow from that alleged anticompetitive conduct." (Mot., at 11–12.) However, Dr. Forister's damages model is based on overall sales of each catheter, without limiting the calculation to hospitals that are allegedly locked-in. (Id. at 13; see Forister Report ¶ 189.) Dr. Forister's model includes customers who are not locked in— those who purchased the CARTO 3 after the tying policy took effect in April 2016— and have knowledge of the policy. (Id. at 13–14; Reply, at 10.)

Here, the Court finds no problem with Dr. Forister's damages model. The Court agrees that Biosense collapses the market power and damages analysis. (See Opp'n, 8–13.) As Innovative explains, "[t]he point of an Eastman Kodak lock-in analysis [] is to assess *market power*," and not to be confused with the amount of damages. (Id. at 10.) See Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 452 (1992). Once Innovative presents sufficient evidence to the jury that Biosense has market power or "appreciable economic power," then there is an unlawful tying arrangement. (Opp'n, at 10–11.) As the tying policy then impacts the "market as a whole," the damages appropriately includes all Biosense customers who "bore the higher aftermarket prices." (Id. at 11-12.) Therefore, to the extent that lock-in customers indicate the defendant's market power, which in turn suggests the existence of an unlawful tying arrangement, the Court finds the Kodak factors are necessary to determine the scope of liability. However, Biosense does not dispute the reliability of calculating damages by lost profits or by the amount overcharged due to the policy. Unless Biosense can demonstrate that the damages model based on market-wide harm itself is untenable, the Court declines to exclude Dr. Forister's opinion on this issue.

### 3. Dr. Forister's Opinion of Locked-in Customers after April 2016

Biosense seeks to exclude Dr. Forister's assertion that customers who purchased a CARTO 3 after the policy remained locked-in as baseless. (Reply, at 12.) Specifically, Biosense takes issue with his statement that once a hospital purchases a CARTO 3, its doctors become "reliant" on the CARTO 3 system "with doctors and staff trained on the CARTO 3, inventory and accessories for the CARTO 3, and established relationships with CARTO 3 clinical account specialists." (Opp'n, at 12; Forister Second Rebuttal ¶ 304.) However, this statement is based on the Ramos depositions and should be viewed in the larger context of Dr. Forister's explanation of the high switching costs. (See, e.g., Forister Report ¶¶ 113–121.) The Court considers the testimony helpful for the trier of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

fact as the existence of switching costs may serve as evidence of lock-in.  See Eastman Kodak, 504 U.S. at 476.

Biosense also moves to preclude Dr. Forister's opinion about purchasers' lack of awareness of the clinical support policy after April 2016 because it is based on a "lone anecdote."  (Reply, at 13.)  These testimonies go to determine which customers were locked-in.  Eastman Kodak, 504 U.S. at 452.

As the Ninth Circuit explained, "[m]arket power arising 'solely from contractual rights that consumers knowingly and voluntarily gave to the defendant" does not offend the antitrust laws.'"  Innovative Health, LLC v. Biosense Webster, Inc., No. 22-55413, 2024 WL 62948, at *2 (9th Cir. Jan. 5, 2024) (citing Newcal Indus., Inc. v. Ikon Off. Sol., 513 F.3d 1038, 1048 (9th Cir. 2008)).  Therefore, there is a rebuttal presumption that "sophisticated customers like hospitals. . . who are aware of the policy and yet chose to purchase the CARTO 3" cannot serve as evidence of Biosense's market power.  Id.  Dr. Forister marshals evidence that hospitals may not have been aware of or have known the policy to begin with.  (Forister Second Rebuttal ¶¶ 174–177; Second Supplemental Expert Report of Eric F. Forister ("Forister Second Report"), Dkt. No. 3431-4 ¶¶ 87–92.)  The Court finds Dr. Forister's reports provide more than a "lone anecdote" on hospitals' awareness and the evidence is relevant to establishing whether they are locked-in.  Keeping in mind that the Court's role in a Daubert motion is limited to that of a gatekeeper, not to weigh the expert testimony to the point of supplanting the jury's fact-finding role, the Court declines to exclude opinions on these issues.  See Primiano, 598 F.3d at 564–65.

        4.      Dr. Forister's Market Definition

        **a.**      **Foremarket Definition**

Biosense contends that Dr. Forister never offered a foremarket definition for cardiac mapping machines prior to his 2024 report and Innovative should not attempt to do so last minute. (Mot., at 17.)  Innovative responds that Biosense only recently manufactured a dispute over whether there is a foremarket for cardiac mapping machines and there are multiple methods of defining the market.  (Opp'n, at 14–16.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

The Court is persuaded by Innovative that neither the foremarket definition nor the theory of market power in the cardiac mapping machines is new. The Court finds there were sufficient references to the primary market in Dr. Forister's 2021 Report. (See, e.g., Forister Report ¶¶ 172–276 ("The mapping system is in the primary product. . ."))

Additionally, Dr. Forister's foremarket definition will not excluded on the basis that it was presented "at the eleventh hour." (Reply, at 14.) Late disclosure does not make his foremarket analysis unreliable. Biosense also does not argue that it did not have ample time to review or respond to the foremarket analysis to make his opinions prejudicial.

      b.     **Aftermarket Definition**s

First, Biosense challenges Dr. Forister's methodology for defining the aftermarket for clinical support as unreliable. (Mot., at 18–22.) Biosense argues that Innovative does not provide anything beyond "[Dr. Forister's] assertion that a hypothetical monopolist could raise prices on clinical support." (Reply, at 15.)

"The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962). One way to define the relevant market is by the hypothetical monopoly test, which asks "whether [the] monopolist in the proposed market could profitably impose a small but significant and nontransitory price increase." Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1002 (9th Cir. 2008). Dr. Forister uses the hypothetical monopoly test and explains how "[t]here is no way to operate the CARTO 3 system without someone, either the hospital or a third party, providing clinical support." (Forister Report ¶¶ 106–108.) Market definition does necessarily and additionally require qualitative analysis.

Furthermore, Dr. Forister corroborates the aftermarket for clinical support by referring to the significant switching costs. (Forister Second Rebuttal ¶¶ 65-66, 160, 180; Forister Supplemental Report ¶ 95.) In his reports, Dr. Forister provides sufficient quantitative analysis on switching. (Opp'n, at 19–20; See also, Forister Second Rebuttal ¶¶ 65–66, 95; Forister Supplemental Report ¶¶ 63-65.) Although Biosense responds that Dr. Forister fails to consider the "other factors" or account for "other changes" that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

would have affected his evaluation of cross-elasticity, the Court finds his method can be appropriately attacked by cross examination at trial. Accordingly, the Court denies the motion on the issue of market definition for clinical support.

    Second, Biosense argues that Dr. Forister misapplied the SSNIP test for his aftermarket of navigational ultrasound catheters, consisting of OEM and reprocessed SoundStar catheters. Biosense claims that Dr. Forister did not look at the changes in the price of each product but only the average prices of OEMS and reprocessed SoundStar catheters to conclude that there has been an increase. (Mot., at 20.) Observed separately, Biosense contends that there is a substantial increase in sales for new SoundStars but a modest decline in the sales of reprocessed SoundStars. (Id.) Dr. Forister assumes that this is due to Biosens's policy but forgoes the possibility that the decline in reprocessed sales was caused by customers shifting their sales to OEM SoundStars or to some other ultrasound catheter. (Reply, at 20.)

    However, Dr. Forister explains that OEM catheters by themselves cannot constitute a relevant market because "a hypothetical monopolist of just OEM SoundStar catheters that raised prices above the competitive level would rapidly lose a significant number of sales." (Forister Report ¶ 123.) Consequently, he expanded the market to reprocessed SoundStar catheters and looked at price increases at specific points in time. (Forister Report ¶¶ 124, 130, 135, 138.) Moreover, the Court finds that the Merger Guidelines does not provide concrete guidelines on how to perform the SSNIP test, such that a party may choose to use the average price of multiple product. See U.S. DOJ/FTC 2010 Horizontal Merger Guidelines § 4.1.1.A. Alternatively, an antitrust plaintiff may choose to apply a hypothetical monopoly test by demonstrating a decrease in quality, which Dr. Forister provides in his report. (Opp'n, at 17; see Forister Supplemental Report ¶¶ 131-37 & Table 20); 2023 Merger Guidelines § 4.3.A.

    Finally, Biosense argues that Dr. Forister again misapplied the SSNIP test for his alleged high-density Pentaray and circular Lasso Nav mapping catheter markets. (Mot., at 21.) Biosense contends that he provides only "minimal" analysis regarding the substitution between the catheters at issue and other catheters. Again, the Court is unpersuaded by this argument. As an initial matter, the lack of quantitative analysis does not necessarily indicate that the analysis is unreliable or that Dr. Forister's opinion on the Pentaray and Lasso mapping catheter markets should be excluded in its entirety. Furthermore, Dr. Forister evaluated Pentaray prices, used Abbott ViewFlex and Webster

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
|---|---|---|---|
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

CS as benchmarks, and considered the impact of HD Grid on Pentraray pricing.  (See, e.g., Forister Report ¶¶ 129–38.)  As such, the Court does not find that his opinions on the Pentaray and Lasso Nav mapping catheter markets unreliable.  See Fed. R. Evid. 702(d).  On a final note, the Court sees no reason why Biosense cannot raise its general concerns regarding Dr. Forister's SSNIP test in cross-examination.  See Primiano, 598 F.3d at 564.

Accordingly, the motion is denied as to the aftermarket issues.

      B.      *Motion to Exclude Dr. Wu's Free-Riding Justification (Dkt. Nos. 334, 348)*

Dr. Wu opines that Biosense's mapping system competes vigorously against other competing systems and therefore free clinical support is "a necessary component of a competitive product offering demanded by customers."  (Dr. Wu Export Report (Oct. 22, 2021)  ("2021 Wu Report"), Dkt. No. 341-2 ¶¶ 135–37.)

Innovative offers three arguments for excluding Dr. Wu's procompetitive justification that the policy "prevents competitors from free riding on Biosense's significant investment in clinical support."  (2021 Wu Report ¶¶ 85-92; see generally Wu Mot.)  The Court finds that none are persuasive to exclude his free-riding justification.

First, Innovative argues that Dr. Wu advances his free-riding justification is inconsistent with the Ninth Circuit's requirement that a procompetitive justification must acknowledge supracompetitive pricing.  (Wu Mot. at 5); Innovative Health, 2024 WL 62948, at *4.  Innovative claims that Dr. Wu "cannot both claim "that preventing free riding is a procompetitive justification while also denying that Biosense charges supracompetitive prices."  (Id.)

The Court disagrees that Dr. Wu is sidestepping the requirement here.  Dr. Wu's narrative of Biosense's pricing is simply different from that of Innovative. Dr. Wu opines that Biosense simply provides competitive pricing in a competitive market.  (See Wu Opp'n, at 7.)  While it is Innovative's burden to show that the prices are supracompetitive, Biosense need not agree.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Ninth Circuit states that "a procompetitive justification is one that acknowledges that Biosense is charging a supracompetitive price" because procompetitive justifications are used to assess whether the harms of an anticompetitive conduct outweigh it procompetitive justifications. <u>Innovative Health</u>, 2024 WL 62948, at *4; <u>see</u> <u>Kodak</u>, 504 U.S. at 479; <u>see also</u> <u>Jefferson Par. Hosp. Dist. No. 2 v. Hyde</u>, 466 U.S. 2, 35 (1984) (O'Connor, J., concurring).  Therefore, the Court agrees that Dr. Wu's testimony is relevant to rule of reason framework if the jury accepts that there is anticompetitive conduct resulting in suprcompetitive catheter prices. (Wu Opp'n, at 7–8.)  It is too premature to exclude this testimony at this time.

Second, Innovative challenges Dr. Wu's opinions as contrary to settled law because "[c]ourts often reject free-riding justifications in tying cases when the defendant's goal of precluding free riding would require competitors to enter two markets simultaneously." (Wu Mot., at 6)  When a "company can charge for its services, there is no legitimate need for artificially inflated prices." (Wu Reply, at 11–12); <u>see</u> <u>Chicago Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n</u>, 961 F.2d 667, 675 (7th Cir. 1992)).

Innovative relies on <u>Kodak</u> for this proposition. (Wu Mot., at 6–7.)  However, the Supreme Court did not categorically reject procompetitive justifications in tying arrangements.  In <u>Kodak</u>, the Court noted that free-riding justification may be applicable if "the ISO's would have to be relying on Kodak's investment in the service market." 504 U.S. at 485 n.33.  Dr. Wu does not opine that Innovative is free-riding because it has failed to enter the clinical support services market, but rather that it is "relying on [Biosense's] investment in the market. (Wu Opp'n, at 12–13; 2021 Wu Report ¶ 58.)  Thus, a procompetitive justification may be applicable here.

Moreover, while it may "often" be the case that courts reject procompetitive justifications, it has never been categorically rejected in tying jurisprudence.  <u>See</u> Areeda & Hovenkamp, Antitrust Law ¶ 340c2.  Both parties cite to Hovenkamp's leading antitrust treatise on the issue:

> "Free rider defenses should be rejected when the firm that controls the input
> is able to sell, rather than give away, the good or service that is subject to
> the free ride.  For example, in the context of vertical restraints, free riding is
> a problem because the typical dealer is not in a position to charge customers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | Case No. 8:19-cv-01984-JVS-KE | Date | April 22, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

separately for the point-of-sale services that make the full-service dealership valuable to suppliers and consumers. Rather, the cost of the services is built into the full-service dealer's package price. However, if the dealer could price the service and the product separately, then free riding would not be a problem."

Id. ¶ 2223b3. While Innovative argues that the procompetitive justifications should be excluded because Biosense can charge customers separately for the service and the good (Wu Reply, at 12, 16–17), Biosense argues the opposite— that Biosense is not in a position to do so (Wu Opp'n, at 14). The Court recognizes that Biosense disputes even the basic premise that catheters and clinical support are distinct products and markets, a key issue in this case. (Id. at 10.) Consequently, Innovative contends that although Biosense claims that it "would not" charge for clinical support, it certainly "could." (Wu Reply, at 17.) Contrarily, Dr. Wu reports that it "could not" because free clinical support is part of its competitive product offering and necessary to meet customer demand. (2021 Wu Report ¶¶ 134–37.) Again, the issue stems from the different stories of Biosense's allegedly anticompetitive conduct propounded by the parties. Whether Biosense could have charged for its clinical support hinges on a factual determinations, which are better left to the jury. (Wu Opp'n, at 14.) This conclusion is further supported by the Ninth's Circuit holding "Biosense is free to press this [free-riding] contention at trial." Innovative Health, 2024 WL 62948, at *4.

In conclusion, the Court finds no reliability issues under Rule 702 to exclude Wu's free-riding justification. For the foregoing reasons, the Court **DENIES** the motion.

## IV. CONCLUSION

For the foregoing reasons, the Court makes the following ruling:

- **DENIES** Biosense's Daubert Motion (Dkt. Nos. 318, 341).

- **DENIES** Innovative's Daubert Motion (Dkt. Nos. 334, 348).

**IT IS SO ORDERED.**