| | |
|---|---|
| KARLA KRAFT<br>State Bar No. 205530<br>kkraft@stradlinglaw.com<br>STRADLING YOCCA CARLSON & RAUTH LLP<br>660 Newport Center Drive, Suite 1600<br>Newport Beach, CA 92660-6422<br>Telephone: (949) 725-4000 | WILLIAM F. CAVANAUGH, JR.<br>State Bar No. 133461<br>wfcavanaugh@pbwt.com<br>PATTERSON BELKNAP WEBB AND TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 336-2000<br><br>MUHAMMAD U. FARIDI<br>(Admitted *Pro Hac Vice*)<br>LINKLATERS LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Telephone: (212) 903-9000<br><br>Attorneys for Defendant<br>BIOSENSE WEBSTER, INC. |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>   Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>   Defendant. | CASE NO. 8:19-cv-01984-JVS-KES<br><br>Hon. James V. Selna<br><br>**DEFENDANT BIOSENSE WEBSTER, INC.'S TRIAL BRIEF**<br><br>Action Filed: October 18, 2019<br>Trial Date: May 1, 2025 |

DEFENDANT'S TRIAL BRIEF

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 4

II. BWI'S RESPONSES TO IH'S CONTENTIONS OF FACT AND LAW ......................................................................................................... 7

    A. BWI Is Entitled to the Business Justification Defense ............... 7

    B. BWI Has No Duty to Deal With Its Competitor ....................... 10

    C. IH Must Define Relevant Antitrust Markets Regardless of Direct Proof of Market Power ................................................... 12

    D. IH Must Prove That Customers Were Locked-In to Support Its Alleged Single-Brand Aftermarkets ......................................... 14

    E. IH Cannot Prove Antitrust Injury or Damages ......................... 15

III. CONCLUSION ....................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,
   592 F.3d 991 (9th Cir. 2010) .......................................................... 12

*Apple, Inc. v. Psystar Corp.*,
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) ........................................ 15

*Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990) ........................................................................ 16

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012) ........................................................ 14

*County of Tuolumne v. Sonora Community Hosp.*,
   236 F.3d 1148 (9th Cir. 2001) ........................................................ 10

*Deligiannis v. City of Anaheim*,
   No. 06-cv-720DOC(JC), 2010 WL 1444538 (C.D. Cal. Mar. 2, 2010) ................................................................................................. 8

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992) ................................................................ 14, 16

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ............................................. 10, 15, 16

*Epic Games v. Google*,
   Case No. 20-cv-05671 (N.D. Cal. 2025) ................................ 10, 12

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ................................................... 12, 13

*Innovative Health, LLC v. Biosense Webster, Inc.*,
   No. 22-55413, 2024 WL 62948 (9th Cir. Jan. 5, 2024) .......... 13, 15

*Lambrix v. Tesla*,
   737 F. Supp. 3d 822 (N.D. Cal. 2024) ..................................... 15, 16

*Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,
  833 F.2d 1342 (9th Cir. 1987) ............................................. 9, 10, 11

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
  513 F.3d 1038 (9th Cir. 2008) ................................................. 14, 16

*Ohio v. Am. Express Co.*,
  585 U.S. 529 (2018) ................................................................. 13, 14

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
  32 F.4th 824 (9th Cir. 2022) .......................................................... 13

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) .......................................................... 14

*Siegel v. Chicken Delight, Inc.*,
  448 F.2d 43 (9th Cir. 1971) ...................................................... 17, 18

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ........................................................................ 14

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
  No. 3:21-cv-03496-AMO (N.D. Cal.) ..................................... 10, 16

*Tarantino v. Syputa*,
  270 F. App'x 675 (9th Cir. 2008) ..................................................... 8

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
  875 F.2d 1369 (9th Cir. 1989) ........................................................ 14

*U.S. Steel Corp. v. Fortner Enterprises, Inc.*,
  429 U.S. 610 (1977) ........................................................................ 18

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919) ........................................................................ 12

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ........................................................................ 12

Pursuant to Civil Local Rule 16-10, Defendant Biosense Webster, Inc. ("BWI") submits this brief in response to Plaintiff Innovative Health LLC's ("IH") Memorandum of Contentions of Fact and Law ("Mem."), filed on April 7, 2025. *See* Dkt. 423.

## I. INTRODUCTION

In this antitrust case, IH alleges that BWI unlawfully ties free clinical support services for its customers to the purchase of BWI's cardiac mapping catheters. But as BWI will show at trial, there is no harm to competition (as opposed to harm to IH, BWI's competitor) from BWI's policies that protect the integrity of BWI's investment in its own technology and in the free clinical service it provides to its own customers. Ultimately, IH will ask the jury—and the Court—to require BWI to provide free services to hospitals in order to advance the sale of IH's reprocessed catheters instead of BWI's mapping catheters. That is not what the antitrust laws require, and indeed, the evidence will show that BWI's policy is both consistent with a highly competitive market for integrated cardiac mapping systems, and well-supported by legitimate commercial justifications.

BWI manufactures and sells the CARTO 3: an integrated cardiac mapping system to diagnose and treat heart arrhythmias. The CARTO 3 system consists of (a) the CARTO 3 cardiac mapping computer; (b) the software installed and periodically updated on the CARTO 3 computer; and (c) the catheters that connect to the computer hardware to allow physicians to map and treat arrhythmias. BWI's CARTO 3 cardiac mapping system competes with other such systems in the market manufactured by, among others, Abbott, Boston Scientific, and Medtronic.

BWI and each of its competitors provides clinical support for customers of its respective system. That clinical support, which consists of continuous on-site service from trained personnel for customers of each manufacturer's system, is free and no manufacturer has ever sold clinical support as a separate service. The substantial costs associated with that clinical support is covered by the sale of a manufacturer's catheters at issue here.

IH is a company founded in 2015 that sells used electrophysiology catheters. IH collects used catheters from hospitals, cleans and sterilizes them (*i.e.*, a procedure called "reprocessing"), and sells them back to hospitals at a discount from the price of a new catheter. IH has received 510(k) clearance from the FDA to reprocess the catheters at issue in this litigation (Lasso Nav, Pentaray, and SoundStar), as well as certain other catheters manufactured by BWI and its competitors. To obtain 510(k) clearance, IH need only demonstrate that its reprocessed catheters are "substantially equivalent" to the original equipment manufacturer ("OEM") devices. The reprocessed catheters do not need to meet the specifications, testing criteria, or standards of the OEM products. In fact, IH does not know the specifications and testing criteria of any OEM device, including the BWI catheters it reprocesses, due to the proprietary and highly confidential nature of such information. Nor does BWI know IH's reprocessing specifications and testing criteria.

SterilMed, a company affiliated with BWI, also sells reprocessed versions of BWI's Lasso Nav, Pentaray, and SoundStar catheters. In contrast to IH, SterilMed has access to BWI's specifications and testing criteria, and its reprocessed catheters are recalibrated on BWI's proprietary calibration tools in the same way that BWI's catheters are calibrated for use when they are originally manufactured. SterilMed differentiates its reprocessed BWI catheters

from other reprocessors' versions of those catheters by ensuring the catheters meet the one-millimeter location accuracy guarantee and 94% image fidelity of BWI's OEM catheters. No other reprocessor, including IH, can represent that its products meet BWI's OEM specifications.

Years before IH was founded, BWI created and began to implement what it refers to as its clinical support policy. The policy provides that BWI Clinical Account Specialists ("CASs")—the BWI employees who provide clinical support—can only create maps in procedures where either a new BWI sensor-enabled catheter or a BWI sensor-enabled catheter reprocessed by SterilMed is used; CASs may not support procedures by creating the images that appear on the CARTO3 machine using BWI's mapping and ultrasound catheters reprocessed by a third party. The policy does not apply to non-sensor-enabled catheters that do not interact with CARTO3's software, nor does it prevent any third party from providing support on the CARTO 3 system for its own customers who have purchased that third party's reprocessed catheter. Nonetheless, instead of investing in its own clinical support program, IH wants to free ride on BWI's ongoing investments to avoid increasing its own operating costs and to maximize its high profit margin.

Besides the clinical support policy, IH alleges that BWI deployed a custom-encrypted chip in its sensor-enabled catheters solely as an anti-reprocessing technology. *See* Mem. at 6. The chip contains important information that identifies the catheter as a BWI catheter, shows how many times a catheter has been reprocessed, and shows the initial calibration of the OEM and any recalibration of the catheter done by Sterilmed. The evidence will show that BWI installed the microchip to protect the integrity of its sensor-based catheters. Moreover, while IH notes that it would have blocked reprocessors

-6-
DEFENDANT'S TRIAL BRIEF

from reprogramming the information in the BWI microchip, IH and another reprocessor were able to continue to reprocess BWI's catheters containing this microchip.

Furthermore, IH alleges that BWI collects used catheters "to deprive reprocessors of a supply of used catheters for reprocessing." *Id.* Not so. BWI collects used catheters so that SterilMed can reprocess them. All reprocessing companies, including IH, have a similar collection practice. This conduct is simply not anticompetitive, but rather supports BWI's own business goals for itself and its sister company, SterilMed. The evidence will show that IH was able to recover as many used catheters as it needed. Indeed, IH seeks no damages associated with BWI's collection efforts.

On April 7, 2025, IH filed its Memorandum of Contentions of Fact and Law, raising several disputed issues that will bear on the upcoming trial. This trial brief responds to a number of those issues.

## II. BWI'S RESPONSES TO IH'S CONTENTIONS OF FACT AND LAW

### A. BWI Is Entitled to the Business Justification Defense

IH's claim that BWI has "abandoned" the business justification defense is baseless. Mem. at 22. BWI has consistently asserted the business justification defense since the beginning of this litigation, and the business justification defense remains a key dispute between the parties today.

In its Answer to IH's operative complaint, BWI specifically alleged as its "Second Defense" that "IH's claims are barred in whole or in part because Biosense's alleged conduct did not unreasonably restrain trade and was lawful, procompetitive and based on ***legitimate business and economic justifications***." Dkt. 78 (Answer) at 16. IH claims that BWI "abandoned" this affirmative

defense by not listing it separately from the defense that BWI's conduct "did not unreasonably restrain trade and was lawful" and "procompetitive." IH's claim is without basis. A party need not list an affirmative defense separately in its Answer to provide plaintiff with sufficient notice that it intends to raise that defense. *See Tarantino v. Syputa*, 270 F. App'x 675, 677 (9th Cir. 2008) (applying sufficient notice standard to defendants' answer); *Deligiannis v. City of Anaheim*, No. 06-cv-720DOC(JC), 2010 WL 1444538, at *12 n.20 (C.D. Cal. Mar. 2, 2010) (finding defendants' assertion of good faith in their Answer—though not listed as a separate affirmative defense—sufficient to put plaintiff on notice). Furthermore, this argument makes no sense. BWI would not have included the phrase "legitimate business and economic justifications" if it simply means the same thing as the first part of BWI's second defense. Although many, if not all, of BWI's business justifications are procompetitive, BWI did not abandon the business justification defense by not listing it with a separate number in its list of defenses. BWI clearly stated the defense in its answer, and IH has been on notice of BWI's business justification since then, if not before.

BWI has also pursued the business justification defense throughout this case. Indeed, the parties disputed this issue at summary judgment. In its motion for summary judgment, BWI argued that business justification is a defense under both "a *per se* tie or . . . the rule of reason." Dkt. 139 at 29. BWI maintained the same position in the parties' recent exchanges of jury instructions for trial. *See* Dkt. 441 at 110 (Proposed Jury Instruction 28B).

IH also claims that the business justification defense is one and the same as the "procompetitive justifications" that are part of the Rule of Reason inquiry. Mem. at 13. But IH's reading of the law is flat wrong. As argued in detail in

-8-
DEFENDANT'S TRIAL BRIEF

the parties' jury instructions packet, the Ninth Circuit clearly endorsed the business justification defense in *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1349 (9th Cir. 1987), where the court held that "[a] tie-in does not violate the antitrust laws 'if implemented for a legitimate purpose and if no less restrictive alternative is available.'" Specifically, the Ninth Circuit upheld business justifications as an "affirmative defense" to tying claims under both *per se* and Rule of Reason analysis in affirming the district court's use of the following jury instruction:

> If you find that the tying agreements in this case were unlawful either because they were *per se* violations of the Sherman Act or **because they were unreasonable under the Rule of Reason test**, you **must then determine** whether they were warranted by a business justification.

*Id.* at 1350 n.7 (9th Cir. 1987) (emphasis added). That is, the Ninth Circuit made clear that, **even if certain conduct may be unreasonable under the Rule of Reason**, business justifications remain a complete defense to liability.

Other courts in this Circuit have also recognized a business justification defense separate from the "procompetitive benefits" step in the Rule of Reason framework. For example, in *Epic Games v. Google*, the district court recognized business justification as a separate defense to plaintiff's tying claim under a Rule of Reason analysis and included in its final jury instruction a "Tying Under the Rule of Reason – Business Justification Defense" instruction, in addition to instructions on the Rule of Reason analysis. *See* Case No. 20-cv-05671 (N.D. Cal.), Dkt. 592 at 48-49 (Instruction 38). And even more recently, on January 27, 2025, the court in *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.* also charged the jury with an instruction on the business justification defense to plaintiff's tying claim under the Rule of Reason test because "the business justification defense applies only if plaintiff has proven all of the elements of a

-9-
DEFENDANT'S TRIAL BRIEF

tying claim" and "it's clear that this instruction is to be given even in a rule of reason case." *See* Ex. 1 (Transcript of Proceedings, Case No. 21-cv-3496 (N.D. Cal. Jan. 27, 2025)) at 2474:1-7.

IH's reliance on cases such as *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) and *County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148 (9th Cir. 2001), in support of its contrary position on this point is misplaced. Dkt. 441 at 112. In those cases, the plaintiffs did not succeed in proving their tying claims under the Rule of Reason framework, so there was no need for the court to reach the next step—defendant's affirmative defense. *Mozart*, on the other hand, reached the business justification defense because the jury found defendant liable under both the *per se* test and the Rule of Reason test.[1] *See* 833 F.2d at 1344.

BWI is entitled to prove the affirmative defense of business justification.

### B. BWI Has No Duty to Deal With Its Competitor.

IH's argument that the "no-duty-to-deal" doctrine "is . . . inapplicable here" is likewise unfounded. *See* Mem. at 17. Contrary to IH's contention that it "is not demanding that [BWI] deal with it," *id.*, IH's own submissions and testimony from its witnesses make plain that IH is seeking to compel BWI to deal with it by providing clinical support to IH's catheters. When Rick Ferreira, IH's CEO, was asked "in this lawsuit, what do you want to get from Biosense Webster," he readily admitted that "I want them to . . . support the cases." Ex. 2

---

[1] In its objection to BWI's proposed jury instruction No. 28B, IH claims that "*Mozart* concerned only a *per se* tying claim." Dkt. 441 at 113. That is not correct. In *Mozart*, plaintiff's tying claim went to the jury under both a *per se* and a Rule of Reason theory. Indeed, "[t]he jury returned a special verdict, finding that [defendant] had violated the Sherman Act § 1 under **both the per se test and the Rule of Reason Test,** but that [defendant] had a business justification for its tying arrangement." *Mozart*, 833 F.2d at 1344 (emphasis added).

(Ferreira Tr. at 113:22-114:2); *see also* Mem. at 6 ("[BWI's] CARTO 3 clinical account specialists ***refuse to work on procedures*** involving any sensor-enabled catheter sold by anyone other than [BWI] or SterilMed." (emphasis added)); Dkt. 59 (Corrected Second Amended Complaint) ¶¶ 19, 37 (alleging that BWI violates the antitrust laws by "implement[ing] a written policy of ***refusing to provide case coverage*** by its clinical account specialists in support of physicians at hospitals on cases with [BWI] high-density mapping and ultrasound catheters reprocessed by competitors" (emphasis added)).

Because IH seeks to prevent BWI from "freely . . . exercis[ing] [its] own independent discretion as to parties with whom [it] will deal," BWI is entitled to invoke the no-duty-to-deal doctrine. *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *see also Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004); *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1002 (9th Cir. 2010). And, indeed, the district court in *Epic Games v. Google* agreed that a no-duty-to-deal instruction was warranted where plaintiff similarly argued that the defendant "refuse[d] to distribute third party app stores on Google play." *See* Case No. 20-cv-05671 (N.D. Cal), Dkt. 592 at 33 (Instruction 24); Dkt. 554 at 102-04.

IH's argument that the "no-duty-to-deal defense does not apply to tying arrangements" similarly misses the point. Dkt. 441 at 192. In this litigation, IH not only asserts a tying claim under Section 1 of the Sherman Act, but also a monopolization claim and an attempted monopolization claim under Section 2 of the Sherman Act. Without question, the no-duty-to-deal defense applies to IH's Section 2 claims, which rely on the same conduct as its Section 1 tying

-11-
DEFENDANT'S TRIAL BRIEF

claim. *See Trinko*, 540 U.S. at 409. IH has not otherwise identified any legal basis for why the doctrine is not be applicable here.[2]

### C. IH Must Define Relevant Antitrust Markets Regardless of Direct Proof of Market Power

IH cannot avoid one of the basic tenets of antitrust law: that it must define a market to succeed on its claims. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). The Ninth Circuit determined in this case that—in light of other grounds for remand—it did not need to "address [IH's] argument that it produced sufficient direct evidence of [BWI's] market power such that it need not define a market." *Innovative Health, LLC v. Biosense Webster, Inc.*, No. 22-55413, 2024 WL 62948, at *4 (9th Cir. Jan. 5, 2024). IH distorts the Ninth Circuit's declining to reach this argument to suggest that the Ninth Circuit "le[ft] . . . open" the question of "[w]hether it is necessary to define a relevant antitrust market where there is direct proof of market power." Mem. at 20-21. The Ninth Circuit did no such thing.

As the Ninth Circuit has made clear, "[a] threshold step in any antitrust case is to accurately define the relevant market, which refers to 'the area of effective competition.'" *Qualcomm*, 969 F.3d at 992 (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018)); *see also PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 838 n.7 (9th Cir. 2022) ("In *Amex*, the Supreme Court

---

[2] There is only "one, limited exception" to the rule that there is no antitrust duty to deal," which applied only when a company (1) "unilaterally terminates a voluntary and profitable course of dealing," (2) "the only conceivable rationale or purpose is to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition," and (3) "the refusal to deal involves products that the defendant already sells in the existing market to other similarly situated customers." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993-94 (9th Cir. 2020) (citations and alterations omitted). None of those elements are present here.

held that the plaintiffs were required to define the relevant market even though they relied on direct evidence of an anticompetitive impact."). When conducting an analysis under the Rule of Reason, courts must undertake "a fact-specific assessment of market power and market structure to assess [an alleged] restraint's actual effect on competition." *Am. Express*, 585 U.S. at 541 (quotation marks and alterations omitted); *see also id.* at 543 ("[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market" because "[w]ithout a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition." (quotation marks omitted)).

To succeed on its tying claims, IH must prove relevant markets—not just market power—regardless of whether it uses direct or circumstantial evidence to do so. *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008). Indeed, because tying arrangements are vertical agreements, *see Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199-1200 (9th Cir. 2012), a court is unable to evaluate a defendant's market power without "first defin[ing] the relevant market." *Am. Express*, 585 U.S. at 543 n.7. Proof of relevant markets is similarly required for IH's monopolization claims. *See Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989) (holding that "defining the relevant market is indispensable to a monopolization claim"); *see also Newcal*, 513 F.3d at 1044 n.3; *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 457, 459 (1993).

In sum, to the extent IH intends to rely on purported "direct evidence" of anticompetitive harms, any such evidence does not obviate IH's obligation to define the relevant markets. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.15, 482 (1992) (noting that "market definition generally

determines the result of the case" and conducting a factual inquiry to determine "proper market definition"); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1437 n.6 (9th Cir. 1995) (explaining that "assuming the existence of . . . market power before defining the relevant market" is "a method of analysis that defies logic").

### D. IH Must Prove That Customers Were Locked-In to Support Its Alleged Single-Brand Aftermarkets

In its memorandum, IH refers to an issue previously raised in the parties' motion *in limine* briefings and jury instructions relating to proving single-brand aftermarkets. *See* Mem. at 16. IH argues that where there is a showing of market power in the foremarket, there is no need to show "lock-in" factors to establish monopolization of the alleged single-brand aftermarkets. Dkt. 441 at 36-37. This is not the law.

As this Court and others in this Circuit have recognized, single-brand aftermarkets are only possible "in rare and unforeseen circumstances." Dkt. 175 (Summary Judgment Order) at 10; *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) ("In theory, it may be possible that, in rare and unforeseen circumstances, a relevant market may consist of only one brand of a product.").

To prove such rare single-brand aftermarkets, the Ninth Circuit—including in this case—is clear that IH must prove the following:

> (1) the challenged aftermarket restrictions are not generally known when consumers make their foremarket purchase; (2) significant information costs prevent accurate lifecycle pricing; (3) significant monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market.

-14-
DEFENDANT'S TRIAL BRIEF

*Innovative Health*, 2024 WL 62948, at *2 (quoting *Epic Games*, 67 F.4th at 977).

IH relies heavily on a district court case, *Lambrix v. Tesla*, 737 F. Supp. 3d 822 (N.D. Cal. 2024), in support of its position. But *Lambrix* is neither binding on this court nor is it persuasive because it flatly contradicts controlling Ninth Circuit law, as well as the Supreme Court's decision in *Kodak*.[3] Indeed, just a few months ago, a court in the Northern District of California in *Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*, No. 3:21-cv-03496-AMO (N.D. Cal.), held that *Lambrix* conflicts with *Epic Games* and other controlling Ninth Circuit law, *see* Dkt. 374 at 21-22 (January 28, 2025 Transcript of Proceedings), and held that "***a single-brand aftermarket is only available in cases where the plaintiff shows satisfaction of the four-part test in Epic.***" *Id.* at 22-23 (emphasis added). As a consequence, the court ordered that the four *Epic* factors must be included in the final jury instructions. *Id.* This Court should do the same to ensure that IH's burden before the jury is consistent with controlling law.

### E.  IH Cannot Prove Antitrust Injury or Damages

IH cannot prove antitrust injury because it performed no analysis to assess the separate values of clinical support, on the one hand, and catheters, on the other, to determine if the price charged by BWI exceeds that amount.

Antitrust injury requires a plaintiff to prove that it is "adversely affected by an ***anticompetitive*** aspect of the defendant's conduct." *Atl. Richfield Co. v.*

---

[3] Nor does *Lambrix* reflect a change in the law. The *Lambrix* court relied entirely on its own, unique interpretation of *Kodak*, a case decided thirty-three years ago, along with references drawn from *Newcal* and *Epic*. BWI fully argued this point in its motion *in limine* to exclude evidence and argument based on new theories, which remains pending. *See* Dkt. 344. BWI incorporates and relies on all of those arguments here.

*USA Petroleum Co.*, 495 U.S. 328, 339 (1990) (citation omitted). Courts should be particularly concerned with claims of antitrust injury in cases such as this one brought by competitors that may be harmed by a defendant's "*procompetitive* impact on the market." *Id.* at 345. Here, IH, a competitor of BWI, purportedly intends to rely on "[e]xpert testimony" to show that "Biosense's clinical support policy has caused substantial injury to Innovative's business." Mem. at 11. But IH's expert disclosures cannot support a finding of antitrust injury or related damages.

      IH is asserting injury from an alleged tie, but its expert disclosures fail to provide any basis for disentangling the price of the alleged tying product (clinical support) and the alleged tied products (various catheters). Courts have long held that proving antitrust injury and associated damages in such circumstances requires a plaintiff to show "the cost or value of the [tying and tied] products involved, free from the unlawful arrangement." *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52 (9th Cir. 1971). In *Siegel*, a franchise case, the franchisor licensed its name, trademarks, and method of operations to franchisees nominally for free but required those franchisees to purchase certain equipment and products from the franchisor. *Id.* at 47. The franchisees asserted that the equipment and products were sold at supracompetitive prices and prevailed on that issue at summary judgment. *Id.* at 52. On appeal, the Ninth Circuit reversed. It rejected the district court's finding that the franchisees could prevail simply by showing that prices for the equipment and products were supracompetitive because the license to the franchisor's name, trademarks, and methods were provided free of charge. Instead, the Ninth Circuit observed that the price paid for the equipment and products was "full compensation . . . for both those items and the franchise licenses." *Id.* Accordingly, on remand, the

franchisees needed to show "the value of both tying and tied products, free from the tying arrangement." *Id.* at 53. The Supreme Court has similarly held that, absent proof of the separate prices of the products free from the alleged tie, a court cannot exclude the possibility that "the entire package was equal to, or below, a competitive price." *U.S. Steel Corp. v. Fortner Enterprises, Inc.*, 429 U.S. 610, 618 (1977).

During the April 14 pretrial conference, IH mischaracterized *Siegel v. Chicken Delight, Inc.*, asserting that it rejected the aforementioned principle that a plaintiff must show the value of the both tying and tied products absent the alleged tie. *See* Ex. 3 (April 14, 2025 Transcript of Proceeding) at 39-40. As detailed above, that is clearly not the case. Though IH insists that BWI's conduct has caused it competitive harm, its failure to assess the separate value of clinical support and the relevant catheters precludes its ability to prove antitrust injury.

## III.  CONCLUSION

For the foregoing reasons, the Court should (1) instruct the jury on BWI's business justification defense, (2) instruct the jury that BWI has no duty to deal with its competitors, (3) require IH to define a relevant antitrust market, (4) require that IH prove all four *Epic* factors to satisfy its burden to prove single-brand aftermarkets, and (5) require that IH prove antitrust injury.

| | | |
|---|---|---|
| DATED: April 24, 2025 | | STRADLING YOCCA CARLSON & RAUTH LLP |

By: */s/ Karla Kraft*
    Karla Kraft

PATTERSON BELKNAP WEBB AND TYLER LLP

By: */s/ William F. Cavanaugh, Jr.*
    William F. Cavanaugh, Jr.

LINKLATERS LLP

By: */s/ Muhammad U. Faridi*
    Muhammad U. Faridi

Attorneys for Defendant
BIOSENSE WEBSTER, INC.