```
               UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
               SOUTHERN DIVISION - SANTA ANA



INNOVATIVE HEALTH, LLC,       ) CASE NO: 8:19-cv-01984-JVS-KESx
                              )
              Plaintiff,      )            CIVIL
                              )
     vs.                      )       Santa Ana, California
                              )
BIOSENSE WEBSTER, INC,        )       Thursday, April 24, 2025
                              )
              Defendant.      )     (9:32 a.m. to 10:30 a.m.)


               INFORMAL DISCOVERY CONFERENCE

          BEFORE THE HONORABLE KAREN E. SCOTT,
               UNITED STATES MAGISTRATE JUDGE



APPEARANCES:              SEE PAGE 2


Court Reporter:           Recorded; CourtSmart


Courtroom Deputy:         Jazmin Dorado


Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES**</u>:


For Plaintiff:                 MATTHEW D. READE, ESQ.
                               Kellogg Hansen Todd Figel & Frederick
                               1615 M. Street NW
                               Suite 400
                               Washington, DC 20036
                               202-326-7913


For Defendant:                 KARLA J. KRAFT, ESQ.
                               Stradling Yocca Carlson & Rauth
                               660 Newport Center Dr.
                               Suite 1600
                               Newport Beach, CA 92660
                               949-725-4000

                               ALEJANDRO H. CRUZ, ESQ.
                               Patterson Belknap Webb & Tyler
                               1133 Avenue of the Americas
                               New York, NY 10036
                               212-336-2000

| | |
|---|---|
| 1 | **Santa Ana, California; Thursday, April 24, 2025; 9:32 a.m.** |
| 2 | **(Call to Order)** |
| 3 | **THE COURT:**  Good morning, this is Judge Scott joining |
| 4 | the call. |
| 5 | **THE CLERK:**  Good morning, Your Honor.  This is |
| 6 | Jasmine Dorado.  We are now on the record on Case No. 8:19-cv- |
| 7 | 1984-JVS-KES, Innovative Health LLC vs. Biosense Webster, |
| 8 | Incorporated.  Magistrate Judge Karen E. Scott |
| 9 | presiding.  Counsel, please go ahead and state your appearances |
| 10 | for the record. |
| 11 | **MR. READE:**  Matthew Reade, on behalf of Innovative |
| 12 | Health, with the firm Kellogg Hansen. |
| 13 | **MR. CRUZ:**  Alejandro Cruz, from the firm Patterson |
| 14 | Belknap Webb & Tyler, for Biosense Webster. |
| 15 | **MS. KRAFT:**  Karla Kraft of Stradling, Yocca, Carlson, |
| 16 | and Rauth, also on behalf of Biosense Webster. |
| 17 | **THE COURT:**  Good morning, counsel.  We are here to |
| 18 | resolve two different disputes over documents to be used as |
| 19 | trial exhibits in the upcoming trial.  One has to do with a |
| 20 | challenge to certain privileged redactions that defendant |
| 21 | Biosense has made, and Innovative Health is requesting an in- |
| 22 | camera review of the unredacted document in order to have the |
| 23 | Court determine whether the privileged redactions are |
| 24 | appropriate. |
| 25 | The second dispute is a request by Innovative Health |

4

1    to redact what it refers to as shocking language from various

2    proposed trial exhibits.  There were four examples provided to

3    the Court, along with a request that the parties cooperate in

4    good faith to redact similar language from other documents that

5    they might wish to use as trial exhibits.

6         The Court would like to address the shocking language

7    motion first.  The Court received the briefing from the parties

8    on that.  I believe I've got the defendant's brief at Docket

9    457.  I know that the plaintiffs filed their initial brief on

10   that as well, which the Court has reviewed.

11        I did take a look at the examples that were provided,

12   and the language being objected to appears for the most part to

13   be profanity being expressed in business-related emails to show

14   that people are upset about decisions that various people have

15   made.  It's being used to communicate strong emotions.  There

16   was one example, and I'm not sure I have the Bates number in

17   front of me, but there was one example, I think it was document

18   IH-31306, which appears to be on the docket at 52-2 at page 2.

19        There's a little bit difference in that it appears to

20   have a race-related insult in it.  And I'd be happy to hear

21   from the parties.  I understand their position about the garden

22   variety cursing, if we can characterize it that way, but

23   whether they feel that this document, the race-related insult,

24   should be analyzed in any different way or presents any

25   different sort of concern that the Court should weigh in

5

1  considering the request to redact this as evidence with

2  prohibitive value that is substantially outweighed by unfair

3  prejudice, the possibility of creating confusion or misleading

4  the jury or creating delay, which is the standard the Court

5  needs to apply under Rule 403.

6          So, defendant, since you're opposing this, do you

7  have any comments with regard to that particular example?

8          **MR. CRUZ:**  Absolutely, Judge Scott.  Thank you very

9  much.  This is Alejandro Cruz.

10          So I think it goes without saying, I agree and think

11  that the issues with the other documents you mentioned in terms

12  of profanity, I think we should put those to the side.  I tend

13  to think that's an easy call, and I agree with your reasoning.

14          I think the document that the Court is referring to,

15  the Exhibit 2, and just to be clear, Judge Scott, where we're

16  both looking at the top line, right, like they've (inaudible)

17  it, because like they've discussed it.  So I think no doubt the

18  language there is a little bit different and no doubt

19  uncomfortable for Innovative.  I think the issue here, though,

20  is one that even on the sort of precedent that Innovative

21  purports to give us, in far more extreme circumstances, the

22  only thing you see being redacted from the jury are quite

23  extreme circumstances of outright racial slurs and really sort

24  of on the extremities of that.

25          And I think there's even an example.  One of the

6

1    cases, the case that we noted in our letter, the death penalty

2    case that Innovative cited, which is obviously quite different

3    and far more extreme, and I don't think very useful here, but I

4    think as a contrast you see there that there's some very

5    extreme language that stayed in the documents regarding threats

6    of sexual assault, regarding threats of physical violence on

7    someone.  So I think to the extent that this document is a

8    little different in kind in terms of the type of language that

9    we're talking about, qualitatively, I think what jurors will

10   see here is, yes, there's a tinge to that first line, but

11   there's no slur in this document.  And I think, frankly, to the

12   extent that this reflects, even in the language that

13   Mr. Einwechter is using, reflects the way that it -- reflects

14   the thought process and how Innovative is dealing with its

15   board members, that's very relevant, it's very probative, and

16   this whole document with respect to how Innovative's board

17   works and the business direction it's taking is one that goes

18   straight to causation.

19            On the other hand, when it comes to unfair prejudice

20   and something that will confuse the juror, I think it's quite

21   notable, Judge Scott, that up until this time, Innovative has

22   been steadfast in its commitment to removing redactions and has

23   been quite clear in its prior motions that they think

24   redactions in documents will confuse the jury and will create

25   the opportunity to speculate.  And I think especially when

1   you're talking about a document like this, where there are

2   board dynamics at stake and sort of more nuanced business

3   issues at stake, removing content in the middle of the sentence

4   has a very high degree of risk of confusing the jury if we

5   remove it.

6          And frankly, the prejudice that would accrue, we

7   think, is pretty low and doesn't get to that standard of

8   unfair, and I think it's important to keep in mind that when

9   we're talking unfair prejudice, I'm sure as Your Honor is

10  aware, so I won't belabor the point -- when we're talking about

11  unfair prejudice, we're talking about something that will move

12  the jury to take action on emotional grounds, something other

13  than a legitimate factual basis.  And I think for the reasons

14  I've laid out, this document, even if it is a little bit

15  different from the rest, doesn't get to that level.

16         And I say that, you know, to be clear, Judge Scott, I

17  say that without any attempt to condone or in any way endorse

18  the type of language that is in here.  But the jury in this

19  case has a right, and I think the parties frankly, both

20  parties, have a right to have the jury see the whole context

21  for these documents, short of the type of extreme examples that

22  you see in the few cases that are out there on this point.

23         **THE COURT:**  Thank you.  Plaintiff, do you want to

24  respond to that?  And specifically, can you tell me, is the

25  author of this email designated to be a witness?

1          **MR. READE:**  Only by deposition, Your Honor.  And I

2    would really resist what my friend on the other side, you know,

3    characterizes the relevance of this email.  I mean, as an

4    initial matter, I can't conceive of how the language that we've

5    proposed to redact here, which is, you know, the most

6    charitable description would be it is a secondhand

7    psychoanalysis of a board member's personality, is somehow

8    relevant to the corporate performance of Innovative Health.

9          Biosense has ample evidence in the record, from

10   financial statements, to board presentations, and the rest of

11   the very document presented here, that it may be used for that

12   purpose, and that simply don't carry the same risk of unfair

13   prejudice.  And I think my friend on the other side actually

14   put his finger on the risk here, which is that the jury may

15   well read this language and have an emotional reaction to

16   it that causes the jury to view the witnesses in a particular

17   way that is completely apart from the merits of the case, of

18   this antitrust case, from Innovative Health's actual corporate

19   performance, and anything having to do with causation.

20          So I really don't see how this language could

21   possibly be relevant to those issues, and I understand that

22   Mr. Cruz is making that argument, but I just don't think it's

23   defensible from the language that's here.

24          **THE COURT:**  Let me just clarify.  When you said he

25   was going to be a witness only by deposition, what do you mean

1    by that?

2         **MR. READE:**  Mr. Einrechter is not going to be live at

3    trial, is my understanding.  So he is only going to be shown to

4    the jury by deposition, and so to the extent that this language

5    comes into the record, Mr. Einrechter won't have any

6    opportunity to address it or explain it, and it would only come

7    in with respect to other witnesses being shown the document,

8    for example, and sort of being asked what they think of that

9    language, which, again, is not material to what counsel has

10   described as being the relevance of the underlying

11   document, which of course the rest of which is unredacted.

12        **THE COURT:**  Was he asked about this at his

13   deposition?

14        **MR. READE:**  I don't recall him being asked about this

15   at his deposition.

16        **THE COURT:**  All right.  So here's what the Court is

17   going to do with regard to the shocking language motion.  With

18   regard to the use of the F word and other, I'll call them

19   garden-variety insults, like calling people idiots or bastards

20   or things of that nature, the court is going to deny the

21   motion.

22        I do agree with the reasoning in the opposition brief

23   submitted at Document 457, that for better or worse, these are

24   the kinds of expressions that jurors are exposed to in everyday

25   life and that they are not likely to have a strong emotional

1    reaction that is prejudicial to either side, and when the court

2    balances that against the possibility that if words are

3    redacted, that they may speculate as to what is missing, and

4    even if instructed not to reach erroneous conclusions about

5    what words were redacted and why, that that seems to carry a

6    higher risk of prejudice.  And so that's the Court's reasoning

7    for denying the motion to that kind of language.

8              With regard to the language in IH-31306, I think that

9    that is a far different type of language that may very well

10   invoke strong emotional reactions in a jury.  I think that

11   while counsel has characterized this as not rising to the level

12   of a racial slur, I think it's pretty difficult to parse

13   between a slur and an insult, and that clearly this language is

14   expressing race-based animus.  I do think that if it's shown to

15   the jury and then creates a need for someone to get up and

16   explain what was meant or try to minimize or explain away the

17   intent behind it, that that is going to open the door to delay

18   on collateral issues that are not related to the litigation.

19             I also do think that this sentence is susceptible to

20   redaction in a way that doesn't violate its meaning or intent.

21    And so rather than authorizing the redaction of the entire

22   sentence, the Court would authorize the redaction of the four

23   words in between "me" and "no doubt."  And as the Court reads

24   the sentence after that, it still conveys that the author is

25   unhappy with the way that things have unfolded and with certain

11

```
 1   decisions that have been made by the people that he is

 2   discussing in the email, and yet it removes the component of

 3   racial animus and the emotion that may be drawn out of jurors

 4   in response to a comment like that.  And so the Court does find

 5   that that satisfies the standard in FRCP 403 just for those

 6   four words.

 7           The Court does not authorize other prospective

 8   redactions.  I agree with the defense argument that if there

 9   was wording in other emails that are being proposed as trial

10   exhibits that was problematic, that those needed to be

11   identified ahead of time so that we could have a specific

12   argument about the specific wording and the context, whether

13   the author is going to testify, all of which might be relevant

14   to a Rule 403 analysis.  And so the Court is not authorizing

15   further redactions.

16           MR. READE:  Your Honor, may I ask one question on

17   that?

18           THE COURT:  Of course.

19           MR. READE:  So the parties have agreed as part of the

20   stipulation that's been going back and forth for trial

21   procedures that part of the process for exchanging, for

22   example, direct examination exhibits ahead of time, will

23   include a discussion of redactions that are proposed to be

24   applied.  And so I think what we were looking for with that

25   second request for relief with respect to meeting and
```

12

1  conferring on these additional redactions in the future was

2  simply to get an understanding of the Court's view on this to

3  guide our discussions in that later phase when we're

4  discussing, you know, specific documents that are actually

5  going to be presented to the jury.

6          And so I just wanted to clarify or confirm with the

7  Court that we can still engage in that process and propose

8  these redactions subject to Judge Selna's or your approval of

9  those redactions and discussion.

10          **MR. CRUZ:**  Your Honor, may I respond to that briefly?

11          **THE COURT:**  You may.

12          **MR. CRUZ:**  Thank you, Judge.  So I think Mr. Reade

13  and I had a disagreement on this.  The order that Mr. Reade is

14  referring to is from an order that Judge Selna issued months

15  ago in February that had to do with lifting redactions that

16  were already in the documents.  And the parties, you know, once

17  the exhibit lists were exchanged to the extent redactions,

18  mostly for non-privilege-based purposes to the extent IH

19  Innovative had an issue with those, we did agree to address

20  those on a document-by-document basis.  There's no question

21  about that, and Judge Selna had that in his order.

22          That order nor any agreement that the parties had

23  never contemplated adding redactions based on Innovative's view

24  of or dislike for unseemly curse words or, you know, as we've

25  been talking about it.  You know, I take Your Honor's ruling

13

1   with respect to this one document as something a little

2   different, but the idea that we're going to -- that to the

3   extent Innovative, I think as Your Honor acknowledged, had an

4   issue with documents on the exhibit list that they've had since

5   early March, those should have been identified well before now,

6   if not now, not less than a week before trial at this point or

7   exactly a week before trial begins.

8         So I don't think we're in a place where we think

9   there's going to be an ongoing dialogue about taking the F word

10  or, you know, anything else out of the documents.

11         **THE COURT:**  Here's the clarification I can offer to

12  the parties.  I'm deciding this dispute based on a particular

13  referral from Judge Selna.  I am not creating a process for

14  reviewing proposed redactions or changing any process that

15  Judge Selna or the parties by their stipulation may have put in

16  place.  If the parties come before Judge Selna with additional

17  disputes and he refers them to me, then I would certainly

18  address them and the parties can take this ruling as an indicia

19  of my views on the topic of shocking language.

20         But it is not my understanding that it's up to me to

21  create a new process or authorize a new process beyond what

22  Judge Selna may have authorized or may have recognized in one

23  of the parties' stipulations.

24         **MR. CRUZ:**  Understood.

25         **MR. READE:**  Thank you, Your Honor.  That's helpful.

14

 1          **MR. CRUZ:**  Thank you.  Your Honor, may I ask one more

 2   question just for clarification?

 3          **THE COURT:**  Of course.

 4          **MR. CRUZ:**  Just since we're doing this on the

 5   record.  I'm sorry, my computer locked up.  Let me just unlock

 6   it.  There we go.

 7          So in terms of the document that will be redacted,

 8   wow, technology is not my friend this morning.  My apologies to

 9   the Court.  There we go.

10          In terms of taking out those four words, Judge, the

11   way the document will now read, I just want to make sure, and

12   this is as much for Mr. Reade as myself and the Court, but the

13   document will now read with the redaction that Your Honor

14   authorized, it will say, "Like Dave Distel said, Lee

15   (redaction) no doubt started to lose his hair early on and was

16   bullied all through school."  Those are the four words that

17   Your Honor was referring to?

18          **THE COURT:**  Yes.

19          **MR. CRUZ:**  Thank you.

20          **THE COURT:**  Let's move on then to the dispute over

21   the privilege redactions.  Those relate to Exhibits 7 through

22   17 that have been filed at Docket 444.  As I understand from

23   the parties' papers, there is no dispute over the legal

24   standard that applies here.  A district court can review

25   materials where there is a disputed claim of privilege if the

15

1   party challenging the privilege shows a factual basis

2   sufficient to support a reasonable good faith belief that in

3   camera inspection may reveal evidence that information in the

4   materials is not privileged.

5         Plaintiff contends that it has made that showing

6   because the documents at issue generally don't involve direct

7   communications to or from attorneys and that from some of the

8   non-redacted content, it appears that they are discussing

9   business matters, like marketing and client communications,

10   rather than more traditional legal matters.

11         The defendant has cited authority that the attorney-

12   client privilege for attorney-client communications can apply

13   to internal business communications that don't involve a lawyer

14   directly if they indicate that the company employees are

15   intending to seek legal advice on a particular matter before

16   going forward with some business decision or that they are

17   repeating to other employees the business or rather the legal

18   advice that they have received from an attorney.  And the

19   defendant has gone through in its brief and provided that

20   justification for each of the redactions in the exhibits that

21   are being challenged here.

22         Let me start with defendant.  Can you tell me, in the

23   redactions that are being -- that were made here, whether any

24   of them refer to a lawyer by name?  For example, they say, hey,

25   let's, you know, go ask lawyer Bill about this.

1        **MR. CRUZ:**  I do believe, Your Honor, there are

2    references to lawyer names, not in all of the documents, but in

3    at least some of them.  And I think that gets to the larger

4    question, Judge Scott, that, you know, like I said, I do

5    believe there are some.  I'd have to look through them all

6    again, but I do believe I can represent that there are some

7    references to specific lawyer names in some of the documents.

8            And even in the ones that where there is not a

9    reference to specific lawyer names, I think one of the problems

10    with the position that Innovative is taking here is, number

11    one, you know, I don't think there's a lot of room to disagree

12    based on the case law that even if there's no lawyer copied on

13    the communication, that the privilege still applies or the work

14    product doctrine still applies.  And I think from there on in,

15    you know, the nature of communications that don't involve

16    lawyers, and as is I think apparent on the face of these

17    documents, some of it will be business-based.  But when there

18    are references to seeking, receiving, or the content of legal

19    advice, that is what we are entitled to take out.

20            So to Innovative's point that, you know, there's no

21    indicia on the face of the document of legal advice or seeking

22    legal advice, the answer to that, I think, is that, yes, that

23    is true because we have, you know, that's what gets redacted

24    when it's in the midst of a larger conversation about other

25    things.  And I think that's what's going on here, and I think

17

1    it's one of the main problems with the position they have.

2         I'll also add, Judge Scott, that some of these

3    documents were large, some of them were not.  And I think the,

4    you know, in terms of how this has come to be, frankly, this is

5    an issue that has been stale for many, many years.  So it's a

6    little bit unclear to us why this is being raised now and why

7    they didn't raise this back in the day when we could have dealt

8    with it in a more orderly fashion rather than, you know, on a

9    Friday night before the pretrial conference.  But I think at

10   base to your question and to the Court's question about these,

11   yes, some of them do refer to lawyers.  And even where they

12   don't, I think, as the Court will see on the face of the

13   documents, these are not documents that were withheld, and the

14   redactions are relatively selective because they're meant to

15   only cover up the parts of it -- the parts of the

16   communications that do reference seeking, receiving, or some

17   type of legal advice.

18         THE COURT:  So the documents that don't reference an

19   attorney by name, do they speak generally about consulting with

20   legal or the legal department or language of that nature?

21         MR. CRUZ:  Yes, they do, Your Honor.

22         THE COURT:  And is that true of all of them or some

23   of them?

24         MR. CRUZ:  I think that's true of many of them.  I

25   think even where there is not a reference in the text to legal,

1    you know, there's, I'm thinking of one of them, which is a

2    slide deck, you know, the particular slides where that type of

3    content is referred to as privileged and confidential while the

4    rest of the deck is not.  So it has been marked as something

5    that has had input from legal that is reflected there.  So

6    that's the distinction I'm making.

7            **THE COURT:**  And so I did note that some of the

8    documents with PowerPoint decks where there were slides that

9    were redacted, and so you're saying in some of those instances

10   the slide had a marking that whoever created the slide believed

11   that the information being conveyed on the slide was an

12   attorney-client communication and so they marked the slide

13   privileged and confidential?

14           **MR. CRUZ:**  Yes, and since we're talking about

15   redactions, the court is not saying I want to be as candid as

16   possible here without revealing anything, Judge Scott.  I think

17   for the PowerPoint that you noted, yes, I think there are parts

18   of it that reflect attorney advice and that's the basis for the

19   redaction.  And where that content is reflected on one or more

20   slides, it has been redacted.  So I just want to make that

21   clear on the record.

22           **THE COURT:**  And I'm having a little bit of trouble

23   with the reflecting attorney advice in that if, you know, one

24   goes to the in-house attorney and says, you know, how should we

25   do this, and the attorney says this is what I recommend, and

19

1   then the company goes forward and they implement that advice,

2   you know, they could write something like an employee

3   handbook or a piece of advertising that reflects that

4   attorney's advice that is not privileged because it's intended

5   to go out to a wider audience.  Are these PowerPoint decks

6   strictly internal?  It seems like some of these things were

7   intended to ultimately become communications with clients, so

8   maybe you can tell me a little bit more about the distribution

9   or intended distribution of these materials.

10          **MR. CRUZ:**  So I think the materials that are at issue

11  here are all internal documents.  And I'm sorry if I added some

12  confusion.  I don't want to suggest, because I agree with Your

13  Honor's statement of how privilege works, that to the extent

14  something goes out to the public or goes to a larger group, it

15  may be a different story.  But I think in the example we're

16  using, for example, if there are some things that reflect the

17  legal advice that are not going to a larger group, it's, you

18  know -- take a board presentation.  I'm not saying this is a

19  board presentation.  But, you know, there will be portions of

20  board minutes where the lawyer came in, spoke to the board, and

21  those parts of the minutes will be redacted.

22          And I think there's an analogous situation going on

23  here where there are portions of the PowerPoint where we're

24  using this as an example, where the legal advice is part and

25  parcel of what's on the slide, and we've only redacted what we

1  believe to be the advice from counsel that's reflected with

2  respect to those particular issues.  I hope that clarifies the

3  position we're taking here.

4          **THE COURT:**  Okay.  And to be clear with regard to the

5  logs, when I read the parties' briefing on that, it seemed that

6  the parties had agreed to a process to try and mutually

7  minimize the burden of producing privilege logs.  I didn't see

8  that anyone was accusing anyone of having done something

9  procedurally improper with regard to the privilege logs.  And

10 so I was not factoring in the lack of a privilege log or the

11 incompleteness of a privilege log in addressing this and was

12 looking at the justifications that were provided both in the

13 log that was earlier exchanged and in the briefs that were

14 submitted specific to this dispute.

15         **MR. CRUZ:**  I think that's right, Your Honor.  I would

16 not say, and you know, Mr. Reade may say something different,

17 but I don't think so.  I don't think there are any accusations

18 of improprieties or procedural issues with logs themselves.  I

19 do think, and I do know that, and it's reflected in our

20 papers, that we do believe that from a procedural and a timing

21 perspective, this is an issue that has been sitting for a long

22 time completely unraised, that should have been raised within

23 10 days of the date that it came to light three years ago, and

24 that even after it was raised last December, Innovative has sat

25 on this issue and I think they waived it three years ago, they

21

1  waived it four months ago.  Again, we're one week out of

2  trial.  We don't think that this is an appropriate time to be

3  at the last minute raising issues regarding redactions that

4  should have been dealt with three years ago.

5          **THE COURT:**  Do you have -- I know you talked about

6  having troubles with your technology there, but do you have

7  copies of these in front of you that have the subject language

8  unredacted?

9          **MR. CRUZ:**  I can, Your Honor.  I do have a copy.

10         **THE COURT:**  Okay.  I wanted to ask you specifically

11 about Exhibit 14.  That appears to be an email with a list of

12 action items and one of the action items assigned to a

13 Mr. Shawgi (phonetic) is redacted and I was simply going to ask

14 if that action item is essentially for him to speak with a

15 lawyer and get some sort of legal advice with regard to the

16 project being discussed in the email.

17         **MR. CRUZ:**  Let me -- if Your Honor will bear with me

18 for just a moment, I will look.

19     **(Pause)**

20         **THE CRUZ:**  Okay.  And I'm sorry, Your Honor, is there

21 a Bates number on the exhibit or an exhibit number on the one

22 you're looking at?

23         **THE COURT:**  Yes.  It's Exhibit 14 and I believe the

24 Bates page is INN-23086.  Is it 86 -- I have 869, but I see

25 that that exhibit is supposed to end at 868, but I do believe

1   it's part of Exhibit 14.

2           **MR. CRUZ:**  Yeah, I think I made --

3           **THE COURT:**  Maybe 866.

4           **MR. CRUZ:**  It ends in 866, I see an email chain.  Is

5   that what you're seeing, Your Honor?

6           **THE COURT:**  Yes, as I understood, it was a list of

7   action items and maybe that was, if I remember correctly,

8   toward the bottom of the email chain and there was an action

9   item assigned to Ovi Shawgi and then subsequent communications

10  about that action item were also redacted, and so it seemed

11  plausible that the action item was for him to get legal advice

12  and I wanted to confirm that.

13          **MR. CRUZ:**  Understood.  I'm just looking at Exhibit

14  14 now so that I can see the exact -- all right, and this is --

15  the first page is Bates No. 866 and then you're looking at 869,

16  correct, or 868?  Okay, I see what Your Honor is talking about.

17  Is it the email that says October 31st, Nick, and then there's

18  a redaction and then a redaction that says Ovi?

19          **THE COURT:**  Yes, and then I think if you go further

20  down that chain, you'll see that they seem to be building on a

21  communication where they said, you know, here's what everyone

22  needs to do and when they said what Ovi needs to do, that that

23  was redacted.

24          **MR. CRUZ:**  Right.  This is an instance, Your Honor,

25  where that action item contains a -- and I, you know -- I hope

23

1    I can say this without fear of waiving anything, you know, this

2    is an action item that has a direct reference to legal

3    advice.  The word legal is contained in that, under that

4    redaction.

5         **THE COURT:**  Okay.  All right.  Let me turn then to

6    plaintiffs.  You've heard the arguments from defendants about

7    why they believe that there is not a sufficient factual basis

8    to believe that a in camera inspection would likely reveal

9    instances of material that is not privileged.  And I will let

10   you go ahead and respond to that.

11        **MR. READE:**  Thank you, Your Honor.  So I guess as

12   just a starting point, Mr. Cruz is certainly correct that it is

13   possible for communications between non-lawyers to be

14   privileged, but I would point the Court to the Chevron case

15   that was cited in my friend's brief.  And in particular, page

16   1076, and I would just read this one portion of the opinion.

17        "Communications between a corporation, unlike outside

18   counsel, in-house attorneys can serve multiple functions within

19   the corporation.  In-house counsel may be involved intimately

20   in the corporation's day-to-day business activities and

21   frequently serve as integral players in business decisions or

22   activities.  Accordingly, communications involving in-house

23   counsel might well pertain to business rather than legal

24   matters.  The privilege does not protect an attorney's business

25   advice."

24

1          And so, I think that's really the core of the issue

2    here.  To the extent that these documents reference attorneys,

3    even if they reference attorneys, that does not mean that the

4    underlying communications are privileged if they deal purely

5    with business matters and are not reflecting legal advice about

6    legal matters.  And just to give a couple examples that stood

7    out to us, so for example, Exhibits 16 and 17, these are decks

8    that were prepared by individuals within Biosense's sales

9    organization.  And as Mr. Cruz noted, we often see in

10   litigation things like board decks that have an agenda that

11   says, we're going to walk through these 10 items.  And one of

12   them is legal issues.

13          There are agendas for these presentations.  And they

14   don't contain any reference at all to legal advice.  And I can

15   think of a deck that my client produced in this litigation,

16   where there was an agenda.  It listed update on litigation.

17   And then that slide of the deck was redacted.  But here,

18   there's no indication in the document that there actually is

19   legal advice reflected.  And so that is why we have a good

20   faith basis for challenging the assertions of privilege with

21   respect to these documents.

22          There's no indication that these discussions, which

23   pertain to really critical, relevant, and important matters in

24   this case, these are all, after all, trial exhibits that are

25   listed by the parties -- there's no indication that these

25

1    actually reflect legal advice.

2         And you know, of course, Your Honor, we can't see

3    what is underneath those redactions.  And I understand that

4    Mr. Cruz can make the representations that he can make and his

5    understanding of what the privilege would protect.  But we have

6    no way of evaluating that without this Court taking a look and

7    providing an independent perspective based on the rest of the

8    context of these documents.

9         And if I may, Your Honor, I would just briefly

10   address the point about these challenges being sterile, as

11   Mr. Cruz put it.  I think what Your Honor identified as the

12   parties' agreement on privilege logs is exactly right.  I mean,

13   Mr. Cruz can't have his cake and eat it too.

14        The fact that they didn't have to provide a privilege

15   log really enhanced the parties' ability to get through

16   discovery in a complicated antitrust case in an efficient way

17   and to really target the disputes at the things that really

18   mattered in the case, namely these 11 trial exhibits.

19        The flip side of that is that, as Judge Selna

20   recognized in his order at the docket at 303, that's why, even

21   though Biosense made these arguments before, the Court

22   nonetheless said that, "Questions regarding specific redactions

23   for proposed trial exhibits can be addressed following the

24   exchange of proposed trial exhibits."  And that's exactly what

25   we've done here, Your Honor.  And I'm happy to address any

26

1    other specific documents.  I'm prepared to address any of the

2    ones on this list that you might want to discuss, but I'll

3    leave it there for now and invite the Court's direction.

4         **THE COURT:**  As I look at the first two, Exhibits 7

5    and 8, I can see that in this email exchange that one of the

6    writers is suggesting including, you know, internal use only

7    type language.  And do you think that that is pertinent in

8    analyzing whether these redactions have met the standard for

9    justifying an in camera review?

10        **MR. READE:**  Would Your Honor give me the Bates number

11   for that page?

12        **THE COURT:**  I can.  I think where I saw that was

13   within Exhibit 8.  And that is two pages, INN-350555 and 556.

14    I'm not sure which of those two pages the language about not

15   for customer distribution and internal use only shows up.

16        **MR. READE:**  I see it, Your Honor.  Thank you.

17        Look, my sense of this document is that they're

18   discussing the fear that these internal justifications for the

19   time policy at issue in this case will be sent to

20   customers.  And I don't know what's under those privileged

21   redactions.  But those types of concerns about, you know,

22   disseminating the internal justifications for their policy to

23   customers doesn't strike me as a matter that would require or

24   implicate legal advice.  It seems to be more of a practical

25   question about how they will message policy that we're now

1    challenging in this case.

2         So as I read this document, I don't see a basis for

3    the privilege.  But, of course, there may well be a basis for

4    the privilege underneath the redactions.  But the standard we

5    need to meet, as Your Honor noted, is a good-faith basis for

6    presenting these for review.  And I believe we have made that

7    shown based on the rest of the context in this document.

8              **MR. CRUZ:**  Your Honor?  I'm sorry.

9              **THE COURT:**  Go ahead.  No, you can go ahead to

10   discuss Exhibit 7 and 8.

11             **MR. CRUZ:**  You know, I was going to say I think,

12   number one, I think Mr. Reade is looking at these documents and

13   doing a little more speculation than he needs to or, frankly,

14   is entitled to.  I think it's important to keep in mind that

15   the internal use only distribution language is not redacted,

16   and I think that's telling, right?  We've only redacted what's

17   under that.  And I will also say that this is a document that

18   directly refers, like I said before to Your Honor's question

19   about direct references to a lawyer name.  This is one of those

20   documents.

21             And I think there will always be, with the system

22   that we have in terms of withholding attorney-client privilege,

23   we can -- you know, we have to have a good-faith basis to do

24   that.  And even when parties do exchange logs, and I don't

25   think it's worth going back into the logs issue.  We, you know,

 1  me and Mr. Reade clearly disagree on that.  But it's not

 2  important right now, I think, because we're talking more

 3  substance.

 4          And I think, you know, you can -- I think Mr. Reade

 5  can speculate that, you know, some of the language in this

 6  particular document, and I think we're talking about it in the

 7  debate, doesn't suggest to him that other things in the

 8  document would be legal.  But I think it kind of puts the cart

 9  before the horse to say that some things in a redacted

10  document, and indeed the unredacted portions of a redacted

11  document, don't speak to legal issues, because it is only the

12  redacted portions that would.  And I think that speaks to the

13  fact that the redactions here are, you know, are a fairly

14  narrow subset of what's here to preserve the privilege that

15  we're entitled to assert.

16          **MR. READE:**  And just, if I may, Your Honor, just

17  address that last point.  So on page 556 of this, of Exhibit 8,

18  the redaction on that page, for example, it appears that

19  Mr. Martin is asking Mr. Ramos to review and advise based on

20  the statement that is redacted.  And, of course, Mr. Ramos is

21  not an attorney.

22          And so, you know, that's just one example, I think,

23  of the types of issues that we see in these documents, where

24  non-attorneys are being asked to provide opinions about

25  subjects and what appears to us to be the substance of that

1   opinion is redacted as privileged.  And, of course, if it's a

2   non-attorney's view on things, that certainly would not be

3   legal advice.

4          So I would just note, I think there certainly is a

5   certain amount of speculation that we have to do about what's

6   underneath these redactions, because as much as I would like to

7   have them in front of me unredacted like Mr. Cruz, I do

8   not.  But that is the basis for our argument here today.

9          **MR. CRUZ:**  And I think, Your Honor, the level of

10  speculation here just keeps running into instances, again, to

11  Your Honor's point, that Mr. Reade just looked at another piece

12  of this document, and I can say there is that -- the particular

13  piece that is redacted puts a -- names a lawyer by name in

14  terms of what is being solicited or referred to.  I will not

15  say any more, but I think it is very telling that the

16  speculation each time that Mr. Reade has made right here in

17  court gets to the wrong result.

18         **THE COURT:**  All right.  The Court appreciates

19  counsel's arguments.  Let me say, first off, that the Court is

20  reaching the merits of this and is not deciding it based on any

21  of the arguments about whether it's stale, whether there were

22  procedural irregularities in how the issue was raised to the

23  Court, or things of that nature.

24         When the Court considers the context that has been

25  revealed through the unredacted portions of the email, the

1    statements made in the briefs and the logs about why these

2    documents were redacted for privilege, and the statements made

3    here in -- at the hearing, the Court does not find that there

4    is a basis to conduct an in camera review here.  The Court is

5    not persuaded by the fact that attorneys in a corporate setting

6    often provide business advice.  While that is certainly true,

7    if that were a sufficient reason to justify in camera review,

8    then that would really be an exception that would follow the

9    rule because we would be conducting an in camera review of

10   every communication in-house counsel if that were the

11   justification.

12          Here, I understand from looking at the documents and

13   counsel's representations that there is no third party that is

14   being copied on these communications, so that is not a basis to

15   find that perhaps these weren't confidential communications

16   about obtaining or disseminating legal advice.  The fact that

17   the documents are judiciously redacted and not redacted in

18   their entirety is persuasive to the Court.  The fact that they

19   do contain some legal names and references to getting legal

20   advice specifically supports the notion that they are, as

21   described, communications between non-lawyers internally at the

22   company about the need to get advice from a lawyer on a

23   particular topic or one person who has received legal advice

24   telling the other employees what advice was received so that

25   they can conform their business decisions to that advice.

1           For the Exhibit 7 and 8 that we just discussed, the

2   fact that that has a direct reference to a lawyer and also has

3   the marketing corporate account folks acknowledging that they

4   need to label it as not for external distribution, that further

5   supports the Court's understanding of those particular

6   exhibits.  Again, with regard to Exhibit 9, this is a bullet

7   point list about the preparation of a PowerPoint deck and most

8   of the exhibits are there.  The fact that some of the bullets

9   have been redacted and the representations have been made that

10  this is reflecting the lawyer's advice on how to explain

11  corporate policies to customers, that would be a topic of legal

12  advice and not just a business decision, trying to make sure

13  that sales representatives don't say things that are going to

14  get the company in legal hot water.

15          Some of these exhibits specifically deal with

16  regulatory employees.  I think that was Exhibit 12 and that

17  seems like a topic on which in-house lawyers would routinely

18  give legal advice.  Some of these dealt with Mr. Shawgi and we

19  had a discussion about what he was specifically tasked with

20  getting legal advice and reporting back to the team on that

21  legal advice, and that appears to deal with Exhibits 13, 14,

22  and 15.

23          With regard to Exhibit 16, that's a PowerPoint deck

24  about hiring and retention and the representation is that the

25  redacted slides contain legal advice about human

1    resources.  Again, that is a typical subject matter for legal

2    advice and not just a business strategy topic.  Some of the

3    others, as I read through them, it did seem consistent with the

4    context that someone who is a non-legal employee was blaming or

5    attributing to a lawyer why they had delayed something or why

6    they had changed something.  So again, that seems consistent

7    with the representation that the redacted portion of the

8    document sets forth some legal advice that was sufficient to

9    make the employee delay or change what they were otherwise

10   doing.

11           The Court notes that the attorney-client privilege is

12   really a bedrock of the legal system and while the language of

13   the standard could be read to suggest that it's not a very high

14   standard, I think when one looks at the cases applying that

15   standard, that again, it is something that is not going to be

16   met through fact patterns that present themselves in a wide

17   variety of typical cases.

18           In the Court's experience, usually when someone comes

19   in asking for an in camera review, they have a privilege log

20   that shows that the emails were disseminated to third

21   parties.  They have way lines and context in the other

22   documents where you can tell that it's a shareholder report or

23   a press release or something that was clearly intended to go

24   out to third parties and those are often the facts that justify

25   an in camera review to verify that the redactions have been

33

1   made appropriately.  Those facts don't appear in this

2   particular set of documents and so for all those reasons, the

3   Court is going to deny the request for an in camera review.

4         MR. READE:  Thank you, Your Honor.  We disagree, but

5   really appreciate the Court's attention to this.

6         THE COURT:  So, the Court is not going to issue a

7   separate written ruling.  The parties can order a transcript if

8   they need to.  There are instructions for doing that on the

9   Court's website.

10        I will invite the prevailing party if they would like

11  to submit a proposed order for the Court to sign.  I'm happy to

12  review that and assuming that it conforms with the Court's

13  order to sign it, sometimes counsel determine that that is

14  helpful in terms of keeping everyone on the same page about

15  what the ruling was or talking with their client about the

16  ruling.  So if that's helpful, then the prevailing party is

17  welcome to do that.  If, in the prevailing party's judgment,

18  that is just more unnecessary work in the week before trial,

19  then you certainly do not have to.  The parties should be able

20  to rely on a transcript as a sufficiently clear record of the

21  Court's ruling.

22        MR. CRUZ:  Your Honor, we're happy -- this is

23  Alejandro Cruz for Biosense.  We're happy to submit a proposed

24  order to Your Honor for consideration.

25        THE COURT:  All right, then the Court will look

34

1    forward to receiving that and we'll review that.

2            **MR. CRUZ:**  Thank you, Your Honor.  We appreciate the

3    Court's time today.

4            **MR. READE:**  Yes, and thanks from Innovative as well.

5            **THE COURT:**  All right, well good luck with your trial

6    preparation.

7            **THE CLERK:**  This court is now adjourned.

8        **(Proceeding adjourned at 10:30 a.m.)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

35

## <u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    <u>April 26, 2025</u>

           Signed                                         Dated


*TONI HUDSON, TRANSCRIBER*