KARLA KRAFT
State Bar No. 205530
kkraft@stradlinglaw.com
STRADLING YOCCA CARLSON &
RAUTH LLP
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  (949) 725-4000

WILLIAM F. CAVANAUGH, JR.
State Bar No. 133461
wfcavanaugh@pbwt.com
PATTERSON BELKNAP WEBB
AND TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
Telephone: (212) 336-2000

MUHAMMAD U. FARIDI
(Admitted *Pro Hac Vice*)
LINKLATERS LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 903-9000

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>Defendant. | CASE NO. 8:19-cv-01984-JVS-KES<br><br>Hon. James V. Selna<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>**PRE-TRIAL CONFERENCE**:<br>April 14, 2025, 11 am [Dkt 256]<br><br>**JURY TRIAL**:<br>May 6, 2025, 8:30 am [Dkt 487]<br><br>Complaint Filed:  October 18, 2019 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendant Biosense Webster, Inc. ("Biosense") hereby moves the Court, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law on all claims brought by Plaintiff Innovative Health, LLC ("IH").

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Court's record, and on such oral and documentary evidence as the Court may consider.

DATED: May 15, 2025

STRADLING YOCCA CARLSON & RAUTH LLP

By: */s/ Karla Kraft*
        Karla Kraft

PATTERSON BELKNAP WEBB AND TYLER LLP

By: */s/ William F. Cavanaugh, Jr.*
        William F. Cavanaugh, Jr.

LINKLATERS LLP

By: */s/ Muhammad U. Faridi*
        Muhammad U. Faridi

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

# **TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................. 7

II.  LEGAL STANDARD ............................................................................ 8

III.  ARGUMENT ....................................................................................... 9

    A.  IH Has Failed to Prove A Separate Clinical Support Market ................................................................................... 9

    B.  IH Has Failed to Prove the Alleged Single-Brand Aftermarkets ........................................................................ 10

    C.  IH Has Failed to Present Sufficient Evidence of Competitive Harm .................................................................. 12

    D.  IH Has Failed to Prove Any Antitrust Injury ................................ 15

    E.  IH's Monopolization Claims Fail Because Biosense Has No Duty to Deal with or Aid IH ....................................... 17

    F.  *Per Se* Rule Is Inapplicable to the Alleged Tie Under the Cartwright Act ................................................................. 18

    G.  IH Has Failed to Prove California Damages Under the Cartwright Act ...................................................................... 20

IV.  CONCLUSION ................................................................................... 21

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ahn v. Stewart Title Guar. Co.*,

5
    93 Cal. App. 5th 168 (2023) ........................................................................ 20

6

*Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*,

7
    592 F.3d 991 (9th Cir. 2010) ........................................................................ 18

8

*Atl. Richfield Co. v. USA Petroleum Co.*,

9
    495 U.S. 328 (1990) ..................................................................................... 15

10

*In re Capacitors Antitrust Litig.*,

11
    No. 17-MD-02801, 2020 WL 6462393 (N.D. Cal. Nov. 3, 2020)............ 20

12

*In re Cipro Cases I & II*,
    61 Cal. 4th 116 (2015)................................................................................. 18

13

*Corwin v. Los Angeles Newspaper Serv. Bureau, Inc.*,

14
    4 Cal. 3d 842 (1971) .................................................................................... 19

15

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,

16
    504 U.S. 451 (1992) ....................................................................................... 9

17

*Epic Games, Inc. v. Apple, Inc.*,

18
    67 F.4th 946 (9th Cir. 2023)............................................................. 9, 12, 19

19

*Fed. Trade Comm'n v. Qualcomm Inc.*,

20
    969 F.3d 974 (9th Cir. 2020)....................................................................... 18

21

*Forster v. Wells Fargo Bank, N.A.*,

22
    No. C 10-5321, 2011 WL 13254534 (N.D. Cal. Oct. 18, 2011)............... 20

23

*Hirsh v. Martindale–Hubbell, Inc.*,
    674 F.2d 1343 (9th Cir.1982)...................................................................... 17

24

*In re HIV Antitrust Litig.*,

25
    No. 19-CV-02573, 2022 WL 22609107 (N.D. Cal. Sept. 27, 2022) ......... 20

26

*Innovative Health, LLC v. Biosense Webster, Inc.*,

27
    No. 22-55413, 2024 WL 62948 (9th Cir. Jan. 5, 2024) ............................. 11

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ................................................................. 19

*Morrison v. Viacom, Inc.*,
    66 Cal. App. 4th 534 (1998)............................................... 15, 19

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) ............................................................... 12

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ........................................................... 13, 14

*Paladin Assocs., Inc. v. Montana Power Co.*,
    328 F.3d 1145 (9th Cir. 2003)................................................ 15

*Pool Water Prods. v. Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001)................................................ 16

*Siegel v. Chicken Delight, Inc.*,
    448 F.2d 43 (9th Cir. 1971) .............................................. 16, 17

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ................................................. 17

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011)......................................................... 21

*Torres v. City of L.A.*,
    548 F.3d 1197 (9th Cir. 2008) ................................................. 9

*United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp., Inc.*,
    No. 07-CV-2172, 2012 WL 12845620 (S.D. Cal. Sept. 5, 2012)............... 9

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919) ............................................................... 18

*Verizon Commc'ns. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ............................................................... 17

*WarnerNo v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015)................................... 20

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**Statutes**

Cartwright Act.............................................................................*passim*

Sherman Act..............................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure § 50(a) .......................................... 7, 8, 9, 21

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

Pursuant to Fed. R. Civ. P. 50(a), Defendant Biosense Webster, Inc. ("Biosense") respectfully moves for Judgment as a Matter of Law ("JMOL") because Plaintiff Innovative Health LLC ("IH") failed to present sufficient evidence to permit a reasonable jury to find in its favor on any of its claims.

## I.    PRELIMINARY STATEMENT

IH has been fully heard on its claims and has rested its case-in-chief. Yet, IH has elicited no evidence or testimony that would allow a reasonable jury to find in its favor on any of its claims under the Sherman Act or the Cartwright Act.

*First*, IH has failed to prove a necessary element for its tying claims under both the Sherman Act and the Cartwright Act—a separate and distinct clinical support market. IH has presented no evidence whatsoever that it is efficient for a firm to provide the clinical support separate from the catheters at issue, which is required to satisfy the consumer-demand test. Just the opposite, trial testimony shows that it would not have been efficient for any hospital to provide its own cardiac mapping support and not use Biosense's free clinical support for mapping procedures on the CARTO 3.

*Second*, IH has presented no evidence of competitive harm, which is fatal to all of its antitrust claims under the Rule of Reason. There is no direct evidence of reduced output, increased prices, or decreased quality in the alleged relevant market. Nor did IH proffer any evidence of market power accompanied by other indirect evidence that the challenged restraint harms competition. In fact, Dr. Forister conceded that the price for Biosense's Pentaray catheters is lower than that of its competitors', and that the prices for the Pentaray and SoundStar catheters have remained stable or decreased from 2013 to 2023 when compared with the average rate of inflation during the same period, even as demand for using the CARTO 3 for cardiac mapping procedures has increased.

*Third,* IH has failed to present sufficient evidence of antitrust injury—the type of injury that the antitrust laws were intended to prevent and flows from an

anticompetitive aspect of Biosense's practice.  IH has elicited a few self-serving statements and conclusory testimony that Biosense's policy limits consumer choices, but the limitation of consumer choice, in itself, does not amount to antitrust injury.  IH's expert has also failed to provide any basis for disentangling the price of the alleged tying product (clinical support) and the alleged tied products (each of the sensor-enabled catheters), which is required for proving antitrust injury and associated damages in this case.

*Fourth,* IH's monopolization claims under Section 2 of the Sherman Act fail because Biosense has no duty to deal or aid IH.  The limited exception to the general rule of no duty to deal does not apply here because Biosense has never sold clinical support services separately from its cardiac mapping products.

*Fifth*, the *per se* rule is inapplicable to the alleged tie under the Cartwright Act because the clinical support policy is not a tie, let alone the type of tie that is plainly anticompetitive and lacking in any redeeming virtue that should be condemned under the *per se* rule.

*Finally*, IH has proffered no evidence of its damages under the Cartwright Act and therefore all of its tying claims under the Cartwright Act shall fail as a matter of law.  Innovative cannot prove California damages without a California damages model.  Nor can Innovative rely on its damages model under the Sherman Act to recover nationwide damages under the Cartwright Act.

Accordingly, Biosense is entitled to a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) because IH has failed to present sufficient evidence to permit a reasonable jury to find in its favor on any of IH's claims.

## II.   LEGAL STANDARD

Rule 50(a)(1) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment

as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. Pro. 50(a)(1).

"[W]hen the evidence presented at trial permits only one reasonable conclusion" so that "no reasonable juror could find in the non-moving party's favor," the motion should be granted. *Torres v. City of L.A.*, 548 F.3d 1197, 1205 (9th Cir. 2008). That standard requires the nonmoving party to "'come forward with more than a scintilla of evidence,'" and "do more than rely on conclusory, self-serving, and speculative testimony." *United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp., Inc*., No. 07-CV-2172, 2012 WL 12845620, at *2 (S.D. Cal. Sept. 5, 2012) (quoting *Tripati v. McKay*, 211 F. App'x 552, 553 (9th Cir. 2006)). Judgment as a matter of law is proper in antitrust cases when there is no substantial evidence to support a plaintiff's claims. *Id.*

## III.  ARGUMENT

### A.    IH Has Failed to Prove A Separate Clinical Support Market

To prevail on its tying claims, IH must prove that the tying market (the clinical support market) is separate and distinct from the tied market (each of the alleged CARTO 3 catheters markets). "[T]o be considered two distinct products, there must be sufficient consumer demand so that it is efficient for a firm to provide" the products separately. *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 462 (1992). This "consumer-demand test" requires "(1) that it is possible to separate the products, and (2) that it is efficient to do so, as inferred from circumstantial evidence." *Epic Games, Inc. v. Apple, Inc*., 67 F.4th 946, 995 (9th Cir. 2023).

During its case in chief, IH presented no evidence that Biosense—or any other original equipment manufacturers (OEMs) of cardiac mapping systems— has **ever** sold clinical support as a separate product from its cardiac mapping products. To the contrary, evidence and testimonies have shown that Biosense,

as well as other OEMs of cardiac mapping systems such as Abbott and Boston Scientific, provides clinical support for free (May 9, 2025 Tr. (VOL. I) 58:1-4), and as "part of the overall system offering by the manufacturer." (May 14, 2025 Tr. (VOL I) 37:1-4).   IH itself has also never sold clinical support service separately.   In fact, when IH's mapper was asked by customers to support Biosense's sensor-enabled mapping catheters, IH refused, noting that doing so "defeats the purpose," which was "to map with *our* [IH's] catheter." (JX-31 at IH00016107) (emphasis added).

Furthermore, evidence has shown that it was neither "possible" nor "efficient" to sell clinical support service separately.  Hospitals prefer and expect that manufacturers provide clinical support for free in conjunction with their own cardiac mapping products.  Although some hospitals provide their own clinical support for CARTO 3 procedures, over time that has dwindled, confirming that it is inefficient to provide clinical support separate from the systems.  (May 9, 2025 Tr. (VOL. I) 24:10-25:25).  To the contrary, Dr. Osorio has testified that it is "very efficient" for *system manufacturers* to provide clinical support "because [hospitals] don't have to train or hire someone to do that job." (May 14, 2025 (VOL I) Tr. 37:20-24).

Accordingly, there is no legally sufficient evidentiary basis on which a reasonable jury could find that it is efficient for a firm to provide clinical support separately from cardiac mapping products.  Without proof of a separate tying market, IH's tying claims under both the Sherman Act and the Cartwright Act fail.

**B.    IH Has Failed to Prove the Alleged Single-Brand Aftermarkets**

To establish a single-brand aftermarket, a plaintiff must show that "(1) the challenged aftermarket restrictions are not generally known when consumers make their foremarket purchase; (2) significant information costs prevent accurate life-cycle pricing; (3) significant monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand

do not undermine the proposed single-brand market." *Innovative Health, LLC v. Biosense Webster, Inc*., No. 22-55413, 2024 WL 62948, at *2 (9th Cir. Jan. 5, 2024) (quoting *Epic Games, Inc*., 67 F.4th at 977).

During its case-in-chief, IH failed to elicit sufficient evidence to allow a reasonable jury to find any of the alleged single-brand aftermarkets exists, including (1) the sensor-enabled circular mapping catheters for use with the CARTO 3; (2) sensor-enabled high-density mapping catheters for use with the CARTO 3; and (3) sensor-enabled ultrasound catheters for use with the CARTO 3.[1]

IH has failed to provide sufficient evidence that the clinical support policy was a surprise to customers.  For example, IH could have surveyed hospitals that performed mapping procedures on the CARTO 3 during the relevant time period and ask whether they learned about the clinical support policy after April 2016, but IH chose not to do so.  To the contrary, evidence has shown that the clinical support policy was communicated to customers as early as 2014 and was generally known by customers and competitors, including IH, by March 2016. (*See e.g*., May 7, 2025 Tr. (VOL. II) 116:13-21; May 8, 2025 Tr. (VOL. II 84:19-23, 99:19-21; JX-545).   Testimony from multiple hospital witnesses has also established that, while it is possible for hospitals to self-support cardiac mapping

---

[1] IH asserts—for the first time in its jury instructions—that the SoundStar catheter is not an aftermarket.  IH should not be allowed to change its theory of relevant market definition at the eleventh hour in its jury instructions.  IH's theory to date has been that "there are several separate 'aftermarkets' unique to the particular cardiac mapping system: (1) an 'aftermarket' for clinical support unique to the CARTO 3, and (2) *'aftermarkets' for catheters that narrow to each of navigational ultrasound, FAM-capable circular mapping, and FAM-capable high-density mapping catheters*."  Forister Rebuttal Report dated November 19, 2021 at ¶ 5 (emphasis added); *see also* Forister Second Rebuttal Expert Report dated December 2, 2024 at ¶¶ 63, 75, 84 (references to "*catheter aftermarkets*") (emphasis added).   There is no dispute that the SoundStar catheter is a navigational ultrasound catheter that is only compatible with the CARTO 3.

1  procedures, it would not have been efficient for hospitals to train their own
2  mapping technicians to self-support mapping procedures.   (May 8, 2025 Tr.
3  (VOL. II) 100:11-22, 102:9-12; Idio Depo. Tr. 122:9-21).

4        Evidence has also shown that customers calculate life-cycle pricing when
5  purchasing the CARTO 3 machine (May 9, 2025 Tr. (VOL. I) 51:12-52:6, 95:20-
6  96:25; Idio Depo. Tr. 80:17-81:5; Tranguch Depo. Tr. 85:2-22), and they can
7  switch to Abbott or other competitors' mapping systems if they choose to do so.
8  (May 7, 2025 (VOL. I) 31:2-5; Tranguch Tr. 69:4-70:2).   Further, witnesses
9  testified that the costs associated with switching to a different mapping system is
10 not a significant barrier that would prevent hospitals from switching to a
11 competitor, *e.g.*, Abbott, Boston Scientific, and Medtronic, if they were unhappy
12 with the clinical support policy.   (May 8, 2025 Tr. (VOL. II) 94:24-95:18;
13 Tranguch Depo. Tr. 85:2-22).

14       Accordingly, there is no sufficient evidentiary basis on which a reasonable
15 jury could find that IH has proven any of the necessary elements for the alleged
16 single-brand catheter aftermarkets.

17 **C.    IH Has Failed to Present Sufficient Evidence of Competitive**
18 **Harm**

19       It is settled law that harm that occurs merely to competitors is not sufficient
20 to demonstrate harm to competition generally.  *NYNEX Corp. v. Discon, Inc*., 525
21 U.S. 128, 139 (1998).  "To prove a substantial anticompetitive effect directly, the
22 plaintiff must provide 'proof of actual detrimental effects [on competition],' such
23 as reduced output, increased prices, or decreased quality in the relevant market."
24 *Epic Games, Inc.*, 67 F.4th at 983 (alteration in original) (quoting *PLS.Com, LLC*
25 *v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022)).   Without direct
26 evidence, IH must "prove substantial anticompetitive effects indirectly" by
27 showing that Biosense "has market power and present 'some evidence that the
28 challenged restraint harms competition.'"  *Id.* (quoting *Ohio v. Am. Express Co.*

("*Amex*"), 585 U.S. 529, 542 (2018)).  Market power, which is key to this indirect-evidence route, requires "the ability to raise price profitably by restricting output." *Amex*, 585 U.S. at 549.  IH has failed to put forth either direct or indirect evidence of competitive harm at trial.

IH has presented no *direct* evidence of competitive harm such as reduced output, increased prices, or decrease quality of the catheter at issue.  *First*, there is no evidence that Biosense charges supracompetitive prices for the catheters at issue here.  To the contrary, the price of Biosense's Pentaray catheters were generally lower than the average prices of other comparable FAM-capable high-density catheters from Boston Scientific and Abbott.  (May 13, 2025 Tr. (VOL. II) 41:11-14).  IH's expert testimony confirmed that there is no competitive harm.  Dr. Forister admitted that, in the period of 2013 to 2024, the average price of a SoundStar catheter has been comparable or lower than the average price of a AcuNav catheter—a nearly identical product except that it does not have a magnetic sensor and is not covered by the policy.  (May 13, 2025 Tr. (VOL. II) 40:21-41:3).

The average price of the SoundStar catheters is comparable or less than the average price of the non-sensor enabled ultrasound AcuNav catheters.  IH contends that the clinical support policy caused hospitals to buy new catheters from Biosense instead of paying a lower price to purchase IH's reprocessed catheters.  However, comparing prices of new catheters with used, reprocessed catheters is not an apples-to-apples comparison.

*Second*, Dr. Forister admitted at trial that there is no evidence that Biosense restricted the output of mapping catheters or clinical support.  To start, Dr. Forister conceded at trial that from 2015 to 2020, the number of cardiac mapping procedures using the CARTO 3 increased at a faster rate than the overall number of cardiac mapping procedures.  (May 13, 2025 Tr. (VOL. II) 44:24-45:9).  This means that Biosense has increased its supply of mapping catheters faster than the

market demand for cardiac mapping procedures. Next, Dr. Forister agreed that the number of mapping procedures covered by Biosense's clinical support grew at a faster rate than the demand for using CARTO 3 for mapping procedures, which proves that Biosense has increased the supply of its clinical support, and its clinical support policy had no anticompetitive effects. (May 13, 2025 Tr. (VOL. II) 44:24-46:2). In other words, IH's expert witness agrees with Biosense that Biosense has no market power and that there is no evidence of competitive harm.

*Third*, IH proffered zero evidence or testimony that Biosense lowered the quality of the catheters at issue. To the contrary, Biosense has been continuously upgrading its technology (*see* May 9, 2025 Tr. (VOL. I) 25:20-25; May 14, 2025 Tr. (VOL. I) 28:22-29:11), improving the quality and accuracy of the catheters at issue (*see* May 7, 2025 Trial Tr. (VOL. I) 34:19-23), and investing in the training of clinical support specialists who are, according to witnesses called by IH, "very professional" and "focused on patient safety," (Tranguch Tr. 56:10-23).

IH has also presented no *indirect* evidence of competitive harm. *First*, there is no evidence—other than Dr. Forister's conclusory testimony—that Biosense has market power, which requires "the ability to *raise* price profitably by restricting output." *Amex*, 585 U.S. at 549 (emphasis added). During its case-in-chief, IH never proffers evidence showing an anticompetitive change in prices for the catheters at issue after Biosense implemented its clinical support policy because no such evidence exists. To the contrary, evidence has shown that the average price of a SoundStar catheter has only increased 5.39% during the decade between 2013 and 2023. (May 13, 2025 Trial Tr. (VOL. II) at 41:4-10). Similarly, the price of a Pentaray catheter has only increased 2.91% during the same time period. (May 13, 2025 Trial Tr. (VOL. II) at 41:15-19). When adjusted for inflation, Biosense's catheter prices have either remained stable or decreased. (May 13, 2025 Trial Tr. (VOL. II) at 41:4-42:6). There is similarly no evidence,

other than Dr. Forister's conclusory testimony, that IH was prevented from entering into the Octaray and Optrell markets[2] because of the clinical support policy. Other evidence such as the number of competitors of cardiac mapping systems, the level of competition among them, as well as the growing market and innovation in the electrophysiology space further shows a lack of competitive harm. *See e.g.*, May 7, 2025 Trial Tr. (VOL. II) at 106:17-107:9.

In sum, IH has presented no evidence of competitive harm, which is the first step that IH must prove for any its claims under the Rule of Reason. Accordingly, no reasonable jury could find in IH's favor on IH's claims under the Rule of Reason under either the Sherman Act or the Cartwright Act.

**D.    IH Has Failed to Prove Any Antitrust Injury**

Antitrust injury requires a plaintiff to prove that it is "adversely affected by an ***anticompetitive*** aspect of the defendant's conduct." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 (1990) (citation omitted). "Injury that flows from aspects of a defendant's conduct that are beneficial or neutral to competition is not 'antitrust injury.'" *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) (quoting *MetroNet Servs. v. U.S. West*, 325 F.3d 1086 (9th Cir. 2003)). Antitrust injury is an essential element of both IH's Sherman Act and Cartwright Act claims. *See Morrison v. Viacom, Inc.,* 66 Cal. App. 4th 534, 548 (1998) ("An 'antitrust injury' must be proved; that is, the type of injury the antitrust laws were intended to prevent, and which flows from the invidious conduct which renders defendants' acts unlawful.") However, IH has failed to prove an antitrust injury for two reasons.

*First*, the injury that IH is claiming—lost profits from lower prices and

---

[2] Dr. Forister's testimony also flies in the face of IH's own market definition theory. Dr. Forister testified that the Octaray and Optrell catheters are not separate single-brand aftermarkets; they are in the same alleged "FAM-capable high-density mapping catheters market" as the Pentaray catheters. (May 13, 2025 Trial Tr. (VOL. II) at 34:1-4, 35:3-36:1). Therefore, IH has already entered that market.

lower market share—is not an antitrust injury. "[R]educed profits from lower prices and decreased market share is not the type of harm" the antitrust laws were "meant to protect against." *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001). As Dr. Forister admitted during his testimony, under his damages model, IH's prices and share for reprocessed mapping catheters would increase without Biosense's competitive clinical support policy, and hospitals would be paying more money for reprocessed mapping catheters. (May 13, 2025 Trial Tr. (VOL. II) at 13:03-16:2, 17:02-18:15).

*Second*, IH has failed to show that its lost profits flow from anticompetitive conduct. To prove that injury from a tie resulted from anticompetitive aspects of the tie as opposed to procompetitive aspects, courts require a plaintiff to show "the cost or value of the [tying and tied] products involved, free from the unlawful arrangement." *Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 52 (9th Cir. 1971). Absent such a showing, a court cannot exclude the possibility that "the entire package was equal to, or below, a competitive price." *U.S. Steel Corp. v. Fortner Enters., Inc.*, 429 U.S. 610, 618 (1977).

In *Chicken Delight*, a franchise case, the franchisor licensed its name, trademarks, and method of operations to franchisees nominally for free but required those franchisees to purchase certain equipment and products from the franchisor. *Id.* at 47. The franchisees asserted that the equipment and products were sold at supracompetitive prices and prevailed on that issue at summary judgment. *Id.* at 52. On appeal, the Ninth Circuit reversed. It rejected the district court's finding that the franchisees could prevail simply by showing that prices for the equipment and products were supracompetitive because the license to the franchisor's name, trademarks, and methods were provided free of charge. Instead, the Ninth Circuit observed that the price paid for the equipment and products was "full compensation . . . for both those items and the franchise

licenses." *Id.* Accordingly, on remand, the franchisees needed to show "the value of both tying and tied products, free from the tying arrangement." *Id.* at 53.

Here, IH has not shown even a scintilla of evidence what the separate prices of catheter and clinical support would be without the clinical support policy. As in *Chicken Delight*, the only "reasonable" reading of Biosense's provision of clinical support for free is that the price is included in the cost of the disposables—principally catheters—that Biosense sells. *Id.* at 53. IH was obligated to disentangle the price of clinical support and catheters "free from" the clinical support policy. *Id.* at 52. But IH has asserted that Biosense would continue providing clinical support for free and keep the prices of its catheters unchanged in a world without the clinical support policy. (May 13, 2025 Trial Tr. (VOL. II) at 73:19-25, 74:14-18). Accordingly, IH has failed to perform the analysis required to prove antitrust injury related to an alleged tie.

IH cannot escape its failure to prove antitrust injury by distracting the jury with references to limits on customer choice. The "limitation of consumer choice, in itself, does not amount to 'antitrust injury.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013); *see also Hirsh v. Martindale–Hubbell, Inc.*, 674 F.2d 1343, 1349 n.19 (9th Cir.1982) ("'[I]ntru [sion] upon consumers' freedom of choice by compelling the purchase of unwanted products ... has been implicitly rejected by the Supreme Court as a sufficient independent basis for antitrust liability.'") (citing *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 53 n.21 (1977))").

Because IH has presented no evidence of antitrust injury at trial, its Sherman Act and Cartwright Act claims fail.

**E.    IH's Monopolization Claims Fail Because Biosense Has No Duty to Deal with or Aid IH**

It is settled law that businesses are free to choose the parties with whom they will deal. *See Verizon Commc'ns. Inc. v. Law Offices of Curtis V. Trinko,*

*LLP*, 540 U.S. 398, 408–11 (2004); *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919).  Businesses also have no duty to aid competitors.  *See Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1002 (9th Cir. 2010).

There is only "one, limited exception" to the general rule that there is no antitrust duty to deal, which applies only when a company (1) "unilaterally terminates a voluntary and profitable course of dealing," (2) "the only conceivable rationale or purpose is to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition," and (3) "the refusal to deal involves products that the defendant already sells in the existing market to other similarly situated customers." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993–94 (9th Cir. 2020) (citations and alterations omitted).  However, IH has not elicited any evidence of the required elements for the limited exception here.  To the contrary, evidence has shown that Biosense has never sold clinical support service separately and there is no existing market for such service.  (May 9, 2025 Tr. (VOL. I) 58:1-4).

Accordingly, IH's monopolization claims under Section 2 of the Sherman Act should fail as a matter of law, and they need not be decided by the jury.

## F.   *Per Se* Rule Is Inapplicable to the Alleged Tie Under the Cartwright Act

IH alleges that Biosense's conducts are illegal *per se* under the Cartwright Act.[3]  However, the Supreme Court of California has made clear that "although the prohibitions of the Cartwright Act are framed in superficially absolute language," "the Cartwright Act and Sherman Act carry forward the common law understanding that 'only unreasonable restraints of trade are prohibited.'" *In re*

---

[3] In its trial brief, IH has made clear that it is not pursing a *per se* tying claim under the Sherman Act.  *See* Dkt. 468 at 18 ("The Ninth Circuit acknowledges two strands of tying law under the Sherman Act: *per se* tying claims and rule of reason tying claims. . . .  Innovative's Sherman Act claim falls within the second.").

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

*Cipro Cases I & II*, 61 Cal. 4th 116, 146 (2015).   Only "[u]nder certain conditions"— *i.e.*, when the restraints "lack redeeming virtue"—will "tying constitute[] a *per se* illegal practice." *Morrison*, 66 Cal. App. 4th at 540; *see also Epic Games, Inc*., 67 F.4th at 997 ("[P]er se condemnation embodies a judicial assessment that a category of restraints is 'plainly anticompetitive' and 'lack[ing] ... [in] any redeeming virtue' such that it can be 'conclusively presumed illegal.'" (second and third alterations in original); *Leegin Creative Leather Prods., Inc. v. PSKS, Inc*., 551 U.S. 877, 877–78 (2007) ("Resort to *per se* rules is confined to restraints 'that would always or almost always tend to restrict competition and decrease output.'") Thus, a *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue, and only if they can predict with confidence that the restraint would be invalidated in all or almost all instances under the rule of reason." (quoting *Business Electronics Corp. v. Sharp Electronics Corp*., 485 U.S. 717, 723 (1988)) (internal citation omitted)).

The *per se* rule is inapplicable here because the clinical support policy is not the type of restraint that "lack redeeming virtue" and "would be invalidated in all or almost all instances under the rule of reason." *Morrison*, 66 Cal. App. 4th at 540; *Leegin*, 511 U.S. at 877.  Furthermore, under the Cartwright Act, tying arrangements are illegal *per se* only when "'a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product' and when 'a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimis*, is foreclosed to competitors by the tie.'" *Corwin v. Los Angeles Newspaper Serv. Bureau, Inc*., 4 Cal. 3d 842, 856–57 (1971) (first quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 6 (1958); then quoting *Fortner Enters*, Inc*. v. U.S. Steel Corp.*, 394 U.S. 495, 501 (1969)).  But as discussed above, IH has failed to prove that Biosense has sufficient economic power in that non-existent clinical support market.

1  Accordingly, IH's Cartwright Act claims under the *per se* rule should fail as a

2  matter of law.

3  **G.    IH Has Failed to Prove California Damages Under the**

4  **Cartwright Act**

5  Damages is one of the "essential elements of an antitrust claim under the

6  Cartwright Act." *Ahn v. Stewart Title Guar. Co*., 93 Cal. App. 5th 168, 179

7  (2023).  The Cartwright Act does not entitle a plaintiff to recover for damages

8  outside of California. *See In re HIV Antitrust Litig*., No. 19-CV-02573, 2022 WL

9  22609107, at *9 (N.D. Cal. Sept. 27, 2022) (denying multi-state class certification

10  under the Cartwright Act, in part, because the Cartwright Act cannot

11  extraterritorially cover damages incurred in other states); *cf. Forster v. Wells*

12  *Fargo Bank, N.A.*, No. C 10-5321, 2011 WL 13254534, at *1 (N.D. Cal. Oct. 18,

13  2011) ("The inapplicability of section 17200 to conduct and injuries occurring

14  outside California is clear") (dismissing unfair competition claims from non-

15  California plaintiffs).

16  Innovative cannot rely on its nationwide damages model for its Sherman

17  Act claims to recover damages under California's Cartwright Act.  Courts in

18  California have applied California's statutory presumption against

19  extraterritoriality to the Cartwright Act based on the settled understanding that the

20  presumption against extraterritoriality applies to California's anticompetition

21  laws. *WarnerNo v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015)

22  ("[T]here is a strong presumption against the extra-territorial application of

23  California law." (citation omitted)).   Acknowledging that "there is a degree of

24  equivalency between the Cartwright Act and the UCL," *In re Capacitors Antitrust*

25  *Litig.,* No. 17-MD-02801, 2020 WL 6462393, at *7 (N.D. Cal. Nov. 3, 2020)

26  (denying certification of a 31-state class under the Cartwright Act and Unfair

27  Competition Law), the principle that "the presumption against extraterritoriality

28

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

applies to the UCL in full force" applies equally to the Cartwright Act. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

At trial, IH never presented a California-specific damages model as required to recover damages under the Cartwright Act. Without a damages model representing Innovative's economic injuries in California, the jury has no basis for calculating California-specific damages beyond mere speculation or guesswork.

## IV. CONCLUSION

For the reasons set forth above, Biosense respectfully requests entry of judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) for all of IH's claims.

DATED: May 15, 2025

STRADLING YOCCA CARLSON & RAUTH LLP

By: */s/ Karla Kraft*
  Karla Kraft

PATTERSON BELKNAP WEBB AND TYLER LLP

By: */s/ William F. Cavanaugh, Jr.*
  William F. Cavanaugh, Jr.

LINKLATERS LLP

By: */s/ Muhammad U. Faridi*
  Muhammad U. Faridi

Attorneys for Defendant
BIOSENSE WEBSTER, INC.

DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW