| | |
|---|---|
| Panteha Abdollahi, Esq.<br>State Bar No. 230002<br>pabdollahi@tocounsel.com<br>THEODORA ORINGHER PC<br>535 Anton Boulevard, Ninth Floor<br>Costa Mesa, California 92626-7109<br>Telephone: (714) 549-6200<br>Facsimile: (714) 549-6201<br><br>Jeffrey L. Berhold, Esq.<br>Admitted *Pro Hac Vice*<br>jeff@berhold.com<br>JEFFREY L. BERHOLD, P.C.<br>1230 Peachtree Street, Suite 1050<br>Atlanta, Georgia 30309<br>Telephone: (404) 872-3800<br>Facsimile: (678) 868-2021<br><br>Joshua P. Davis, Esq.<br>State Bar No. 193254<br>jdavis@bm.net<br>BERGER MONTAGUE PC<br>505 Montgomery St., Suite 625<br>San Francisco, California 94111<br>Telephone:  (415) 906-0684 | Derek T. Ho, Esq.*<br>Andrew E. Goldsmith, Esq.*<br>Matthew D. Reade, Esq.*<br>Kelley C. Schiffman, Esq.<br>State Bar No. 325023<br>Rachel T. Anderson, Esq.*<br>Annamaria M. Morales-Kimball, Esq.*<br>Sean P. Quirk, Esq.*<br>*Admitted *Pro Hac Vice*<br>dho@kellogghansen.com<br>agoldsmith@kellogghansen.com<br>mreade@kellogghansen.com<br>kschiffman@kellogghansen.com<br>randerson@kellogghansen.com<br>amoraleskimball@kellogghansen.com<br>squirk@kellogghansen.com<br>KELLOGG, HANSEN, TODD,<br>FIGEL & FREDERICK. P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, DC 20036<br>Telephone: (202) 367-7900<br>Facsimile: (202) 326-7999<br><br>Attorneys for Plaintiff<br>INNOVATIVE HEALTH LLC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>    Plaintiff,<br><br>    vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>    Defendant. | Case No. 8:19-cv-1984 JVS (KES)<br><br>Assigned for all purposes to:<br>Honorable James V. Selna<br><br>**PLAINTIFF INNOVATIVE HEALTH LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Action Filed:  October 18, 2019<br>Trial Date:  May 6, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Innovative Health LLC hereby moves the Court, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law on the issues addressed herein.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Court's record, and on such oral and documentary evidence as the Court may consider.

DATED:  May 16, 2025              THEODORA ORINGHER PC

By:  /s/ Panteha Abdollahi
Panteha Abdollahi


JEFFREY L. BERHOLD, P.C.


By:  /s/ Jeffrey L. Berhold
Jeffrey L. Berhold

BERGER MONTAGUE PC

By:    */s/ Joshua P. Davis*
      Joshua P. Davis

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

By:    */s/ Andrew E. Goldsmith*
      Derek T. Ho
      Andrew E. Goldsmith
      Matthew D. Reade
      Kelley C. Schiffman
      Rachel T. Anderson
      Annamaria M. Morales-Kimball
      Sean P. Quirk

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..................................................................................5

II. LEGAL STANDARD ................................................................................................5

III. ARGUMENT ..............................................................................................................5

    A.    The Evidence Is Undisputed That Clinical Support and Catheters Are Separate and Distinct ..................................................................................5

    B.    The Evidence Is Undisputed That Biosense Tied Together Clinical Support and Catheter Sales ..................................................................................8

    C.    The Evidence is Undisputed That Biosense's Free Riding Justification (Along with Other Procompetitive Justifications) Fails as a Matter of Law ..................................................................................9

        1.    Biosense Claims Innovative Is Free Riding on the Tying Service, Not the Tied Products ..................................................................................9

        2.    Biosense Does Not Argue Its Inflated Catheter Prices Had a Procompetitive Effect ..................................................................................11

        3.    Inability to Charge for the Tying Good or Service ..................................................................................12

IV. CONCLUSION ..............................................................................................13

# MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 50(a), Plaintiff Innovative Health LLC ("Innovative") respectfully moves for Judgment as a Matter of Law ("JMOL") because Defendant Biosense Webster, Inc. ("Biosense") failed to present sufficient evidence to permit a reasonable jury to find in its favor on a number of issues.

## I. PRELIMINARY STATEMENT

Biosense has failed to present evidence to rebut Innovative's showing that (1) clinical support and catheters are distinct products and (2) Biosense tied these two products together. Biosense has also failed to come forward with sufficient evidence to allow a reasonable jury to find in its favor on its free-riding justification or other procompetitive justifications. Because there is insufficient evidence to allow a reasonable jury to find in Biosense's favor, the Court should grant judgment as a matter of law on these issues.

## II. LEGAL STANDARD

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "In other words, '[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting *El–Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005)).

## III. ARGUMENT

### A. The Evidence Is Undisputed That Clinical Support and Catheters Are Separate and Distinct

Biosense has not put forward any evidence to rebut Innovative's showing that CARTO 3 clinical support and CARTO 3 sensor-enabled catheters are separate and distinct. As the Ninth Circuit explained in this case, to "be considered two distinct products, there must be sufficient consumer demand so that it is efficient for a firm

to provide the products separately." *Innovative Health LLC v. Biosense Webster, Inc.*, 2024 WL 62948, at *1 (9th Cir. Jan. 5, 2024) (quoting *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 995 (9th Cir. 2023)) (cleaned up). The consumer-demand test requires "(1) that it is possible to separate the products, and (2) that it is efficient to do so, as inferred from circumstantial evidence." *Id*.

The Ninth Circuit found that Plaintiffs had made a preliminary showing of this in the summary judgment record. It held:

> Innovative produced sufficient evidence both that clinical support services and catheters have been sold separately in the past and that they still are sold separately. Before Biosense enacted its tying policy, hospitals purchased roughly one in every four catheters used with the CARTO 3 (sales of which Biosense bundled with its clinical support services) from a catheter manufacturer other than Biosense. Biosense's competitors in the cardiac mapping system market, meanwhile, continue to provide clinical support services for their own systems while allowing hospitals to purchase catheters from other manufacturers. Moreover, roughly five percent of hospitals that use the CARTO 3 provide their own clinical support services and buy catheters separately, in effect buying the products separately.

*Id.* at *2.

This evidence has been substantiated at trial. Dr. Forister testified that "independent reprocessors had a 23 percent share of" the market for Soundstar catheters before the Tie. Day 5 Vol. I Tr. 119:1-4. The evidence also showed that "all other mapping machine manufacturers offer free clinical support and no Case Coverage Policy." *Id*. at 74:2-4. And Dr. Forister testified that 5% of the Carto 3 clinical support market is not provided by Biosense. *See id.* at 116:7-10. Further, Biosense continues to provide clinical support for cases involving reprocessed non-sensor enabled catheters. *See id*. at 74:7-9.

Biosense has not put forward evidence that refutes any of these basic facts, much less all of them. Instead, Biosense has advanced a theory that does not address the required legal test. Biosense argues that there is an integrated cardiac mapping systems market—that some customers would like to purchase all pieces of

the system from a single vendor. But that does not address the applicable legal test. The test is not whether many customers would like to purchase different products together as a system. Instead, the legal test is whether there are enough *other* customers, customers who want to purchase the products separately, that it is efficient for *a firm* to provide them separately.

As an initial matter, there is no dispute that many customers demand to purchase catheters separately. Numerous hospital representatives and doctors testified that they would like to obtain independently reprocessed catheters from reprocessors while obtaining clinical support from the original equipment manufacturers. *See*, *e.g.*, Day 3 Vol. II Tr. 85:20-86:8, 88:6-15. So many customers demand reprocessed catheters separate from clinical support that many reprocessors are willing and able to efficiently provide reprocessed catheters. Companies, including Innovative, Stryker, and Sterilmed continue to provide catheters separate from mapping services.

Biosense attempted to address the relevant question by arguing that it is not efficient for *hospitals* to provide clinical support separately. But that too misses the point. The test only asks whether *a firm* can provide the products separately. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462 (1992) ("For service and parts to be considered two distinct products, there must be sufficient consumer demand so that it is efficient for *a firm* to provide service separately from parts."). The evidence shows that it *is* efficient for mapping machine manufacturers to provide clinical support separately. Abbott, for example, provides clinical support for its mapping machines regardless of who provides the catheters being used for a procedure. *See* Day 5 Vol. I Tr. 74:2-4; Day 3 Vol. II Tr. 39:13-19. And Biosense provided clinical support independent of sensor-enabled catheter sales before the Case Coverage Policy was implemented and continues to do so for non-sensor enabled catheters.

Biosense has not presented sufficient evidence for a reasonable jury to find that clinical support and catheters are not separate products.

### B. The Evidence Is Undisputed That Biosense Tied Together Clinical Support and Catheter Sales

Both sides agree that Biosense will not provide clinical support for a procedure that uses an independently reprocessed sensor-enabled catheter. A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5-6 (1958); *Eastman Kodak*, 504 U.S. at 461-62.

Under Biosense's Case Coverage Policy, Biosense will not provide clinical support for a procedure that uses an independently reprocessed sensor-enabled catheter. In other words, the Case Coverage Policy is "an agreement by" Biosense "to sell" clinical support "only on the condition that the" hospital buyer "agrees that he will not purchase [another (tied) product] from any" supplier other than Biosense or its sister company. *Northern Pacific R. Co.*, 356 U.S. at 5-6.

Innovative has put forward extensive evidence—including the case coverage letter itself—that establishes these facts. So has Biosense. For example, Stephenie Orsini testified about the Case Coverage Policy, which states that clinical "support by Biosense Webster's Clinical Account Specialists does not extend to products manufactured or reprocessed by another company." Day 6 Vol. I Tr. 122:23-25 (quoting JX-638).

Biosense does not (and could not) dispute that it conditions the provision of clinical support services in a given procedure on the buyer's agreement not to buy catheters from independent reprocessors. Instead, it argues that clinical support and catheters *can't* be tied together because they are actually one integrated system. *See supra.* But as discussed above, no reasonable jury could find for Biosense on that issue because clinical support and catheters are separate products.

That leaves Biosense with no argument—and no evidence—to dispute the tie. Because all the evidence shows that Biosense conditioned the provision of clinical support on the sale of catheters, the Court should grant Innovative judgment as a matter of law on the existence of the tie.

**C.   The Evidence is Undisputed That Biosense's Free Riding Justification (Along with Other Procompetitive Justifications) Fails as a Matter of Law**

The free-riding justification in a tying case must meet three requirements:

(1) *Free Riding on Investment in the Tied Good or Service*. The tie must prevent competitors from free riding on an investment in the tied good or services, not the tying good or service. *See Eastman Kodak*, 504 U.S. at 485 & n.33.

(2) *Inflated Prices That Are Procompetitive*. The tie must result in inflated prices for the tied product that have a procompetitive effect. *See Innovative*, 2024 WL 62948, at *3.

(3) *Inability to Charge for the Tying Good or Service*. The antitrust defendant must be unable to charge for the tying good or service.

Biosense has not presented evidence to satisfy any of the criteria. As a result, the Court should grant Innovative judgment as a matter of law on Biosense's free-riding justification.

**1.   Biosense Claims Innovative Is Free Riding on the Tying Service, Not the Tied Products**

Biosense had to show that its tie prevents Innovative from free riding on its investment in the tied products—catheters—not the tying service—clinical support. *See Eastman Kodak*, 504 U.S. at 485 & n.33. Biosense has not made that showing.

*Eastman Kodak* involved three separate markets: copiers (foremarket), copier parts (tying aftermarket), and repair services (tied aftermarket). *See id.* Kodak used its power in the market for copier parts—the tying product—to coerce buyers to

purchase Kodak's repair services—the tied service. *See id.* Kodak attempted to justify its tie based on its investments in copiers and parts. *See id.* The Supreme Court rejected that argument, holding that the free-rider justification could apply only if Kodak had based it on investments in repair services. *See id.* By trying to protect its investments in the tying market, Kodak was essentially arguing that the plaintiffs "are free-riding because they have failed to enter the" tying market. *Id.* at 485. The Court held that this "understanding of free-riding has no support in our case law. To the contrary, . . . one of the evils proscribed by the antitrust laws is the creation of entry barriers to potential competitors by requiring them to enter two markets simultaneously." *Id* (citing *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 14 (1984); *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 509 (1969)).

Here, Biosense makes the same argument that *Eastman Kodak* rejected. The two cases are closely parallel. This case involves three separate markets: mapping machines (foremarket), mappers (tying aftermarket), and catheters (tied aftermarkets). Biosense uses its power in the market for clinical support—the tying service—to coerce buyers to purchase its catheters—the tied products.

Biosense claims that Innovative is free riding on Biosense's investment in clinical support services—the tying service—but not in catheters—the tied products. This was made clear by Biosense's expert, Dr. Wu, whose counsel asked "What is the free riding in this case?" Dr. Wu responded: "The free riding problem in this case is that Biosense has invested in its CASs [clinical account specialists,] hiring, and training its CASs and putting and sending them there to the hospital. We just talked about how much they spend every year, that's a big investment for Biosense." Day 7 Vol. II Rough Tr. 2:13-18). Conrado Ramos, an architect of the Tie, described "the free-riding issue we had" as "significant investments in recruiting, training, developing, and retaining" clinical account specialists. Day 6 Vol. II Tr. 78:18-24.

Biosense's argument is not legally cognizable under *Eastman Kodak*. To the contrary, Biosense's free rider justification "has no support in [ ] case law" and its tie embodies "one of the evils proscribed by the antitrust laws." *Eastman Kodak*, 504 U.S. at 485 & n.33 (citing *Jefferson Par.*, 466 U.S. at 14; *Fortner Enters.*, 394 U.S. at 509). Innovative seeks to compete in the markets for sensor-enabled catheters. Doing so without simultaneously entering the market for CARTO 3 clinical support is not free riding. It represents competition on the merits in the market it is best suited to. The antitrust laws strive to protect vigorous competition in *every* market.

### 2. Biosense Does Not Argue Its Inflated Catheter Prices Had a Procompetitive Effect

To advance a procompetitive justification, Biosense had to show that its tie had a procompetitive effect and that the means by which it had that effect was inflated prices. *See Innovative*, 2024 WL 62948, at *4. Biosense has denied that its tie inflated any prices above competitive levels, and so it cannot show it charged inflated prices that had a procompetitive effect.

In discussing Biosense's free-riding justification in this case, the Ninth Circuit held, "A procompetitive justification is one that acknowledges that Biosense is charging a supracompetitive price but contends that this price allows it to compete more efficiently." *Id.* (citing *Eastman Kodak*, 504 U.S. at 472, 478). The Ninth Circuit continued, "Biosense therefore must not only point to an alleged free-rider problem but prove that this problem justifies *supracompetitive pricing*." *Id.* (emphasis in original). Biosense has not "acknowledge[d] that it is charging a supracompetitive price," as the Ninth Circuit required it to do if it wanted to assert a free-riding justification. In contrast, it has asserted that there is no "evidence suggesting that catheters and catheter prices are above competitive levels." Day 5 Vol II Tr. 27:21-23. This precludes Biosense from offering its free-rider justification or any other procompetitive justification. The Ninth Circuit expressly foreclosed Biosense from

offering a procompetitive justification based on anything other than supracompetitive prices.

### 3. Inability to Charge for the Tying Good or Service

Biosense's free-riding justification fails because it can charge hospitals for clinical support—the service Innovative is purportedly free-riding off of. The ability to charge for the service at issue is fatal to a free-riding justification. Courts have recognized this principle. "When payment is possible, free-riding is not a problem because the 'ride' is not free." *Chicago Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 675 (7th Cir. 1992); *U.S. v. Microsoft Corp.*, 1998 WL 614485, at *21 (D.D.C. Sept. 14, 1998) ("In other words, in order to recoup its investment, Microsoft could simply charge [ ] a fee."). Thus, "free rider defenses should be rejected when the firm that controls the input is able to sell, rather than give away, the good or service that is subject to the free ride." H. Hovenkamp, XIII Antitrust Law ¶ 2223b3 at 334 (1999).

Economists use technical language to make the same point. They describe a good or service for which a potential seller cannot charge as "a nonexclusive good." The reason is that a consumer cannot be excluded from enjoying its benefits. Economists Pindyck and Rubinfeld note: "A good is nonexclusive if people cannot be excluded from consuming it." Forister 2024 Report ¶ 251 (citing R. Pindyck & D. Rubinfeld, Microeconomics, 690 (8th ed. 2013) ("Pindyck & Rubinfeld, Microeconomics")). In other words, a good is nonexclusive if the potential seller has no effective way to make potential buyers pay for it. As a matter of economics, for free riding to justify otherwise anticompetitive conduct, it "must involve a nonexclusive good." Forister 2024 Report ¶ 251 (citing Pindyck & Rubinfeld, Microeconomics at 693).

Advertising is an example of a non-exclusive good. Potential sellers cannot charge everyone who benefits from advertising. One retail seller—Store One—may advertise a product leading to a sale by another retailer—Store Two. Yet Store One

has no practical way to obtain payment for the benefit of the advertisement from the buyer or Store Two. As a result, courts have recognized that some anticompetitive conduct may be justified to prevent one retail store from free riding on advertisement by another. *See*, *e.g.*, *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007).

Here, Biosense could charge for clinical support. It is not like advertising. Biosense can prevent hospitals from using its mappers. Indeed, Biosense currently does so if a hospital tries to use a catheter that the Case Coverage Policy proscribes. Given Biosense's ability to charge for use of its mappers—an "exclusive" service—the free riding justification is not available.

Another way to make the same point is that there is a substantially less restrictive means than the Tie for Biosense to prevent what it characterizes as free riding. *See Fed. Trade Comm'n v. Qualcomm, Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) (plaintiff can prevail by showing substantially less restrictive alternative to defendant's procompetitive justification). Plaintiffs have demonstrated that Biosense could have charged for clinical support. Dr. Forister testified that "Biosense could charge for its mappers." Day 5 Vol. II Tr. 92:13. Biosense has presented no evidence to the contrary. That is fatal to Biosense's position.

## IV.  CONCLUSION

Innovative respectfully requests entry of judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) as stated above.

DATED: May 16, 2025

THEODORA ORINGHER PC

By: */s/ Panteha Abdollahi*
 Panteha Abdollahi

JEFFREY L. BERHOLD, P.C.

By: */s/ Jeffrey L. Berhold*
 Jeffrey L. Berhold

BERGER MONTAGUE PC

By: */s/ Joshua P. Davis*
 Joshua P. Davis

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

By: */s/ Andrew E. Goldsmith*
 Derek T. Ho
 Andrew E. Goldsmith
 Matthew D. Reade
 Kelley C. Schiffman
 Rachel T. Anderson
 Annamaria M. Morales-Kimball
 Sean P. Quirk

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Innovative Health LLC, certifies that this brief contains 2,837 words, which complies with the word limit of Central District of California Local Rule 11-6.1.

DATED: May 16, 2025

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

By: */s/ Andrew E. Goldsmith*
Andrew E. Goldsmith