Panteha Abdollahi, Esq.
State Bar No. 230002
pabdollahi@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Jeffrey L. Berhold, Esq.
Admitted *Pro Hac Vice*
jeff@berhold.com
JEFFREY L. BERHOLD, P.C.
1230 Peachtree Street, Suite 1050
Atlanta, Georgia 30309
Telephone: (404) 872-3800
Facsimile: (678) 868-2021

Joshua P. Davis, Esq.
State Bar No. 193254
jdavis@bm.net
BERGER MONTAGUE PC
505 Montgomery St., Suite 625
San Francisco, California 94111
Telephone:  (415) 906-0684

Derek T. Ho, Esq.*
Andrew E. Goldsmith, Esq.*
Matthew D. Reade, Esq.*
Kelley C. Schiffman, Esq.
State Bar No. 325023
Rachel T. Anderson, Esq.*
Annamaria M. Morales-Kimball, Esq.*
Sean P. Quirk, Esq.*
*Admitted *Pro Hac Vice*
dho@kellogghansen.com
agoldsmith@kellogghansen.com
mreade@kellogghansen.com
kschiffman@kellogghansen.com
randerson@kellogghansen.com
amoraleskimball@kellogghansen.com
squirk@kellogghansen.com
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

Attorneys for Plaintiff
INNOVATIVE HEALTH LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

|  |  |
|---|---|
| INNOVATIVE HEALTH LLC,<br><br>Plaintiff,<br><br>vs.<br><br>BIOSENSE WEBSTER, INC.,<br><br>Defendant. | Case No. 8:19-cv-1984 JVS (KES)<br>Assigned for all purposes to:<br>Honorable James V. Selna<br><br>**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COST OF SUIT**<br><br>Action Filed:  October 18, 2019<br>Trial Date:  May 6, 2025<br><br>Date:  August 11, 2025<br>Time:  1:30 p.m.<br>CRTRM: 10C |

TO DEFENDANT AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 11, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard by the above-entitled Court, located at 411 West 4th Street, Santa Ana, California 92701, Plaintiff Innovative Health LLC will, and hereby does, move the Court for an order for attorneys' fees and cost of suit. This motion is based on this Notice of Motion, Plaintiff's Memorandum of Points and Authorities, the Declarations and Exhibits filed in support thereof, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing. Pursuant to Local Rule 7-3, Plaintiff met and conferred by phone with counsel for Defendants about the subject of this motion on June 25, 2025. No agreement regarding the content of this motion was reached. *See* Ho Decl. ¶ 48.

Dated: July 3, 2025                    Respectfully Submitted,


                                       KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

                                       By:     */s/ Derek T. Ho*
                                               Derek T. Ho
                                               Andrew E. Goldsmith
                                               Matthew D. Reade
                                               Kelley C. Schiffman
                                               Rachel T. Anderson
                                               Annamaria M. Morales-Kimball
                                               Sean P. Quirk

                                               Attorneys for Plaintiff
                                               INNOVATIVE HEALTH LLC

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................7

II.    BACKGROUND ................................................................................8

       A.    Pre-Trial Proceedings................................................................8

       B.    Innovative's Successful Appeal ................................................9

       C.    Innovative's Success at Trial ....................................................9

III.   ARGUMENT ..................................................................................11

       A.    The Clayton and Cartwright Acts Provide For the Award of
             Reasonable Attorney's Fees and Cost of Suit...........................11

       B.    Innovative's Attorney's Fee Request is Reasonable.............................12

             1.    Reasonable Hours ............................................................13

             2.    Reasonable Rates ............................................................16

             3.    No Downward Adjustment is Appropriate ................................19

       C.    Innovative's Litigation Expenses and Costs ..........................19

IV.    CONCLUSION ..............................................................................22

*PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COST OF SUIT*

1

## TABLE OF AUTHORITIES

2

3

*Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council Inc.*,
      2018 WL 5791869 (N.D. Cal. Nov. 5, 2018)...................................13

4

5

*Feminist Women's Health Ctr. v. Blythe*,
      32 CA4th 1641 (1995)...................................13

6

7

*Gates v. Deukmejian*,
      987 F.2d 1392 (9th Cir. 1992).......................17

8

9

*Gonzalez v. City of Maywood*,
      729 F.3d 1196 (9th Cir. 2013)...................12, 13

10

11

*Graham v. DaimlerChrysler Corp.*,
      34 Cal. 4th 553, 579 (2004), *as modified* (Jan. 12, 2005)...........12

12

13

*Grove v. Wells Fargo Fin. California, Inc.*,
      606 F.3d 577 (9th Cir. 2010).....................12, 19, 20

14

15

*Hensley v. Eckerhart*,
      461 U.S. 424 (1983) ...................12-14, 18

16

17

*Hiken v. Dep't of Defense*,
      836 F.3d 1037 (9th Cir. 2016).......................16

18

19

*Innovative Health, LLC v. Biosense Webster, Inc.*,
      2024 WL 62948 (9th Cir. Jan. 5, 2024) ...................9

20

21

*K.M. v. Tustin Unified Sch. Dist.*,
      78 F. Supp. 3d 1289 (C.D. Cal. 2015).......................15

22

23

*Kennedy Comm'n v. City of Huntington Beach*,
      91 CA5th 436 (2023)...................................15

24

25

*Moreno v. City of Sacramento*,
      534 F.3d 1106 (9th Cir. 2008).......................13

26

27

*Missouri v. Jenkins*,
      491 U.S. 274 (1989) ...................................12

28

4

*Parsons v. Ryan*,
　　949 F.3d 443 (9th Cir. 2020) ........................................................................ 19

*Perdue v. Kenny A. ex rel. Winn*,
　　559 U.S. 542 (2010) ............................................................................. 17, 19

*Perkins v. Standard Oil Co. of California*,
　　399 U.S. 222 (1970) ............................................................................. 12, 14

*Perkins v. Standard Oil Co. of California*,
　　474 F.2d 549 (9th Cir. 1973) ........................................................................ 7

*Roberts v. City & Cnty. of Honolulu*,
　　938 F.3d 1020 (9th Cir. 2019) .................................................................... 13

*Serrano v. Unruh*,
　　32 Cal. 3d 621 (1982) ......................................................................... 13, 14

*Stanger v. China Elec. Motor, Inc.*,
　　812 F.3d 734 (9th Cir. 2016) ...................................................................... 19

*Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*,
　　460 F.3d 1253 (9th Cir. 2006) .................................................................... 12

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
　　676 F.2d 1291 (9th Cir. 1982) ............................................................. 11, 14

*Yuga Labs, Inc. v. Ripps*,
　　2024 WL 489248 (C.D. Cal. Jan. 11, 2024) .......................................... 19, 20

**STATUTES AND RULES**

The Clayton Antitrust Act ("Clayton Act"),
　　15 U.S.C. § 12 *et seq.* ..................................................... 7, 10, 11, 14, 19

　　§ 15(a) ................................................................................ 7, 11, 19, 20-22

　　§ 26 ........................................................................................................ 7

Sherman Act, 15 U.S.C. § 1 *et seq*. ..................................................................8, 11

     Section 1, 15 U.S.C. § 1 .............................................................................8

     Section 2, 15 U.S.C. § 2 .............................................................................8

28 U.S.C. § 1821.............................................................................................19

28 U.S.C. § 1920.............................................................................................19

Cartwright Act, Cal. Bus. & Prof. Code § 16720 *et seq*. ..........................7, 8, 11, 19

     § 16720 .................................................................................................8

     § 16750(a)..............................................................................7, 11, 19, 21

Fed. R. Civ. P. 54...........................................................................................19

Fed. R. Civ. P. 54(d) ......................................................................................19

L.R. 54-2 .......................................................................................................19

L.R. 54-4 .......................................................................................................20

L.R. 54-8 .......................................................................................................19

*PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COST OF SUIT*

## I.    INTRODUCTION

On May 16, 2025, following an eight-day trial, a jury unanimously found for Plaintiff Innovative Health LLC ("Innovative") on all four of Innovative's antitrust claims.  It awarded Innovative $147,406,481—the full requested damages amount—which was automatically trebled under the Clayton Act, 15 U.S.C. § 15(a), and Cartwright Act, Cal. Bus. & Prof. Code § 16750(a).  Innovative's application for permanent injunctive relief is pending before the Court.  *See* Dkt. 535.

The verdict came over five and a half years after counsel Jeffrey Berhold initially filed the complaint in this matter.  The intervening years saw three motions to dismiss, extensive discovery and depositions, the exchange of expert reports, a motion for summary judgment, a successful appeal to the Ninth Circuit, additional discovery and expert reports, and thorough pre-trial preparation.  The positive outcome in this case was the culmination of dedicated, years-long efforts by Mr. Berhold along with local counsel, appellate counsel, and trial counsel.

A successful federal antitrust plaintiff shall recover "the cost of suit, including a reasonable attorney's fee."  15 U.S.C. §§ 15(a), 26.  This award is mandatory and "encourage[s] private persons to undertake the enforcement of the antitrust laws in order to more effectively carry out Congressional policy against illegal monopolies and restraints of trade."  *Perkins v. Standard Oil Co. of California*, 474 F.2d 549, 554 (9th Cir. 1973).  The California Cartwright Act similarly requires that a successful plaintiff "be awarded a reasonable attorneys' fee together with the costs of the suit."  Cal. Bus. & Prof. Code § 16750(a).

The excellent results obtained for the client in the litigation, counsel's skill and experience, the complexity and length of the case, and the risk that counsel took in this matter, render counsel's requested fees and costs, detailed in this application, more than reasonable.

## II.    BACKGROUND

### A.    Pre-Trial Proceedings

Innovative filed its initial complaint against Biosense Webster, Inc. ("Biosense") on October 18, 2019, alleging that Biosense violated Sections 1 and 2 of the Sherman Act and Section 16720 of the California Cartwright Act through its case coverage policy, blocking technology, and anticompetitive collection practices. *See* Dkt. 1.  The claims survived three motions to dismiss from Biosense, *see* Dkts. 35, 51, 60, resulting in the operative Corrected Second Amended Complaint, *see* Dkt. 59.  Counsel in this early phase of the case consisted of lead counsel and sole practitioner Jeffrey Berhold of Jeffrey L. Berhold, P.C. and local counsel Panteha Abdollahi of Theodora Oringher PC.

Mr. Berhold engaged in extensive discovery on behalf of Innovative. Innovative produced 162,285 documents (~700,000 pages) in discovery.  Biosense, in turn, produced 106,582 documents (~750,000 pages), including roughly a dozen spreadsheets with voluminous sales data.  Mr. Berhold also subpoenaed and reviewed documents and data from over twenty third parties, including hospitals, distributors, and other cardiac mapping machine manufacturers.  Mr. Berhold took or defended nearly 40 depositions in 2021.

Counsel also worked with Innovative's economic expert, Dr. Eric Forister, to prepare an opening expert report, supplemental report, and rebuttal report in 2021. To conduct this work, Dr. Forister reviewed hundreds of documents and dozens of depositions, analyzed many years of produced sales data, and reviewed relevant academic research.  *See* Dkt. 544 (Trial Tr. Day 8) at 28:10-14.

Following the close of discovery in the fall of 2021, Mr. Berhold focused on preparations for trial (then scheduled for April 5, 2022), including preparation of a witness list, exhibit list, deposition designations, and motions *in limine*.

**B.    Innovative's Successful Appeal**

On March 22, 2022, just two weeks before the then-scheduled trial date, the Court granted summary judgment to Biosense on its market definition arguments. *See* Dkt. 175.  Joshua Davis, of Berger Montague PC ("Berger Montague"), was retained to brief and argue the appeal.  The Ninth Circuit reversed, finding that "Innovative has produced sufficient evidence to defeat summary judgment[.]" *Innovative Health, LLC v. Biosense Webster, Inc.*, 2024 WL 62948, at *3 (9th Cir. Jan. 5, 2024).  Mr. Davis and his firm have remained involved with the case since, primarily in relation to Dr. Forister's expert work and drafting/argument of motions and other legal filings.

Following remand from the Ninth Circuit, the Court initially set the case for trial on August 16, 2024.  *See* Dkt. 218. The then-existing team – consisting of Mr. Berhold, Mr. Davis, associates at Berger Montague, and Ms. Abdollahi – prepared for trial, including by conducting a mock jury exercise on June 12, 2024.  Around that same time, the Court pulled the case from the trial schedule pending disputes between the parties over post-remand supplemental data production.  *See* Dkt. 229.

Counsel then successfully moved for an order requiring Biosense to produce supplemental sales data and to re-open discovery to subpoena additional sales data from Stryker (another independent reprocessor) and Abbott (Biosense's competitor). *See* Dkts. 236, 237, 246.  Counsel for Innovative had to return to court in November 2024 to ensure Biosense's full compliance with the Order.  *See* Dkt. 267.  The Court also indicated, following remand, that the parties could exchange supplemental expert reports to address the updated data and intervening law and facts.  *See* Dkt. 214 (Hr'g Tr.) at 7:1-4.  The Court set a new trial date of April 29, 2025.

**C.    Innovative's Success at Trial**

In the summer of 2024, Innovative retained Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C. ("Kellogg Hansen") as lead trial counsel.  The core trial team

*PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COST OF SUIT*

1  consisted of two partners, five associates, and an experienced team of support staff.

2  Mr. Berhold, Ms. Abdollahi, and Mr. Davis remained closely involved in the case.

3      Trial preparations began ramping up in October 2024.  Counsel worked with

4  Dr. Forister to prepare his supplemental expert report, submitted on December 2,

5  2024.  Counsel also identified and disclosed two new trial witnesses and conducted

6  a renewed review of the 250,000+ documents produced during discovery,

7  identifying many new trial exhibits.  Counsel spent substantial time during this

8  period refining the presentation of the case for trial and further developing

9  supporting evidence, including through conversations with Innovative employees.

10  A second mock jury exercise followed in January 2025, along with an expert reply

11  from Dr. Forister filed on February 19, 2025.

12      As trial approached, preparation intensified.  The trial team prepared direct

13  examination outlines and conducted witness preparation for six Innovative

14  employees, and it arranged, through counsel, for the appearance of three third-party

15  witnesses.  Trial counsel reviewed the dozens of depositions in this case, and took or

16  defended six additional depositions, including two expert depositions.  Preparations

17  also included identifying hundreds of additional potential exhibits, obtaining

18  business record certifications from third-party hospitals, and challenging Biosense's

19  over-redaction of non-privileged documents.

20      Counsel for Innovative filed a *Daubert* motion and four motions *in limine*—

21  three of which the Court granted.  Counsel successfully defended against the

22  *Daubert* motion and motions *in limine* that Biosense filed.  Innovative's counsel

23  also drafted proposed jury instructions, proposed jury selection questions, a pretrial

24  conference order, a memorandum of contentions, and a trial brief.  Meanwhile,

25  Innovative's counsel continued witness preparation and drafted cross examination

26  outlines for Biosense's witnesses.  Counsel also prepared a voir dire strategy, an

27  opening statement, and a refined list of exhibits to be used at trial.

28

Trial commenced on May 6, 2025 and lasted 8 days.  Innovative's counsel put on 10 live witnesses, played 6 deposition videos, introduced roughly 220 exhibits, and cross-examined 7 witnesses for the defense.  After closing arguments, the jury returned a verdict for Innovative on all claims, and awarded the full amount requested: $147,406,481, which was trebled under the Clayton and Cartwright Acts.  At the end of trial, the Court thanked counsel on both sides for the "well prepared" case.  *See* Dkt. 544 (Trial Tr. Day 8) at 169:13-14.

## III.    ARGUMENT

Pursuant to 15 U.S.C. § 15(a) and Cal. Bus. & Prof. Code § 16750(a), Innovative seeks an award of $19,127,296.00 in attorney's fees and $2,138,523.47 to $2,151,960.77 in cost of suit for its counsel's work through May 18, 2025.  Innovative will file a supplemental motion for attorney's fees and cost of suit for the period after May 18, 2025, after the Court resolves the pending matters listed in the Order Regarding Post-Judgment Briefing Schedules.  *See* Dkt. 534.

### A.    The Clayton and Cartwright Acts Provide For the Award of Reasonable Attorney's Fees and Cost of Suit

Because the jury found for Innovative on its three Sherman Act claims, Section 4 of the Clayton Act provides that Innovative shall be awarded "the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a).  Similarly, because the jury found for Innovative on its Cartwright Act claim, Innovative "shall be awarded a reasonable attorneys' fee together with the costs of the suit."  Cal. Bus. & Prof. Code § 16750(a).

"An award of attorney's fees as part of the cost of a successful antitrust suit is mandatory." *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1312 (9th Cir. 1982).  Because the purpose is to "encourage private persons to undertake enforcement of antitrust laws," the award should cover "all work reasonably performed in pursuit of a successful recovery of antitrust damages." *Id.*

Specifically, the award should account for the work not just of lawyers but also of paralegals and other support staff.  *See Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) ("[F]ees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is 'the prevailing practice in a given community.'") (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)).  It should also include an "award of counsel fees for legal services performed at the appellate stages of [this] successfully prosecuted private antitrust action."  *Perkins v. Standard Oil Co. of California*, 399 U.S. 222, 223 (1970).  And the award should cover reasonable out-of-pocket litigation expenses.  *See Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (award includes "non-taxable costs where statutes authorize attorney's fees awards to prevailing parties.").

### B.     Innovative's Attorney's Fee Request is Reasonable

To calculate reasonable attorney's fees, courts generally start with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This is the "lodestar method."  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see also Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004), *as modified* (Jan. 12, 2005) (California courts assess attorney's fees using a "lodestar figure").

Employing this method, Innovative seeks an award of attorney's fees in the amount of **$19,127,296.00**.  This includes $4,663,015.00 for the work of Mr. Berhold at Jeffrey L. Berhold, P.C. ($1,190/hr), $780,230.00 for Ms. Abdollahi ($1,025/hr) at Theodora Oringher PC, $2,625,001.00 for the work of Joshua Davis ($1,360/hr) and his team at Berger Montague PC, and $11,059,050.00 for Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., which has rates for trial counsel between $850/hr and $1,795.00/hr.

As detailed in the attached declarations—including a declaration from attorney's fee expert Mr. Richard Pearl—and as set forth below, both the number of

hours and the hourly rates underlying these amounts are reasonable given the case's complexity, the favorable result for the client, and counsel's extensive experience.

## 1.    Reasonable Hours

The first step in the lodestar analysis is to "determine a reasonable number of hours for which the prevailing party should be compensated." *Gonzalez*, 729 F.3d at 1202. A "'reasonable' number of hours" is the "'the number of hours which could reasonably have been billed to a private client'" in a non-contingency case. *Id.* (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (internal modifications omitted)); *see also Roberts v. City & Cnty. of Honolulu*, 938 F.3d 1020, 1026 (9th Cir. 2019) ("court should consider in light of the entire record whether a reasonable attorney with his client's interests in mind would have" performed the claimed work); *Serrano v. Unruh*, 32 Cal. 3d 621 (1982) (attorney's fee awards "ordinarily include compensation for all hours reasonably spent"). "Where," as here, "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]" *Hensley*, 461 U.S. at 435; *see also Feminist Women's Health Ctr. v. Blythe*, 32 CA4th 1641, 1674 n.8 (1995) (quoting *Hensley*).

The Court's reasonable hours analysis "should begin with the billing records the prevailing party has submitted." *Gonzalez*, 729 F.3d at 1202. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d at 1112. "[D]eference to the hours a party actually devoted to litigation is particularly appropriate where," as here, "its adversary adopted a full-court-press strategy of vigorously litigating all possible issues in a case." *Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council Inc.*, 2018 WL 5791869, at *5 (N.D. Cal. Nov. 5, 2018).

*PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COST OF SUIT*

Innovative's attorneys have submitted contemporaneous time records for all 20465 hours claimed.  *See* Ex. B to Ho Decl.; Ex. B to Davis Decl.; Ex. B to Abdollahi Decl.; Ex. B to Berhold Decl.  These records include detailed descriptions of counsel's work that are more than sufficient to allow the Court to evaluate the work performed.  The fact that counsel's hours are often recorded using so-called "block billing" (describing more than one task in a single time entry) is an acceptable practice in these circumstances.  *See* Pearl Decl. ¶¶ 54-59.  Indeed, as Mr. Pearl attests, counsel's records are "very detailed" and do not contain any "red flags" such as "obvious inconsistencies, implausible mismatches between hours and task description, or overly repetitive descriptions." *Id*. at ¶¶ 56-57.  Further, "many of the block-billed entries were made during times when so many different tasks are being performed in one day—e.g., during the most intensive time of trial prep and during trial itself—that it would be infeasible and inefficient to stop and record time spent on each finite task." *Id*.  For example, nearly 85% of Kellogg Hansen's entries that are block billed for more than 10 hours took place between March 1, 2025 and May 18, 2025, the period two months before trial and during trial.  *See id*.

Berger Montague's requested hours include 1,099.3 hours for appellate work, amounting to $1,020,820.50.  *See* Davis Decl. ¶¶ 17, 24.  Fee awards under Section 4 include an "award of counsel fees for legal services performed at the appellate stages of a successfully prosecuted private antitrust action." *Perkins*, 399 U.S. at 223; *see Twin City Sportservice*, 676 F.2d at 1316 ("We believe that in order to advance the purpose of the attorney's fees provision of section 4 of the Clayton Act, [plaintiff] is entitled to all reasonable fees generated at every stage of this litigation: first trial, appeal, and post-remand work."); *see also Serrano*, 32 Cal. 3d at 637 ("[I]t is established [in California] that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial and on appeal.").

In preparing their time records for the Court, counsel exercised "billing judgment." *Hensley*, 461 U.S. at 431.  In particular, counsel excluded hours for any

timekeepers who billed fewer than 20-25 hours on the case, as well as hours for some matters that could be considered administrative.  This means a voluntary reduction of approximately 135 hours ($123,069.50) for Kellogg Hansen and 118.7 hours ($87,193.50) for Berger Montague.  *See* Ho Decl. ¶ 34; Davis Decl. ¶¶ 20-21. Ms. Abdollahi also omitted hours worked by another attorney during her maternity leave and all hours worked by her paralegal.  *See* Abdollahi Decl.  ¶ 2, n. 2.  This billing judgment supports the reasonableness of counsel's requested hours.  *See K.M. v. Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1304 (C.D. Cal. 2015) (rejecting defendant's proposed 10 percent reduction, noting counsel had excised more than 200 hours from fee claim); *Kennedy Comm'n v. City of Huntington Beach* 91 CA5th 436, 466 (2023) (noting counsel's voluntary elimination of 500 hours).

Counsel also submitted declarations attesting that the hours spent were reasonable and necessary to secure the favorable result for Innovative.  *See* Ho Decl. ¶ 36; Davis Decl. ¶ 19; Abdollahi Decl. ¶ 11; Berhold Decl. ¶ 8.  Mr. Berhold states that, in his experience, "the prosecution of antitrust cases often require more than five years and attorney time in the tens of thousands of hours." Berhold Decl. ¶ 8. Ms. Abdollahi shares her perspective that this litigation has been "time consuming, litigated extensively, and vigorously defended by Biosense Webster" with each step being "hard fought."  Abdollahi Decl. ¶ 11.  Mr. Ho explains that the roughly 12,900 hours the firm spent preparing the case for trial over a ten-month period is reasonable given the extensive work performed, *see* Ho Decl. ¶ 36, and is "conservative" compared the hours the firm spent on another recent non-contingency antitrust trial.  *See id.* at ¶ 37; *see also* Davis Decl. ¶ 19 ("We have expended similar amounts of time on appeals and trials in other complex antitrust cases.").

Counsel's fee expert, Mr. Richard Pearl, similarly attests that "the net number of hours for which Counsel request compensation appears to be consistent with the range of hours [he] would expect to have been spent successfully litigating an

antitrust claim of this duration, intensity, complexity, and results." Pearl Decl. ¶ 52.
As set forth more fully in his declaration, Mr. Pearl bases his opinion on the
completeness of counsel's time records (¶ 52), the "voluminous amount of work
required to obtain such a favorable resolution of plaintiff's antitrust claims" (¶¶ 59-
60), how "Biosense vigorously resisted and fiercely litigated this case," (¶ 63), and
"the excellent results achieved for Innovative." (¶ 64).¶

### 2.    Reasonable Rates

The next step is to determine reasonable hourly rates. Relevant factors
include the "experience, reputation, and ability of the attorney; the outcome of the
results of the proceedings; the customary fees; and the novelty or the difficulty of
the question presented." *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1044 (9th Cir.
2016) (internal citation omitted). "The reasonable rate should generally be guided
by 'the rate prevailing in the community for similar work performed by attorneys of
comparable skill, experience, and reputation.'" *Id.* "In general, 'affidavits of the
plaintiffs' attorney and other attorneys regarding prevailing fees in the community,
and rate determinations in other cases, particularly those setting a rate for the
plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.'" *Id.*

The rates used in calculating the lodestar here reflect the current (July 2025)
billed rates of each firm, except for Mr. Berhold, who does not have a standard
billed rate in the same sense, as he has represented clients almost entirely on a
contingency basis over the last ten years. *See* Berhold Decl. ¶ 9. Mr. Berhold's
requested rate is reasonable for an attorney of his experience and expertise. *See id.*;
Pearl Decl. ¶¶ 23 & n.5, 33.

Innovative's counsel have submitted declarations attesting to their well-
recognized antitrust experience and fee awards in comparable cases. Mr. Berhold
explains that he has "extensive experience in antitrust counseling and litigation" and
that he "was uniquely situated to effectively prosecute this case," Berhold Decl. ¶¶
4, 10, given his experience in another similar case.

1    Mr. Davis explains that his firm, Berger Montague, is "a leader in the
2  plaintiff's antitrust bar" with recent settlement victories in several major antitrust
3  class actions, leading to comparable fee awards.  Davis Decl. ¶¶ 4, 6, 23.  In fact,
4  Berger Montague, "has recovered more compensation in antitrust class action
5  settlements as lead counsel than any other law firm in the country during the
6  fourteen-year period ending in 2023."  Davis Decl. ¶ 4.  Berger Montague is also
7  well known for its appellate advocacy in complex cases.  *See* Davis Decl. ¶ 8.

8    Mr. Ho explains that Kellogg Hansen represents both plaintiffs and
9  defendants in complex commercial cases.  Ho Decl. ¶ 4.  Accordingly, the 2025
10  rates it seeks "are the same rates paid by Kellog Hansen's hourly antitrust clients."
11  *Id.* at ¶ 41.  Moreover, other courts have recently found Kellogg Hansen's current
12  billing rates reasonable.  *See id.* at ¶ 40.  As for Kellogg Hansen's experience, the
13  firm has won or settled many plaintiff-side antitrust matters, including "the two
14  largest private judgments collected under the U.S. antitrust laws," represented
15  defendants in antitrust matters (including Meta in the recent FTC trial), and "won
16  most of the major antitrust cases to come before the Supreme Court in the past two
17  decades."  *Id*. at ¶¶ 5-7.

18    Ms. Abdollahi, in turn, has attested to her familiarity with local practices, *see*
19  Abdollahi Decl. at ¶ 7, which proved invaluable in this case.

20    Innovative appropriately used current—as opposed to historical—rates of its
21  attorneys in its lodestar to account for the delay in payment.  *See Perdue v. Kenny A.*
22  *ex rel. Winn*, 559 U.S. 542, 556 (2010).  Using current rates "compensate[s]
23  prevailing parties for any delay in the receipt of fees by awarding fees at current
24  rather than historic rates in order to adjust for inflation and loss of the use [of]
25  funds."  *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992).  This litigation
26  has persisted for almost six years, making use of current rates appropriate to
27  "compensate [Innovative's] attorneys for lost income they might have received
28  through missed investment opportunities as well as lost interest."  *Id.* at 1406.

17

Innovative's fee expert, Mr. Richard Pearl, attests to the reasonableness of these rates in the context of this matter. *See* Pearl Decl. ¶¶ 21-51. Mr. Pearl cites the fact that counsel's requested rates are paid by many of counsel's non-contingency clients. *Id.* ¶ 40. Moreover, Mr. Pearl explains that, in his many decades of experience, the rates applied by counsel in this case fall at or below the rates charged by comparable counsel in the Los Angeles market. *Id.* ¶¶ 40-44. His findings are corroborated by independent rate reports compiled by third parties. *See* Ex. B to the Pearl Decl. (Real Rate Report); Ex. C to the Pearl Decl. (2018 Peer Monitor Rate Report); Pearl Decl. ¶¶ 48-51.

Counsel's strong performance and the excellent results counsel obtained for Innovative also support the reasonableness of the requested rates. "Innovative's Counsel were opposed by well-resourced opposing counsel who vigorously defended Biosense's position, requiring Counsel to defeat a motion to dismiss, a motion for summary judgment (via appeal to the Ninth Circuit), motions *in limine*, and a *Daubert* motion[.]" Pearl Decl. ¶ 36. Counsel for Innovative navigated these hurdles to obtain a jury verdict on all claims and all requested damages despite being opposed by counsel from "well-known international law firms with sizable antitrust practices[.]" Pearl Decl. ¶ 37. Indeed, counsel's requested rates are on par with if not less than those charged by Biosense's lead trial counsel, Patterson Belknap Webb & Tyler LLP, and former defense counsel, Paul Weiss. *See* Pearl Decl. ¶¶ 46-47.

Mr. Pearl also credits the fact that Kellogg Hansen associates performed much of the substantive trial preparation in this matter (e.g., over two-thirds of all work done by the core Kellogg Hansen trial counsel team), thereby lowering the overall lodestar. *See* Pearl Decl. ¶ 26. This can be seen in the fact that the hourly blended rate in this case across all firms is $934.63/hr, which compares favorably to the rates of other firms. *See id.*

### 3.     No Downward Adjustment is Appropriate

"A strong presumption exists that the lodestar figure represents a reasonable fee." *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020).  Accordingly, "adjustments to the lodestar 'are the exception rather than the rule.'"  *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) (per curiam).  Courts nonetheless have discretion to "adjust the fee upward or downward, including the important factor of the 'results obtained.'"  *Hensley*, 461 U.S. at 434.

No downward adjustment is appropriate here.  Rather, the highly favorable result counsel obtained for Innovative could well warrant an upward adjustment. *See Perdue*, 559 U.S. at 554 (lodestar enhancements are allowed in "'rare' and 'exceptional'" cases where the result reflects the "superior" quality of counsel's performance); *see also* Pearl Decl. n.2 (noting that counsel "may well be entitled" to a multiplier under California law).  Nonetheless, Innovative does not seek any enhancement, further contributing to the reasonableness of its fee request.

### C.     Innovative's Litigation Expenses and Costs

In accordance with Federal Rule of Civil Procedure 54 and Local Rule 54-2, Innovative submitted a Form CV-59 application for $140,946.47 in taxable costs to the Clerk's Office on June 20, 2025.  *See* Dkt. 536.  Taxable costs are those set out in 28 U.S.C. §§ 1821 and 1920. Innovative now moves this Court for an order awarding additional, non-taxable litigation expenses under 15 U.S.C. § 15(a) and Cal. Bus. & Prof. Code § 16750(a).  *See* L.R. 54-8 (allowing a "motion for an award of costs not governed by F.R.Civ.P. 54(d)").

In the Ninth Circuit, prevailing plaintiffs "recover non-taxable costs as a component of attorneys' fees where a statute allows for an award of reasonable attorneys' fees." *Yuga Labs, Inc. v. Ripps*, 2024 WL 489248, at *11 (C.D. Cal. Jan. 11, 2024) (citing *Grove*, 606 F.3d at 580).  The Clayton and Cartwright Acts are such fee-shifting statutes.  *See* 15 U.S.C. § 15(a) and Cal. Bus. & Prof. Code § 16750(a). Awardable non-taxable costs are any "reasonable out-of-pocket

litigation expenses that would normally be charged to a fee paying client[.]"  *Grove*, 606 F.3d at 581.  This includes cost such as "travel, mediation services, and video conferencing services used in depositions," *id.* at 579 as well as costs for "computerized research" and "postage, investigator expenses, copying costs, hotel bills, meals, messenger service and employment record reproduction," *Yuga Labs*, 2024 WL 489248, at *11.

The costs for which counsel seek reimbursement are primarily costs for hotel, trial graphics, research fees (e.g., Westlaw and Lexis), travel and parking, transcript purchases, deposition costs, shipping/mail/delivery fees, meals, computer equipment for trial, jury consulting, document hosting, mediation fees, pro hac vice admissions, and court fees.  Mr. Pearl attests that, in his experience, these "are the type of expenses firms handling heavily-litigated cases like this one routinely bill to and are paid by their fee-paying clients."  Pearl Decl. ¶ 67.

All costs relate to the trial proceedings; in accordance with Local Rule 54-4, Berger Montague does not seek reimbursement for approximately $20,000 in out-of-pocket costs incurred in relation to the appeal.  *See* Davis Decl. ¶ 24; L.R. 54-4.

Counsel have detailed their respective non-taxable litigation expenses in their declarations.  *See* Ex. C to Ho Decl.; Ex. C to Davis Decl.; Ex. C to Abdollahi Decl.; Ex. C to Berhold Decl.  Those costs are summarized here:

| Counsel | Non-Taxable Costs |
| --- | --- |
| Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. | $1,380,156.04 |
| Berger Montague PC | $87,193.50 |
| Jeffrey L. Berhold, P.C. | $716,801.73 - $730,239.03* |
| Theodora Oringher PC | $6,637.01 |
| **TOTAL:** | **$2,123,400.39 - $2,136,837.69*** |

---

* Biosense has informed Innovative that it plans to object to the taxable status of certain discovery-related "search and cull" costs included in Innovative's CV-59

As set out more fully in counsel's declarations, the costs incurred in this litigation are reasonable given the length, magnitude, and complexity of this case. Because Mr. Berhold agreed to advance most of the costs of litigation, he has "taken careful steps to keep costs low, e.g., booking flights in economy, asking the client rather than a vendor to handle any document collection where possible, and negotiating court reporter rates at a bulk rate for both parties for the case." *See* Berhold Decl. ¶ 13.

Similarly, Kellogg Hansen, in preparing for trial, made "significant efforts to keep travel costs low" and to explore savings and negotiate deals to reduce the cost of lodging and the local trial office during the trial itself. *See* Ho Decl. ¶ 46. The costs incurred during the Innovative trial were comparable to costs during other recent trials that Kellogg Hansen conducted. *See id.* The fact that Berger Montague and Theodora Oringher are located in California also helped to reduce travel costs. *See* Davis Decl. ¶ 25. Mr. Pearl, drawing on his decades of experience, agrees that "the total amount of expense reimbursements claimed appear to [him] to be well within the range of expenses that would be expected in a case of this duration, intensity, and stakes, especially when the approximately $2.1 million in expenses claimed by Counsel's four law firms is compared to the $442,219,443 recovered for their client." Pearl Decl. ¶ 68.

---

application, totaling $13,437.30. *See* Berhold Decl. ¶ 12. Innovative maintains that those are appropriate taxable cost. However, at a minimum, the search and cull costs are a reasonable out-of-pocket litigation expenses to be awarded under 15 U.S.C. § 15(a) and Cal. Bus. & Prof. Code § 16750(a). Thus, to the extent the Clerk determines that the $13,437.30 in search and cull costs—or any other costs included in Innovative's CV-59 application—are non-taxable, Innovative respectfully requests that those costs be awarded as part of the litigation expenses requested in this motion.

IV.    **CONCLUSION**

Innovative respectfully requests that this Court grant the request for reasonable attorney's fees and cost of suit pursuant to 15 U.S.C. § 15(a) and Cal. Bus. & Prof. Code § 16750(a).


DATED:  July 3, 2025                    THEODORA ORINGHER PC

                                        By:  _/s/ Panteha Abdollahi_
                                             Panteha Abdollahi

                                        JEFFREY L. BERHOLD, P.C.

                                        By:  _/s/ Jeffrey L. Berhold_
                                             Jeffrey L. Berhold

                                        BERGER MONTAGUE PC

                                        By:  _/s/ Joshua P. Davis_
                                             Joshua P. Davis
                                             Matthew Summers

                                        KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

                                        By:  _/s/ Derek T. Ho_
                                             Derek T. Ho
                                             Andrew E. Goldsmith
                                             Matthew D. Reade
                                             Kelley C. Schiffman
                                             Rachel T. Anderson
                                             Annamaria M. Morales-Kimball
                                             Sean P. Quirk


                                        Attorneys for Plaintiff
                                        INNOVATIVE HEALTH LLC

*PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COST OF SUIT*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Innovative Health LLC, certifies that this brief contains 4,839 words, which complies with the word limit of Central District of California Local Rule 11-6.1.


DATED:  July 3, 2025                     KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.



By:  _____
                 */s/ Derek T. Ho*
                Derek T. Ho

*PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COST OF SUIT*