UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:  **[IN CHAMBERS] Order Regarding Motion for Permanent Injunction [535]**

Plaintiff Innovative Health LLC ("Innovative") moves for a permanent injunction against Biosense Webster, Inc. ("Biosense"). (Mot., Dkt. No. 535.) Biosense opposed. (Opp'n, Dkt. No. 546.) Innovative replied. (Reply, Dkt. No. 556.) Parties appeared for oral argument on July 21, 2025.

For the foregoing reasons, the Court **GRANTS** the motion but with modifications as to the scope of the proposed injunction.

The Court grants Innovative seven (7) days from this order to submit a revised proposed injunction. Biosense may oppose any language in Innovative's proposed injunction within seven (7) days following Innovative's filing. Both parties may submit additional briefings of no longer than one page if necessary.

I. **BACKGROUND**

The facts of this case are well known to the Court and the parties. The Court recites them here only as necessary to resolve this Motion.

Biosense, owned by Johnson & Johnson ("J&J"), is a corporation that manufactures and sells the CARTO 3 cardiac mapping system and electrophysiology ("EP") products, including catheters, that can be used with that system. (Corrected Second Amended Complaint ("SAC"), Dkt. No. 59 ¶¶ 12, 31.) Innovative is an Arizona company that reprocesses and sells EP catheters that can be used with cardiac mapping systems. (Id. ¶ 1.) Innovative alleged that Biosense's case coverage policy prohibits its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

clinical account specialists ("CAS") from supporting CARTO 3 mapping procedures using another manufacturer's catheters. (Id. ¶ 19.) Biosense's anti-reprocessing technology, like its Falcon security chip, also hindered the expedient market entry of Innovative's reprocessed catheters. (Id. ¶ 34.) Innovative brought this instant action alleging that Biosense violated federal and California antitrust laws. (See id.)

The trial commenced on May 6, 2025, and the jury reached its verdict on May 16, 2025. They returned a verdict in favor of Innovative on claims for unlawful tying under Section 1 of the Sherman Act, unlawful monopolization under Section 2 of the Sherman Act, attempted monopolization under Section 2 of the Sherman Act, and unlawful tying under Section 16720 of California's Business and Professions Code, the Cartwright Act. (Verdict, Dkt. No. 527.) The jury awarded Innovative damages in the amount of $147,406,481.00, which is automatically trebled to $442,219,443.00 pursuant to 15 U.S.C. § 15(a) and Cal. Bus. & Prof. Code § 16750(a). (Judgment, Dkt. No. 532.) The Court entered judgment in favor of Innovative on June 5, 2025. (Id.)

## II. LEGAL STANDARD

The standard for determining whether a permanent injunction should be granted is "essentially the same as the standard for a preliminary injunction, except that the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits." Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987).

To obtain a permanent injunction, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). The Court's "decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." Id. at 391.

In antitrust cases, district courts should fashion injunctive reliefs "to redress the antitrust violation proved" and "effective[ly] [] restore competition." United States v. E.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

I. du Pont de Nemours & Co., 366 U.S. 316, 323, 326 (1961); see Ford Motor Co. v. United States, 405 U.S. 562, 573 (1972).  Accordingly, it may be necessary for a district court to "order an injunction 'beyond a simple proscription against the precise conduct previously pursued.'"  Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., 20 F.4th 466, 486 (9th Cir. 2021) (citing Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 698 (1978)).  Nevertheless, the injunctive relief must not be "more burdensome to the defendant than necessary to provide complete relief to the plaintiff."  Epic Games, Inc. v. Apple, Inc., 67 F.4th 946, 1002 (9th Cir. 2023), cert. denied, 144 S. Ct. 681, 217 L. Ed. 2d 382 (2024), and cert. denied, 144 S. Ct. 682, 217 L. Ed. 2d 382 (2024) (cleaned up) (citations omitted).  An "injunction will only issue if the wrongs are ongoing or likely to recur," and the scope of the injunction is within antitrust law.  Fed. Trade Comm'n v. Qualcomm Inc., 969 F.3d 974, 1005 (9th Cir. 2020); see United States v. Borden Co., 347 U.S. 514, 520 (1954).

Further, the district court must adhere to the basic precept set forth in Rule 65(d), which requires "fair and precisely drawn notice of what the injunction actually prohibits."  Fed. R. Civ. P. 65(d); In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig., 958 F.3d 1239, 1263 (9th Cir. 2020), aff'd sub nom. Nat'l Collegiate Athletic Ass'n v. Alston, 594 U.S. 69 (2021) (citing Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1086–87 (9th Cir. 2004)).

### III. DISCUSSION

Innovative prevailed on all claims at trial: (1) unlawful tying arrangement under Section 1 of the Sherman Act; (2) unlawful monopolization under Section 2 of the Sherman Act; (3) attempted monopolization under Section 2 of the Sherman Act; (4) and unlawful tying arrangement under the Cartwright Act.  (See Verdict.)

Innovative now requests the Court issue a permanent injunction that:
1. Terminates Biosense's illegal case coverage policy by enjoining Biosense from:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

      A.    conditioning the provision of Clinical Support on the purchase of Biosense's catheters or Consumable[1], and

      B.    discriminating in the provision of clinical support or the availability of CARTO to parties other than Biosense.

2. Permanently enjoins Biosense from implementing its blocking Technology[2] that conditions the availability or use of CARTO on Biosense's or a third party's Consumable.

3. Permanently enjoins Biosense's collection of used Consumable that does not have (i) regulatory approval to reprocess under section 510(k) of the Food, Drug and Cosmetic Act or (ii) has a pending application for approval to reprocess under section 510(k) of the Food, Drug and Cosmetic Act, with the exception of:

      A.    Used Consumable to the extent necessary to support a 510(k) application to reprocess that Consumable,

      B.    Used Consumable to the extent necessary to investigate and remediate a defect, and

      C.    Ablation catheters that no other person reprocesses.

4. Orders Biosense's executive with the relevant knowledge and compliance to submit a report[3] to the Court every six months during the injunction term.

5. Requires notification of the injunction in writing, agreed by both parties, to:

      i.    Past and current CARTO users within 21 days of entry of the injunction that specify that Biosense will provide Clinical Support to every customer or end user on nondiscriminatory terms and without

---

[1] Biosense defines Consumable as a device (including, but not limited to, an electrophysiology catheter) originally manufactured by Biosense for use with CARTO. (Proposed Permanent Injunction, Dkt. No. 535-2 ¶ 1.3.) The Court does not find this term overbroad given there are other devices, not limited to catheters, that Biosense used to hinder competition in the relevant market. (Declaration of Matthew Reade ("Reade Decl."), Dkt. No. 535-1, Ex. 3, 40:1-18) (discussing the reprocessed Vizigo sheath, which was neither a catheter nor sensor-enabled, but was still included in Biosense's coverage policy).)

[2] Technology is defined as any technology installed by or for Biosense on CARTO, on hardware or software supporting the operation of CARTO or of any Consumable (e.g., remote server), or on a Consumable. (Id. ¶ 3.1.)

[3] See Proposed Permanent Injunction ¶ 5 for details of the report.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
|---|---|---|---|

| Title | Innovative Health LLC v. Biosense Webster, Inc. |
|---|---|

        regard to whether that person uses Consumables of someone other than Biosense[4];

    ii.    New CARTO purchasers of the injunction's terms;

    iii.    All sales employees, including all clinical account specialists, within 14 days of entry of the injunction and on an annual basis, of their and Biosense's obligation under the injunction; and

    iv.    All new sales employees, including all clinical account specialists, of this injunction within 10 days of the commencement of their employment.

6.    Permits Innovative to establish, at its expense, a hotline for reporting actual or potential noncompliance with this injunction, and requires Biosense to notify, within 21 days of receiving confirmation that it has been created, its employees and past and current CARTO users.

7.    Stays in effect for ten years from the date of entry of the permanent injunction subject to modification, extension, or termination for good cause.

(Modified Proposed Permanent Injunction, Dkt. No. 556-2.)

In sum, Innovative seeks a permanent injunction with respect to three categories of Biosense's practices: (1) case coverage policy regarding clinical support, (2) use of anti-reprocessing blocking technology, and (3) collection of catheters. (See Mot.) The Court discusses the eBay factors as to each category in turn. This Court will also address whether the requested relief is appropriate in scope and adequate to restore competition in the relevant market.

    *A.    Case Coverage Policy*

Innovative seeks to enjoin Biosense from conditioning its clinical support of CARTO on the use of Biosense's or a third party's catheters. Its proposed injunction also has a non-discriminatory clause that enjoins Biosense from limiting access to

---

[4] Innovative seeks the notice be sent to "all persons who Biosense understands have responsibility for contracting or procurement on behalf of past or current customers who have or have had a CARTO" and " every electrophysiology physician associated with those customers that currently have a CARTO." (Proposed Permanent Injunction ¶ 6.1.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:19-cv-01984-JVS-KES                                Date   July 31, 2025

Title   Innovative Health LLC v. Biosense Webster, Inc.

CARTO or its clinical support for those who use non-Biosense catheters.  (See Proposed Permanent Injunction ¶ 2.)

   1.  Entitlement to Injunctive Relief

  First, Innovative must demonstrate that it faces an irreparable antitrust injury. There is an irreparable injury if the "wrongs are ongoing or likely to reoccur." Qualcomm, 969 F.3d at 1005 (citations omitted); Zenith Radio Corp. v. Hazeltine Rsch., Inc., 395 U.S. 100, 139 (1969) ("[Plaintiff] need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur.")  Loss of business, goodwill, reputation, as well as a "lessening of competition constitutes an irreparable injury."  Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1023 (9th Cir. 2016); Steves & Sons, Inc. v. JELD-WEN, Inc., 988 F.3d 690, 719 (4th Cir. 2021).  On the other hand, economic injuries or "readily calculable money damages" are not considered irreparable.  Epic Games, 67 F.4th at 1003.

  Biosense argues that there is no irreparable harm because the damages from the clinical support policy are readily calculable money damages as Innovative's expert has shown.  (Opp'n at 8.)  However, this argument misses the mark.  The question is whether there is an ongoing or likelihood of recurring violation of the antitrust laws.  A lessening of competition resulting from Biosense's years of anticompetitive behavior is one that cannot be remedied by a single check.  See In re Google Play Store Antitrust Litigation, No. 20-CV-05671-JD, 2024 WL 4438249, at *4 (N.D. Cal. Oct. 7, 2024).  Moreover, an award of damages does not foreclose injunctive relief.  See Image Tech. Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1221–26 (9th Cir. 1997) (upholding both damages and the district court's permanent injunction).

  Biosense also contends that there is no irreparable harm because Innovative's business operated for years with Biosense's clinical support policy in place.  (Opp'n at 10.)  Again, the irreparable harm factor does not turn on the mere existence of a business. The "threat of being driven out of business" or long-term harm to a business, such as the losing its market position, may be sufficient to demonstrate the requisite showing of irreparable harm.  Am. Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1474 (9th Cir. 1985); see Los Angeles Memorial Coliseum Comm'n, 634 F.2d at 1203.  The record

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

reflects instances where customers like Marin Health Medical stated they wish to use reprocessed Pentaray catheters from Innovative but was unable to do so because Biosense would stop covering their cases. (See, e.g., Trial Tr. 5/7/25 PM 88:11-14.) While the loss in revenue does not constitute irreparable harm on its own, alienating businesses by preventing customers from buying Innovative's reprocessed devices and depriving them of choice exacerbates the harm to Innovative's business, reputation, and goodwill. See Boardman, 822 F.3d at 1023.

In addition, here, the jury found Biosense had "violated Section 1 of the Sherman Act through a tying arrangement." (Verdict ¶ 1.) The instructions for the tying claim require that the jury find that there was a substantial harm to competition or reduction in competition in the relevant market. (See Jury Instructions, Dkt. No. 521, Nos. 16-17.) So long as Biosense clinical support policy is tied to the purchase of its catheters, Innovative's business will continue to suffer. Thus, both the first and second[5] eBay factors weigh in favor of an injunction.

The public interest factor also favors granting injunctive relief. The injunction should "unfetter a market from anticompetitive conduct" and effectively "pry open to competition a market that has been closed by defendant['s] illegal restraints." Ford Motor Co., 405 U.S. at 577 (citing Int'l Salt Co. v. United States, 332 U.S. 392, 401 (1947), abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28 (2006)). This factor looks at the impact of the injunction on non-parties. Epic Games, 493 F. Supp. 3d at 852.

Here, the injunction regarding the tying arrangement would allow other competitors in the relevant markets to develop their own CARTO-compatible catheters or devices. Ensuring customers have a variety of options and access to higher quality products is a fundamental goal of antitrust law. In this regard, Innovative makes the more persuasive argument for enjoining Biosense' case coverage policy, as well as its anti-reprocessing technology, and catheter collection policies. Innovative contends that

---

[5] The second eBay factor, the adequacy of legal remedies, requires district courts to ascertain whether remedies available at law, such as monetary damages, are inadequate to compensate for the injury suffered. 547 U.S. at 391. For the same reasons that the Court found irreparable harm, the Court determines there are no adequate legal remedies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

the injunction will "benefit all independent reprocessors of CARTO-compatible products," not just Innovative's position in the market. (Mot. at 23.) Since contingent clinical support for CARTO on the use of Biosense's catheters locks in buyers, the injunction would help unfetter locked-in customers. (Id. at 22–23; see, e.g., Reade Decl., Ex. 3, 106:15-20.) Moreover, as Innovative argues, a competitive market may result in lower prices and higher quality products that contribute to better patient care. (Mot. at 28–29; Reade Decl., Ex. 3, 79:9-25 ("[D]ata sources indicate that Innovative has higher quality than Biosense or Sterilmed.").) In sum, there is no doubt that the eBay factors support granting an injunction.[6]

### 2. Scope and Effectiveness of the Injunction

Biosense sets forth various arguments as to why the non-discriminatory clause in particular is overbroad and unnecessarily burdensome. The clause states in relevant part:

> Biosense is further enjoined from discriminating in the provision of Clinical Support or the availability of CARTO because of the purchase or use of (or the intention to use) a Consumable of someone other than Biosense. Without limitation, and by way of example only, Biosense may not refuse, withdraw, or degrade the availability of Clinical Support or CARTO, or charge a higher price for Clinical Support or for the sale, lease, or use of CARTO, because a hospital or doctor has used, is using, will use, or may use a Consumable of someone other than Biosense.

(Proposed Jury Instruction ¶ 2.2.)

As an initial matter, non-discriminatory provisions are not an unprecedented antitrust remedy. Courts have previously granted injunctions with nondiscriminatory

---

[6]Although Biosense argued at oral argument that it has authorized CAS to support any CARTO procedures and has no intention of resuming its case coverage policy, especially if the verdict is sustained on appeal, the grave antitrust violation under both sections of the Sherman Act clearly warrants an injunction under the eBay factors. If it claims that Biosense will scrap the policy regardless of the injunction, the issuance of an injunction will be of minimal burden to Biosense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

provisions. See Kodak, 125 F.3d at 1227; Optronic Techs., 20 F.4th at 486; see also In re Google Play Store Antitrust Litig., at *7. Biosense argues that Kodak and Optronic are inapposite because they involved sales of goods, which are the "same regardless of the circumstances of the sale" whereas clinical support depends on the catheter used or the arrhythmias being treated. (Opp'n at 15.) However, the distinction is of no material difference. The terms and conditions of sale or service are both subject to change. The language in Innovative's proposed injunction also largely replicates that in Kodak. (Reply at 16.) The Ninth Circuit affirmed a non-discriminatory clause that states, "Kodak shall not discriminate against any customer or other party on the basis that such customer or other party has used the parts or services of someone other than Kodak in connection with Kodak equipment." Kodak, 125 F.3d at 1227. Nevertheless, the Court is mindful that each individual case requires a unique set of injunctions tailored to the specific needs of the case.

First, Biosense contends that the injunction would force Biosense's CAS, who also sell and market Biosense's products, to do the same for Innovative's products. (Opp'n at 13–14.) This argument is meritless. The language of the non-discriminatory clause does not lend itself to such interpretation and the definition of Clinical Support is limited to "services provided to operate the CARTO." (Proposed Jury Instruction ¶ 1.4.)

Second, Biosense avers that the non-discriminatory provision restricts Biosense's ability to provide competitive pricing for its clinical support, which is currently free and only benefits buyers of Biosense catheters. (Opp'n at 14–15.) But that is precisely the issue. The current case coverage policy discriminates against non-Biosense catheter users and thus, the goal of this injunction is to level the playing field. Biosense also does not claim that they cannot continue to provide free clinical support. Prior to their case coverage policy, they provided their services to all users. (Reade Decl., Ex. 18, 69:16-19.) Innovative's expert witness also testified that other mapping system manufacturers provide free clinical support where a third-party catheter is used. (Reade Decl., Ex. 17, 84:24-85:1.) The Court also notes that it does not seek to encourage free-riding. As such, the proposed injunction does not prevent Biosense from charging for its clinical support; it merely prohibits Biosense from engaging in discriminatory pricing.

Third, Biosense argues that the non-discriminatory clause does not provide any guidance as to how it should allocate current or future clinical support resources. (Opp'n

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

at 15.) For instance, Biosense claims that the provision is unclear on how Biosense should respond to simultaneous requests for case support where one involves only Biosense's products and the other uses Innovative reprocessed catheters. (Id.) However, the proposed non-discriminatory provision is purposefully broad in that regard. It does not require that Biosense take on one case over another, but only that it not limit the availability of its clinical support based on the manufacturer. (See Proposed Permanent Injunction ¶ 2.2.)

Fourth, Biosense contends that conditioning the availability of CARTO, including its "sale, lease, or use," not just its clinical support policy, is overbroad. (Opp'n, at 16.) Biosense argues that its customers commonly finance CARTO through their commitment to buying their catheters. (Id.) Though the injunction would limit one method of financing CARTO, Biosense's own expert, Dr. Wu, testified that "there are many ways to finance a system purchase." (Reade Decl., Ex. 18, 28:24–29:5.) The sufficient alternative methods of acquiring CARTO put Biosense at a minimal competitive disadvantage. Innovative also makes the more persuasive argument that prohibiting the conditioning of clinical support on the purchase of Biosense's catheters without touching upon CARTO "would leave a giant loophole." (Reply at 18.) Without this provision, Biosense could limit access to CARTO without strictly tying its products. It was Biosense's position at trial that "clinical account specialist is not a separate market," but "simply part of the system that each of the mapping system companies provide." (Trial Tr. 5/6/25 PM, 89:17–25.) Biosense claimed there are "three pieces" to the system—cardiac mapping machine, catheters, and CAS. (Id. 87:3–7.) An injunction that focuses only on two of the three pieces would fail to remedy the lack of competition in the relevant market. Prohibiting Biosense from conditioning access to CARTO or its clinical support based on the manufacturer of the catheters for a discrete period is a step towards restoring competition. Given that district courts have "broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed," the Court determines that the provisions regarding the availability of CARTO are not overly broad. See Zenith Radio, 395 U.S. at 132 (citations omitted).

Finally, Biosense claims that the clause is vague as to what "discriminating" or "degrading" entails. (Opp'n at 12.) For instance, although Biosense's CAS do not have knowledge of Innovative's manufacturing process or technical specifications, they would

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

be required to "interpret[] maps and provid[e] insight on the images generated by the CARTO" under the proposed injunction. Biosense contends that its CAS would be placed in an untenable position attesting to the accuracy of the maps generated by non-Biosense catheters. (Id.) According to Biosense, the gap in knowledge and the required clinical support is likely to not only burden Biosense's CAS, but ultimately affect doctors and patient care. (Opp'n at 12–13.)

Since Biosense's does not "dispute that [Innovative] has FDA clearances that find [Innovative] devices [] substantially equivalent to predicate Biosense devices," the Court finds that Biosense's CAS can effectively support clinical procedures where Innovative's catheters are used. (Opp'n at 12.) It is also not evident that doctors ask CAS about the accuracy of catheters during clinical procedures.[7]

Nevertheless, even a hypothetical situation where a doctors asks CAS about Innovative's catheter technical specifications is a legitimate concern for Biosense that provides the clinical support. In the event that CAS are asked about specifications during procedures, the Court orders Innovative to add specific language in the modified proposed injunction that Biosense's CAS have no responsibility to make any representations as to the accuracy, performance, or specifications of a competitor's products.

For the foregoing reasons, the Court grants the injunction as to the case coverage policy with necessary modifications.

B.   *Anti-reprocessing Technology*

Innovative seeks to prohibit Biosense from implementing any future blocking technologies that condition the availability or use of CARTO on Biosense's devices. (Mot. at 15.) The jury found that Biosense violated Section 2 of the Sherman Act and awarded all $147 million that Innovative sought, including $8 million in damages for the delay in Innovative's market entry due to Biosense's blocking technology. (See Verdict;

---

[7] See, e.g., Trial Tr., 5/7/25 PM, 49:17–22 ("Q: But you don't know the process for Sterilmed to confirm the accuracy of its catheters, correct? A: No, I don't, but I understand there is some kind of professional relationships with J&J, but – Q: But you don't know the process – A: No, I do not."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Reade Decl. Ex. 3, 84:15-25.)

Biosense contends that Innovative cannot seek an injunction for its past conduct, including its electronically erasable programmable read-only memory chips ("EEROM") such as the Falcon chip, which was developed nearly a decade ago. (Opp'n at 17.) Innovative makes clear that it was not their intention to enjoin past conduct, but only future blocking technologies. (Reply at 19.) This eliminates much of the concern Biosense raises regarding the broad definition of "Technology." (Id. at 17–20.) To prevent further confusion, Innovative filed a modified proposed injunction that adequately clarifies that the injunction does not apply to technology deployed before June 5, 2025. (See Modified Proposed Permanent Injunction ¶ 4.2.3.)

The Court further finds that Innovative is entitled to its requested relief under the eBay factors. There is an ongoing irreparable injury, though to a lesser degree than that suffered due to the coverage policy. Here, Innovative overcame the hindrances of Biosense's current anti-reprocessing technology since around 2018 and has been compensated $8 million for the delay in market entry. (Cavanaugh Decl., Ex. 8, 109:4-6; Reade Decl. Ex. 3, 84:15-25.) The technology in the Falcon chip has remained the same since 2014 and Innovative provides no evidence other than its consideration to create a new version of this technology seven years ago. (See Declaration of Avi Shalgi ("Shalgi Decl."), Dkt. No. 546-18 ¶ 7.)

However, the Court finds an irreparable harm in that Biosense's technology has limited the use of CARTO to only Biosense's catheters, thereby lessening competition in the market. See Boardman, 822 F.3d at 1023. Although there may no longer be an ongoing harm, it is entirely possible that Biosense may seek to evade the injunction by creating a new version of its EEPROMs to exclude non-Biosense devices from functioning with CARTO. Allowing room for Biosense to continue developing anti-reprocessing technology would minimize Innovative's success at trial and make obsolete the positive competitive effects of this case. Furthermore, to restore effective competition in this market, the Court finds that a provision prohibiting future anti-blocking technology goes hand in hand with the injunction on Biosense's case coverage policy. Creating a market rife with competition is likely to benefit reprocessors,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

hospitals, doctors, and patients, serving public interest. Since Innovative does not request that Biosense change or eliminate its current EEPROMs, the proposed injunction would also impose no hardship on Biosense. Thus, for the same reasons that Innovative was entitled to injunctive relief as to the tying arrangement, the Court comes to the same conclusion as to the anti-reprocessing technology provision. (See Supra Section III.A.1.)

Biosense disputes that this provision will hinder innovation. (Opp'n 20–21.) For instance, Biosense avers that the center lumen of some Biosense catheters allows for more precise mapping, but simultaneously makes reprocessing more challenging. (Id. at 20.)

The goal of antitrust law is not to stifle innovation nor sacrifice patient care. In fact, it is very much the opposite. Injunctions, therefore, require a careful balance of considerations, weighing the requisite level of judicial power needed to restore competition with the defendants' hardships, business objectives, and ability to innovate. See E. I. du Pont de Nemours, 366 U.S. at 323. Thus, "caution is key" when it comes to fashioning an antitrust remedy. Alston, 594 U.S. at 106.

Here, Innovative agrees with Biosense that it does not seek to condemn benign innovations like the Pentaray's center lumen. (Reply at 19.) Accordingly, the Court finds that it is necessary to revise Innovative's No-Blocking Technology clause to reflect that the technology may delay reprocessing but may not be intentionally designed to prevent non-Biosense devices from functioning with CARTO. For example, the Falcon chips, designed to recognize non-Biosense reprocessed catheters and shut down CARTO in those instances, would be a clear violation of the injunction.

The Court grants seven (7) days for Innovative to revise the terms of the injunction.

C. *Catheter Collection*

Innovative requests that the Court enjoin Biosense from collecting used catheters

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

that they do not have regulatory approval to reprocess under Section 510(k) or have a pending application for approval to reprocess. (Modified Proposed Permanent Injunction ¶ 4.)

Generally, the scope of the injunction must be coterminous with the antitrust violation. See In re Google Play Store Antitrust Litig., at *4. However, the injunction may be broad as to limit "practices connected with acts actually found to be illegal" United States v. U.S. Gypsum Co., 340 U.S. 76, 89 (1950), and to "ensure that there remain no practices likely to result in monopolization in future," Optronic, 20 F.4th at 486.

Biosense argues that Innovative failed to demonstrate an irreparable injury due to its catheter collection practices. (Opp'n at 22.) Contrary to the aforementioned categories for injunctive relief, neither Innovative's damages nor the verdict form includes Biosense's collection practices. Indeed, the verdict form only shows that Biosense violated Section 2 of the Sherman Act by creating or attempting to create a monopoly through "anticompetitive practices," which may or may not include Biosense's catheter collection. (See Verdict ¶¶ 2–3.)

Although the jury did not make findings specific to Biosense's catheter collection practices, the Court is persuaded that Biosense's case coverage policy is sufficiently "connected with" its collection practices. Gypsum, 340 U.S. at 89. While the case coverage policy focuses on sensor-enabled catheters, Biosense's collection practicies target catheters like AcuNav that are outside the scope of the case coverage policy, an alternative avenue for Biosense to choke competition in the catheter markets. Innovative demonstrated at trial that Biosense collected catheters that it could not even reprocess to intentionally restrict the supply of catheters. (Mot. at 17; Reade Decl., Ex. 3, 44:17–46:12 (explaining Biosense's internal documents show it expanded the collections to DECANAV, which it does not reprocess); Reade Decl. JX-221 ("If we control supply, we can greatly minimize competitive activity"); Reade Decl. JX-298 ("If we control AcuNav collections, we control the market. In fact, it's not far fetched to believe that if we were able to collect back 75% of the OEM AcuNav we sell, we could drive Stryker out of the RPO EP business altogether."); Reade Decl., Ex. 11, 62:15-17 (testifying that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

due to Biosense's catheter collection of AcuNav and restricting supply, Stryker has ultimately stopped selling them).) Although Biosense argues that Innovative's own employee claimed that there was a sufficient supply of catheters to meet the demand, Meredith Snider's testimony pertained to sensor-enabled catheters. (Opp'n at 22; Cavanaugh Decl., Ex. 1, 19:1–17.) But there was a sufficient supply of sensor-enabled catheters, accordingly to Innovative, because of low demand as a result of Biosense's case coverage policy. (July 21, 2025 Hr'g Tr. (forthcoming); see Reade Decl, Ex. 6, 56:2–7.))

Since Innovative demonstrated at trial that Biosense's collection practices have lessened competition and constantly posed a threat to the catheter reprocessing businesses, the Court finds it is necessary to prevent Biosense from hoarding devices it cannot or does not plan to reprocess. See Boardman, 822 F.3d at 1023; Am. Media Corp., 750 F.2d at 1474. The proposed injunction, moreover, is not overly restrictive, as it prohibits Biosense from collecting only those that lack regulatory approval or pending application for approval, and allows for reasonable exceptions. (Modified Proposed Injunction ¶ 4.) Accordingly, the Court grants the injunction regarding the collection practices to ensure fair competition—that Biosense collects catheters for good faith reasons, not to stockpile and limit their supply.

    D.    *Ancillary Provisions*

        1.    Reports to the Court

A district court is "not obliged to assume . . . that a violator will relinquish the fruits of his violation more completely than the court requires him to do." Nat'l Soc. of Pro. Eng'rs, 435 U.S.at 698. However, the Supreme Court also cautioned district courts from "continuing supervision of a highly detailed decree [as it] could wind up impairing rather than enhancing competition." Alston, 594 U.S. at 102 (quotations and citation omitted).

Biosense contends that there is no basis to require semiannual reports because Innovative will readily know whether Biosense violated the permanent injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

(Opp'n at 25.)  On the contrary, Innovative argues that it will not know whether or how Biosense is complying with the injunction.  Biosense does not provide any reason to find that the reports are unnecessarily detailed, costly, or burdensome.  See Alston, 594 U.S. at 102.  Accordingly, the Court finds that the biannual report requirement imposes a minimal burden on Biosense.

      2.      <u>Hotline</u>

Biosense also contends that there is no reason to include a hotline provision in the injunction because J&J already has its own publicly accessible hotline.  (Opp'n at 26.)  Yet, it is reasonable to assume that customers or employees of J&J would be reluctant to use their own company's hotline to report a violation due to a lack of trust or in fear of retribution. (Reply at 25.)  Letting J&J collect reports of its own potential noncompliance is like letting the fox in the henhouse.  As Innovative seeks to create a hotline at its own expense, it would not impose any burden Biosense.  Biosense also argues that the hotline provision "creates a strong inference that the Court supports [Innovative's] hotline," and would interfere with Biosense's ability to comply with the injunction, federal and state law, and the company's policies.  (Opp'n at 26.)  Biosense does not address these vague assertions of potential consequences.  Thus, the Court finds no cause to deny this request.

Biosense additionally requests during the hearing that it seeks prompt notification of the third party establishing the hotline and seven days to object in order to ensure the third party is competent and reputable.  Innovative may accommodate Biosense's request and add provisions in its proposed order if it finds it necessary.

      3.      <u>Injunction Term</u>

Finally, Innovative proposes a ten year term like that in <u>Kodak</u>.  (Mot. at 25.)  The Court finds that the proposed term may be unduly long.  The market realities today are different from those in 1997, when the <u>Kodak</u> court granted the injunction.  <u>See id.</u>

Biosense responds that the proposed term of injunction is "unnecessary and

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | July 31, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

punitive" and that three years is sufficient. (Opp'n at 27.) Biosense contends that in <u>In re Google Play Store Antitrust Litigation</u>, the Court granted an injunction of three years where were network effects created barriers to entry. As granting the injunction as to the case coverage policy would remove any barriers, Biosense argues that three years should be sufficient.

However, both parties sagreed that supply contracts in the catheter industry often last three years. (<u>See</u> July 21, 2025 Hr'g Tr. (forthcoming).) If the Court were to issue a three-year injunction today, the injunction would terminate prior to Innovative's future contracts. To ensure that the term of the injunction does not disincentivize any contractual relations and that it remains in place for at least one cycle of Innovative's contract, the Court is inclined to set a term for five years. In any event, the Court intends to retain the power adjust the term, whether to shorten or lengthen, to reflect ongoing market conditions and changes therein.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion but with modifications as to the scope of the proposed injunction. The Court grants Innovative seven (7) days from this order to submit a revised proposed injunction. Biosense may oppose any language in Innovative's proposed injunction within seven (7) days following Innovative's filing.

**IT IS SO ORDERED.**