UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** [IN CHAMBERS] Order Regarding Renewed Motion for Judgment as a Matter of Law [548] and Attorneys' Fees [551]

Before the Court are two motions. First, Defendant Biosense Webster, Inc. ("Biosense") filed a renewed motion for judgment as a matter of law under Federal Rules of Civil Procedure 50(b). (Mot., Dkt. No. 448.) Plaintiff Innovative Health LLC ("Innovative") opposed. (Opp'n, Dkt. No. 571.) Biosense replied. (Reply, Dkt. No. 581.)

Second, Innovative filed a motion for attorneys' fees. (Mot. for Attorneys' Fees ("Fees Mot."), Dkt. No. 551.) Biosense opposed. (Fees Opp'n, Dkt. No. 568.) Innovative replied. (Fees Reply, Dkt. No. 582.)

For the following reasons, the Court makes the following rulings:

- **DENIES** Biosense's renewed motion for judgment as a matter of law (Dkt. No. 548)
- **GRANTS in part** Innovative's motion for attorneys' fees (Dkt. No. 551).

I. BACKGROUND

The facts of this case are well known to the Court and the parties. Biosense sells CARTO 3, a cardiac mapping machine, and offers clinical support for its customers. (Declaration of Derek Ho ("Ho Decl."), Dkt. No 571-1, JX-3329.) When Biosense first released CARTO 3, it covered 50% of the procedures, but by 2018, it covered 95% of the cases. (Id.) At trial, Innovative demonstrated that Biosense, through its Case Coverage

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Policy ("Policy"), tied its clinical support for CARTO 3 procedures, a must-have service, to the purchase of Biosense's sensor-enabled catheters. (See, e.g., Ho Decl. Ex. 4A, 46:13-64:21.) In addition to its Case Coverage Policy, Biosense implemented anti-reprocessing technology and hoarded used catheters to block independent reprocessing companies from accessing and reprocessing them. (Id. Ex. 4A, 35:16-40:18.) Innovative proved that as a result of Biosense's conduct, there was a significant decrease in the catheter market. (Id. Ex. 4A, 118:10–19:4 (independent reprocessors' market share went from 23% to 1% of the catheter market).)

At the end of trial, the jury returned a verdict in favor of Innovative on claims for unlawful tying under Section 1 of the Sherman Act, unlawful monopolization under Section 2 of the Sherman Act, attempted monopolization under Section 2 of the Sherman Act, and unlawful tying under the Cartwright Act, Section 16720 of California's Business and Professions Code. (Verdict, Dkt. No. 527.) The jury awarded Innovative $147,406,481.00 in damages, which is automatically trebled to $442,219,443.00 pursuant to 15 U.S.C. § 15(a) and Cal. Bus. & Prof. Code § 16750(a). (Judgment, Dkt. No. 532.)

## II. BIOSENSE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Legal Standard

Pursuant to Fed. R. Civ. P. 50(a), a motion for judgment as a matter of law must be made before the case is submitted to the jury and must specify the judgment sought and the law and facts that entitle the movant to the judgment. Fed. R. Civ. P. 50(a). If the Court does not grant the motion, then "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).

A party may move to renew its motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) within twenty-eight days after the entry of judgment, or if the motion addresses a jury issue not decided by a verdict, no later than twenty-eight days after the jury was discharged. Fed. R. Civ. P. 50(b). It may also move, in the alternative, a request for a new trial under Fed. R. Civ. P. 59. Id.

A moving party is entitled to judgment as a matter of law if the evidence,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion that is contrary to the jury's verdict. Go Daddy Software, 581 F.3d at 961. A jury's verdict "must be upheld" if it is supported by substantial evidence, even where it "is possible to draw a contrary conclusion." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). In ruling on a motion for judgment as a matter of law, the court may: "(a) allow the judgment to stand, (b) order a new trial, or (c) direct entry of judgment as a matter of law." White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002). Judgment is appropriate "if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002). Additionally, when making its determination, the Court cannot "make credibility determinations" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." Tan Lam v. City of Los Banos, 976 F.3d 986, 995 (9th Cir. 2020) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 159-51 (2000)).

B.   *Discussion*

1.   Markets

The relevant market for antitrust purposes is "the area of effective competition," or "the arena within which significant substitution in consumption or production occurs." Ohio v. Am. Express Co. ("Amex"), 585 U.S. 529, 543 (2018) (quoting Phillip E. Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law § 5.02 (4th ed. 2017)). Market definition is not an end in itself, but a necessary step in determining whether a defendant has market power to engage in anticompetitive conduct. See F.T.C. v. Indiana Fed'n of Dentists, 476 U.S. 447, 460 (1986).

To succeed on a tying claim, "a reasonable trier of fact must be able to find" (1) that the tied and tying product are "two distinct products," and (2) that the defendant "has tied the sale of the two products." Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 462 (1992). To be considered two distinct products, Innovative must meet the consumer-demand test: (1) that it is possible to separate the products, and (2) that it is efficient to do so, as inferred from circumstantial evidence." Epic Games, Inc. v. Apple, Inc., 67 F.4th 946, 995 (9th Cir. 2023)

a.   **Clinical Support and Catheters as Separate Markets**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Biosense argues that Innovative has failed to prove that the products at issue—clinical support and catheters—are separate and distinct markets to prevail on a tying claim. (Mot. at 16–18.) They claim that clinical support is always accompanied by catheters, comprising a single ecosystem of services. In response, Innovative relies on the Ninth Circuit opinion when this case was appealed after summary judgment. (Opp'n, 16–18); see Innovative Health, LLC v. Biosense Webster, Inc., No. 22-55413, 2024 WL 62948, at *2 (9th Cir. Jan. 5, 2024). Although Biosense is correct that defeating a motion for summary judgment does not foreclose granting a motion for judgment as a matter of law (Reply at 16–17), here, the trial record reflects that Innovative has sufficiently shown clinical support services are a separate product from catheters.

Innovative marshaled sufficient evidence to meet the consumer-demand test. Dr. Forister testified that independent reprocessors had a higher share of the relevant catheters before the Policy, meaning that hospitals separately purchased catheters, irrespective of Biosense's clinical support services. (Ho Decl. Ex. 4A, 47:25–28:10; 65:22–66:2; 119:2–23; JX 445 (showing independent reprocessors had 16% of the combined markets for all at-issue catheters before the Policy but only 1% in 2022-2023).) In 2018, Biosense covered 95% of clinical support services, indicating that 5% of hospitals provide their own clinical support services and purchase catheters separately. (Id. Ex. 4A, 48:8-49:6.) Even today, Biosense still offers clinical support for Innovative's SOUNDSTAR at Providence Alaska. (Id. Ex. 2B, 88:16–89:20.) The fact that companies such as Abbott and Boston Scientific also provide their own clinical support for their mapping system, yet allows consumers to purchase reprocessed sensor-enabled catheters separately, indicates that clinical support and catheters are two distinct products. (Ho Decl. Ex. 3A, 85:10–22.")

Biosense contends that Innovative fails to account for the industry's evolution, where there has been a movement away from hospitals providing their own clinical support simply because it became inefficient. (Reply at 15–16.) Accordingly, it claims that Innovative cannot offer one example of a hospital that provides its own clinical support. However, Biosense's argument suggests that mapping systems and clinical support, but not necessarily that the mapping systems and catheters form a single market. More importantly, Biosense overlooks the economic reality that Innovative has painted as to why this is the case: Biosense's Policy starting in 2016 prevented hospitals from separately purchasing catheters not originated from Biosense. Efficiency is not the only viable explanation for why the industry has changed over the last decade. Thus, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Court concludes there is substantial evidence to support a finding of two separate markets for clinical support and catheters.

### b.    Single-brand Aftermarkets

The aftermarket can also be a relevant market "where demand for a good is entirely dependent on the prior purchase of a durable good in a foremarket." Epic Games, 67 F.4th at 976; Eastman Kodak, 504 U.S. at 455. To establish such a single brand aftermarket, a plaintiff must show that "(1) the challenged aftermarket restrictions are not generally known when consumers make their foremarket purchase; (2) significant information costs prevent accurate life-cycle pricing; (3) significant monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." Epic Games, 67 F.4th at 977 (cleaned up). Biosense argues that Innovative did not satisfy any of the four factors necessary to prove the existence of a single-brand aftermarket. However, the Court disagrees.

First is whether the aftermarket restrictions are not generally known. Hospitals that purchased the CARTO before Biosense implemented the Policy surely would not have known about the aftermarket restriction. Even after Biosense introduced the Policy in 2016, numerous hospitals that purchased hundreds of CARTO were unaware of the tying arrangement. (Opp'n at 7–8 (collecting exhibits and testimonies where hospitals using CARTO were forced to purchase from Biosense/Sterilmed catheters).) The Court finds ample evidence establishing that hospitals were not generally aware of the Policy because Biosense did not disclose the restrictions up-front. (See, e.g., JX-3963 (indicating that Biosense did not disclose the Policy when PeaceHealth purchased the CARTO); Ho Decl. Ex. 3A, 29:22-30:5 (lacking knowledge of the Policy by electrophysiologists).)

Second, Innovative demonstrated that significant information costs prevented accurate life-cycle pricing. Although "[p]erfect information is not required," Harrison Aire, Inc. v. Aerostar Int'l, Inc., 423 F.3d 374, 382 (3d Cir. 2005), hospitals' lack of knowledge regarding the Policy at the time of purchase deprived them of vital information associated with Biosense's cardiac mapping to accurately predict the CARTO's lifecycle costs. (Ho Decl. Ex. 6B, 89:21-90:2; see also., Ex. 4A, 58:5-16.) In addition to other factors, such as Biosense's new products, software modules, changes in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

available catheters, and varying patient demand (Opp'n at 20–21), the Court finds that Innovative cited significant evidence of high information costs associated with accurate life-cycle pricing.

Third, Innovative has shown that there are high switching costs associated with cardiac mapping machines. The jury heard evidence that mapping systems cost a quarter of a million dollars (Ho Decl. Ex. 6A, 49:24–50:7) and have a lifespan of over 10 years (id. Ex. 4A, 105:25–106:9), but also that Biosense offers discounts and alternative methods to purchase CARTO (see, e.g., Cavanaugh Decl. Ex. 10, 29:10–19; Id. Ex. 14, 20:23–21:19, 24:18–25:8). Innovative demonstrated that 66% of all mapping procedures are done on CARTOs (Ho Decl. Ex. 4A, 114:21–116:6), but 66 % of hospitals also own competing mapping system, suggesting it is possible for hospitals to switch systems (Cavanaugh Decl. Ex. 5, 20:16–21:6). Thus, given the competing information, a reasonable jury could find that a purchase of a mapping machine is no insignificant investment and hospitals are hesitant to switch to a different, though comparable, mapping machine.

Further, the Court finds that the element of non-monetary switching cost is also neutral at best. Supplying evidence of physicians who were trained on multiple systems from trial, Biosense argues that physicians prefer the CARTO because it is simply superior in quality. (Mot. at 21–22; Cavanaugh Decl. Ex. 1, 49:3-14; Ex. 8, 29:14-30:14.) On the other hand, the record shows that doctors were unwilling to switch because they were trained in and are most comfortable with using CARTO. (Opp'n at 22 (collecting testimonies by doctors who found switching to be difficult, and hospitals who paid doctors to switch but failed); see, e.g., Ho Decl. Ex. 1A, 98:1-99:21; Id. Ex. 3A, 37:3-7.) Since the evidence must be construed in the light most favorable to Innovative, and there is more than one reasonable conclusion here, the Court concludes that there are significant monetary and non-monetary switching-costs. See Go Daddy Software, 581 F.3d at 961.

Lastly, the cross-elasticity of demand factor reflects the Supreme Court's rejection of the assumption that a lack of market power in the foremarket categorically precludes market power in the aftermarket. Kodak, 504 U.S. at 469–70 ("The fact that the [foremarket] imposes a restraint on prices in the aftermarkets by no means disproves the existence of power in those markets."). Thus, the question is "whether competition in the foremarket is []sufficient to discipline anticompetitive behavior in the aftermarket."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Innovative, 2024 WL 62948, at *3. Evidence of significant information costs, switching costs, and a relatively high number of locked-in customers can disprove any disciplining effect. Id.; see Epic Games, 67 F.4th at 977.

Here, there is ample evidence that many hospitals are locked-in at both the CARTO and catheter levels. First, Innovative demonstrated this with Ascension, which ultimately could not "move their business elsewhere" to avoid Biosense's Policy. (Ho Decl. Ex. 4A, 59:5–18.) If it were easy to switch to another device, then there would be less usage of the CARTO after the Policy. However, CARTO usage steadily increased after the Policy. (Id. JX-4392.) 58% of the currently installed CARTO was purchased before the Policy. (Id. 4A, 102:14–18.) This number is substantial. Cf. DSM Desotech Inc. v. 3D Sys. Corp., 749 F.3d 1332, 1347 (Fed. Cir. 2014) (holding that 7 of 268 customers were not a substantial number of locked-in customers). Although Biosense claims that hundreds of hospitals purchased additional CARTO machines after it became aware of the Policy, it is possible that a reasonable jury could draw the opposite conclusion: that the Policy exacerbated the locking-in effect of hospitals by making it difficult to purchase any other machine or catheter available in the market. Furthermore, the evidence that Biosense was able to raise prices of its CARTO without losing sales suggests a similar conclusion—that many customers are locked-in and unable to switch to other comparable devices. (Ho Decl. Ex. 4A, 115:19–120:6.) Thus, in addition to testimony regarding the high barriers to entry (see infra, at p. 7) and significant switching costs for CARTO, a reasonable jury could find that competition in the mapping machine foremarket did not discipline Biosense's anticompetitive behavior in the catheter aftermarket.

In conclusion, the trial evidence supports the jury's finding of separate markets and single-brand aftermarkets.

        2.    Market Power

Market power is the "ability to raise price profitably by restricting output." P. Areeda & H. Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 501. Market power is inferred either from direct or indirect evidence of "reduced output, increased prices, or decreased quality in the relevant market." Amex, 585 U.S. 529, 542 (2018). Market power may also be inferred from a defendant's significant market share and high barriers to entry. Epic Games, 67 F.4th at 983.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:19-cv-01984-JVS-KES                               Date  August 27, 2025

Title  Innovative Health LLC v. Biosense Webster, Inc.

Biosense contends that Innovative failed to prove that it has market power in both the clinical support and the catheter markets. However, the Court finds Innovative adduced ample evidence of market power as to each relevant market.

### a. Clinical Support Market

Biosense argues that there is no evidence of supracompetitive pricing to support market power in the clinical support market by virtue of charging $0 for its clinical support for the past sixteen years. (Mot. at 11.) However, as this Court noted before, the fact that it does not exercise its market power to raise prices does not mean it does not have the "ability" to raise the price of its clinical support. Areeda & Hovenkamp, Antitrust Law ¶ 501. It may leverage its market power in one market and exercise it in another.

"The existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market." Kodak, 504 U.S. 451, 464 (1992). Biosense's internal documents demonstrate its share of the clinical support market was around 95% in 2018. (Ho Decl. JX-3329.) This alone is sufficient.

The Court agrees with Biosense that Innovative only provides evidence of decreased quality in catheters, not clinical support. (Opp'n at 9). Nevertheless, Biosense's market share, together with Dr. Forister's testimony and evidence that Biosense created barriers to entry for independent clinical support providers by poaching mappers, withholding training for CARTO 3, adding noncompete agreements for mappers, and deploying CARTO software updates, in addition to the Case Coverage Policy, sufficiently demonstrate Biosense's market power in the clinical support market. (Ho Decl. Ex. 4A, 49: 12–54:13.)

### b. Catheter Market

Biosense contends that it also has no market power in the catheter market as it has neither increased the prices of its reprocessed catheters nor suppressed their output or quality. Contrarily, Innovative argues that it has directly proven Biosense's market power, which can also be established by a defendant's substantial ability "to control prices or exclude competition." Epic Games, 67 F.4th at 99; (Opp'n at 12). At trial, Innovative showed that independent reprocessors' share decreased from 16% to 1% after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

Biosense's tying arrangement. (Ho Decl. Ex. 4A, 118:10-120:15, JX-4457.) The sheer market share suggests that Biosense has the ability to charge supracompetitive prices. Biosense does not respond to this argument.

At trial, Innovative also offered two reasons why the prices were supracompetitive. First, prices increased because hospitals were forced to buy expensive new catheters instead of cheaper reprocessed ones due to the Policy. (Opp'n at 12–13; Ho Decl. Ex. 4A, 68:4–69:4 ("[A] hospital that wanted a reprocessed catheter had to pay about twice as much if they switched to a new Biosense catheter[,] . . . the SOUNDSTAR, a new one, $2,500. A reprocessed one, a little under $1,300. So it's two times as expensive. For the PENTARAY, 1.5 times as expensive. And for the LASSO NAV, about three times as expensive.").) Biosense responds that comparing new and reprocessed catheters is meaningless as it compares apples to oranges, and there has always been a difference between reprocessed and new catheter prices. (Mot. at 12–13.) In fact, Biosense maintains that the price of its reprocessed catheters was lower than average or competitive to comparable catheters, while new catheters fell following the implementation of the Policy. (Mot. at 11–3.) However, Dr. Forister's testimony is more than a simple comparison, but an explanation of the causal connection between a lack of demand for reprocessed catheters and higher prices for new catheters. (Opp'n at 15.) In this respect, the average price of new and reprocessed catheters is relevant—both types of catheters were available to customers prior to the Policy whereas this was not the case after the Policy. Accordingly, the Court finds there was evidence of supracompetitive pricing.

The same evidence also supports a finding of reduced output of catheters as "pricing and output are 'two sides of the same coin.'" CoStar Grp., Inc. v. Com. Real Est. Exch., Inc., 141 F.4th 1075, 1088 (9th Cir. 2025) (citing United States v. AMR Corp., 335 F.3d 1109, 1115 n.6 (10th Cir. 2003). While Innovative has not put forth direct evidence of decreased output, it "need[s] only [to] allege that a firm raised prices to a supracompetitive level *or* restricted output." Id. (emphasis in original). Biosense argues that it could not have actually increased its sales if it offered the catheters at supracompetitive prices. (Cavanaugh Decl. Ex. 5, at 40:2–13.) However, Biosense misses the mark; the question is whether Biosense increased catheter output compared to a competitive world. (Opp'n at 15.)

Second, Dr. Forister also demonstrated that Biosense inflated the prices of new

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

catheters because, regardless of whether Biosense's costs decreased or increased slightly, the catheter prices rose "far more than their costs." (Ho Decl. Ex. 4A, 69:22–70:3.) Biosense produced evidence contrary to the Dr. Forister's statement. For instance, the PENTARAY was priced lower than comparable catheters from Boston Scientific and Abbott, and Innovative's own profit margin was higher than Biosense's. (Mot. at 11–12.) While they may be true, these facts do not directly address Innovative's argument that Biosense inflated the price of their own catheters by not accounting for the "increasing divergence of price and cost." (Opp'n at 15.)

The concept of market power is the ability to control price, and the ability to "profitably raise prices above a competitive level[,]" and "excessively high profit margins" may be direct evidence of anticompetitive conduct. Epic Games, 67 F.4th at 975, 1002. While price marginal cost can surely be indicative of market power, Areeda & Hovenkamp, Antitrust Law ¶ 503, the Court recognizes that Biosense's gross-margin increase may not be "extraordinar[ily] high" to conclusively find that it charged supracompetitive prices for its catheters, Epic Games, 67 F.4th at 1002. Nevertheless, Dr. Forister explained at trial that "in a competitive market, economics tells us that if costs are going down, prices would go down." (Ho Decl. Ex. 4A, 69:6–7). Thus, a reasonable jury could have found that the increase in profit margins while the Policy was in place evidences an absence of competition. (Opp'n, at 13.)

Innovative also demonstrated Biosense's market power in the catheter market through evidence of decreased quality. For example, Innovative provided the average complaint rates of Innovative's, Biosense's, and Sterilmed's catheters (JX-4392), which showed that Biosense's rates were particularly high. On the other hand, Biosense counters that Innovative did not conduct a comparative testing of the catheters to affirmatively conclude a decrease in quality. Moreover, Biosense argues that complaint rates cannot be indicative of quality where contrary to Biosense, Innovative does not have CAS in the procedure room whose obligation is to take and report complaints. (Mot. at 14–15; Aug. 11, 2025 Hr'g Tr. at 25.) Even so, the complaint rates, along with the FDA MAUDE Data[1] (Ho Decl., Ex. 6A, 79:21–80:14), provide grounds for a reasonable jury to infer decreased quality in catheters. See Pavao, 307 F.3d at 918

---

[1] The Court denied Biosense's motion *in limine* to exclude the MAUDE data. (Dkt. No. 489 (sealed).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

(holding that a district court may uphold a jury's determination even where it "is possible to draw a contrary conclusions").

Further, the Court finds that the market share and high barriers establish Biosense's market power. Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1434 (9th Cir. 1995) (finding market power can be inferred from defendant's possession of a high market share and the existence of significant barriers to entry). Innovative has shown that there are high barriers to entry for independent reprocessors. 72% of hospitals and 66% of all cardiac mapping procedures are done on CARTO, which only works with Biosense-originated catheters. (Ho Decl., Ex. 4A, 66:25–67:2, Ex. 3A, 48:22–49:1.) The costs of building reprocessing facilities, developing reprocessing technology, and FDA clearance requirements create additional barriers to entry. (Opp'n at 16; Ho Decl. 4A, 114:21–116:6.) Construing the evidence in the light most favorable to the nonmoving party, the Court ascertains sufficient direct and indirect evidence for a reasonable jury to find that Biosense had market power in the catheter market. See Go Daddy Software, 581 F.3d at 961; Costa, 299 F.3d at 859.

      3.      Antitrust Injury

Antitrust injury is an essential element to both the Sherman Act and Cartwright Act claims. Biosense argues that Innovative failed to prove an antitrust injury because the injury "flow[ed] from aspects of [Biosense's] conduct that are beneficial or neutral to competition." (Mot. at 24 (citing Paladin Assocs., Inc. v. Mont. Power Co., 328 F.3d 1145, 1158 (9th Cir. 2003).) Although Biosense claims that Innovative's own damages model demonstrated how Biosense's Policy allowed customers to buy some catheters at a lower price than they would have in a world without the policy (Mot. at 25–26), there is undoubtedly an antitrust injury because Biosense's Policy "adversely affect[ed] competition generally." Paladin Assocs., 328 F.3d at 1158. Biosense prevented independent reprocessors from competing in the catheter market, which would have led to more sales of Innovative catheters and allowed customers to buy lower-price alternatives in a but-for world. Loss of substantial revenue resulting from foreclosure of competition is a type of harm antitrust law aims to prevent. See Kodak, 504 U.S. at 458.

Biosense also contends that Innovative did not distinguish between the price of clinical support and catheters, "making it impossible to glean whether the clinical support policy resulted in supracompetitive prices." (Reply at 20.) There is antitrust

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:19-cv-01984-JVS-KES                                    Date  August 27, 2025

Title   Innovative Health LLC v. Biosense Webster, Inc.

harm only if the combined price of clinical support and catheters is above the prices charged for each in a but-for world without the Policy. (Id. at 22–23 (citing Siegel v. Chicken Delight, Inc., 448 F.2d 43, 52 (9th Cir. 1971).) Here, Biosense asserts that it covers the costs of its free clinical support with the sale of its catheters, and Dr. Forister never calculated the price of Biosense or Sterilmed catheters in the but-for world to conclusively find that its prices would in fact go up. (Id. at 22.) Thus, according to Biosense, the combined price is not above what it would have charged for each product separately in a but-for world. Conversely, Dr. Forister has shown that in a but-for world, Biosense would have still charged $0 for clinical support, meaning the prices for catheters are higher today than it would be in a but-for world. (Ho Decl. Ex. 4A, 71:19–75:17.) Basic economic principles support his theory—lower-priced alternatives and increased supply would reflect on Biosense prices.

        4.       Section 2 of the Sherman Act

Conduct that is not anticompetitive cannot violate Section 1 or Section 2 of the Sherman Act. Section 1 of the Sherman Act asks whether there was a restraint of trade. 15 U.S.C. § 1. However, Section 2 requires more—a plaintiff must show that a defendant possesses monopoly power in the relevant market to harm competition itself. Fed. Trade Comm'n v. Qualcomm Inc., 969 F.3d 974, 989 (9th Cir. 2020).

The record reflects ample evidence of Biosense's anticompetitive conduct under Section 1. See supra Section II.B.1-2. A jury could similarly find that Biosense had maintained a monopoly position through additionally tactics, including Biosense's blocking technology and collection practices. For instance, Innovative demonstrated that Biosense collected catheters in order to prevent competition (Ho Decl. Ex. 4A, 40:19–46:12; see also Mot. for Permanent Injunction, Dkt. No. 535), and created the Falcon chip for the sole purpose of hindering reprocessing. (Ho Decl., JX-219, JX-3099; see also Mot. for Permanent Injunction.) Biosense responds that Innovative has never pleaded any claims regarding anti-reprocessing technology and catheter hoarding based on these allegations separate from the alleged tie. (Mot. at 27–28.) While it may not "independently" sustain a Section 2 violation (Reply at 25), together with Biosense's anticompetitive tying Policy, a reasonable jury could have found that evidence of anti-reprocessing technology and collection practices support a Section 2 violation. (Jury Instruction No. 28, Dkt. No. 521.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

     5.     Cartwright Act

     Biosense asserts that the Cartwright Act claim fails on two grounds. First, Biosense argues that there is no presumption for extraterritorial application of the Cartwright Act. (Mot. at 28–29.) Biosense relies on Sullivan v. Oracle Corp., where the California Supreme Court held that the UCL applies to a failure to pay overtime under the Fair Labor Standards Act ("FLSA") for work performed in California, but not for work out of state. 51 Cal. 4th 1191, 1209 (2011). Given that there is a presumption against extraterritoriality, id. at 1207, and the "degree of equivalency between the Cartwright Act and the UCL," In re Capacitors Antitrust Litig., 2020 WL 6462393, at *7 (N.D. Cal. Nov. 3, 2020) (citation omitted), Biosense contends that Innovative is not entitled to recover nationwide damages. However, Oracle is distinguishable in that it dealt with the FLSA, and the particularities of labor law cannot be readily generalized.

     The Court does not find that the presumption against extraterritoriality prohibits recovery for out-of-state harm in this case. "[T]he presumption of extraterritoriality is not implicated by permitting the recovery of civil penalties for harm occurring outside California where, as here, the conduct violating the relevant law was committed in California." People v. Ashford Univ., LLC, 100 Cal. App. 5th 485, 523 (2024). Here, it is undisputed that the misconduct "emanated from California," where Biosense's headquarters is located. (Opp'n at 26–27.) The policy affected hospitals nationwide. The burden is on Biosense to show that the Cartwright Act does not apply to out-of-state damages. Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 589 (C.D. Cal. 2008) ("This burden is substantial when defendant is located in California and the alleged misconduct occurred in or emanated from California") (quotations omitted). Considering California's strong interest in preventing anticompetitive conduct and Biosense's failure to meet its burden, the Court finds that nationwide damages are appropriate under the Cartwright Act.

     Second, Biosense claims that the Court erred by issuing a *per se* tying instruction for the Cartwright Act claim. Tying arrangements are illegal *per se* "whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product." Corwin v. Los Angeles Newspaper Serv. Bureau, Inc., 4 Cal. 3d 842, 856, 484 P.2d 953 (1971) (quotations omitted). Thus, whether there is a procompetitive justification is not a relevant inquiry under the Cartwright Act. UAS Mgmt., Inc. v. Mater Misericordiae Hosp., 169 Cal. App. 4th 357,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

369 (Jan. 13, 2009). Thus, the Court provided the appropriate jury instructions.

    *C.*    *Conclusion*

In conclusion, the Court **DENIES** Biosense's motion for judgment as a matter of law.

### III. INNOVATIVE'S MOTION FOR ATTORNEYS' FEES

    *A.*    *Legal Standard*

The calculation of attorneys' fees is guided by the "lodestar/multiplier" analysis. See Hensley v. Eckerhart, 461 U.S. 424 (1983). "[A] court assessing attorney fees begins with a touchstone or lodestar figure,, courts "must carefully review attorney documentation of hours expended; 'pad based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" Ketchum, 24 Cal. 4th at 1131–32 (quoting Serrano v. Priest, 20 Cal. 3d 25, 48 (1977)). In determining reasonable compensation ding' in the form of inefficient or duplicative efforts is not subject to compensation.'" Id. at 1132 (quoting Serrano, 20 Cal. 3d at 48). "The lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court" based on a variety of factors. Id.

"[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" Ketchum, 24 Cal. 4th at 1131–32 (quoting Serrano v. Priest, 20 Cal. 3d 25, 48 (1977)). In determining reasonable compensation, courts "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation.'" Id. at 1132 (quoting Serrano, 20 Cal. 3d at 48). "The lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court" based on a variety of factors. Id.

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). The court may raise or lower the lodestar based on several factors:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Fischel v. Equitable Life Assurance Society, 307 F.3d 997, 1007 n.7 (9th Cir. 2001). The Court is cautious not to adjust the lodestar figure based on any of the foregoing factors that are subsumed into the original lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 364, 364 n.9 (9th Cir. 1996).

    *B.*    *Discussion*

Innovative seeks a total of $19,127,296.00 in attorney's fees and $2,138,523.47 to $2,151,960.77 in cost of suit for its counsel's work through May 18, 2025. (Fees Mot. at 11.) This includes $4,663,015.00 for the work of Mr. Berhold at Jeffrey L. Berhold, P.C., $780,230.00 for Theodora Oringher PC, $2,625,001.00 for Berger Montague PC, and $11,059,050.00 for Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellog Hansen"). (Id. at 12.)

Biosense takes issue with the block-billing, vague, and excessive entries by Innovative's attorneys. Biosense seeks reduced fees of $917,517.75 for Mr. Berhold (Cavanaugh Decl. Dkt. No. 568-5, Ex. D), $155,641.13 for Theodora Oringher PC (id. Ex. E), $237.158 for Berger Montague PC (id. Ex. C), and $2,838,046.28 for Kellogg Hansen (id. Ex. B).

    1.    Block Billing

Block billing is a method of billing that fails to itemize each task individually in the billing records. This complicates the Court's ability to assess the reasonableness of the hours incurred because many entries include tasks that a prevailing party is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

entitled to recover.  The time requested should be reduced if block billing makes it impossible to evaluate the reasonableness of the time.  See Shayler v. 1310 PCH, LLC, 51 F.4th 1015, 1020 (9th Cir. 2022); Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007); see also Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008).

Here, Biosense argues that Innovative's attorneys have employed block billing throughout. (Fees Opp'n at 7–13.)  For instance, the time entry number 1957 for Rachel T. Anderson dated May 15, 2025, for 19.6 hours states,

> Attend trial; confer with opposing counsel regarding L. Wu demonstrative; argue objections to L. Wu demonstrative; assist and serve as second-chair to L. Wu cross examination; attend daily trial team meeting; review all admitted exhibits; draft closing argument; draft closing argument slides with A. Morales-Kimball; review final jury instructions from Judge Selna; incorporate instructions into final closing argument and presentation.

(Ho Decl.  Dkt. No. Ex. B at 231.)  This is a classic example of block billing.  While this is sufficient to assess the type of work done, it does not assist the Court in fully assessing the reasonableness of the time spent on each task.  Welch, 480 F.3d at 948; see also Balboa Cap. Corp. v. JAAM Transp. LLC, No. 22-CV-01857-JVS-DFM, 2024 WL 3466476, at *5 (C.D. Cal. June 3, 2024).

Biosense has identified the following hours and fees for block billing:

- Jeffrey L. Berhold: 1548 hrs ($1,842,120.00) + 641.9 hrs ($763,861.00) = 2189.9 hrs ($2,605,981.00)
- Theodora Oringher: 322.1 hrs ($330,152.50) + 1.2 hrs ($1,230.00) + 118.4 hrs ($121,360.00) + 7.3 hrs ($7,482.50) = 449 hrs ($460,225.00)
- Berger Montague: 404.1 hrs ($401,759.00) + 74.4 hrs ($98,454.00) = 478.5 hrs ($500,213.00)
- Kellogg Hansen: 9371.9 hrs ($8,331,330.00) + 909.7 hrs ($826,764.50) = 10281.6 hrs ($9,158,094.50)

Case 8:19-cv-01984-JVS-KES   Document 593   Filed 08/27/25   Page 17 of 20   Page ID #:32433

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:19-cv-01984-JVS-KES                                Date  August 27, 2025

Title     Innovative Health LLC v. Biosense Webster, Inc.

(See Cavanaugh Decl. Ex. B–E.) However, a request for a 30% haircut is excessive. The Court finds it appropriate to impose a 10% reduction across-the-board for these fees. See Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008). Accordingly, the Court grants the following in attorneys' fees:

- Jeffrey L. Berhold: $2,345,382.90
- Theodora Oringher: $414,202.50
- Berger Montague: $450,191.70
- Kellogg Hansen: $8,242,285.05

## 2. Vagueness and Excessive Entries

Biosense contends that entries such as "review documents" (Berhold Decl. Dkt. No. 551-4, Ex. B at 15) or "trial preparation" (Ho Decl. Ex. B, 173) are vague. (Fees Opp'n at 17.) While these entries are borderline vague, it is not difficult for the Court to imagine that trial preparations can take 7 hours while the so-called "doc review" can require hours of labor to sift through internal documents. It would be unreasonable for a firm to provide the Court with an account of every action taken for trial preparation or to list every document that was reviewed. See Hensley, 461 U.S. at 437 (not requiring parties to record in great detail how each minute of his time was expended).

Biosense challenges Kellogg Hansen's IT specialists' entries. (Fees Opp'n at 18.) Since IT support for the trial team in the days before and during trial is necessary (Fees Reply at 23), these entries are not deemed excessive. Furthermore, the Court finds that the specialist's supplemental declaration cures Biosense's concern for vagueness. (See Declaration of Kyler Wheeler, Dkt. No. 582-3.)

Biosense also seeks a 30% haircut on Theodora Oringher's billed entries as clerical work. (Fees Opp'n at 18–19.) However, her entries are not merely "clerical." Overseeing and coordinating filings in her supervisory capacity indicates substantive assistance in this litigation. (Fees Reply at 22.) Thus, the Court declines to reduce her attorney's fees.

However, the Court finds it necessary to exclude $5,712 from Berger Montague's 4.2 hour entry for "Prep for Elhauge depo." (David Decl. Dkt. No. 551-3, Ex. B, at 52.) There is no name associated with Elhauge in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

In sum, the motion is **granted in part** with a 10% reduction on all block-billing entries and the exclusion of $5,712 for Berger Montague regarding the Elhauge depo. The Court awards in attorneys' fees a total of **$12,183,975.15** :

- **Jeffrey L. Berhold**: $2,345,382.90 (with 10% reduction for block billing) + $325,108.00 (vague[2]) = **$2,670,490.90**

- **Theodora Oringher**: $414,202.50 (with 10% reduction) + $1,640.00 (vague) + $35,260.00 (clerical) = **$451,102.50**

- **Berger Montague**: $450,191.70 (with 10% reduction) + $254,866.00 (vague) + ($5,712.00 (excessive) – $5,712 (Elhauge depo) = **$705,057.70**

- **Kellogg Hansen**: $8,242,285.05 (with 10% reduction) + $41,199.00 (vague) + $73,840.00 (excessive) = **$8,357,324.05**

3. Costs

Innovative seeks to recover non-taxable litigation expenses of between $2,137,859.91 and $2,151,297.21. (Fees Mot. at 19.) Specifically, it seeks for each firm:

- Kellogg Hansen: $1,380,156.04
- Berger Montague $19,805.61
- Jeffrey L. Berhold $731,261.25 - $744,698.5510 (pending Biosense's objection to certain taxable costs claimed in Innovative's CV-59 application.)
- Theodora Oringher $6,637.01

(Fees Reply at 27.) The Ninth Circuit has repeatedly "allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." Grove v. Wells Fargo Fin. California, Inc., 606 F.3d 577, 580 (9th Cir. 2010). However, similar to attorneys' fees, they must be reasonable. Dang v. Cross, 422 F.3d

---

[2]See Cavanaugh Decl. Ex. B–E.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

800, 814 (9th Cir. 2005). To recover out-of-pocket expenses, parties must file an itemized list of their expenses for the Court to ascertain whether the costs are reasonable. Hawthorne v. Umpqua Bank, 2015 WL 1927342, at *6 (N.D. Cal. Apr. 28, 2015); Aikens v. Malcolm Cisneros, 2020 WL 10828062, at *5 (C.D. Cal. Jan. 2, 2020

Here, the statutes at issue, the Clayton and Cartwright Acts, are fee-shifting statutes. See 15 U.S.C. § 15(a); Cal. Bus. & Prof. Code § 16750(a). Innovative provided an itemized list of their expenses. (Ho Decl., Dkt. 551-2, Ex. C, at 268; Davis Decl., Dkt. No. 551-3, Ex. D, at 183; Abdollahi Decl. Dkt. No. 551-5, Ex. C, at 115; Berhold Decl. Dkt. No. 551-4, Ex. C; Supplemental Berhold Decl. Dkt. No. 582-1, Ex. D.) Biosense entitled to non-table costs.

Biosense does not disagree with awarding Innovative non-taxable costs. However, it disputes Mr. Berhold's costs on the basis that he provided inadequate documentation to support his expenses. (Fees Opp'n at 19.) The Court ascertains that his supplemental documentation provides the necessary information regarding the discovery costs associated with this case and resolves Biosense's concern. (See Supplemental Berhold Decl.) Accordingly, the Court declines to discount his costs.

At present, Innovative submitted an amended application[3] for $111,764.67 in taxable costs with the Clerk's Office under Federal Rules of Civil Procedure 54 and Local Rule 54-2. (See Dkt. No. 583.) Biosense objected to $13,792.65 in taxable "search and cull" costs claimed in Innovative's CV-59 application. (Dkt. No. 553.) If the Clerk's Office grants the objection, Innovative seeks to claim those objected costs as non-taxable costs. Biosense did not object. The Court finds these costs necessary litigation expenses and will add them to the final costs if rejected by the Clerk of the Court.

In sum, the Court **grants** Innovative's request for **$2,137,859.91 to $2,151,297.21** in taxable costs, contingent on the costs taxed by the Clerk's Office.

### IV. CONCLUSION

---

[3] The amended application did not affect Biosense's objection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01984-JVS-KES | Date | August 27, 2025 |
| Title | Innovative Health LLC v. Biosense Webster, Inc. | | |

For the foregoing reasons, the Court makes the following rulings:

- **DENIES** Biosense's renewed motion for judgment as a matter of law (Dkt. No. 548)
- **GRANTS in part** Innovative's motion for attorneys' fees (Dkt. No. 551).

**IT IS SO ORDERED.**